**2021-2301**

# United States Court of Appeals for the Federal Circuit

CHARLES BERTINI,

*Appellant,*

– v. –

APPLE INC.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in PTO-1: 91229891*

## BRIEF FOR APPELLEE

JOSEPH PETERSEN
KILPATRICK TOWNSEND
& STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, California 94025
(650) 614-6427
jpetersen@kilpatricktownsend.com

WILLIAM M. BRYNER
KILPATRICK TOWNSEND
& STOCKTON LLP
1001 W. Fourth Street
Winston-Salem, North Carolina 27101
(336) 607-7482
bbryner@kilpatricktownsend.com

J. DAVID MAYBERRY
THEODORE H. DAVIS JR.
SARA K. STADLER
KILPATRICK TOWNSEND
& STOCKTON LLP
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
(212) 775-8830
dmayberry@kilpatricktown-send.com
tdavis@kilpatricktownsend.com
sstadler@kilpatricktownsend.com

*Counsel for Appellee*

DATE FILED: MARCH 4, 2022

COUNSEL PRESS, LLC (888) 277-3259

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4(a), Appellee Apple Inc. ("Apple") states as follows:

(1) Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc.

(2) Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

(3) Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

(4) List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.

Jason M. Gonder, Kilpatrick Townsend & Stockton LLP

Glenn A. Gunderson, Dechert LLP

Daniel P. Hope, Dechert LLP

(5) Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case numbers(s) for this case.

Cancellation No. 92068213, Trademark Trial and Appeal Board.[1]

(6) Provide any information required under Fed. R. App. P. 261(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

Not applicable.

Dated: March 4, 2022

Respectfully submitted,

*/s/Joseph Petersen*
Joseph Petersen
KILPATRICK TOWNSEND & STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, California 94025
(650) 614-6427
*jpetersen@kilpatricktownsend.com*

*Attorney for Appellee Apple Inc.*

[1] *See infra* at 1.

## STATEMENT REGARDING ORAL ARGUMENT

The core issues on appeal call for application of the "substantial evidence" rule to factual findings of the Trademark Trial and Appeal Board (the "Board"). Those findings include the Board's determination that Appellant Charles Bertini ("Bertini") failed to establish prior rights in his alleged APPLE JAZZ trademark in view of Apple's and its predecessor's use of the APPLE mark for approximately half a century in connection with some of the most famous sound recordings ever released, along with other goods and services. Apple therefore respectfully submits this Court may affirm the Board's decision dismissing Bertini's opposition to Apple's Application No. 86/659,444 to register the APPLE MUSIC mark without oral argument. If, however, the Court determines that oral argument would be necessary or helpful, Apple would welcome the opportunity to demonstrate the soundness of the Board's findings and to answer any questions the Court may have.

# TABLE OF CONTENTS


CERTIFICATE OF INTEREST .......... i

STATEMENT REGARDING ORAL ARGUMENT .......... iii

TABLE OF CONTENTS .......... iv

TABLE OF AUTHORITIES .......... vi

STATEMENT OF RELATED CASES .......... 1

STATEMENT OF THE ISSUES FAIRLY PRESENTED BY APPELLANT FOR REVIEW .......... 2

STATEMENT OF THE CASE .......... 5

I. The Nature of the Dispute .......... 5

II. The Substantial Evidence Supporting the Board's Opinion Below .......... 7

SUMMARY OF THE ARGUMENT .......... 18

ARGUMENT .......... 21

I. Standard of Review .......... 21

II. The Board Properly Exercised Its Discretion Regarding Evidentiary Matters, and the Substantial Evidence of Record Supports Each of the Board's Factual Findings. .......... 24

A. The Board Did Not Abuse Its Discretion in Weighing Mr. Jones's Unrebutted Testimony and Finding It Clear, Consistent, and Credible. .......... 24

B. Substantial Evidence Supports the Board's Finding that Apple Sufficiently Pleaded Its Tacking Defense. .......... 31

C. Substantial Evidence Supports the Board's Finding of Tacking. .................... 35

1. Substantial Evidence Supports the Board's Finding that APPLE and APPLE MUSIC Create the Same, Continuing Commercial Impression.................... 37

2. Substantial Evidence Supports the Board's Finding that Apple's Offerings "Are the Same as They Always Have Been," and "Only the Format" Has Changed. .................... 45

3. Substantial Evidence Supports the Board's Finding that Apple Has Absolute Priority. .................... 50

D. The Board Properly Exercised Its Discretion Not to Draw an Adverse Inference from Apple's Failure to Produce Settlement Agreements between Apple and Apple Corps That Were Not Responsive to Bertini's Discovery Requests. .................... 57

E. Bertini's Bias Arguments Are Meritless. .................... 59

CONCLUSION .................... 66

# TABLE OF AUTHORITIES

## Cases

*Am. Sec. Bank v. Am. Sec. & Trust Co.*, 571 F.2d 564 (C.C.P.A. 1978) ........ 38

*AWGI, L.L.C. v. Atlas Trucking Co.*, No. 17-12131, 2020 WL 3546100 (E.D. Mich. June 30, 2020), *aff'd*, 998 F.3d 258 (6th Cir. 2021) ........ 39

*In re Baroid Drilling Fluids, Inc. v. Sun Drilling Prods.*, 24 U.S.P.Q.2d 1048 (T.T.A.B. 1992) ........ 16, 45, 46

*Bear P'ship & Wings Res. & Dev., S.R.L. v. Bear U.S.A., Inc.*, No. 91119974, 2004 WL 2901193 (T.T.A.B. Nov. 30, 2004) (nonprecedential) ........ 54, 55

*Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 U.S.P.Q.2d 1072 (T.T.A.B. 1991) ........ 20, 46, 55

*Bunnell v. Barnhart*, 336 F.3d 1112 (9th Cir. 2003) ........ 61

*C.P. Ints., Inc. v. Cal. Pools, Inc.*, 238 F.3d 690 (5th Cir. 2001) ........ 50

*Citigroup Inc. v. Capital City Bank Grp.*, 94 U.S.P.Q.2d 1645 (T.T.A.B. 2010), *aff'd*, 637 F.3d 1344 (Fed. Cir. 2021) ........ 38, 39

*D & J Master Clean, Inc. v. Servicemaster Co.*, 181 F. Supp. 2d 821 (S.D. Ohio 2002) ........ 39

*E.I. du Pont de Nemours & Co. v. G.C. Murphy Co.*, 199 U.S.P.Q. 807 (T.T.A.B. 1978) ........ 53

*Fast Chem. Prods. Corp. v. Pillsbury Co.*, 132 U.S.P.Q. 561 (T.T.A.B. 1962) ........ 53

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009) ........ 30

*Greenberg v. Bd. of Governors of Fed. Rsrv. Sys.*, 968 F.2d 164 (2d Cir. 1992) ........ 61

*Grocery Outlet Inc. v. Albertsons, Inc.*, No. C 06-02173 JSW, 2008 WL 5245962 (N.D. Cal. Dec. 17, 2008) .................................53

*Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635 (7th Cir. 2002) .................................61

*H. Betti Indus. v. Brunswick Corp.*, 211 U.S.P.Q. 1188 (T.T.A.B. 1981) .................................51, 52, 53

*Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015)....................... passim

*Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015) .................................36, 38

*Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 331 F. Supp. 3d 581 (E.D. La. 2018) .................................53

*In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361 (Fed. Cir. 1999) .................................66

*Inwood Lab'ys v. Ives Lab'ys*, 456 U.S. 844 (1982) .................................30

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363 (Fed. Cir. 2015) .................................22

*Jimlar Corp. v. Army & Air Force Exch. Serv.*, 24 U.S.P.Q.2d 1216 (T.T.A.B. 1992) .................................50

*On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080 (Fed. Cir. 2000).................................22, 23, 44

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, No. CV 11-1623 (RC), 2015 WL 13680821 (D.D.C. June 12, 2015) .................................31

*Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988).................64

*Parrish v. Bd. of Comm'rs of Ala. State Bar*, 524 F.2d 98 (5th Cir. 1975).................................64

*Piano Factory Grp. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363 (Fed. Cir. 2021) .......... 65

*Prospector Cap. Partners, Inc. v. Dttm Operations LLC*, 123 U.S.P.Q.2d 1832 (T.T.A.B. 2017) .......... 61

*Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801 (Fed. Cir. 1984) .......... 53

*Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965 (Fed. Cir. 2018) .......... 30

*Rockwood Chocolate Co. v. Hoffman Candy Co.*, 372 F.2d 552 (C.C.P.A. 1967) .......... 30

*Safer, Inc. v. OMS Invs. Inc.*, 94 U.S.P.Q.2d 1031 (T.T.A.B. 2010) .......... 17

*In re Sailerbrau Franz Sailer*, 23 U.S.P.Q.2d 1719 (T.T.A.B. 1992) .......... 49

*Stockpot, Inc. v. Stock Pot Rest., Inc.*, 220 U.S.P.Q. 52 (T.T.A.B. 1983) .......... 59

*Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994 (Fed. Cir. 2020) .......... 23

*SurgiVision Consultants, Inc. v. SurgiVision, Inc.*, No. CV 10–03024 MMM (FFMx), 2011 WL 13214280 (C.D. Cal. Jan. 31, 2011) .......... 53

*Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569 (Fed. Cir. 1991) .......... 24

*Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253 (N.D. Fla. 2016) .......... 39

*United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021) .......... 65

*Vacuum-Elecs. Corp. v. Elec. Eng'g Co. of Cal.*, 150 U.S.P.Q. 215 (T.T.A.B. 1966) .......... 50

*VisionQuest Indus. v. SurgiTech, Inc.*, No. 91163140, 2008 WL 4233881 (T.T.A.B. Sept. 4, 2008) (nonprecedential) ............... 59

*WeaponX Performance Prods. Ltd. v. Weapon X Motorsports, Inc.*, 126 U.S.P.Q.2d 1034 (T.T.A.B. 2018) .................................... 24

**Statutes**

15 U.S.C. § 1068 ........................................................................... 65

15 U.S.C. § 1070 ........................................................................... 65

15 U.S.C. § 1074 ........................................................................... 65

28 U.S.C. § 451 ............................................................................. 61

28 U.S.C. § 455 ............................................................................. 61

28 U.S.C. § 455(b)(1) ..................................................................... 61

**Regulations**

5 C.F.R. Part 2635 .......................................................... 60, 61, 63

## STATEMENT OF RELATED CASES

When Bertini noticed this appeal, Apple was unaware of any other appeal in or from Opposition No. 91229891 before the Board or any other pending case in this or any other court or agency that would directly affect or be directly affected by this Court's decision in the pending appeal. While Bertini has sought in a separate proceeding, Cancellation No. 92068213, to cancel Apple's Registration No. 4,088,195 of the APPLE mark on the ground of abandonment, the Board found in this proceeding that Apple could not base a finding of priority on the '195 registration,[2] and the registration's validity therefore is not at issue in this appeal.

