No. 2021-2301

# United States Court of Appeals for the Federal Circuit

CHARLES BERTINI,
Appellant,

v.

APPLE INC.,
Appellee

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in Case No. 91229891
before Kuczma, Shaw and Hudis, Administrative Law Judges

**REPLY BRIEF OF APPELLANT CHARLES BERTINI**

James Bertini
423 Kalamath Street
Denver, CO 809204
303 572-3122
jamesbertini@yahoo.com

*Counsel for Charles Bertini*

## CERTIFICATE OF INTEREST

Counsel for Appellant, James Bertini, certifies the following:

1. The full name of every party or amicus represented in the case by me is: Charles Bertini.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
None.

3. All parent corporations and any publicly held companies that own ten percent (10%) or more of the stock of the party or amicus curiae represented by me are:
None.

4. The names of all law firms and the partners or associates that appeared for the party or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.
None/Not applicable

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal:

Charles Bertini v. Apple Inc.
Cancellation No. 92068213
Trademark Trial and Appeal Board, US Patent and Trademark Office

This Cancellation case was submitted for final decision on February 23, 2021. The USPTO website states that cancellation cases are decided in approximately ten weeks, *but this case has not been decided for 13 months.* On February 9, 2022 the TTAB *officially* suspended this case, stating its sudden belief that the Cancellation case could be affected by a decision in this Opposition case on Appeal which now "came to its attention", even though Bertini advised the TTAB about the Opposition case *four years ago.*

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6):
N/A.

Dated: March 25, 2022

/s/ James Bertini
James Bertini
Attorney for Appellant
CHARLES BERTINI

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST....................................................................i

TABLE OF CONTENTS.......................................................................iii

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION……………………………………………………….……..1

I. ARGUMENT…………………………………………………………2

A. The Board Erred in Giving Consideration to an Unpleaded Defense…...2

B. The Board Erred in Giving Consideration to Opaque and Insufficiently Developed Arguments……………………..……………………………..8

C. The Board Erred in Finding That the Term "music" is Generic in Reference to Production and Distribution of Sound Recordings…………..12

D. The Board Erred in Finding How Consumers View the Marks APPLE and APPLE MUSIC………………...……………………………………14

E. The Board Erred in Its Interpretation of Case Law for Comparison of Marks for Tacking Purposes………………………………………………17

F. The Board Erred in Finding That APPLE and APPLE MUSIC are Legal Equivalents……………………………………………………………21

G. Mr. Jones' Testimony is Indefinite and Internally Inconsistent………..22

H. Apple Attempts to Excuse the Board's Refusal to Make a Negative Inference, but Its Arguments Prove Board Error *a fortiori*……………..…25

I. Cases Relied on in Apple's Brief Do Not Support Its Position or the Board's Decision…………………………………………………………...26

II. CONCLUSION AND STATEMENT OF RELIEF SOUGHT……....29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Records, v. Capitol Records,*
137 A.D.2d 50, 529 N.Y.S.2d 279 (1988)…………………….….…5, 23

*AWGI, L.L.C. v. Atlas Trucking Co.,* No. 17-12131, 2020 WL 3546100 (E.D. Mich. June 30, 2020), aff'd, 998 F.3d 258 (6th Cir. 2021)….….…..26

*Bear P'ship & Wings Res. & Dev., S.R.L. v. Bear U.S.A., Inc.,* No. 91119974, 2004 WL 2901193 (T.T.A.B. Nov. 30, 2004)……………………..…..27

*Big Blue Prods. Inc. v. Int'l Bus. Machines Corp*.,
19 USPQ2d 1072 (TTAB 1991)………………………….…….…18, 27

*Brooklyn Brewery Corporation v. Brooklyn Brew Shop, LLC*,
Lexis 32201, 2021 USPQ2d (BNA) 1069, 2021 WL 4979028 (Fed. Cir. 2021)…………………………………………………..….17

*C.P. Ints., Inc. v. Cal. Pools, Inc.,* 238 F.3d 690 (5th Cir. 2001)……….….27

*Commscope Technologies LLC v. Commscope Connectivity LLC,* 2020-1817, 2020-1818, 10 (Fed. Cir. 2021)……………………………..….7, 11

*D & J Master Clean, Inc. v. Servicemaster Co.,*
181 F. Supp. 2d 821 (S.D. Ohio 2002)…………………………...…27

*Fast Chem. Prods. Corp. v. Pillsbury Co.,*
132 U.S.P.Q. 561 (T.T.A.B. 1962)……………………………….…26

*Fresenius USA v. Baxter Int'l,* 582 F.3d 1288 (Fed. Cir. 2009)…………...28

*Grocery Outlet Inc. v. Albertsons, Inc.,* No. C 06-02173 JSW, 2008 WL 5245962 (N.D. Cal. Dec. 17, 2008)……………………………....26

*H. Betti Indus. v. Brunswick Corp.,* 211 U.S.P.Q. 1188 (T.T.A.B. 1981)....28

*H.D. Lee Co. v. Maidenform Inc.*,
87 USPQ2d 1715 (TTAB 2008)……………………………………..….4

*Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.,*
331 F. Supp. 3d 581 (E.D. La. 2018)…………….…………….....…..27

*IdeasOne Inc. v. Nationwide Better Health Inc.*,
89 USPQ2d 1952 (TTAB 2009)……………………………………..….3

*In re E. I. du Pont de Nemours & Co.*,
476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973)……………………26

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000)………………….…….13, 15

*In re Hotels.com*, 573 F.3d 1300 (Fed. Cir. 2009)……………………...….13

*In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 828 F.2d 1567, 4
USPQ2d 1141 (Fed. Cir. 1987*)*…………………………….....……13

