No. 2021-2301

---

# United States Court of Appeals for the Federal Circuit

---

CHARLES BERTINI,
Appellant,

v.

APPLE INC.,
Appellee

---

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in Case No. 91229891
before Kuczma, Shaw and Hudis, Administrative Law Judges

---

**CORRECTED**
**OPENING BRIEF OF APPELLANT CHARLES BERTINI**

James Bertini
423 Kalamath Street
Denver, CO 809204
303 572-3122
jamesbertini@yahoo.com

*Counsel for Charles Bertini*

# CERTIFICATE OF INTEREST

Counsel for Appellant, James Bertini, certifies the following:

1. The full name of every party or amicus represented in the case by me is: Charles Bertini.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
None.

3. All parent corporations and any publicly held companies that own ten percent (10%) or more of the stock of the party or amicus curiae represented by me are:
None.

4. The names of all law firms and the partners or associates that appeared for the party or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.
None/Not applicable

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal:

Charles Bertini v. Apple Inc.
Cancellation No. 92068213
Trademark Trial and Appeal Board, US Patent and Trademark Office

This Cancellation case was submitted for final decision on February 23, 2021. The USPTO website states that cancellation cases are decided in approximately ten weeks, *but this case has not been decided for 13 months.* On February 9, 2022 the TTAB *officially* suspended this case, stating its sudden belief that the Cancellation case could be affected by a decision in this Opposition case on Appeal which now "came to its attention", even though Bertini advised the TTAB about the Opposition case *four years ago.*

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6):
N/A.

Dated: March 31, 2022

/s/ James Bertini
James Bertini
Attorney for Appellant
CHARLES BERTINI

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST....................................................................i

TABLE OF CONTENTS.........................................................................iii

TABLE OF AUTHORITIES ...................................................................vi

I. STATEMENT OF RELATED CASES....................................................1

II. JURISDICTIONAL STATEMENT..........................................................1

III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........2

IV. STATEMENT OF THE CASE................................................................3

V. SUMMARY OF ARGUMENT..................................................................7

VI. ARGUMENT..…………………………………………………………..8

APPLICABLE STANDARDS OF REVIEW…………………………...…..8

**A. The Board Erred Giving Consideration to Unpleaded Defenses**

**B. The Board Erred in Finding That Apple Inc., by Tacking the Use of the Mark APPLE by Apple Corps, Has Established Use of the Mark APPLE MUSIC for the "production and distribution of sound recordings" as Early as August 1968**

**C. The Board Erred in Finding That APPLE and APPLE MUSIC are Legal Equivalents**

***1. The Board Erred in Finding That the Term "music" is Generic in Reference to "sound recordings and the production and distribution of sound recordings"***

***2. The Board Erred in Finding How Consumers View the Marks APPLE and APPLE MUSIC***

3. *The Board Erred in its Interpretation of Case Law for Comparison of Marks for Tacking Purposes*

D. **The Board Erred in Finding That the Testimony of an Apple Inc. Witness is Clear, and Neither Contradicted by Bertini Nor Indefinite and Internally Inconsistent**

E. **The Board Erred in Refusing to Make a Negative Inference Regarding Apple Inc.'s Failure to Comply With its Order**

F. **The Board Was Biased in Favor of Apple Inc. and That Affected its Decision to Dismiss the Opposition**

1. *Relationship Between Jonathan Hudis and William Bryner*

2. *Relationship Between Jonathan Hudis and Theodore Davis*

3. *In its Decision, the Board Ignored its Most Significant Legal Position Stated in the MSJ Decision*

4. *The Board Ignored the Genericness Standard that the Three ALJs Applied in Precedential Cases that They Themselves Decided*

5. *The Board improperly relied on a proposed regulation*

6. *The Board Dismissed Bertini's Opposition by Giving Consideration to Unpleaded Defenses*

G. **The Board Violated Bertini's Due Process Rights**

**VII. CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

ADDENDUM: FINAL DECISION AND DENIAL OF RECONSIDERATION OF THE TTAB

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Paging Inc. v. American Mobilphone Inc.*,
13 USPQ2d 2036, 2039 (TTAB 1989),
aff'd 923 F.2d 869 (Fed. Cir. 1990)…………………………..….40, 41

*Apple Records, v. Capitol Records,*
137 A.D.2d 50, 529 N.Y.S.2d 279 (1988)………………………….43

*Big Blue Prods. Inc. v. Int'l Bus. Machines Corp*.,
19 USPQ2d 1072 (TTAB 1991)……………………..….17, 18, 19, 20

*Bridgestone. v. Automobile Club De L'Quest,*
245 F.3d 1359 (Fed. Cir. 2001)…………………………….…..…..8

*Brooklyn Brewery Corporation v. Brooklyn Brew Shop, LLC,*
Lexis 32201, 2021 USPQ2d (BNA) 1069, 2021 WL 4979028
(Fed. Cir. 2021)……………………………………………..…..37, 40

*Coach Servs., Inc. v. Triumph Learning LLC*,
668 F.3d 1356 (Fed. Cir. 2012)…………………………..………10

*Commscope Technologies LLC v. Commscope Connectivity LLC*,
2020-1817, 2020-1818 (Fed. Cir. 2021)……………………...…..24

*DeVivo v. Ortiz*,
2020 USPQ2d 10153, *3 (TTAB 2020)…………………….……47

*Dickinson v. Zurko*,
527 U.S. 150 (1999)…………………………………………..….8

*Fair Indigo LLC v. Style Conscience*,
85 USPQ2d 1536 (TTAB 2007)……………………………......14

*Hana Fin., Inc. v. Hana Bank,*
135 S. Ct. 907, 113 USPQ2d 1365 (2015)……………..…22, 34, 41

*H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*,
782 F.2d 987, 228 USPQ 528 at 530……………………………26, 39

*H.D. Lee Co. v. Maidenform Inc.*,
87 USPQ2d 1715 (TTAB 2008)……………………………….…10

*Hydro-dynamics, Inc. v. George Putnam & Company, Inc.*,
811 F.2d 1470 (Fed. Cir. 1987……………………………………..5

*IdeasOne Inc. v. Nationwide Better Health Inc.*,
89 USPQ2d 1952 (TTAB 2009)……………………………………14

*In re 1800Mattress.com IP LLC*,
586 F.3d 1359, 92 USPQ2d 1682 (Fed. Cir. 2009)………………....25

*In re Am. Fertility Soc'y*,
188 F.3d 1341, 1347 (Fed.Cir.1999)…………………………...….38

*In re Baroid Drilling Fluids Inc. v. Sun Drilling Prods*.,
24 USPQ2d 1048 (TTAB 1992)…………………………….18, 19, 21

*In re Bayer Aktiengesellschaft,*
488 F.3d 960 (Fed.Cir.2007)…………………………………..……32

*In re Chronix Biomedical, Inc*.,
2018 WL 3740515, (TTAB 2018)………………………………..53

*In re Cordua Rests., Inc*.,
823 F.3d 594, 118 USPQ2d 1632 (Fed.Cir.2016)………...…….26, 27

*In re Dial-A-Mattress Operating Corp.,*
240 F.3d 1341, 57 USPQ2d 1807 (Fed. Cir. 2001)……………...….34

*In re E. I. du Pont de Nemours & Co.*,
476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973)…………………...39

*In re Gartside*,
203 F.3d 1305, 53 USPQ2d 1739…………………………...……..9

*In re Gould Paper Corp*.,
834 F.2d 1017 (Fed.Cir.1987)……………………………………..…..38

*In re Gyulay,*
820 F.2d 1216 (Fed. Cir. 1987)…………………………………..….32

*In re Hotels.com, L.P*.,
573 F.3d 1300 (Fed. Cir. 2009)…………………………...…..25, 27

*In re i.am.symbolic, llc*, 116 USPQ2d 1406 (TTAB 2015),
aff'd 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017)………….….20

*In re MCI Communications Corporation,*
21 USPQ2d 1534 (Comm'r Pats. 1991)……………………..…28, 31, 32

*In re Merrill Lynch, Pierce, Fenner, & Smith, Inc*.,
828 F.2d 1567, 1571, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987.….25, 33

*In re N. Carolina Lottery*,
866 F.3d 1363, 1366 (Fed. Cir. 2017)……………………………..…10

*In re Nat'l Data Corp*.,
753 F.2d 1056 (Fed. Cir. 1985)………………………………..…23, 37

*In re Nordic Naturals, Inc*.,
755 F.3d 1340, 111 USPQ2d 1495 (Fed. Cir. 2014)………………..25

*In re Recot, Inc. v. M.C. Becton,*
214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000)…………………..9

*In re Reed Elsevier Props., Inc.*,
482 F.3d 1376 (Fed.Cir.2007)………………………………...…..27

*In re The Consumer Protection Firm PLLC,*
2021 WL 825503 (TTAB 2021)………………………………..………53

*In re Sang-Su Lee,*
277 F.3d 1338 (Fed. Cir. 2002)……………………………………9

*In re Steelbuilding.com*,

415 F.3d 1293, 1297 (Fed.Cir.2005)………………………………..39

*Jack Wolfskin Ausrustung Fur Draussen GmbH v. New Millennium Sports*,
797 F.3d 1363, 116 USPQ2d 1129 (Fed. Cir. 2015),
cert. denied, 136 S. Ct. 982 (2016)…………………………...…..41

*Juice Generation, Inc. v. GS Enters. LLC*,
794 F.3d 1334, 115 USPQ2d 1671 (Fed. Cir. 2015)………………..30

*Magic Wand Inc. v. RDB Inc.*,
940 F.2d 638, 19 USPQ2d 1551 Fed. Cir. 1991))…………………..27

*Moke America LLC v. Moke USA, LLC*,
2020 USPQ2d 10400 (TTAB 2020)………………………...11, 16, 29

*Monsanto Co. v. Scruggs*,
459 F.3d 1328 (Fed. Cir. 2006)……………………………..……24

*Nahshin v. Product Source International LLC*,
107 USPQ2d 1257 (TTAB 2013)……………………………..…23

*On-Line Careline, Inc. v. Am. Online, Inc.*,
229 F.3d 1080, 1085 (Fed. Cir. 2000)………………………………..9

*Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772,*
396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005)………..………..39

*Performance Open Wheel Racing, Inc. v. U.S. Auto Club Inc.*,
Opp'n No. 91229632, 2019 WL 2404075 (TTAB 2019)………..…53

*Princeton Vanguard, LLC v. Frito-Lay North America, Inc.*
786 F.3d 960 (Fed. Cir. 2015)…………………………….….38, 39

*Quaker State Oil Refining Corp. v. Quaker Oil Corp.,*
453 F.2d 1296, 172 USPQ 361 (CCPA 1972)……………………31

*Peterson v. Awshucks SC, LLC*,
2020 USPQ2d 11526 (TTAB 2020)…………………..…15, 17, 28

*Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana, Inc.*,
98 USPQ2d 1921, 1926 (TTAB 2011),
*aff'd* 188 F. Supp. 3d 22 (D.D.C. 2016)……………………………..…….14

*Recot, Inc. v. Becton,*
214 F.3d 1322, 1327 (Fed. Cir. 2000)……………………………...…9

*Rockwood Chocolate*,
372 F.2d 552, 554 (CCPA 1967) ……………………………...….13

*Sheetz of Del., Inc. v. Doctor's Assocs. Inc.*,
108 USPQ2d 1341 (TTAB 2013)……………………………...….27

*Specialty Brands, Inc, v. Coffee Brands Distributors, Inc.*,
748 F.2d 669 223 USPQ 1281 (Fed. Cir. 1984)…………,…23, 38, 40

*Teledyne Techs., Inc. v. W. Skyways, Inc.*,
208 Fed. Appx. 886, 890 (Fed. Cir. 2006)…………………….…..…10

*Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp*.,
648 F.2d 1335, 209 USPQ 986 (CCPA 1981)…………………...….20

*UMG Recordings, Inc. v. O'Rourke*,
92 USPQ2d 1042 (TTAB 2009)……………………………....…7

*Universal Camera*,
340 U.S. 474 (1951)…………………………………………….…9

*Van Dyne-Crotty Inc. v. Wear-Guard Corp*.,
17 USPQ2d 1866 926 F.2d 1156 (Fed. Cir. 1991),
abrogated on other grounds by *Hana Fin., Inc. v.*
*Hana Bank*, 135 S. Ct. 907, 909 (2015). ………………...….19, 21, 41

*Wet Seal, Inc. v. FD Mgmt., Inc*.,
82 USPQ2d 1629 (TTAB 2007)……………………………..……...19

**United States Constitution**

5th and 14th Amendments…………………………………………….…..56

**Statutes**

15 U.S.C. 1126(e)……………………………………………………..……..7

15 U.S.C. §1127…………………………………………………………..12, 13

15 U.S.C. §1052(d)……………………………………………….……..13

15 U.S.C. §1056………………………………………………………..…..28

**Regulations**

37 C.F.R. § 2.122(b)(2)……………………………………………….7, 13

TBMP 801.01……………………………………………………25, 26, 34

TMEP § 1213.03(b)……………………………………………………….31, 32

TMEP §1213.01(c))……………………………………………………..…40

**Rules**

Fed. R. Evid. 201……………………………………………….....21, 29, 32

## I. STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5(a), counsel for Charles Bertini ("Bertini"), certifies that no other appeal from the same proceedings in the United States Patent & Trademark Office, Trademark Trial and Appeal Board ("TTAB" or "the Board") is or was previously before this Court or any other appellate court, whether under the same or a similar title.

Pursuant to Fed. Cir. R. 47.5(b), counsel for Bertini states the following case is pending and may be directly affect or be directly affected by this court's decision in the pending appeal: Charles Bertini v. Apple Inc., Cancellation No. 92068213. This case was submitted for final decision on February 23, 2021. No decision has been made to date, ten months later, despite an FAQ published by the USPTO indicating that the average time to decide such cases is eight to ten weeks.

## II. JURISDICTIONAL STATEMENT

Charles Bertini appeals the final Decision of the Board dismissing the underlying trademark Opposition proceeding instituted by Bertini. This Court has jurisdiction over appeals from the Board pursuant to 15 U.S.C. § 1071(a) and 28 U.S.C. § 1295(a)(4)(B). The Board issued its Decision on April 16, 2021 (Appx00001-00052), and it issued its Decision denying Bertini's Request for Reconsideration on August 9, 2021. Appx00053-00070. Bertini filed his notice of appeal on September 8, 2021, rendering this appeal timely.

## III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the Board erred in giving consideration to unpleaded defenses.

2. Whether the Board erred in finding that Apple Inc., by tacking the use of the mark APPLE by Apple Corps Ltd., has established use of the mark APPLE MUSIC for the "production and distribution of sound recordings" as early as August 1968.

3. Whether the Board erred in finding that APPLE and APPLE MUSIC are legal equivalents.

4. Whether the Board erred in finding that the word "music" is generic without any required evidence or argument presented at trial, without discussion of the facts in light of the law by Apple Inc., and without following well-established standards to find genericness or descriptiveness.

5. Whether the Board erred in finding how consumers view the mark APPLE MUSIC without evidence presented at trial and in contradiction to evidence presented by Apple Inc. and by not comparing APPLE and APPLE MUSIC as a whole marks.

6. Whether the Board erred in its interpretation of case law for comparison of marks for tacking purposes.

7. Whether the Board erred in finding that the testimony of an Apple Inc. witness is clear, and neither contradicted by Bertini nor indefinite and internally inconsistent.

8. Whether the Board erred in refusing to make a negative inference regarding Apple Inc.'s failure to comply with its Order compelling Apple Inc. to produce a contract that may be related to the use of mark APPLE during the relevant period.

9. Whether the Board was biased in favor of Apple Inc. and whether that affected its dismissal of the Opposition.

10. Whether the Board violated Bertini's Due Process rights by (a) relying on a proposed regulation, (b) failing to analyze genericness as the members

of the Board have done in previous precedential cases, and (c) interpreting case law differently than it did in a previous decision in this case.

## IV. STATEMENT OF THE CASE

Appellant Charles Bertini ("Bertini") began using his mark APPLE JAZZ in commerce in international Class 41 on June 5, 1985 and he has maintained continuous use in commerce of his mark to date. Appx01591. Bertini obtained a Certificate of Registration of Service Mark issued by the State of New York for the AppleJazz logo for services in connection with the jazz festival, an event featuring live music by various bands. The date of registration is October 31, 1991. Appx01611. At that time Bertini didn't know the difference between registration of a mark in the state or the U. S. Patent and Trademark Office ("USPTO").

Since 2011 Bertini communicated with the Apple, Inc. iTunes team and signed an Agreement as APPLE JAZZ MUSIC (Appx01613), a common law mark used by Bertini since 1998. Appx01611-01612. On June 5, 2016 Bertini filed an application at the USPTO, Serial No. 87060640, to register the mark APPLE JAZZ for entertainment services in Class 41. Appx01614, Appx00080.

Appellee Apple Inc. ("Apple") filed application Serial No. 86659444 for APPLE MUSIC mark under Section 1(b) and Section 44(d) with reference to a foreign filing date May 18, 2015 for services listed in Class 41 ("The Services"). Appx00090-00091. Apple decided to use service mark APPLE MUSIC similar to

its customer's marks APPLE JAZZ (used since 1985) and APPLE JAZZ MUSIC (used since 1998). Bertini filed his Notice of Opposition on September 2, 2016 to protect his common law mark rights in APPLE JAZZ by opposing registration of APPLE MUSIC. Appx00096.

On April 6, 2018 Bertini made a Motion to Compel production of an agreement between Apple Corps. Limited ("Apple Corps") and Apple Computer, Inc., made in 1981 concerning trademarks and trademark use in commerce. Appx00146, Appx00151. The motion was granted on August 16, 2018 (Appx00569, Appx00576) but Apple never produced this document.

On September 18, 2018 Bertini filed a Motion for Summary Judgment ("MSJ"). The Motion was partially granted on March 1, 2019 in that the Board (George Pologeorgis, Frances Wolfson and Linda Kuczma) found a likelihood of confusion between Apple Jazz and Apple Music. Appx01403, Appx01418.

On April 1, 2019 Apple Inc. filed a Motion for Reconsideration or in the Alternative, for Leave to Amend Answer and filed an Amended Answer with the Motion. Appx01422, Appx01439-01443. Reconsideration was denied on September 30, 2019 but the Board (Thomas Shaw, Linda Kuczma, and George Pologeorgis) permitted Apple to amend its Answer. Appx01578, Appx01584.

By Decision dated April 16, 2021 ("the Decision") the Board (Jonathan Hudis, Thomas Shaw and Linda Kuczma) dismissed the Opposition. Appx00052.

On May 15, 2021 Bertini filed a Motion for Reconsideration of Final Decision. Appx00076. On August 9, 2021 this Motion was denied ("the Denial"). Appx00070.

In the Decision the Board acknowledged that "Opposer has established that his APPLE JAZZ mark as a whole is inherently distinctive" and "Opposer may claim priority of use of the mark APPLE JAZZ … at least as early as June 13, 1985." Appx00024. The court in *Hydro-dynamics, Inc. v. George Putnam & Company, Inc.*, 811 F.2d 1470, 1473 (Fed. Cir. 1987) stated: "The requirements of both adoption and use devolve from the common law; trademark rights in the United States are acquired by such adoption and use, not by registration."

The Board also found that "Applicant has used the mark APPLE MUSIC since at least June 8, 2015" (Appx00025) and "Applicant is unable to establish its own use of the mark APPLE for musical recordings or their production and distribution prior to Opposer's earliest priority date". Appx00009.

In the Decision the Board stated: "In his motion for summary judgment, which was partially granted by the Board, Opposer established his statutory entitlement to bring this opposition proceeding by submitting a copy of his pleaded application for the mark APPLE JAZZ and an Office Action citing Applicant's pending application as a potential bar to registration of Opposer's mark based on likelihood of confusion." Appx00013-00014.

Apple admits (Appx01991) that prior to June 5, 1985, Apple Computer Inc. (it was re-named to Apple Inc. in 2007, Appx07885) does not appear to have owned and used any trademark in connection with services listed in the application for the APPLE JAZZ mark. Since Apple obviously has no priority rights of APPLE MUSIC over APPLE JAZZ, Apple pleaded an affirmative defense of priority and ownership of APPLE marks Reg. Nos. 2034964 ("the '964 mark") and 3317089 ("the '089 mark") both for goods in Class 9, and Reg. No. 4088195 for services in Class 41. Appx01441-01442. Regarding use of service mark APPLE Reg. No. 4088195, the Board stated in the Decision that "Applicant was unable to establish its use of the mark for any of these services prior to Opposer's 1985 priority date". Appx00025. The Board stated in its Decision on Bertini's MSJ ("MSJ Decision"): "Applicant does not assert any priority date with respect to Registration No. 3317089. Thus, that registration does not support Applicant's defense." Appx01406. The claimed priority date for the '089 mark is the date of foreign registration November 16, 2000. Appx00086. That left the '964 mark as the only remaining pleaded defense Apple could use for tacking.