Nevertheless, Bertini's opening brief claims the outcome of this appeal will directly affect Cancellation No. 92068213,[3] and, perhaps because of that claim, the Board suspended Cancellation No. 92068213 on February 9, 2022, pending disposition of this appeal.[4] Bertini has moved the Board to reconsider its suspension order, arguing that "it is logically

---

[2] Appx00025 n.58.

[3] Opening Brief of Appellant Charles Bertini, Dkt. 15 ("Br."), at i.

[4] Order, Cancellation No. 92068213, 73 TTABVUE 1 (T.T.A.B. Feb. 9, 2022).

impossible for the Opposition case to affect the outcome of the Cancellation case," and the Board's suspension order "demonstrate[s] the appearance of bias in favor of Apple and … violate[s] Bertini's constitutional rights to Due Process of law."[5] Bertini's motion for reconsideration of the suspension order before the Board recycles the same bias arguments he asserts in this appeal. Thus, because of Bertini's own actions, this Court's resolution of his bias arguments in this appeal may affect the issues before the Board in Cancellation No. 92068213.

## STATEMENT OF THE ISSUES FAIRLY PRESENTED BY APPELLANT FOR REVIEW[6]

1. Whether the Board properly exercised its decision to credit the testimony of Apple's witness, Jeffrey Vaughan Jones of Apple Corps Limited ("Apple Corps"), where Bertini did not rebut that testimony or cross-examine Mr. Jones, despite having the opportunity to do so, and the Board found Mr. Jones' testimony to be clear, consistent, and credible.

[5] Petitioner Charles Bertini's Motion for Reconsideration of Order Suspending Case and Motion for Augmented Hearing Panel, *Bertini v. Apple Inc.*, Cancellation No. 92068213, 74 TTABVUE 4 (T.T.A.B. Feb. 17, 2022).
[6] Bertini's opening brief presents ten issues for review, several of which overlap. *See* Br. at 2-3.

2. Whether substantial evidence supports the Board's finding that Apple sufficiently pleaded tacking for Application Serial No. 86/659,444 to register APPLE MUSIC (the "Application") where (a) the First Affirmative Defense in Apple's Answer claimed prior rights by virtue of its ownership of Registration Nos. 2,034,964 and 3,317,089,"[7] which Apple acquired from Apple Corps,[8] and (b) Bertini has long known that "the distinctiveness, or lack thereof, of the term MUSIC was at issue with regard to the tacking defense."[9]

3. Whether substantial evidence supports the Board's finding that Apple established its entitlement to tack where "virtually the entire record … supports the determination that MUSIC is generic for [Apple's] musical sound recordings and the production and distribution of musical sound recordings,"[10] and, accordingly, that "both APPLE and APPLE MUSIC create the same commercial impression: an entity named APPLE that is the source of musical sound recordings."[11]

[7] Appx00056-00057, Appx01441-01442.
[8] Appx00047.
[9] Appx00057.
[10] Appx00059.
[11] Appx00061.

4. Whether substantial evidence further supports the Board's finding that Apple established its entitlement to tack where: (a) the Application recites services including the production and distribution of sound recordings, (b) voluminous record evidence established that Apple's predecessor Apple Corps has offered sound recordings under the APPLE mark since at least August 1968, and (c) Apple "is currently producing and distributing the very same Beatles albums that it has sold under the APPLE mark since the late 1960s."[12]

5. Whether the Board properly exercised its discretion not to draw an adverse inference from Apple's decision not to produce the 1981 and 1991 Agreements between Apple and Apple Corps where (a) Apple advised Bertini before the close of discovery that the 1981 and 1991 Agreements were superseded by the 2007 Agreement, and only the 2007 Agreement was responsive to Bertini's requests, and (b) Bertini did not timely object to Apple's production, but waited until trial to claim, falsely, that "Apple violated the Board's Order."[13]

---

[12] Appx00068.
[13] Br. at 48.

6. Whether the Board dismissed Bertini's opposition because the applicable law and substantial evidence fully supported the Board's finding that Bertini "has not established the necessary element of priority required to prevail,"[14] and not because the Board allegedly "was biased in favor of Apple Inc." and deprived Bertini of due process, as Bertini now contends.[15]

## STATEMENT OF THE CASE

### I. The Nature of the Dispute

For more than fifty years, Apple's predecessor Apple Corps and Apple have used the APPLE word mark in connection with sound recordings and films featuring the music group The Beatles and its individual members, among many other artists. Indeed, the sound recordings and films associated with the APPLE word mark are among the most famous creative works ever fixed in recorded media. Thus, when Apple launched a new music-streaming service in 2015, the APPLE MUSIC brand was the obvious choice, enabling Apple to draw upon the enormous goodwill in the APPLE mark and its connection with music for over half of a century.

[14] Appx00052.
[15] Br. at 2.

Had Apple branded that service as APPLE, any contention by Bertini that he has priority in the APPLE mark would be frivolous. Bertini's modest use of the APPLE JAZZ mark in connection with an annual (and discontinued) jazz festival in upstate New York would have made him nothing more than an infringer of Apple's rights in its famous APPLE marks. The sole question in this appeal, and one the Board properly answered below, is whether Apple forfeited its priority position by appending the word "MUSIC" to its APPLE mark, thereby exposing itself to Bertini's opportunistic and quixotic campaign, now in its sixth year, to disrupt and delay registration of Apple's APPLE MUSIC mark for a variety of entertainment-related services in Class 41.[16]

The Board properly found that Apple did not forfeit its priority position by adding the generic term "MUSIC" to its famous APPLE mark.

[16] The endgame of Bertini's campaign is unclear. After Bertini filed his own trademark application to register APPLE JAZZ, the USPTO refused and maintained its refusal of registration under Section 2(d), citing not only the Application at issue in this appeal and Apple's Registration No. 4,088,195 referenced above (which Bertini is attempting to cancel in part under Cancellation No. 92068213), but also three of Apple's registrations that Bertini has *not* challenged—i.e., Registration Nos. 2,034,964, 3,317,089 and 5,330,141. Appx02139-02142. Accordingly, regardless of the outcome in this proceeding, Bertini faces insurmountable obstacles to claiming superior trademark rights to Apple.

The Board's conclusion rested on two findings of fact amply supported by the record, namely, that: (a) Apple's APPLE MUSIC and APPLE marks convey the same, continuing commercial impression, given the overwhelming consumer recognition of the APPLE mark and the lack of distinctiveness of MUSIC for recorded music; and (b) Apple's streaming music service, and the services ancillary to it, are the modern equivalent of the sound recordings covered by Apple's Registration Nos. 2,034,964 and 3,317,089 and long offered under the famous APPLE mark. As the Board properly found, "[a] change from a physical format to a digital format is … a permissible change expected by consumers."[17]

## II. The Substantial Evidence Supporting the Board's Opinion Below

The Board supported its conclusions by relying on the testimonial declarations of Mr. Jones, Apple Corps' Chief Executive Officer (comprising 269 pages of testimony and exhibits) and Thomas La Perle, a Senior Director in Apple's Legal Department (comprising 271 pages of testimony and exhibits). The Board's April 16, 2021, 52-page opinion makes clear

[17] Appx00067.

the Board thoroughly reviewed the evidence of record before reaching the following findings:

- Bertini "performed his first concert under the name APPLE JAZZ at the Cortland New York Holiday Inn on June 13, 1985."[18]
- Bertini "[e]ventually … branched out into other musical enterprises and formed APPLE JAZZ Records in the mid-1990s in order to issue and distribute recordings of his work as an independent musician, as well as the work of other musicians. Opposer's music is available on Applicant's iTunes platform and other streaming music services."[19]
- Apple "has used the mark APPLE MUSIC since at least June 8, 2015 when it launched the APPLE MUSIC streaming service for publishing and distributing music."[20]
- Apple "pleaded, as an affirmative defense, priority and ownership of the two registrations comprising APPLE marks purchased from

[18] Appx00016-00017; *see* Appx03081.
[19] Appx00019-00020; *see* Appx03008-03009, Appx03026.
[20] Appx00025; *see* Appx07890.

Apple Corps, Registration Nos. 2034964 and 3317089, and use of the APPLE mark since August 1968."[21]

- Mr. Jones's testimony "details Apple Corps' use of the mark and provides images of recordings and films bearing the mark…. The critical portions of Jones' testimony are clear, and are neither contradicted by Opposer nor 'indefinite and internally inconsistent.' … The record provides no sufficient reason … to disregard or discount Jones' testimony on the Apple Corps' use of the mark going back to 1968."[22]

- Bertini "was free to cross-examine Jones regarding Apple Corps' books and records if he was dissatisfied with Jones'[s] declaration. Opposer chose not to do so."[23]

[21] Appx00047-00048; *see* Appx01441-01442.
[22] Appx00046 ; *see* Appx02720-02750, Appx02763-02764, Appx02767-02778, Appx02780-02785, Appx02794-02807, Appx02809-02812, Appx02814, Appx02816-02847, Appx02849-02959, Appx02961-02967, Appx02969-02974, Appx02977-02984, Appx02986-02988.
[23] Appx00011-00012; *see* Appx01451.

- Mr. Jones's "testimony establishes, at a minimum, that Applicant used the APPLE mark on sound recordings and films featuring music at least as early as 1968, prior to Opposer's priority date, and that Applicant has not abandoned the mark."[24]
- In 1963, The Beatles "set up a United Kingdom corporation to produce and distribute the group's music," changing the name of the corporation to "Apple Corps Limited, effective February 9, 1968. The Beatles—John Lennon, Paul McCartney, George Harrison, and Ringo Starr—as well as several other well-known musicians, have had their sound and video recordings produced and distributed under the Apple Corps record label and APPLE mark."[25]
- "Beatles albums bearing the APPLE mark, including albums released on compact disc, continue to be sold up to the present day including both re-releases and new compilations."[26]

---

[24] Appx00046-00047; *see* Appx02720-02750, Appx02763-02764, Appx02767-02778, Appx02780-02785, Appx02794-02807, Appx02809-02812, Appx02814, Appx02816-02847, Appx02849-02959, Appx02961-02967, Appx02969-02974, Appx02977-02984, Appx02986-02988.
[25] Appx00027; *see* Appx02721-02723.
[26] Appx00027-00028; *see* Appx02732-02740, Appx02780-02785, Appx02794-02807, Appx02809-02812, Appx02814, Appx02816-02847.