*In re Nat'l Data Corp*, 753 F.2d 1059 (Fed. Cir. 1985)……………………15

*In re Reed Elsevier Props., Inc*., 482 F.3d 1376, 1378 (Fed. Cir. 2007)…...13

*In re Sailerbrau Franz Sailer,* 23 U.S.P.Q.2d 1719 (T.T.A.B. 1992)……...19

*Jimlar Corp. v. Army & Air Force Exch. Serv.,*
24 U.S.P.Q.2d 1216 (T.T.A.B. 1992)………………………………27

*Moke America LLC v. Moke USA, LLC,*
2020 USPQ2d 10400 (TTAB 2020)………………………………….7

*Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006)……….7, 11

*Nahshin v. Product Source International LLC,*
107 USPQ2d 1257 (TTAB 2013)…………………...………………12

*Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana, Inc.*,
98 USPQ2d 1921, 1926 (TTAB 2011),
*aff'd* 188 F. Supp. 3d 22 (D.D.C. 2016)……………………………2, 8

*Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*,
746 F.2d 801 (Fed. Cir. 1984)……………………………..……..26

*Rockwood Chocolate*,
372 F.2d 552, 554 (CCPA 1967) ………………………..….24, 26, 28

*Specialty Brands, Inc. v. Coffee Bean Distribs., Inc*., 748 F.2d 669,
672 (Fed. Cir. 1984)………………………………………………....17

*SurgiVision Consultants, Inc. v. SurgiVision, Inc.,* No. CV 10–03024 MMM
(FFMx), 2011 WL 13214280 (C.D. Cal. Jan. 31, 2011)……………..…26

*Symbol Techs., Inc. v. Opticon, Inc.,* 935 F.2d 1569 (Fed. Cir. 1991)……..28

*Vacuum-Elecs. Corp. v. Elec. Eng'g Co. of Cal.,*
150 U.S.P.Q. 215 (T.T.A.B. 1966)…………………………..……27

*Uber Promotions, Inc. v. Uber Techs., Inc.,*
162 F. Supp. 3d 1253 (N.D. Fla. 2016)…………………………..…27

*WeaponX Performance Prods. Ltd. v. Weapon X Motorsports, Inc.,*
126 U.S.P.Q.2d 1034 (T.T.A.B. 2018)……………………...……29

**International Treaties**

Nice Agreement…………………………………………..…………..20

**Statutes**

15 U.S.C. § 1052(d)……………………..……………………..20, 24

15 U.S.C. § 1127……………..……………………………………24

**Rules**

Federal Rules of Evidence Rule 201……..……………………..……..10

**Regulations**

Trademark Manual of Examining Procedures §1401.02 *et. seq*..…………20

Trademark Manual of Examining Procedures §1402.01..……………...…20

Trademark Trial and Appeal Board Manual of Procedures §801.01………..9

37 C.F.R. § 2.122(b)(2)……………………...…………………………..24

37 C.F.R. § 2.85…………………....……...………………………………20

37 C.F.R. § 6.1……………………………..………………………………20

## INTRODUCTION

When Bertini began using APPLE JAZZ in June 1985, Apple was known as Apple Computer (Appx07885) and it didn't provide any entertainment services in Class 41. Appx01990-01991. A foreign company, Apple Corp, did not file any applications for mark APPLE at the USPTO on or before June 5, 1985. Appx02019.

Now according to Apple, Bertini, as a true user of his mark APPLE JAZZ since June 1985, should lose his trademark rights to Apple. Apple didn't use its mark APPLE MUSIC until 2015 but claims tacking of APPLE MUSIC to unregistered service mark APPLE (purportedly used by a foreign company Apple Corps). APPLE for "production and distribution of sound recordings" is an unpleaded defense appearing for the first time in Apple's Trial Brief and opposed by Bertini. Appx08544. Bertini objected to all unpleaded defenses. Appx08535.

The statement that Bertini uses his mark only for an annual festival is misleading. Bertini demonstrated continuous use of his APPLE JAZZ mark for variety of services (Appx00080-00081) including his APPLE JAZZ concerts which continue to this day.

# I. ARGUMENT

In its Appeal Brief Apple makes multiple misleading statements, statements not supported by evidence and statements contradicting facts and evidence. To support its position, Apple refers to the Final Decision of the Board ("the Decision") or the Denial of Bertini's Motion for Reconsideration ("the Denial") because it can't refer to its Trial Brief since many arguments were not discussed or were insufficiently developed there.

## A. The Board Erred in Giving Consideration to an Unpleaded Defense

Apple states in Appeal Brief that it sufficiently pleaded a tacking defense. This is misleading because an unregistered service mark for "production and distribution of sound recordings" is not listed in any of its three registrations Apple relied for tacking. Appx01441-01442. *See Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana, Inc.*, 98 USPQ2d 1921, 1922 (TTAB 2011) (unpleaded affirmative defenses of prior registration defense and tacking not considered), aff'd 188 F. Supp. 3d 22 (D.D.C. 2016).

Apple in its Appeal Brief refers to its Answer where it claimed priority *"in the field of music, musical performances, and musical, cultural and entertainment events that predate those of Opposer."* However, the sentence continues: *"…by virtue of Apple's ownership of*

*the following federal trademark registrations…"* [Reg. Nos. 2,034,964 , 3,317,089 and 4,088,195]. Appx01441-01442. Only three registrations are listed as recognized by the Board (Appx00006), including two marks (Nos. 2,034,964 and 3,317,089) which previously belonged to Apple Corps. The claim that Bertini was on notice of "prior rights stemming from its predecessor's use of the APPLE word mark in connection with services" contradicts the fact that both of the above Apple Corps marks are for goods ("the Goods") and not for services. Appx01442.