Apple claims that it was the first party to use the APPLE mark in commerce through its predecessor, foreign company Apple Corps, the company founded by The Beatles. Apple Corps did not file any applications for standard character mark APPLE at the USPTO on or before June 5, 1985. Appx02019. An Application for

a standard character mark APPLE in Class 9, the '964 mark, was filed by Apple Corps on June 26, 1995 with the following filing basis: 1(a) – using the mark through licensees and 15 U.S.C. 1126(e). Appx02170. On August 1, 1996 in the amendment to the '964 application, Apple Corps requested to "delete reliance on the foreign registration as an additional basis". Appx02167. The priority date of the '964 mark is its filing date, June 26, 1995, and this is more than ten years later than the established priority date of Bertini's mark of June 13, 1985. In 1997, Apple Corps registered the '964 mark APPLE for "Gramophone records featuring music; audio compact discs featuring music…" ("The Goods") claiming a date of first use of August 1968. Appx00043. The Board stated in its MSJ Decision: "We note that Applicant's dates of use in the claimed registrations are not evidence of Applicant's use. Applicant must establish priority of use through competent evidence of use. 37 C.F.R. § 2.122(b)(2); see also See *UMG Recordings, Inc. v. O'Rourke*, 92 USPQ2d 1042, 1047 (TTAB 2009)." Appx01417.

## V. SUMMARY OF ARGUMENT

1. The Board erred by giving consideration to unpleaded defenses.

2. The Board erred in finding that the term "music" is generic in reference to "sound recordings" and "production and distribution of sound recordings".

3. The Board erred in finding that consumers consider APPLE and APPLE MUSIC as the same mark.

4. The Board erred in finding that marks APPLE (for sound recordings) and APPLE MUSIC (for production and distribution of sound recordings) are legal equivalents.

5. The Board erred in finding that "the sound recordings" to be "the same or similar" for purposes of tacking as "the production and distribution of sound recordings".

6. The Board erred in finding that the APPLE mark for The Goods and APPLE mark for services (production and distribution of sound recordings) were continuously used in commerce the U.S. before 1993.

7. The Board erred in finding that Apple may claim priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968.

8. The Board erred in finding that Apple, by tacking the use of the mark APPLE by Apple Corps, has established use of the mark APPLE MUSIC for the "production and distribution of sound recordings" as early as August 1968.

## VI. ARGUMENT

### APPLICABLE STANDARDS OF REVIEW

Rulings of the TTAB are subject to the standards of the Administrative Procedure Act (APA). *Dickinson v. Zurko*, 527 U.S. 150, 152 (1999). *Bridgestone v. Automobile Club De L'Quest,* 245 F.3d 1359, 1361 (Fed. Cir. 2001) ("We give

plenary review to the Board's legal conclusions…and uphold the Board's factual findings unless they are…unsupported by substantial evidence.")

A review for substantial evidence "involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In Re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000). '"Substantial evidence' necessitates a stricter judicial review of agency fact finding." *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000); see also *Recot, Inc. v. Becton,* 214 F.3d 1322, 1327 (Fed. Cir. 2000). The standard also requires the Board "to develop an evidentiary basis for its findings." *In re Sang-Su Lee,* 277 F.3d 1338, 1344 (Fed. Cir. 2002) (citation omitted). Moreover, "the process by which [the Board] reaches that result must be logical and rational." *Sang-Su Lee*, 277 F.3d at 1342 (citation omitted). "Judicial review of a Board decision . . . is thus founded on the obligation of the [Board] to make the necessary findings and to provide an administrative record showing the evidence on which the findings are based, accompanied by the [Board's] reasoning in reaching its conclusions." Id. (citations omitted). "Conclusory statements . . . do not fulfill the [Board's] obligation." *Id.* at 1344.

The Court decides *de novo* whether the Board's rulings rest on legal errors, and it reviews the Board's factual findings for support in substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re N. Carolina Lottery*, 866 F.3d 1363, 1366 (Fed. Cir. 2017). See *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1365–66 (Fed. Cir. 2012).

The Court also reviews the Board's decision for abuse of discretion. *Teledyne Techs., Inc. v. W. Skyways, Inc.*, 208 Fed. Appx. 886, 890 (Fed. Cir. 2006).

### A. The Board Erred Giving Consideration to Unpleaded Defenses

In a footnote of Apple's Trial Brief, Apple states: "Here, by contrast, Apple seeks to tack its constructive use of APPLE MUSIC for production and distribution of sound recordings to Apple Corps' use of APPLE for the ***very same services***, which necessarily are 'substantially identical.'" Appx08331. Thus, Apple uses an unpleaded defense – tacking to some unknown service mark purportedly used by Apple Corps for some services. The two marks listed as affirmative defenses (and previously used by Apple Corps) – the '964 mark and the '089 mark - are both for goods in Class 9 and not for services. *H.D. Lee Co. v. Maidenform Inc.*, 87 USPQ2d 1715, 1720 (TTAB 2008) ("The reason for requiring an affirmative defense to be pleaded is to give the plaintiff notice of the defense and an

opportunity to respond"; "However, 'tacking' is a defense that must be pleaded to put opposer on notice of new matter that applicant is placing at issue (i.e., a mark previously used by applicant that is the legal equivalent of applicant's opposed mark, and that provides the basis for applicant to claim prior use)." Apple didn't put Bertini on notice that Apple Corps' **service mark** was previously used in the U.S. which provides the basis for Apple to claim prior use through tacking of this unregistered foreign **service mark** APPLE to APPLE MUSIC. This defense was first broached in Apple's Trial Brief.

The Board gave consideration to this unpleaded defense using several steps as described. First, the Board states: "sound recordings are inseparable from the production and distribution of sound recordings" (Appx00052), but this statement is not supported by substantial evidence, **never discussed** in Apple's Trial Brief, and contradicts facts presented by Apple. *Moke America LLC v. Moke USA, LLC*, 2020 USPQ2d 10400, at *1 n.5 (TTAB 2020) (affirmative defenses deemed waived because applicant did not discuss them in its trial brief). Services and goods at least during period 1979-1989 were in fact separated: services were provided by two companies, EMI and Capitol Records as shown below under their trademarks, and not by Apple Corps, which only received royalties for records.

Second, the Board states: "As Jones testified: Apple Corps has been involved in the production and distribution of some of the most famous sound

recordings…" Appx00052. (Jeffrey Vaughn Jones is the CEO of Apple Corps, and a witness for Apple in this case.) "Involvement" is not defined by the Lanham Act as a basis for obtaining service mark rights or to show use of a mark in commerce. Apple didn't offer any evidence of Apple Corps' advertising or sales of services in the U.S. under mark APPLE at least during 1979-1989. Apple Corps obviously didn't conduct production, sales/distribution of goods or services during 1979-1989 otherwise it would not have been a party to a lawsuit for more than a decade as acknowledged by the Board based on Mr. Jones' testimony: "In fact, between 1979 and 1989, Apple Corps was involved in suit against Capital [sic] Records and EMI over royalty payments." Appx00044. This lawsuit shows that during at least these ten years services were provided by third parties and under third parties' marks. The Board didn't refer to any authority to show that receipt of royalties constitutes "involvement" sufficient to obtain trademark rights in services that were not provided by a company itself. Apple failed to show continuous use in commerce of service mark APPLE in the U.S. during some periods of time exceeding three consecutive years. According to 15 U.S.C. § 1127 "A mark shall be deemed to be 'abandoned' if either of the following occurs:" "(1) …Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." Once the mark has been abandoned, resumed use represents a new and separate use of the mark that cannot be tacked on to the use before abandonment.

Third, based on allegations of "inseparable" and "involvement" the Board states that Apple: "may claim priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968." Appx00052. The mark APPLE for production and distribution of sound recordings is an unpleaded defense and Apple didn't present evidence that this service mark was ever registered by Apple Corps in the U.S. Apple in its Trial Brief didn't establish prior and continuous use of this unregistered Apple Corps **service** mark APPLE in the U.S. for "production and distribution of sound recordings" through competent evidence of use. 37 C.F.R. § 2.122(b)(2); 15 U.S.C. §§ 1052(d) and 1127. See *Rockwood Chocolate*, 372 F.2d 552, 554 (CCPA 1967) ("proof of such earlier date must be clear and convincing").

According to 15 U.S.C. §1127: "For purposes of this Act, a mark shall be deemed to be in use in commerce (2) "on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce". Apple didn't prove with competent evidence that Apple Corps used mark APPLE on services, and that services were rendered in commerce in the U.S. The Board granted Apple rights in an unregistered ***service*** mark back to 1968 without any competent evidence of use of the mark presented at trial and despite the fact that the APPLE ***service*** mark is an unpleaded defense.

Based on the above allegations and unpleaded defense (the APPLE ***service*** mark) the Board made its Conclusion that Apple "by tacking the use of the mark APPLE by Apple Corps, has established use of the mark APPLE MUSIC for the 'production and distribution of sound recordings' as early as August 1968." *See Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana, Inc.*, 98 USPQ2d 1921, 1922 (TTAB 2011) (unpleaded affirmative defenses of prior registration defense and tacking not considered), *aff'd* 188 F. Supp. 3d 22 (D.D.C. 2016). In this case the service mark APPLE was not even registered by Apple Corps and the Board erred in giving consideration to an unpleaded defense.

Genericness of the term "music" is not mentioned in the affirmative defenses at all. *IdeasOne Inc. v. Nationwide Better Health Inc.*, 89 USPQ2d 1952, 1955 (TTAB 2009) (claim or defense must be specific enough to provide fair notice to adverse party of restriction being sought); *Fair Indigo LLC v. Style Conscience*, 85 USPQ2d 1536, 1539 (TTAB 2007) (elements of each claim or defense should include enough detail to give fair notice of claim). Apple didn't provide enough detail of its defense to give fair notice to Bertini that genericness of the term "music" is a part of the defense. Genericness of the term "music" was not established in Apple's Trial Brief, yet the Board gave unfair consideration to this allegation and made it the main point to support tacking in its Decision to dismiss the Opposition.

To support tacking the Board also gave consideration to other unpleaded defenses – a few third party unregistered foreign marks/trade names (APPLE FILMS, APPLE RECORDS, APPLE MUSIC PUBLISHING) to support the allegation of how consumers view marks APPLE and APPLE MUSIC marks. Appx00051. Apple didn't discuss this theory in its Trial Brief; the Board came up with it on its own. *Peterson v. Awshucks SC, LLC*, 2020 USPQ2d 11526, at *1 n.3 (TTAB 2020) (various affirmative defenses deemed waived because no evidence or argument presented at trial).

Bertini objected to all unpleaded defenses. Appx08535.

A *de novo* review should be made by this Court of (a) the erroneous decision by the Board to dismiss the Opposition based on an unpleaded defense, (b) the erroneous decision by the Board to grant Apple rights in an unregistered ***service*** mark from 1968 without any competent evidence of use of the mark presented at trial, (c) the erroneous decision by the Board in finding that such unregistered APPLE mark had a priority date from 1968 despite lack of proof that it had been used continuously in commerce, and (d) the erroneous decision by the Board in finding that Apple Corps "involvement" in the "production and distribution of some of the most famous sound recordings" constitutes use in commerce sans proof of sales or advertising. In making these erroneous findings, the Board

established multiple entirely new and erroneous legal principles. These decisions require *de novo* review by this Court.

**B. The Board Erred in Finding That Apple Inc., by Tacking the Use of the Mark APPLE by Apple Corps, Has Established Use of the Mark APPLE MUSIC for the "production and distribution of sound recordings" as Early as August 1968**

Despite the fact that the only mark Apple could use for its tacking defense was the '964 mark as shown above, *Apple didn't pursue this defense and therefore it waived tacking of the '964 mark (for goods) to APPLE MUSIC (for services)* by making the clear statement that "Apple seeks to tack its constructive use of APPLE MUSIC for production and distribution of sound recordings to Apple Corps' use of APPLE for the ***very same services"***... Appx08331. Apple in its Trial Brief didn't discuss tacking of APPLE for "sound recordings" (or The Goods) to APPLE MUSIC for "production and distribution of sound recordings" (or The Services). *Moke America LLC v. Moke USA, LLC*, 2020 USPQ2d 10400, at *1 n.5 (TTAB 2020) (affirmative defenses deemed waived because applicant did not discuss them in its trial brief).

In any event, tacking the APPLE '964 mark (for goods) to APPLE MUSIC (for services) is not supported by the Lanham Act or case law. It was not established or discussed in Apple's Trial Brief that "production and distribution of sound recordings" is substantially identical to "sound recordings" and yet the Board made such finding *sua sponte*. No substantial evidence was presented to

support such allegation. The Board made this finding without evidence or arguments in Apple's Trial Brief. *Id. Peterson v. Awshucks SC, LLC*, 2020 USPQ2d 11526, at *1 n.3.

The dictionary definition of "production" is "the act or process of producing." Such process obviously is not The Goods to which the Board refers as "sound recordings". Accordingly, "production and distribution of sound recordings" is not identical or similar to "sound recordings" because production requires time and does not result in goods to sell immediately to customers. Bertini requests under Federal Rules of Evidence 201(c) that the Court take judicial notice of the dictionary definition of "production" from The American Heritage Dictionary which is at Appx08686.

The Board in the MSJ Decision stated: "It follows then that 'the tacking of the use of a mark for certain goods or services onto the use of **the same mark** for other goods or services … should be permitted only when the **two sets of goods or services are 'substantially identical**,'" citing *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991). (Emphasis added.) Appx01417.

The Board recognized the **set** of The Services (Appx00001-00003) and the **set** of The Goods (Appx00006). The set of The Goods is completely different

from the set of The Services, and therefore these two sets are not "substantially identical".

However, in the Decision, the Board watered down its own requirement and the holding of *Big Blue* by stating: "Tacking also requires that the goods or services marketed under the earlier mark must be 'the same or similar' as the goods or services marketed under the later mark. See, e.g., *In re Baroid Drilling Fluids Inc. v. Sun Drilling Prods*., 24 USPQ2d 1048, 1051 (TTAB 1992)." In fact, The Goods and The Services are not even similar on their face.

Whereas the law – and the Board itself - requires the Board to compare ***the set*** of The Services (APPLE MUSIC) to ***the set*** of The Goods (APPLE), the Board compares only *one service* from the long list of The Services to "sound recordings" and it is not established in Apple's Trial Brief that The Goods are the same as "sound recordings".

The phrase "the same or similar" utilized by Board ("to be 'the same or similar' for purposes of tacking... *Baroid*, 24 USPQ2d at 1052") (Appx00052) is taken out of context and it is not a new holding overruling *Big Blue* but only a part of the discussion in *Baroid*. *Baroid* also doesn't support tacking goods to services or tacking between different marks: "The loophole would be unacceptable because … the priority-of-use issue under Section 2(d) (when priority of use is in issue) is whether the defendant's use of its mark sought to be registered… precedes

the plaintiff's use of plaintiff's pleaded mark(s), not whether the defendant has priority of use of another mark or marks which the plaintiff's mark(s) so resembles as to be likely to cause confusion." *Baroid* 24 USPQ2d 1048 at 1051.

The Decision at Appx00049 states: "The standard for tacking is very strict and tacking in general is permitted only in 'rare instances.' *Van Dyne-Crotty*, 17 USPQ2d at 1869; *Wet Seal, Inc. v. FD Mgmt., Inc*., 82 USPQ2d 1629, 1635 (TTAB 2007)." A strict standard for comparison of goods or services for tacking purposes is established by *Big Blue* as shown above. Neither Apple nor the Board referred to any case law which allows tacking of the marks in different classes by comparing of one good to one service from a broad list of services.

The Board didn't take under consideration the fact that the set of The Goods is not substantially identical to set of The Services. The Board states in its Denial (Appx00065): "We disagree with Opposer's interpretation of Big Blue Products that all of the goods and services must be substantially identical." However, this is not Bertini's interpretation, but rather case law *cited by the Board itself* in its MSJ Decision. The *Big Blue* requirement for two sets of goods or services to be substantially identical to permit tacking is so clear that it can't be interpreted any other way. The Denial continues: "Such an interpretation would require a party to establish priority of use for each and all of its goods or services. This is not required. It is sufficient to find priority as to any goods or services encompassed by

the application and registration. See *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp*., 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1409 (TTAB 2015), aff'd 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017)." *Tuxedo* and *In re i.am.symbolic* are not about tacking but about likelihood of confusion. These cases can't overrule *Big Blue's* requirement for tacking. These cases don't explain how to compare marks for tacking purpose – *Big Blue* does.

The Board doesn't acknowledge that before consideration of dates for evaluation of priority of use, it must be determined that tacking of an earlier mark to a later one can be permitted. The requirement for sets of goods or services to be substantially identical is a requirement for tacking, but the Board in its Denial removes this requirement, referring to cases unrelated to tacking and therefore inapposite. Tacking one mark to another, different mark, by comparing one product to one service from a broad list of services can't be permitted according to case law.

The Board states in the Denial: "Instead, we interpret the language 'two sets of goods or services' in *Big Blue* as referring only to those goods or services to and from which a party seeks to tack." (Appx00065). The Board didn't refer to any case law considering tacking of goods/services to goods/services. Tacking is about comparing one mark to another and not about comparing a good to a service.

Marks must be compared in their entireties and must be considered in connection with the particular goods or services for which they are used.

The Board's position in this interpretation of comparison of marks for tacking purpose is not supported by any case law, and it contradicts *Van Dyne-Crotty* and *Baroid* because it applies a lower standard for tacking and it creates "an unacceptable loophole to the stringent standards". *Baroid* at *6.

Neither *Big Blue* or any other case suggests comparing one service to one type of goods or service for tacking purpose, but requires comparing *set to set*, and a set is more than one. "Set" is "a number of things of the same kind that belong or are used together". Appx08684. The definition of term "set" clearly shows that it can't be interpreted as one service as the Board has done. Bertini requests under Federal Rules of Evidence 201(c) that the Board take judicial notice of the dictionary definition of "set" from Merriam Webster which is at Appx08684.

The APPLE and APPLE MUSIC marks are not identical by appearance, and therefore they are not "the same mark". The set of The Goods is completely different from the set of The Services, so tacking APPLE to APPLE MUSIC should not be permitted just for these reasons. Apple could not have prevailed by relying on its '964 mark for tacking and, in fact, the Board in the Decision didn't make a finding that Apple can tack use of '964 mark ("sound recordings" or The

Goods) to Apple Music (The Services). The Board made a finding based on an unpleaded defense – an unregistered APPLE service mark.

The Board's finding that Apple has established use of the APPLE MUSIC mark for the "production and distribution of sound recordings" from August 1968 as a result of tacking is erroneous. In so finding, the Board established an entirely new and erroneous legal principle. This decision requires *de novo* review by this Court.

### C. The Board Erred in Finding That APPLE and APPLE MUSIC are Legal Equivalents

The Board recognizes that the U.S. Supreme Court held "tacking to be available when the original and revised marks are 'legal equivalents' in that they create the same, continuing commercial impression." *Hana Fin., Inc. v. Hana Bank,* 135 S. Ct. 907, 113 USPQ2d 1365, 1366 (2015). Appx00048. APPLE and APPLE MUSIC marks are not legal equivalents as shown below.

In addition to reasons explained above, Apple also failed to establish its tacking defense because it failed to prove genericness of the term "music" for The Goods and The Services for APPLE MUSIC as shown below. The Board based its decision of tacking on alleged genericness of the term "music" which was not proved by Apple in its Trial Brief.

The Board states that: "The addition of the term MUSIC does not create a different commercial impression because it is generic when used in connection

with sound recordings and the production and distribution of sound recordings." Appx00050. This arbitrary statement is speculation because it is based on groundless statements in Apple's Trial Brief: "because of the generic (and disclaimed) nature of 'MUSIC,' the APPLE mark and the APPLE MUSIC mark create the same commercial impression" (Appx08304), and "Apple disclaimed the generic term 'MUSIC'". Appx08327.

"[A] disclaimer does not remove the disclaimed matter from the mark," because "The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." *In re Nat'l Data Corp*, 753 F.2d 1059 (Fed. Cir. 1985); *Specialty Brands, Inc, v. Coffee Brands Distributors, Inc.*, 748 F.2d 669, 672, 223 USPQ 1281, 1282 (Fed. Cir. 1984) ("Although applicant disclaimed the word "spice" apart from SPICE VALLEY as a whole, the marks are viewed in their entireties.") .

Apple failed to prove alleged genericness of the term "music" because no evidence was presented at trial to support it and Apple didn't discuss it in its Trial Brief. *Nahshin v. Product Source International LLC*, 107 USPQ2d 1257, 1264 n.13 (TTAB 2013) ("We note that respondent, in stating that it has asserted its various affirmative defenses, made the statement in its brief, 'Respondent pursues these defenses and does not waive these defenses.' It is not sufficient to simply make this statement. Respondent was under a burden to take some affirmative

action if it actually wished to pursue them. To the extent that they have not been waived, we find that respondent has failed to prove them.").