- "Apple Corps has used the word marks APPLE (as well as APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS, and marks comprising apple designs) on sound and video recordings since August 1968."[27]
- "New releases of APPLE recordings halted for a time in 1975 but 'substantial quantities of those sound recordings issued under the Apple Corps label and bearing the APPLE word mark continued to be sold around the world (including the United States) throughout the 1970s and 1980s.'"[28]
- Apple Corps also was involved in the production and distribution of several films featuring music by The Beatles, most or all of which "are now sold on DVD in the United States under the APPLE word mark."[29]
- "Clearly, between 1979 and 1989 Apple Corps had not abandoned its interest in producing and distributing music," as evidenced by

---

[27] Appx00028-00042; *see* Appx02728-02737, Appx02740-02743, Appx02772-02778, Appx02849-02959, Appx02971.
[28] Appx00030-00031; *see* Appx02744-02746.
[29] Appx00032-00036, Appx00041-00042; *see* Appx02747-02750, Appx02961-02967, Appx02969-02974, Appx02977-02984, Appx02986-02988, Appx02992-02993.

various licensing contracts and contract disputes between Apple Corps, Capitol Records, and EMI.[30]

- "The sale of music and videos bearing the APPLE mark continued into the 1990s, with many of the previously released albums being released on compact disc."[31]
- "In November 2000, Apple Corps released another new Beatles compilation album titled '1' which featured Beatles songs that had reached number one on the United Kingdom or United States music charts upon their initial releases between 1963 and 1970. The album was released under the APPLE mark …."[32]
- "In September 2009, Apple Corps reissued the entire original Beatles catalog, featuring the APPLE word mark, in a digitally remastered form on compact disc in the United States."[33]

---

[30] Appx00044-00045; *see* Appx02737-02738, Appx02787-02792.
[31] Appx00036-00039; *see* Appx02732-02737, Appx02738-02739, Appx02780-02785, Appx02794-02807.
[32] Appx00040-00041; *see* Appx02739, Appx02809-02812.
[33] Appx00042; *see* Appx02739.

- In sum, Apple's "testimony and evidence establish Apple Corps' continuous use of the mark APPLE, for use in connection with musical sound recording and films featuring music, since 1968."[34]
- "In 1997, Apple Corps registered the mark APPLE in typed form for 'Gramophone records featuring music; [pre-recorded audio tape cassettes featuring music;] audio compact discs featuring music [; pre-recorded video tape cassettes featuring music] [; video laser discs featuring music],' claiming a date of first use of August 1968. In 2007 Apple Corps registered the mark APPLE in standard characters for, inter alia, 'musical sound recordings.'"[35]
- "In 2007, Applicant acquired all of Apple Corps' trademark and service mark rights in its APPLE marks, including Registration Nos. 2034964 and 3317089."[36]
- Apple "properly pleaded the defense of tacking" by pleading, "as an affirmative defense, priority and ownership of the two registrations

[34] Appx00043.
[35] Appx00043 (alterations in original); *see* Appx02182-02186, Appx02187-02193, Appx02724-02725.
[36] Appx00047; *see* Appx02720-02721, Appx02725, Appx08160-08161.

comprising APPLE marks purchased from Apple Corps, Registration Nos. 2034964 and 3317089, and use of the APPLE mark since August 1968."[37]

Based on those (and other) facts, the Board further found:

- "The addition of the term MUSIC [to the APPLE mark] does not create a different commercial impression because it is generic when used in connection with sound recordings and the production and distribution of sound recordings."[38]
- Consumers encountering Apple's APPLE MUSIC mark "would know they were dealing with a music company, particularly because Applicant's licensee, Apple Corps, has used variations of the APPLE mark, with APPLE as the dominant element, to identify its musical recordings, which inures to Applicant's benefit, and because Applicant uses APPLE MUSIC to identify its service of publishing and distributing sound recordings."[39]
- "Apple Corps' long use of other generic terms with APPLE, i.e., APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE

[37] Appx00047-00048; *see* Appx01441-01442.
[38] Appx00050.
[39] Appx00050-00051; *see* Appx07890-07895.

FILMS, and the representation of an apple, suggests that consumers already are accustomed to seeing slight variations in Apple Corps' APPLE mark."[40]

- "Given the progression of musical formats from vinyl records, to 8-track cartridges, to cassettes tapes, to compact discs, and now to streaming services, it would not be unexpected for a company to update their mark to incorporate more modern and inclusive terminology by adopting the term MUSIC in place of terms such as RECORDS or FILMS."[41]
- "[W]hen used in connection with sound recordings and the production and distribution of sound recordings, the marks APPLE and APPLE MUSIC are 'legal equivalents' because they both create the 'same, continuing commercial impression so that consumers consider both as the same mark.'"[42]
- "[S]ound recordings are inseparable from the production and distribution of sound recordings. As Jones testified:

[40] Appx00051.
[41] Appx00051.
[42] Appx00051 (citing *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015)).

> Apple Corps has been involved in the production and distribution of some of the *most famous sound recordings ever created* …. Apple Corps and/or affiliates and licensees produced and distributed sound recordings under its Apple Corps record label and APPLE word mark for The Beatles and other famous recording artists, and such sound recordings were (and many continue to be) distributed in the United States and worldwide."[43]

- "[T]he sound recordings identified in Applicant's registrations [are] 'the same or similar' for purposes of tacking as the production and distribution of sound recordings identified in Applicant's application."[44]
- "Applicant may claim priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968."[45]

Bertini's proffered evidence at trial consisted primarily of documents relating to his own use of the APPLE JAZZ mark, along with internet evidence (e.g., Wikipedia pages) purporting to show that Apple had abandoned its APPLE mark for sound recordings before Bertini's first use. The Board found this internet evidence "admissible for the limited purpose of demonstrating what has been printed, but not for the truth of

---

[43] Appx00052 (quoting Appx02721-02722 (emphasis in original)).
[44] Appx00051-00052 (quoting *In re Baroid Drilling Fluids, Inc. v. Sun Drilling Prods.*, 24 U.S.P.Q.2d 1048, 1052 (T.T.A.B. 1992)).
[45] Appx00052.

what has been printed," concluding it "falls far short of establishing that Apple Corps ceased use of the [APPLE] mark between 1976 and the 1990s."[46] The Board also declined to adopt Bertini's unsupported legal conclusions that the APPLE MUSIC and APPLE marks are "different in its face [sic] and … in no way substantially identical" and "[t]he set[s] of goods for Reg. No. 2,034,964 [and Reg. No. 3,317,089] and the set of services in [the APPLE MUSIC] Application No. 86659444 are not substantially identical."[47]

Finding that "[i]n view of Applicant's earlier priority date, Opposer has not established the necessary element of priority required to prevail," the Board dismissed the opposition.[48] On August 9, 2021, the Board denied Bertini's motion for reconsideration, citing at length to both the trial record and its earlier decision.[49] On appeal, Bertini rehashes most of the same arguments he repeatedly made before the Board. As shown in detail below, none has any merit.

---

[46] Appx00043-00044 (citing *Safer, Inc. v. OMS Invs. Inc.*, 94 U.S.P.Q.2d 1031, 1039 (T.T.A.B. 2010)).
[47] Appx08274.
[48] Appx00052.
[49] *See* Appx00053-00070.

## SUMMARY OF THE ARGUMENT

As the Supreme Court made clear in *Hana Financial*, the question of whether two marks create the same, continuing commercial impression and therefore permit tacking is a factual question falling "comfortably within the ken" of the finder of fact. 574 U.S. at 422. As such a finder of fact, the Board carefully weighed the evidence and found—in a 52-page opinion on the merits and an 18-page opinion on reconsideration—that Apple's APPLE mark and its APPLE MUSIC mark create the same, continuing commercial impression. Bertini now seeks to overturn the Board's well-reasoned decision on the ground the Board purportedly reached the wrong conclusion, but the substantial trial record fully supports the Board's findings.

Apple's priority of use in its APPLE word mark is undisputed. Apple established that priority through voluminous testimonial and documentary evidence, including the testimonial declaration of Mr. Jones, Apple Corps' Chief Executive Officer. That testimony went unrebutted because Bertini chose not to cross-examine Mr. Jones "regarding Apple Corps' books and records," electing to respond with attorney argument.[50]

[50] Appx00011-00012.

Even so, the Board did not simply take Mr. Jones's testimony at face value, but properly assessed his credibility, concluding at trial that "[t]he critical portions" of his testimony were clear and consistent.[51] On reconsideration, the Board found that none of Bertini's "quibbles" with Mr. Jones's testimony undermined it.[52]

Based in part on Mr. Jones's testimony, along with that of Apple's Senior Director in the Legal Department, Thomas R. La Perle, together with a volume of other evidence, the Board found Apple is entitled to tack its Application's priority date to the APPLE mark and therefore enjoys absolute priority over Bertini. The Board's finding of tacking rests on two conclusions firmly grounded in the record:

- Apple established that its APPLE MUSIC mark conveyed the same, continuing commercial impression as its APPLE mark, making the two marks legal equivalents, in significant part because the term "MUSIC" in Apple's mark lacks distinctiveness.[53]
- Apple established that the production and distribution of musical sound recordings for which it seeks to register its APPLE MUSIC

[51] Appx00046.
[52] Appx00055.
[53] Appx00050-00051.

mark are the same as or similar to the sound recordings on which Apple Corps first used the APPLE mark. As the Board properly found, "sound recordings are inseparable from the production and distribution of sound recordings,"[54] the only difference being a change in format resulting from changing technology. That is, "[t]he music is still the same and comes from the same source."[55]

Bertini seeks to overturn the Board's decision by arguing that Apple cannot tack services to goods as a matter of law. Yet, the Supreme Court's decision in *Hana Financial* leaves no room for such an argument. In that case, the Court held that tacking is a "fact-intensive" inquiry that "operates from the perspective of an ordinary purchaser or consumer." *Hana Fin.*, 574 U.S. at 420, 422. Nor does the law support Bertini's reading of *Big Blue Products Inc. v. International Business Machines Corp.*, 19 U.S.P.Q.2d 1072 (T.T.A.B. 1991), which would require a tacking party to match *all* the goods and services in the application with those in its prior registrations. As the Board properly held, "[i]t is sufficient to

---

[54] Appx00051-00052.
[55] Appx00067-00068 (citing Appx00025, Appx00051).

find priority as to *any* service encompassed by the application and registration."[56]

Equally misplaced is Bertini's argument that the Board should have drawn an adverse inference from Apple's failure to produce settlement agreements that Apple timely advised Bertini were unresponsive to his requests. As with Mr. Jones's testimony, Bertini chose not to object to Apple's response at the appropriate time. "[I]nasmuch as Opposer did not object,"[57] the Board properly declined to draw the inference. Bertini ends his prosecution of this appeal by alleging that the Board's long and thoughtful opinion resulted from bias in favor of Apple's outside counsel. This accusation is unsupported.