The reference to priority "in the field of music, musical performances…" is too general to place Bertini on notice that "production and distribution of sound recordings" somehow can be included in one of these categories. *IdeasOne Inc. v. Nationwide Better Health Inc.,* 89 USPQ2d 1952, 1955 (TTAB 2009) (claim or defense must be specific enough to provide fair notice to adverse party of restriction being sought). In its Answer Apple clarified that this priority is by ownership of three registrations and Bertini relied on this defense of tacking APPLE MUSIC to these three registrations. Apple didn't demonstrate reliance on any common law service mark in its Answer (Appx08726-08727), *and didn't add any other mark for tacking in its Amended Answer* (Appx01441-01442) which became the Operative Pleading. Appx01584.

Apple didn't proceed to develop a tacking defense to any of the above three registrations in its Trial Brief. Now, Apple demands that this

Court accept its reliance on the unspecific defense of priority "in the field of music ..." instead of its clearly-pleaded three registrations. The law is clear: "… 'tacking' is a defense that must be pleaded … (i.e., a mark previously used by applicant that is the legal equivalent of applicant's opposed mark, and that provides the basis for applicant to claim prior use)." *H.D. Lee Co. v. Maidenform Inc.*, 87 USPQ2d 1715, 1720 (TTAB 2008). Apple claims that a service mark for "production and distribution of sound recordings" is a basis to claim prior use of its APPLE MUSIC via tacking, but it doesn't list this mark as affirmative defense as required. Bertini objected this unpleaded defense (Appx08544) because he could not be on notice that Apple would proceed with tacking to an unpleaded and unregistered service mark of its foreign predecessor.

Bertini relied on evidence presented that "production and distribution of sound records" was done by licensees as stated in the Application Reg. 2034964 ("the '964 mark"). Appx02166. Apple Corps never applied for registration of APPLE for entertainment services on or before June 5, 1985. Appx02019. Bertini had no reason to believe that experienced attorneys retained to apply for registrations of APPLE marks in 1995 (the '964 mark) and in 2004 (the '089 mark) would neglect to protect Apple Corps' rights in "production and distribution" if such services would be rendered in the U.S. Apple Corps - which fought for

its trademark rights with Apple Computer during two decades - would surely require such registration.

"Production and distribution of sound recordings" is not listed in pleaded Reg. 4,088,195 (Appx00088-00089). Bertini had no reason to believe that Apple's Senior Intellectual Property Counsel Thomas R. La Perle (a witness in this trial) could neglect to include services if they were used in commerce by Apple Corps, because since 2007 all APPLE marks used by Apple Corps have belonged to Apple (Appx08140) and Apple never missed a chance to protect its IP rights by timely registering marks for all goods and services used in commerce.

Bertini relied on a Court finding as evidence: "Even after the Beatles attained their remarkable degree of popularity and success, they still continued to rely on Capitol Records for the manufacture and distributing of their recordings." Appx02791. *Apple Records v. Capitol Records*, 137 A.D.2d 50, 529 N.Y.S.2d 279 (1988).

Referring to the above Bertini had no reason to believe that production and distribution services were provided by Apple Corps especially after "the Apple label was finally wound up" (Appx02068), and he couldn't expect Apple to proceed with tacking of an opposed mark to an unpleaded, unregistered service mark.

Despite the fact that the Board's Decision was made on an unpleaded defense, Apple makes its own interpretation about the Board's

finding: "[I]t found that Apple had priority because of its use of the mark in connection with sound recordings and film at least as early as 1968." Apple Br. at 33. This is speculation as shown below.

In its Trial Brief Apple clearly goes with tacking to the unregistered APPLE service mark and not to any mark for goods:

a) "Apple seeks to tack its constructive use of APPLE MUSIC for production and distribution of sound recordings to Apple Corps' use of APPLE for the very same services". Appx08331.

b) "Because Apple is entitled to tack its rights to those of Apple Corps… including with respect to services recited in the Application that are closely related to the production and distribution of sound recordings." Appx08304.

c) "establishing its entitlement to tack its May 18, 2015, constructive use date for APPLE MUSIC to its prior… use of APPLE for production and distribution of sound recordings dating to 1968." Appx08452.

The above statements show that Apple compares services listed in the Application for APPLE MUSIC ("the Services", Appx00077-00079) to the "production and distribution of sound recordings" service, not listed in any mark pleaded in its Amended Answer. Appx01441-01442.

There is no finding by the Board that Apple established a right in use of the APPLE mark on sound recordings back to at least June 12, 1985 to predate Bertini's date of first use. Since the '964 mark was

applied for registration only in 1995, Apple had to prove continuous use of this mark during 1985-1995 with clear and convincing evidence. With evidence presented (no record labels with APPLE mark dated for the period 1976-1992 – more than three years abandonment of the mark) the Board could not make such finding, and so tacking to pleaded '964 mark can give only a date in 1993 which is after Bertini's date of first use.

In its Appeal Brief Apple could not refer to any statement in its Trial Brief showing comparison of the Services to the Goods listed in the '964 mark. Apple didn't discuss any pleaded defense in its Trial Brief and therefore abandoned them. *Moke America LLC v. Moke USA, LLC,* 2020 USPQ2d 10400, at *1 n.5 (TTAB 2020) (affirmative defenses deemed waived because applicant did not discuss them in its trial brief).

Accepting Apple's interpretation means the Board made a *sua sponte* finding because it was not established or discussed in Apple's Trial Brief that "production and distribution of sound recordings" is substantially identical to "sound recordings". In *Commscope Technologies LLC v. Commscope Connectivity LLC,* 2020-1817, 2020-1818, 10 (Fed. Cir. 2021) the court rejected an opaque argument by a litigant by stating: "[E]ven if the argument were in the body of the brief, it is insufficiently developed." See *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006) ("In order for this court to reach the merits of an issue on appeal, it must be adequately developed."). Since this

argument was not discussed in Apple's Trial Brief - and obviously not adequately developed - the Board couldn't decide on something insufficiently developed.