A term can't be generic in general or have "generic nature" in general. A term can be generic only in reference to certain goods or services. No substantial evidence was offered by Apple in its Trial Brief to support the alleged genericness of the term "music" in reference to the Goods or the Services. Apple in its Trial Brief didn't even mention that "music" is generic in reference to "sound recordings", The Services, or "production and distribution of sound recordings". Instead, Apple makes the general statement "'MUSIC' being generic for services relating to music" (Appx08323) but it doesn't define "services relating to music". In *Commscope Technologies LLC v. Commscope Connectivity LLC*, 2020-1817, 2020-1818, 10 (Fed. Cir. 2021) the court rejected an opaque argument by a litigant by stating: "[E]ven if the argument were in the body of the brief, it is insufficiently developed." See *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006) ("In order for this court to reach the merits of an issue on appeal, it must be adequately developed.")

There is no substantial evidence to support the erroneous finding that APPLE and APPLE MUSIC are legal equivalents and this finding should be reviewed by the Court under the substantial evidence rule. Additionally, the Board

applied case law erroneously and established entirely new and erroneous legal principles. These decisions require *de novo* review by this Court.

### ***1. The Board Erred in Finding That the Term "music" is Generic in Reference to "sound recordings and the production and distribution of sound recordings"***

According to TBMP 801.01 "the facts and arguments presented in the brief must be based on the evidence offered at trial." Apple didn't offer substantial evidence supporting the allegation that "music" is generic in reference to The Goods or The Services or "sound recordings and the production and distribution of sound recordings".

Genericness of a term **must be proven** by clear and convincing evidence. *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc*., 828 F.2d 1567, 1571, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987), *In re Nordic Naturals, Inc*., 755 F.3d 1340, 1344, 111 USPQ2d 1495, 1498 (Fed. Cir. 2014). This standard is high. *In re Hotels.com, L.P*., 573 F.3d 1300, 1302 (Fed.Cir. 2009). ("When a fact is required to be found by 'clear evidence' and not a mere preponderance, the review for support by substantial evidence must take this heightened burden into account.").

Genericness of a term is a subject of fact. A disclaimer in an application to the USPTO is not the correct way to determine genericness of a term. The correct inquiry is whether the relevant public would understand the term to be generic. *In*

*re 1800Mattress.com IP LLC*, 586 F.3d 1359, 92 USPQ2d 1682, 1685 (Fed. Cir. 2009).

Evidence of the public's understanding of a term can be obtained from any competent source, including dictionary definitions, research databases, newspapers, and other publications. See *In re Cordua Rests., Inc*., 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016) (finding the evidence of record, which included dictionary excerpts, online magazine articles, and newspaper articles). Apple in its Trial Brief doesn't refer to any competent source to support alleged genericness of the term "music".

According to TBMP 801.01, the brief is a party's opportunity to present, **in a systematic and coherent manner**, and in a form which is permanent and can be referred to, **a discussion of the facts in light of the law**, its strongest affirmative arguments. No discussion of the facts in light of the law was done by Apple in its Trial Brief to prove genericness or descriptiveness of term "music". There was only a superficial reference to the term "music" as generic.

Apple did not apply a required two-part inquiry used to determine whether a designation is generic in reference to goods or services. A two-part inquiry is used to determine whether a designation is generic: (1) What is the genus of goods or services at issue? (2) Does the relevant public understand the designation primarily to refer to that genus of goods or services? *H. Marvin Ginn Corp. v. Int'l Ass'n of*

*Fire Chiefs, Inc.*, 782 F.2d 987, 990, 228 USPQ 528, 530. The relevant public for a genericness determination refers to the purchasing or consuming public for the identified goods and/or services. *Sheetz of Del., Inc. v. Doctor's Assocs. Inc.*, 108 USPQ2d 1341, 1351 (TTAB 2013) (citing *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 641, 19 USPQ2d 1551, 1553 Fed. Cir. 1991)). The genus of the goods and/or services may be defined by an applicant's identification of goods and/or services. *See In re Cordua Rests., Inc.*, 823 F.3d 594, 602, 118 USPQ2d 1632, 1636 (Fed. Cir. 2016).

The Board's factual finding of genericness must be supported by clear and convincing evidence. "The question of whether a particular mark is generic under the applicable standard is a question of fact, which we review for substantial evidence." *In re Hotels.com*. at 1301 (Fed. Cir. 2009); *In re Reed Elsevier Props., Inc.*, 482 F.3d 1376, 1378 (Fed. Cir. 2007).

The Board's finding of alleged genericness of the term "music" in reference to The Goods or to one of The Services is not supported by clear and convincing evidence. The Board created a portion of a defense for Apple *sua sponte* when it stated in the Decision: "…term MUSIC … is generic when used in connection with sound recordings and the production and distribution of sound recordings." (Appx00050). Apple in its Trial Brief didn't present any discussion of facts regarding genericness of the term "music" in connection with "sound recordings"

and "production and distribution of sound recordings" in the light of the law as required. TBMP 801.01. The Board's finding of alleged genericness was made without substantial evidence or argument presented at trial, without discussion of the facts in light of the law by Apple, and without following the well-established two-part inquiry to find genericness or descriptiveness. *Peterson v. Awshucks SC, LLC*, 2020 USPQ2d 11526, at *1 n.3 (TTAB 2020) (various affirmative defenses deemed waived because no evidence or argument presented at trial).

The Board stated that the term "music" is generic based on the fact of disclaiming the term "music" in Apple's application to the USPTO. Appx00091. According to 15 U.S.C. §1056, "A disclaimer is a statement that the applicant or registrant does not claim the exclusive right to use a specified element or elements of the mark in a trademark application or registration".

First, such disclaimer is done voluntarily and is therefore irrelevant to genericness of the term. In *In re MCI Communications Corporation*., 21 USPQ2d 1534 (Comm'r Pats. 1991), the Commissioner held that §6(a) of the Act permits an applicant to disclaim matter voluntarily, ***regardless of whether the matter is registrable or unregistrable.*** Therefore, if an applicant offers a disclaimer of any matter in a mark, the USPTO will accept the disclaimer. Such disclaimer is usually made to avoid unnecessary delay in registration of the mark because it may take a year for communication with the examining attorney if a disclaimer is not

made. A disclaimer is made for convenience and it is not proof of genericness or descriptiveness of a part of the mark.

Second, marks comprising the word "music" were registered recently in the USPTO for services and products related to music without disclaiming the term "music". **Humans Of Music** CL35, CL 41; **MyCleanMusic** CL 41; **Music Is Win** CL 41; **Finding Us In Music** Cl 41; **LET'S MUSIC TOGETHER** Cl 41; **LIGHT THE MUSIC** Cl 41; **Music Across Texas** Cl 41; **Music for Nimrods** Cl 41; **MUSIC IN THE AIR** CL38, CL41; **MUSIC WITH SMILE** Cl 009; **WITH MUSIC IN MIND** Cl: 41. Bertini requests under Federal Rules of Evidence 201(c) that the Court take judicial notice of these registrations which were obtained from USPTO records. Appx08659-08682.

No facts or arguments were presented in Apple's Trial Brief regarding third parties' registrations incorporating the term "music," and no references to any law were made in this Trial Brief supporting the idea that genericness of a term can be proven with third parties' registrations. The Board gave consideration to third-party registrations despite the fact that they were not discussed in Apple's Trial Brief. *Moke America LLC v. Moke USA, LLC*, 2020 USPQ2d 10400, at *1 n.5 (TTAB 2020) (affirmative defenses deemed waived because applicant did not discuss them in its trial brief).

The first time that Bertini was notified regarding use of third parties' registrations as alleged proof of genericness of term "music" was in the Denial, so Bertini had no reason or opportunity to discuss it in his Reply Brief on Motion for Reconsideration, not that he should have to do so. The Board *sua sponte* created a portion of a defense in the Denial stating that: "The definition and third-party registrations support the finding that MUSIC is generic when used in connection with Apple's goods and services. *See Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015) (third-party registrations alone may be relevant, in the manner of dictionary definitions, 'to prove that some segment of the [marks] has a normally understood and well recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak.')." Appx00058.

In any event, this case doesn't support a finding of genericness of the term "music" because a segment of the mark ***may be*** "descriptive or suggestive," and therefore a two-part inquiry must be made, especially because Bertini alleged that "music" is suggestive in reference to The Services. Appx08543.

Since Apple didn't even mention the dictionary definition and third-party registrations in its Trial Brief it was error for the Board to have given it any consideration. A dictionary definition of the term "music" ("vocal, instrumental, or mechanical sounds having rhythm, melody, or harmony" (Appx08225) shows

that "music" doesn't describe any of The Services (Appx00077-00079) or The Goods. Appx00083-00084. Neither Apple nor the Board demonstrated that anyone uses the term "music" in reference to "production and distribution of sound recordings" or in reference to The Services. "Production and distribution" obviously is not "vocal, instrumental, or mechanical sounds having rhythm, melody, or harmony" as the Board claims. No substantial evidence presented by Apple or referenced by the Board demonstrates that "production and distribution" is "music".

Apple didn't discuss in its Trial Brief that "music" is descriptive in connection with The Services. The Board should not give any consideration to something that was not discussed or even mentioned in the Trial Brief, but the Board in its Denial refers to a 1972 case: "Moreover, a disclaimer is an admission that a term is at least descriptive. *Quaker State Oil Refining Corp. v. Quaker Oil Corp.,* 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972)". Appx00059.

According to *In re MCI Communications Corporation,* 21 USPQ2d 1534 (Comm'r Pats. 1991), the Commissioner held that §6(a) of the Act permits an applicant to disclaim matter voluntarily, **regardless of whether the matter is registrable or unregistrable**. *The Commissioner specifically overruled all previous USPTO authority holding otherwise*. *Id*. at 1539. Any disclaimer made after 1991 is no longer a proof of genericness or descriptiveness. Accordingly, the

1972 *Quaker State Oil* case is overruled by the 1991 *In re MCI Communications Corporation* case and therefore it is not applicable to find descriptiveness of a term.

Also, whether a mark is descriptive cannot be determined in the abstract. Descriptiveness must be evaluated "in relation to the particular goods". *In re Bayer Aktiengesellschaft,* 488 F.3d 960, 963-64 (Fed. Cir. 2007) (citing *In re Gyulay,* 820 F.2d 1216, 1217 (Fed. Cir. 1987)). The Board erred by not making any evaluation for this particular case as with alleged genericness as shown above.

Refusal by the Board to consider third-party registrations without disclaimer of the term "music" which were presented in Bertini's Motion for Reconsideration doesn't change the fact that such registrations exist in USPTO records. According to TMEP § 1213.03(b), generic matter **must be disclaimed** to permit registration. Multiple trademarks were registered without disclaiming term "music" as shown above. These registrations clearly show that the term "music" is not considered generic or descriptive by USPTO examining attorneys for "sound recordings" and services similar to The Services.

According to Federal Rules of Evidence 201 the Board could have taken judicial notice on its own once Bertini informed the Board about the existence of third-party registrations without disclaimer of term "music," but the Board instead decided to show favor to Apple and *in its Denial went on to develop a new portion of a defense for Apple based on…third-party registrations which are not discussed*

*in Apple's Trial Brief* and can't be used to establish genericness because this approach contradicts case law as shown above. *Id.*, *In re Merrill Lynch.*

The Board's statement that "Music is the sine qua non of musical sound recordings and the production and distribution of musical sound recordings" (Appx00060) is also not supported by substantial evidence. *The Board on its own added the word "musical" in its Denial* pretending that "production and distribution of *musical* sound recordings" is one of The Services while The Services include only "production and distribution radio programs, television programs, and sound recordings". Appx00078.

The term "music" is not generic in reference to The Goods or The Services. As shown above, multiple recent registrations without disclaimers clearly show that the term "music" is not considered generic or descriptive by USPTO examining attorneys in connection with "sound recordings", goods similar to The Goods and services similar to The Services.

A two-part inquiry shows that the genus of The Goods is: "Gramophone records featuring music; [and] audio compact discs featuring music…". The genus of The Services recognized by the Board (Appx00001-00003) is:

*"Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests, fairs for entertainment purposes, musical or film festivals for cultural or entertainment*

*purposes, and exhibitions for entertainment purposes; production and distribution of radio programs, television programs, and sound recordings…."*

"Generic terms are terms that the relevant purchasing public understands primarily as the common or class name for the goods or services." *In re Dial-A-Mattress Operating Corp.,* 240 F.3d 1341, 57 USPQ2d 1807, 1811 (Fed. Cir. 2001)." Apple didn't present any substantial evidence that the purchasing public understands or uses the term "music" as a common or class name for The Goods or The Services. Apple didn't offer any research databases, newspapers, or other publications to demonstrate that relevant public understands the term "music" primarily to refer to the genus of The Goods or The Services, *or even one of* The Services or The Goods.

The Board erred when made a conclusory statement that the word *"music" is generic in reference to "sound recordings and the production and distribution of sound recordings"* sans substantial evidence and a required discussion in Apple's Trial Brief. In making these erroneous findings, the Board established an entirely new and erroneous legal principle which requires *de novo* review by this Court.

#### ***2. The Board Erred in Finding How Consumers View the Marks APPLE and APPLE MUSIC***

The Board recognizes that "two marks are 'legal equivalents' if they 'create the same, continuing commercial impression so that consumers consider both as the same mark'", quoting *Hana Fin v. Hana Bank*, 135 S. Ct. 907, 909 (2015 at

1367. Appx00048. According to TBMP 801.01 “the facts and arguments presented in the brief must be based on the evidence offered at trial.” Apple didn’t offer substantial evidence that consumers consider APPLE and APPLE MUSIC as the same mark.

The statement in Apple’s Trial Brief that “consumers encountering the APPLE MUSIC mark will (a) focus on the leading APPLE component” (Appx08328) is speculation, not supported by substantial evidence, and it is contradicted by evidence presented. Apple’s goods and services have individual brand names. Among others, Apple uses the following marks for goods and services: s iPhone, iPad, iPod, Mac, Apple Watch (Appx07886), Apple TV (Appx07904), QuickTime (Appx07896), iTunes Store (Appx07897), iTunes Music Store (Appx07898). The word “Apple” alone doesn’t give a customer an impression that it is a trademark or service mark.

The argument that the APPLE mark is known for The Beatles’ records doesn’t show how an average customer can associate an APPLE mark for records with Apple or Apple’s goods or services. Apple didn’t offer substantial evidence that sound records bearing mark APPLE were sold at Apple’s website. Consumers are unlikely to search the USPTO website to learn that the trademarks of Apple Corp were transferred to Apple, Inc. Apple didn’t offer substantial evidence of use of the mark APPLE for sales or advertising of The Goods on its website.

The fact that the word "Apple" is used on Apple's website in reference to Apple Inc. ***only*** (and not as reference to any services or goods) is heavily supported by the Declaration and Exhibits attached to the Trial Declaration of Thomas R. La Perle (Manager of Apple's Trademark & Copyright Group): "On January 9, 2001, Apple announced iTunes (Appx07897); "On April 28, 2003, Apple launched its iTunes Music Store (Appx07898); "Apple's iTunes Store has had unprecedented commercial success, making Apple the number one music provider in the world" (Appx07899); "Apple created QuickTime" (Appx08096); "Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh". (Appx08098); "Apple Introduces iTunes" (Appx08101); "Apple Presents iPod" (Appx08105 ); 'Apple has applied its legendary expertise in human interface engineering to make iPod…" (Appx08106); "Apple Launches the iTunes Music Store" (Appx08112); "Apple offers the only complete solution for digital music with iTunes and the amazing iPod, which now holds 10,000 songs in your pocket." (Appx08120); "Contact Apple" (Appx08121).

The general public and mainstream media use "Apple" in reference to Apple Inc. and not in reference to any of Apple's services or goods. Forbes uses "Apple" in reference to Apple Inc. (technology) (Appx07910); "Only Apple, thanks to…"; "Apple announced 21% revenue growth..." (Appx07913); "Apple has come out on

top as the most valuable brand" "Apple continues to dominate in a consumer tech industry". Appx07916.

Since the APPLE mark was not used for services or goods on Apple's website and since the word "apple" was used on the website as a reference to Apple, Inc, consumers have no reason to view "apple" as the leading component or to associate "apple" with the '964 mark APPLE. The average purchaser normally retains a general, rather than specific, impression of trademarks. By adding the word "music" to the word "apple" and creating APPLE MUSIC, Apple significantly altered the character of the mark APPLE. APPLE and APPLE MUSIC are different by appearance on their faces. There is no similarity in meaning between these marks. The common word "apple" refers to a fruit. The phrase "apple music" has a bizarre and incongruous meaning as applied to The Services. APPLE MUSIC is a unitary mark and its components are inseparable.

Referring to the above, APPLE MUSIC consumers view this mark as a whole (same as with other of Apple's marks). This Court stated recently in *Brooklyn Brewery Corporation v. Brooklyn Brew Shop, LLC,* Lexis 32201, 2021 USPQ2d (BNA) 1069, 2021 WL 4979028 (Fed. Cir. 2021): "In *National Data Corp*., we held that "[t]he technicality of a disclaimer . . . has no legal effect on the issue of likelihood of confusion," because "[t]he public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO.

753 F.2d at 1059; see also *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 672 (Fed. Cir. 1984) (disregarding the fact that the applicant had disclaimed the word 'spice' apart from SPICE VALLEY for the purposes of likelihood-of-confusion analysis, because 'the marks are viewed in their entireties')."

APPLE and APPLE MUSIC are not legal equivalents since consumers would not consider them as the same mark. The Board erred in finding how consumers view the marks APPLE and APPLE MUSIC. Neither did the Board give consideration to evidence that detracts from its findings. Consequently, there is no substantial evidence to support these erroneous findings and they should be reviewed by the Court under the substantial evidence rule.

#### ***3. The Board Erred in its Interpretation of Case Law for Comparison of Marks for Tacking Purposes***

The basic principle in determining confusion between marks is that marks must be compared in their entireties and must be considered in connection with the particular goods or services for which they are used. This Court found in *Princeton Vanguard, LLC v. Frito-Lay North America, Inc*. 786 F.3d 960 (Fed. Cir. 2015) that a phrase, or even a compound term, i.e. a combination of two or more terms in ordinary grammatical construction, must be evaluated as a whole. In this case, APPLE MUSIC is a phrase. The court cites *In re Gould Paper Corp*., 834 F.2d 1017 (Fed.Cir.1987) and *In re Am. Fertility Soc'y*, 188 F.3d 1341, 1347

(Fed.Cir.1999) as support, along with the seminal case of *H. Marvin Ginn*. The Court also states: “In subsequent decisions, this court has reiterated that, ‘[a]n inquiry into the public's understanding of a mark requires consideration of the mark as a whole. Even if each of the constituent words in a combination mark is generic, the combination is not generic unless the entire formulation does not add any meaning to the otherwise generic mark.’ *In re Steelbuilding.com*, 415 F.3d 1293, 1297 (Fed.Cir.2005).” *Princeton Vanguard* at 967. Despite that admonition, the Board ignored all these decisions from this Court and evaluated the constituent parts of APPLE MUSIC separately in order to achieve the result it desired for Apple.

Under *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973), the first factor requires examination of "the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." The points of comparison for a word mark are appearance, sound, meaning, and commercial impression. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005).

The Board in its evaluation of marks APPLE and APPLE MUSIC excluded the word “music”. The mark must be regarded as a whole, including the

disclaimed matter, in evaluating similarity to other marks. *Supra, Brooklyn Brewery; Specialty Brands*.

An inquiry must focus on both marks in their entirety to determine whether each conveys the same commercial impression. See *American Paging Inc. v. American Mobilphone Inc*., 13 USPQ2d 2036 (TTAB 1989), aff'd 923 F.2d 869 (Fed. Cir. 1990). APPLE and APPLE MUSIC marks when viewed as a whole are visually and phonetically dissimilar and do not create the same commercial impression. There is no similarity between APPLE and APPLE MUSIC because the marks are different by appearance and meaning.

Typically, disclaimed matter will not be regarded as the dominant, or most significant, feature of a mark. However, since the Trademark Act permits an applicant to voluntarily disclaim registrable matter (see TMEP §1213.01(c)), disclaimed matter may be dominant or significant in some cases. The term “music” is significant in APPLE MUSIC because it is suggestive for the Services and without it “Apple” is only a reference to the company Apple Inc. on Applicant’s website as it shown above.

The Board holds against case law because it doesn’t focus on both marks in their entirety to determine whether each conveys the same commercial impression. *American Paging Inc.,* 13 USPQ2d at 2039.

The Board recognizes that: "[T]he standard of legal equivalence used in reviewing efforts to 'tack' the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. . . . [E]ven if the two marks are confusingly similar, they still may not be legal equivalents." *Van Dyne-Crotty, 17 USPQ2d at 1868.* The Board recognizes that*:* "The addition of even one word can make a significant difference in commercial impression. *See Am. Paging Inc. v. Am. Mobilphone Inc.,* 13 USPQ2d 2036, 2039 (TTAB 1989) aff'd mem., 923 F.2d 869, 17 USPQ2d 1726 (Fed. Cir. 1990)". Appx00049.