## ARGUMENT

### I. Standard of Review

In the context of a priority dispute, the question whether marks sought to be tacked create the "same, continuing commercial impression" is a question of fact. *See Hana Fin.*, 574 U.S. at 422 (holding "the jury is

---

[56] Appx00015-00016 (emphasis added).
[57] Appx00009.

generally the decisionmaker that ought to provide the fact-intensive answer" to the question whether "two marks … 'create the same, continuing commercial impression' so that consumers 'consider both as the same mark'" (citation omitted)); *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1369-70 (Fed. Cir. 2015) (affirming Board's finding that "[a] reasonable fact-finder could conclude" that modernized mark with alterations to font and design element created same, continuing commercial impression as registered mark).

This Court upholds the Board's factual findings if supported by "substantial evidence." *Jack Wolfskin*, 797 F.3d at 1369; *see also On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1084, 1088 (Fed. Cir. 2000) (holding substantial evidence supported Board's finding that AOL "provided its users with 'access' to its service through on-screen menu items" and thus did not abandon its mark). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *On-Line Careline*, 229 F.3d at 1085 (citation omitted). Thus, an appellant cannot satisfy its burden of proving the Board's findings were unsupported by substantial evidence simply by

"point[ing] to evidence that conflicts with these findings," as "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the Board's] finding from being supported by substantial evidence." *Id.* at 1086, 1087 (citations omitted).

Here, as shown below, Bertini repeatedly argues that the Board should have reached different conclusions based on the trial record, "effectively ask[ing] [this Court] to reweigh the evidence considered by the Board." *See Stratus Networks, Inc. v. UBTA-UBET Commc'ns Inc.*, 955 F.3d 994, 998 (Fed. Cir. 2020). However, this Court's role is to evaluate whether the Board's factual findings were adequately supported, and "[n]one of [Bertini's] arguments demonstrate that the Board's finding lacks substantial evidence." *See id.* at 998-99. Thus, "[e]ven if [Bertini] were correct that different conclusions may reasonably be drawn from the evidence in record" (and Apple respectfully suggests he is not), this Court "must sustain the Board's decision as supported by the substantial evidence" as discussed below. *Id*. at 999.

## II. The Board Properly Exercised Its Discretion Regarding Evidentiary Matters, and the Substantial Evidence of Record Supports Each of the Board's Factual Findings.

### A. The Board Did Not Abuse Its Discretion in Weighing Mr. Jones's Unrebutted Testimony and Finding It Clear, Consistent, and Credible.

At trial, Apple introduced the testimony of Mr. Jones, Chief Executive Officer of Apple's predecessor Apple Corps, which was formed by the members of the musical group The Beatles in the 1960s.[58] Mr. Jones testified based on his personal knowledge as well as Apple Corps' books and records, "especially in relation to matters prior to [his] appointment in May 2007."[59] *This evidence was unrebutted*, as Bertini had the opportunity to cross-examine Mr. Jones and chose not to do so.[60] *See Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed. Cir. 1991) ("[The defendant] chose not to expose [the plaintiff's expert's] testimony to the glaring light of cross-examination on this issue. Having lost below, [the defendant] cannot here recoup for its failed litigation strategy."); *WeaponX Performance Prods. Ltd. v. Weapon X Motorsports, Inc.*, 126 U.S.P.Q.2d 1034, 1037 (T.T.A.B. 2018) (overruling opposer's objection to

---

[58] Jones Decl. ¶ 2, Appx02721.
[59] Jones Decl. ¶ 1, Appx02720.
[60] Appx00011-00012 (citing Parties' Stipulation ¶ 6, Appx01451).

applicant's testimonial declarations where opposer had opportunity to cross-examine witnesses but chose not to do so).

Mr. Jones's unrebutted testimony established that "[s]ince 1968, Apple Corps has continuously used the APPLE word mark in connection with the production and/or distribution of sound recordings and film in the United States," including through its affiliates and licensees.[61] This evidence established that "some of the most famous sound recordings ever made were released in the United States in connection with the APPLE word mark," were "manufactured and distributed continuously in the United States by Apple Corps and Capitol," and "have been available continuously every year after their original release,"[62] first on vinyl and later in digital formats.[63] Examples in the record (including images authenticated by Mr. Jones)[64] include the landmark Beatles singles and albums *Hey Jude*, *Revolution*, *Get Back*, *Don't Let Me Down*, *Come Together*, *Abbey Road*, and *Let It Be*.[65] Not surprisingly, the

[61] Jones Decl. ¶¶ 18-19, Appx02726-02727.
[62] Jones Decl. ¶ 20, Appx02727.
[63] Jones Decl. ¶¶ 22-32, Appx02728-02740.
[64] *See* Appx00055 ("The mere fact that the images were taken from the internet does not diminish their evidentiary value where, as here, they have been authenticated by a credible witness." (citation omitted)).
[65] Jones Decl. ¶ 23, Appx02729-02731.

evidence showed The Beatles are "'evergreen,' meaning versions of [the group's] recordings have been available continuously every year after their original release."[66]

Mr. Jones' unrebutted testimony also established that other acclaimed musicians released sound recordings under the Apple Corps label, including individual members of The Beatles, as well as James Taylor, Mary Hopkin, Badfinger, Billy Preston, and Doris Troy.[67] Although these recordings were initially released between 1969 and 1975, the evidence showed that substantial quantities of sound recordings bearing the Apple Corps label and APPLE word mark continued to be sold around the world (including in the United States) throughout the entire decades of the 1970s and 1980s.[68] In fact, the record contains numerous examples (again including images authenticated by Mr. Jones) of the APPLE mark in use on recordings distributed in the United States in the time period

[66] Jones Decl. ¶ 21, Appx02727-02728.
[67] Jones Decl. ¶¶ 33-34, Appx02740-02743.
[68] Jones Decl. ¶ 35, Appx02744.

immediately preceding Bertini's adoption of his APPLE JAZZ mark, including the following demonstrative exhibits (with magnifications provided):[69]




[69] Jones Decl. ¶ 37, Appx02744-02745.




At trial, Bertini objected to Mr. Jones's testimony on hearsay and foundation grounds because "Jones began working for Apple Corps … in 2007" and "fails to state who gave him the relevant information or whether he has personal knowledge of the exhibits."[70] The Board overruled this objection, observing that Bertini "was free to cross-examine Jones regarding Apple Corps' books and records if he was dissatisfied

[70] *See* Appx00010-00011.

with Jones' declaration" but "chose not to do so."[71] The Board also found it "unreasonable" to expect Apple Corps to retain employees with personal knowledge of events in the 1960s, 1970s, and 1980s "after such a long period of time."[72]

After weighing Mr. Jones's testimony, the Board concluded that "[t]he critical portions of Jones' testimony are clear" and are not "'indefinite and internally inconsistent,'" as Bertini contended.[73] When Bertini renewed the same objections on reconsideration, the Board reminded Bertini of his earlier decision not to cross-examine Mr. Jones, concluding, "Opposer will not now be heard to complain about testimony he chose not to address."[74] The Board then concluded that Bertini's "quibbles with some of Jones' wording and gaps in his knowledge regarding precise dates of distribution do not undermine or rebut Jones' testimony."[75]

On appeal, Bertini raises the very same objections to Mr. Jones's testimony and inappropriately urges this Court to engage in a *de novo*

---

[71] Appx00011-00012.
[72] Appx00011.
[73] Appx00046.
[74] Appx00056.
[75] Appx00055.

review of its admissibility.[76] It is well settled that the Board is entitled to assess the credibility of witnesses, and as the trier of fact, the Board has considerable discretion to admit and weigh the evidence presented by the parties. *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 979-80 (Fed. Cir. 2018) ("The TTAB is entitled to weigh the evidence."); *see also Inwood Lab'ys v. Ives Lab'ys*, 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact.").[77]

Here, after weighing Mr. Jones's testimony in light of the whole record, the Board found as follows:

> The record provides no sufficient reason for us to disregard or discount Jones' testimony on the Apple Corps' use of the mark going back to 1968. His testimony establishes, at a minimum, that *Applicant used the APPLE mark on sound recordings and*

---

[76] Br. at 42-48.

[77] Citing *Rockwood Chocolate Co. v. Hoffman Candy Co.*, 372 F.2d 552 (C.C.P.A. 1967), Bertini argues for the first time on appeal that Mr. Jones's testimony must establish tacking by clear and convincing evidence. Br. at 13. To begin, Bertini has waived this argument by failing to raise it at trial. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009). More fundamentally, *Rockwood* is distinguishable because the rule it announced applies where a party attempts to assert a date of first use earlier than the date identified in its trademark filings. That is not the case here because Apple claims use back to 1968, which is the date of first use identified in Apple's Registration No. 2.034,964. Thus, there is no inconsistency here that would warrant deviation from the typical preponderance-of-the-evidence standard.

> *films featuring music at least as early as 1968*, prior to Opposer's priority date, and that *Applicant has not abandoned the mark*.[78]

The Board neither erred in reaching this factual finding nor abused its discretion in crediting Mr. Jones' testimony.

### B. Substantial Evidence Supports the Board's Finding that Apple Sufficiently Pleaded Its Tacking Defense.

Apple's First Affirmative Defense recites that "Apple owns trademark rights in the mark APPLE in the field of music, musical performances, and musical, cultural and entertainment events that predate those of Opposer, by virtue of Apple's ownership of [Reg. Nos. 2,034,964, 3,317,089 and 4,088,195]."[79] Consistent with the principle that "[t]here is no rule ... that a party must use the word 'tacking' in its pleadings in order to permit it to establish priority using an earlier version of a mark," *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, No. CV 11-1623 (RC), 2015 WL 13680821, at *3 (D.D.C. June 12, 2015), the Board found that this affirmative defense properly put Bertini on notice of Apple's tacking defense.