The Board states that Apple "may claim priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968". This is clearly a finding for use of APPLE as a service mark. Apple sought tacking to the unpleaded service mark APPLE for production and distribution and the Board granted it in violation of law and its own rules. Appx00052. This decision based on an unpleaded defense must be reversed. See *Productos Lacteos, supra.*

Apple didn't pursue its pleaded defense and therefore it waived tacking of the '964 mark (for the Goods) to APPLE MUSIC for the Services. A decision based on insufficiently developed argument must be reversed.

**B. The Board Erred in Giving Consideration to Opaque and Insufficiently Developed Arguments**

In its Appeal Brief Apple makes a misleading statement: "The Board's conclusion rested on two findings of fact amply supported by the record, namely, that: (a) Apple's APPLE MUSIC and APPLE marks convey the same, continuing commercial impression, given the overwhelming consumer recognition of the APPLE mark and the lack of distinctiveness of MUSIC for recorded music; and (b) Apple's streaming

music service, and the services ancillary to it, are the modern equivalent of the sound recordings covered by Apple's Registration Nos. 2,034,964 and 3,317,089". Apple Br. at 7.

Apple couldn't refer to any portion of its Trial Brief to show a discussion of "the lack of distinctiveness of MUSIC for recorded music". As shown in Bertini's Appeal Brief (PP22-23), Apple made an unsupported allegation regarding genericness of the term "music" and didn't offer any substantial evidence to support this allegation. Apple didn't demonstrate that it presented in a systematic and coherent manner a discussion of the facts in light of the law in its Trial Brief (Trademark Trial and Appeal Board Manual of Procedures §801.01) to prove genericness or descriptiveness of term "music".

Apple didn't discuss in its Trial Brief and can refer only to the Decision to claim that "Given the progression of musical formats from vinyl records, to 8-track cartridges, to cassettes tapes, to compact discs, and now to streaming services, it would not be unexpected for a company to update their mark to incorporate more modern and inclusive terminology by adopting the term MUSIC in place of terms such as RECORDS or FILMS." Appx00051.

The statement by the Board that word "music" is inclusive for terms "films" and "records" (Appx00051) is not supported by any evidence and it contradicts the dictionary definitions in evidence. The

statement of the Board that "music" is more modern than "records" ("something on which sound or visual images have been recorded") or "films" ("motion picture") contradicts dictionary definitions. The word "music" in its primary meaning has been known since the 13th century (Appx08225-08226), and "films" and "records" could not be known before the 19th century when gramophones and photography were invented.

Rule 201 of the Federal Rules of Evidence, Judicial Notice of Adjudicative Facts, reads in part: "(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Bertini asks the Court to take judicial notice that words "records" and "films" in the above meanings were not known before the 19th century.

Apple didn't discuss or present evidence in its Trial Brief that Apple's streaming music service, and the services ancillary to it, are the modern equivalent of the sound recordings covered by the '964 mark. Apple couldn't point to any section of its Trial Brief to show discussion or evidence that "[a] change from a physical format to a digital format is … a permissible change expected by consumers." It is not reflected in

the Decision either, and only mentioned in the Denial, so Bertini had no chance to rebut it.

The argument that "sound recordings are inseparable from the production and distribution of sound recordings" (Appx00052) is not discussed in Apple's Trial Brief but used by the Board to support tacking. Bertini demonstrated in his Appeal Brief (PP11-12) that in fact production and distribution services were done by third parties and under third parties' marks, so services are separated from sound recordings.

Apple claims that "the Board properly found, "[a] change from a physical format to a digital format is … a permissible change expected by consumers." But this exchange was never discussed in Apple's Trial Brief. Apple refers to the Denial of Bertini's Motion for Reconsideration. Berini had no chance to rebut this theory because it was not presented or developed in Apple's Trial Brief.

There are other issues shown in Bertini's Appeal Brief and below that were not discussed or were insufficiently developed in Apple's Trial Brief. The Board neglected its duty to reject opaque arguments by Apple and not to give consideration to insufficiently developed arguments and arguments not presented in Apple's Trial Brief. *In Commscope Technologies, infra; Monsanto Co. v. Scruggs, infra.* The Decision permitting tacking is based on opaque and insufficiently developed arguments and therefore it must be reversed.

### C. The Board Erred in Finding That the Term "music" is Generic in Reference to Production and Distribution of Sound Recordings

The Board's conclusion that the APPLE MUSIC and APPLE marks convey the same, continuing commercial impression is completely based on the insufficiently developed argument that "music" is generic in reference to "production and distribution of sound recordings".

Apple merely mentioned in its Trial Brief that "music" is generic. Appx08422, Appx08441. "It is not sufficient to simply make this statement. Respondent was under a burden to take some affirmative action if it actually wished to pursue them." *Nahshin v. Product Source International LLC,* 107 USPQ2d 1257, 1264 n.13 (TTAB 2013). Even if pleading genericness of the term "music" was unnecessary and it is a part of Apple's tacking defense, Apple must prove it with substantial evidence to proceed with this defense, but Apple failed to do so and the Board accepted this.

Apple could not refer to any discussion in its Trial Brief regarding the dictionary definition of term "music", or use of term "music" in reference to "production and distribution of sound recordings" or the Services by consumers or the relevant public. Apple and the Board did not apply a required two-part inquiry used to determine whether a designation is generic in reference to goods or services.

In its Appeal Brief Apple referred to the Denial regarding submission of the dictionary definition of the term "music" and third-party registrations to support allegation of genericness, but the Board should not have given consideration to insufficiently developed arguments and to an argument not even mentioned in Apple's Trial Brief.