Despite the Board's acknowledgement that the standard for evaluating marks for tacking purposes is **higher** than for evaluation in likelihood of confusion, the Board applied a **lower** standard for tacking in this case than for likelihood of confusion.

Whether or not a mark makes the same continuing commercial impression is a question of fact. *Jack Wolfskin Ausrustung Fur Draussen GmbH v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1133 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 982 (2016) (noting Supreme Court's holding in *Hana Financial, Inc. v. Hana Bank,* 135 S. Ct. 907 (2015). The Board's finding of continuing commercial impression of APPLE and APPLE MUSIC marks is not supported by facts and substantial evidence.

The Board didn’t give consideration to evidence that detracts from its finding that APPLE and APPLE MUSIC are legal equivalents. The Board erred when excluded the term “music” based on allegation of genericness unsupported by substantial evidence.

The Board ignored the basic standard for comparison of the marks in their entirety. Whether the Board applied the correct legal standard in assessing the mark is a question of law that the Court should review *de novo*.

**D. The Board Erred in Finding That the Testimony of an Apple Inc. Witness is Clear, and Neither Contradicted by Bertini Nor Indefinite and Internally Inconsistent**

Witness Jeffrey Vaughn Jones’ testimony is not accompanied by the type or quantity of documentary evidence to show continuous use of unpleaded service mark APPLE and the ‘964 mark in the U.S. that Apple claims was used in connection with the “production and distribution of some of the most famous sound recordings ever created”. Some of Jones’ exhibits show only Apple Records, Inc. (trade name) (Appx02775) or the apple logo (unpleaded defense) (Appx02807) instead of the APPLE mark or Apple Music Publishing Co, Inc. (trade name - and recorded in England). It is not established in the Trial Brief that a few of such marks/trade names are legal equivalents with marks APPLE or APPLE MUSIC. Continuous use of these marks/trade names in the U.S. is not established in

Apple's Trial Brief. Also, many of Jones' exhibits don't show the year of production.

Despite his statements, Mr. Jones doesn't demonstrate with competent evidence of use that the APPLE mark was continuously used in the U.S. in advertising or sales of "production and distribution of sound recordings" services since 1968. Mr. Jones testified that: "Apple Corps' distribution of sound recordings in the United States long involved distribution through Capitol Records." Appx02726.

In a dispute over royalties between Apple Records and Capitol Records, a New York State court stated: "Even after the Beatles attained their remarkable degree of popularity and success, they still continued to rely on Capitol Records for the manufacture and distributing of their recordings." *Apple Records, v. Capitol Records,* 137 A.D.2d 50, 57, 529 N.Y.S.2d 279 (1988). Appx02791.

The Board acknowledged that: "In the action, Apple Corps et al. sought to recoup royalties diverted by Capitol and EMI up through the mid-1980s, and to terminate their rights to manufacture and distribute Beatles' recordings. *Id.* The parties settled the suit in November 1989. Clearly, between 1979 and 1989 Apple Corps had not abandoned its interest in producing and distributing music." Appx00045. So, the Board acknowledged that rights to manufacture and distribute

were in the hands of third parties and not Apple Corps. "Interest" is not proof of providing services or use of APPLE as a service mark.

It is clear that production and distribution services were done by third parties - Capitol Records, Inc. and EMI - and accordingly under third party service marks for more than three years. Many of The Beatles records were sold on other labels especially before 1993. Sales of The Beatles records under other marks don't constitute use of the mark APPLE in commerce. Example of images of The Beatles records produced by third parties (Appx02059, Appx02103) shows that the APPLE mark was not used.

Bertini's Wikipedia exhibit states: "After EMI's contract with the Beatles ended in 1976, the Apple label was finally wound up. The label was reactivated in the 1990s." Appx02068. According to TBMP 1208.03: "The Board will consider evidence taken from Wikipedia so long as the non-offering party has an opportunity to rebut that evidence by submitting other evidence that may call into question the accuracy of the particular Wikipedia information." Apple did not rebut Bertini's Wikipedia evidence by submitting clear copies of documents showing use of mark APPLE on services or goods with year of use on each document from 1976 to the mid-1990s, but the Board refused to consider Bertini's evidence.

Apple and Jones failed to demonstrate that during at least 1985-1992 Apple Corps provided in the U.S. "production and distribution of sound recordings" services under mark APPLE. Apple and Jones failed to produce copies of labels of sound records produced in the U.S. during 1985-1992 and bearing mark APPLE. It is irrelevant if such services were rendered in commerce or goods with the APPLE mark were sold before 1985. According to 15 U.S.C. § 1127 "A mark shall be deemed to be 'abandoned' if either of the following occurs:" "(1) …Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." Once the mark has been abandoned, resumed use represents a new and separate use of the mark that cannot be tacked on to the use before abandonment. Use of the mark APPLE for goods listed in Registration '964 constitutes a new use with a new priority date (some date in 1993 when a CD with the APPLE mark was released). It is unclear if/when Apple Corps began offering sales of production and distribution services in the U.S. under mark APPLE after settlement of the lawsuit with Capitol Records.

The Board states: "The critical portions of Jones' testimony are clear, and are neither contradicted by Opposer nor 'indefinite and internally inconsistent.'" Appx00046. Neither of these is correct. First, Bertini did contradict his testimony in detail in his objections. Second, Mr. Jones' testimony was both indefinite and internally inconsistent. The testimony was indefinite in: (1) his statement that

"Apple and/or Capitol ***almost certainly*** continued to distribute" (emphasis added) Appx02746; (2) "Capitol's distribution of sound recordings bearing the APPLE word mark and associated Apple Corps logo diminished in the 1980s" (Appx02738) (for the witness of the company that did the distributing not to know when the distributing diminished during a ten year period, or to explain his interpretation of diminished, is indefinite); and (3) his lack of knowledge about production and distribution of records is such that he stated that "Apple and/or Capitol" (Appx02744) did the distributing (he doesn't even know who did the distributing despite his statement that he is "familiar with Apple Corps' licensing"). Appx02725.

The testimony was internally inconsistent because: (1) although he testified that the Apple mark was continuously used since 1968, he offered only blurred images of record covers downloaded from discogs.com on which it is impossible to read a year of production and evaluate continuity of use of APPLE mark even for records; (2) he implied that Apple Corps maintains these blurred copies in the ordinary course of business (Appx02721) even though they were downloaded from discogs.com in 2019 (For example, Appx02862, Appx02875, Appx02882, Appx02893, Appx02911); (4) he always implies that sales of The Beatles records means sales of records under APPLE mark while it is not so; (5) his testimony shows that (a) there were no initial releases of The Beatles records in the United

States featuring the APPLE word mark during the early 1980s (Appx02737), and (b) "the "Blue" album was released on CD in 1993 in the United States." Appx02737. This contradicts his statement about continuous use of APPLE for records because between the early 1980s and 1993 there are at least three consecutive years of no use of the APPLE mark which is a clear abandonment according to the Lanham Act.

The Board supports Apple by referring to *DeVivo v. Ortiz*, 2020 USPQ2d 10153, *3 (TTAB 2020) which states that oral testimony, if sufficiently probative, is normally satisfactory to establish priority of use. Appx00045. Referring to the above, Mr. Jones' testimony is not sufficiently probative, and his factual statements are not supported by substantial evidence.

The Board stated that Apple "may claim priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968" (Appx00052) despite the fact that Apple didn't establish use of APPLE mark through competent evidence of use. The Board's statement is totally based on Mr. Jones' testimony and not on competent evidence of use of APPLE mark in commerce. Making his *legal conclusions* regarding continuous use of mark APPLE, Mr. Jones simply ignores more than three years of nonuse of the mark. Mr. Jones became employed by Apple Corps only on May 7, 2007. Appx02720. He can't have personal knowledge regarding use of marks in period 1985-1993,

and he failed to produce clear and convincing evidence that the mark APPLE was continuously used in commerce for goods and services and never was abandoned.

Whether the Board applied the correct legal standard in establishing use in commerce of unregistered foreign service mark APPLE from 1968 without competent evidence of use constitutes an entirely new and erroneous legal principle. These decision requires *de novo* review by this Court.

**E. The Board Erred in Refusing to Make a Negative Inference Regarding Apple Inc.'s Failure to Comply With its Order**

Apple violated the Board's Order (Appx00576): "Applicant must produce the portion of the identified settlement agreements concerning trademarks in response to Requests for Production Nos. 4, 5 and 6." ("settlement agreement[s] between Apple Corps and Apple Computer … concerning marks and trademarks use in commerce."). Counsel for Apple Inc. did not produce two agreements.

Bertini sought agreements signed by the above parties in 1981 and 1991 which he believed would show which marks and for which goods or services were used by Apple Corps in the U.S. during period 1981-1991 and beyond. Since there were settlement agreements between parties in a trademark dispute it is reasonable to expect that there is detailed information about use of marks in commerce.

Bertini was entitled to know the true information about use of mark APPLE by Apple Corps during period 1981-1991 because this is directly related to his priority rights. If these agreements would be supportive for Apple it would have

produced them to make clear evidence for its tacking defense and would not need to refer to blurred copies from a third-party website as the main evidence of use of the unregistered foreign mark APPLE.

The Board stated that it would not make a negative inference because Bertini did not object to the failure to comply, and because Apple Inc. did not seek to rely on the 1981 Agreement. However, Bertini *did object* to the failure of Apple Inc. to comply with the Order to Compel *on four occasions*, beginning with his MSJ (Appx00601) where he also informed the Board about the range of options available to them if a litigant fails to comply with an Order to Compel. The Board's statement that Apple did not seek to rely on the Agreement is nonsensical, since Bertini sought to rely on it.

The Board's refusal to make a negative interference based on Apple's failure to comply with its Order to Compel is an abuse of discretion and arbitrary and capricious. The Court should review this failure by the Board using these standards.

### F. The Board Was Biased in Favor of Apple Inc. and That Affected its Decision to Dismiss the Opposition

After the Board issued its MSJ Decision, two of the Administrative Law Judges ("ALJ"), George Pologeorgis and Frances Wolfson, were replaced. Bertini's Opposition was dismissed by Jonathan Hudis, Thomas Shaw and Linda

Kuczma. The Board does not consider itself to be a new or reconstituted panel. Interlocutory Attorney Michael Webster had also been replaced with Jennifer Elgin.

The TTAB Management made these replacements knowing it would create more work for its staff, since three staff members were replaced with three other members unfamiliar with the case. Administrative Law Judges at the TTAB are not randomly assigned. They are assigned to cases by Management through an opaque process. No notice is placed on the record regarding assignments and therefore litigants have no opportunity to object to an appearance of bias.

One of the new ALJs, Jonathan Hudis, has had significant business and professional relationships with two of the Kilpatrick Townsend partners representing Apple, and the new Interlocutory Attorney Jennifer Elgin was formerly *of counsel* to Kilpatrick Townsend. SAppx08708-08709

Mr. Hudis was appointed as an ALJ on March 20, 2019. He has extensive experience in IP law. He has held leadership positions in the American Bar Association's Section of Intellectual Property Law ("the ABA IP Section"). He has served on the Board of Directors of the American Intellectual Property Law Association ("AIPLA") where he has also been chair of several of its trademark-related committees. He was a member of the USPTO's Trademark Public Advisory Committee. SAppx08713.

Judge Hudis edited a book entitled, *A Legal Strategist's Guide to Trademark Trial and Appeal Board Practice.* Editions of the book were published in 2010, 2012, and 2016. SAppx08716-08721. The book is currently offered for sale to the public via Amazon.com, where new copies are priced at $163.94 (SAppx08722). A copy of the 2016 edition was sold to at least one law library. SAppx08711-08712.

*1. Relationship Between Jonathan Hudis and William Bryner*

William Bryner is a partner at Kilpatrick Townsend and one of the attorneys representing Apple Inc. who has made an appearance before this Court. Beginning in 2010 and continuing through 2016, Mr. Bryner was a chapter author of ALJ Hudis's book, *A Legal Strategist's Guide to Trademark Trial and Appeal Board Practice*. SAppx08711-SAppx08714, SAppx08717-08721.

*2. Relationship Between Jonathan Hudis and Theodore Davis*

Theodore Davis is a partner at Kilpatrick Townsend and one of the attorneys representing Apple Inc. who has made an appearance before this Court. Mr. Davis has had a professional relationship with Mr. Hudis for several years. They have both been officers on the ABA IP Section at the same time or approximately the same time. According to a report by the ABA IP section dated March 6, 2018, Mr. Hudis was the Secretary (and he presented a resolution on behalf of the Special Task Force on USPTO Reorganization), and Mr. Davis was Past Section Chair.

SAppx08701-08703. A report by the ABA IP Section dated August 2019 shows that Mr. Davis represented the Section at an event abroad as Past Section Chair, and Mr. Hudis represented the Section at an event regarding inventors at the USPTO. SAppx08687-08690.

Both Messrs. Hudis and Davis have appeared at USPTO public meetings together. On June 24, 2016 they appeared together at a TTAB Meeting. SAppx08691-08694. On September 25, 2017 they appeared together at a TTAB meeting and announced themselves as official representatives of the ABA IP Section. SAppx08695-08700.

Mr. Davis took over as editor of the book *A Legal Strategist's Guide to Trademark Trial and Appeal Board Practice* from Mr. Hudis, editing his first book in 2020. SAppx08715.

Both have served on the AIPLA's Board of Directors; Mr. Davis remains a director with a term expiring in 2024. SAppx08705-08707, SAppx08713.

*3. In its Decision, the Board Ignored its Most Significant Legal Position Stated in the MSJ Decision*

The Board *reversed* its reliance on key point of a crucial case between the MSJ Decision and the Decision regarding the application of the *Big Blue* case for tacking as shown above. The new position regarding this case presents the appearance of bias by ALJs Hudis, Shaw and Kuczma because reliance on the key

point of *Big Blue* alone could turn the decision to the favor of Bertini since the set of The Goods is completely different from set of The Services for tacking marks.

*4. The Board Ignored the Genericness Standard that the Three ALJs Applied in Precedential Cases that They Themselves Decided*

In the Decision the Board declared that the word "music" is generic for "sound recordings" and for "production and distribution of sound recordings", but it failed to analyze any evidence that the word "music" is generic as shown above. The Board relied on its own single statement of genericness without any evidentiary record and without a required two-part inquiry. *In doing so the Board ignored standards for genericness of terms that the members of the Board - ALJs Hudis, Shaw and Kuczma - previously applied in other precedential TTAB cases.* Some examples are below.

*Performance Open Wheel Racing, Inc. v. U.S. Auto Club Inc.*, Opp'n No. 91229632, 2019 WL 2404075 at *7 (TTAB 2019) PRECEDENTIAL - **Shaw** (("Whether an asserted mark is generic or descriptive is a question of fact" based on the entire evidentiary record). As noted above, we must give due consideration to the evidence of consumer perception of the use of the mark as a whole.")

*In re The Consumer Protection Firm PLLC,* 2021 WL 825503 (TTAB 2021) PRECEDENTIAL – **Hudis** ("The genericness inquiry is a two-part test: 'First, what is the genus of goods or services at issue? Second, is the term sought to be registered ... understood by the relevant public primarily to refer to that genus of goods or services?'")

*In re Chronix Biomedical, Inc*., 2018 WL 3740515, (TTAB 2018) – **Kuczma dissent opinion** ("a "strong" showing, with "clear evidence," that Applicant's mark is generic." "We must make a two-step inquiry to determine whether "second opinion" is generic.")

Finding that the word "music" is generic for "sound recordings" and "production and distribution of sound recordings" sans any analysis of facts or application of the two-part inquiry and contrary to genericness findings by ALJs Hudis, Shaw and Kuczma in other cases, presents the appearance of bias by these ALJs.

*5. The Board improperly relied on a proposed regulation*

In its Denial, the Board revealed another of its standards for determining that the service sold under Apple Music is the same as the goods sold under Apple: a possible future regulation. The Board explains that a pilot program *might* result in new regulations that *might* affect this case. Appx00067. Dismissing Bertini's Opposition based on a possible future regulation in the future is not a valid legal argument. It is impossible for Bertini to defend himself against a regulation that is not yet written and adopted, and it is impossible to defend against a new argument raised by the Board, *sua sponte,* for the first time in its Denial. This action by ALJs Hudis, Shaw and Kuczma presents the appearance of bias.

*6. The Board Dismissed Bertini's Opposition by Giving Consideration to Unpleaded Defenses*

As shown above, Apple raised a new defense at trial: that an unregistered ***service*** mark APPLE purportedly used by Apple Corps could be used to tack to APPLE MUSIC. No substantial evidence was offered to show how this mark was

used in commerce. Nevertheless, the Board accepted this new defense and dismissed the Opposition based on it despite case law prohibiting decisions based on unpleaded defenses.

**In summary**, as shown above in this Brief the Board: (1) gave consideration to unpleaded defenses; (2) made findings in favor of Apple on issues not discussed in its Trial Brief; (3) made findings in favor of Apple without substantial evidence presented at trial; (4) didn't take into account evidence that detracts from the Board's decision, in order to favor Apple; (5) refused to consider evidence from Wikipedia website offered by Bertini but accepted evidence from a third party website offered by Apple; (6) relied on a possible future regulation as a reason for dismissing the Opposition; (7) didn't apply a standard to find genericness of a term in this case while each of Board judges applied the relevant standard in other cases; (8) made findings contrary to its own tacking requirement which was stated in the MSJ Decision; (9) refused to make a negative inference regarding Apple Inc.'s failure to comply with its Order to Compel. All these actions show the appearance of bias by ALJs Hudis, Shaw and Kuczma.

### G. The Board Violated Bertini's Due Process Rights

As explained above along with other Due Process violations, the Board gave consideration to unpleaded defenses, made findings contrary to its own tacking requirement which was stated in the MSJ Decision, didn't apply a standard to find

genericness of a term in this case despite the extensive experience in doing so by ALJs Hudis, Shaw and Kuzma in other cases. The Board also relied on a proposed regulation as a reason to dismiss the Opposition in its Denial.

All of these actions are a violation of Bertini's Due Process rights under the 5th and 14th Amendments to the United States Constitution. The TTAB and ALJs Hudis, Shaw and Kuczma have personally undertaken, contributed to, and conspired or otherwise been complicit in these actions that violated Bertini's constitutional rights, under color of federal law, during their tenure as officers, agents, employees, or representatives of the United States.

## VII. CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The Board found that (a) Apple may claim priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968, and (b) Apple Inc., by tacking the use of the mark APPLE by Apple Corps Ltd., has established use of the mark APPLE MUSIC for the "production and distribution of sound recordings" as early as August 1968. These findings are not based on substantial evidence, and they constitute the establishment of entirely new and erroneous legal principles. These decisions require *de novo* review by this Court.

The Board acted as an advocate for Apple due to the business and professional relationships between one of the ALJs rotated onto the case and two of the Apple attorneys who appeared after Bertini's partial victory on his Motion

for Summary Judgment. These relationships explain the reason the Board created multiple new and erroneous legal principles and made factual decisions without substantial evidence in order to dismiss Bertini's Opposition.

Therefore, Charles Bertini respectfully requests that the Court reverse the decision of the Board and deny registration of the mark shown as Serial No. 86659444 for APPLE MUSIC.

March 31, 2022

/s/ James Bertini
JAMES BERTINI
Attorney for Appellant Charles Bertini
423 Kalamath Street
Denver, CO 80204
303 572-3122
jamesbertini@yahoo.com

**ADDENDUM: OPINION OF THE TTAB**
**containing Decision and Denial, marked w appx**
**[APPX00001–APPX00070]**

THIS OPINION IS NOT A
PRECEDENT OF THE TTAB

Hearing: November 5, 2020 Mailed: April 16, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*Charles Bertini*
*v.*
*Apple, Inc.*

———

Opposition No. 91229891

———

James Bertini, for Charles Bertini.

Joseph Petersen of Kilpatrick Townsend & Stockton LLP, for Apple, Inc.

———

Before Shaw, Kuczma and Hudis,
Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

Apple, Inc. ("Applicant") has applied to register the standard character mark APPLE MUSIC for:

> Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests, fairs for entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of radio programs, television programs, and sound recordings; entertainment services, namely, providing ongoing television, radio, audio programs, video programs, podcast, and webcast programs in the field of entertainment; providing audio and video

programming featuring entertainment, sports, music, information, and news by means of telecommunications networks; entertainment services, namely, providing streamed and downloadable audio and video content to users through a subscription service provided online via a communication network; provision of live entertainment and recorded entertainment, namely, musical performances; providing non-downloadable audio and video programming featuring entertainment, sports, music, informational, and current events news programming; providing websites and computer applications featuring entertainment information, sports information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites and computer applications featuring information in the field of entertainment, music, sports, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, entertainment surveys, and ratings, and providing interactive websites and computer applications for entertainment purposes for the posting and sharing of reviews, entertainment surveys, and ratings of users all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, entertainment fairs, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; providing non-downloadable ringtones, pre-recorded music, video programs, and graphics for use on mobile communications devices via a global computer network and wireless networks; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia

> content; publication of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; news reporting in the field of music and entertainment, in International Class 41.[1]

Charles Bertini ("Opposer") opposes registration of Applicant's mark on the ground of priority and likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), based on his asserted common law rights in the mark APPLE JAZZ for services that are "the same as or substantially identical to services intended to be offered by Applicant under its alleged mark of APPLE MUSIC."[2] Opposer pleaded ownership of a pending application for the mark APPLE JAZZ in standard characters for:

> Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests for entertainment purposes, musical and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment, namely, live musical performances, and temporary use of online non-downloadable recorded entertainment featuring musical performances; providing websites featuring entertainment information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites featuring information in

---

[1] Application Serial No. 86659444 was filed on June 11, 2015 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), claiming a bona fide intention to use the mark in commerce. Applicant claimed priority under Trademark Act Section 44(d), 15 U.S.C. § 1026(d), based on Jamaican Application No. 67176 filed on May 18, 2015. The term MUSIC is disclaimed.