---

78 Appx00046-00047 (emphases added).
79 Appx01441-01442.

Specifically, the Board found that Apple "properly pleaded the defense of tacking" because it "pleaded, as an affirmative defense, priority and ownership of the two registrations comprising APPLE marks purchased from Apple Corps, Registration Nos. 2034964 and 3317089, and use of the APPLE mark since August 1968."[80] The Board reiterated this finding on reconsideration,[81] observing that Bertini was on notice of the basis for Apple's tacking claim since at least as early as March 1, 2019, when the Board found the "assertion of prior use" in Apple's Answer "sufficient to provide [Bertini] proper notice of the 'tacking' defense."[82]

Bertini now tries to move the goal posts once again, arguing for the first time on appeal that "Apple didn't put Bertini on notice that Apple Corps' **service mark** was previously used in the U.S.,"[83] presumably as part of his broader argument that services cannot be tacked to goods as a matter of law.[84] To begin with, Apple's First Affirmative Defense squarely put Bertini on notice that Apple claimed priority "in the field of music, musical performances, and musical, cultural and entertainment

---

[80] Appx00047-00048.
[81] Appx00056 (citing Appx08726-08727).
[82] Appx01406.
[83] Br. at 11 (emphasis in original).
[84] *See* Br. at 16.

events that predate those of Opposer."[85] In other words, Bertini was fully on notice *from the very outset of the proceeding* that Apple claimed prior rights stemming from its predecessor's use of the APPLE word mark in connection with services.[86]

Moreover, Bertini's argument misconstrues the Board's finding on priority. The Board did not find that Apple had priority because of its use of the APPLE word mark as a *service* mark. Rather, it found that Apple had priority because of its use of the mark in connection with sound recordings and film at least as early as 1968.[87] The Board then made the unremarkable and well-supported finding that the "sound recordings" set out in Apple's registrations are substantially equivalent to the "production and distribution of sound recordings" as set out in the Application.

[85] Appx08726-08727.

[86] In fact, Bertini served numerous discovery requests that were particularly aimed at Apple's use of the APPLE mark in connection with entertainment services. *See* Appx00171, Appx00203, Appx00223, Appx00224, Appx00231. Accordingly, it is disingenuous at best for Bertini to feign surprise regarding Apple's long-standing use of the APPLE mark in connection with entertainment services.

[87] Appx00051.

Bertini's contention that he was unfairly surprised by the Board's reliance on Apple's service-mark usage therefore grossly mischaracterizes the record and the Board's decision below.

Bertini also argues on appeal that "Apple didn't … give fair notice to Bertini that genericness of the term 'music' is a part of the [tacking] defense."[88] His theory appears to be that, to plead tacking sufficiently, Apple was required to assert, *as an affirmative defense*, that the MUSIC component of *its own APPLE MUSIC mark* is generic.[89] This argument makes no sense, and the Board properly rejected it, finding that by at least March 1, 2019, Bertini was on notice that "the distinctiveness, or lack thereof, of the term MUSIC was at issue with regard to the tacking defense," and Apple "intended to rely on the APPLE element to establish tacking."[90] That being the case, the Board properly found "[i]t was not necessary that [Apple] define the precise degree of descriptiveness of the

---

[88] Br. at 14.
[89] *See* Br. at 14 ("Genericness of the term 'music' is not mentioned in the affirmative defenses at all.").
[90] Appx00057.

term MUSIC in APPLE MUSIC”[91] to satisfy pleading requirements; rather, “it is sufficient that [Bertini] was on notice that [Apple] intended to rely on the APPLE element to establish tacking.”[92]

### C. Substantial Evidence Supports the Board’s Finding of Tacking.

The Board’s core factual finding in this case was that Apple’s APPLE MUSIC mark for the production and distribution of sound recordings (featuring music) creates the same, continuing commercial impression as Apple’s famous APPLE mark for sound recordings. Although this may seem obvious, the Board supported its finding with detailed citations to the trial record, and its decision to permit Apple to tack its use of the APPLE mark to its APPLE MUSIC mark therefore is supported by substantial evidence. *See Hana Fin.*, 574 U.S. at 422 (holding the question whether “two marks … ‘create the same, continuing commercial impression’ so that consumers ‘consider both as the same mark’” is a question of fact).

*Hana Financial* is directly on point. In that case, the Ninth Circuit affirmed a jury verdict that the marks HANA OVERSEAS KOREAN

[91] Appx00057.
[92] Appx01406.

CLUB, HANA WORLD CENTER, and HANA BANK conveyed the same, continuing commercial impression to their "Korean-speaking consumers (consisting of Korean expatriates and Korean Americans)." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1158, 1167 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015). This was because those purchasers "had a preexisting awareness of the Bank due to its ongoing business presence in Korea" and "associated 'Hana Bank' with the 'Hana Overseas Korean Club' when 'Hana Overseas Korean Club' appeared, in English, next to 'Hana Bank,' in Korean, and [an associated] logo in the advertisements." *Id.* For the jury, relevant consumers would regard "'Overseas Korean Club' and 'World Center' [as] … non-essential as they merely conveyed what the ordinary purchasers would have already surmised: that the well-known Korean bank was offering financial services to individuals like them living outside of Korea." *Id.* The Supreme Court affirmed. *Hana Fin.*, 574 U.S. at 419.

Likewise, the Board found as a factual matter here that "Apple Corps' long use of other generic terms with APPLE ... suggests that consumers already are accustomed to seeing slight variations in Apple

Corps' APPLE mark,"[93] and "consumers familiar with the mark APPLE for musical sound recordings will get no more information from the mark APPLE MUSIC because the term MUSIC conveys no more information to consumers than they already have."[94] Based on these factual findings and others, the Board additionally found that "when used in connection with sound recordings and the production and distribution of sound recordings, the marks APPLE and APPLE MUSIC are 'legal equivalents' because they both create the 'same, continuing commercial impression so that consumers consider both as the same mark'"[95]—each identifying "an entity named APPLE that is the source of musical sound recordings."[96] As shown below, substantial evidence and testimony supports these findings.

#### 1. Substantial Evidence Supports the Board's Finding that APPLE and APPLE MUSIC Create the Same, Continuing Commercial Impression.

The Board properly found that the terms "APPLE MUSIC" and "APPLE" create the same, continuing commercial impression because

---

[93] Appx00051.
[94] Appx00062-00063.
[95] Appx00051 (quoting *Hana Fin.*, 574 U.S. at 420).
[96] Appx00061.

"consumers familiar with the mark APPLE for musical sound recordings will get no more information from the mark APPLE MUSIC because the term MUSIC conveys no more information to consumers than they already have."[97] The record amply supports this conclusion.

Two marks can create the same, continuing commercial impression, "though differing slightly in their literal meaning or grammatical presentation," when, as in *Hana Financial*, they nevertheless "possess the same connotation in context." *Hana Fin.*, 735 F.3d at 1164 (citation omitted). For example, in *American Security Bank v. American Security & Trust Co.*, 571 F.2d 564 (C.C.P.A. 1978), this Court's predecessor held AMERICAN SECURITY and AMERICAN SECURITY BANK were legal equivalents because the word "bank" "is purely descriptive and adds nothing to the origin-indicating significance of AMERICAN SECURITY. Customers using the services would know they were dealing with a bank." *Id.* at 567.

The Board reached a substantially identical result in *Citigroup Inc. v. Capital City Bank Grp.*, 94 U.S.P.Q.2d 1645 (T.T.A.B. 2010), *aff'd*, 637 F.3d 1344 (Fed. Cir. 2021), finding CAPITAL CITY BANK and CAPITAL

[97] Appx00062-00063.

CITY BANK GROUP were legal equivalents because "[t]he commercial impression engendered by CAPITAL CITY BANK GROUP is merely a collection of CAPITAL CITY BANKS. The word 'Group' adds nothing to the origin-indicating significance of CAPITAL CITY BANK and, therefore, CAPITAL CITY BANK and CAPITAL CITY BANK GROUP are essentially the same marks." *Id.* at 1656.[98]

Here, the Board properly found that, like the term "BANK" in *Hana Financial* and *American Security Bank* and the term "GROUP" in *Citigroup*, the term "MUSIC" in Apple's APPLE MUSIC mark "does not

---

[98] Case law from the regional circuits is to similar effect. *See, e.g.*, *AWGI, L.L.C. v. Atlas Trucking Co.*, No. 17-12131, 2020 WL 3546100, at *41-42 (E.D. Mich. June 30, 2020) ("ATLAS LOGISTICS and ATLAS differ only in the most meaningless way: the addition of the generic word 'logistics,' which adds nothing to the origin-indicating significance of ATLAS.... Because the commercial impression of ATLAS and ATLAS LOGISTICS is the same, Plaintiffs can tack their use of ATLAS LOGISTICS onto their prior use of ATLAS, which gives them priority over Defendants."), *aff'd*, 998 F.3d 258 (6th Cir. 2021); *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1263 (N.D. Fla. 2016) ("[T]his Court is confident that [the defendant] would be able to convince a jury that UBER and UBERCAB [for rideshare services] would be 'considered the same mark' by a reasonable consumer." (citation omitted)); *D & J Master Clean, Inc. v. Servicemaster Co.*, 181 F. Supp. 2d 821, 825 (S.D. Ohio 2002) ("[Defendant's] appendage of the generic term '*Clean*' to its long-established primary mark, *ServiceMASTER*, is covered by the tacking rule.... [Defendant's] decision to modify slightly its mark was reasonable and lawful. The word '*Clean'* is purely descriptive and adds nothing of significance to the original mark.").

create a different commercial impression because it is generic when used in connection with sound recordings and the production and distribution of sound recordings."[99] That is, "consumers familiar with the mark APPLE for musical sound recordings will get no more information from the mark APPLE MUSIC because the term MUSIC conveys no more information to consumers than they already have."[100]

Ample record evidence supports this finding. As the Board found, that evidence includes the following:

- Apple Corps historically "has used variations of the APPLE mark, with APPLE as the dominant element, to identify its musical recordings."[101] This "long use of other generic terms with APPLE, i.e., APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS, and the representation of an apple, suggests that consumers already are accustomed to seeing slight variations in Apple Corps' APPLE mark."[102] This use "inures to Applicant's benefit."[103]

---

99 Appx00050.
100 Appx00062-00063.
101 Appx00050; *see* Appx07890-07895.
102 Appx00051.
103 Appx00050.

- Given the rapidly-changing technologies associated with the distribution of sound recordings, it would "not be unexpected for a company to update their mark to incorporate more modern and inclusive terminology by adopting the term MUSIC in place of terms such as RECORDS or FILMS."[104] As the Board properly concluded, the result is the same; "both APPLE and APPLE MUSIC" convey to consumers the impression of "an entity named APPLE that is the source of musical sound recordings."[105]

Bertini does not engage with any of these factual findings, but instead spends a dozen pages of his principal brief arguing variations on the themes that (a) "Apple didn't offer substantial evidence supporting the allegation that 'music' is generic" for Apple's services, and (b) the evidence supported Bertini's conclusion that MUSIC is "suggestive" of Apple's music services and the "unitary" APPLE MUSIC mark is "bizarre and incongruous."[106] Neither argument is a basis for the reversal of the Board's factual findings.