In any event, Apple couldn't demonstrate that the Board's factual finding of genericness of the term "music" was supported by clear and convincing evidence as required. *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 828 F.2d 1567, 1571, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987*); In re Hotels.com*. at 1301 (Fed. Cir. 2009); *In re Reed Elsevier Props., Inc*., 482 F.3d 1376, 1378 (Fed. Cir. 2007).

As is shown in Bertini's Appeal Brief (PP28-32) these arguments in the Denial can't prove genericness of the term "music" in reference to "production and distribution of sound recordings" or the Services.

Disclaimer of the term "music" in an application can't establish or prove genericness. (P29). Third-party registrations with such disclaimer can't be used to prove genericness. Bertini demonstrated with multiple copies of third-party registrations that marks can be registered without disclaimer of term "music", so this term is not considered generic for the same goods and services as in Apple registrations and its Application. The Board neglected its duty to take into account evidence that detracts from an agency's decision. *In Re Gartside*, 203 F.3d 1305, 1312 (Fed.

Cir. 2000). The Board made the Decision based on insufficiently developed arguments or arguments not discussed in Apple's Trial Brief.

Cases cited by the Board in the Denial don't support the allegation of genericness as shown in Bertini's Appeal Brief (PP30-31). The dictionary definition was not analyzed by Apple or the Board and Bertini demonstrated in his Appeal Brief that the dictionary definition of "music" also doesn't support alleged genericness in reference to "production and distribution of sound recordings or the Services. (PP30-31).

Neither Apple nor the Board could establish with substantial evidence that the term "music" is generic in reference to production and distribution of sound recordings or the Services, and Bertini demonstrated that this term is not generic (PP25-34), and therefore APPLE and APPLE MUSIC are not legal equivalents.

Apple failed to establish its unpleaded or pleaded tacking defense because it failed to prove genericness of the term "music" for the Services. Tacking APPLE to APPLE MUSIC should not be permitted because they are not legal equivalents, and the Decision should be reversed.

**D. The Board Erred in Finding How Consumers View the Marks APPLE and APPLE MUSIC**

Apple didn't point to any substantial evidence to support its statements that "consumers encountering the APPLE MUSIC mark will

(a) focus on the leading APPLE component". Appx08328. Apple could not point to any documents showing consumer recognition of mark APPLE for entertainment services or goods, so this allegation is insufficiently developed in its Trial Brief.

Documents presented show that consumers view APPLE as a reference to Apple Inc. and not to any goods or services (Bertini Appeal Brief PP48-49). Apple couldn't deny that the word "apple" is used in reference to Apple Inc. on its own website and used the same way by other media as shown in Bertini's Trial Brief and Appeal Brief (PP48-49). Board did not to take into account evidence that detracts from an agency's decision. *In Re Gartside*, supra.

Apple didn't point to any portion of its Trial Brief to demonstrate that sound recordings were sold by Apple under mark APPLE on its website or somewhere else. As with *In re Nat'l Data Corp*, 753 F.2d 1059 (Fed. Cir. 1985) ("The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO"), the public is unaware that Apple Corps sold its marks to Apple Computer. So Apple customers have no reason to associate marks used by The Beatles with Apple's goods or services.

Apple refers to the Board's argument that "Apple Corps' long use of other generic terms with APPLE, i.e., APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS, and … that consumers already

are accustomed to seeing slight variations in Apple Corps' APPLE mark." This statement is not supported by substantial evidence and it is not discussed in Apple's Trial Brief. Apple could not refer to its Trial Brief to show that any goods or services under these marks were offered to customers on the Apple website where all other services and goods are listed. Apple also ignores the fact that these marks were abandoned a few decades ago. Apple didn't offer any evidence that consumers would consider all the above marks as the same marks. Accordingly, APPLE RECORDS, APPLE FILMS and APPLE MUSIC are not "slight variations in APPLE mark".

Apple couldn't point to any survey to demonstrate how consumers view "apple" and "apple music", so the allegation that consumers "focus on the leading APPLE component" is speculation not supported by substantial evidence. Referring to the above, APPLE MUSIC consumers view this mark as a whole (as with other of Apple's marks).

When Bertini negotiated an Agreement with Apple Inc. in 2011, Apple's Legal Team didn't view that the APPLE '195 mark and APPLE JAZZ MUSIC are confusingly similar marks and the Agreement was signed without any objections. Bertini never received a cease and desist letter from Apple or anyone on its behalf or anyone in general regarding his use of Apple Jazz or AppleJazz Music. Appx01614.

Apple could not produce any documents "concerning confusion between customers of Apple Corps or Apple Computer, Inc. or Apple Inc., and customers of Apple Jazz from period June 5, 1985 to date." Appx01984-01985.

Consumers never were confused between APPLE and APPLE JAZZ marks because they view marks as whole. Consumers view APPLE MUSIC as whole mark, too.

Apple failed to prove that APPLE and APPLE MUSIC "create the same, continuing commercial impression so that consumers consider both as the same mark". The Board decision based on insufficiently developed arguments should be reversed.

**E. The Board Erred in Its Interpretation of Case Law for Comparison of Marks for Tacking Purposes**

Marks must be compared in their entireties and must be considered in connection with the particular goods or services for which they are used. *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 672 (Fed. Cir. 1984) ("the marks are viewed in their entireties"). The mark must be regarded as a whole, including the disclaimed matter, in evaluating similarity to other marks. *Brooklyn Brewery Corporation v. Brooklyn Brew Shop, LLC*, Lexis 32201, 2021 USPQ2d (BNA) 1069, 2021 WL 4979028 (Fed. Cir. 2021).