[2] Notice of Opposition ¶ 6, 1 TTABVUE 5.

> the field of entertainment, music, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, and providing interactive websites for the posting and sharing of reviews, all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, and multimedia content in the fields of music; publication of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; arranging, producing in the nature of, recording, mixing, editing and sound engineering, researching musical compositions, publishers, artists, recordings, and licensing for music production services; arranging and conducting educational competitions for students in the field of business; arranging and conducting educational competitions for students in the field of entertainment, in International Class 41.[3]

In its Amended Answer, Applicant denied the salient allegations of the Notice of Opposition. Applicant pleaded the affirmative defenses of priority and ownership of

[3] Notice of Opposition ¶ 10, 1 TTABVUE 9; 37 TTABVUE 46-51 (Ex. 132) Application Serial No. 87060640 was filed on June 5, 2016 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), claiming a date of first use anywhere and in commerce at least as early as June 5, 1985. The term JAZZ is disclaimed.

three registrations comprising APPLE marks, (including two registrations which it purchased from an unrelated entity, Apple Corps, Ltd.) for arguably related goods and services (see below the discussion of the APPLE registrations accompanying Applicant's Notices of Reliance), and that Opposer's mark is "comprised of a descriptive term and a geographically descriptive term, and the claimed mark lacked distinctiveness as of Apple's priority date."[4] The parties fully briefed the issues and appeared for oral argument. For the reasons discussed below, we dismiss the opposition.

## I. The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the subject application. The parties filed a stipulation on May 29, 2019 regarding the authenticity of certain documents and the admissibility of certain discovery depositions.[5] The parties also introduced the following evidence:

1. Trial Declaration of Opposer Charles Bertini ("Bertini Decl.") with exhibits relating to Opposer's use of his mark;[6]
2. Opposer's Notices of Reliance, including Applicant's discovery responses and objections, Internet documents, and USPTO official records;[7]

---

[4] Amended Answer, 48 TTABVUE 19-23.

[5] 53 TTABVUE.

[6] 59-61 TTABVUE.

[7] 62-66 TTABVUE.

3. Declaration of Jeffrey Vaughan Jones, Chief Executive Officer of Apple Corps Ltd. ("Jones Decl.") with exhibits relating to Apple Corps' use of the mark APPLE;[8]

4. Declaration of Thomas R. La Perle, Esq., Applicant's Legal Department Senior Director ("La Perle Decl.") with exhibits relating to Applicant's use of APPLE marks and the purchase of Apple Corps' rights in its APPLE marks;[9]

5. Applicant's Notices of Reliance, including Opposer's discovery responses, printed publications, USPTO official records, the deposition of Charles Bertini ("Bertini Dep."), Internet documents, and status and title copies of the following three registrations owned by Applicant:

    a. Registration No. 2034964, issued February 4, 1997 and renewed, for the mark APPLE in typed form for "Gramophone records featuring music; [and] audio compact discs featuring music" and claiming a date of first use of August 1968,

    b. Registration No. 3317089, issued October 23, 2007 and renewed, based on Section 44(e), for the mark APPLE in standard characters for, inter alia, "Musical sound records", and

    c. Registration No. 4088195, issued January 17, 2012, for the mark APPLE in standard characters for, inter alia, "entertainment services, namely, providing prerecorded audio and audiovisual content . . . in the fields of music" and claiming a date of first use of March 1, 1981;[10]

[8] 71 and 72 TTABVUE.

[9] 83-85 TTABVUE.

[10] 67-70 and 73-82 TTABVUE. Registration Nos. 2034964 and 3317089 issued to Apple Corps, Ltd., but were assigned to Applicant via a 2007 settlement agreement. *See* La Perle Decl. ¶ 48, 83 TTABVUE 19, Ex. 23 to La Perle Decl., 85 TTABVUE (confidential), and Ex. 24 to La Perle Decl., 83 TTABVUE 253-58; *see also* Assignment Abstracts of Title Information, 67 TTABVUE 17-18 and 22.

6. Opposer's Rebuttal Trial Declaration of Charles Bertini ("Bertini Rebuttal Decl."), including exhibits related to his use of the APPLE JAZZ mark;[11] and
7. Opposer's Rebuttal Notices of Reliance on Internet documents.[12]

## II. Evidentiary Issues and Objections

The parties raise numerous evidentiary issues and objections to each other's evidence and briefs, including objections on the grounds of hearsay, relevance, timeliness, lack of probity, and lack of personal knowledge. We address the parties' arguments and objections as follows.

### A. Applicant's Brief

In his Reply Brief, Opposer objects to the form of Applicant's brief, on the ground that Applicant uses extensive footnotes to avoid the page limit. Opposer argues that many of the brief's 141 footnotes "do not reference evidence, but rather additional facts, cases, case analysis and argumentation."[13]

Single-spaced footnotes containing substantial discussion may be viewed as a subterfuge to avoid the page limit. *Consorzio del Prosciutto di Parma v. Parma Sausage Prods. Inc.*, 23 USPQ2d 1894, 1896 n.3 (TTAB 1992). More importantly, arguments raised only in footnotes are waived. *Otsuka Pharm. Co. v. Sandoz, Inc.,* 678 F.3d 1280, 102 USPQ2d 1729, 1739 (Fed. Cir. 2012).

The vast majority of Applicant's footnotes comprise evidentiary citations and amplifications or clarifications of evidentiary points. The remaining footnotes do not

---

[11] 86 TTABVUE.

[12] 87 and 88 TTABVUE.

[13] Opposer's Reply Br., p. 21, 92 TTABVUE 22.

contain substantial discussion; they merely provide additional material supporting propositions discussed in the body of the brief. We find Applicant's use of footnotes is not a subterfuge to avoid page limits. The objection is overruled and we have considered Applicant's trial brief, including the footnotes.

**B. Applicant's 1981 and 1991 settlement agreements**

In his brief, Opposer points out that Applicant failed to comply with the Board's order to produce Applicant's 1981 and 1991 settlement agreements with Apple Corps.[14] Opposer alleges the agreements are relevant because "[a]ccording to publicly available information in online encyclopedia Wikipedia regarding the Agreement of 1981: 'Apple Computer agreed not to enter the music business'."[15] Applicant does not address Opposer's contention but simply states that Apple Corps and Apple Computer "settled their differences in 2007, when Apple [Computer] acquired Apple Corps' trademark and service mark rights in the APPLE Mark dating back to August 1968."[16]

The Board ordered that "Applicant must produce the portion of the identified settlement agreements concerning trademarks [dated 1981 and 1991 between Applicant and Apple Corps] in response to [Opposer's] Requests for Production."[17] The order further explained that:

> In the event that Applicant fails or has failed to provide Opposer with full and complete responses to the discovery requests identified in the motion [including the 1981 and 1991 settlement agreements], . . . Applicant may, upon

[14] Opposer's Br., p. 24 ¶ 69, 89 TTABVUE 24.

[15] *Id.*

[16] Applicant's Br., p. 20, 90 TTABVUE 22.

[17] Board's Order, p. 7, 35 TTABVUE 7.

> timely objection by Opposer, be barred from relying upon or later producing documents or facts at trial that were properly sought, but withheld from such discovery.[18]

As noted in the Board's order, settlement agreements that have avoided litigation may show limitations on party's rights in a mark. *Georgia-Pacific Corp. v. Great Plains Bag Co.*, 190 USPQ 193, 197 (TTAB 1976). The 1981 and 1991 agreements between Applicant and Apple Corps could have shown limitations on Applicant's rights in its APPLE marks in the United States. However, inasmuch as Opposer did not object to Applicant's omissions, and Applicant does not seek to rely on them,[19] we will not sanction Applicant or draw any adverse inferences from Applicant's failure to produce the settlement agreements. Nevertheless, in light of the clear intent of the Board's order, we view with great disfavor Applicant's failure to adhere to the Trademark Rules of Practice and comply with the order.

**C. Hearsay objections to matter in documents**

Applicant objects on the ground of hearsay to certain portions of Opposer's evidence consisting of newspapers articles and advertisements related to the APPLE JAZZ band and concerts. Applicant argues that "[t]o the extent that Opposer uses these to show the truth of the matter asserted . . . they are inadmissible hearsay."[20]

---

[18] *Id.* at 10 n.17, 35 TTABVUE 10.

[19] In addition, as discussed below, we find that Applicant is unable to establish its own use of the mark APPLE for musical recordings or their production and distribution prior to Opposer's earliest priority date. In the alternative, Applicant relies on the trademark rights it purchased from Apple Corps.

[20] App. A to Applicant's Br., 90 TTABVUE 63.

Opposer objects to a number of Applicant's evidentiary submissions from various publications on the ground of hearsay as well.[21]

The Board considers website and Internet printouts and other materials introduced under a notice of reliance without supporting testimony only for what they show on their face rather than the truth of the matters asserted therein. *See Safer, Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010). However, although printed publications cannot be used to prove the truth of the statements contained in them, Rule 803(16) of the Federal Rules of Evidence provides that a "statement in a document that is at least 20 years old and whose authenticity is established" is an exception to the hearsay rule. Newspapers and periodicals are self-authenticating. *See* Fed. R. Evid. 902(6). In addition, inasmuch as witnesses for a party may have authenticated or testified to the provenance of such documents we also find that they meet the authenticity requirements of Fed. R. Evid. 901(b)(8). The objections are overruled as to documents that are over twenty years old. Either party may rely on printed publications more than twenty years old for the truth of the statements asserted therein, whether introduced through a notice of reliance on printed publications or through testimony. *See Blackhorse v. Pro-Football, Inc.*, 111 USPQ2d 1080, 1086 n.20 (TTAB 2014). Printed publications less than twenty years old may not be relied on for the truth of the statements asserted therein.

**D. Opposer's Objection to the Jones' declaration.**

Opposer objects to much of Jeffrey Vaughan Jones' declaration testimony and the accompanying exhibits on the grounds of foundation and hearsay because Jones, who

[21] App. A to Opposer's Br., 89 TTABVUE 53.

began working for Apple Corps (Applicant's predecessor-in-interest) in 2007, fails to state who gave him the relevant information or whether he has personal knowledge of the exhibits.[22] Jones' declaration states:

> Except where otherwise stated, all information provided within this declaration is either personally known to me, or is information which has been provided to me (especially in relation to matters prior to my appointment in May 2007) and all of which I believe to be true, and/or has been obtained by me from the books and records made in the usual and ordinary course of Apple Corps' business.[23].

Apple Corps' claims of use of APPLE marks date back to 1968, more than fifty years ago. It is unreasonable to expect persons familiar with a businesses' history dating back to the late 1960s to remain employed after such a long period of time. In such cases—where testimony relies on institutional knowledge—the Board has stated that pursuant to Federal Rule of Evidence 803:

> It is recognized that where a corporation has been in existence for a considerable period of time, there may not be an individual currently with the organization that could relate vital statistics of the business based upon personal knowledge and that therefore proper recourse may be made to historical documents and similar documents maintained by the corporation over the years, in the normal operation thereof or even to biographical matter, provided the material is made of record subject to the scrutiny and cross-examination of the adverse party.

*Transamerica Fin. Corp. v. Trans-American Collections, Inc.,* 197 USPQ 43, n.6, (TTAB 1977). Opposer was free to cross-examine Jones regarding Apple Corps' books

---

[22] *Id.*, 89 TTABVUE 58-62

[23] Jones Decl. ¶ 1, 71 TTABVUE 2.

and records if he was dissatisfied with Jones' declaration.[24] Opposer chose not to do so. Accordingly, we overrule the objection and have considered the Jones declaration.

**E. Other objections**

The remaining objections generally go to the weight or relevance, rather than the admissibility, of the evidence. Given the nature of the objections, coupled with their number, we see no compelling reason to discuss each objection. In assessing the remaining objections, we employ the same standards the Board has noted before:

> [W]e simply accord the evidence whatever probative value it deserves, if any at all. . . . Ultimately, the Board is capable of weighing the relevance and strength or weakness of the objected-to testimony and evidence in this specific case, including any inherent limitations, and this precludes the need to strike the testimony and evidence.

*Hunt Control Sys. Inc. v. Koninklijke Philips Elec. N.V.*, 98 USPQ2d 1558, 1564 (TTAB 2011), *rev'd on other grounds*, Civ. No. 11-3684, 2017 WL 3719468 (D.N.J. Aug. 29, 2017). As necessary and appropriate, we will point out any limitations of the evidence or otherwise note that the evidence cannot be relied upon in the manner sought. We have considered all of the testimony and evidence introduced into the record. In doing so, we have kept in mind the various objections raised by the parties and we have accorded whatever probative value the subject testimony and evidence merit.

---

[24] *See* Parties' Stipulation ¶ 6, 53 TTABVUE 3. *Cf. WeaponX Performance Prods. Ltd. v. Weapon X Motorsports, Inc.*, 126 USPQ2d 1034, 1037 (TTAB 2018) (opposer's objection to applicant's testimony declarations overruled where opposer had opportunity to cross-examine the witnesses but chose not to do so).

## III. Entitlement to Statutory Cause of Action

We now refer to standing as entitlement to a statutory cause of action. *Peterson v. Awshucks SC, LLC,* 2020 BL 509515, at *5 n.34 (TTAB 2020); *Major League Soccer, LLC v. F.C. Int'l Milano S.p.A.*, 2020 USPQ2d 11488, at *5 n.18 (TTAB 2020). Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting Sections 13 and 14 of the Trademark Act remain equally applicable. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *4 (Fed. Cir. 2020). As the Court of Appeals for the Federal Circuit has observed, there is "no meaningful, substantive difference between the analytical frameworks" in the prior "standing" case law, under which an opposer must show a real interest in the proceeding and a reasonable basis for its belief in damage, *see Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014), and the current "entitlement" case law, under which an opposer must show an interest falling within the zone of interests protected by statute and damage proximately caused by registration. *Corcamore,* 2020 USPQ2d 11277, at *4. Thus, "a party that demonstrates a real interest in [opposing registration of] . . . a trademark under [Trademark Act Section 13, 15 U.S.C. § 1063] has demonstrated an interest falling within the zone of interests protected by [the Trademark Act]. . . . Similarly, a party that demonstrates a reasonable belief of damage by the registration of a trademark demonstrates proximate causation within the context of [§ 1063]." *Id.* at *7.

In his motion for summary judgment, which was partially granted by the Board, Opposer established his statutory entitlement to bring this opposition proceeding by

submitting a copy of his pleaded application for the mark APPLE JAZZ and an Office Action citing Applicant's pending application as a potential bar to registration of Opposer's mark based on likelihood of confusion.[25] Opposer has established his statutory entitlement to bring this opposition proceeding.[26] *See Fiat Grp. Autos. S.p.A. v. ISM, Inc.*, 94 USPQ2d 1111, 1112 (TTAB 2010) ("The filing of opposer's application and the Office's action taken in regard to that application [a provisional refusal based on the involved application] provides opposer with a basis for pleading its . . . [entitlement to a statutory cause of action]").

## IV. Grant of Partial Summary Judgment

In an order dated March 1, 2019, the Board granted Opposer's motion for summary judgment, in part, with respect to the issue of likelihood of confusion, and denied the motion, in part, with respect to the issue of priority of use.[27] The only remaining issues are priority and whether Opposer's mark is primarily merely geographically descriptive and lacks secondary meaning.

## V. Priority

To prevail on the ground of likelihood of confusion under Section 2(d) of the Trademark Act, based on a previously used mark, it is the Opposer's burden to prove both priority of use and likelihood of confusion by a preponderance of the evidence. *Cunningham v. Laser Golf Corp.,* 222 F.3d 943, 55 USPQ2d 1842, 1848 (Fed. Cir.

---

[25] 37 TTABVUE 46-51 (Exhibit 132), 150-53.

[26] 45 TTABVUE 5.

[27] 45 TTABVUE 16.

2000). As noted above, the Board granted Opposer's motion for summary judgment, in part, with respect to the issue of likelihood of confusion.

A party seeking to oppose registration of a mark under Section 2(d) must prove that it has proprietary rights in the term it relies upon to demonstrate likelihood of confusion as to source. *Otto Roth & Co. v. Universal Foods Corp.,* 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981). A party may establish its own prior proprietary rights in a trademark through ownership of a registration, through actual use, or through use analogous to trademark use. *T.A.B. Sys. v. PacTel Teletrac,* 77 F.3d 1372, 37 USPQ2d 1879 (Fed. Cir. 1996). Here, because Opposer has not pleaded or submitted a registration, he must rely on his asserted common law rights. In order for Opposer to prevail, the mark must be distinctive, inherently or otherwise, and Opposer must show priority of use. *Otto Roth*, 209 USPQ at 40; *see also*, *Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 57 USPQ2d 1720, 1721 (Fed. Cir. 2001).

Opposer asserts that he acquired common law rights in the mark APPLE JAZZ for the services identified it his application "long prior" to any date on which Applicant may rely for the applied-for mark.[28] Because the recited services in Opposer's pleaded application and Applicant's application both include "[a]rranging, organizing, conducting, and presenting concerts [and] live musical performances" and "production and distribution of . . . sound recordings," the parties' services are in part identical. We therefore focus our analysis on these services because they are most likely to establish priority for one party or the other. Neither Opposer nor Applicant need prove, and we need not find, priority as to each service listed in the respective

[28] Notice of Opposition ¶¶ 7 and 8, 1 TTABVUE 8.

recitations of services. It is sufficient to find priority as to any service encompassed by the application and registration. *See Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1409 (TTAB 2015), *aff'd* 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014).

**A. Opposer's mark and priority**

Opposer is a jazz musician who began playing the trumpet professionally around 1971.[29] In 1984, he left his full-time music job and began freelancing as a musician.[30] Over the years, he has been employed in a number of roles, including, as a first trumpet, music director, and band leader.[31] Opposer also currently teaches music at performing arts schools, and has taught music at a college in the past.[32]

After organizing and leading a successful impromptu concert in 1984, Opposer performed his first concert under the name APPLE JAZZ at the Cortland New York Holiday Inn on June 13, 1985, as shown by the advertisement below.[33]

---

[29] Bertini Dep., p. 9, 73 TTABVUE 21.

[30] *Id.*

[31] *Id.* at 10, 73 TTABVUE 21.

[32] *Id.* at 11-12, 73 TTABVUE 21.

[33] Opposer asserts his date of first use of the APPLE JAZZ mark is June 5, 1985, the date on which a newspaper article and an advertisement describing the upcoming first concert was published. *See* Ex. 1 to Bertini Dep., pp. 169 and 174, 73 TTABVUE 47-48 and 88. The use of a mark in the announcement of a future service, including an advance purchase of the service, does not constitute use as a service mark. *See Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 90 USPQ2d 1301 (Fed. Cir. 2009) (holding that actual use of the mark in commerce in connection with an existing service is required and that mere preparations to use a mark sometime in the future does not constitute use in commerce); *In re Cedar Point, Inc.*, 220 USPQ 533 (TTAB 1983) (holding that advertising of an entertainment park, which was not yet open, was not a valid basis for registration). Accordingly, we find Opposer's earliest date of first use of the APPLE JAZZ mark is the date that Opposer's first concert was given,



[34]

Opposer states that he chose the name APPLE JAZZ "because it was in Cortland County, and cortland apples are part of Cortland County, we decided to call it Apple Jazz."[35] Each year since 1985, Opposer has offered APPLE JAZZ concerts in and around the Cortland, New York area. Between 1986 and 2014, nearly all of the concerts were billed as festivals, organized by Opposer, and generally held in a pavilion at the Dwyer Memorial Park in Cortland County.[36] In 2015, Opposer's APPLE JAZZ band was hired to perform at the Syracuse Jazz Fest, and in 2016 and 2017, the APPLE JAZZ band was hired to perform at the Homer Center for the Arts in Homer, New York.[37] Revenues from the APPLE JAZZ festivals were modest, according to Opposer, "[s]ome years, it made money, and some years, it didn't."[38] The following representative exhibits, introduced by Opposer, show use of APPLE JAZZ to identify both Opposer's band and concerts between 1986 and 2010.

---

namely June 13, 1985. The eight-day difference does not affect the outcome of the priority determination.