---

[104] Appx00051.
[105] Appx00061.
[106] Br. at 37, 40.

First, the record is replete with evidence that the term "MUSIC" in Apple's APPLE MUSIC mark is generic as applied to Apple's music services. To quote the Board,

> [i]t takes no great leap of deduction to find that MUSIC is generic when used in connection with musical sound recordings and the production and distribution of musical sound recordings. Indeed, virtually the entire record before us supports the determination that MUSIC is generic for Applicant's musical sound recordings and the production and distribution of musical sound recordings.[107]

That voluminous record includes documentary evidence showing the following:

- "Applicant submitted a dictionary definition of the term 'music' which defines the term as, inter alia, 'vocal, instrumental, or mechanical sounds having rhythm, melody, or harmony.'"[108]
- "Applicant also introduced more than twenty-five third-party registrations for marks incorporating the term MUSIC for various goods and services relating to music."[109]

[107] Appx00059.
[108] Appx00058; *see* Appx03494-03496.
[109] Appx00058; *see* Appx02595-02673.

- "All of these registrations—encompassing goods such as musical recordings or services such as music recording, production, distribution, streaming, and the like—disclaim the term MUSIC."[110]
- "The definition and third-party registrations support the finding that MUSIC is generic when used in connection with Applicant's goods and services."[111]
- "In addition, Applicant has disclaimed MUSIC in a number of its other APPLE MUSIC registrations," which "is an admission that a term is at least descriptive."[112]
- "Simply put, consumers do not just buy physical sound recordings, they buy music. The format of the music has changed over time—from phonographs, to cassettes, to CD's, and now to digital streaming—but the music stays the same, and that is what consumers are buying."[113]

In sum, the Board's finding that MUSIC is generic when used in connection with Apple's "musical sound recordings and the production

[110] Appx00058; *see* Appx02595-02673.
[111] Appx00058-00059; *see* Appx02595-02673, Appx03494-03496.
[112] Appx00058-00059; *see* Appx02465-02472.
[113] Appx00060; *see* Appx02729-02732.

and distribution of musical sound recordings" is exceedingly well supported by substantial evidence,[114] as well as by common sense. Bertini's apparent disagreement with the Board's conclusion does not support reversal of the Board's factual findings. *On-Line Careline*, 229 F.3d at 1086 ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the Board's] finding from being supported by substantial evidence." (citation omitted)).

Nor is there any merit to Bertini's argument that the Board focused too much on the term "MUSIC" and should have treated APPLE MUSIC as a "unitary mark" having "a bizarre and incongruous meaning" as applied to Apple's services because "[t]he common word 'apple' refers to a fruit."[115] In addition to straining credulity, this argument "simply has no evidentiary support."[116] To the contrary, the record evidence showed that both Apple *and* Apple Corps have a long-standing practice of using a variety of marks with "APPLE as the dominant element" to identify musical recordings.[117] In each case, as the Board properly found, "[c]onsumers

---

[114] Appx00060.
[115] Br. at 37.
[116] Appx00062.
[117] *See, e.g.*, Appx02728-02730, Appx02743, Appx02746-02750, Appx07890, Appx07895.

would know they were dealing with a music company."[118] Accordingly, "the marks APPLE and APPLE MUSIC are 'legal equivalents.'"[119]

#### 2. Substantial Evidence Supports the Board's Finding that Apple's Offerings "Are the Same as They Always Have Been," and "Only the Format" Has Changed.[120]

Based on the voluminous trial record, the Board found "the sound recordings identified in [Apple's] registrations to be 'the same or similar' for purposes of tacking as the "production and distribution of sound recordings" identified in [Apple's] application," as "sound recordings are inseparable from the production and distribution of sound recordings."[121] In part because of this finding, the Board concluded that Apple had demonstrated its use of the APPLE mark on the same or similar goods or services for which it seeks to register APPLE MUSIC. *See Baroid*, 24 U.S.P.Q.2d at 1051 (noting that tacking is permitted when the marks at issue are used in connection with "the same *or similar* goods" (emphasis

[118] Appx00050; *see also* Appx00063.
[119] Appx00051.
[120] Appx00066-00067.
[121] Appx00051-00052.

added)); *Big Blue*, 19 U.S.P.Q.2d at 1075 (permitting tacking "when the two sets of goods or services are 'substantially identical'").[122]

Bertini argues this finding is unsupported because Apple neither argued in its trial brief nor adduced any evidence showing that its APPLE MUSIC mark "for services" could convey the same, continuing commercial impression as its APPLE mark "for goods."[123] In fact, Apple devoted whole sections of its trial brief to the similarities between (a) the sound recordings Apple Corps produced and distributed under the APPLE mark and (b) Apple's production and distribution of sound recordings (in the same and different formats) under the APPLE MUSIC mark.[124] Apple supported those arguments by submitting a volume of evidence, including Mr. Jones' and Mr. La Perle's testimonial

[122] Bertini presses the semantic argument that the Board should have used the "substantially identical" test in *Big Blue*, 19 U.S.P.Q.2d at 1075, instead of the "same or similar" test in *Baroid*, 24 U.S.P.Q.2d at 1051. *See* Br. at 17-18. Yet, the Board specifically found that "[u]nder either test, consumers will not be misled because Applicant's products are the same as they always have been: musical sound recordings." Appx00066.
[123] Br. at 16-17.
[124] *See, e.g.*, Appx08295-08350.

declarations, which together contained hundreds of pages of testimony and exhibits.[125]

Far from deciding the issue "*sua sponte*," as Bertini contends,[126] the Board decided a factual issue obviously in dispute and supported that decision with citations to the record. For example, the Board credited Mr. Jones's testimony when finding that "Apple Corps has been involved in the production and distribution of some of the *most famous sound recordings ever created*," and Apple Corps or its affiliates and licensees "produced and distributed sound recordings under its ... APPLE word mark for The Beatles and other famous recording artists."[127] The Board then "devoted more than seventeen pages to discussing Apple Corps' musical sound recordings produced in various formats,"[128] finding the "change from a physical format to a digital format" to be "a permissible change

---

[125] *See* Appx02719-02993 (Jones Decl.), Appx07883-08216 (La Perle Decl.).

[126] Br. at 16.

[127] Appx00052 (quoting Jones Decl. ¶ 4, Appx02721-02722 (emphasis in original)).

[128] Appx00064.

expected by consumers."[129] The Board's conclusion on Bertini's motion for reconsideration was even clearer:

> As we noted in our decision, in 2015, Applicant "launched the APPLE MUSIC streaming service for publishing and distributing music. APPLE MUSIC provides consumers access to Applicant's music catalog comprising some 60 million songs." Through its APPLE MUSIC service, Applicant is delivering to consumers the same product, musical sound recordings, as those identified in the '964 registration. Only the format of the musical recordings have changed from those set forth in the '964 registration, i.e., gramophone records and audio compact discs featuring music to streaming music files. The music is still the same and comes from the same source.[130]

At bottom, Bertini's complaint is not that the Board exceeded its authority, or that its findings lack evidentiary support. Rather, Bertini's

---

[129] The Board's decision on reconsideration observed that "the USPTO has recognized the problem of evolving technology and static trademark registrations by establishing The Technology Evolution Pilot Program which allows registrants to update the terminology in their registrations without filing new applications." Appx00067 n.26. Bertini takes issue with this observation, arguing the Board dismissed his opposition "based on [this] possible future regulation," which "presents the appearance of bias." Br. at 54. There is absolutely no support for this accusation. *See infra* Part II(E).

[130] Appx00067-00068 (citing Appx00025, Appx00051).

complaint is that the Board was unpersuaded by his argument that services cannot be tacked to goods as a matter of law.[131] The Board properly declined to adopt such a rule because it would directly contravene the Supreme Court's holding in *Hana Financial*, i.e., that "the tacking inquiry operates from the perspective of an ordinary purchaser or consumer" and therefore requires a "fact-intensive answer." *Hana Fin.*, 574 U.S. at 420, 422.

Here, the Board's "fact-intensive answer," *id.*, was that "sound recordings are inseparable from the production and distribution of sound recordings," and therefore tacking is appropriate.[132] Moreover, the record is devoid of any evidence suggesting that consumers of music are attuned

---

[131] *See* Br. at 16. For example, Bertini argued then, and continues to argue now, that goods and services cannot be tacked because they are assigned different international classes. Br. at 19. However, as the Board properly found,

> The system for classification of goods and services was created for the convenience of the USPTO, and has no bearing on the issue of the relationship between goods and services.... "The separation of goods [or services] into the various classes of the classification schedule is merely a convenience for the Office and is not intended as a commentary on their relationship to one another in the marketplace."

Appx00069 (quoting *In re Sailerbrau Franz Sailer*, 23 U.S.P.Q.2d 1719, 1720 (T.T.A.B. 1992) (other citations omitted)).

[132] Appx00052.

to the distinctions between goods and services. Consumers do not approach commercial offerings with the sensibilities of trademark lawyers. Accordingly, the Board properly rejected Bertini's contentions that the sound recordings identified in Apple's trademark registrations somehow differ materially from the production of sound recordings identified in the Application.