Even though the Board recognizes that: "[T]he standard of legal equivalence used in reviewing efforts to 'tack' the prior use of one mark onto that of another is higher than that used in evaluating two competing marks", the Board applied a lower standard for tacking in this case than for likelihood of confusion. The Board ignored a long list of the Services associated with APPLE MUSIC and compared only one service to an unregistered service mark APPLE or sound recordings.

The Board didn't try to evaluate genericness of "music" in reference to the Services (Appx00090-00091) for APPLE MUSIC while the mark is associated with all the Services. Bertini demonstrated that the genericness of "music" is not established in Apple's Trial Brief and "music" is not generic for any of the Services. (Bertini Appeal Br. 25-34).

The Board had no valid basis to exclude "music" and a long list of the Services when comparing APPLE and APPLE MUSIC marks.

Apple refers to many cases but none of them can overturn well-established requirements for comparison of marks, especially for tacking purposes. Apple could not refer to any case that overturned *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.,* 19 USPQ2d 1072, 1075 (TTAB 1991) ("the tacking of the use of a mark for certain goods or services onto the use of the same mark for other goods or services … should be permitted only when the two sets of goods or services are 'substantially identical"). The Board avoided comparing a long list of the Services to

"production and distribution of sound recordings" because they are obviously not substantially identical.

Apple didn't even try to compare the Services to the set of the Goods of the pleaded '964 mark. If the Decision can be interpreted that the Board made it on a pleaded defense by tacking the Goods to the Services, such finding would be considered made on insufficiently developed arguments and not supported by law. Neither Apple nor the Board could refer to any authorities in Apple's Trial Brief that supports tacking goods to services. Tacking of APPLE for "sound recordings" to APPLE MUSIC for the Services is not permitted because the two marks are not legal equivalents since 'music" is not generic for the Services and set of the Goods is completely different from set of the Services.

The Board *sua sponte* made a finding that "the goods and services in the involved application and prior registrations are substantially equivalent" (Appx00057) and this was made only in the Denial. In this finding, the Board refers to its own Order of March 1, 2019 (Appx01409) and not to any facts and evidence discussed in the Trial Brief. The Board doesn't refer to any case law were goods and services were regarded as the same.

Apple agrees with the Board's bizarre position that "The system for classification of goods and services was created for the convenience of the USPTO, and has no bearing on the issue of the relationship

between goods and services." It cites *In re Sailerbrau Franz Sailer,* 23 U.S.P.Q.2d 1719 (T.T.A.B. 1992) for support. Appx00069.
However, Apple did not raise this issue in its Trial Brief, and the Board only addressed it in its Denial, giving Bertini no opportunity to respond. In any event, this classification system is required by Trademark Manual of Examining Procedures § 1402.01 "to enable the USPTO to classify the goods and services properly and to reach informed judgments concerning likelihood of confusion under 15 U.S.C. §1052(d)". See also §1401.02 *et. seq.,* 37 C.F.R. §§2.85, 6.1, Nice Agreement. Even within one class, goods/services may be similar but still not substantially identical. Goods and services in different classes can't be "substantially identical". Substantially identical goods *always* belong to the same class.

The Board improperly held, "[i]t is sufficient to find priority as to any service encompassed by the application and registration" by referring to Tuxedo case, which is about likelihood of confusion and not about tacking. This case is not applicable because before consideration of dates for evaluation of priority of use, it must be determined that tacking of an earlier mark to a later one can be permitted. In Bertini's case tacking can't be permitted because APPLE and APPLE MUSIC are not legal equivalent and set of the Services is different from set of the Goods or even one service for production and distribution. The date of first use for earlier used mark becomes irrelevant.

### F. The Board Erred in Finding That APPLE and APPLE MUSIC are Legal Equivalents

The Board didn’t weigh the evidence to find that APPLE and APPLE MUSIC marks create the same, continuing commercial impression. The Board didn’t take into account evidence that detracts from an agency's decision: “music” is not generic or descriptive in reference to the Services, customers and general public view “Apple” in reference to Apple Inc. and not to any services or goods, Apple didn’t show any sales or advertising under the APPLE mark anywhere including its website, many Apple Corps marks were abandoned a few decades ago, the set of the Services is not substantially identical to the set of the Goods, or “production and distribution of sound recordings”.

In its Appeal Brief Apple could not point to substantial evidence to support that APPLE and APPLE MUSIC create the same continuing commercial impression, namely, to any document showing how potential customers view these marks. The Board erred in giving consideration to opaque and insufficiently developed arguments and arguments not supported by substantial evidence. The Board erred in the interpretation of law about comparing marks for tacking purpose.

Referring to the above, APPLE and APPLE MUSIC are not legal equivalents, tacking should not be permitted, and the Board decision should be reversed.

### G. Mr. Jones' Testimony is Indefinite and Internally Inconsistent

Apple makes repeated misleading statements that Mr. Jones' testimony was unrebutted. Bertini objected to Mr. Jones' testimony. Appx08284-08288. Bertini rebutted Mr. Jones' testimony in his Reply Brief (Appx08577, Appx08579-08580) including by stating that he "…makes the legal conclusion … without providing supporting documents for such statement". Mr. Jones and Apple "rely on third party website discogs.com with unclear images and admission that Apple Records items listed on a website that can be counterfeited". Appx08580, Appx02057.

Bertini's Appeal Brief (PP42-48) and Trial Brief show in detail that Mr. Jones' testimony is both indefinite and internally inconsistent.