[34] Ex. 1 to Bertini Dep., 73 TTABVUE 88.

[35] Bertini Dep., p. 19, 73 TTABVUE 9.

[36] *Id.* at 27-28, 73 TTABVUE 11.

[37] *Id.* at 31-32, 73 TTABVUE 12.

[38] *Id.* at 59, 73 TTABVUE 19.



THE CORTLAND REPERTORY THEATRE
&
CHARLIE BERTINI
*Present*
AppleJazz '86

*Featuring*
CHARLIE BERTINI
&
THE
APPLE JAZZ BAND
DAVE HANLON · LARRY ARLOTTA
DICK CHAVE · JOHN KANE
DAVE GANNETT

SEPTEMBER 12, 1986 8 P.M.
at
THE PAVILION
DWYER MEMORIAL PARK
LITTLE YORK LAKE
Admission $10.00

TICKETS AVAILABLE AT:
CRT Business Office - 37 Tompkins St. (607) 753-6161
The Candy Bar - Center City Mall
Master/Visa cards accepted

Bertini Funeral Home - N. Main St., Cortland
Allyson's Restaurant - S. Main St., Cortland
Steven's Diner - Rt. 281
The Lido Restaurant - 152 Port Watson, Cortland

DWYER MEMORIAL PARK is located on Rt. 281N., Rt. 81 S. - Exit 13 - Rt. 281 S.

[39]



CORTLAND REPERTORY THEATRE
P.O. Box 783, Cortland, N.Y. 13045
Professional Summer Theatre Since 1972

1990 SEASON CALENDER

| Mon. | Tues. | Wed. | Thur. | Fri. | Sat. | Sun. |
|---|---|---|---|---|---|---|
| | AppleJazz '90 | | | JUNE 8† | | |
| BLITHE SPIRIT | | JUNE 13 | 14 | 15 | 16 | 17 |
| | 19 | 20 | 21 | 22* | 23 | |
| FOXFIRE | | 27 | 28 | 29 | 30 | JULY 1 |
| | | 4 | 5 | 6 | 7 | |
| ITALIAN AMERICAN RECONCILIATION | | 11 | 12 | 13 | 14 | 15 |
| | 17 | 18 | 19 | 20 | 21 | |
| ARSENIC AND OLD LACE | | 25 | 26 | 27* | 28 | 29 |
| JULY 30 FOLLIES | 31 | AUGUST 1 | 2 | 3 | 4 | |
| 1940's RADIO HOUR | | 8 | 9 | 10 | 11 | 12 |
| | 14 | 15 | 16 | 17* | 18 | 19 |

EVENING PERFORMANCES: 8:00 PM
* 2:00 PM MATINEE & EVENING PERFORMANCE

OUR LOCATION:



PERFORMANCES: Pavilion Theatre, Dwyer Memorial Park, North of Little York. Theatre Box Office Opens 1½ hour prior to performance. and 4:00 P.M. Sunday.
MAIN BOX OFFICE: Love of Pete, 15 Main Street, Cortland. 9:30 - 5:30 Mon. - Sat.

TICKET PRICES:
$13. Center
$11. Side
(Matinees Lower)
For Group Rates Call CRT Office:
(607) 753-6161

EXHIB

RESERVATIONS AND INFORMATION
607-756-2627

CRT performances are made possible, in part, with public funds from the New York State Council on the Arts, the Cortland County Legislature and the Natural Heritage Trust.

[40]

---

[39] Ex. 3 to Bertini Dep., 73 TTABVUE 141.

[40] Ex. 15 to Bertini Dep., 73 TTABVUE 165.



[41]



[42]

Eventually, Opposer branched out into other musical enterprises and formed APPLE JAZZ Records in the mid-1990s in order to issue and distribute recordings of his work as an independent musician, as well as the work of other musicians.[43]

---

[41] Ex. 29 to Bertini Dep., 73 TTABVUE 193.

[42] Ex. 44 to Bertini Dep., 73 TTABVUE 223.

[43] Bertini Dep., pp. 44 and 47, 73 TTABVUE 15-16.

Opposer's music is available on Applicant's iTunes platform and other streaming music services.[44]

Opposer has used APPLE JAZZ as a service mark to identify a variety of his musical enterprises, including a band, music festivals and concerts, and a musical recording production and distribution company.[45] As Opposer states in his deposition: "Apple Jazz is a brand."[46] Although Opposer's revenues from these events are modest, Opposer's use of the mark certainly is adequate to meet the definition of "use in commerce" under Section 45 of the Trademark Act, 15 U.S.C. § 1127. *See Larry Harmon Pictures Corp. v. Williams Rest. Corp.*, 929 F.2d 662, 18 USPQ2d 1292, 1295 (Fed. Cir. 1991) ("We . . . reject . . . [Opposer's] argument that a certain increased threshold level of interstate activity is required before … [protection of a mark] may be granted."). We therefore find Opposer was using APPLE JAZZ as a service mark in connection with "[a]rranging, organizing, conducting, and presenting concerts [and] live musical performances" at least as early as June 13, 1985.

**B. Whether Opposer's mark is primarily merely geographically descriptive and lacks secondary meaning.**

Applicant argues Opposer cannot establish priority because Opposer's APPLE JAZZ mark is primarily merely geographically descriptive and lacks secondary meaning.[47] Applicant claims Opposer's mark is primarily geographically descriptive because he performs jazz music in an area of New York known for producing apples.

---

[44] *Id.* at 114-15, 73 TTABVUE 33.

[45] *Id.* at 17, 26, and 33, 73 TTABVUE 9, 11, and 13.

[46] *Id.* at 46, 73 TTABVUE 13.

[47] Applicant's Br., p. 41, 90 TTABVUE 43.

That is, "'APPLE' is descriptive of 'apple country'—the area in and around Cortland, New York",[48] and the term JAZZ is generic for Opposer's music. Thus, according to Applicant, Opposer's "'Apple Jazz' is the geographically descriptive combination of 'Apple' and 'Jazz[.]'"[49] To establish that Opposer's mark is primarily merely geographically descriptive and lacking secondary meaning, Applicant relies on statements by Opposer and on other evidence it submitted.

Applicant first argues Opposer admits to the connection between his mark and the "apple country" of upstate New York. Applicant notes Opposer stated he selected APPLE JAZZ as his band's name because "the jazz genre of music was being promoted in the apple country of Central New York State and Cortland, New York, home of the Cortland apple."[50] Applicant also notes Opposer admitted to choosing the name APPLE JAZZ for his band because of a connection with the Cortland region: "I wanted a name for the band. I had to call it something. It could have been 'Charlie Bertini and His Friends' or whatever. But because it was in Cortland County, and cortland apples are part of Cortland County, we decided to call it Apple Jazz."[51]

Applicant also submitted evidence that the Cortland County area of New York State, where Opposer has given most of his concerts, is known for the production of apples. The following examples are representative.

- The Cortland County Chamber of Commerce featured an apple image in its letterhead in a 1991 letter to Opposer:

[48] *Id.* at 45, 90 TTABVUE 47.

[49] *Id.* at 51, 90 TTABVUE 53.

[50] *Id.* at 45, 90 TTABVUE 47.

[51] Bertini Dep., p. 19, 73 TTABVUE 9.

CORTLAND COUNTY Chamber of Commerce[52]

- A May 1993 newspaper article announcing one of Opposer's concerts as one of several local "[e]vents built around seniors, ***jazz***, ***apples*** and balloons[.]"[53]
- Applicant identifies "[n]umerous businesses, programs, and festivals in the upstate New York region (which includes Cortland) [that] have adopted apple names and imagery to signal their location in 'apple country.'"[54] These include: Red Apple Food Marts, the "Red Apple Program" offered by a business valuation company, the Ithaca New York Apple Harvest Festival, the Hilton New York Apple Fest, the LaFayette New York Apple Festival, the Warwick New York Apple Festival, and the Lioness Club of Central Square Apple Festival.[55]

The elements for establishing that a mark is primarily geographically descriptive under Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e)(2), are:

(1) The mark is the name of a place known generally to the public;

(2) The goods for which applicant seeks registration originate in the geographic place identified in the mark; and

---

[52] Ex. 1 to Bertini Rebuttal Decl., 86 TTABVUE 180.

[53] Ex. 27 to Bertini Decl., 59 TTABVUE 55 (emphasis by Applicant).

[54] Applicant's Br., p. 46, 90 TTABVUE 48.

[55] Ex. A to Applicant's 6th notice of reliance, 74 TTABVUE 22-42.

(3) Purchasers would be likely to believe that the goods originate in the geographic place identified in the mark.

*See In re The Newbridge Cutlery Co.*, 776 F.3d 854, 113 USPQ2d 1445, 1448-49 (Fed. Cir. 2015).

We turn our attention first to the question of whether the primary significance of APPLE is that of a geographic location. In making this determination, we are mindful that a mark generally is not considered "primarily" geographic if it has a well-known meaning independent from its geographical meaning. *See In re Int'l Taste Inc.*, 53 USPQ2d 1604, 1605-06 (TTAB 2000) (HOLLYWOOD FRIES not primarily geographic because of other prominent, significant meaning of Hollywood referring to entertainment industry).

On this record, we find the term APPLE denotes the fruit, one type of which is produced in and around Cortland County, New York. Cortland County and the surrounding area are sometime referred to as "apple country" due to the volume of apples produced there. Thus, the phrase "apple country" has a geographic connotation for purposes of determining whether Opposer's mark is primarily geographically descriptive. Nevertheless, evidence identifying "apple country" as the area in and around Cortland, New York is inapposite because Opposer's mark is APPLE JAZZ, not APPLE COUNTRY JAZZ. The record therefore does not establish that APPLE—either alone or when combined with JAZZ—is primarily merely a geographic term. Simply put, APPLE does not share the same geographic connotation as the phrase "apple country" because removing the term "country" from the phrase "apple country" changes the meaning from a geographic place to the fruit.

Applicant also relies on section 1210.02(a) of the TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") (OCT. 2018), which states that "[a] geographic nickname (e.g., 'Big Apple' or 'Motown'), or an abbreviation or other variant of the name of a geographic location, is treated the same as the actual name of the geographic location, if it is likely to be perceived as such by the purchasing public." This argument is unpersuasive because, as noted above, Opposer's mark does not contain the full nickname of the New York apple producing region, i.e., "apple country." Thus, neither APPLE alone nor APPLE JAZZ can be considered to be a geographic nickname, abbreviation, or variant of the name of a geographic location to the purchasing public. We find, therefore, that Applicant has failed to establish that the primary significance of APPLE in Opposer's mark APPLE JAZZ is a geographic location. *See In re Dixie Ins. Co.*, 223 USPQ 514 (TTAB 1984) (no evidence to support the conclusion that the primary significance of DIXIE is geographical).

In the absence of evidence that APPLE JAZZ is primarily merely geographically descriptive, we find Opposer has established that his APPLE JAZZ mark as a whole is inherently distinctive and not lacking in secondary meaning. Opposer may claim priority of use of the mark APPLE JAZZ for use in connection with "[a]rranging, organizing, conducting, and presenting concerts [and] live musical performances" at least as early as June 13, 1985.

**C. Applicant's mark and priority**

1. Applicant's use of APPLE marks

Since at least 1977, Applicant has used its APPLE word mark in connection with personal computers and mobile communication and media devices, as well as with a

variety of related software, services, and accessories.[56] Since the 1980s, Applicant also has used the mark APPLE in connection with an audio player and audio-recording functionalities on its computers and mobile devices.[57] Applicant's audio player and audio-recording functionalities, however, do not establish use of the APPLE mark in connection with the services identified in its application because they are insufficiently related.[58] Applicant's use of the APPLE mark in connection with other music-related goods and services, such as Applicant's iPod player and iTunes services, do not precede Opposer's 1985 priority date.

Nevertheless, the record shows that Applicant has used the mark APPLE MUSIC since at least June 8, 2015 when it launched the APPLE MUSIC streaming service for publishing and distributing music.[59] APPLE MUSIC provides consumers access to Applicant's music catalog comprising some 60 million songs.[60] Below is a screenshot from Applicant's website showing use of the APPLE MUSIC mark in connection with its streaming music service.[61]

---

[56] La Perle Decl. ¶¶ 8 and 9, 83 TTABVUE 8.

[57] *Id.* at ¶ 34, 83 TTABVUE 14.

[58] Although Applicant's Registration No. 4088195 recites a variety of entertainment services, including "entertainment services, namely, production of live musical performances," and claims a date of first use as early as March 1, 1981, Applicant was unable to establish its use of the mark for any of these services prior to Opposer's 1985 priority date. *See* TMEP section 903.08: "If more than one item of goods or services is specified in a particular class, the date of first use anywhere and date of first use in commerce do not have to pertain to every item in the class."

[59] La Perle Decl. ¶ 19, 83 TTABVUE 4.

[60] *Id.*

[61] Ex. 8 to La Perle Decl. ¶ 24, 83 TTABVUE 9 and 201. Opposer objects to this exhibit on the ground that "Internet evidence may not be used to demonstrate the truth of what has been printed" and because it does not include the date and website URL. 89 TTABVUE 56. The objection is overruled inasmuch as La Perle testified to its authenticity and provided the URL and date of image capture. *See* La Perle Decl. ¶ 24, 83 TTABVUE 9.




Applicant also alleges that it has priority because it acquired trademark rights in the mark APPLE from the Beatles' record company, Apple Corps, used in connection with sound and video recordings "dating back to 1968."[62] According to Applicant, "Apple and Apple Corps have produced and distributed sound recordings and films under the APPLE mark since long prior to Opposer's June 5, 1985, claimed date of first use."[63] Applicant argues that it may rely on these purchased rights to establish priority: "Apple is entitled to tack its rights to those of Apple Corps, Apple enjoys absolute priority of rights as between the parties . . . , including with respect to

[62] La Perle Decl. ¶ 47, 83 TTABVUE 19.

[63] Applicant's Br., p. 9, 90 TTABVUE 11.

services recited in the Application that are closely related to the production and distribution of sound recordings."[64] We therefore look to Apple Corps' use of the mark APPLE.

2. Apple Corps' use of APPLE on sound and video recordings

In 1963, the musical group The Beatles set up a United Kingdom corporation to produce and distribute the group's music.[65] The original name of the corporation was The Beatles Limited, but the name was changed to Apple Corps Limited, effective February 9, 1968.[66] The Beatles—John Lennon, Paul McCartney, George Harrison, and Ringo Starr—as well as several other well-known musicians, have had their sound and video recordings produced and distributed under the Apple Corps record label and APPLE mark. These other musicians include such well-known recording artists as James Taylor, Mary Hopkin, Badfinger, and Billy Preston.[67]

Apple Corps' Chief Executive Officer, Jeffrey Vaughan Jones, testified that "[s]ince 1968, Apple Corps has continuously used the APPLE word mark in connection with the production and/or distribution of sound recordings and film in the United States."[68] Indeed, Jones testified that "The Beatles recordings are 'evergreen,' meaning versions of The Beatles recordings have been available continuously every year after their original release."[69] Beatles albums bearing the

---

[64] *Id.*

[65] Jones Decl. ¶ 3, 71 TTABVUE 3.

[66] *Id.*

[67] *Id.* at ¶ 8, 71 TTABVUE 4.

[68] *Id.* at ¶ 18, 71 TTABVUE 8.

[69] *Id.* at ¶ 21, 71 TTABVUE 9.

APPLE mark, including albums released on compact disc, continue to be sold up to the present day including both re-releases and new compilations.[70]

The Jones declaration includes a number of examples establishing that Apple Corps has used the word marks APPLE (as well as APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS, and marks comprising apple designs) on sound and video recordings since August 1968.[71] Representative examples of sound recordings showing use of the APPLE mark, released between 1968 and 1975, are shown below.



[72]

[70] *Id.* at ¶ 25, 71 TTABVUE 14.

[71] *Id.* at ¶ 22, 71 TTABVUE 9-10 and 45.

[72] Ex. 10 to Jones Decl. ¶ 34, 71 TTABVUE 22 and 174.



[73]



[74]

---

[73] Ex. 3 to Jones Decl. ¶ 23, 71 TTABVUE 11 and 54.

[74] Ex. 10 to Jones Decl. ¶ 34, 71 TTABVUE 22 and 140.



[75]



[76]

As shown above, the APPLE mark was used on a variety of formats, including vinyl records, cassette tapes, and 8-Track cartridges. New releases of APPLE recordings halted for a time in 1975 but "substantial quantities of those sound recordings issued under the Apple Corps label and bearing the APPLE word mark

---

[75] The wording "apple records" appears below the image of an apple. Ex. 3 to Jones Decl. ¶ 23, 71 TTABVUE 11 and 59.

[76] Ex. 10 to Jones Decl. ¶ 34, 71 TTABVUE 22 and 175.

continued to be sold around the world (including the United States) throughout the 1970s and 1980s."[77] For example, according to Jones, George Harrison's *All Things Must Pass* album, shown below, was first released in 1970 but was available on cassette tapes up to at least December 31, 1985.[78]




[77] Jones Decl. ¶ 35, 71 TTABVUE 26.

[78] The wording "apple" appears below the image of an apple. *Id.* at ¶¶ 34 and 37, 71 TTABVUE 22 and 26.

In addition, the album *Shaved Fish*, shown below, by John Lennon and The Plastic Ono Band was re-released in 1983 under the APPLE mark and thus was available in the 1980s as well.[79]




Apple Corps also was involved in the production and distribution of several films featuring music by The Beatles. The films have been shown in theaters and on television in the United States since the 1960s. Several of the films were released on VHS when the format became available, and all or most of them are now sold on DVD

[79] The wording "apple records" appears below the image of an apple. *Id.* at ¶ 39, 71 TTABVUE 28.

in the United States under the APPLE word mark.[80] For example, *Magical Mystery Tour* was released in VHS format in the United States in or around 1988 and *Yellow Submarine,* was released in VHS format in the United States in or around 1999:[81]







Jones testified that, in 1970, Apple Corps released a documentary film titled *Let It Be* in the United States. The film documented The Beatles rehearsing and recording songs for their album *Let It Be.* In 1981, the film was released in the United States in VHS and Betamax formats, and on VideoDisc.[82] The *Let It Be* recordings

---

[80] *Id.* at ¶ 41, 71 TTABVUE 29.

[81] The packaging for the *Magical Mystery Tour* video includes the wording "Apple" below the image of an apple. The packaging for the *Yellow Submarine* video includes both the wording "Apple" below the image of an apple and "APPLE FILMS." Jones Decl. ¶ 41 and Ex. 11, 71 TTABVUE 29 and 242-46.

[82] Jones Decl. ¶ 42, 71 TTABVUE 30-31.

were being sold as late as September 30, 1984 as evidenced by Applicant's confidential royalty reports covering the periods June 30, 1984 and September 30, 1984.[83] The APPLE word mark appears on the covers of the VHS and VideoDisc packaging, shown below.[84]




---

[83] *Id.* at ¶ 42 and Ex. 13 (confidential), 71 TTABVUE 30-31 and 72 TTABVUE.

[84] Ex. 12 to Jones Decl. ¶ 42, 71 TTABVUE 250-56.




Apple Corps released the video recording *The Beatles Anthology* in the mid-1990s as an eight-part VHS video cassette box set, and in April 2003 Apple Corps released

it as a five-disc DVD set.[85] The VHS cassette box set and the five-disc DVD set bearing the APPLE word mark are shown below:







The sale of music and videos bearing the APPLE mark continued into the 1990s, with many of the previously released albums being released on compact disc. Jones testified: "[f]or example, in 1993, CD versions of *The Beatles 1962-1966* and *The*

[85] On the VHS and DVD packaging, the wording "Apple" appears below the image of an apple. Jones Decl. ¶ 44 and Ex. 14, 71 TTABVUE 31 and 258-66.

*Beatles 1967-1970,* known as the 'Red' and 'Blue' albums, respectively, were released for the first time in the United States."[86] The compact disc cases are shown below.[87]




[86] *Id.* at ¶ 25, 71 TTABVUE 14-16.

[87] The wording "Apple" appears below the image of an apple. Ex. 4 to Jones Decl. ¶ 25, 71 TTABVUE 61-67.




In 1994, a new album using archive material, *The Beatles: Live at the BBC,* was released in the United States. This release featured the APPLE word mark on the compact disc packaging, as depicted below:[88]

[88] The wording "Apple" appears below the image of an apple. Jones Decl. ¶ 25, 71 TTABVUE 16-17.




In 1995 and 1996, Apple Corps released three new compilation albums called *The Beatles Anthology Parts I, II,* and *III.*[89] The albums were released under the APPLE mark:[90]

[89] Jones Decl. ¶ 28, 71 TTABVUE 20.

[90] The wording "Apple" appears below the image of an apple. Ex. 6, to Jones Decl. ¶ 28, 71 TTABVUE 75-89.