#### 3. Substantial Evidence Supports the Board's Finding that Apple Has Absolute Priority.

Bertini further contends that even if Apple Corps' use predates his own, Apple cannot establish priority unless it can match *all* the services in its APPLE MUSIC application to *all* the goods in its APPLE registrations. This is an impossible standard that has never been the law governing trademark priority,[133] and, if adopted by this Court, would undermine

[133] Indeed, tacking has been found even in cases in which—unlike here—there is *no* direct overlap between a mark owner's original goods or services and those it eventually provides under its mark. *See, e.g.*, *Jimlar Corp. v. Army & Air Force Exch. Serv.*, 24 U.S.P.Q.2d 1216, 1221-22 (T.T.A.B. 1992) (finding tacking despite evolution of goods from boots to sneakers); *see also Vacuum-Elecs. Corp. v. Elec. Eng'g Co. of Cal.*, 150 U.S.P.Q. 215, 215, 216 (T.T.A.B. 1966) (dismissing opposition based on applicant's showing of priority "for goods [guided electronic missile components] closely related to those for which registration is presently being sought," "electronic apparatus, namely sockets, amplifiers, and . . . data handling systems"); *C.P. Ints., Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 700-01 (5th Cir. 2001) (declining to overturn jury finding of tacking despite

a mark owner's ability to rely upon tacking to update its mark in response to changes in technology or culture. If Bertini were correct on this point, *any* update to a mark or the products on which it appears would invite opportunistic claims of priority by parties claiming prior rights in ancillary or incidental goods or services—even if the update satisfies the tacking requirements. Such a rule risks producing a flood of commercial offerings under substantially the same mark by both trademark owners and infringers any time trademark owners saw fit to update their marks in accordance with established tacking doctrine.[134]

Fortunately, settled Board authority provides direction on this point, and that authority eviscerates Bertini's position. For example, in *H. Betti Indus. v. Brunswick Corp.*, 211 U.S.P.Q. 1188 (T.T.A.B. 1981), the bowling company, Brunswick, applied to register CROWN IMPERIAL for bowling balls on June 28, 1976. *Id.* at 1196. The opposer, Betti,

---

evolution of services from pool services and repair to pool construction services).

[134] For example, Bertini's rule would tolerate TOYOTA charging stations with no connection to Toyota Motor Corporation; a CITI mobile payment app with no connection to Citigroup; and KODAK digital imaging software with no connection to Eastman Kodak Company.

claimed unregistered use of the IMPERIAL mark and a crown in connection with billiard equipment from March 1972, and also claimed a likelihood of confusion based on the marks' use in connection with bowling balls and billiard equipment. *Id.* Although ultimately discounting Betti's evidence of prior use, the Board stated that, even if Betti could prove the March 1972 date, Brunswick's subsequent use of CROWN IMPERIAL for bowling balls was "closely related in the minds of purchasers" to its prior use of CROWN IMPERIAL for "capital bowling equipment"—bowling ball return racks, alley dusters, pinsetters, etc.—and therefore "tacking of the uses" was appropriate. *Id.* at 1194, 1198.[135]

Notably, the *Brunswick* Board found it "inconceivable" "that a bowler purchasing a bowling ball would associate the mark 'CROWN IMPERIAL' used thereon with any other source than Brunswick"—*including the intervening user*, *Betti*—which meant Brunswick, the applicant, had

[135] The Board reached this conclusion "even though the active sales of 'CROWN IMPERIAL' capital bowling equipment terminated in 1961," given the long duration of bowlers' association of Brunswick with bowling equipment, which was sufficient even in "1976 to support the new, related use on bowling balls." *Id.* at 1198. This reasoning applies with equal force here, given the "long duration" of consumers' association of Apple and its predecessor, Apple Corps, with production and distribution of sound recordings, which association was "sufficient even in [1985] to support the new, related" uses described in the Application. *See id.*

absolute priority in the bowling space. *Id.* In other words, although Brunswick's prior use was not for "bowling balls" *per se*, Betti could not block Brunswick from registering CROWN IMPERIAL for those goods, given their obvious relation in consumers' minds to the capital bowling equipment for which Brunswick demonstrated prior use.[136]

---

[136] Courts and the Board alike have reached similar results in the analogous abandonment context, in which "a change in the nomenclature of a product, the formulation or the primary purpose of a product, *or even a change in a type of product* does not constitute an abandonment of the mark used therewith." *Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801, 805 (Fed. Cir. 1984) (emphasis added) (quoting *E.I. du Pont de Nemours & Co. v. G.C. Murphy Co.*, 199 U.S.P.Q. 807, 813 (T.T.A.B. 1978)); *see also Fast Chem. Prods. Corp. v. Pillsbury Co.*, 132 U.S.P.Q. 561, 562 (T.T.A.B. 1962) (rejecting petition for cancellation arising from replacement of a powder laundry detergent with a liquid all-purpose cleaner on ground that "the mere fact that the formulae or primary use of the product may have been changed through the years does not constitute an abandonment of the mark"); *Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 331 F. Supp. 3d 581, 597 (E.D. La. 2018) ("Although the use of [the mark] has evolved over time, each prior use is substantially identical to its present use as a food hall."); *SurgiVision Consultants, Inc. v. SurgiVision, Inc.*, No. CV 10–03024 MMM (FFMx), 2011 WL 13214280, at *15 (C.D. Cal. Jan. 31, 2011) ("[T]here is no abandonment ... merely because use of the mark is shifted from one line of goods or services to another similar line.... The proper criterion is whether the buying public is likely to think that the new line of goods comes from the same source as the old line of goods." (second alteration in original) (citations omitted)); *Grocery Outlet Inc. v. Albertsons, Inc.*, No. C 06-02173 JSW, 2008 WL 5245962, at *8 n.2 (N.D. Cal. Dec. 17, 2008) ("Grocery Outlet's argument that the distinction between services and products ... is unpersuasive. Where, as here, the [grocery] goods and [grocery] services are so

This result is particularly appropriate where (as here) a producer is widely known for producing a particular category of goods or services—whether that producer is Brunswick for bowling equipment or Apple and its predecessor Apple Corps for production and distribution of sound recordings. Notably, however, the Board has reached the same result in cases involving far more obscure marks. For example, in *Bear Partnership & Wings Res. & Dev., S.R.L. v. Bear U.S.A., Inc.*, No. 91119974, 2004 WL 2901193 (T.T.A.B. Nov. 30, 2004) (nonprecedential), the applicant filed an intent-to-use application on February 26, 1996, to register BEAR & Design for clothing items including parkas, jackets, shirts, pants, underwear, hats, headbands, footwear, and "denim products." *Id.* at *1. The opposer claimed priority, documenting its use of the BEAR mark for those clothing items since 1994 or 1995. *Id.* Because the applicant could not rely on its constructive use date to prove priority, it introduced evidence supporting its use of a legally equivalent BEAR & Design mark in connection with "parkas and down vests since at least December of 1993." *Id.* at *4, *7 (emphasis added). This was sufficient for the Board to find

closely related, the use of one is sufficient to maintain rights in the other.").

that the opposer failed to "establish[] by a preponderance of evidence that it was using the BEAR trademark prior to applicant's December 1993 priority date." *Id.* at *6. The applicant therefore had absolute priority, and the Board dismissed the opposition as a result.

Bertini has no answer to this authority. Instead, he misinterprets the following language from the Board's decision in *Big Blue*:[137]

> [T]he tacking of the use of a mark for certain goods or services onto the use of the same mark for other goods or services for the purposes of obtaining or maintaining a registration should be permitted only when the *two sets of goods or services* are "substantially identical."

*Big Blue*, 19 U.S.P.Q.2d at 1075 (emphasis added). However, the phrase "two sets of goods or services" in *Big Blue* clearly refers back to the "certain goods or services" that a party seeks to tack. Apple has satisfied this rule by tacking its long-standing use of the APPLE mark for "sound recordings" to the substantially identical services of "production and distribution of sound recordings." Thus, *Big Blue* speaks to a different issue, and the Board properly held here that "[n]either Opposer nor Applicant need prove, and we need not find, priority as to each service listed in the respective recitations of services. It is sufficient to find

[137] Br. at 18-19.

priority as to any service encompassed by the application and registration."[138]

Apple has absolute priority here. At trial, Apple introduced substantial evidence establishing its entitlement to tack its production and distribution of sound recordings under the APPLE MUSIC mark to Apple Corps' sound recordings of The Beatles and others under the APPLE mark, dating back to 1968. The Board properly credited this evidence, finding that

> [t]hrough its APPLE MUSIC service, Applicant is delivering to consumers the same product, musical sound recordings, as those identified in the '964 registration. Only the format of the musical recordings have changed from those set forth in the '964 registration, i.e., gramophone records and audio compact discs featuring music to streaming music files. The music is still the same and comes from the same source.[139]

In other words, given Apple's absolute priority in the APPLE mark for musical sound recordings, consumers purchasing music under the APPLE MUSIC mark would not associate that music with anyone other than Apple—including Bertini, the intervening user.

---

[138] Appx00015-00016.
[139] Appx00067-00068.

In sum, the Board properly held that Apple "need only establish priority by tacking its earlier use of the APPLE mark on musical sound recordings to a service encompassed by [both] its application and [Bertini's] services."[140] Apple did so. Because substantial evidence and testimony established that Apple's use of APPLE for musical sound recordings dates to 1968, and Bertini's use of APPLE JAZZ for musical sound recordings did not begin until at least 1985, Apple has absolute priority. The Board therefore properly found that "[i]n view of Applicant's earlier priority date, Opposer has not established the necessary element of priority required to prevail."[141]

### D. The Board Properly Exercised Its Discretion Not to Draw an Adverse Inference from Apple's Failure to Produce Settlement Agreements between Apple and Apple Corps That Were Not Responsive to Bertini's Discovery Requests.

Bertini's principal brief also rehashes his arguments concerning documents that he contends Apple did not produce in discovery. The Board order on which Bertini relies required Apple to produce agreements between Apple and Apple Corps *showing the extent of Apple's*

[140] Appx00065.
[141] Appx00052.

*rights to the marks at issue in the opposition*.[142] Pursuant to that Order, Apple truthfully advised Bertini that the only such operative agreement was a 2007 agreement between Apple and Apple Corps, and Apple produced a copy of that 2007 Agreement with no contemporary objection by Bertini. Nonetheless, Bertini argues the Board should have drawn an adverse inference from the fact that Apple did not produce other agreements.[143]

The Board properly recognized that it was improper for Bertini to sit silently on his disagreement with Apple's contention that production of the 2007 Agreement satisfied Apple's discovery obligations. If Bertini disagreed with Apple's position, the time to have raised that disagreement was prior to final briefing before the Board. Thus, the Board properly declined to "draw any adverse inferences from Applicant's failure to produce the [1981 and 1991] settlement agreements" because Bertini "did not object to [Apple's] omissions, and [Apple] does not seek to rely on them."[144]

---

[142] Appx00575-00576.
[143] Br. at 49.
[144] Appx00009.