The main contradiction of his testimony is that despite the claim that The Beatles records are "the *most famous sound recordings,"* Mr. Jones can't point to one image of a sound recording between 1976-1992 bearing APPLE mark and manufactured by Apple Records, Inc., while he easily does it for records from 1968-1975. The Beatles' sound recordings during period 1976-1992 don't have the APPLE mark (Appx02103, Appx02106, 1982 – Parlophone and EMI marks) and they were produced by third parties and under third parties' marks. It was useless to cross-examine Mr. Jones in absence of documents showing continuous use of the APPLE mark in commerce during period 1976-1992.

Bertini doesn't dispute continuous sale of The Beatles records but he shows that records were not sold under the APPLE mark for a period of time exceeding three years, which means abandonment of the APPLE mark under the Lanham Act. CDs bearing the APPLE mark in 1993 is a new use of the APPLE mark after Bertini's first use of APPLE JAZZ.

Another contradiction is that Mr. Jones testified that Apple Corps has no documents showing manufacturing of records in the U.S. and of providing services in the U.S. including production and distribution services under mark APPLE at least during years 1983-1985. Appx02014-02015. But in his Trial Declaration he states that information "has been obtained by me from the books and records made in the usual and ordinary course of Apple Corps' business." Appx02721.

Mr. Jones made a legal conclusion regarding continuous use of mark APPLE for "production and distribution of sound recordings" despite his knowledge about a lawsuit between Apple Records and Capitol Records. In this court action from 1979-1989, Plaintiff, Apple Records, wanted to add "specific requests for relief to terminate defendants' rights to manufacture and distribute Beatles' recordings and to have the master recordings of Beatles' performances transferred to plaintiffs". Appx02789. *Apple Records v. Capitol Records, supra.* It is clear that Apple Corps/Apple Records didn't have rights for manufacturing and distribution of records *and didn't even have the ability to*

*engage in these services because Apple Records didn't have possession of the master recordings.* Mr. Jones knew about this but testified otherwise.

During at least ten years Apple Corps could not provide production and distribution services and this is clear abandonment of service mark APPLE. Tacking to any date after June 13, 1985 can't help to establish priority for Apple over Bertini's earlier date of first use.

It is clear from the application for registration of the '964 mark in 1995 that Apple Corps didn't provide "production and distribution" services itself but was "using the mark through licensees". Appx02166. So, even after 1995, the APPLE mark could be on the Beatles records, but services were provided by third parties and under third parties' marks.

The APPLE service mark for production and distribution of sound recordings was never registered and this service was not in the list of services of pleaded Reg. 4,088,195. Apple in its Trial Brief didn't establish continuous use of unregistered service mark APPLE in the U.S. for "production and distribution of sound recordings" through competent evidence of use. 37 C.F.R. § 2.122(b)(2); 15 U.S.C. §§ 1052(d), 1127. See *Rockwood Chocolate,* 372 F.2d 552, 554 (CCPA 1967) ("proof of such earlier date must be clear and convincing").

There should be a demonstration that this mark has been used on a regular and recurring basis in conjunction with the services at issue in the U.S. If the evidence submitted is uncertain as to a specific day, month, or

year, the Board will resolve the uncertainty against the party seeking to prove the date. Apple never refers to dates certain in its Trial Brief because no documents show dates certain, relying instead on Mr. Jones' vague statements about use of APPLE mark in the 1980s and 1990s (Appx08443) sans specific dates and unsupported by substantial evidence. Evidence shown above contradicts Mr. Jones' testimony.

The Board admits that: "Jones' testimony is not accompanied by the type or quantity of documentary evidence that one would expect to be readily available to show the use of a mark*…"* Appx00046.

The Board knew that at least during 1979-1989 Apple Corps didn't provide services for production and distribution of sound recordings and such services were done by third parties (and under third parties' marks), but granted rights for using the APPLE mark for the services in the U.S. back to 1968 to Apple without evidence that such services were continuously provided in the U.S. by predecessor Apple Corps. The Board Decision should be reversed because it is not based on substantial evidence and contradicts evidence presented.

### H. Apple Attempts to Excuse the Board's Refusal to Make a Negative Inference, but Its Arguments Prove Board Error *a fortiori*

Apple argues that the Board was correct in failing to draw an adverse inference from Apple's refusal to produce settlement agreements it was ordered to produce, (p67) admitting that Bertini objected but it

wasn't a "contemporary" objection, i.e. he should have "raised that disagreement prior to final briefing before the Board." P68 Bertini's Appeal Brief shows that he *did* raise that disagreement several times prior to final briefing. In any event, the Board states: "Opposer did not object." Finding facts that both sides agree didn't exist is arbitrary and capricious.

**I. Cases Relied on in Apple's Brief Do Not Support Its Position or the Board's Decision**

The following cases cited in Apple's Brief are inapposite as they are about abandonment. *SurgiVision Consultants v. SurgiVision,* No. CV 10–03024 MMM (FFMx), 2011 WL 13214280 (C.D. Cal. Jan. 31, 2011) (unpublished), *In re E.I. du Pont de Nemour. v. G.C. Murphy.,* 199 U.S.P.Q. 807 (T.T.A.B. 1978)*, Ralston Purina v. On-Cor Frozen Foods,* 746 F.2d 801 (Fed. Cir. 1984), *Fast Chem. Prods. v. Pillsbury., 132 U.S.P.Q.* 561 (T.T.A.B. 1962)*, Grocery Outlet Inc. v. Albertsons,, No. C 06-02173 JSW, 2008 WL 5245962, at *8 n.2 (N.D. Cal. Dec. 17, 2008)* (marked "NOT FOR PUBLICATION").

In *AWGI v. Atlas Trucking, No. 17-12131, *87, 2020 WL 3546100 (E.D. Mich. June 30, 2020), aff'd, 998 F.3d 258 (6th Cir. 2021*) the court found (a) that Plaintiff's ATLAS LOGISTICS and ATLAS are legally equivalent because the word "logistics" "is a generic descriptor of Plaintiff's ATLAS Logistics Services", (b) that Plaintiff had used the word "atlas" for providing logistics services many years before

Defendant began doing the same, and (3) that there was actual confusion between the Plaintiff's and Defendant's marks.