In November 2000, Apple Corps released another new Beatles compilation album titled "*1*" which featured Beatles songs that had reached number one on the United

Kingdom or United States music charts upon their initial releases between 1963 and 1970.[91] The album was released under the APPLE mark as shown below:[92]






The film *Help!* was released in DVD format as a double disc in the United States in or around 2007:[93]

---

[91] Jones Decl. ¶ 29, 71 TTABVUE 21.

[92] The wording "Apple" appears below the image of an apple. Ex. 7 to Jones Decl. ¶ 29, 71 TTABVUE 90-94.

[93] *Id.* at ¶ 41, 71 TTABVUE 29 and 247-50.




In September 2009, Apple Corps reissued the entire original Beatles catalog, featuring the APPLE word mark, in a digitally remastered form on compact disc in the United States.[94]

Apple Corps, acting through licensees, also operates the Official Beatles Store ecommerce websites directed at users in North America, Europe, Japan, and Brazil. Jones testified that the website, launched in 2006, offers for sale various goods

---

[94] *Id.* at ¶ 30, 71 TTABVUE 21.

bearing the APPLE mark, including compact discs containing Beatles recordings and films.[95]

In 1997, Apple Corps registered the mark APPLE in typed form for "Gramophone records featuring music; [pre-recorded audio tape cassettes featuring music;] audio compact discs featuring music [; pre-recorded video tape cassettes featuring music] [; video laser discs featuring music]," claiming a date of first use of August 1968.[96] In 2007 Apple Corps registered the mark APPLE in standard characters for, inter alia, "musical sound recordings."[97]

We find Applicant's testimony and evidence establish Apple Corps' continuous use of the mark APPLE, for use in connection with musical sound recording and films featuring music, since 1968.

Opposer nevertheless argues that Apple Corps ceased use of the mark in 1976 and did not resume use until after Opposer's first use of his mark.[98] Opposer primarily relies on a Wikipedia page about Apple Records discography which states: "After EMI's contract with the Beatles ended in 1976, the Apple label was finally wound up. The label was reactivated in the 1990s."[99] The Wikipedia page is admissible for the limited purpose of demonstrating what has been printed, but not for the truth of what has been printed. *Safer,* 94 USPQ2d at 1039. The Wikipedia page thus falls far short

---

[95] *Id.* at ¶ 32, 71 TTABVUE 22.

[96] Registration No. 2034964, issued February 4, 1997 and renewed. The goods in brackets were deleted from the registration upon renewal but are listed here for historical context.

[97] Registration No. 3317089, based on Section 44(e), issued October 23, 2007 and renewed.

[98] Opposer's Br., p. 43, 89 TTABVUE 44.

[99] *Id.* at 42, 89 TTABVUE 43.

of establishing that Apple Corps ceased use of the mark between 1976 and the 1990s. *See Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, 107 USPQ2d 1750, 1759 (TTAB 2013) (search results are only probative of what they show on their face, not for the truth of the matters contained therein), *aff'd*, 565 F. App. 900 (Fed. Cir. 2014) (mem.).

Opposer also argues that Applicant has not established its priority because "Apple Corps Ltd. has no documents showing that Apple Corps Ltd or its company in the U.S., Apple Records, Inc., manufactured goods in the U.S. under [the] standard character mark APPLE during period January 1, 1983 - December 31, 1985."[100] This argument is unpersuasive. Jones testified that Capitol Records, under license from Apple Corps, manufactured and distributed many of Apple Corps' recordings bearing the APPLE mark in the United States until at least 1989.[101]

In fact, between 1979 and 1989, Apple Corps was involved in suit against Capital Records and EMI over royalty payments.[102] A 1969 agreement between Apple Corps and EMI "granted Apple the sole and exclusive right to manufacture, distribute, advertise and sell Beatles' recordings." *Apple Records, Inc., Apple Corps Ltd., George Harrison, Richard Starkey and Yoko Ono Lennon, v. Capitol Records, Inc. and E.M.I. Records Ltd.,* 137 A.D.2d 50, 52, 529 N.Y.S.2d 279, 280 (N.Y. App. Div. 1988).[103] A second agreement between Apple Corps and Capitol covered manufacturing and

---

[100] Opposer's Br., p. 42, 89 TTABVUE 43.

[101] Jones Decl. ¶¶ 19 and 26, 71 TTABVUE 9 and 19-20.

[102] *Id.* at ¶ 26, 71 TTABVUE 20.

[103] According to the opinion, former Beatles' member Paul McCartney chose not to participate in this action.

distribution of records by Capitol. *Id.* In the action, Apple Corps et al. sought to recoup royalties diverted by Capital and EMI up through the mid-1980s, and to terminate their rights to manufacture and distribute Beatles' recordings. *Id.* The parties settled the suit in November 1989.[104] Clearly, between 1979 and 1989 Apple Corps had not abandoned its interest in producing and distributing music.

Moreover, whether Applicant manufactured goods in the United States is not the test for determining priority. Instead, the issue is whether Applicant's testimony and evidence, as a whole, establishes priority. The United States Court of Appeals for the Federal Circuit has been clear as to how the Board should consider the evidentiary record regarding claims of priority:

> [W]hether a particular piece of evidence by itself establishes prior use is not necessarily dispositive as to whether a party has established prior use by a preponderance. Rather, one should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use. The TTAB . . . [should not] dissect[] the evidence to the point . . . [of] refus[ing] to recognize, or . . . overlook, the clear interrelationships existing between the several pieces of evidence submitted.

*West Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1663 (Fed. Cir. 1994). The Board, moreover, has also recognized that "[o]ral testimony, if sufficiently probative, is normally satisfactory to establish priority of use . . . , and the testimony of a single witness may be adequate to establish priority." *DeVivo v. Ortiz*, 2020 USPQ2d 10153, *3 (TTAB 2020).

---

[104] Jones Decl. ¶ 26, 71 TTABVUE 20.

Sales of Apple Corps products ebbed and flowed over the years as musical tastes changed and musical formats evolved. Applicant's evidence regarding its use of the APPLE mark lacks extensive documentary support as to sales figures, particularly as to the period between the late 1970s and the early 1980s. Applicant relies primarily on the testimony of Jones, the Chief Executive Officer of Apple Corps since 2007, which details Apple Corps' use of the mark and provides images of recordings and films bearing the mark. Jones' testimony is not accompanied by the type or quantity of documentary evidence that one would expect to be readily available to show the use of a mark that Applicant claims was used in connection with the "production and distribution of some of the *most famous sound recordings ever created*[.]"[105] Oral testimony is, of course, always "strengthened by corroborative documentary evidence," *Exec. Coach Builders*, *Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1184 (TTAB 2017), but "[w]hile it is certainly preferable for a party's testimony to be supported by corroborating documents, the lack of documentary evidence is not fatal." *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1931 (TTAB 2011). The critical portions of Jones' testimony are clear, and are neither contradicted by Opposer nor "indefinite and internally inconsistent." *Cf. Exec. Coach Builders*, 123 USPQ2d at 1182-85 (rejecting testimony of applicant's principal regarding alleged prior use because it was both indefinite and inconsistent on a number of topics). The record provides no sufficient reason for us to disregard or discount Jones' testimony on the Apple Corps' use of the mark going back to 1968. His testimony establishes, at a minimum, that Applicant used the APPLE mark on

[105] *Id.* at ¶ 4, 71 TTABVUE 3.

sound recordings and films featuring music at least as early as 1968, prior to Opposer's priority date, and that Applicant has not abandoned the mark.

3. Applicant's purchase of the Apple Corps marks

In 2007, Applicant acquired all of Apple Corps' trademark and service mark rights in its APPLE marks, including Registration Nos. 2034964 and 3317089.[106] The 2007 agreement between Applicant and Apple Corps assigned to Applicant all Apple Corps' APPLE marks, which were defined as "any Trademarks of [Apple] Corps or any Apple Corps Group Company that utilize or feature the word 'apple' in any form . . . and/or any symbols, designations, signs, logos, depictions or representations of an apple, in whole or in part[.]"[107] Applicant then granted back to Apple Corps a license to continue using the marks, which use inures to Applicant's benefit.[108] Applicant seeks to gain priority over Opposer by tacking rights Applicant obtained from Apple Corps in the APPLE mark to Applicant's APPLE MUSIC mark.

4. Whether Applicant Can Gain Priority by Tacking

"'[T]acking' is a defense that must be pleaded to put opposer on notice of new matter that applicant is placing at issue (i.e., a mark previously used by applicant that is the legal equivalent of applicant's opposed mark, and that provides the basis for applicant to claim prior use)." *H.D. Lee Co., Inc. v. Maidenform, Inc.,* 87 USPQ2d 1715, 1720 (TTAB 2008). Applicant pleaded, as an affirmative defense, priority and ownership of the two registrations comprising APPLE marks purchased from Apple

---

[106] *Id.* at ¶¶ 47 and 48, 71 TTABVUE 19.

[107] Confidential 2007 Settlement Agreement, clause 1.1, 85 TTABVUE 6.

[108] Jones Decl. ¶ 48, 71 TTABVUE 19.

Corps, Registration Nos. 2034964 and 3317089, and use of the APPLE mark since August 1968. We find Applicant properly pleaded the defense of tacking.

The fact that Applicant seeks to establish priority via assignment of rights from Apple Corps does not diminish the showing of priority. *See Lone Star Steakhouse & Saloon v. Alpha of Va.*, 43 F.3d 922, 33 USPQ2d 1481, 1487 (4th Cir. 1995) (while defendant had seniority over plaintiff's own use, plaintiff obtained an assignment of rights from a third user who was senior to defendant; hence, plaintiff became the senior user).

The Supreme Court described tacking succinctly in *Hana Financial*:

> Recognizing that trademark users ought to be permitted to make certain modifications to their marks over time without losing priority, lower courts have provided that, in limited circumstances, a party may clothe a new mark with the priority position of an older mark. This doctrine is called "tacking," and lower courts have found tacking to be available when the original and revised marks are "legal equivalents" in that they create the same, continuing commercial impression.

*Hana Fin., Inc. v. Hana Bank,* 135 S. Ct. 907, 113 USPQ2d 1365, 1366 (2015) quoted in *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.,* 797 F.3d 1363, 116 USPQ2d 1129, 1132 (Fed. Cir. 2015).

As stated by the Supreme Court, two marks are "legal equivalents" if they "create the same, continuing commercial impression so that consumers consider both as the same mark." *Hana Fin.*, 113 USPQ2d at 1367. (citation and internal quotation marks omitted); *see also Ilco Corp. v. Ideal Sec. Hardware Corp.*, 527 F.2d 1221, 1224 (CCPA 1976) ("The law permits a user who changes the form of its mark to retain the benefit of its use of the earlier form, without abandonment, if the new and old forms create

the same, continuing commercial impression.”). “Tacking is occasionally permitted where the two marks, though differing slightly in their literal meaning or grammatical presentation, nevertheless possess the same connotation in context.” *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1869 (Fed. Cir. 1991).

The standard for tacking is very strict and tacking in general is permitted only in “rare instances.” *Van Dyne-Crotty,* 17 USPQ2d at 1869; *Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 USPQ2d 1629, 1635 (TTAB 2007). “[T]he standard of legal equivalence used in reviewing efforts to ‘tack’ the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. . . . [E]ven if the two marks are confusingly similar, they still may not be legal equivalents.” *Van Dyne-Crotty,* 17 USPQ2d at 1868.

The addition of even one word can make a significant difference in commercial impression. *See Am. Paging Inc. v. Am. Mobilphone Inc.,* 13 USPQ2d 2036, 2039 (TTAB 1989) *aff’d mem.*, 923 F.2d 869, 17 USPQ2d 1726 (Fed. Cir. 1990) (even where both marks “are dominated by the word AMERICAN and the same star and double bar design,” AMERICAN MOBILPHONE and design and AMERICAN MOBILPHONE PAGING and design found to be “legally different”). In *American Paging*, the Board noted that the registrant provided both telephone and paging services, therefore the addition of PAGING provided more information to prospective consumers: “Customers who simply saw the mark AMERICAN MOBILPHONE and design and who simply utilized registrant’s mobile phone services, would not know

they were dealing with a company that also rendered paging services. *Am. Paging,* 13 USPQ2d at 2039.

But, the addition of a single word does not make a significant difference in all cases. In *Am. Sec. Bank v. Am. Sec. & Trust Co.*, 571 F.2d 564, 197 USPQ 65 (CCPA 1978) the United States Court of Customs and Patent Appeals held that "American Security" and "American Security Bank" were legal equivalents. The Court reasoned that "[w]hile AMERICAN SECURITY BANK is a distinguishable, three-word mark, the word 'bank' is purely descriptive and adds nothing to the origin-indicating significance of AMERICAN SECURITY. Customers using the services would know they were dealing with a bank." *Id.* at 67. Similarly, in *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 USPQ2d 1645, (TTAB 2010), the Board held CAPITAL CITY BANK and CAPITAL CITY BANK GROUP to be essentially the same mark because they "engender the same continuing commercial impression." *Id.* at 1656.

We find the facts in the present case are more similar to those in *American Security Bank* and *Citigroup* than to those in *American Paging*. The addition of the term MUSIC does not create a different commercial impression because it is generic when used in connection with sound recordings and the production and distribution of sound recordings. Consumers would know they were dealing with a music company, particularly because Applicant's licensee, Apple Corps, has used variations of the APPLE mark, with APPLE as the dominant element, to identify its musical recordings, which inures to Applicant's benefit, and because Applicant uses APPLE MUSIC to identify its service of publishing and distributing sound recordings.[109]

---

[109] La Perle Decl. ¶ 19, 83 TTABVUE 4.

Moreover, Apple Corps' long use of other generic terms with APPLE, i.e., APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS, and the representation of an apple, suggests that consumers already are accustomed to seeing slight variations in Apple Corps' APPLE mark. Given the progression of musical formats from vinyl records, to 8-track cartridges, to cassettes tapes, to compact discs, and now to streaming services, it would not be unexpected for a company to update their mark to incorporate more modern and inclusive terminology by adopting the term MUSIC in place of terms such as RECORDS or FILMS. Modernization of a mark which retains the commercial impression of the previous version does not result in any abandonment or loss of priority in the mark. *See Jack Wolfskin,* 116 USPQ2d at 1134 (modernized version of mark creates the same continuing commercial impression as the registered mark); *In re Flex-O-Glass, Inc.*, 194 USPQ 203, 205 (TTAB 1977) (slight "modernization" of design mark does not prevent tacking on for priority).

We find that when used in connection with sound recordings and the production and distribution of sound recordings, the marks APPLE and APPLE MUSIC are "legal equivalents" because they both create the "same, continuing commercial impression so that consumers consider both as the same mark." *Hana Fin.*, 135 S. Ct. at 910.

Tacking also requires that the goods or services marketed under the earlier mark must be "the same or similar" as the goods or services marketed under the later mark. *See, e.g., In re Baroid Drilling Fluids Inc. v. Sun Drilling Prods.*, 24 USPQ2d 1048, 1051 (TTAB 1992); *Big Blue Prods. Inc. v. Int'l Bus. Machs. Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991). Here, we the find the sound recordings identified in Applicant's

registrations to be "the same or similar" for purposes of tacking as the production and distribution of sound recordings identified in Applicant's application. *Baroid,* 24 USPQ2d at 1052. That is, sound recordings are inseparable from the production and distribution of sound recordings. As Jones testified:

> Apple Corps has been involved in the production and distribution of some of the *most famous sound recordings ever created* . . . . Apple Corps and/or affiliates and licensees produced and distributed sound recordings under its Apple Corps record label and APPLE word mark for The Beatles and other famous recording artists, and such sound recordings were (and many continue to be) distributed in the United States and worldwide.[110]

Accordingly, we find Applicant may claim priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968.

## VI. Conclusion

Opposer has established that he owns an inherently distinctive mark, APPLE JAZZ, which he uses in connection with "arranging, organizing, conducting, and presenting concerts and live musical performances." Opposer's earliest date of use of his APPLE JAZZ mark is June 13, 1985. Applicant, by tacking the use of the mark APPLE by Apple Corps, has established use of the mark APPLE MUSIC for the "production and distribution of sound recordings" as early as August 1968.

In view of Applicant's earlier priority date, Opposer has not established the necessary element of priority required to prevail.

## VII. Decision

The opposition is dismissed.

---

[110] Jones Decl. ¶ 4, 71 TTABVUE 3-4.

THIS OPINION IS NOT A PRECEDENT OF THE TTAB

Hearing: November 5, 2020 Mailed: August 9, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

*Charles Bertini*
*v.*
*Apple, Inc.*

Opposition No. 91229891

On Request for Reconsideration

James Bertini, for Charles Bertini.

Joseph Petersen of Kilpatrick Townsend & Stockton LLP, for Apple, Inc.

Before Shaw, Kuczma and Hudis,
Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

## I. Background

Opposer, Charles Bertini, filed a timely request for reconsideration of the Board's decision dated April 16, 2021, dismissing the opposition. Applicant filed a brief in response to the request for reconsideration, and Opposer filed a reply brief.[1] Although Trademark Rule 2.129(c), 37 C.F.R. § 2.129(c), makes no provision for the filing of a reply brief on a request for reconsideration of a decision issued after final hearing, we

[1] 102-104 TTABVUE.

exercise our discretion and consider the brief. *See, e.g., Kappa Books Inc. v. Herbko Int'l Inc.*, 60 USPQ2d 1765, 1766 n.2 (TTAB 2001), *rev'd on other grounds,* 308 F.3d 1156, 64 USPQ2d 1375 (Fed. Cir. 2002).

The premise underlying a request for reconsideration under Trademark Rule 2.129(c) is that, based on the evidence of record and the prevailing authorities, the Board erred in reaching the decision it issued. It is not to be a reargument of the points presented in the movant's brief on the case, nor is it to be used to raise new arguments or introduce additional evidence. Rather, the request should be limited to a demonstration that based on the facts before it and the applicable law, the Board's decision is in error and requires appropriate change. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE § 543 (June 2021) and cases cited therein.

## II. Analysis

Opposer maintains that his opposition to Application Serial No. 86659444 should be sustained on the ground of priority and likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). We disagree and address each of Opposer's arguments in turn.

### A. The Jones testimony

Opposer first argues that the "Board disregarded Opposer's objections about the continuity of use [of the] APPLE mark for products[.]"[2] In particular, Opposer objects to the testimony of Jeffrey Vaughan Jones, CEO of Apple Corps Limited, on the grounds that it was contradicted by Opposer's objections and that it was "indefinite

---

[2] Opposer's Request for Reconsideration, p. 3, 102 TTABVUE 4.

and internally inconsistent."[3] Opposer objected to images of record albums and other musical recordings discussed by Mr. Jones because some of the images were taken from the internet.

We disagree with Opposer's objection that the evidence is unreliable merely because it was taken from the internet. Jones authenticated the images as being representative of Apple Corps products sold during the time periods in question. The mere fact that the images were taken from the internet does not diminish their evidentiary value where, as here, they have been authenticated by a credible witness. *See Spiritline Cruises LLC v. Tour Mgmt. Services, Inc.*, 2020 USPQ2d 48324, at *4 (TTAB 2020) (Opposer used appropriate witness testimony to authenticate internet documents and lay the foundation to support the intended evidentiary use).

Regarding Opposer's allegation that Jones' testimony is "indefinite and internally inconsistent," we disagree with this characterization as well. The Board's decision recognized that Jones' testimony was lacking in the "type or quantity of documentary evidence that one would expect to be readily available" for such famous recordings.[4] Nevertheless, based on the entirety of the record, we found that "[t]he record provides no sufficient reason for us to disregard or discount Jones' testimony on Apple Corps' use of the mark going back to 1968."[5] Opposer's quibbles with some of Jones' wording and gaps in his knowledge regarding precise dates of distribution do not undermine or rebut Jones' testimony. As we noted in our decision, "Opposer was free to

[3] *Id.* at 21, 102 TTABVUE 22.

[4] Opinion of April 16, 2021, p. 46, 101 TTABVUE 46.

[5] *Id.*

cross-examine Jones regarding Apple Corps' and records if he was dissatisfied with Jones' declaration. Opposer chose not to do so."[6] Opposer will not now be heard to complain about testimony he chose not to address.

B. Pleading of Applicant's tacking defense

Opposer next argues that Applicant failed to establish its tacking defense because it failed to plead that the term MUSIC in the mark APPLE MUSIC is generic for Applicant's music-related services. According to Opposer, "[t]he genericness of a portion of the APPLE MUSIC mark, the term 'music', is not listed in the Applicant's defenses[.]"[7] We disagree that Applicant failed to plead and establish its tacking defense.

The defense of tacking requires that the earlier-used mark and the later-used mark be "legal equivalents." Marks are legally equivalent if they create "'the same, continuing commercial impression' and the later mark [does] not materially differ from or alter the character of the mark attempted to be 'tacked,'" thereby causing "consumer[s] [to] consider both as the same mark." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991) (citation omitted).

Applicant's answer asserted the defense of tacking by claiming "trademark rights in the mark APPLE in the field of music, musical performances, and musical, cultural and entertainment events that predate those of Opposer[.]"[8] In addition, the Board's subsequent grant of partial summary judgment found that Applicant had properly

---

[6] *Id.* at 11-12, 101 TTABVUE 11-12.