The decision whether to draw an adverse inference was entirely within the Board's discretion, and the Board did not abuse that discretion here. *See VisionQuest Indus. v. SurgiTech, Inc.*, No. 91163140, 2008 WL 4233881, at *2 (T.T.A.B. Sept. 4, 2008) (nonprecedential) (declining to draw adverse inference where "opposer did not file a timely motion to compel discovery"); *Stockpot, Inc. v. Stock Pot Rest., Inc.*, 220 U.S.P.Q. 52, 55 (T.T.A.B. 1983) (where petitioner's prior adoption and use of STOCK-POT for restaurant services was "clear from the record" but respondent "maintain[ed] throughout that petitioner's evidence [was] insufficient," concluding it would "not [be] warranted by the facts or law" to draw an adverse inference from "petitioner's failure to produce any menus or signs demonstrating use of 'STOCKPOT' for the period prior to respondent's first use").

**E. Bertini's Bias Arguments Are Meritless.**

Finally, Bertini argues that the Board's final decision was biased. His only "evidence" for this is the Board's rejection of his arguments and its ruling against him, so he now seeks permission to add to the trial record certain documents concerning tenuous and ordinary professional contacts between one judge on the panel—at a time when this judge was

in private practice—and two attorneys representing Apple as outside counsel in this matter. Bertini's allegations of bias are without merit, as are his arguments for adding documents to the trial record. This Court should give them no weight and should deny Bertini's pending motion to supplement.[145]

Bertini's bias argument rests primarily upon his contention that one of the three Board judges rendering the final decision, the Honorable Jonathan Hudis, "had significant business and professional relationships with two of the Kilpatrick Townsend partners representing Apple" prior to his joining the Board.[146] Bertini also contends that Jennifer Elgin, the Interlocutory Attorney assigned to the case, was of counsel to Kilpatrick Townsend *nearly seventeen years ago*.[147] These alleged contacts are precisely the type of fleeting or distant professional contacts routinely found insufficient to establish bias.

---

[145] Bertini's October 15, 2021, motion sought to supplement the record on appeal to include the documents he contends support a finding of bias. Dkt. 10. This Court's November 22, 2021, Order, among other things, deferred decision on that motion to the merits panel. Dkt. 14.

[146] Br. at 50. Bertini then makes the leap to argue that, in disagreeing with his arguments, *all three Board judges* "show[ed] the appearance of bias." Br. at 55. Bertini's willingness to cast aspersions on the entirety of the panel is remarkable and unfounded.

[147] Appx08709.

Tellingly, Bertini does not even mention the standard governing his allegations of bias. His motion to supplement the record before this Court incorrectly asserts that the Board was subject to the recusal standard in 28 U.S.C. § 455.[148] Apple's response pointed out that Section 455 governs recusal of *judicial* officials, but that Board judges sit in the executive branch and are therefore subject to the ethical guidelines of the Department of Commerce, as set forth in 5 C.F.R. Part 2635.[149]

Bertini's principal brief simply omits any mention of the governing standard—with good reason, as it undermines his claim. Department of Commerce Guidelines require recusal in circumstances in which a Board

---

[148] To disqualify a judge under 28 U.S.C. § 455(b)(1), Bertini would have to prove bias "by compelling evidence," and "[t]he bias or prejudice 'must be grounded in some personal animus or malice that the judge harbors ... of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes.'" *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002) (second alteration in original) (citation omitted).

[149] As administrative law judges, Board judges fall outside the definition of "judge of the United States" as 28 U.S.C. § 451 defines that term. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1114-15 (9th Cir. 2003) (holding administrative law judges do not fall within 28 U.S.C. § 455); *Greenberg v. Bd. of Governors of Fed. Rsrv. Sys.*, 968 F.2d 164, 166-67 (2d Cir. 1992) (same); *see also Prospector Cap. Partners, Inc. v. Dttm Operations LLC*, 123 U.S.P.Q.2d 1832, 1834 (T.T.A.B. 2017) (properly holding the judicial disqualification provision in 28 U.S.C. § 455 inapplicable to Board proceedings).

judge would otherwise serve on a matter where one of the parties is (or is represented by): (a) someone with whom the judge has or seeks a financial or business relationship; (b) a close relative; (c) a household member; (d) an employer (or prospective employer); (e) a client of a parent, spouse, or dependent child or an organization in which any of them serves as an officer or director; (f) a former employer or client for a period of one year after the judge left employment, or two years for a political appointee or if the judge received an extraordinary severance payment; or (g) an organization in which the judge is an active participant. *See* 5 C.F.R. Part 2635.

Bertini does not contend that any of these ethical guidelines is implicated here, nor could he, as neither Apple nor its counsel fall into any enumerated category. To the contrary, Bertini's research uncovered only the most routine of professional contacts:

- Prior to joining the Board, Judge Hudis edited a practitioner's guide entitled *A Legal Strategist's Guide to Trademark Trial and Appeal Board Practice*. Kilpatrick Townsend partner William Bryner, one

of Apple's lawyers in this matter, co-authored a single chapter in that work.[150]

- Kilpatrick Townsend partner Theodore Davis, another lawyer representing Apple in this matter, has edited a new version of *A Legal Strategist's Guide to Trademark Trial and Appeal Board Practice*, taking over that role from Judge Hudis.[151]
- Judge Hudis and Mr. Davis have both served as officers on the Intellectual Property Section of the American Bar Association "at the same time or approximately the same time."[152]
- "Both Messrs. Hudis and Davis have appeared at USPTO public meetings together."[153]
- "Both [Messrs. Hudis and Davis] have served on the AIPLA's Board of Directors."[154]

---

[150] Br. at 51.
[151] Br. at 51.
[152] Br. at 51.
[153] Br. at 52.
[154] Br. at 52. Bertini does not assert that Judge Hudis's and Mr. Davis's tenures on the AIPLA board overlapped in any way.

These professional contacts do not implicate any of the ethical guidelines set forth in 5 C.F.R. Part 2635,[155] and neither does the fact that Interlocutory Attorney Jennifer Elgin last worked for Kilpatrick Townsend in 2005. In short, Bertini's bias argument is wholly unsupported.

Finally, Bertini alludes to a conspiracy in observing that the composition of the Board panel changed between summary judgment and final decision.[156] What Bertini fails to mention (or does not understand) is that Board panels are routinely recomposed; thus, it is not uncommon for one panel to rule at an intermediate stage of a proceeding and a different

---

[155] In fact, even under the heightened standard applicable to a federal district court (as opposed to the Board), there would be nothing improper about Judge Hudis serving on the panel in this Opposition. *See Parrish v. Bd. of Comm'rs of Ala. State Bar*, 524 F.2d 98, 104 (5th Cir. 1975) (affirming denial of motion to disqualify based on a finding that the court's "acquaintanceship or friendship with witnesses and defense counsel .... [did] not exceed what might be expected as background or associational activities with respect to the usual district judge"); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524-28 (11th Cir. 1988) (finding failure to disqualify harmless error where the judge's law clerk's father—who himself had been the judge's law clerk—was a partner in the law firm representing one of the parties).

[156] Br. at 50.

panel to rule at trial.[157] Such administrative changes are inherent to the Board's status as an *executive branch* adjudicatory body.

As the Supreme Court recently held in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), the constitutionality of the appointment of inferior officers of the United States—such as the Board's administrative law judges—depends upon oversight of the Board by the Director of the Patent and Trademark Office. *Id.* at 1987-88. The Lanham Act provides for just such Director oversight. *See* 15 U.S.C. §§ 1068, 1070, 1074. In exercising this statutory authority, and in accordance with the Constitution, the "Director has discretion regarding the size and composition of TTAB panels, which the Director can exercise pursuant to his authority to establish rules and regulations governing procedures before the TTAB." *Piano Factory Grp. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 1372 (Fed. Cir. 2021).

In sum, Bertini finds conspiracy and bias in the ordinary workings of the Board, which sifted through a voluminous record and ruled against Bertini in a 52-page decision amply supported by substantial evidence.

---

[157] *See, e.g.*, Board Proceeding Nos. 91241549, 91247770, 91245750, 92065804, 91241842, 92067143, 91241107, 91205331, 92056381, 91232597, 92065178, 92063808, 92058609, and 92065388.

The Board's reasoned decision was neither the product of bias nor a violation of Bertini's right to due process.[158] This Court should reject Bertini's motion to supplement the record and give no weight to his allegations of bias.

## CONCLUSION

Substantial evidence and testimony support the Board's findings that Apple sufficiently pleaded and established tacking because its APPLE and APPLE MUSIC marks convey the same, continuing commercial impression and therefore are legal equivalents. The Board also properly exercised its discretion both to credit Mr. Jones's testimony and to decline to draw an adverse inference from Apple's alleged failure to produce (nonresponsive) settlement agreements, to which Bertini did not timely object. None of those decisions resulted from bias, as Bertini

[158] *See In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1368 (Fed. Cir. 1999) ("IFF was provided a full opportunity to prosecute its applications and to appeal the examining attorney's final rejections to the Board. The Board fully considered IFF's arguments and affirmed the rejection in a detailed written decision setting forth the reasons for the rejection. More importantly, IFF has not demonstrated that it has a constitutionally protected property interest in obtaining federal registration of its 'phantom' marks. There is no constitutionally protected right to federal registration of any mark.").

alleges on appeal. Apple therefore respectfully asks this Court to affirm the dismissal of Bertini's Notice of Opposition.

Dated: March 4, 2022

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/Joseph Petersen*

Joseph Petersen
1302 El Camino Real, Suite 175
Menlo Park, California 94025
(650) 614-6427
*jpetersen@kilpatricktownsend.com*

J. David Mayberry
Theodore H. Davis Jr.
Sara K. Stadler
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
(212) 775-8830
*dmayberry@kilpatricktownsend.com*
*tdavis@kilpatricktownsend.com*
*sstadler@kilpatricktownsend.com*

William M. Bryner
1001 W. Fourth Street
Winston-Salem, North Carolina 27101
(336) 607-7482
*bbryner@kilpatricktownsend.com*

*Attorneys for Appellee Apple Inc.*

## **CERTIFICATE OF COMPLIANCE**

Apple's counsel certify that this brief complies with the spacing, typeface, and style requirements of Federal Circuit Rule 32(b)(1) and contains 11,868 words excluding the cover page, certificate of interest, table of contents, table of authorities, statement of related cases, signature block, and certificates of compliance and service.

/s/*Joseph Petersen*
Joseph Petersen
KILPATRICK TOWNSEND & STOCKTON LLP

*Attorney for Appellee Apple Inc.*