In the nonprecedential case of *Bear P'ship & Wings Res. v. Bear U.S.A., No. 91119974, 2004 WL 2901193 (T.T.A.B. Nov. 30, 2004)* tacking was permitted, but Bertini demonstrated that tacking is not permitted for various reasons.

Apple's Brief cites *C.P. Ints. v. Cal. Pools., 238 F.3d 690 (5th Cir. 2001*) to support its tacking argument, but neglects to mention that this case, like *Big Blue* after it, says that services must be "substantially identical". *Jimlar Corp. v. Army & Air Force Exch. Serv., 24 U.S.P.Q.2d 1216 (T.T.A.B. 1992)* is about tacking the *same mark* from *footwear to footwear*. *Vacuum-Elecs. Corp. v. Elec. Eng'g Co. of Cal., 150 U.S.P.Q. 215 (T.T.A.B. 1966)* is about likelihood of confusion for different stylized versions of lettering.

In *D & J Master Clean v. Servicemaster, 181 F. Supp. 2d 821 (S.D. Ohio 2002)* the court said that tacking could be allowed if two marks were indistinguishable which could be possible if a generic word could be disregarded. In Bertini's case "music" is not generic.

*Helpful Hound v. New Orleans Bldg. Corp., 331 F. Supp. 3d 581 (E.D. La. 2018)* is a decision on a motion for preliminary injunction involving trademark infringement. *Uber Promotions v. Uber Techs., 162 F. Supp. 3d 1253 (N.D. Fla. 2016)* is an infringement case where the

court narrowly tailored a common law mark used in a certain geographical location.

Apple's Trial Brief states that Bertini waived his argument that Mr. Jones's testimony must establish tacking by clear and convincing evidence because he first raised it on appeal, citing for support *Fresenius USA v. Baxter Int'l,* 582 F.3d 1288 (Fed. Cir. 2009*)* citing *Rockwood Chocolate Co. v. Hoffman Candy Co., 372 F.2d 552 (C.C.P.A. 1967).* However, Bertini did object to Mr. Jones' testimony based on hearsay, relevancy and foundation.

The case in *H. Betti Indus. v. Brunswick Corp., 211 U.S.P.Q. 1188 (T.T.A.B. 1981)* is inapposite because: (a) it compares a word mark with a combined word and graphic mark, (b) the testimony of opposer's witness was "in many respects vague, and indefinite and inconsistent", and the witness frequently referred to the existence of documents to substantiate his indefinite statements and explain the inconsistencies; however no such documentation was produced (Bertini's testimony was unchallenged and accepted by the Board and he had extensive documentation, yet the testimony of Apple's witness was challenged by Bertini for those same reasons), and (c) the opposer abandoned use of his mark and only resumed using it after the applicant began using his.

*Symbol Techs. v. Opticon,, 935 F.2d 1569 (Fed. Cir. 1991)* is a patent infringement case, and the court says that failure to "expose [the

expert's] testimony to the glaring light of cross examination" is a weakness for the party that didn't cross examine. Apple's Brief suggests that Bertini's failure to cross examine Mr. Jones means that he cannot complain about his testimony. In any event Mr. Jones' testimony was already objected to and disproven by Bertini. In *WeaponX Performance Prods. v. Weapon X Motorsports, 126 U.S.P.Q.2d 1034 (T.T.A.B. 2018)* the Board denied Opposer's request that declarations be stricken and given no consideration because Opposer failed to cross examine the deponent. Bertini did not ask the Board to strike Mr. Jones' deposition.

## II. CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Apple didn't pursue any of three pleaded marks for tacking and therefore waived its tacking defense. The Board based its findings and conclusions on opaque and insufficiently developed arguments or arguments not presented in Apple's Trial Brief. During evaluation of evidence, the Board ignored evidence that detracts from an agency's decision. The Board's findings are not based on substantial evidence, made in contradiction of evidence and in violation of applicable law.

The Board's Final Decision to permit tacking of the use of the Apple Corps mark APPLE for "production and distribution of sound recordings" to the APPLE MUSIC mark for a wide range of services was made on an unpleaded defense and/or insufficiently developed arguments and arguments not presented in its Trial Brief.

Therefore, Charles Bertini respectfully requests that the Court reverse the decision of the Board and deny registration of the mark shown as Serial No.86659444 for APPLE MUSIC and revoke priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968.

March 25, 2022

/s/ James Bertini

JAMES BERTINI
Attorney for Appellant Charles Bertini
423 Kalamath Street
Denver, CO 80204
303 572-3122
jamesbertini@yahoo.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B); Fed. Cir. R. 32(b); Fed. R. App. P. 32(f); because:

    this brief contains 6610 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in proportionally space typeface using Microsoft Word in 14-point Times New Roman.

Dated: March 25, 2022

/s/ James Bertini
James Bertini
Attorney for Appellant
CHARLES BERTINI

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

Joseph Petersen
Kilpatrick Townsend
JPetersen@kilpatricktownsend.com

Theodore Davis
Kilpatrick Townsend
tdavis@kilpatricktownsend.com

Bill Bryner
Kilpatrick Townsend
bbryner@kilpatricktownsend.com

John D. Mayberry
Kilpatrick Townsend
dmayberry@kilpatricktownsend.com

Sara Stadler
Kilpatrick Townsend
sstadler@kilpatricktownsend.com

Alberto Garcia
Agarcia@kilpatricktownsend.com

tmadmin@kilpatricktownsend.com

Dated: March 25, 2022

/s/ James Bertini________________