[7] Opposer's Request for Reconsideration, p. 3, 102 TTABVUE 4.

[8] Applicant's Answer, p. 3, 9 TTABVUE 4.

pleaded the defense of tacking. The Order stated: "We find Applicant's assertion of prior use, based on its claim to the dates of use in the registrations of its APPLE mark, as asserting an affirmative defense to Opposer's alleged priority of use sufficient to provide Opposer proper notice of the 'tacking' defense."[9] In fact, the Board's order summarized Applicant's argument that the APPLE element of its mark was more distinct than the MUSIC element:

> (1) the distinct portion of the APPLE MUSIC mark is identical to the mark in its prior registrations; (2) consumers are likely to focus on the "APPLE" component of the mark because it is among the most famous marks in the world; and (3) the goods and services in the involved application and prior registrations are substantially equivalent.[10]

Thus, Opposer was on notice that the issue of the distinctiveness, or lack thereof, of the term MUSIC was at issue with regard to the tacking defense. It was not necessary that Applicant define the precise degree of descriptiveness of the term MUSIC in APPLE MUSIC. Rather, it is sufficient that Opposer was on notice that Applicant intended to rely on the APPLE element to establish tacking. *See Ohio State Univ. v. Ohio Univ.*, 51 USPQ2d 1289, 1292 (TTAB 1999) (primary purpose of pleadings "is to give fair notice of the claims or defenses asserted").

C. Whether MUSIC is generic in reference to Applicant's goods and services

Opposer argues the Board's finding that the term MUSIC in APPLE MUSIC is generic when used in connection with Applicant's musical sound recordings and the production and distribution of musical sound recordings "is not based on substantial

---

[9] Board's order granting partial summary judgment, p. 4, 45 TTABVUE 4.

[10] *Id.* at 7, 45 TTABVUE 7.

evidence."[11] According to Opposer, "[t]o convince the Board that the term "music" is generic, Applicant totally relies on the fact of disclaiming [sic] term 'music' in its application to the USPTO."[12] Opposer is simply wrong.

The record includes ample evidence to support the Board's finding that MUSIC is generic for Applicant's musical sound recordings and the production and distribution of musical sound recordings. Applicant submitted a dictionary definition of the term "music" which defines the term as, inter alia, "vocal, instrumental, or mechanical sounds having rhythm, melody, or harmony."[13] Applicant also introduced more than twenty-five third-party registrations for marks incorporating the term MUSIC for various goods and services relating to music.[14] All of these registrations—encompassing goods such as musical recordings or services such as music recording, production, distribution, streaming, and the like—disclaim the term MUSIC. In addition, Applicant has disclaimed MUSIC in a number of its other APPLE MUSIC registrations.[15]

The definition and third-party registrations support the finding that MUSIC is generic when used in connection with Applicant's goods and services. *See Juice*

---

[11] Opposer's request for reconsideration, p. 10, 102 TTABVUE 11.

[12] *Id.*

[13] Applicant's sixth notice of reliance, https://www.merriam-webster.com/dictionary/music, 74 TTABVUE 241-44.

[14] Applicant's fourth notice of reliance, exhs. 50-77, 70 TTABVUE 200-78.

In its request for reconsideration, Opposer identified for the first time a number of third-party registrations containing the term MUSIC which purportedly registered without a disclaimer. 102 TTABVUE 12. These registrations are manifestly untimely and have not been considered. *Hole In 1 Drinks, Inc. v. Michael Lajtay*, 2020 USPQ2d 10020, at *2 (TTAB 2020) (exhibits attached to brief not considered).

[15] Applicant's fourth notice of reliance, exhs. 11-13, 70 TTABVUE 69-77.

*Generation, Inc. v. GS Enters. LLC,* 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015). (third-party registrations alone may be relevant, in the manner of dictionary definitions, "to prove that some segment of the [marks] has a normally understood and well recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak.") (internal quotation marks omitted).

Moreover, a disclaimer is an admission that a term is at least descriptive. *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972) (disclaimer is an admission of descriptiveness at the time the disclaimer was made). *See also* TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1213.03(b) (July 2021) ("If a mark is comprised in part of matter that, as applied to the goods or services, is generic or does not function as a mark, the matter must be disclaimed to permit registration on the Principal Register[.]").

Opposer nevertheless argues that "[t]he Board didn't give any consideration to the fact that "music" is only suggestive for the Services whereas Opposer disputed the alleged genericness of term "music" stating that it only suggests the Services."[16] We find Opposer's argument strains credulity. It takes no great leap of deduction to find that MUSIC is generic when used in connection with musical sound recordings and the production and distribution of musical sound recordings. Indeed, virtually the entire record before us supports the determination that MUSIC is generic for Applicant's musical sound recordings and the production and distribution of musical sound recordings.

---

[16] Opposer's request for reconsideration, p. 4, 102 TTABVUE 4.

We have long held that terms which refer to the content of a particular media are generic for goods or services containing or providing that content. *See In re Recorded Books Inc.,* 42 USPQ2d 1275, (TTAB 1997) (RECORDED BOOKS generic for pre-recorded audio tape cassettes featuring literary works); *In re Harcourt Brace Jovanovich, Inc*., 222 USPQ 821 (TTAB 1984) (LAW & BUSINESS generic for arranging and conducting business law seminars, being no more than a designation of the subject matter of these seminars); *In re Conus Commc'ns Co*., 23 USPQ2d 1717 (TTAB 1992) (ALL NEWS CHANNEL generic for television broadcasting services); *In re Hotels.com, L.P.*, 87 USPQ2d 1100, 2008 WL 779325 (TTAB 2008), *decision aff'd*, 573 F.3d 1300, 91 USPQ2d 1532 (Fed. Cir. 2009) (HOTELS.COM generic for hotel reservation web service); *In re Reed Elsevier Props. Inc*., 482 F.3d 1376, 82 USPQ2d 1378 (Fed. Cir. 2007) (LAWYERS.COM generic for web site providing access to and information about lawyers); *see also Kegan v. Apple Comput., Inc*., 42 USPQ2d 1053 (N.D. Ill. 1996) (GUIDE is generic for publications).

Here, MUSIC is at least as generic as any of the terms used to refer to content in the cases discussed above, if not more so. Music is the sine qua non of musical sound recordings and the production and distribution of musical sound recordings. Simply put, consumers do not just buy physical sound recordings, they buy music. The format of the music has changed over time—from phonographs, to cassettes, to CD's, and now to digital streaming—but the music stays the same, and that is what consumers are buying. Accordingly, we find no error in the Board's determination that the term MUSIC in the mark APPLE MUSIC is generic for musical sound recordings and the production and distribution of musical sound recordings.

D. Whether APPLE and APPLE MUSIC create the same, continuing commercial impression

In light of the Board's finding that MUSIC is generic for Applicant's goods and services, it also was not error to find that APPLE and APPLE MUSIC create the same, continuing commercial impression. As we noted in the decision, the U.S. Court of Appeals for the Federal Circuit, has stated that "[t]acking is occasionally permitted where the two marks, though differing slightly in their literal meaning or grammatical presentation, nevertheless possess the same connotation in context." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1869 (Fed. Cir. 1991). Such is the case here.

When used in connection with Applicant's goods and services, both APPLE and APPLE MUSIC create the same commercial impression: an entity named APPLE that is the source of musical sound recordings. Opposer nevertheless argues that "Applicant's customers regard APPLE and APPLE MUSIC as different marks. APPLE and APPLE MUSIC are not confusingly similar and therefore not legal equivalents, because '[p]urchasers seeing these two marks would clearly differentiate them and would simply not consider them to be the same mark.'"[17] But Opposer provides no testimony, surveys, or other evidence to support this conclusion. A party's argument is no substitute for evidence. *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 76 USPQ2d 1616, 1622 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."); *Martahus v. Video Duplication Servs. Inc.,* 3 F.3d 417, 27 USPQ2d 1846, 1849 (Fed. Cir. 1993) ("[M]ere attorney arguments unsubstantiated

---

[17] Opposer's request for reconsideration, p. 17, 102 TTABVUE 17.

by record evidence are suspect at best"). Thus, Opposer's often repeated argument that APPLE MUSIC is "bizarre and incongruous"[18] simply has no evidentiary support.

Opposer also relies on *Am. Paging Inc. v. Am. Mobilphone Inc.*, 13 USPQ2d 2036 (TTAB 1989), to support his argument that the presence of MUSIC in APPLE MUSIC creates a different commercial impression, arguing, "[t]he addition of MUSIC also provides more information to prospective consumers: consumers who simply buy The Beatles records with [sic] APPLE mark during decades would not expect anything more than records when they see [sic] APPLE mark."[19] Opposer's contention that consumers "would not expect anything more than records" is flatly contradicted by the evidence which shows that Apple Corps long produced music in other formats, including audio tapes, video tapes, CDs, and laser discs. Moreover, we simply disagree that *American Paging* is controlling authority.

In *American Paging*, the Board stated that "the mark AMERICAN MOBILPHONE PAGING and design conveys more information to potential customers than does the mark AMERICAN MOBILPHONE and design." *Id.* at 2039. That is, "[c]ustomers who simply saw the mark AMERICAN MOBILPHONE and design and who simply utilized registrant's mobile phone services, would not know they were dealing with a company that also rendered paging services." *Id.* Here, consumers familiar with the mark APPLE for musical sound recordings will get no

---

[18] *Id.* at 13, 17, 19, and 20, 102 TTABVUE 14, 18, 20, and 21.

[19] *Id.* at 18, 102 TTABVUE 19.

more information from the mark APPLE MUSIC because the term MUSIC conveys no more information to consumers than they already have.

Instead, we relied on *Am. Sec. Bank v. Am. Sec. & Trust Co.*, 571 F.2d 564, 197 USPQ 65 (CCPA 1978) and *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 USPQ2d 1645 (TTAB 2010), which held that the addition of a highly-descriptive or generic term adds nothing to the origin-indicating significance of the distinctive portion of a mark. As we stated in our decision, "[c]onsumers would know they were dealing with a music company[.]"[20] Accordingly, we see no error in our finding that APPLE and APPLE MUSIC create the same, continuing commercial impression when used in connection with Applicant's goods and services.

E. Whether Applicant may tack its earlier use of APPLE on musical sound recordings to its services

Opposer alleges that the Board erred in allowing Applicant to tack its earlier use of the APPLE mark on "Gramophone records featuring music; [and] audio compact discs featuring music" to Applicant's APPLE MUSIC mark for services identified in the pending application. Opposer argues that for a number of reasons "[t]he Board doesn't take under consideration the fact that the set of the Goods is not substantially identical to [sic] set of the Services."[21]

Opposer first argues that the Board improperly "compared ONE service from a long list of the Services, with 'sound recordings' <u>*that is not even in the list of the Goods*</u>

---

[20] Opinion of April 16, 2021, p. 50, 101 TTABVUE 50.

[21] Opposer's request for reconsideration, p. 8, 102 TTABVUE 9.

and avoided comparing set to set as required by case law recognized by the Board."[22] It was not improper for the Board to refer to Applicant's goods in Registration No. 2034964 ("the '964 registration") as "sound recordings" rather than "Gramophone records featuring music; [pre-recorded audio tape cassettes featuring music;] audio compact discs featuring music [; pre-recorded video tape cassettes featuring music] [; video laser discs featuring music]."[23] Opposer elevates form over substance. The Board may use shorthand to refer to unwieldly identifications, particularly where, as here, the decision devoted more than seventeen pages to discussing Apple Corps' musical sound recordings produced in various formats. *See Grote Indus., Inc. v. Truck-Lite Co.*, 126 USPQ2d 1197, 1202 (TTAB 2018) (for convenience, Board may use shorthand to refer to goods or services of the parties).

Nor was it error for the Board to tack Applicant's earlier use of the APPLE mark on musical sound recordings to only some of Applicant's services. Opposer argues that "Applicant failed to demonstrate that the set of the Services is '*substantially identical*' to the set of the Goods."[24] Opposer appears to be arguing that to establish the defense of tacking, a party must show that all of the goods or services for which registration is sought must be substantially identical to all of the goods or services upon which the mark was earlier used. For support, Opposer points to language in *Big Blue Prods. Inc. v. Int'l Bus. Machs. Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991), which

---

[22] *Id.* at 3, 102 TTABVUE 4.

[23] Although some goods such as audio and video tape cassettes are no longer sold by Applicant and have been deleted from the '964 registration, these goods were in use as of the time periods in question and remain relevant to the overall priority determination.

[24] Opposer's request for reconsideration, p. 3, 102 TTABVUE 4.

states: "the tacking of the use of a mark for certain goods or services onto the use of the same mark for other goods or services for the purposes of obtaining or maintaining a registration should be permitted only when the two sets of goods or services are 'substantially identical.'" *Id.*

We disagree with Opposer's interpretation of *Big Blue Products* that all of the goods and services must be substantially identical. Such an interpretation would require a party to establish priority of use for each and all of its goods or services. This is not required. It is sufficient to find priority as to any goods or services encompassed by the application and registration. *See Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.,* 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1409 (TTAB 2015), *aff'd* 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017). Instead, we interpret the language "two sets of goods or services" in *Big Blue Products* as referring only to those goods or services to and from which a party seeks to tack. As we noted in our earlier decision, "Neither Opposer nor Applicant need prove, and we need not find, priority as to each service listed in the respective recitations of services."[25] Thus, Applicant need only establish priority by tacking its earlier use of the APPLE mark on musical sound recordings to a service encompassed by its application and Opposer's services.

Opposer further argues that the Board erred by using the wrong test for determining whether Applicant could tack its prior use of the APPLE mark on sound recordings to the production and distribution of sound recordings identified in Apple's APPLE MUSIC application. Opposer relies on the "substantially identical" test set

---

[25] Opinion of April 16, 2021, pp. 15-16, 101 TTABVUE 15-16.

out in *Big Blue Products,* 19 USPQ2d at 1075, whereas the Board cited to the "the same or similar" test set forth in *In re Baroid Drilling Fluids Inc. v. Sun Drilling Prods.*, 24 USPQ2d 1048, 1051 (TTAB 1992). Opposer again elevates form over substance. "[T]he tacking doctrine exists for compelling reasons: to protect consumers from being misled about the source of products and facilitate their purchasing decisions." *Hana Fin., Inc. v. Hana Bank,* 735 F.3d 1158, 1168 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015). Under either test, consumers will not be misled because Applicant's products are the same as they always have been: musical sound recordings.

"It is well settled that "incremental and gradual changes in a product are normal and expected" and "modernization and style changes are common and expected by buyers." 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 17:24 (5th ed.); RESTATEMENT THIRD, UNFAIR COMPETITION § 30, comment b (1995) ("A change in the kind of goods or services marketed under the trademark is not an abandonment of the trademark owner's priority if the new goods or services are sufficiently related to the original goods or services such that prospective purchasers are likely to perceive the new product as originating from the same source as the original product.").

Our case law similarly holds that "a change in the nomenclature of a product, the formulation or the primary purpose of a product, or even a change in a type of product does not constitute an abandonment of the mark used therewith." *See E.I. Du Pont De Nemours and Co. v. G.C. Murphy Co.,* 199 USPQ 807, 813 (TTAB 1978); *see also Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801, 805 (Fed. Cir. 1984)

(change in formulation of product did not change the "inherent and identifiable character" of the product).

A change from a physical format to a digital format is such a permissible change expected by consumers.[26] As we noted in our decision, in 2015, Applicant "launched the APPLE MUSIC streaming service for publishing and distributing music. APPLE MUSIC provides consumers access to Applicant's music catalog comprising some 60 million songs."[27] Through its APPLE MUSIC service, Applicant is delivering to consumers the same product, musical sound recordings, as those identified in the '964 registration. Only the format of the musical recordings have changed from those set

---

[26] Indeed, the USPTO has recognized the problem of evolving technology and static trademark registrations by establishing The Technology Evolution Pilot Program which allows registrants to update the terminology in their registrations without filing new applications. *See Announcement of Pilot Program to Allow Amendments to Identifications of Goods and Services in Trademark Registrations Due to Technology Evolution* at http://www.uspto.gov/sites/default/files/documents/Technology_Evolution_Pilot_Program.docx. As stated by the USPTO:

> We have initiated a pilot program that allows certain trademark owners to amend the goods/services identified in their trademark registrations. You may be able to participate if you provide the same fundamental goods/services through an updated means, method, or format. For example, if your registration identifies your goods as "printed children's books," you may be eligible to amend the goods to "downloadable electronic children's books" if you no longer provide the books in a printed format.

(Https://www.uspto.gov/trademarks/maintain/amending-your-registration-s-goodsservices-when).

The pilot program is only available to registrants that no longer make the outdated goods, and the pilot program includes a period for public comment. Nevertheless, the program recognizes that content in given format may remain the same even if the format is later replaced by a newer one. For example, the pilot guidelines state that "[a]n amendment would be permitted from 'phonograph records featuring music' in International Class 9 to 'providing on-line music, not downloadable' in International Class 41, which is a service of providing content in a new manner, i.e., 'on-line.'" *Id.*

[27] Opinion of April 16, 2021, p. 25, 101 TTABVUE 25.

forth in the ’964 registration, i.e., gramophone records and audio compact discs featuring music to streaming music files. The music is still the same and comes from the same source. As we noted, “sound recordings are inseparable from the production and distribution of sound recordings.”[28] Thus, under either test for tacking goods or services, “substantially identical” or “the same or similar,” Applicant’s products are the same: musical sound recordings.

Here, the record establishes that Applicant is currently producing and distributing the very same Beatles albums that it has sold under the APPLE mark since the late 1960s. As we noted in our decision, “Jones testified that ‘The Beatles recordings are ‘evergreen,’ meaning versions of The Beatles recordings have been available continuously every year after their original release.’”[29] The only difference between Applicant’s goods and services is the change in the format in which the music is presented. Accordingly, Opposer’s argument that Applicant goods, Gramophone records and audio compact discs featuring music, cannot be substantially identical to production and distribution of sound recordings is unpersuasive.

Opposer also argues that Applicant may not tack goods from International Class 9 to services in International Class 41: “[n]either Applicant nor the Board referred to

---

[28] *Id.* at 51, 101 TTABVUE 51.

Although not referenced in the Board’s opinion, Applicant’s identification of services in International Class 41 includes “entertainment services, namely, providing streamed and downloadable audio and video content to users through a subscription service provided online via a communication network” and Opposer’s identification of services in its pleaded application in International Class 41 includes “providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, and multimedia content in the fields of music[.]” These services are equally comparable to the musical sound recordings in Applicant’s ’964 registration to the extent that they both provide consumers with music in the most up-to-date format, i.e., online digital sound recordings.

[29] Opinion of April 16, 2021, p. 27, 101 TTABVUE 27.

any authority which allows services and goods in different classes to be regarded as the same or similar."[30] Opposer seeks to use the classification system to limit Applicant's rights. This argument is unpersuasive.

The system for classification of goods and services was created for the convenience of the USPTO, and has no bearing on the issue of the relationship between goods and services. Trademark Act Section 30 provides in pertinent part that "The Director may establish a classification of goods and services, for convenience of Patent and Trademark Office administration, but not to limit or extend the applicant's or registrant's rights." Trademark Act Section 30, 15 U.S.C. § 1112. "The separation of goods [or services] into the various classes of the classification schedule is merely a convenience for the Office and is not intended as a commentary on their relationship to one another in the marketplace." *In re Sailerbrau Franz Sailer,* 23 USPQ2d 1719, 1720 (TTAB 1992)); *See also Nat'l Football League v. Jasper Alliance Corp.*, 16 USPQ2d 1212, 1216 n.5 (TTAB 1990) ("The classification system was established for the convenience of the Office rather than to indicate that goods [or services] in the same class are necessarily related or that classification in different classes indicates that they are not related.").

F. Conclusion

As stated in the Board's decision, we "considered all of the testimony and evidence introduced into the record."[31] We find Opposer has not demonstrated that, based on the evidence properly of record and the applicable law, the Board's decision is in error.

---

[30] Opposer's request for reconsideration, p. 3, 102 TTABVUE 4.

[31] Opinion of April 16, 2021, p. 12, 101 TTABVUE 12.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B); Fed. Cir. R. 32(b); Fed. R. App. P. 32(f); because:

   this brief contains 13,321 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in proportionally space typeface using Microsoft Word in 14-point Times New Roman.

Dated: March 31, 2022

/s/ James Bertini
James Bertini
Attorney for Appellant
CHARLES BERTINI

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

Joseph Petersen
Kilpatrick Townsend
JPetersen@kilpatricktownsend.com

Theodore Davis
Kilpatrick Townsend
tdavis@kilpatricktownsend.com

Bill Bryner
Kilpatrick Townsend
bbryner@kilpatricktownsend.com

John D. Mayberry
Kilpatrick Townsend
dmayberry@kilpatricktownsend.com

Sara Stadler
Kilpatrick Townsend
sstadler@kilpatricktownsend.com

Dated: March 31, 2022

/s/ James Bertini________________