**Volume I of II  -  Pages Appx00001-02988**

No. 2021-2301

---

# United States Court of Appeals
# for the Federal Circuit

---

CHARLES BERTINI,
                              *Appellant,*

v.

APPLE INC.,
                              *Appellee*

---

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in Case No. 91229891
before Kuczma, Shaw and Hudis, Administrative Law Judges

---

**NON-CONFIDENTIAL JOINT APPENDIX**

James Bertini
423 Kalamath Street
Denver, CO 809204
303 572-3122
jamesbertini@yahoo.com

*Counsel for Charles Bertini*

**TABLE OF CONTENTS**
**Joint Appendix Volume I of II**

|  |  | Page |
|---|---|---|
|  | Standard Protective Order | v-xii |
| April 16, 2021 | Final Decision of Trademark Trial and Appeal Board TTAB) dismissing Opposition   (101 TTABVUE) | Appx00001 |
| August 9, 2021 | Denial of Bertini's Request for Reconsideration    (105 TTABVUE) | Appx00053 |
| August 9, 2021 | Docket at TTAB | Appx00071 |
| August 9, 2021 | USPTO records | Appx00077 |
| June 11, 2015 | Application | Appx00090 |
| June 11, 2015 | Drawing | Appx00095 |
| September 2, 2016 | Notice of Opposition      (1 TTABVUE) | Appx00096 |
| April 6, 2018 | Opposer's Motion to Compel Discovery (22 TTABVUE) | Appx00146 |
| August 16, 2018 | Order: Motion to Compel Deposition Granted; Motion to Compel Discovery Granted, in Part and, Denied, in Part (35 TTABVUE) | Appx00569 |
| September 18, 2018 | Opposer's Motion for Summary Judgment (36 TTABVUE) | Appx00580 |
| March 1, 2019 | Order: Motion for Summary Judgment Granted, in Part and, Denied, in Part (45 TTABVUE) | Appx01403 |

| April 1, 2019 | Apple's Motion for Reconsideration or, in the Alternative, For Leave to Amend Answer (48 TTABVUE) | Appx01421 |
| May 29, 2019 | Joint Stipulation Regarding Documents Produced in Response to Written Discovery and Depositions (53 TTABVUE) | Appx01451 |
| September 30, 2019 | Order: Motion for Reconsideration Denied; Alternative Motion for Leave to Amend Answer Granted (58 TTABVUE) | Appx01578 |
| December 20, 2019 | Opposer's Trial Declaration of C. Bertini (59-60 TTABVUE) | Appx01589 |
| December 20, 2019 | Opposer's Notice of Reliance (on Discovery Responses) (62 TTABVUE) | Appx01979 |
| December 20, 2019 | Opposer's Notice of Reliance (on Internet Documents) (64 TTABVUE) | Appx02048 |
| December 20, 2019 | Opposer's Notice of Reliance (on Official Records) (66 TTABVUE) | Appx02129 |
| February 20, 2020 | Apple's Fourth Notice of Reliance (70 TTABVUE) | Appx02465 |
| February 20, 2020 | Apple's Declaration of J. Vaughan Jones (71 TTABVUE) | Appx02719 |

| | **TABLE OF CONTENTS**<br>**Joint Appendix Volume II of II** | |
|---|---|---|
| | | **Page** |
| | | |
| February 20, 2020 | Apple's Confidential Trial Testimony Exhibit 13 of Apple witness Jeffrey Vaughn Jones regarding sales information (72 TTABVUE) | Appx02989 |
| | | |
| February 21, 2020 | Apple's Fifth Notice of Reliance (73 TTABVUE) | Appx02997 |
| | | |
| February 21, 2020 | Apple's Sixth Notice of Reliance (74 TTABVUE) | Appx03494 |
| | | |
| February 21, 2020 | Apple's Declaration of T. La Perle (83 TTABVUE) | Appx07883 |
| | | |
| February 21, 2020 | Apple's Confidential Trial Testimony of witness Thomas La Perle regarding royalties (84 TTABVUE) | Appx08155 |
| | | |
| February 21, 2020 | Apple's Confidential Trial Testimony Exhibit 23 of witness Thomas La Perle regarding a contract. (85 TTABVUE) | Appx08158 |
| | | |
| April 6, 2020 | Opposer's Rebuttal Notice of Reliance (Publicly Available Webpages) (87 TTABVUE) | Appx08225 |
| | | |
| June 5, 2020 | Opposer's Trial Brief (Appendix A) (89 TTABVUE) | Appx08227 |
| | | |
| July 6, 2020 | Apple's Trial Brief (Appendix A-B) (90 TTABVUE) | Appx08295 |
| | | |
| July 20, 2020 | Opposer's Reply Trial Brief (Exhs. A-B) (92 TTABVUE) | Appx08531 |
| | | |

| May 15, 2021 | Opposer's Motion for Reconsideration (102 TTABVUE) | Appx08609 |
|---|---|---|
| | | |
| June 14, 2021 | Opposer's Reply in Support of Motion for Reconsideration (104 TTABVUE) | Appx08648 |
| | | |
| Various dates | USPTO Third Party Registrations | Appx08659 |
| | | |
| | Merriam-Webster definition of the term "set" | Appx08683 |
| | | |
| | The American Heritage Dictionary definition of the term "production" | Appx08685 |
| | | |
| October 1, 2017 | Answer | Appx08723 |

## CONFIDENTIAL MATERIALS STATEMENT:

The material omitted in the Non-Confidential Appendix is, or relates to, material subject to a protective order.  Neither Apple nor Bertini filed confidential briefs.

Confidential materials filed under seal in its entirety with no redacted/public counter-part have been identified with full-page brackets and intentionally omitted on the following pages: Appx02989-02993; Appx8155-8216.


**UNITED STATES PATENT AND TRADEMARK OFFICE**

# Standard Protective Order

## Letterhead

**Opposition/Cancellation/Concurrent Use No._____**

**Plaintiff [insert name]**

**v.**

**Defendant [insert name]**

<div style="text-align:center">

**TRADEMARK TRIAL AND APPEAL BOARD**

**STANDARD PROTECTIVE ORDER**

</div>

Pursuant to Trademark Rule 2.116(g), this standard protective order ("Order") is automatically imposed on this Board proceeding. It is not necessary for the parties and/or their attorneys to sign copies of the Order for it to take effect or for the parties to be bound by its terms during the course of the proceeding. However, it may be desirable to obtain such signatures to assure the parties that they have created a contract which will survive this Board proceeding and that they may have a remedy for breach of that contract which occurs after the conclusion of this Board case.  Notwithstanding, any determination of whether the Order establishes contractual rights or is enforceable outside of this Board proceeding is for the appropriate judicial forum to decide should such matter come before it.

Information disclosed by any party or non-party witness during this proceeding may be considered (1) **Confidential** or (2) **Confidential – For Attorneys' Eyes Only (trade secret/ commercially sensitive)** by a party or witness. To preserve the confidentiality of the information so disclosed, the parties are hereby bound by the terms of this Order, in its standard form or as modified by agreement approved by the Board, and by any additional provisions to which they may have agreed and approved by the Board. As used in this Order, the term "information" covers documentary material, electronically stored information ("ESI"), testimony,[1] and any other information provided during the course of this Board proceeding.

Parties may use this Order as the entirety of their agreement or may use it as a template from which they may fashion a modified agreement, subject to Board approval.

This Order shall govern any information produced in this Board proceeding and designated pursuant to this Order, including all designated discovery depositions, all designated testimony depositions and declarations and affidavits, all designated deposition exhibits and testimony exhibits, interrogatory answers, admissions, documents

and other discovery and testimony materials, whether produced informally, as part of mandatory disclosures, or in response to interrogatories, requests for admissions, requests for production of documents or other methods of discovery.

This Order shall also govern any designated information produced or provided in this Board proceeding pursuant to required disclosures under any applicable federal procedural rule or Board rule and any supplementary disclosures thereto.

This Order shall apply to the parties and to any nonparty from whom discovery or testimony may be sought in connection with this proceeding and who desires the protection of this Order.

## TERMS OF ORDER

### 1) Classes of Protected Information.

The Rules of Practice in Trademark Cases provide that all inter partes proceeding files, as well as the involved registration and application files, are open to public inspection. The terms of this Order are not to be used to undermine public access to such files. When appropriate, however, a party or witness, on its own or through its attorney, may seek to protect the confidentiality of information by employing one of the following designations.

**Confidential** -Material to be shielded by the Board from public access.

**Confidential – Attorneys' Eyes Only (Trade Secret/Commercially Sensitive)** -Material to be shielded by the Board from public access, restricted from any access by the parties, and available for review by **outside counsel** for the parties and, subject to the provisions of paragraphs 4 and 5, by independent experts or consultants for the parties. Such material may include the following types of information:  (1) sensitive technical information, including current research, development and manufacturing information; (2) sensitive business information, including highly sensitive financial or marketing information; (3) competitive technical information, including technical analyses or comparisons of competitor's products or services; (4) competitive business information, including non-public financial and marketing analyses, media scheduling, comparisons of competitor's products or services, and strategic product/service expansion plans; (5) personal health or medical information; (6) an individual's personal credit, banking or other financial information; or (7) any other commercially sensitive information the disclosure of which to non-qualified persons subject to this Order the producing party reasonably and in good faith believes would likely cause harm.

### 2) Information Not to Be Designated as Protected.

Information may not be designated as subject to any form of protection if it (a) is, or becomes, public knowledge, as shown by publicly available writings, other than through violation of the terms of this Order; (b) is acquired by a non-designating party or non-party witness from a third party lawfully possessing such information and having no obligation to the owner of the information; (c) was lawfully possessed by a non-designating party or non-party witness prior to the opening of discovery in this proceeding, and for which there is written evidence of the lawful possession; (d) is disclosed by a non-designating party or non-party witness legally compelled to disclose the information; or (e) is disclosed by a non-designating party with the approval of the designating party.

**3) Access to Protected Information.**

The provisions of this Order regarding access to protected information are subject to modification by written agreement of the parties or their attorneys and approved by the Board.

Administrative Trademark Judges, Board attorneys, and other employees of the Board are bound to honor the parties' designations of information as protected, except as otherwise required by law, but are not required to sign forms acknowledging the terms and existence of this Order. Court reporters, stenographers, video technicians or others who may be employed by the parties or their attorneys to perform services incidental to this proceeding will be bound only to the extent that the parties or their attorneys make it a condition of employment or obtain agreements from such individuals, in accordance with the provisions of paragraph 4.

- **Parties** are defined as including individuals, officers of corporations, partners of partnerships, members of limited liability companies/corporations, and management employees of any type of business organization.
- **Attorneys** for parties are defined as including **in-house counsel** and **outside counsel**, including support staff operating under counsel's direction, such as paralegals or legal assistants, secretaries, and any other employees or independent contractors operating under counsel's instruction.
- **Independent experts or consultants** include individuals retained by a party for purposes related to prosecution or defense of the proceeding but who are not current or former employees, officers, members, directors, or partners of any party, affiliates of any party, or the attorneys of any party or its affiliates, or competitors to any party, or employees or consultants of such competitors with respect to the subject matter of the proceeding.
- **Non-party witnesses** include any individuals to be deposed during discovery or trial, whether willingly or under subpoena issued by a court of competent jurisdiction over the witness

**Parties** and their **attorneys** shall have access to information designated as **confidential**, subject to any agreed exceptions.

**Outside counsel, but not in-house counsel,** shall have access to information designated as **Confidential – Attorneys' Eyes Only (trade secret/commercially sensitive)**.

**Independent experts or consultants**, **non-party witnesses**, and **any other individual** not otherwise specifically covered by the terms of this order may be afforded access to **confidential** information in accordance with the terms that follow in paragraph 4. Further, **independent experts or consultants** may have access to **Confidential – Attorneys' Eyes Only (trade secret/commercially sensitive)** information if such access is agreed to by the parties or ordered by the Board, in accordance with the terms that follow in paragraphs 4 and 5.

**4) Disclosure to Any Individual.**

Prior to disclosure of protected information by any party or its attorney to any individual not already provided access to such information by the terms of this Order, the individual shall be informed of the existence of this Order and provided with a copy to read. The individual will then be required to certify in writing that the order has been read and understood and that the terms shall be binding on the individual. No individual shall receive any protected information until the party or attorney proposing to disclose the information has received the signed certification from the individual. A form for such certification is attached to this Order. See Exhibit A. The party or attorney receiving the completed form shall retain the original.

**5) Disclosure to Independent Experts or Consultants.**

In addition to meeting the requirements of paragraph 4, any party or attorney proposing to share disclosed information with an independent expert or consultant must also notify the party who designated the information as protected. Notification must be personally served or forwarded by certified mail, return receipt requested, or by email, and shall provide notice of the name, address, occupation and professional background of the expert or independent consultant.

The party or its attorney receiving the notice shall have ten (10) business days to object to disclosure to the expert or independent consultant. If objection is made, then the parties must negotiate the issue in good faith before raising the issue before the Board. If the parties are unable to settle their dispute, then it shall be the obligation of the party or attorney proposing disclosure to bring the matter before the Board with an explanation of the need for disclosure and a report on the efforts the parties have made to settle their dispute. The party objecting to disclosure will be expected to respond with its arguments against disclosure or its objections will be deemed waived.

### 6) Responses to Written Discovery.

Responses to interrogatories under Federal Rule 33 and requests for admissions under Federal Rule 36 (whether in a paper or electronic form) and which the responding party reasonably believes to contain protected information shall be prominently stamped or marked with the appropriate designation from paragraph 1. Any inadvertent disclosure without appropriate designation shall be remedied as soon as the disclosing party learns of its error, by informing all adverse parties, in writing, of the error. The parties should inform the Board only if necessary because of the filing of protected information not in accordance with the provisions of paragraph 12.

### 7) Production of Documents.

If a party responds to requests for production under Federal Rule 34 by making copies and forwarding the copies to the inquiring party, including ESI, then the copies shall be prominently stamped or marked, as necessary, with the appropriate designation from paragraph 1. If the responding party makes documents available for inspection and copying by the inquiring party, all documents shall be considered protected during the course of inspection. After the inquiring party informs the responding party what documents are to be copied, the responding party will be responsible for prominently stamping or marking the copies with the appropriate designation from paragraph 1.

### 8) Depositions.

Protected documents produced during an oral discovery deposition or a discovery deposition upon written questions, or offered into evidence during an oral testimony deposition, a testimony deposition upon written questions, or testimony submitted by affidavit or declaration, shall be noted appropriately as such by the producing or offering party at the outset of any discussion of the document or information contained in the document. In addition, the documents must be prominently stamped or marked with the appropriate designation.

During discussion of any non-documentary protected information, the interested party shall make oral note on the record of the protected nature of the information.

The transcript of any deposition (whether for discovery or testimony purposes) and all exhibits or attachments shall be considered protected for 30 days following the date of service of the transcript by the party that took the deposition. During that 30-day period, either party may designate the portions of the transcript, and any specific exhibits or attachments, that are to be treated as protected, by electing the appropriate designation from paragraph 1. Appropriate stampings or markings should be made during this time, if not already done so. If no such designations are made, then the entire transcript and exhibits will be considered unprotected.

**9) Filing Notices of Reliance.**

When a party or its attorney files a notice of reliance during the party's testimony period, the party or attorney is bound to honor designations made by the adverse party or attorney, or non-party witness, who disclosed the information, so as to maintain the protected status of the information.

**10) Briefs.**

When filing briefs, memoranda, affidavits and/or declarations in support of a motion, or briefs at final hearing, the portions of these filings that discuss protected information, whether information of the filing party, or any adverse party, or any non-party witness, should be redacted. The rule of reasonableness for redaction is discussed in paragraph 12 of this Order.

**11) Handling of Protected Information.**

Disclosure of information protected under the terms of this Order is intended only to facilitate the prosecution or defense of this Board proceeding. The recipient of any protected information disclosed in accordance with the terms of this Order is obligated to maintain the confidentiality of the information and shall exercise reasonable care in handling, storing, using, disseminating, retaining, returning, and destroying the information.

**12) Redaction; Filing Material with the Board.**

When a party or attorney must file protected information with the Board, or a motion or final brief that discusses such information, the protected information or portion of the motion/brief discussing the same should be redacted from the remainder. A rule of reasonableness should dictate how redaction is effected.

Redaction can entail merely covering or omitting a portion of a page of material when it is copied or printed in anticipation of filing but can also entail the more extreme measure of simply filing the entire page under seal as one that contains primarily confidential material. If only a sentence or short paragraph of a page of material is confidential, covering that material when the page is copied, or omitting the material, would be appropriate.

In contrast, if most of the material on the page is confidential, then filing the entire page under seal would be more reasonable, even if some small quantity of non-confidential material is then withheld from the public record. Likewise, when a multi-page document is in issue, reasonableness would dictate that redaction of the portions or pages containing confidential material be effected when only some small number of pages contain such material. In contrast, if almost every page of the document contains some confidential material, it may be more reasonable to simply submit the entire document under seal. **Occasions when a whole document or motion/brief must be submitted under seal should be very rare**.

Protected information, and pleadings, briefs or memoranda that reproduce, discuss or paraphrase such information, shall be filed with the Board under seal. If filed by mail, the envelopes or containers shall be prominently stamped or marked with a legend in substantially the following form:

<div align="center">

**CONFIDENTIAL**

</div>

This envelope contains documents or information that are subject to a protective order or agreement. The confidentiality of the material is to be maintained and the envelope is not to be opened, or the contents revealed to any individual, except by order of the Board.

If filed electronically by employing the Board's Electronic System for Trademark Trial and Appeals ("ESTTA"), the filing party should comply with the redaction guidelines set forth above and click the "confidential filing" option prior to transmitting the documents electronically. In all situations, a redacted copy must also be filed for public view.

**13) Acceptance of Information; Inadvertent Disclosure.**

Acceptance by a party or its attorney of information disclosed under designation as protected shall not constitute an admission that the information is, in fact, entitled to protection. Inadvertent disclosure of information which the disclosing party intended to designate as protected shall not constitute waiver of any right to claim the information as protected upon discovery of the error. In the event a party inadvertently files a document containing protected information, such party should immediately inform the Board and the Board will mark such document as confidential and will require the party to resubmit a redacted, publicly available copy of such document.

If, through inadvertence, a producing party provides any "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" discovery material during a Board proceeding without marking the information as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY," the producing party may subsequently inform the receiving party in writing of the "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" nature of the disclosed information, and the receiving party shall treat the disclosed information in accordance with this Order after receipt of such written notice and make reasonable efforts to retrieve any such material that has been disclosed to persons not authorized to receive the material under the terms hereof.  A party objecting to any such "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" designation shall follow the procedures set forth in paragraph 14 below.  Prior disclosure of material later designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" shall not constitute a violation of this Order.

If a disclosing party through inadvertence produces or provides discovery material that it believes is subject to a claim of attorney-client privilege, work product immunity, or any other privilege, the disclosing party may give written notice to the receiving party that the discovery material is deemed privileged and that return of the material is requested.  Upon such written notice, the receiving party shall immediately gather the original and all copies of the material of which the receiving party is aware and shall immediately return the original and all such copies to the disclosing party.

**14) Challenges to Designations of Information as Protected.**

If the parties or their attorneys disagree as to whether certain information should be protected, they are obligated to negotiate in good faith regarding the designation by the disclosing party. If the parties are unable to resolve their differences, the party challenging the designation may make a motion before the Board seeking a determination of the status of the information.

A challenge to the designation of information as protected must be made substantially contemporaneous with the designation, or as soon as practicable after the basis for challenge is known. When a challenge is made long after a designation of information as protected, the challenging party will be expected to show why it could not have made the challenge at an earlier time. The party designating information as protected will, when its designation is timely challenged, bear the ultimate burden of proving that the information should be protected.

**15) Consequences of Unchallenged Overdesigations.**

In the event the Board determines that a party has improperly overdesignated information as protected, and a party has not contested the overdesignation, the Board, on its own initiative, may (1) disregard the overdesignation

for those matters which are improperly designated; (2) issue an order to show cause why the submission should not be made open to public view; (3) require a party to reduce redactions by redesignating as non-confidential the overdesignated information and resubmit a properly designated redacted copy for public view; or (4) not consider the improperly designated matter in rendering its decision. In the case of an order to show cause, or request for resubmission of a filing with proper redaction (i.e., proper designation of confidential matter for public access), if no response is received, the Board will redesignate the confidentially filed material as non-confidential and make it available for public view.

## 16) Board's Jurisdiction; Handling of Materials after Termination.

The Board's jurisdiction over the parties and their attorneys ends when this proceeding is terminated. A proceeding is terminated only after a final order is entered and either all appellate proceedings have been resolved or the time for filing an appeal has passed without filing of any appeal.

The parties may agree that archival copies of evidence, memoranda, discovery deposition transcripts, testimony deposition transcripts, affidavits, declarations, and briefs may be retained solely by outside counsel, subject to compliance with agreed safeguards. Otherwise, within 30 days after the final termination of this proceeding, each party and their attorneys, as well as any other persons subject to the terms of this agreement, shall return to each disclosing party (1) all materials and documents, including ESI, containing protected information, (2) all copies, summaries, and abstracts thereof, and (3) all other materials, memoranda or documents embodying data concerning said material, including all copies provided pursuant to paragraphs 4 and 5 of this Order. In the alternative, the disclosing party or its attorney may make a written request that such materials be destroyed rather than returned. Additionally, parties to this agreement are precluded from disclosing orally or in writing any protected information provided during the course of a Board proceeding once this Board proceeding is terminated.

## 17) Other Rights of the Parties and Attorneys.

This Order shall not preclude the parties or their attorneys from making any applicable claims of privilege during discovery or at trial. Nor shall this Order preclude the filing of any motion with the Board for relief from a particular provision of this Order or for additional protections not provided by this Order.

**By Agreement of the Following:**

_____
[insert signature date]


_____
[print or type name and title of
individual signing for defendant]


_____
[print or type name and law firm of
attorney for defendant]


_____
[print or type name and title of
individual signing for plaintiff]

_____
[print or type name and law firm of
attorney for plaintiff]

**EXHIBIT A**

**CERTIFICATE OF COMPLIANCE**

Protected information, in whole or in part, and the information contained therein which has been produced by the parties to this Board proceeding pursuant to the attached Standard Protective Order has been disclosed to me, and by signing this Certificate of Compliance, I acknowledge and agree that I have read, understand, and am subject to the provisions of the Protective Order and will not disclose such protected information in whole or in part or in any form or the information contained therein to any person, corporation, partnership, firm, governmental agency or association other than those persons who are authorized under the Standard Protective Order to have access to such information.

_____
Date

_____
Signature

_____
Name (print)

---

[1] This includes testimony provided during a discovery deposition or a testimony deposition or by declaration or affidavit, either orally or upon written questions.

THIS OPINION IS NOT A
PRECEDENT OF THE TTAB

Hearing: November 5, 2020                    Mailed: April 16, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Charles Bertini*
*v.*
*Apple, Inc.*
_____

Opposition No. 91229891
_____

James Bertini, for Charles Bertini.

Joseph Petersen of Kilpatrick Townsend & Stockton LLP, for Apple, Inc.
_____

Before Shaw, Kuczma and Hudis,
    Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

Apple, Inc. ("Applicant") has applied to register the standard character mark

APPLE MUSIC for:

> Arranging, organizing, conducting, and presenting
> concerts, live musical performances, entertainment special
> events in the nature of musical and cultural events, arts
> and cultural events, theatrical entertainment in the nature
> of live theatrical performances, competitions in the field of
> entertainment, contests, fairs for entertainment purposes,
> musical or film festivals for cultural or entertainment
> purposes, and exhibitions for entertainment purposes;
> production and distribution of radio programs, television
> programs, and sound recordings; entertainment services,
> namely, providing ongoing television, radio, audio
> programs, video programs, podcast, and webcast programs
> in the field of entertainment; providing audio and video

programming featuring entertainment, sports, music, information, and news by means of telecommunications networks; entertainment services, namely, providing streamed and downloadable audio and video content to users through a subscription service provided online via a communication network; provision of live entertainment and recorded entertainment, namely, musical performances; providing non-downloadable audio and video programming featuring entertainment, sports, music, informational, and current events news programming; providing websites and computer applications featuring entertainment information, sports information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites and computer applications featuring information in the field of entertainment, music, sports, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, entertainment surveys, and ratings, and providing interactive websites and computer applications for entertainment purposes for the posting and sharing of reviews, entertainment surveys, and ratings of users all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, entertainment fairs, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; providing non-downloadable ringtones, pre-recorded music, video programs, and graphics for use on mobile communications devices via a global computer network and wireless networks; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia

content; publication of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; news reporting in the field of music and entertainment, in International Class 41.[1]

Charles Bertini ("Opposer") opposes registration of Applicant's mark on the ground of priority and likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), based on his asserted common law rights in the mark APPLE JAZZ for services that are "the same as or substantially identical to services intended to be offered by Applicant under its alleged mark of APPLE MUSIC."[2] Opposer pleaded ownership of a pending application for the mark APPLE JAZZ in standard characters for:

Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests for entertainment purposes, musical and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment, namely, live musical performances, and temporary use of online non-downloadable recorded entertainment featuring musical performances; providing websites featuring entertainment information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites featuring information in

---

[1] Application Serial No. 86659444 was filed on June 11, 2015 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), claiming a bona fide intention to use the mark in commerce. Applicant claimed priority under Trademark Act Section 44(d), 15 U.S.C. § 1026(d), based on Jamaican Application No. 67176 filed on May 18, 2015. The term MUSIC is disclaimed.

[2] Notice of Opposition ¶ 6, 1 TTABVUE 5.

the field of entertainment, music, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, and providing interactive websites for the posting and sharing of reviews, all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, and multimedia content in the fields of music; publication of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; arranging, producing in the nature of, recording, mixing, editing and sound engineering, researching musical compositions, publishers, artists, recordings, and licensing for music production services; arranging and conducting educational competitions for students in the field of business; arranging and conducting educational competitions for students in the field of entertainment, in International Class 41.[3]

In its Amended Answer, Applicant denied the salient allegations of the Notice of

Opposition. Applicant pleaded the affirmative defenses of priority and ownership of

---

[3] Notice of Opposition ¶ 10, 1 TTABVUE 9; 37 TTABVUE 46-51 (Ex. 132) Application Serial No. 87060640 was filed on June 5, 2016 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), claiming a date of first use anywhere and in commerce at least as early as June 5, 1985. The term JAZZ is disclaimed.

three registrations comprising APPLE marks, (including two registrations which it purchased from an unrelated entity, Apple Corps, Ltd.) for arguably related goods and services (see below the discussion of the APPLE registrations accompanying Applicant's Notices of Reliance), and that Opposer's mark is "comprised of a descriptive term and a geographically descriptive term, and the claimed mark lacked distinctiveness as of Apple's priority date."[4] The parties fully briefed the issues and appeared for oral argument. For the reasons discussed below, we dismiss the opposition.

## I.    The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the subject application. The parties filed a stipulation on May 29, 2019 regarding the authenticity of certain documents and the admissibility of certain discovery depositions.[5] The parties also introduced the following evidence:

1. Trial Declaration of Opposer Charles Bertini ("Bertini Decl.") with exhibits relating to Opposer's use of his mark;[6]

2. Opposer's Notices of Reliance, including Applicant's discovery responses and objections, Internet documents, and USPTO official records;[7]

---

[4] Amended Answer, 48 TTABVUE 19-23.

[5] 53 TTABVUE.

[6] 59-61 TTABVUE.

[7] 62-66 TTABVUE.

3.  Declaration of Jeffrey Vaughan Jones, Chief Executive Officer of Apple Corps Ltd. ("Jones Decl.") with exhibits relating to Apple Corps' use of the mark APPLE;[8]

4.  Declaration of Thomas R. La Perle, Esq., Applicant's Legal Department Senior Director ("La Perle Decl.") with exhibits relating to Applicant's use of APPLE marks and the purchase of Apple Corps' rights in its APPLE marks;[9]

5.  Applicant's Notices of Reliance, including Opposer's discovery responses, printed publications, USPTO official records, the deposition of Charles Bertini ("Bertini Dep."), Internet documents, and status and title copies of the following three registrations owned by Applicant:

    a.  Registration No. 2034964, issued February 4, 1997 and renewed, for the mark APPLE in typed form for "Gramophone records featuring music; [and] audio compact discs featuring music" and claiming a date of first use of August 1968,

    b.  Registration No. 3317089, issued October 23, 2007 and renewed, based on Section 44(e), for the mark APPLE in standard characters for, inter alia, "Musical sound records", and

    c.  Registration No. 4088195, issued January 17, 2012, for the mark APPLE in standard characters for, inter alia, "entertainment services, namely, providing prerecorded audio and audiovisual content . . . in the fields of music" and claiming a date of first use of March 1, 1981;[10]

---

[8] 71 and 72 TTABVUE.

[9] 83-85 TTABVUE.

[10] 67-70 and 73-82 TTABVUE. Registration Nos. 2034964 and 3317089 issued to Apple Corps, Ltd., but were assigned to Applicant via a 2007 settlement agreement. *See* La Perle Decl. ¶ 48, 83 TTABVUE 19, Ex. 23 to La Perle Decl., 85 TTABVUE (confidential), and Ex. 24 to La Perle Decl., 83 TTABVUE 253-58; *see also* Assignment Abstracts of Title Information, 67 TTABVUE 17-18 and 22.

6.  Opposer's Rebuttal Trial Declaration of Charles Bertini ("Bertini Rebuttal Decl."), including exhibits related to his use of the APPLE JAZZ mark;[11] and

7.  Opposer's Rebuttal Notices of Reliance on Internet documents.[12]

## II.    Evidentiary Issues and Objections

The parties raise numerous evidentiary issues and objections to each other's evidence and briefs, including objections on the grounds of hearsay, relevance, timeliness, lack of probity, and lack of personal knowledge. We address the parties' arguments and objections as follows.

### A. Applicant's Brief

In his Reply Brief, Opposer objects to the form of Applicant's brief, on the ground that Applicant uses extensive footnotes to avoid the page limit. Opposer argues that many of the brief's 141 footnotes "do not reference evidence, but rather additional facts, cases, case analysis and argumentation."[13]

Single-spaced footnotes containing substantial discussion may be viewed as a subterfuge to avoid the page limit. *Consorzio del Prosciutto di Parma v. Parma Sausage Prods. Inc.*, 23 USPQ2d 1894, 1896 n.3 (TTAB 1992). More importantly, arguments raised only in footnotes are waived. *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 102 USPQ2d 1729, 1739 (Fed. Cir. 2012).

The vast majority of Applicant's footnotes comprise evidentiary citations and amplifications or clarifications of evidentiary points. The remaining footnotes do not

---

[11] 86 TTABVUE.

[12] 87 and 88 TTABVUE.

[13] Opposer's Reply Br., p. 21, 92 TTABVUE 22.

contain substantial discussion; they merely provide additional material supporting propositions discussed in the body of the brief. We find Applicant's use of footnotes is not a subterfuge to avoid page limits. The objection is overruled and we have considered Applicant's trial brief, including the footnotes.

### B. Applicant's 1981 and 1991 settlement agreements

In his brief, Opposer points out that Applicant failed to comply with the Board's order to produce Applicant's 1981 and 1991 settlement agreements with Apple Corps.[14] Opposer alleges the agreements are relevant because "[a]ccording to publicly available information in online encyclopedia Wikipedia regarding the Agreement of 1981: 'Apple Computer agreed not to enter the music business'."[15] Applicant does not address Opposer's contention but simply states that Apple Corps and Apple Computer "settled their differences in 2007, when Apple [Computer] acquired Apple Corps' trademark and service mark rights in the APPLE Mark dating back to August 1968."[16]

The Board ordered that "Applicant must produce the portion of the identified settlement agreements concerning trademarks [dated 1981 and 1991 between Applicant and Apple Corps] in response to [Opposer's] Requests for Production."[17] The order further explained that:

> In the event that Applicant fails or has failed to provide Opposer with full and complete responses to the discovery requests identified in the motion [including the 1981 and 1991 settlement agreements], . . . Applicant may, upon

---

[14] Opposer's Br., p. 24 ¶ 69, 89 TTABVUE 24.

[15] *Id.*

[16] Applicant's Br., p. 20, 90 TTABVUE 22.

[17] Board's Order, p. 7, 35 TTABVUE 7.

> timely objection by Opposer, be barred from relying upon
> or later producing documents or facts at trial that were
> properly sought, but withheld from such discovery.[18]

As noted in the Board's order, settlement agreements that have avoided litigation may show limitations on party's rights in a mark. *Georgia-Pacific Corp. v. Great Plains Bag Co.*, 190 USPQ 193, 197 (TTAB 1976). The 1981 and 1991 agreements between Applicant and Apple Corps could have shown limitations on Applicant's rights in its APPLE marks in the United States. However, inasmuch as Opposer did not object to Applicant's omissions, and Applicant does not seek to rely on them,[19] we will not sanction Applicant or draw any adverse inferences from Applicant's failure to produce the settlement agreements. Nevertheless, in light of the clear intent of the Board's order, we view with great disfavor Applicant's failure to adhere to the Trademark Rules of Practice and comply with the order.

### C. Hearsay objections to matter in documents

Applicant objects on the ground of hearsay to certain portions of Opposer's evidence consisting of newspapers articles and advertisements related to the APPLE JAZZ band and concerts. Applicant argues that "[t]o the extent that Opposer uses these to show the truth of the matter asserted . . . they are inadmissible hearsay."[20]

---

[18] *Id.* at 10 n.17, 35 TTABVUE 10.

[19] In addition, as discussed below, we find that Applicant is unable to establish its own use of the mark APPLE for musical recordings or their production and distribution prior to Opposer's earliest priority date. In the alternative, Applicant relies on the trademark rights it purchased from Apple Corps.

[20] App. A to Applicant's Br., 90 TTABVUE 63.

Opposer objects to a number of Applicant's evidentiary submissions from various publications on the ground of hearsay as well.[21]

The Board considers website and Internet printouts and other materials introduced under a notice of reliance without supporting testimony only for what they show on their face rather than the truth of the matters asserted therein. *See Safer, Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010). However, although printed publications cannot be used to prove the truth of the statements contained in them, Rule 803(16) of the Federal Rules of Evidence provides that a "statement in a document that is at least 20 years old and whose authenticity is established" is an exception to the hearsay rule. Newspapers and periodicals are self-authenticating. *See* Fed. R. Evid. 902(6). In addition, inasmuch as witnesses for a party may have authenticated or testified to the provenance of such documents we also find that they meet the authenticity requirements of Fed. R. Evid. 901(b)(8). The objections are overruled as to documents that are over twenty years old. Either party may rely on printed publications more than twenty years old for the truth of the statements asserted therein, whether introduced through a notice of reliance on printed publications or through testimony. *See Blackhorse v. Pro-Football, Inc.*, 111 USPQ2d 1080, 1086 n.20 (TTAB 2014). Printed publications less than twenty years old may not be relied on for the truth of the statements asserted therein.

### D. Opposer's Objection to the Jones' declaration.

Opposer objects to much of Jeffrey Vaughan Jones' declaration testimony and the accompanying exhibits on the grounds of foundation and hearsay because Jones, who

---

[21] App. A to Opposer's Br., 89 TTABVUE 53.

began working for Apple Corps (Applicant's predecessor-in-interest) in 2007, fails to state who gave him the relevant information or whether he has personal knowledge of the exhibits.[22] Jones' declaration states:

> Except where otherwise stated, all information provided within this declaration is either personally known to me, or is information which has been provided to me (especially in relation to matters prior to my appointment in May 2007) and all of which I believe to be true, and/or has been obtained by me from the books and records made in the usual and ordinary course of Apple Corps' business.[23].

Apple Corps' claims of use of APPLE marks date back to 1968, more than fifty years ago. It is unreasonable to expect persons familiar with a businesses' history dating back to the late 1960s to remain employed after such a long period of time. In such cases—where testimony relies on institutional knowledge—the Board has stated that pursuant to Federal Rule of Evidence 803:

> It is recognized that where a corporation has been in existence for a considerable period of time, there may not be an individual currently with the organization that could relate vital statistics of the business based upon personal knowledge and that therefore proper recourse may be made to historical documents and similar documents maintained by the corporation over the years, in the normal operation thereof or even to biographical matter, provided the material is made of record subject to the scrutiny and cross-examination of the adverse party.

*Transamerica Fin. Corp. v. Trans-American Collections, Inc.,* 197 USPQ 43, n.6, (TTAB 1977). Opposer was free to cross-examine Jones regarding Apple Corps' books

---

[22] *Id.*, 89 TTABVUE 58-62

[23] Jones Decl. ¶ 1, 71 TTABVUE 2.

and records if he was dissatisfied with Jones' declaration.[24] Opposer chose not to do

so. Accordingly, we overrule the objection and have considered the Jones declaration.

### E. Other objections

The remaining objections generally go to the weight or relevance, rather than the

admissibility, of the evidence. Given the nature of the objections, coupled with their

number, we see no compelling reason to discuss each objection. In assessing the

remaining objections, we employ the same standards the Board has noted before:

> [W]e simply accord the evidence whatever probative value
> it deserves, if any at all. . . . Ultimately, the Board is
> capable of weighing the relevance and strength or
> weakness of the objected-to testimony and evidence in this
> specific case, including any inherent limitations, and this
> precludes the need to strike the testimony and evidence.

*Hunt Control Sys. Inc. v. Koninklijke Philips Elec. N.V.*, 98 USPQ2d 1558, 1564

(TTAB 2011), *rev'd on other grounds*, Civ. No. 11-3684, 2017 WL 3719468 (D.N.J.

Aug. 29, 2017). As necessary and appropriate, we will point out any limitations of the

evidence or otherwise note that the evidence cannot be relied upon in the manner

sought. We have considered all of the testimony and evidence introduced into the

record. In doing so, we have kept in mind the various objections raised by the parties

and we have accorded whatever probative value the subject testimony and evidence

merit.

---

[24] *See* Parties' Stipulation ¶ 6, 53 TTABVUE 3. *Cf. WeaponX Performance Prods. Ltd. v. Weapon X Motorsports, Inc.*, 126 USPQ2d 1034, 1037 (TTAB 2018) (opposer's objection to applicant's testimony declarations overruled where opposer had opportunity to cross-examine the witnesses but chose not to do so).

### III.    Entitlement to Statutory Cause of Action

We now refer to standing as entitlement to a statutory cause of action. *Peterson v. Awshucks SC, LLC,* 2020 BL 509515, at *5 n.34 (TTAB 2020); *Major League Soccer, LLC v. F.C. Int'l Milano S.p.A.*, 2020 USPQ2d 11488, at *5 n.18 (TTAB 2020). Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting Sections 13 and 14 of the Trademark Act remain equally applicable. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *4 (Fed. Cir. 2020). As the Court of Appeals for the Federal Circuit has observed, there is "no meaningful, substantive difference between the analytical frameworks" in the prior "standing" case law, under which an opposer must show a real interest in the proceeding and a reasonable basis for its belief in damage, *see Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014), and the current "entitlement" case law, under which an opposer must show an interest falling within the zone of interests protected by statute and damage proximately caused by registration. *Corcamore,* 2020 USPQ2d 11277, at *4. Thus, "a party that demonstrates a real interest in [opposing registration of] . . . a trademark under [Trademark Act Section 13, 15 U.S.C. § 1063] has demonstrated an interest falling within the zone of interests protected by [the Trademark Act]. . . . Similarly, a party that demonstrates a reasonable belief of damage by the registration of a trademark demonstrates proximate causation within the context of [§ 1063]." *Id.* at *7.

In his motion for summary judgment, which was partially granted by the Board, Opposer established his statutory entitlement to bring this opposition proceeding by

submitting a copy of his pleaded application for the mark APPLE JAZZ and an Office Action citing Applicant's pending application as a potential bar to registration of Opposer's mark based on likelihood of confusion.[25] Opposer has established his statutory entitlement to bring this opposition proceeding.[26] *See Fiat Grp. Autos. S.p.A. v. ISM, Inc.*, 94 USPQ2d 1111, 1112 (TTAB 2010) ("The filing of opposer's application and the Office's action taken in regard to that application [a provisional refusal based on the involved application] provides opposer with a basis for pleading its . . . [entitlement to a statutory cause of action]").

## IV.    Grant of Partial Summary Judgment

In an order dated March 1, 2019, the Board granted Opposer's motion for summary judgment, in part, with respect to the issue of likelihood of confusion, and denied the motion, in part, with respect to the issue of priority of use.[27] The only remaining issues are priority and whether Opposer's mark is primarily merely geographically descriptive and lacks secondary meaning.

## V.    Priority

To prevail on the ground of likelihood of confusion under Section 2(d) of the Trademark Act, based on a previously used mark, it is the Opposer's burden to prove both priority of use and likelihood of confusion by a preponderance of the evidence. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1848 (Fed. Cir.

---

[25] 37 TTABVUE 46-51 (Exhibit 132), 150-53.

[26] 45 TTABVUE 5.

[27] 45 TTABVUE 16.

2000). As noted above, the Board granted Opposer's motion for summary judgment, in part, with respect to the issue of likelihood of confusion.

A party seeking to oppose registration of a mark under Section 2(d) must prove that it has proprietary rights in the term it relies upon to demonstrate likelihood of confusion as to source. *Otto Roth & Co. v. Universal Foods Corp.,* 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981). A party may establish its own prior proprietary rights in a trademark through ownership of a registration, through actual use, or through use analogous to trademark use. *T.A.B. Sys. v. PacTel Teletrac,* 77 F.3d 1372, 37 USPQ2d 1879 (Fed. Cir. 1996). Here, because Opposer has not pleaded or submitted a registration, he must rely on his asserted common law rights. In order for Opposer to prevail, the mark must be distinctive, inherently or otherwise, and Opposer must show priority of use. *Otto Roth*, 209 USPQ at 40; *see also, Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 57 USPQ2d 1720, 1721 (Fed. Cir. 2001).

Opposer asserts that he acquired common law rights in the mark APPLE JAZZ for the services identified it his application "long prior" to any date on which Applicant may rely for the applied-for mark.[28] Because the recited services in Opposer's pleaded application and Applicant's application both include "[a]rranging, organizing, conducting, and presenting concerts [and] live musical performances" and "production and distribution of . . . sound recordings," the parties' services are in part identical. We therefore focus our analysis on these services because they are most likely to establish priority for one party or the other. Neither Opposer nor Applicant need prove, and we need not find, priority as to each service listed in the respective

---

[28] Notice of Opposition ¶¶ 7 and 8, 1 TTABVUE 8.

recitations of services. It is sufficient to find priority as to any service encompassed by the application and registration. *See Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1409 (TTAB 2015), *aff'd* 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017); *Inter IKEA Sys. B.V. v. Akea, LLC*, 110 USPQ2d 1734, 1745 (TTAB 2014).

## A. Opposer's mark and priority

Opposer is a jazz musician who began playing the trumpet professionally around 1971.[29] In 1984, he left his full-time music job and began freelancing as a musician.[30] Over the years, he has been employed in a number of roles, including, as a first trumpet, music director, and band leader.[31] Opposer also currently teaches music at performing arts schools, and has taught music at a college in the past.[32]

After organizing and leading a successful impromptu concert in 1984, Opposer performed his first concert under the name APPLE JAZZ at the Cortland New York Holiday Inn on June 13, 1985, as shown by the advertisement below.[33]

---

[29] Bertini Dep., p. 9, 73 TTABVUE 21.

[30] *Id.*

[31] *Id.* at 10, 73 TTABVUE 21.

[32] *Id.* at 11-12, 73 TTABVUE 21.

[33] Opposer asserts his date of first use of the APPLE JAZZ mark is June 5, 1985, the date on which a newspaper article and an advertisement describing the upcoming first concert was published. *See* Ex. 1 to Bertini Dep., pp. 169 and 174, 73 TTABVUE 47-48 and 88. The use of a mark in the announcement of a future service, including an advance purchase of the service, does not constitute use as a service mark. *See Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 90 USPQ2d 1301 (Fed. Cir. 2009) (holding that actual use of the mark in commerce in connection with an existing service is required and that mere preparations to use a mark sometime in the future does not constitute use in commerce); *In re Cedar Point, Inc.*, 220 USPQ 533 (TTAB 1983) (holding that advertising of an entertainment park, which was not yet open, was not a valid basis for registration). Accordingly, we find Opposer's earliest date of first use of the APPLE JAZZ mark is the date that Opposer's first concert was given,



[34]

Opposer states that he chose the name APPLE JAZZ "because it was in Cortland County, and cortland apples are part of Cortland County, we decided to call it Apple Jazz."[35] Each year since 1985, Opposer has offered APPLE JAZZ concerts in and around the Cortland, New York area. Between 1986 and 2014, nearly all of the concerts were billed as festivals, organized by Opposer, and generally held in a pavilion at the Dwyer Memorial Park in Cortland County.[36] In 2015, Opposer's APPLE JAZZ band was hired to perform at the Syracuse Jazz Fest, and in 2016 and 2017, the APPLE JAZZ band was hired to perform at the Homer Center for the Arts in Homer, New York.[37] Revenues from the APPLE JAZZ festivals were modest, according to Opposer, "[s]ome years, it made money, and some years, it didn't."[38] The following representative exhibits, introduced by Opposer, show use of APPLE JAZZ to identify both Opposer's band and concerts between 1986 and 2010.

---

namely June 13, 1985. The eight-day difference does not affect the outcome of the priority determination.

[34] Ex. 1 to Bertini Dep., 73 TTABVUE 88.

[35] Bertini Dep., p. 19, 73 TTABVUE 9.

[36] *Id.* at 27-28, 73 TTABVUE 11.

[37] *Id.* at 31-32, 73 TTABVUE 12.

[38] *Id.* at 59, 73 TTABVUE 19.

Opposition No. 91229891



---

[39] Ex. 3 to Bertini Dep., 73 TTABVUE 141.

[40] Ex. 15 to Bertini Dep., 73 TTABVUE 165.





Eventually, Opposer branched out into other musical enterprises and formed APPLE JAZZ Records in the mid-1990s in order to issue and distribute recordings of his work as an independent musician, as well as the work of other musicians.[43]

---

[41] Ex. 29 to Bertini Dep., 73 TTABVUE 193.

[42] Ex. 44 to Bertini Dep., 73 TTABVUE 223.

[43] Bertini Dep., pp. 44 and 47, 73 TTABVUE 15-16.

Opposer's music is available on Applicant's iTunes platform and other streaming music services.[44]

Opposer has used APPLE JAZZ as a service mark to identify a variety of his musical enterprises, including a band, music festivals and concerts, and a musical recording production and distribution company.[45] As Opposer states in his deposition: "Apple Jazz is a brand."[46] Although Opposer's revenues from these events are modest, Opposer's use of the mark certainly is adequate to meet the definition of "use in commerce" under Section 45 of the Trademark Act, 15 U.S.C. § 1127. *See Larry Harmon Pictures Corp. v. Williams Rest. Corp.*, 929 F.2d 662, 18 USPQ2d 1292, 1295 (Fed. Cir. 1991) ("We . . . reject . . . [Opposer's] argument that a certain increased threshold level of interstate activity is required before … [protection of a mark] may be granted."). We therefore find Opposer was using APPLE JAZZ as a service mark in connection with "[a]rranging, organizing, conducting, and presenting concerts [and] live musical performances" at least as early as June 13, 1985.

## B. Whether Opposer's mark is primarily merely geographically descriptive and lacks secondary meaning.

Applicant argues Opposer cannot establish priority because Opposer's APPLE JAZZ mark is primarily merely geographically descriptive and lacks secondary meaning.[47] Applicant claims Opposer's mark is primarily geographically descriptive because he performs jazz music in an area of New York known for producing apples.

---

[44] *Id.* at 114-15, 73 TTABVUE 33.

[45] *Id.* at 17, 26, and 33, 73 TTABVUE 9, 11, and 13.

[46] *Id.* at 46, 73 TTABVUE 13.

[47] Applicant's Br., p. 41, 90 TTABVUE 43.

That is, "'APPLE' is descriptive of 'apple country'—the area in and around Cortland, New York",[48] and the term JAZZ is generic for Opposer's music. Thus, according to Applicant, Opposer's "'Apple Jazz' is the geographically descriptive combination of 'Apple' and 'Jazz[.]'"[49] To establish that Opposer's mark is primarily merely geographically descriptive and lacking secondary meaning, Applicant relies on statements by Opposer and on other evidence it submitted.

Applicant first argues Opposer admits to the connection between his mark and the "apple country" of upstate New York. Applicant notes Opposer stated he selected APPLE JAZZ as his band's name because "the jazz genre of music was being promoted in the apple country of Central New York State and Cortland, New York, home of the Cortland apple."[50] Applicant also notes Opposer admitted to choosing the name APPLE JAZZ for his band because of a connection with the Cortland region: "I wanted a name for the band. I had to call it something. It could have been 'Charlie Bertini and His Friends' or whatever. But because it was in Cortland County, and cortland apples are part of Cortland County, we decided to call it Apple Jazz."[51]

Applicant also submitted evidence that the Cortland County area of New York State, where Opposer has given most of his concerts, is known for the production of apples. The following examples are representative.

- The Cortland County Chamber of Commerce featured an apple image in its letterhead in a 1991 letter to Opposer:

---

[48] *Id.* at 45, 90 TTABVUE 47.

[49] *Id.* at 51, 90 TTABVUE 53.

[50] *Id.* at 45, 90 TTABVUE 47.

[51] Bertini Dep., p. 19, 73 TTABVUE 9.



52

- A May 1993 newspaper article announcing one of Opposer's concerts as one of several local "[e]vents built around seniors, *jazz*, **apples** and balloons[.]"[53]

- Applicant identifies "[n]umerous businesses, programs, and festivals in the upstate New York region (which includes Cortland) [that] have adopted apple names and imagery to signal their location in 'apple country.'"[54] These include: Red Apple Food Marts, the "Red Apple Program" offered by a business valuation company, the Ithaca New York Apple Harvest Festival, the Hilton New York Apple Fest, the LaFayette New York Apple Festival, the Warwick New York Apple Festival, and the Lioness Club of Central Square Apple Festival.[55]

The elements for establishing that a mark is primarily geographically descriptive under Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e)(2), are:

(1) The mark is the name of a place known generally to the public;

(2) The goods for which applicant seeks registration originate in the geographic place identified in the mark; and

---

[52] Ex. 1 to Bertini Rebuttal Decl., 86 TTABVUE 180.

[53] Ex. 27 to Bertini Decl., 59 TTABVUE 55 (emphasis by Applicant).

[54] Applicant's Br., p. 46, 90 TTABVUE 48.

[55] Ex. A to Applicant's 6th notice of reliance, 74 TTABVUE 22-42.

(3) Purchasers would be likely to believe that the goods originate in the geographic place identified in the mark.

*See In re The Newbridge Cutlery Co.*, 776 F.3d 854, 113 USPQ2d 1445, 1448-49 (Fed. Cir. 2015).

We turn our attention first to the question of whether the primary significance of APPLE is that of a geographic location. In making this determination, we are mindful that a mark generally is not considered "primarily" geographic if it has a well-known meaning independent from its geographical meaning. *See In re Int'l Taste Inc.*, 53 USPQ2d 1604, 1605-06 (TTAB 2000) (HOLLYWOOD FRIES not primarily geographic because of other prominent, significant meaning of Hollywood referring to entertainment industry).

On this record, we find the term APPLE denotes the fruit, one type of which is produced in and around Cortland County, New York. Cortland County and the surrounding area are sometime referred to as "apple country" due to the volume of apples produced there. Thus, the phrase "apple country" has a geographic connotation for purposes of determining whether Opposer's mark is primarily geographically descriptive. Nevertheless, evidence identifying "apple country" as the area in and around Cortland, New York is inapposite because Opposer's mark is APPLE JAZZ, not APPLE COUNTRY JAZZ. The record therefore does not establish that APPLE— either alone or when combined with JAZZ—is primarily merely a geographic term. Simply put, APPLE does not share the same geographic connotation as the phrase "apple country" because removing the term "country" from the phrase "apple country" changes the meaning from a geographic place to the fruit.

Applicant also relies on section 1210.02(a) of the TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") (OCT. 2018), which states that "[a] geographic nickname (e.g., 'Big Apple' or 'Motown'), or an abbreviation or other variant of the name of a geographic location, is treated the same as the actual name of the geographic location, if it is likely to be perceived as such by the purchasing public." This argument is unpersuasive because, as noted above, Opposer's mark does not contain the full nickname of the New York apple producing region, i.e., "apple country." Thus, neither APPLE alone nor APPLE JAZZ can be considered to be a geographic nickname, abbreviation, or variant of the name of a geographic location to the purchasing public. We find, therefore, that Applicant has failed to establish that the primary significance of APPLE in Opposer's mark APPLE JAZZ is a geographic location. *See In re Dixie Ins. Co.*, 223 USPQ 514 (TTAB 1984) (no evidence to support the conclusion that the primary significance of DIXIE is geographical).

In the absence of evidence that APPLE JAZZ is primarily merely geographically descriptive, we find Opposer has established that his APPLE JAZZ mark as a whole is inherently distinctive and not lacking in secondary meaning. Opposer may claim priority of use of the mark APPLE JAZZ for use in connection with "[a]rranging, organizing, conducting, and presenting concerts [and] live musical performances" at least as early as June 13, 1985.

## C. Applicant's mark and priority

### 1.    Applicant's use of APPLE marks

Since at least 1977, Applicant has used its APPLE word mark in connection with personal computers and mobile communication and media devices, as well as with a

variety of related software, services, and accessories.[56] Since the 1980s, Applicant also has used the mark APPLE in connection with an audio player and audio-recording functionalities on its computers and mobile devices.[57] Applicant's audio player and audio-recording functionalities, however, do not establish use of the APPLE mark in connection with the services identified in its application because they are insufficiently related.[58] Applicant's use of the APPLE mark in connection with other music-related goods and services, such as Applicant's iPod player and iTunes services, do not precede Opposer's 1985 priority date.

Nevertheless, the record shows that Applicant has used the mark APPLE MUSIC since at least June 8, 2015 when it launched the APPLE MUSIC streaming service for publishing and distributing music.[59] APPLE MUSIC provides consumers access to Applicant's music catalog comprising some 60 million songs.[60] Below is a screenshot from Applicant's website showing use of the APPLE MUSIC mark in connection with its streaming music service.[61]

---

[56] La Perle Decl. ¶¶ 8 and 9, 83 TTABVUE 8.

[57] Id. at ¶ 34, 83 TTABVUE 14.

[58] Although Applicant's Registration No. 4088195 recites a variety of entertainment services, including "entertainment services, namely, production of live musical performances," and claims a date of first use as early as March 1, 1981, Applicant was unable to establish its use of the mark for any of these services prior to Opposer's 1985 priority date. *See* TMEP section 903.08: "If more than one item of goods or services is specified in a particular class, the date of first use anywhere and date of first use in commerce do not have to pertain to every item in the class."

[59] La Perle Decl. ¶ 19, 83 TTABVUE 4.

[60] Id.

[61] Ex. 8 to La Perle Decl. ¶ 24, 83 TTABVUE 9 and 201. Opposer objects to this exhibit on the ground that "Internet evidence may not be used to demonstrate the truth of what has been printed" and because it does not include the date and website URL. 89 TTABVUE 56. The objection is overruled inasmuch as La Perle testified to its authenticity and provided the URL and date of image capture. *See* La Perle Decl. ¶ 24, 83 TTABVUE 9.



Applicant also alleges that it has priority because it acquired trademark rights in the mark APPLE from the Beatles' record company, Apple Corps, used in connection with sound and video recordings "dating back to 1968."[62] According to Applicant, "Apple and Apple Corps have produced and distributed sound recordings and films under the APPLE mark since long prior to Opposer's June 5, 1985, claimed date of first use."[63] Applicant argues that it may rely on these purchased rights to establish priority: "Apple is entitled to tack its rights to those of Apple Corps, Apple enjoys absolute priority of rights as between the parties . . . , including with respect to

---

[62] La Perle Decl. ¶ 47, 83 TTABVUE 19.

[63] Applicant's Br., p. 9, 90 TTABVUE 11.

services recited in the Application that are closely related to the production and distribution of sound recordings."[64] We therefore look to Apple Corps' use of the mark APPLE.

### 2.    Apple Corps' use of APPLE on sound and video recordings

In 1963, the musical group The Beatles set up a United Kingdom corporation to produce and distribute the group's music.[65] The original name of the corporation was The Beatles Limited, but the name was changed to Apple Corps Limited, effective February 9, 1968.[66] The Beatles—John Lennon, Paul McCartney, George Harrison, and Ringo Starr—as well as several other well-known musicians, have had their sound and video recordings produced and distributed under the Apple Corps record label and APPLE mark. These other musicians include such well-known recording artists as James Taylor, Mary Hopkin, Badfinger, and Billy Preston.[67]

Apple Corps' Chief Executive Officer, Jeffrey Vaughan Jones, testified that "[s]ince 1968, Apple Corps has continuously used the APPLE word mark in connection with the production and/or distribution of sound recordings and film in the United States."[68] Indeed, Jones testified that "The Beatles recordings are 'evergreen,' meaning versions of The Beatles recordings have been available continuously every year after their original release."[69] Beatles albums bearing the

---

[64] *Id.*

[65] Jones Decl. ¶ 3, 71 TTABVUE 3.

[66] *Id.*

[67] *Id.* at ¶ 8, 71 TTABVUE 4.

[68] *Id.* at ¶ 18, 71 TTABVUE 8.

[69] *Id.* at ¶ 21, 71 TTABVUE 9.

APPLE mark, including albums released on compact disc, continue to be sold up to the present day including both re-releases and new compilations.[70]

The Jones declaration includes a number of examples establishing that Apple Corps has used the word marks APPLE (as well as APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS, and marks comprising apple designs) on sound and video recordings since August 1968.[71] Representative examples of sound recordings showing use of the APPLE mark, released between 1968 and 1975, are shown below.



[72]

---

[70] *Id.* at ¶ 25, 71 TTABVUE 14.

[71] *Id.* at ¶ 22, 71 TTABVUE 9-10 and 45.

[72] Ex. 10 to Jones Decl. ¶ 34, 71 TTABVUE 22 and 174.

Opposition No. 91229891





---

[73] Ex. 3 to Jones Decl. ¶ 23, 71 TTABVUE 11 and 54.

[74] Ex. 10 to Jones Decl. ¶ 34, 71 TTABVUE 22 and 140.



75



76

As shown above, the APPLE mark was used on a variety of formats, including vinyl records, cassette tapes, and 8-Track cartridges. New releases of APPLE recordings halted for a time in 1975 but "substantial quantities of those sound recordings issued under the Apple Corps label and bearing the APPLE word mark

---

[75] The wording "apple records" appears below the image of an apple. Ex. 3 to Jones Decl. ¶ 23, 71 TTABVUE 11 and 59.

[76] Ex. 10 to Jones Decl. ¶ 34, 71 TTABVUE 22 and 175.

continued to be sold around the world (including the United States) throughout the 1970s and 1980s."[77] For example, according to Jones, George Harrison's *All Things Must Pass* album, shown below, was first released in 1970 but was available on cassette tapes up to at least December 31, 1985.[78]



---

[77] Jones Decl. ¶ 35, 71 TTABVUE 26.

[78] The wording "apple" appears below the image of an apple. *Id.* at ¶¶ 34 and 37, 71 TTABVUE 22 and 26.

In addition, the album *Shaved Fish*, shown below, by John Lennon and The Plastic Ono Band was re-released in 1983 under the APPLE mark and thus was available in the 1980s as well.[79]



Apple Corps also was involved in the production and distribution of several films featuring music by The Beatles. The films have been shown in theaters and on television in the United States since the 1960s. Several of the films were released on VHS when the format became available, and all or most of them are now sold on DVD

---

[79] The wording "apple records" appears below the image of an apple. *Id.* at ¶ 39, 71 TTABVUE 28.

in the United States under the APPLE word mark.[80] For example, *Magical Mystery Tour* was released in VHS format in the United States in or around 1988 and *Yellow Submarine,* was released in VHS format in the United States in or around 1999:[81]



Jones testified that, in 1970, Apple Corps released a documentary film titled *Let It Be* in the United States. The film documented The Beatles rehearsing and recording songs for their album *Let It Be.* In 1981, the film was released in the United States in VHS and Betamax formats, and on VideoDisc.[82] The *Let It Be* recordings

---

[80] *Id.* at ¶ 41, 71 TTABVUE 29.

[81] The packaging for the *Magical Mystery Tour* video includes the wording "Apple" below the image of an apple. The packaging for the *Yellow Submarine* video includes both the wording "Apple" below the image of an apple and "APPLE FILMS." Jones Decl. ¶ 41 and Ex. 11, 71 TTABVUE 29 and 242-46.

[82] Jones Decl. ¶ 42, 71 TTABVUE 30-31.

were being sold as late as September 30, 1984 as evidenced by Applicant's confidential royalty reports covering the periods June 30, 1984 and September 30, 1984.[83] The APPLE word mark appears on the covers of the VHS and VideoDisc packaging, shown below.[84]



---

[83] *Id.* at ¶ 42 and Ex. 13 (confidential), 71 TTABVUE 30-31 and 72 TTABVUE.

[84] Ex. 12 to Jones Decl. ¶ 42, 71 TTABVUE 250-56.

Opposition No. 91229891



Apple Corps released the video recording *The Beatles Anthology* in the mid-1990s

as an eight-part VHS video cassette box set, and in April 2003 Apple Corps released

it as a five-disc DVD set.[85] The VHS cassette box set and the five-disc DVD set bearing

the APPLE word mark are shown below:



The sale of music and videos bearing the APPLE mark continued into the 1990s,

with many of the previously released albums being released on compact disc. Jones

testified: "[f]or example, in 1993, CD versions of *The Beatles 1962-1966* and *The*

---

[85] On the VHS and DVD packaging, the wording "Apple" appears below the image of an apple. Jones Decl. ¶ 44 and Ex. 14, 71 TTABVUE 31 and 258-66.

*Beatles 1967-1970,* known as the 'Red' and 'Blue' albums, respectively, were released

for the first time in the United States."[86] The compact disc cases are shown below.[87]



---

[86] *Id.* at ¶ 25, 71 TTABVUE 14-16.

[87] The wording "Apple" appears below the image of an apple. Ex. 4 to Jones Decl. ¶ 25, 71 TTABVUE 61-67.



In 1994, a new album using archive material, *The Beatles: Live at the BBC,* was released in the United States. This release featured the APPLE word mark on the compact disc packaging, as depicted below:[88]

---

[88] The wording "Apple" appears below the image of an apple. Jones Decl. ¶ 25, 71 TTABVUE 16-17.

Opposition No. 91229891



In 1995 and 1996, Apple Corps released three new compilation albums called *The Beatles Anthology Parts I, II,* and *III.*[89] The albums were released under the APPLE mark:[90]

---

[89] Jones Decl. ¶ 28, 71 TTABVUE 20.

[90] The wording "Apple" appears below the image of an apple. Ex. 6, to Jones Decl. ¶ 28, 71 TTABVUE 75-89.

- 39 -
**Appx00039**



In November 2000, Apple Corps released another new Beatles compilation album

titled "*1*" which featured Beatles songs that had reached number one on the United

Kingdom or United States music charts upon their initial releases between 1963 and 1970.[91] The album was released under the APPLE mark as shown below:[92]





The film *Help!* was released in DVD format as a double disc in the United States in or around 2007:[93]

---

[91] Jones Decl. ¶ 29, 71 TTABVUE 21.

[92] The wording "Apple" appears below the image of an apple. Ex. 7 to Jones Decl. ¶ 29, 71 TTABVUE 90-94.

[93] *Id.* at ¶ 41, 71 TTABVUE 29 and 247-50.



In September 2009, Apple Corps reissued the entire original Beatles catalog, featuring the APPLE word mark, in a digitally remastered form on compact disc in the United States.[94]

Apple Corps, acting through licensees, also operates the Official Beatles Store ecommerce websites directed at users in North America, Europe, Japan, and Brazil. Jones testified that the website, launched in 2006, offers for sale various goods

---

[94] *Id.* at ¶ 30, 71 TTABVUE 21.

bearing the APPLE mark, including compact discs containing Beatles recordings and films.[95]

In 1997, Apple Corps registered the mark APPLE in typed form for "Gramophone records featuring music; [pre-recorded audio tape cassettes featuring music;] audio compact discs featuring music [; pre-recorded video tape cassettes featuring music] [; video laser discs featuring music]," claiming a date of first use of August 1968.[96] In 2007 Apple Corps registered the mark APPLE in standard characters for, inter alia, "musical sound recordings."[97]

We find Applicant's testimony and evidence establish Apple Corps' continuous use of the mark APPLE, for use in connection with musical sound recording and films featuring music, since 1968.

Opposer nevertheless argues that Apple Corps ceased use of the mark in 1976 and did not resume use until after Opposer's first use of his mark.[98] Opposer primarily relies on a Wikipedia page about Apple Records discography which states: "After EMI's contract with the Beatles ended in 1976, the Apple label was finally wound up. The label was reactivated in the 1990s."[99] The Wikipedia page is admissible for the limited purpose of demonstrating what has been printed, but not for the truth of what has been printed. *Safer,* 94 USPQ2d at 1039. The Wikipedia page thus falls far short

---

[95] *Id.* at ¶ 32, 71 TTABVUE 22.

[96] Registration No. 2034964, issued February 4, 1997 and renewed. The goods in brackets were deleted from the registration upon renewal but are listed here for historical context.

[97] Registration No. 3317089, based on Section 44(e), issued October 23, 2007 and renewed.

[98] Opposer's Br., p. 43, 89 TTABVUE 44.

[99] *Id.* at 42, 89 TTABVUE 43.

of establishing that Apple Corps ceased use of the mark between 1976 and the 1990s. *See Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, 107 USPQ2d 1750, 1759 (TTAB 2013) (search results are only probative of what they show on their face, not for the truth of the matters contained therein), *aff'd*, 565 F. App. 900 (Fed. Cir. 2014) (mem.).

Opposer also argues that Applicant has not established its priority because "Apple Corps Ltd. has no documents showing that Apple Corps Ltd or its company in the U.S., Apple Records, Inc., manufactured goods in the U.S. under [the] standard character mark APPLE during period January 1, 1983 - December 31, 1985."[100] This argument is unpersuasive. Jones testified that Capitol Records, under license from Apple Corps, manufactured and distributed many of Apple Corps' recordings bearing the APPLE mark in the United States until at least 1989.[101]

In fact, between 1979 and 1989, Apple Corps was involved in suit against Capital Records and EMI over royalty payments.[102] A 1969 agreement between Apple Corps and EMI "granted Apple the sole and exclusive right to manufacture, distribute, advertise and sell Beatles' recordings." *Apple Records, Inc., Apple Corps Ltd., George Harrison, Richard Starkey and Yoko Ono Lennon, v. Capitol Records, Inc. and E.M.I. Records Ltd.,* 137 A.D.2d 50, 52, 529 N.Y.S.2d 279, 280 (N.Y. App. Div. 1988).[103] A second agreement between Apple Corps and Capitol covered manufacturing and

---

[100] Opposer's Br., p. 42, 89 TTABVUE 43.

[101] Jones Decl. ¶¶ 19 and 26, 71 TTABVUE 9 and 19-20.

[102] *Id.* at ¶ 26, 71 TTABVUE 20.

[103] According to the opinion, former Beatles' member Paul McCartney chose not to participate in this action.

distribution of records by Capitol. *Id.* In the action, Apple Corps et al. sought to recoup royalties diverted by Capital and EMI up through the mid-1980s, and to terminate their rights to manufacture and distribute Beatles' recordings. *Id.* The parties settled the suit in November 1989.[104] Clearly, between 1979 and 1989 Apple Corps had not abandoned its interest in producing and distributing music.

Moreover, whether Applicant manufactured goods in the United States is not the test for determining priority. Instead, the issue is whether Applicant's testimony and evidence, as a whole, establishes priority. The United States Court of Appeals for the Federal Circuit has been clear as to how the Board should consider the evidentiary record regarding claims of priority:

> [W]hether a particular piece of evidence by itself establishes prior use is not necessarily dispositive as to whether a party has established prior use by a preponderance. Rather, one should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use. The TTAB . . . [should not] dissect[] the evidence to the point . . . [of] refus[ing] to recognize, or . . . overlook, the clear interrelationships existing between the several pieces of evidence submitted.

*West Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1663 (Fed. Cir. 1994). The Board, moreover, has also recognized that "[o]ral testimony, if sufficiently probative, is normally satisfactory to establish priority of use . . . , and the testimony of a single witness may be adequate to establish priority." *DeVivo v. Ortiz*, 2020 USPQ2d 10153, *3 (TTAB 2020).

---

[104] Jones Decl. ¶ 26, 71 TTABVUE 20.

Sales of Apple Corps products ebbed and flowed over the years as musical tastes changed and musical formats evolved. Applicant's evidence regarding its use of the APPLE mark lacks extensive documentary support as to sales figures, particularly as to the period between the late 1970s and the early 1980s. Applicant relies primarily on the testimony of Jones, the Chief Executive Officer of Apple Corps since 2007, which details Apple Corps' use of the mark and provides images of recordings and films bearing the mark. Jones' testimony is not accompanied by the type or quantity of documentary evidence that one would expect to be readily available to show the use of a mark that Applicant claims was used in connection with the "production and distribution of some of the *most famous sound recordings ever created*[.]"[105] Oral testimony is, of course, always "strengthened by corroborative documentary evidence," *Exec. Coach Builders, Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1184 (TTAB 2017), but "[w]hile it is certainly preferable for a party's testimony to be supported by corroborating documents, the lack of documentary evidence is not fatal." *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1931 (TTAB 2011). The critical portions of Jones' testimony are clear, and are neither contradicted by Opposer nor "indefinite and internally inconsistent." *Cf. Exec. Coach Builders*, 123 USPQ2d at 1182-85 (rejecting testimony of applicant's principal regarding alleged prior use because it was both indefinite and inconsistent on a number of topics). The record provides no sufficient reason for us to disregard or discount Jones' testimony on the Apple Corps' use of the mark going back to 1968. His testimony establishes, at a minimum, that Applicant used the APPLE mark on

---

[105] *Id.* at ¶ 4, 71 TTABVUE 3.

sound recordings and films featuring music at least as early as 1968, prior to Opposer's priority date, and that Applicant has not abandoned the mark.

### 3. Applicant's purchase of the Apple Corps marks

In 2007, Applicant acquired all of Apple Corps' trademark and service mark rights in its APPLE marks, including Registration Nos. 2034964 and 3317089.[106] The 2007 agreement between Applicant and Apple Corps assigned to Applicant all Apple Corps' APPLE marks, which were defined as "any Trademarks of [Apple] Corps or any Apple Corps Group Company that utilize or feature the word 'apple' in any form . . . and/or any symbols, designations, signs, logos, depictions or representations of an apple, in whole or in part[.]"[107] Applicant then granted back to Apple Corps a license to continue using the marks, which use inures to Applicant's benefit.[108] Applicant seeks to gain priority over Opposer by tacking rights Applicant obtained from Apple Corps in the APPLE mark to Applicant's APPLE MUSIC mark.

### 4. Whether Applicant Can Gain Priority by Tacking

"'[T]acking' is a defense that must be pleaded to put opposer on notice of new matter that applicant is placing at issue (i.e., a mark previously used by applicant that is the legal equivalent of applicant's opposed mark, and that provides the basis for applicant to claim prior use)." *H.D. Lee Co., Inc. v. Maidenform, Inc.,* 87 USPQ2d 1715, 1720 (TTAB 2008). Applicant pleaded, as an affirmative defense, priority and ownership of the two registrations comprising APPLE marks purchased from Apple

---

[106] *Id.* at ¶¶ 47 and 48, 71 TTABVUE 19.

[107] Confidential 2007 Settlement Agreement, clause 1.1, 85 TTABVUE 6.

[108] Jones Decl. ¶ 48, 71 TTABVUE 19.

Corps, Registration Nos. 2034964 and 3317089, and use of the APPLE mark since August 1968. We find Applicant properly pleaded the defense of tacking.

The fact that Applicant seeks to establish priority via assignment of rights from Apple Corps does not diminish the showing of priority. *See Lone Star Steakhouse & Saloon v. Alpha of Va.*, 43 F.3d 922, 33 USPQ2d 1481, 1487 (4th Cir. 1995) (while defendant had seniority over plaintiff's own use, plaintiff obtained an assignment of rights from a third user who was senior to defendant; hence, plaintiff became the senior user).

The Supreme Court described tacking succinctly in *Hana Financial*:

> Recognizing that trademark users ought to be permitted to make certain modifications to their marks over time without losing priority, lower courts have provided that, in limited circumstances, a party may clothe a new mark with the priority position of an older mark. This doctrine is called "tacking," and lower courts have found tacking to be available when the original and revised marks are "legal equivalents" in that they create the same, continuing commercial impression.

*Hana Fin., Inc. v. Hana Bank,* 135 S. Ct. 907, 113 USPQ2d 1365, 1366 (2015) quoted in *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.,* 797 F.3d 1363, 116 USPQ2d 1129, 1132 (Fed. Cir. 2015).

As stated by the Supreme Court, two marks are "legal equivalents" if they "create the same, continuing commercial impression so that consumers consider both as the same mark." *Hana Fin.*, 113 USPQ2d at 1367. (citation and internal quotation marks omitted); *see also Ilco Corp. v. Ideal Sec. Hardware Corp.*, 527 F.2d 1221, 1224 (CCPA 1976) ("The law permits a user who changes the form of its mark to retain the benefit of its use of the earlier form, without abandonment, if the new and old forms create

the same, continuing commercial impression."). "Tacking is occasionally permitted where the two marks, though differing slightly in their literal meaning or grammatical presentation, nevertheless possess the same connotation in context." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1869 (Fed. Cir. 1991).

The standard for tacking is very strict and tacking in general is permitted only in "rare instances." *Van Dyne-Crotty,* 17 USPQ2d at 1869; *Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 USPQ2d 1629, 1635 (TTAB 2007). "[T]he standard of legal equivalence used in reviewing efforts to 'tack' the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. . . . [E]ven if the two marks are confusingly similar, they still may not be legal equivalents." *Van Dyne-Crotty,* 17 USPQ2d at 1868.

The addition of even one word can make a significant difference in commercial impression. *See Am. Paging Inc. v. Am. Mobilphone Inc.,* 13 USPQ2d 2036, 2039 (TTAB 1989) *aff'd mem.*, 923 F.2d 869, 17 USPQ2d 1726 (Fed. Cir. 1990) (even where both marks "are dominated by the word AMERICAN and the same star and double bar design," AMERICAN MOBILPHONE and design and AMERICAN MOBILPHONE PAGING and design found to be "legally different"). In *American Paging*, the Board noted that the registrant provided both telephone and paging services, therefore the addition of PAGING provided more information to prospective consumers: "Customers who simply saw the mark AMERICAN MOBILPHONE and design and who simply utilized registrant's mobile phone services, would not know

they were dealing with a company that also rendered paging services. *Am. Paging,* 13 USPQ2d at 2039.

But, the addition of a single word does not make a significant difference in all cases. In *Am. Sec. Bank v. Am. Sec. & Trust Co.*, 571 F.2d 564, 197 USPQ 65 (CCPA 1978) the United States Court of Customs and Patent Appeals held that "American Security" and "American Security Bank" were legal equivalents. The Court reasoned that "[w]hile AMERICAN SECURITY BANK is a distinguishable, three-word mark, the word 'bank' is purely descriptive and adds nothing to the origin-indicating significance of AMERICAN SECURITY. Customers using the services would know they were dealing with a bank." *Id.* at 67. Similarly, in *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 USPQ2d 1645, (TTAB 2010), the Board held CAPITAL CITY BANK and CAPITAL CITY BANK GROUP to be essentially the same mark because they "engender the same continuing commercial impression." *Id.* at 1656.

We find the facts in the present case are more similar to those in *American Security Bank* and *Citigroup* than to those in *American Paging*. The addition of the term MUSIC does not create a different commercial impression because it is generic when used in connection with sound recordings and the production and distribution of sound recordings. Consumers would know they were dealing with a music company, particularly because Applicant's licensee, Apple Corps, has used variations of the APPLE mark, with APPLE as the dominant element, to identify its musical recordings, which inures to Applicant's benefit, and because Applicant uses APPLE MUSIC to identify its service of publishing and distributing sound recordings.[109]

---

[109] La Perle Decl. ¶ 19, 83 TTABVUE 4.

Moreover, Apple Corps' long use of other generic terms with APPLE, i.e., APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS, and the representation of an apple, suggests that consumers already are accustomed to seeing slight variations in Apple Corps' APPLE mark. Given the progression of musical formats from vinyl records, to 8-track cartridges, to cassettes tapes, to compact discs, and now to streaming services, it would not be unexpected for a company to update their mark to incorporate more modern and inclusive terminology by adopting the term MUSIC in place of terms such as RECORDS or FILMS. Modernization of a mark which retains the commercial impression of the previous version does not result in any abandonment or loss of priority in the mark. *See Jack Wolfskin,* 116 USPQ2d at 1134 (modernized version of mark creates the same continuing commercial impression as the registered mark); *In re Flex-O-Glass, Inc.*, 194 USPQ 203, 205 (TTAB 1977) (slight "modernization" of design mark does not prevent tacking on for priority).

We find that when used in connection with sound recordings and the production and distribution of sound recordings, the marks APPLE and APPLE MUSIC are "legal equivalents" because they both create the "same, continuing commercial impression so that consumers consider both as the same mark." *Hana Fin.*, 135 S. Ct. at 910.

Tacking also requires that the goods or services marketed under the earlier mark must be "the same or similar" as the goods or services marketed under the later mark. *See, e.g., In re Baroid Drilling Fluids Inc. v. Sun Drilling Prods.*, 24 USPQ2d 1048, 1051 (TTAB 1992); *Big Blue Prods. Inc. v. Int'l Bus. Machs. Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991). Here, we the find the sound recordings identified in Applicant's

registrations to be "the same or similar" for purposes of tacking as the production and distribution of sound recordings identified in Applicant's application. *Baroid,* 24 USPQ2d at 1052. That is, sound recordings are inseparable from the production and distribution of sound recordings. As Jones testified:

> Apple Corps has been involved in the production and distribution of some of the *most famous sound recordings ever created* . . . . Apple Corps and/or affiliates and licensees produced and distributed sound recordings under its Apple Corps record label and APPLE word mark for The Beatles and other famous recording artists, and such sound recordings were (and many continue to be) distributed in the United States and worldwide.[110]

Accordingly, we find Applicant may claim priority as to the mark APPLE for production and distribution of sound recordings as early as August 1968.

## VI.    Conclusion

Opposer has established that he owns an inherently distinctive mark, APPLE JAZZ, which he uses in connection with "arranging, organizing, conducting, and presenting concerts and live musical performances." Opposer's earliest date of use of his APPLE JAZZ mark is June 13, 1985. Applicant, by tacking the use of the mark APPLE by Apple Corps, has established use of the mark APPLE MUSIC for the "production and distribution of sound recordings" as early as August 1968.

In view of Applicant's earlier priority date, Opposer has not established the necessary element of priority required to prevail.

## VII.    Decision

The opposition is dismissed.

---

[110] Jones Decl. ¶ 4, 71 TTABVUE 3-4.

> THIS OPINION IS NOT A
> PRECEDENT OF THE TTAB

Hearing: November 5, 2020                    Mailed: August 9, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*Charles Bertini*
*v.*
*Apple, Inc.*

———

Opposition No. 91229891

———

On Request for Reconsideration

———

James Bertini, for Charles Bertini.

Joseph Petersen of Kilpatrick Townsend & Stockton LLP, for Apple, Inc.

———

Before Shaw, Kuczma and Hudis,
    Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

## I.  Background

Opposer, Charles Bertini, filed a timely request for reconsideration of the Board's decision dated April 16, 2021, dismissing the opposition. Applicant filed a brief in response to the request for reconsideration, and Opposer filed a reply brief.[1] Although Trademark Rule 2.129(c), 37 C.F.R. § 2.129(c), makes no provision for the filing of a reply brief on a request for reconsideration of a decision issued after final hearing, we

---

[1] 102-104 TTABVUE.

exercise our discretion and consider the brief. *See, e.g., Kappa Books Inc. v. Herbko Int'l Inc.*, 60 USPQ2d 1765, 1766 n.2 (TTAB 2001), *rev'd on other grounds,* 308 F.3d 1156, 64 USPQ2d 1375 (Fed. Cir. 2002).

The premise underlying a request for reconsideration under Trademark Rule 2.129(c) is that, based on the evidence of record and the prevailing authorities, the Board erred in reaching the decision it issued. It is not to be a reargument of the points presented in the movant's brief on the case, nor is it to be used to raise new arguments or introduce additional evidence. Rather, the request should be limited to a demonstration that based on the facts before it and the applicable law, the Board's decision is in error and requires appropriate change. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE § 543 (June 2021) and cases cited therein.

## II.   Analysis

Opposer maintains that his opposition to Application Serial No. 86659444 should be sustained on the ground of priority and likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). We disagree and address each of Opposer's arguments in turn.

### A.  The Jones testimony

Opposer first argues that the "Board disregarded Opposer's objections about the continuity of use [of the] APPLE mark for products[.]"[2] In particular, Opposer objects to the testimony of Jeffrey Vaughan Jones, CEO of Apple Corps Limited, on the grounds that it was contradicted by Opposer's objections and that it was "indefinite

---

[2] Opposer's Request for Reconsideration, p. 3, 102 TTABVUE 4.

and internally inconsistent."[3] Opposer objected to images of record albums and other musical recordings discussed by Mr. Jones because some of the images were taken from the internet.

We disagree with Opposer's objection that the evidence is unreliable merely because it was taken from the internet. Jones authenticated the images as being representative of Apple Corps products sold during the time periods in question. The mere fact that the images were taken from the internet does not diminish their evidentiary value where, as here, they have been authenticated by a credible witness. *See Spiritline Cruises LLC v. Tour Mgmt. Services, Inc.*, 2020 USPQ2d 48324, at *4 (TTAB 2020) (Opposer used appropriate witness testimony to authenticate internet documents and lay the foundation to support the intended evidentiary use).

Regarding Opposer's allegation that Jones' testimony is "indefinite and internally inconsistent," we disagree with this characterization as well. The Board's decision recognized that Jones' testimony was lacking in the "type or quantity of documentary evidence that one would expect to be readily available" for such famous recordings.[4] Nevertheless, based on the entirety of the record, we found that "[t]he record provides no sufficient reason for us to disregard or discount Jones' testimony on Apple Corps' use of the mark going back to 1968."[5] Opposer's quibbles with some of Jones' wording and gaps in his knowledge regarding precise dates of distribution do not undermine or rebut Jones' testimony. As we noted in our decision, "Opposer was free to

---

[3] *Id.* at 21, 102 TTABVUE 22.

[4] Opinion of April 16, 2021, p. 46, 101 TTABVUE 46.

[5] *Id.*

cross-examine Jones regarding Apple Corps' and records if he was dissatisfied with Jones' declaration. Opposer chose not to do so."[6] Opposer will not now be heard to complain about testimony he chose not to address.

B.  Pleading of Applicant's tacking defense

Opposer next argues that Applicant failed to establish its tacking defense because it failed to plead that the term MUSIC in the mark APPLE MUSIC is generic for Applicant's music-related services. According to Opposer, "[t]he genericness of a portion of the APPLE MUSIC mark, the term 'music', is not listed in the Applicant's defenses[.]"[7] We disagree that Applicant failed to plead and establish its tacking defense.

The defense of tacking requires that the earlier-used mark and the later-used mark be "legal equivalents." Marks are legally equivalent if they create "'the same, continuing commercial impression' and the later mark [does] not materially differ from or alter the character of the mark attempted to be 'tacked,'" thereby causing "consumer[s] [to] consider both as the same mark." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991) (citation omitted).

Applicant's answer asserted the defense of tacking by claiming "trademark rights in the mark APPLE in the field of music, musical performances, and musical, cultural and entertainment events that predate those of Opposer[.]"[8] In addition, the Board's subsequent grant of partial summary judgment found that Applicant had properly

---

[6] *Id.* at 11-12, 101 TTABVUE 11-12.

[7] Opposer's Request for Reconsideration, p. 3, 102 TTABVUE 4.

[8] Applicant's Answer, p. 3, 9 TTABVUE 4.

pleaded the defense of tacking. The Order stated: "We find Applicant's assertion of prior use, based on its claim to the dates of use in the registrations of its APPLE mark, as asserting an affirmative defense to Opposer's alleged priority of use sufficient to provide Opposer proper notice of the 'tacking' defense."[9] In fact, the Board's order summarized Applicant's argument that the APPLE element of its mark was more distinct than the MUSIC element:

> (1) the distinct portion of the APPLE MUSIC mark is identical to the mark in its prior registrations; (2) consumers are likely to focus on the "APPLE" component of the mark because it is among the most famous marks in the world; and (3) the goods and services in the involved application and prior registrations are substantially equivalent.[10]

Thus, Opposer was on notice that the issue of the distinctiveness, or lack thereof, of the term MUSIC was at issue with regard to the tacking defense. It was not necessary that Applicant define the precise degree of descriptiveness of the term MUSIC in APPLE MUSIC. Rather, it is sufficient that Opposer was on notice that Applicant intended to rely on the APPLE element to establish tacking. *See Ohio State Univ. v. Ohio Univ.*, 51 USPQ2d 1289, 1292 (TTAB 1999) (primary purpose of pleadings "is to give fair notice of the claims or defenses asserted").

C. Whether MUSIC is generic in reference to Applicant's goods and services

Opposer argues the Board's finding that the term MUSIC in APPLE MUSIC is generic when used in connection with Applicant's musical sound recordings and the production and distribution of musical sound recordings "is not based on substantial

---

[9] Board's order granting partial summary judgment, p. 4, 45 TTABVUE 4.

[10] *Id.* at 7, 45 TTABVUE 7.

evidence."[11] According to Opposer, "[t]o convince the Board that the term "music" is generic, Applicant totally relies on the fact of disclaiming [sic] term 'music' in its application to the USPTO."[12] Opposer is simply wrong.

The record includes ample evidence to support the Board's finding that MUSIC is generic for Applicant's musical sound recordings and the production and distribution of musical sound recordings. Applicant submitted a dictionary definition of the term "music" which defines the term as, inter alia, "vocal, instrumental, or mechanical sounds having rhythm, melody, or harmony."[13] Applicant also introduced more than twenty-five third-party registrations for marks incorporating the term MUSIC for various goods and services relating to music.[14] All of these registrations— encompassing goods such as musical recordings or services such as music recording, production, distribution, streaming, and the like—disclaim the term MUSIC. In addition, Applicant has disclaimed MUSIC in a number of its other APPLE MUSIC registrations.[15]

The definition and third-party registrations support the finding that MUSIC is generic when used in connection with Applicant's goods and services. *See Juice*

---

[11] Opposer's request for reconsideration, p. 10, 102 TTABVUE 11.

[12] *Id.*

[13] Applicant's sixth notice of reliance, https://www.merriam-webster.com/dictionary/music, 74 TTABVUE 241-44.

[14] Applicant's fourth notice of reliance, exhs. 50-77, 70 TTABVUE 200-78.

  In its request for reconsideration, Opposer identified for the first time a number of third-party registrations containing the term MUSIC which purportedly registered without a disclaimer. 102 TTABVUE 12. These registrations are manifestly untimely and have not been considered. *Hole In 1 Drinks, Inc. v. Michael Lajtay*, 2020 USPQ2d 10020, at *2 (TTAB 2020) (exhibits attached to brief not considered).

[15] Applicant's fourth notice of reliance, exhs. 11-13, 70 TTABVUE 69-77.

*Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015). (third-party registrations alone may be relevant, in the manner of dictionary definitions, "to prove that some segment of the [marks] has a normally understood and well recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak.") (internal quotation marks omitted).

Moreover, a disclaimer is an admission that a term is at least descriptive. *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972) (disclaimer is an admission of descriptiveness at the time the disclaimer was made). *See also* TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1213.03(b) (July 2021) ("If a mark is comprised in part of matter that, as applied to the goods or services, is generic or does not function as a mark, the matter must be disclaimed to permit registration on the Principal Register[.]").

Opposer nevertheless argues that "[t]he Board didn't give any consideration to the fact that "music" is only suggestive for the Services whereas Opposer disputed the alleged genericness of term "music" stating that it only suggests the Services."[16] We find Opposer's argument strains credulity. It takes no great leap of deduction to find that MUSIC is generic when used in connection with musical sound recordings and the production and distribution of musical sound recordings. Indeed, virtually the entire record before us supports the determination that MUSIC is generic for Applicant's musical sound recordings and the production and distribution of musical sound recordings.

---

[16] Opposer's request for reconsideration, p. 4, 102 TTABVUE 4.

We have long held that terms which refer to the content of a particular media are generic for goods or services containing or providing that content. *See In re Recorded Books Inc.,* 42 USPQ2d 1275, (TTAB 1997) (RECORDED BOOKS generic for pre-recorded audio tape cassettes featuring literary works); *In re Harcourt Brace Jovanovich, Inc.*, 222 USPQ 821 (TTAB 1984) (LAW & BUSINESS generic for arranging and conducting business law seminars, being no more than a designation of the subject matter of these seminars); *In re Conus Commc'ns Co.*, 23 USPQ2d 1717 (TTAB 1992) (ALL NEWS CHANNEL generic for television broadcasting services); *In re Hotels.com, L.P.*, 87 USPQ2d 1100, 2008 WL 779325 (TTAB 2008), *decision aff'd*, 573 F.3d 1300, 91 USPQ2d 1532 (Fed. Cir. 2009) (HOTELS.COM generic for hotel reservation web service); *In re Reed Elsevier Props. Inc.*, 482 F.3d 1376, 82 USPQ2d 1378 (Fed. Cir. 2007) (LAWYERS.COM generic for web site providing access to and information about lawyers); *see also Kegan v. Apple Comput., Inc.*, 42 USPQ2d 1053 (N.D. Ill. 1996) (GUIDE is generic for publications).

Here, MUSIC is at least as generic as any of the terms used to refer to content in the cases discussed above, if not more so. Music is the sine qua non of musical sound recordings and the production and distribution of musical sound recordings. Simply put, consumers do not just buy physical sound recordings, they buy music. The format of the music has changed over time—from phonographs, to cassettes, to CD's, and now to digital streaming—but the music stays the same, and that is what consumers are buying. Accordingly, we find no error in the Board's determination that the term MUSIC in the mark APPLE MUSIC is generic for musical sound recordings and the production and distribution of musical sound recordings.

D. Whether APPLE and APPLE MUSIC create the same, continuing commercial impression

In light of the Board's finding that MUSIC is generic for Applicant's goods and services, it also was not error to find that APPLE and APPLE MUSIC create the same, continuing commercial impression. As we noted in the decision, the U.S. Court of Appeals for the Federal Circuit, has stated that "[t]acking is occasionally permitted where the two marks, though differing slightly in their literal meaning or grammatical presentation, nevertheless possess the same connotation in context." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1869 (Fed. Cir. 1991). Such is the case here.

When used in connection with Applicant's goods and services, both APPLE and APPLE MUSIC create the same commercial impression: an entity named APPLE that is the source of musical sound recordings. Opposer nevertheless argues that "Applicant's customers regard APPLE and APPLE MUSIC as different marks. APPLE and APPLE MUSIC are not confusingly similar and therefore not legal equivalents, because '[p]urchasers seeing these two marks would clearly differentiate them and would simply not consider them to be the same mark.'"[17] But Opposer provides no testimony, surveys, or other evidence to support this conclusion. A party's argument is no substitute for evidence. *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 76 USPQ2d 1616, 1622 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."); *Martahus v. Video Duplication Servs. Inc.,* 3 F.3d 417, 27 USPQ2d 1846, 1849 (Fed. Cir. 1993) ("[M]ere attorney arguments unsubstantiated

---

[17] Opposer's request for reconsideration, p. 17, 102 TTABVUE 17.

by record evidence are suspect at best"). Thus, Opposer's often repeated argument that APPLE MUSIC is "bizarre and incongruous"[18] simply has no evidentiary support.

Opposer also relies on *Am. Paging Inc. v. Am. Mobilphone Inc.*, 13 USPQ2d 2036 (TTAB 1989), to support his argument that the presence of MUSIC in APPLE MUSIC creates a different commercial impression, arguing, "[t]he addition of MUSIC also provides more information to prospective consumers: consumers who simply buy The Beatles records with [sic] APPLE mark during decades would not expect anything more than records when they see [sic] APPLE mark."[19] Opposer's contention that consumers "would not expect anything more than records" is flatly contradicted by the evidence which shows that Apple Corps long produced music in other formats, including audio tapes, video tapes, CDs, and laser discs. Moreover, we simply disagree that *American Paging* is controlling authority.

In *American Paging*, the Board stated that "the mark AMERICAN MOBILPHONE PAGING and design conveys more information to potential customers than does the mark AMERICAN MOBILPHONE and design." *Id.* at 2039. That is, "[c]ustomers who simply saw the mark AMERICAN MOBILPHONE and design and who simply utilized registrant's mobile phone services, would not know they were dealing with a company that also rendered paging services." *Id.* Here, consumers familiar with the mark APPLE for musical sound recordings will get no

---

[18] *Id.* at 13, 17, 19, and 20, 102 TTABVUE 14, 18, 20, and 21.

[19] *Id.* at 18, 102 TTABVUE 19.

more information from the mark APPLE MUSIC because the term MUSIC conveys no more information to consumers than they already have.

Instead, we relied on *Am. Sec. Bank v. Am. Sec. & Trust Co.*, 571 F.2d 564, 197 USPQ 65 (CCPA 1978) and *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 USPQ2d 1645 (TTAB 2010), which held that the addition of a highly-descriptive or generic term adds nothing to the origin-indicating significance of the distinctive portion of a mark. As we stated in our decision, "[c]onsumers would know they were dealing with a music company[.]"[20] Accordingly, we see no error in our finding that APPLE and APPLE MUSIC create the same, continuing commercial impression when used in connection with Applicant's goods and services.

E. Whether Applicant may tack its earlier use of APPLE on musical sound recordings to its services

Opposer alleges that the Board erred in allowing Applicant to tack its earlier use of the APPLE mark on "Gramophone records featuring music; [and] audio compact discs featuring music" to Applicant's APPLE MUSIC mark for services identified in the pending application. Opposer argues that for a number of reasons "[t]he Board doesn't take under consideration the fact that the set of the Goods is not substantially identical to [sic] set of the Services."[21]

Opposer first argues that the Board improperly "compared ONE service from a long list of the Services, with 'sound recordings' *that is not even in the list of the Goods*

---

[20] Opinion of April 16, 2021, p. 50, 101 TTABVUE 50.

[21] Opposer's request for reconsideration, p. 8, 102 TTABVUE 9.

and avoided comparing set to set as required by case law recognized by the Board."[22] It was not improper for the Board to refer to Applicant's goods in Registration No. 2034964 ("the '964 registration") as "sound recordings" rather than "Gramophone records featuring music; [pre-recorded audio tape cassettes featuring music;] audio compact discs featuring music [; pre-recorded video tape cassettes featuring music] [; video laser discs featuring music]."[23] Opposer elevates form over substance. The Board may use shorthand to refer to unwieldly identifications, particularly where, as here, the decision devoted more than seventeen pages to discussing Apple Corps' musical sound recordings produced in various formats. *See Grote Indus., Inc. v. Truck-Lite Co.*, 126 USPQ2d 1197, 1202 (TTAB 2018) (for convenience, Board may use shorthand to refer to goods or services of the parties).

Nor was it error for the Board to tack Applicant's earlier use of the APPLE mark on musical sound recordings to only some of Applicant's services. Opposer argues that "Applicant failed to demonstrate that the <u>set of the Services</u> is '*substantially identical*' to the <u>set of the Goods</u>."[24] Opposer appears to be arguing that to establish the defense of tacking, a party must show that all of the goods or services for which registration is sought must be substantially identical to all of the goods or services upon which the mark was earlier used. For support, Opposer points to language in *Big Blue Prods. Inc. v. Int'l Bus. Machs. Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991), which

---

[22] *Id.* at 3, 102 TTABVUE 4.

[23] Although some goods such as audio and video tape cassettes are no longer sold by Applicant and have been deleted from the '964 registration, these goods were in use as of the time periods in question and remain relevant to the overall priority determination.

[24] Opposer's request for reconsideration, p. 3, 102 TTABVUE 4.

states: "the tacking of the use of a mark for certain goods or services onto the use of the same mark for other goods or services for the purposes of obtaining or maintaining a registration should be permitted only when the two sets of goods or services are 'substantially identical.'" *Id.*

We disagree with Opposer's interpretation of *Big Blue Products* that all of the goods and services must be substantially identical. Such an interpretation would require a party to establish priority of use for each and all of its goods or services. This is not required. It is sufficient to find priority as to any goods or services encompassed by the application and registration. *See Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.,* 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *In re i.am.symbolic, llc*, 116 USPQ2d 1406, 1409 (TTAB 2015), *aff'd* 866 F.3d 1315, 123 USPQ2d 1744 (Fed. Cir. 2017). Instead, we interpret the language "two sets of goods or services" in *Big Blue Products* as referring only to those goods or services to and from which a party seeks to tack. As we noted in our earlier decision, "Neither Opposer nor Applicant need prove, and we need not find, priority as to each service listed in the respective recitations of services."[25] Thus, Applicant need only establish priority by tacking its earlier use of the APPLE mark on musical sound recordings to a service encompassed by its application and Opposer's services.

Opposer further argues that the Board erred by using the wrong test for determining whether Applicant could tack its prior use of the APPLE mark on sound recordings to the production and distribution of sound recordings identified in Apple's APPLE MUSIC application. Opposer relies on the "substantially identical" test set

---

[25] Opinion of April 16, 2021, pp. 15-16, 101 TTABVUE 15-16.

out in *Big Blue Products,* 19 USPQ2d at 1075, whereas the Board cited to the "the same or similar" test set forth in *In re Baroid Drilling Fluids Inc. v. Sun Drilling Prods.*, 24 USPQ2d 1048, 1051 (TTAB 1992). Opposer again elevates form over substance. "[T]he tacking doctrine exists for compelling reasons: to protect consumers from being misled about the source of products and facilitate their purchasing decisions." *Hana Fin., Inc. v. Hana Bank,* 735 F.3d 1158, 1168 (9th Cir. 2013), *aff'd,* 574 U.S. 418 (2015). Under either test, consumers will not be misled because Applicant's products are the same as they always have been: musical sound recordings.

"It is well settled that "incremental and gradual changes in a product are normal and expected" and "modernization and style changes are common and expected by buyers." 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 17:24 (5th ed.); RESTATEMENT THIRD, UNFAIR COMPETITION § 30, comment b (1995) ("A change in the kind of goods or services marketed under the trademark is not an abandonment of the trademark owner's priority if the new goods or services are sufficiently related to the original goods or services such that prospective purchasers are likely to perceive the new product as originating from the same source as the original product.").

Our case law similarly holds that "a change in the nomenclature of a product, the formulation or the primary purpose of a product, or even a change in a type of product does not constitute an abandonment of the mark used therewith." *See E.I. Du Pont De Nemours and Co. v. G.C. Murphy Co.,* 199 USPQ 807, 813 (TTAB 1978); *see also Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801, 805 (Fed. Cir. 1984)

(change in formulation of product did not change the "inherent and identifiable character" of the product).

A change from a physical format to a digital format is such a permissible change expected by consumers.[26] As we noted in our decision, in 2015, Applicant "launched the APPLE MUSIC streaming service for publishing and distributing music. APPLE MUSIC provides consumers access to Applicant's music catalog comprising some 60 million songs."[27] Through its APPLE MUSIC service, Applicant is delivering to consumers the same product, musical sound recordings, as those identified in the '964 registration. Only the format of the musical recordings have changed from those set

---

[26] Indeed, the USPTO has recognized the problem of evolving technology and static trademark registrations by establishing The Technology Evolution Pilot Program which allows registrants to update the terminology in their registrations without filing new applications. *See Announcement of Pilot Program to Allow Amendments to Identifications of Goods and Services in Trademark Registrations Due to Technology Evolution* at http://www.uspto.gov/sites/default/files/documents/Technology_Evolution_Pilot_Program.docx. As stated by the USPTO:

> We have initiated a pilot program that allows certain trademark owners to amend the goods/services identified in their trademark registrations. You may be able to participate if you provide the same fundamental goods/services through an updated means, method, or format. For example, if your registration identifies your goods as "printed children's books," you may be eligible to amend the goods to "downloadable electronic children's books" if you no longer provide the books in a printed format.

(Https://www.uspto.gov/trademarks/maintain/amending-your-registration-s-goodsservices-when).

The pilot program is only available to registrants that no longer make the outdated goods, and the pilot program includes a period for public comment. Nevertheless, the program recognizes that content in given format may remain the same even if the format is later replaced by a newer one. For example, the pilot guidelines state that "[a]n amendment would be permitted from 'phonograph records featuring music' in International Class 9 to 'providing on-line music, not downloadable' in International Class 41, which is a service of providing content in a new manner, i.e., 'on-line.'" *Id.*

[27] Opinion of April 16, 2021, p. 25, 101 TTABVUE 25.

forth in the '964 registration, i.e., gramophone records and audio compact discs featuring music to streaming music files. The music is still the same and comes from the same source. As we noted, "sound recordings are inseparable from the production and distribution of sound recordings."[28] Thus, under either test for tacking goods or services, "substantially identical" or "the same or similar," Applicant's products are the same: musical sound recordings.

Here, the record establishes that Applicant is currently producing and distributing the very same Beatles albums that it has sold under the APPLE mark since the late 1960s. As we noted in our decision, "Jones testified that 'The Beatles recordings are 'evergreen,' meaning versions of The Beatles recordings have been available continuously every year after their original release.'"[29] The only difference between Applicant's goods and services is the change in the format in which the music is presented. Accordingly, Opposer's argument that Applicant goods, Gramophone records and audio compact discs featuring music, cannot be substantially identical to production and distribution of sound recordings is unpersuasive.

Opposer also argues that Applicant may not tack goods from International Class 9 to services in International Class 41: "[n]either Applicant nor the Board referred to

---

[28] *Id.* at 51, 101 TTABVUE 51.

Although not referenced in the Board's opinion, Applicant's identification of services in International Class 41 includes "entertainment services, namely, providing streamed and downloadable audio and video content to users through a subscription service provided online via a communication network" and Opposer's identification of services in its pleaded application in International Class 41 includes "providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, and multimedia content in the fields of music[.]" These services are equally comparable to the musical sound recordings in Applicant's '964 registration to the extent that they both provide consumers with music in the most up-to-date format, i.e., online digital sound recordings.

[29] Opinion of April 16, 2021, p. 27, 101 TTABVUE 27.

any authority which allows services and goods in different classes to be regarded as the same or similar."[30] Opposer seeks to use the classification system to limit Applicant's rights. This argument is unpersuasive.

The system for classification of goods and services was created for the convenience of the USPTO, and has no bearing on the issue of the relationship between goods and services. Trademark Act Section 30 provides in pertinent part that "The Director may establish a classification of goods and services, for convenience of Patent and Trademark Office administration, but not to limit or extend the applicant's or registrant's rights." Trademark Act Section 30, 15 U.S.C. § 1112. "The separation of goods [or services] into the various classes of the classification schedule is merely a convenience for the Office and is not intended as a commentary on their relationship to one another in the marketplace." *In re Sailerbrau Franz Sailer,* 23 USPQ2d 1719, 1720 (TTAB 1992)); *See also Nat'l Football League v. Jasper Alliance Corp.*, 16 USPQ2d 1212, 1216 n.5 (TTAB 1990) ("The classification system was established for the convenience of the Office rather than to indicate that goods [or services] in the same class are necessarily related or that classification in different classes indicates that they are not related.").

F.  Conclusion

As stated in the Board's decision, we "considered all of the testimony and evidence introduced into the record."[31] We find Opposer has not demonstrated that, based on the evidence properly of record and the applicable law, the Board's decision is in error.

---

[30] Opposer's request for reconsideration, p. 3, 102 TTABVUE 4.

[31] Opinion of April 16, 2021, p. 12, 101 TTABVUE 12.

Rather, Opposer simply expresses disagreement with the result reached therein, reargues positions raised in its brief on final decision, or seeks to introduce new arguments and evidence. As a result, we remain of the belief that our April 16, 2021 decision is correct.

**Decision**: The request for reconsideration is denied.

**PROSECUTION HISTORY OF SERIAL NO. 86/659,444**
**OPPOSITION NO. 91229891**
**Federal Circuit Appeal No. 2021-2301**
**Mark: APPLE MUSIC**

| DATE | DESCRIPTION |
|------|-------------|
| 06/11/2015 | Application |
| 06/11/2015 | Drawing |
| 09/19/2015 | XSearch Search Summary |
| 09/19/2015 | XSearch Search Summary |
| 09/26/2015 | Non-Final Office Action |
| 03/16/2016 | Revocation of Attorney/Domestic Representative and/or Appointment of Attorney/Domestic Representative |
| 03/24/2016 | Response to Office Action |
| 03/26/2016 | Trademark Snap Shot Publication Stylesheet |
| 03/26/2016 | Trademark Snap Shot Amendment & Mail Processing Stylesheet |
| 04/20/2016 | Notification of Notice of Publication |
| 04/20/2016 | Notice of Publication |
| 05/10/2016 | Trademark Official Gazette Publication Confirmation |
| 09/21/2016 | Revocation of Attorney/Domestic Representative and/or Appointment of Attorney/Domestic Representative |
| 02/16/2018 | Change of Owner's Address |

# HISTORY OF OPPOSITION NO. 91229891
## Federal Circuit Appeal No. 2021-2301
## Mark: APPLE MUSIC

| DATE | DESCRIPTION |
|---|---|
| 09/02/2016 | Notice of Opposition |
| 09/02/2016 | Order: Notice and Trial Dates Sent; Answer Due |
| 10/11/2016 | Applicant's Change of Correspondence Address |
| 10/11/2016 | Applicant's Consented Motion to Extend Deadlines |
| 10/11/2016 | Order: Motion to Extend Deadlines Granted |
| 11/11/2016 | Applicant's Consented Motion for Suspension Pending Settlement Negotiations |
| 11/11/2016 | Order: Motion to Suspend Granted |
| 01/10/2017 | Answer |
| 07/13/2017 | Opposer's Consented Motion to Extend Deadlines |
| 07/13/2017 | Order: Motion to Extend Deadlines Granted |
| 09/26/2017 | Applicant's Consented Motion to Extend Deadlines |
| 09/26/2017 | Order: Motion to Extend Deadlines Granted |
| 11/02/2017 | Applicant's Consented Motion to Extend Deadlines |
| 11/02/2017 | Order: Motion to Extend Deadlines Granted |
| 11/17/2017 | Applicant's Notice of Appearance / Power of Attorney |
| 11/28/2017 | Applicant's Consented Motion to Extend Deadlines |
| 11/28/2017 | Order: Motion to Extend Deadlines Granted |
| 02/02/2018 | Applicant's Consented Motion to Extend Deadlines |
| 02/04/2018 | Order: Motion to Extend Deadlines Granted |
| 04/05/2018 | Applicant's Motion to Compel Deposition; Declaration of J. Gonder (Exhs. 1-3) |
| 04/06/2018 | Opposer's Motion to Compel Discovery; Declaration of James Bertini (Exhs. 1-14) |
| 04/14/2018 | Opposer's Motion to Suspend Opposition Proceeding Pending Disposition of Cancellation Proceeding (No. 92068213) |
| 04/23/2018 | Opposer's Response to Motion to Compel Deposition; Declaration of James Bertini |
| 04/25/2018 | Applicant's Opposition to Motion to Compel Discovery; Declaration of J. Petersen (Exhs. A-K) |

| DATE | DESCRIPTION |
|------|-------------|
| 05/03/2018 | Opposer's Reply in Support of Motion to Compel Discovery; Declaration of James Bertini (Exhs. 15-20) |
| 05/04/2018 | Applicant's Change of Correspondence Address |
| 05/04/2018 | Applicant's Opposition to Motion to Suspend; Declaration of J. Petersen (Exhs. A-H) |
| 05/14/2018 | Applicant's Reply in Support of Motion to Compel Deposition |
| 05/16/2018 | Opposer's Reply to Motion to Suspend Opposition Proceeding; Declaration of James Bertini (Exhs. 1-3) |
| 05/16/2018 | Opposer's Amended Certificate of Service |
| 05/19/2018 | Opposer's Motion for Summary Judgment; Declaration of James Bertini; Declaration of Charles Bertini; Declaration of Irina Bertini; Exhs. 62, 64-71, 73-75, 78-79, 81-83, 121, 123-130, 132-142 |
| 05/19/2018 | Exhibits (continued) to Opposer's Motion for Summary Judgment (Exhs. 1-51, 84-120, 123, 132) |
| 06/07/2018 | Order: Motion for Summary Judgment Not Considered; Proceedings Suspended Pending Motions to Compel; Motion to Suspend Pending Cancellation No. 92068213 Denied |
| 08/16/2018 | Order: Motion to Compel Deposition Granted; Motion to Compel Discovery Granted, in Part and, Denied, in Part; Proceedings Resumed |
| 09/18/2018 | Opposer's Motion for Summary Judgment; Declaration of Charles Bertini; Declaration of Irina Bertini; Declaration of James Bertini; Exhs. 1-51, 62, 64-67, 69-71, 73-75, 78-79, 81-96, 98-99, 101-102, 105-107, 113-116 |
| 09/19/2018 | Exhibits (continued) to Opposer's Motion for Summary Judgment (Exhs. 68, 117-121, 123-145) |
| 09/19/2018 | Exhibits (continued) to Opposer's Motion for Summary Judgment (Exhs. 108-112) |
| 10/03/2018 | Order: Proceedings Suspended |
| 10/18/2008 | Applicant's Opposition to Motion for Summary Judgment |
| 10/18/2008 | Declaration of J. Vaughan Jones in Support of Opposition to Motion for Summary Judgment (Exhs. 1-13) |
| 10/18/2008 | Declaration of J. Gonder in Support of Opposition to Motion for Summary Judgment (Exhs. A-K) |
| 11/07/2018 | Opposer's Reply in Support of Motion for Summary Judgment; Declaration of Charles Bertini; Declaration of Irina Bertini; |

| DATE | DESCRIPTION |
|------|-------------|
| | Declaration of James Bertini; Exhs. 59, 103, 146-154 |
| 11/07/2018 | Opposer's Confidential Declaration of James Bertini (Exh. 154) |
| 03/01/2019 | Order: Motion for Summary Judgment Granted, in Part and, Denied, in Part; Proceedings Resumed |
| 03/22/2019 | Applicant's Consented Motion to Extend Deadlines |
| 03/29/2019 | Order: Motion to Extend Deadlines Granted |
| 04/01/2019 | Applicant's Motion for Reconsideration or, in the Alternative, For Leave to Amend Answer (Exh. A) |
| 04/19/2019 | Opposer's Response to Motion for Reconsideration |
| 04/22/2019 | Applicant's Consented Motion to Extend Deposition Deadline |
| 04/29/2019 | Opposer's Notice of Deposition of J. Vaughan Jones |
| 05/09/2019 | Applicant's Reply in Support of Motion for Reconsideration or, in the Alternative, For Leave to Amend Answer |
| 05/29/2019 | Joint Stipulation Regarding Documents Produced in Response to Written Discovery and Depositions |
| 05/29/2019 | Applicant's Motion to Compel Production of Documents; Declaration of J. Gonder (Exhs. A-F) |
| 06/04/2019 | Order: Proceedings Suspended |
| 06/17/2019 | Opposer's Response to Motion to Compel Production of Documents; Declaration of Charles Bertini (Exhs. 158-159) |
| 07/05/2019 | Applicant's Reply in Support of Motion to Compel Production of Documents; Declaration of J. Gonder (Exh. A) |
| 09/30/2019 | Order: Motion for Reconsideration Denied; Alternative Motion for Leave to Amend Answer Granted; Motion to Compel Production of Documents Granted, in Part and, Denied, in Part; Proceedings Resumed |
| 12/20/2019 | Opposer's Trial Declaration of C. Bertini (Exhs. 1-51, 58-59, 61, 69-70, 83-96, 98-99, 101-120, 122-124) |
| 12/20/2019 | Exhibits (continued) to Opposer's Trial Declaration of C. Bertini (Exhs. 146-148, 158-177) |
| 12/20/2019 | Confidential Exhibits to Opposer's Trial Declaration of C. Bertini (Exhs. 160, 176, 177) |
| 12/20/2019 | Opposer's Notice of Reliance (on Discovery Responses); Exhs. 1, 2, 3, 137, 154, 179, 180 |
| 12/20/2019 | Opposer's Confidential Notice of Reliance (on Discovery |

| DATE | DESCRIPTION |
|------|-------------|
|  | Responses) (Exh. 154) |
| 12/20/2019 | Opposer's Notice of Reliance (on Internet Documents); Exhs. 66, 67, 76, 78, 79, 81, 82, 97, 125, 126, 131, 135, 144, 145, 152, 153 |
| 12/20/2019 | Opposer's Notice of Reliance (on Statements in Briefs); Exh. 133 |
| 12/21/2019 | Opposer's Notice of Reliance (on Official Records); Exhs. 127, 129, 130, 132, 134, 136, 138, 139, 140, 178, 181-185 |
| 02/20/2020 | Applicant's First Notice of Reliance (Exhs. A-B) |
| 02/20/2020 | Applicant's Second Notice of Reliance (Exhs. A-F) |
| 02/20/2020 | Applicant's Third Notice of Reliance (Exh. A) |
| 02/20/2020 | Applicant's Fourth Notice of Reliance (Exhs. 1-86) |
| 02/20/2020 | Applicant's Declaration of J. Vaughan Jones (Exhs. 1-15) |
| 02/20/2020 | Applicant's Confidential Exhibit 13 to Declaration of J. Vaughan Jones |
| 02/21/2020 | Applicant's Fifth Notice of Reliance (Exh. A) |
| 02/21/2020 | Applicant's Sixth Notice of Reliance (Exh. A, Parts 1 and 2 of 4) |
| 02/21/2020 | Applicant's Sixth Notice of Reliance (Exh. A, Part 3 of 4) |
| 02/21/2020 | Applicant's Sixth Notice of Reliance (Exh. A, Part 4 of 4, Section 1) |
| 02/21/2020 | Applicant's Sixth Notice of Reliance (Exh. A, Part 4 of 4, Section 2) |
| 02/21/2020 | Applicant's Seventh Notice of Reliance (Exhs. A-G) |
| 02/21/2020 | Applicant's Seventh Notice of Reliance (Exhs. H-P) |
| 02/21/2020 | Applicant's Eighth Notice of Reliance (Exhs. 1-52, 58-59, 69-70, 83-96, 99, 101-102, 105-120, 122-124, 146-148, 158-159, 161-165) |
| 02/21/2020 | Applicant's Eighth Notice of Reliance (Exhs. 166-167, 169-175) |
| 02/21/2020 | Applicant's Confidential Eighth Notice of Reliance (Exhs. 160, 176, 177) |
| 02/21/2020 | Applicant's Declaration of T. La Perle (Exhs. 1-27) |
| 02/21/2020 | Applicant's Confidential Declaration of T. La Perle |
| 02/21/2020 | Applicant's Confidential Exhibit 23 to Declaration of T. La Perle |
| 04/05/2020 | Opposer's Rebuttal Notice of Reliance (on Statements and Pleadings) (Exhs. A-B); Trial Declaration of C. Bertini (Exhs. 186-188) |
| 04/06/2020 | Opposer's Rebuttal Notice of Reliance (Publicly Available Webpages) (Exhs. 189, 191-196, 200-210) |
| 04/06/2020 | Opposer's Rebuttal Notice of Reliance (Official USPTO Records) |

| DATE | DESCRIPTION |
|------|-------------|
|  | (Exhs. 197-199, 211-229) |
| 06/05/2020 | Opposer's Trial Brief (Appendix A) |
| 07/06/2020 | Applicant's Trial Brief (Appendix A-B) |
| 07/06/2020 | Applicant's Confidential Trial Brief (Appendices A-B) |
| 07/20/2020 | Opposer's Reply Trial Brief (Exhs. A-B) |
| 07/20/2020 | Opposer's Confidential Reply Trial Brief (Exhs. A-B) |
| 07/30/2020 | Applicant's Request for Oral Argument |
| 08/02/2020 | Opposer's Opposition to Request for Oral Argument |
| 08/20/2020 | Order: Oral Hearing Requested; Response Due |
| 09/02/2020 | Applicant's Response Regarding Scheduling Oral Argument |
| 10/22/2020 | Order: Oral Hearing Scheduled |
| 11/05/2020 | Oral Hearing Appearance Record |
| 04/16/2021 | Board Decision |
| 05/15/2021 | Opposer's Motion for Reconsideration |
| 06/04/2021 | Applicant's Opposition to Motion for Reconsideration |
| 06/14/2021 | Opposer's Reply in Support of Motion for Reconsideration |
| 08/09/2021 | Order: Motion for Reconsideration Denied |
| 09/08/2021 | Notice of Appeal to the Federal Circuit |

Status Search #86659444

EXHIBIT 184

**BULK DATA:** Since May 7 at 12 a.m., the TSDR Application Programming Interface (API) has not included all information. Images of trademark registration certificates issued since July 2016 and some office actions are absent in the API. Customers who need to retrieve a copy of a registration certificate or an office action should download it directly from the TSDR documents tab.

**INTERMITTENT SYSTEM ISSUES:** Due to high-volume usage, you may experience intermittent issues on the Trademark Status and Document Retrieval (TSDR) system between 6 – 8 a.m. ET. Refreshing your web browser should resolve the issue. If you still need assistance accessing a document, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

| STATUS | DOCUMENTS | | Back to Search | Print |
|---|---|---|---|---|

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2019-12-20 22:59:41 EST |
| **Mark:** | APPLE MUSIC |

APPLE MUSIC

| | | | |
|---|---|---|---|
| **US Serial Number:** | 86659444 | **Application Filing Date:** | Jun. 11, 2015 |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |

| | |
|---|---|
| **TM5 Common Status Descriptor:** | LIVE/APPLICATION/Opposition Pending |
| | The pending trademark application has been examined by the Office and was published for opposition, at which time one or more oppositions were filed but they have not yet been decided. |
| **Status:** | An opposition after publication is pending at the Trademark Trial and Appeal Board. For further information, see TTABVUE on the Trademark Trial and Appeal Board web page. |
| **Status Date:** | Sep. 02, 2016 |
| **Publication Date:** | May 10, 2016 |

## Mark Information

Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | APPLE MUSIC |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |

Appx00077

| Disclaimer: | "MUSIC" |
|---|---|

EXHIBIT 184

## ▼ Related Properties Information

| International Registration Number: | 1283396 |
|---|---|
| International Application(s) /Registration(s) Based on this Property: | A0052202/1283396 |
| Claimed Ownership of US Registrations: | 3710912, 4009791, 4088195 |

## ▼ Foreign Information

| Priority Claimed: | Yes | | |
|---|---|---|---|
| Foreign Application Number: | 67176 | Foreign Application Filing Date: | May 18, 2015 |
| Foreign Application/Registration Country: | JAMAICA | | |

## ▼ Goods and Services

**Note:**

The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests, fairs for entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of radio programs, television programs, and sound recordings; entertainment services, namely, providing ongoing television, radio, audio programs, video programs, podcast, and webcast programs in the field of entertainment; providing audio and video programming featuring entertainment, sports, music, information, and news by means of telecommunications networks; entertainment services, namely, providing streamed and downloadable audio and video

**Appx00078**

Status Search of 86659444

EXHIBIT 184

content to users through a subscription service provided online via a communication network; provision of live entertainment and recorded entertainment, namely, musical performances; providing non-downloadable audio and video programming featuring entertainment, sports, music, informational, and current events news programming; providing websites and computer applications featuring entertainment information, sports information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites and computer applications featuring information in the field of entertainment, music, sports, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, entertainment surveys, and ratings, and providing interactive websites and computer applications for entertainment purposes for the posting and sharing of reviews, entertainment surveys, and ratings of users all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, entertainment fairs, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; providing non-downloadable ringtones, pre-recorded music, video programs, and graphics for use on mobile communications devices via a global computer network and wireless networks; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; news reporting in the field of music and entertainment

| | | | |
|---|---|---|---|
| **International Class(es):** | 041 - Primary Class | **U.S Class(es):** | 100, 101, 107 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(b) | | |

## ▼ Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | No |
| **Filed ITU:** | Yes | **Currently ITU:** | Yes |
| **Filed 44D:** | Yes | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

**Appx00079**

**BULK DATA:** Since May 7 at 12 a.m., the TSDR Application Programming Interface (API) has not included all information. Images of trademark registration certificates issued since July 2016 and some office actions are absent in the API. Customers who need to retrieve a copy of a registration certificate or an office action should download it directly from the TSDR documents tab.

**INTERMITTENT SYSTEM ISSUES:** Due to high-volume usage, you may experience intermittent issues on the Trademark Status and Document Retrieval (TSDR) system between 6 – 8 a.m. ET. Refreshing your web browser should resolve the issue. If you still need assistance accessing a document, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.



| STATUS | DOCUMENTS | | Back to Search | 🖶 Print |
|---|---|---|---|---|

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2019-12-20 22:57:19 EST |
| **Mark:** | APPLE JAZZ |

<div align="right">APPLE JAZZ</div>

| | | | |
|---|---|---|---|
| **US Serial Number:** | 87060640 | **Application Filing Date:** | Jun. 05, 2016 |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |
| **TM5 Common Status Descriptor:** | | LIVE/APPLICATION/Under Examination |
| | | The trademark application has been accepted by the Office (has met the minimum filing requirements) and that this application has been assigned to an examiner. |
| **Status:** | Suspension check completed. Application remains suspended. | | |
| **Status Date:** | Oct. 01, 2019 | | |

## Mark Information                                                                 ▲ Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | APPLE JAZZ |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |

EXHIBIT 185

|  |  |
| --- | --- |
| **Disclaimer:** | "JAZZ" |

## ▼ Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((...)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests for entertainment purposes, musical and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment, namely, live musical performances, and temporary use of online non-downloadable recorded entertainment featuring musical performances; providing websites featuring entertainment information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites featuring information in the field of entertainment, music, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, and providing interactive websites for the posting and sharing of reviews, all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, and multimedia content in the fields of music; publication of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; arranging, producing in the nature of, recording, mixing, editing and sound engineering, researching musical compositions, publishers, artists, recordings, and licensing for music production services; arranging and conducting educational competitions for students in the field of business; arranging and conducting educational competitions for students in the field of entertainment

|  |  |  |  |
| --- | --- | --- | --- |
| **International Class(es):** | 041 - Primary Class | **U.S Class(es):** | 100, 101, 107 |
| **Class Status:** | ACTIVE |  |  |
| **Basis:** | 1(a) |  |  |
| **First Use:** | Jun. 05, 1985 | **Use in Commerce:** | Jun. 05, 1985 |

EXHIBIT 185

Appx00081

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | Bertini, Charles |
| **DBA, AKA, Formerly:** | DBA Apple Jazz |
| **Composed of:** | Charles Bertini, USA |
| **Owner Address:** | 10825 Wheaton Ct<br>Orlando, FLORIDA UNITED STATES 32821 |
| **Legal Entity Type:** | SOLE PROPRIETORSHIP |
| **State or Country Where Organized:** | FLORIDA |

## Attorney/Correspondence Information

### Attorney of Record

| | |
|---|---|
| **Attorney Name:** | James Bertini |
| **Attorney Primary Email Address:** | jamesbertini@yahoo.com |
| **Attorney Email Authorized:** | Yes |

### Correspondent

| | |
|---|---|
| **Correspondent Name/Address:** | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, COLORADO UNITED STATES 80204 |
| **Phone:** | 303 572-3122 |

EXHIBIT 185

Appx00082

Trademark Status & Document Retrieval



**BULK DATA:** Since May 7 at 12 a.m., the TSDR Application Programming Interface (API) has not included all information. Images of trademark registration certificates issued since July 2016 and some office actions are absent in the API. Customers who need to retrieve a copy of a registration certificate or an office action should download it directly from the TSDR documents tab.

**INTERMITTENT SYSTEM ISSUES:** Due to high-volume usage, you may experience intermittent issues on the Trademark Status and Document Retrieval (TSDR) system between 6 – 8 a.m. ET. Refreshing your web browser should resolve the issue. If you still need assistance accessing a document, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

| STATUS | DOCUMENTS | MAINTENANCE |
|---|---|---|

Back to Search     Print

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2019-12-20 23:30:42 EST |
| **Mark:** | APPLE       No Image exists for this case. |

| | | | |
|---|---|---|---|
| **US Serial Number:** | 74693839 | **Application Filing Date:** | Jun. 26, 1995 |
| **US Registration Number:** | 2034964 | **Registration Date:** | Feb. 04, 1997 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |
| **TM5 Common Status Descriptor:** | | LIVE/REGISTRATION/Issued and Active | |
| | | The trademark application has been registered with the Office. | |
| **Status:** | The registration has been renewed. | | |
| **Status Date:** | Apr. 02, 2017 | | |
| **Publication Date:** | Nov. 12, 1996 | | |

▼ **Mark Information**

▲ Co...

Appx00083

EXHIBIT 182

1/5

Case: 21-2301     Document: 33     Page: 97     Filed: 03/31/2022

| | |
|---|---|
| **Mark Literal Elements:** | APPLE |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 1 - TYPESET WORD(S) /LETTER(S) /NUMBER(S) |

## ▼ Goods and Services

**Note:**

The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | |
|---|---|
| **For:** | Gramophone records featuring music; [ pre-recorded audio tape cassettes featuring music; ] audio compact discs featuring music [ ; pre-recorded video tape cassettes featuring music ] [ ; video laser discs featuring music ] |

| | | | |
|---|---|---|---|
| **International Class(es):** | 009 - Primary Class | **U.S Class(es):** | 021, 023, 026, 036, 038 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Aug. 1968 | **Use in Commerce:** | Aug. 1968 |

## ▼ Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## ▼ Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | APPLE INC. |
| **Owner Address:** | One Apple Park Way |

**EXHIBIT 182**

Appx00084

Trademark Status & Document Retrieval

**BULK DATA:** Since May 7 at 12 a.m., the TSDR Application Programming Interface (API) has not included all information. Images of trademark registration certificates issued since July 2016 and some office actions are absent in the API. Customers who need to retrieve a copy of a registration certificate or an office action should download it directly from the TSDR documents tab.

**INTERMITTENT SYSTEM ISSUES:** Due to high-volume usage, you may experience intermittent issues on the Trademark Status and Document Retrieval (TSDR) system between 6 – 8 a.m. ET. Refreshing your web browser should resolve the issue. If you still need assistance accessing a document, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

| STATUS | DOCUMENTS | MAINTENANCE | | Back to Search | Print |
|---|---|---|---|---|---|

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2019-12-20 23:02:48 EST |
| **Mark:** | APPLE |

# APPLE

| | | | |
|---|---|---|---|
| **US Serial Number:** | 78430230 | **Application Filing Date:** | Jun. 04, 2004 |
| **US Registration Number:** | 3317089 | **Registration Date:** | Oct. 23, 2007 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |
| **TM5 Common Status Descriptor:** | | LIVE/REGISTRATION/Issued and Active<br><br>The trademark application has been registered with the Office. | |
| **Status:** | The registration has been renewed. | | |
| **Status Date:** | Apr. 28, 2018 | | |
| **Publication Date:** | Oct. 04, 2005 | | |

EXHIBIT 183

Appx00085

## Mark Information



▲ Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | APPLE |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |

## Related Properties Information

| | |
|---|---|
| **International Registration Number:** | **1413880** |
| **International Application(s) /Registration(s) Based on this Property:** | **A0075598**/**1413880** |
| **Claimed Ownership of US Registrations:** | **2034964** |

## Foreign Information

| | | | |
|---|---|---|---|
| **Foreign Registration Number:** | 00218990 | **Foreign Registration Date:** | Nov. 16, 2000 |
| **Foreign Application/Registration Country:** | EUROPEAN (EU) OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET (OHIM) | **Foreign Expiration Date:** | Apr. 01, 2016 |

## Goods and Services

**Note:**

The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Musical sound records; sound records featuring entertainment; sound records featuring music, musicians, documentaries, biographies, interviews, performances, reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, reviews,

**EXHIBIT 163**

**Appx00086**

Trademark Status & Document Retrieval

**BULK DATA:** Since May 7 at 12 a.m., the TSDR Application Programming Interface (API) has not included all information. Images of trademark registration certificates issued since July 2016 and some office actions are absent in the API. Customers who need to retrieve a copy of a registration certificate or an office action should download it directly from the TSDR documents tab.

**INTERMITTENT SYSTEM ISSUES:** Due to high-volume usage, you may experience intermittent issues on the Trademark Status and Document Retrieval (TSDR) system between 6 – 8 a.m. ET. Refreshing your web browser should resolve the issue. If you still need assistance accessing a document, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

| STATUS | DOCUMENTS | MAINTENANCE | | Back to Search | Print |

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2019-12-20 22:51:53 EST |
| **Mark:** | APPLE |

# APPLE

| | | | |
|---|---|---|---|
| **US Serial Number:** | 77428980 | **Application Filing Date:** | Mar. 22, 2008 |
| **US Registration Number:** | 4088195 | **Registration Date:** | Jan. 17, 2012 |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |
| **TM5 Common Status Descriptor:** | | LIVE/REGISTRATION/Cancellation/Invalidation Pending<br><br>This trademark application has been registered with the Office, but it is currently undergoing a challenge which may result in its removal from the registry. |
| **Status:** | | A cancellation proceeding is pending at the Trademark Trial and Appeal Board. For further information, see TTABVUE on the Trademark Trial and Appeal Board web page. |
| **Status Date:** | Mar. 27, 2018 | | |
| **Publication Date:** | Feb. 16, 2010 | **Notice of Allowance Date:** | May 11, 2010 |

▼ **Mark Information**                                                                          ▲ Collapse All

Appx00087

EXHIBIT 181

| Mark Literal Elements: | APPLE |
|---|---|
| Standard Character Claim: | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| Mark Drawing Type: | 4 - STANDARD CHARACTER MARK |
| Color(s) Claimed: | Color is not claimed as a feature of the mark. |



Privacy · Terms

## Related Properties Information

| International Registration Number: | **0978171** |
|---|---|
| International Application(s) /Registration(s) Based on this Property: | **A0011881**/**0978171** |
| Claimed Ownership of US Registrations: | **2649455**, **3226289**, **3317089** and others |

## Foreign Information

| Priority Claimed: | Yes | | |
|---|---|---|---|
| Foreign Application Number: | 6313316 | Foreign Application Filing Date: | Sep. 28, 2007 |
| Foreign Application/Registration Country: | EUROPEAN (EU) OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET (OHIM) | | |

## Goods and Services

**Note:**

The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| For: | Education and training services, namely, arranging and conducting personal training, classes, workshops, conferences and seminars in the field of computers, computer software, online services, information technology, website design, and consumer electronics; |
|---|---|

**Appx00088**       EXHIBIT 181

arranging professional workshop and training courses; computer education training services; training in the use and operation of computers, computer software and consumer electronics; online journals, namely, blogs featuring general interest topics covering a wide variety of topics and subject matter; providing on-line publications in the nature of magazines, newsletter and journals in the field of computers, computer software and consumer electronics; providing information, podcasts and webcasts in the field of entertainment via the Internet concerning movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; digital video, audio and multimedia publishing services; providing entertainment information regarding movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; providing information, reviews and personalized recommendations of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events in the field of entertainment; entertainment services, namely, production of live musical performances; entertainment services, namely, providing live musical performances online via a global computer network; rental of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events, by means of communications networks, namely, provision of non-downloadable audio and audiovisual programs via an online video-on-demand service; providing a database of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events via electronic communication networks; entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network

| | | | |
|---|---|---|---|
| **International Class(es):** | 041 - Primary Class | **U.S Class(es):** | 100, 101, 107 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Mar. 01, 1981 | **Use in Commerce:** | Mar. 01, 1981 |

## ▼ Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | Yes |
| **Filed ITU:** | Yes | **Currently ITU:** | No |
| **Filed 44D:** | Yes | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## ▼ Current Owner(s) Information

**Appx00089**

EXHIBIT 181

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 02/28/2018)

# Trademark/Service Mark Application, Principal Register

**Serial Number: 86659444**
**Filing Date: 06/11/2015**

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 86659444 |
| **MARK INFORMATION** | |
| *****MARK** | [APPLE MUSIC](#) |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | APPLE MUSIC |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *****OWNER OF MARK** | Apple Inc. |
| *****STREET** | 1 Infinite Loop |
| *****CITY** | Cupertino |
| *****STATE** (Required for U.S. applicants) | California |
| *****COUNTRY** | United States |
| *****ZIP/POSTAL CODE** (Required for U.S. applicants) | 95014 |
| **LEGAL ENTITY INFORMATION** | |
| **TYPE** | corporation |
| **STATE/COUNTRY OF INCORPORATION** | California |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **INTERNATIONAL CLASS** | 041 |
| | arranging, organizing, conducting, and presenting concerts, live performances, entertainment special events, arts and cultural events, theatrical entertainment, competitions, contests, fairs, festivals, and exhibitions; production, distribution, and presentation of radio programs, television programs, and sound recordings; providing ongoing television, radio, audio, video, podcast, and webcast programs; providing entertainment, sports, music, informational, and news programming by means of telecommunications networks; entertainment services, namely providing streaming, subscription, and downloadable music platform and services; provision of live entertainment and recorded entertainment, namely musical performances; providing non-downloadable entertainment, sports, music, informational, and news |

| | |
|---|---|
| *IDENTIFICATION | programming; providing websites and computer applications featuring entertainment, sports, music, informational, news, and arts and culture programming; providing websites and computer applications featuring information in the field of entertainment, music, sports, news, and arts and culture; providing information, schedules, reviews and personalized recommendations of entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; publication and presentation of reviews, surveys, and ratings, and providing interactive websites and computer applications for the posting and sharing of reviews, survey, and ratings relating to entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; providing non-downloadable ringtones, pre-recorded music, video, and graphics for use on mobile communications devices; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and other publications; providing websites and computer applications featuring books, periodicals, newspapers, newsletters, manuals, blogs, journals, and other publications; news reporting |
| FILING BASIS | SECTION 1(b) |
| FILING BASIS | SECTION 44(d) |
| FOREIGN APPLICATION NUMBER | 67176 |
| FOREIGN APPLICATION COUNTRY | Jamaica |
| FOREIGN FILING DATE | 05/18/2015 |
| INTENT TO PERFECT 44(d) | At this time, the applicant does NOT intend to rely on Section 44(e) as a basis for registration, but wishes only to assert a valid claim of priority. |
| **ADDITIONAL STATEMENTS SECTION** | |
| DISCLAIMER | No claim is made to the exclusive right to use MUSIC apart from the mark as shown. |
| PRIOR REGISTRATION(S) | The applicant claims ownership of U.S. Registration Number(s) 4088195, 3710912, 4009791, and others. |
| **ATTORNEY INFORMATION** | |
| NAME | Thomas R. La Perle |
| FIRM NAME | Apple Inc. |
| INTERNAL ADDRESS | MS: 169-3IPL |
| STREET | 1 Infinite Loop |
| CITY | Cupertino |
| STATE | California |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 95014 |

| EMAIL ADDRESS | trademarkdocket@apple.com |
|---|---|
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| OTHER APPOINTED ATTORNEY | Yuka Sugar, Kimberly Eckhart, John Donald, Jason Cody, Irene Chong, Pam Reid, Scott Harlan |

## CORRESPONDENCE INFORMATION

| NAME | Thomas R. La Perle |
|---|---|
| FIRM NAME | Apple Inc. |
| INTERNAL ADDRESS | MS: 169-3IPL |
| STREET | 1 Infinite Loop |
| CITY | Cupertino |
| STATE | California |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 95014 |
| EMAIL ADDRESS | trademarkdocket@apple.com;laperle@apple.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## FEE INFORMATION

| APPLICATION FILING OPTION | Regular TEAS |
|---|---|
| NUMBER OF CLASSES | 1 |
| FEE PER CLASS | 325 |
| *TOTAL FEE DUE | 325 |
| *TOTAL FEE PAID | 325 |

## SIGNATURE INFORMATION

| SIGNATURE | /Thomas R. La Perle/ |
|---|---|
| SIGNATORY'S NAME | Thomas R. La Perle |
| SIGNATORY'S POSITION | Attorney of record, California bar member |
| SIGNATORY'S PHONE NUMBER | 408-974-2385 |
| DATE SIGNED | 06/11/2015 |

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 02/28/2018)

## Trademark/Service Mark Application, Principal Register

**Serial Number: 86659444**
**Filing Date: 06/11/2015**

## To the Commissioner for Trademarks:

**MARK:** APPLE MUSIC (Standard Characters, see mark)
The literal element of the mark consists of APPLE MUSIC.
The mark consists of standard characters, without claim to any particular font, style, size, or color.

The applicant, Apple Inc., a corporation of California, having an address of
   1 Infinite Loop
   Cupertino, California 95014
   United States

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

   International Class 041: arranging, organizing, conducting, and presenting concerts, live performances, entertainment special events, arts and cultural events, theatrical entertainment, competitions, contests, fairs, festivals, and exhibitions; production, distribution, and presentation of radio programs, television programs, and sound recordings; providing ongoing television, radio, audio, video, podcast, and webcast programs; providing entertainment, sports, music, informational, and news programming by means of telecommunications networks; entertainment services, namely providing streaming, subscription, and downloadable music platform and services; provision of live entertainment and recorded entertainment, namely musical performances; providing non-downloadable entertainment, sports, music, informational, and news programming; providing websites and computer applications featuring entertainment, sports, music, informational, news, and arts and culture programming; providing websites and computer applications featuring information in the field of entertainment, music, sports, news, and arts and culture; providing information, schedules, reviews and personalized recommendations of entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; publication and presentation of reviews, surveys, and ratings, and providing interactive websites and computer applications for the posting and sharing of reviews, survey, and ratings relating to entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; providing non-downloadable ringtones, pre-recorded music, video, and graphics for use on mobile communications devices; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and other publications; providing websites and computer applications featuring books, periodicals, newspapers, newsletters, manuals, blogs, journals, and other publications; news reporting
Intent to Use: The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services. (15 U.S.C. Section 1051(b)).

Priority based on foreign filing: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services and asserts a claim of priority based on Jamaica application number 67176, filed 05/18/2015.
INTENT TO PERFECT 44(d) : At this time, the applicant does NOT intend to rely on Section 44(e) as a basis for registration, but wishes only to assert a valid claim of priority.

### Disclaimer
No claim is made to the exclusive right to use MUSIC apart from the mark as shown.

### Claim of Active Prior Registration(s)
The applicant claims ownership of U.S. Registration Number(s) 4088195, 3710912, 4009791, and others.

The applicant's current Attorney Information:
   Thomas R. La Perle and Yuka Sugar, Kimberly Eckhart, John Donald, Jason Cody, Irene Chong, Pam Reid, Scott Harlan of Apple Inc.

   MS: 169-3IPL

1 Infinite Loop
Cupertino, California 95014
United States

The applicant's current Correspondence Information:

Thomas R. La Perle

Apple Inc.

MS: 169-3IPL

1 Infinite Loop

Cupertino, California 95014

trademarkdocket@apple.com;laperle@apple.com (authorized)

A fee payment in the amount of $325 has been submitted with the application, representing payment for 1 class(es).

### Declaration

The signatory believes that: if the applicant is filing the application under 15 U.S.C. Section 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the goods/services in the application, and such use by the applicant's related company or licensee inures to the benefit of the applicant; the specimen(s) shows the mark as used on or in connection with the goods/services in the application; and/or if the applicant filed an application under 15 U.S.C. Section 1051(b), Section 1126(d), and/or Section 1126(e), the applicant is entitled to use the mark in commerce; the applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

### Declaration Signature

Signature: /Thomas R. La Perle/   Date: 06/11/2015
Signatory's Name: Thomas R. La Perle
Signatory's Position: Attorney of record, California bar member
RAM Sale Number: 86659444
RAM Accounting Date: 06/12/2015

Serial Number: 86659444
Internet Transmission Date: Thu Jun 11 15:17:25 EDT 2015
TEAS Stamp: USPTO/BAS-XX.XXX.XXX.XX-2015061115172538
7577-86659444-53023978f2f3c58b9da1d34e7e
f5b43b930a68f29914eba5c32cab29a9015cf46-
DA-14222-20150611151105218465

# APPLE MUSIC

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA768596** |
|---|---|
| Filing date: | **09/02/2016** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

# Notice of Opposition

Notice is hereby given that the following party opposes registration of the indicated application.

## Opposer Information

| Name | Charles Bertini |
|---|---|
| Granted to Date of previous extension | 09/07/2016 |
| Address | 10825 Wheaton Ct<br>Orlando, FL 32821<br>UNITED STATES |

| Attorney information | James Bertini<br>423 Kalamath Street<br>Denver, CO 80204<br>UNITED STATES<br>jamesbertini@yahoo.com,iklych@yahoo.com Phone:303 572-3122 |
|---|---|

## Applicant Information

| Application No | 86659444 | Publication date | 05/10/2016 |
|---|---|---|---|
| Opposition Filing Date | 09/02/2016 | Opposition Period Ends | 09/07/2016 |
| International Registration No. | NONE | International Registration Date | NONE |
| Applicant | Apple Inc.<br>1 Infinite Loop<br>Cupertino, CA 95014<br>UNITED STATES | | |

## Goods/Services Affected by Opposition

Class 041. First Use: 0 First Use In Commerce: 0
All goods and services in the class are opposed, namely: Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in thefield of entertainment, contests, fairsfor entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of radio programs, television programs, and sound recordings; entertainment services, namely, providing ongoing television, radio, audio programs, video programs, podcast, and webcast programs in the field of entertainment; providingaudio and video programming featuring entertainment, sports, music, information, and news by means of telecommunications networks; entertainment services, namely, providing streamed and downloadable audio and video content to users througha subscription service provided online via a communication network; provision of live entertainment and recorded entertainment, namely, musical performances; providing non-downloadable audio and video programming featuring entertainment, sports, music, informational, and currentevents news programming; providing websites and computer applications featuringentertainment information, sports information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites and computer applications featuring in-

formation in the field of entertainment, music, sports, news in the fields of music and entertainment, and arts andculture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, fairs for entertainment purposes, music or filmfestivals for cultural or entertainmentpurposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, entertainment surveys, and ratings, and providing interactive websites and computer applications for entertainment purposes for the posting and sharing of reviews, entertainment surveys, and ratingsof users all relating to entertainment,art and cultural events, concerts, livemusical performances, competitions in the field of entertainment, entertainmentfairs, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; providing non-downloadable ringtones, pre-recorded music, video programs, and graphics for use on mobile communications devices via a global computer network and wireless networks; providing a website forthe uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; news reporting in the field of music and entertainment

## Grounds for Opposition

| Priority and likelihood of confusion | Trademark Act Section 2(d) |
|---|---|

## Mark Cited by Opposer as Basis for Opposition

| U.S. Application No. | 87060640 | Application Date | 06/05/2016 |
|---|---|---|---|
| Registration Date | NONE | Foreign Priority Date | NONE |
| Word Mark | APPLE JAZZ | | |
| Design Mark | APPLE JAZZ | | |
| Description of Mark | NONE | | |
| Goods/Services | Class 041. First use: First Use: 1985/06/05 First Use In Commerce: 1985/06/05 Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in thefield of entertainment, contests for entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment andrecorded entertainment, namely, musicalperformances; providing websites featuring entertainment information, music information, news in the fields of music and | | |

|  | entertainment, and arts and culture information; providing websites featuring information in the field of entertainment, music, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providinginformation, schedules in the nature ofconcert schedules, reviews and personalized recommendations of entertainment inthe nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and bookingservices for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field ofentertainment, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, and providing interactive websites for the posting and sharing of reviews, all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, music or film festivals for cultural or entertainment purposes; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of newsletters, blogs,journals, and articles, all in the fields of music and entertainment; arranging, scheduling, producing, billing, researching and providing referrals for music production services; arranging and conducting educational competitions for students in the field of business; arranging and conducting educational competitions for students in the field of entertainment |
|---|---|

| Attachments | 87060640#TMSN.png( bytes )<br>Opposition.pdf(24739 bytes ) |
|---|---|

# Certificate of Service

The undersigned hereby certifies that a copy of this paper has been served upon all parties, at their address record by First Class Mail on this date.

| Signature | /james bertini/ |
|---|---|
| Name | James Bertini |
| Date | 09/02/2016 |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| CHARLES BERTINI, | ) | |
| | ) | Opposition No. |
| Opposer | ) | Serial No. 86659444 |
| | ) | Mark: APPLE MUSIC |
| v. | ) | Filing Date: June 11, 2015 |
| | ) | Publication Date: May 10, 2016 |
| APPLE INC., | ) | |
| | ) | |
| Applicant. | ) | |
| | ) | |

## <u>NOTICE OF OPPOSITION</u>

CHARLES BERTINI, Opposer, doing business at 10825 Wheaton Court, Orlando, Florida 32821 believes that he will be damaged by the registration of the mark shown in Serial No. 86659444 Class 41, filed by Apple Inc., 1 Infinite Loop Cupertino California 95014, Applicant, on June 11, 2015 and hereby opposes the Application.

The grounds for this Opposition are as follows:

1.      Applicant filed a trademark application assigned Serial No.  86659444 in the United States Patent and Trademark Office on June 11, 2015  ("the Application") to register the mark APPLE MUSIC ("the Applicant's Mark") for intended use in connection with  "*Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests, fairs for entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of radio programs, television*

**Appx00099**

*programs, and sound recordings; entertainment services, namely, providing ongoing television, radio, audio programs, video programs, podcast, and webcast programs in the field of entertainment; providing audio and video programming featuring entertainment, sports, music, information, and news by means of telecommunications networks; entertainment services, namely, providing streamed and downloadable audio and video content to users through a subscription service provided online via a communication network; provision of live entertainment and recorded entertainment, namely, musical performances; providing non-downloadable audio and video programming featuring entertainment, sports, music, informational, and current events news programming; providing websites and computer applications featuring entertainment information, sports information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites and computer applications featuring information in the field of entertainment, music, sports, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, fairs for entertainment purposes, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, entertainment surveys, and*

*ratings, and providing interactive websites and computer applications for entertainment purposes for the posting and sharing of reviews, entertainment surveys, and ratings of users all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, entertainment fairs, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; providing non-downloadable ringtones, pre-recorded music, video programs, and graphics for use on mobile communications devices via a global computer network and wireless networks; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and articles, all in the fields of music and entertainment; news reporting in the field of music and entertainment"* in International Class 41 ("the Applicant's Services").

2.     The Application was based on Applicant's alleged intent to use the Applicant's Mark in commerce (filing basis Section 1(b)).

3.     The Application for Applicant's Mark was published for opposition in the Official Gazette under filing basis Section 1(b) on May 10, 2016.

4.     On June 6, 2016, the Opposer timely filed a request for a 90-day extension of time to oppose the Application for Applicant's Mark, which was granted until September 7, 2016.

5.    The Opposer is a provider of services *"Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests for entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment and recorded entertainment, namely, musical performances; providing websites featuring entertainment information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites featuring information in the field of entertainment, music, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, and providing interactive websites for the posting and sharing of reviews, all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, music or film festivals for cultural or entertainment purposes; providing a website for the uploading, storing,*

*sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; arranging, scheduling, producing, billing, researching and providing referrals for music production services; arranging and conducting educational competitions for students in the field of business; arranging and conducting educational competitions for students in the field of entertainment*" which services appear to be the same or similar as those that Applicant intends to provide, based on the Application.

6.     Opposer is now and for many years has been providing services as and known by the Opposer's mark of APPLE JAZZ ("Opposer's Mark") identifying Opposer as the source of a wide variety of services, including those which are the same as or substantially identical to services intended to be offered by Applicant under its alleged mark of APPLE MUSIC.

7.     Since long prior to any date which may be claimed by Applicant, Opposer on its own behalf has been, and is now engaged in the use of Opposer's Mark in interstate commerce and internationally for the services identified in Paragraph 4 hereinabove.

8.     Since long prior to any date which may be claimed by Applicant, Opposer on its own behalf has been, and is now engaged in the sale under Opposer's Mark for the services identified in Paragraph 4 hereinabove and related thereto under Opposer's Mark.

9.     Opposer has made substantial investment in advertising and promoting his services under his marks since their initial use, and has extensively used, advertised and promoted his services bearing these marks throughout various channels of trade in commerce, with

the result that Opposer's customers have come to know and recognize his marks and associate the same with Opposer and/or the services sold by Opposer in the United States and abroad.

10.     Opposer filed an application Serial No. 87060640 for the trademark APPLE JAZZ in international class 41, dated June 5, 2016 with first use in commerce date at least as early as June 5, 1985.

11.     Applicant's Mark APPLE MUSIC is nearly identical to the Opposer's Mark APPLE JAZZ.  Jazz is a music genre.  The Applicant's Mark APPLE MUSIC is confusingly similar in meaning and appearance to the Opposer's Mark APPLE JAZZ.  The Applicant's registration and use of the APPLE MUSIC Mark would likely create confusion, mistake or deception in the minds of prospective purchasers as to the origin or source of the Opposer's Services associated with APPLE JAZZ Mark.

12.     The use by Opposer of the Opposer's Mark for the Opposer's services described herein, is long prior to any date which may be lawfully claimed by Applicant, and Opposer has priority.

13.     Upon information and belief, Applicant intends to sell and distribute its services through the same channels of trade as Opposer, and direct its respective services to the same ultimate consumer as Opposer.

14.     The Opposer's Mark and Applicant's Mark are confusingly similar when applied to the services of the parties.

15.     The services of Applicant and Opposer are identical in part, substantially related in part, and generally related in part, and Applicant's intended use of APPLE MUSIC in connection with its services is without the consent or permission of Opposer.

16.    Since Opposer owns the Opposer's Mark by virtue of prior use, mistake or deception as to the source of origin of the goods will arise and will injure and damage the Opposer and his goodwill.

17.    The registration of the mark APPLE MUSIC to Applicant will cause the relevant purchasing public to erroneously assume and thus be confused, misled, or deceived, that Applicant's services are made by, licensed by, controlled by, or otherwise authorized by Opposer.

18.    Opposer believes that he will be damaged by registration of the Applicant's Mark.

19.    Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a mark previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods and/or services of the applicant, to cause confusion for a potential consumer as to the source of the goods and/or services. *See* 15 U.S.C. §1052(d).

WHEREFORE, because the marks are highly similar and the services are closely related, consumers are likely to be confused as to the source of Applicant's services.  Accordingly, Opposer respectfully requests that the application for registration of the mark APPLE MUSIC, Serial No. 86659444 filed on June 11, 2015 be denied under Section 2(d) and that the Opposition be sustained.

September 2, 2016

                              Submitted for Opposer Charles Bertini

                              By:/James Bertini/_____

                              JAMES BERTINI
                              Attorney-at-Law
                              423 Kalamath Street
                              Denver, CO 80204
                              jamesbertini@yahoo.com
                              303 572-3122

CERTIFICATE OF SERVICE

I hereby certify that this correspondence is being deposited in the United States Postal Service as first class mail, postage prepaid, on September 2, 2016, in an envelope addressed to:

Erin Hickey
Apple Inc.
MS: 169-3IPL
1 Infinite Loop
Cupertino, CA 95014

Simultaneously an electronic copy was sent to trademarkdocket@apple.com.

_____/James Bertini/_____

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number: **ESTTA888073**

Filing date: **04/06/2018**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Plaintiff<br>Charles Bertini |
| Correspondence<br>Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>Email: jamesbertini@yahoo.com, iklych@yahoo.com |
| Submission | Motion to Compel Discovery or Disclosure |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /james bertini/ |
| Date | 04/06/2018 |
| Attachments | Motion to Compel.pdf(33612 bytes )<br>Declaration of James Bertini.pdf(12239 bytes )<br>Exhibits 1-14.pdf(434090 bytes ) |

**REQUEST FOR PRODUCTION NO. 4**

That portion of the settlement agreement between Apple Corps. and Apple Computer made during 1981 concerning trademarks and trademarks use in commerce.

*My comments:  You stated in your December 1, 2017 letter that you will produce documents relevant to this request, but you have not done so.*

**REQUEST FOR PRODUCTION NO. 5**

That portion of the settlement agreement between Apple Corps. and Apple Computer made during 1991 concerning trademarks and trademarks use in commerce.

*My comments:  You stated in your December 1, 2017 letter that you will produce documents relevant to this request, but you have not done so.*

**REQUEST FOR PRODUCTION NO. 6**

That portion of the settlement agreement between Apple Corps and Apple Inc. made during February 2007 concerning trademarks and trademarks use in commerce.

*My comments: You stated in your December 1, 2017 letter that you will produce documents relevant to this request, but you have not done so.*

**REQUEST FOR PRODUCTION NO. 8**

All documents concerning sales on the territory of the United States under the trademark APPLE before June 5, 1985 of any of the following:
*musical sound records; sound records featuring entertainment; sound records featuring music, musicians, documentaries, biographies, interviews, performances, reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, performances, reviews, drama and fiction; cinematographic films; musical sound recordings; musical video recordings; audio and visual recordings featuring or relating to music, entertainment and films; pre-recorded compact discs, gramophone records, video discs, DVDs, CD-ROMs ((and interactive compact discs,)) all featuring or relating to music and films; digitally recorded sound and video records; ((downloadable musical sound and video records; downloadable sound and video records featuring or relating to music, entertainment and films; digital video, audio and multimedia publishing services"; "providing entertainment information regarding movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events"; "entertainment services, namely, production of live musical performances"; "entertainment services, namely, providing live musical performances online via a global computer network"; and "entertainment services, namely, providing prerecorded audio and audiovisual content,*

5

*information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network*

*My comments: Daniel Hope agreed to provide these documents in his June 28, 2017 response but we have not received them.  You stated in your December 1, 2017 letter that you will produce documents relevant to this request, but you have not done so.*

## REQUEST FOR PRODUCTION NO. 9

All agreements with licensees in commerce on or in connection with the following goods under trademark APPLE from period January 1, 1981 through December 31, 1985 in the  territory of the United States: gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; video laser discs featuring music.

*My comments:  You stated in your December 1, 2017 letter that you will produce documents relevant to this request, but you have not done so.  **The documents must include agreement/s between Apple Records, Inc. and Trav, 341 Ponce de Leon Avenue, NE Atlanta, GA 30365 indicated in your disclosures APPLE001943-001952.***

## REQUEST FOR PRODUCTION NO. 10

All agreements with entities which manufactured the following goods in the United States under trademark APPLE from period January 1, 1981 through December 31, 1985:  gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; video laser discs featuring music.

*My comments:  Daniel Hope agreed to provide these documents in his June 28, 2017 response but we have not received them.*

## REQUEST FOR PRODUCTION NO. 11

All agreements with entities which distributed the following goods in the United States under trademark APPLE from period January 1, 1981 through December 31, 1985:  gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; video laser discs featuring music.

*My comments:  Daniel Hope agreed to provide these documents in his June 28, 2017 response but we have not received them.*

## REQUEST FOR PRODUCTION NO. 12

All agreements with entities which marketed the following goods in the United States under trademark APPLE from period January 1, 1981 through December

6

*digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events via electronic communication networks; entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network.*

*Providing a website for the uploading, sharing, viewing and posting of photographs, digital images, movies, videos, online journals covering general interest topics, and other related multimedia entertainment materials over a global computer network covering a wide variety of topics and subjects.*

## REQUEST FOR PRODUCTION NO. 16

All documents concerning the following services if offered by Applicant prior to July 1, 1985 under mark APPLE:

Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical

performances, competitions in the field of entertainment, contests for entertainment purposes, musical and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment, namely, live musical performances, and temporary use of online non-downloadable recorded entertainment featuring musical performances; providing websites featuring entertainment

11

admissible evidence in that it requests '[a]ll documents concerning the [] services [specified in the Request] if offered by Apple Computer, Inc. prior to June 5, 1985 under mark APPLE', without regard to whether such documents are relevant to the issues in this proceeding. Subject to and without waiving the foregoing general and specific objections, Applicant states that, after the parties have entered into a revised protective order governing the disclosure of proprietary and/or confidential documents and information in this proceeding, Applicant will produce documents in its possession, custody or control that it reasonably believes are sufficient to respond to this Request."

First, the request cannot be vague and ambiguous since it relates directly and solely to use in commerce of an Apple Inc. trademark, and this trademark was raised as an affirmative defense.  We did not raise this affirmative defense: Apple Inc. raised it.

Second, the request cannot be overly broad and unduly burdensome since it relates to Apple Inc.'s own affirmative defense.

Third, we are only seeking documents relating to public activities.  If Apple Inc. used the mark in commerce before Opposer, then please give us proof.

M.     Request for Production No. 15

Apple Inc. stated:
"Applicant objects to this Request on grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it requests '[a]ll documents concerning use of the trademark APPLE in commerce by the Applicant's related company, licensee, or predecessor in interest in the territory of the United States for each type of activities [specified in the Request] for period January 1, 1981 through November 11, 2011', without [a]ll documents concerning the [] services [specified in the Request] if offered by Apple Computer, Inc. prior to June 5, 1985 under mark APPLE", without limitation to the services identified in Application Serial No. 86/659,444 and without regard to whether such documents are relevant to the issues in this proceeding. Subject to and without waiving the foregoing general and specific objections, Applicant states that, after the parties have entered into a revised protective order governing the disclosure of proprietary and/or confidential documents and information in this proceeding, Applicant will produce documents in its possession, custody or control that it reasonably believes are sufficient to respond to this Request."

First, the request cannot be vague and ambiguous since it relates directly and solely to use in commerce of an Apple Inc. trademark, and this trademark was raised as an affirmative defense.  We did not raise this affirmative defense: Apple Inc. raised it.

# JAMES BERTINI

*Attorney-at-Law*

423 Kalamath Street

Denver, Colorado 80204

303 572-3122

jamesbertini@yahoo.com

March 12, 2018

Joseph Petersen

Kilpatrick Townsend

1080 Marsh Road

Menlo Park, CA 94025

> **Exhibit 12**

*Via email to jpetersen@ktslaw.com*

Joe,

This a response to your February 27, 2018 letter 1, and another request for discovery responses from Apple Inc. that has eluded us since they were first requested almost a year ago.

We have produced 79 pages of relevant documents including those showing use in commerce during more than 30 years, so your characterization that we have produced almost nothing is hyperbole. Even the examining attorney didn't have a question about my client's use in commerce in connection with his trademark application. We gave Apple Inc. attorneys the same documents filed with the trademark application and with the Response to Office Action. In any event we are preparing more exhibits to disclose before the end of the discovery period and I am putting together the additional responses you requested recently regarding your initial discovery requests.

You also stated that the USPTO's Suspension Notice communicates that it "has expressly maintained that the APPLE JAZZ mark is unregistrable." But of course this is not what it means at all. If the mark is unregistrable, the examining attorney will issue a Final Refusal. In any event, the examining attorney "expressly maintained" that the application was suspended due to the existence of this opposition proceeding.

Refusal of an application is relatively routine when any marks come up on a search by an examiner, regardless of whether possible similar marks end up being confusingly similar. This refusal doesn't indicate that the application will ultimately be denied, especially since it is not a final refusal.

You claim that Apple Inc. or its predecessor used various marks for the same services as does my client. So, we are entitled to see proof, particularly since none was provided to the USPTO in the application for those marks. Thus, complaining that we are seeking (older) documents that prove such use makes no sense.

1

You simply have not offered any evidence that the APPLE mark U.S. Registration No. 4088195 was ever used in commerce as it is described in the Certificate for following services:

*Education and training services, namely, arranging and conducting personal training, classes, workshops, conferences and seminars in the field of computers, computer software, online services, information technology, website design, and consumer electronics; arranging professional workshop and training courses; computer education training services; training in the use and operation of computers, computer software and consumer electronics; online journals, namely, blogs featuring general interest topics covering a wide variety of topics and subject matter; providing online publications in the nature of magazines, newsletter and journals in the field of computers, computer software and consumer electronics; providing information, podcasts and webcasts in the field of entertainment via the Internet concerning movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; digital video, audio and multimedia publishing services; providing entertainment information regarding movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; providing information, reviews and personalized recommendations of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events in the field of entertainment; entertainment services, namely, production of live musical performances; entertainment services, namely, providing live musical performances online via a global computer network; rental of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events, by means of communications networks, namely, provision of non-downloadable audio and audiovisual programs via an online video-on-demand service; providing a database of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events via electronic communication networks; entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network.*

Neither the Beatles, Apple Records, Inc or Apple Corps Limited Company used the mark APPLE for the services in Class 41 as listed above.

None of the disclosures you specifically referenced show the use of the mark in commerce, notwithstanding your repeated insistence to the contrary.

Production APPLE000452 - the only specimen provided by your client to USPTO to show use in commerce for class 41 - has an unknown origin because:

a)    There is no link showing from which website the screenshot was taken
b)    There is no date when this screenshot was taken

2

According to information available on the internet, the main Apple Inc. website apple.com didn't offer any seminars during the year 2011, and that would include the date of the Statement of Use, November 11, 2011. Neither were such seminars offered after that date. This service was simply abandoned by your client, if the service was ever offered at all.

On the date of the SOU there is no place on the entire Apple website that shows any evidence that services listed above were offered to the public under the APPLE mark.

Regarding production APPLE001886-1890, APPLE001909-1911, these do not show use of the APPLE mark for the services listed above but only show use in Class 9 for the goods, namely music records. They contain no evidence of use even for the class 9 during period of June 5, 1982 – June 5, 1985.

APPLE001912-1917 show that records were produced by a third party, under a different mark and only with reference to Apple Records – a different mark from APPLE. Apple Records as indicated on the discs is a reference to the Apple Records Inc. company since it is listed along with entities Macion Music, Harrison Inc. and BMI. The word "Records" in this case is a part of the trade name "Apple Records" used by Apple Records Inc. Also, the Apple Records, Inc. logo was not used on these discs at all. Please compare it to your other exhibits including our Exhibit 65 (attached). Thus, these records were not produced under the Apple mark, were not produced by Apple Records, Inc, and were not produced for Apple Records, Inc.

See 15 U.S.C. § 1127 *"Use in commerce.* The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark… a mark shall be deemed to be in use in commerce — (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services."

The labels of Beatles records produced by your client do not match the above criteria to show use in commerce for the services in class 41 as listed above.

---

Apple Inc.'s responses to my May 15, 2017 Request for Production of Documents (RPD) were made on June 28, 2017, supplemented by letter from you dated December 1, 2017. Nevertheless, Apple, Inc. has not responded to many of the RPDs.   I have sent letters about this to you or other Apple Inc. attorneys handling this case on:
July 24, 2017
August 12, 2017
August 15, 2017
August 19, 2017
September 26, 2017
October 13, 2017

3

*communications networks, namely, provision of non-downloadable audio and audiovisual programs via an online video-on-demand service; providing a database of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events via electronic communication networks; entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network.*

*Providing a website for the uploading, sharing, viewing and posting of photographs, digital images, movies, videos, online journals covering general interest topics, and other related multimedia entertainment materials over a global computer network covering a wide variety of topics and subjects.*

*My comments: Based on your December 1, 2017 letter I assume that there are no such documents responsive to this request since none have been produced. Please confirm if this is correct.*

## **REQUEST FOR PRODUCTION NO. 16**

All documents concerning the following services if offered by Applicant prior to July 1, 1985 under mark APPLE:

Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical
performances, competitions in the field of entertainment, contests for entertainment purposes, musical and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment, namely, live musical performances, and temporary use of online non-downloadable recorded entertainment featuring musical performances; providing websites featuring entertainment information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites featuring information in the field of entertainment, music, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events,
concerts, live musical performances, competitions in the field of entertainment, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, and providing interactive websites for the posting and sharing of reviews, all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, and multimedia content in the fields of music; publication of newsletters,

10

THIS ORDER IS NOT A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

August 16, 2018

Opposition No. 91229891

*Charles Bertini*

*v.*

*Apple Inc.*

**Michael Webster, Interlocutory Attorney:**

This case now comes before the Board for consideration of Applicant's motion (filed April 5, 2018) to compel a discovery deposition and Opposer's motion (filed April 6, 2018) to compel written discovery. Both motions are fully briefed.

As an initial matter, the parties are reminded that, under Trademark Rule 2.120(f)(2), 37 C.F.R. § 2.120(f)(2), when a motion to compel is filed and served, "no party should file any paper that is not germane to the motion to compel." The Board deems the proceeding suspended as of the filing date of the motion to compel. *See Jain v. Ramparts Inc.*, 49 USPQ2d 1429, 1430 (TTAB 1998). In this case, however, the Board exercises its discretion to consider Opposer's motion to compel to save time and judicial resources and to prevent further unnecessary motions.

Opposition No. 91229891

The Board has considered the arguments and evidence submitted in connection with the motion, but does not repeat or discuss all of the arguments and submissions, and does not address irrelevant arguments. *Guess? IP Holder L.P. v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015). The Board finds, initially, that Opposer has made a good faith effort, in compliance with Trademark Rule 2.120(f)(1), to resolve the discovery dispute regarding the identified discovery requests prior to seeking Board intervention and that the motion is timely.

Turning to the merits of Opposer's motion to compel, the motion is denied, in part, and granted, in part, as set forth below:

A. Requests for Production Nos. 4-6

Request for Production Nos. 4, 5 and 6 seek "settlement agreement[s] between Apple Corps and Apple Computer … concerning marks and trademarks use in commerce." Applicant objected to the requests on numerous grounds including confidentiality. In response to the motion, Applicant states that "Opposer has not shown how any portion of these agreements is relevant to his alleged priority of use."

Opposer's objections based on confidentiality are **overruled**. Parties cannot withhold properly discoverable information on the basis of confidentiality since the terms of the Board's standard protective order automatically apply to this proceeding. *See* TBMP § 412.01 (June 2016). Even responsive documents that may contain trade secrets or highly confidential matter should be produced pursuant to the appropriate tier of confidentiality set forth in the Board's standard protective order. In addition, the Board finds the document requests relevant to show the extent of Applicant's

Opposition No. 91229891

rights in the marks raised in defense of the opposition. *See Georgia-Pacific Corp. v. Great Plains Bag Co.*, 190 USPQ 193, 197 (TTAB 1976) (settlement agreements that have avoided litigation may show limitations on party's rights in mark); *see also Am. Society of Oral Surgeons v. Am. College of Oral & Maxillofacial Surgeons*, 201 USPQ 531, 533 (TTAB 1979) (relevant to show admissions against interest, limitations on rights in mark). In view thereof, Applicant additional objections are **overruled**.[14]

Accordingly, Opposer's motion to compel is **GRANTED** to the extent that Applicant must produce the portion of the identified settlement agreements concerning trademarks in response to Requests for Production Nos. 4, 5 and 6.

### B. Requests for Production Nos. 8 to 12

Opposer's Requests for Production Nos. 8 through 12 seek documents regarding the sale, license, manufacture, distribution and marketing of certain goods and services prior to 1985 related to registrations owned by Applicant and pleaded in its answer. In response to the motion to compel, Applicant states that the requests seek documents more than 30 years old related to registrations that were previously owned by an unaffiliated third party. In addition, Applicant states that "such documents are not in Apple's possession, custody, or control," and that it has, nonetheless, "undertook extraordinary efforts in working with Apple Corps to identify and produce responsive materials." 25 TTABVUE 13-14. Applicant has also identified, by Bates number, the documents already produced that Applicant believes

---

[14] While inartfully worded, the Board does not find the request vague or ambiguous.

| ESTTA Tracking number: | **ESTTA922923** |
|---|---|
| Filing date: | **09/18/2018** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Plaintiff<br>Charles Bertini |
| Correspondence<br>Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>jamesbertini@yahoo.com, iklych@yahoo.com<br>303 572-3122 |
| Submission | Motion for Summary Judgment<br><br>**Yes**, the Filer previously made its initial disclosures pursuant to Trademark Rule 2.120(a); OR the motion for summary judgment is based on claim or issue pre-clusion, or lack of jurisdiction.<br><br>The deadline for pretrial disclosures for the first testimony period as originally set or reset: **10/01/2018** |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /james bertini/ |
| Date | 09/18/2018 |
| Attachments | Opposers Motion for Summary Judgment.pdf(71246 bytes )<br>Declaration of Charles Bertini.pdf(15190 bytes )<br>Declaration of Irina Bertini.pdf(31238 bytes )<br>Declaration of James Bertini.pdf(17095 bytes )<br>Apple Exhibits.pdf(1297006 bytes )<br>Exhibits 1-12 Charlie Bertini.pdf(4482067 bytes )<br>Exhibits 13-24 Charlie Bertini.pdf(4177799 bytes )<br>Exhibits 25-36 Charlie Bertini.pdf(4729891 bytes )<br>Exhibits 37-51 Charlie Bertini.pdf(4425949 bytes )<br>Exhibits 62-73 Irina.pdf(5509007 bytes )<br>Exhibit 75 Irina Bertini.pdf(5271355 bytes )<br>Exhibits 74-83 Irina.pdf(2362920 bytes )<br>Exhibits 84-95 Charlie Bertini.pdf(4185328 bytes )<br>Exhibits 96-107 Charlie Bertini.pdf(4548847 bytes )<br>Exhibits 113-116 Charlie Bertini.pdf(5084657 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| CHARLES BERTINI, | ) | |
| | ) | Opposition No. 91229891 |
| Opposer | ) | Serial No. 86659444 |
| | ) | Mark: APPLE MUSIC |
| v. | ) | Filing Date: June 11, 2015 |
| | ) | Publication Date: May 10, 2016 |
| APPLE INC., | ) | |
| | ) | |
| Applicant. | ) | |
| | ) | |

### OPPOSER'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure § 56(a) and (g) and TBMP § 528, Opposer

hereby moves this Board for summary judgment granting his Opposition to the registration of the

mark Apple Music.  Opposer believes that the applicable records of the U.S. Patent & Trademark

Office, the pleadings, the discovery responses, the documents produced, declarations, and internet

evidence produced or submitted establish that there is no genuine issue as to any material fact and

that Opposer is therefore entitled to judgment as a matter of law.[1]

_____

[1] Opposer makes this Motion without the benefit of discovery documents that the Board ordered Applicant
to produce in its August 16, 2018 order.  The documents were due on or before September 17, 2018 and
according to 37 CFR 2.119, service of papers "must be made by email, unless otherwise stipulated."   No
other method of service was stipulated, and when I inquired today whether the disclosures were made, one
of Applicant's attorneys stated that they were sent by UPS overnight (and essentially admitting that they
were not sent by email).  However, I have not received this delivery which is not surprising since I work
alone and I am not always at my home-office to receive packages, especially when I am not given the
courtesy of a notice that service will be made by UPS which I could not have anticipated from a large law
firm with experienced IP attorneys.  Meanwhile, these attorneys know I must leave soon for their scheduled
deposition of Opposer in Florida in three days and that my deadline to file a Motion for Summary
Judgment is next week.

"The law is clear that if a party fails to comply with an order of the Board relating to discovery, the Board
may order appropriate sanctions as defined in Trademark Rule 2.120(g)(1) and Fed. R. Civ. P. 37(b)(2),
including entry of judgment." *Rgb Sys., Inc. v. Axtron Global LLC*, 2015 WL 9906644, at *2 (T.T.A.B.
Sept. 23, 2015); *see also Baron Philippe de Rothschild, S.A. v. Style-Rite Optical Mfg. Co.*, 55 U.S.P.Q.2d
1848, 1854 (T.T.A.B. 2000) (granting opposer's motion for sanctions, entering judgment against applicant
sustaining the opposition).

*Axtron Global's* holding is in complete accord with the rules governing Board proceedings. Specifically, 37
C.F.R. § 2.120(g)(1) provides: "[I]f a party fails to comply with an order of the Trademark Trial and

1

**V.       CONCLUSION**

Applicant's proposed APPLE MUSIC mark in Class 41 for entertainment services is likely to cause confusion with Opposer's APPLE JAZZ mark for which registration is sought in Class 41 for entertainment services.  Opposer's mark has been in use in commerce since 1985.  The claimed priority dates for Registration Nos. 3317089 and 4088195 are for years after 1985.  The effective filing date for Registration 2034964 is after 1985.

The Board therefore should grant summary judgment sustaining this opposition, and refusing registration of Applicant's mark.

Additionally, Applicant violated the Board's order to compel of August 16, 2018, depriving Opposer of necessary discovery documents needed for this Motion.  For that reason, the Board should strike all or part of the pleadings of the Applicant; refuse to allow the Applicant to support or oppose claims or defenses; prohibit Applicant from introducing designated matters in evidence; and enter judgment against Applicant by issuing an order that the Application is abandoned.

Opposer also requests that this case be suspended until this Motion is decided.

September 18, 2018        /s/ James Bertini_____

JAMES BERTINI
Attorney for Opposer Charles Bertini
423 Kalamath Street
Denver, CO 80204
303 572-3122
jamesbertini@yahoo.com

21

THIS ORDER IS NOT A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

MW

March 1, 2019

Opposition No. 91229891

*Charles Bertini*

*v.*

*Apple Inc.*

Before Wolfson, Kuczma, and Pologeorgis,
Administrative Trademark Judges.

By the Board:

Apple Inc. ("Applicant") seeks registration of the standard character mark APPLE

MUSIC for the following services in International Class 41:

> Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests, fairs for entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of radio programs, television programs, and sound recordings; entertainment services, namely, providing ongoing television, radio, audio programs, video programs, podcast, and webcast programs in the field of entertainment; providing audio and video programming featuring entertainment, sports, music, information, and news by means of telecommunications networks; entertainment services, namely, providing streamed and downloadable audio and video content to users through a subscription service provided online via a communication network; provision of live entertainment and recorded entertainment, namely, musical performances; providing non-downloadable audio and video programming featuring entertainment, sports, music, informational, and current events

Opposition No. 91229891

those of Opposer." 9 TTABVUE 4-5. Applicant has not introduced copies of the prior registrations into the proceeding record. *See* Trademark Rule 2.122(d), 37 C.F.R. § 2.122(d). However, Applicant asserts that the dates of first use and first use in commerce claimed in Registrations Nos. 2034964 and 4088195 predate Opposer's claimed date of first use in commerce for its pleaded mark.[3] We find Applicant's assertion of prior use, based on its claim to the dates of use in the registrations of its APPLE mark, as asserting an affirmative defense to Opposer's alleged priority of use sufficient to provide Opposer proper notice of the "tacking" defense. *See The H.D. Lee Co., Inc. v. Maidenform, Inc.*, 87 USPQ2d 1715, 1720 (TTAB 2008).[4]

## II.    <u>Standing</u>

Standing is a threshold issue that must be pleaded and proven by the plaintiff in every inter partes case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *Ritchie v. Simpson*, 171 F.3d. 1092,

---

[3] Applicant claims that Registration No. 2034964 includes a date of first use at least as early as August 1968 for "gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music." 9 TTABVUE 4. Registration No. 2034964 issued February 4, 1997.

Applicant claims that Registration No. 4088195 includes a date of first use in commerce at least as early as March 1, 1981 for the following services, inter alia:
> Digital video, audio and multimedia publishing services; providing entertainment information regarding movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; entertainment services, namely production of live musical performances; entertainment services, namely, providing live musical performances online via a global computer network; and entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network.

*Id.* at 5. Registration No. 4088195 issued January 17, 2012.

[4] Applicant does not assert any priority date with respect to Registration No. 3317089. Thus, that registration does not support Applicant's defense.

whether in the form of gramaphone records, as in the early Apple Corps days, or on prerecorded audio tape cassettes, prerecorded video tape cassettes, or audio compact discs." 40 TTABVUE 13. As two of the registrations state dates of use that predate Opposer's claimed date of first use, Applicant "seeks to tack its earlier registered uses of APPLE onto the constructive use date" for the involved application for APPLE MUSIC. *Id.* at 15. In support of its asserted tacking defense, Applicant argues that (1) the distinct portion of the APPLE MUSIC mark is identical to the mark in its prior registrations; (2) consumers are likely to focus on the "APPLE" component of the mark because it is among the most famous marks in the world; and (3) the goods and services in the involved application and prior registrations are substantially equivalent. *Id.* Based on the foregoing, Applicant argues that, at a minimum, its tacking defense raises a genuine dispute of material fact for trial.

In support of its tacking defense, Applicant has submitted the declaration of Jeffrey Vaughan Jones, Chief Executive Office of Apple Corps Limited, Applicant's predecessor-in-interest, attesting to Apple Corps Limited's use of the mark APPLE in the music and film business since the 1960's and the assignment of the mark to Applicant. 41 TTABVUE 2-3. In addition, Mr. Jones introduces exhibits demonstrating use of the mark APPLE by Apple Corps Limited. The exhibits include copies of records, record sleeves for music recordings, and films on DVD. *Id.* at 14-259.

*Guard Corp.*, 17 USPQ2d 1866, 1869, 926 F.2d 1156 (Fed. Cir. 1991), *abrogated on other grounds by Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015). It follows then that "the tacking of the use of a mark for certain goods or services onto the use of the same mark for other goods or services … should be permitted only when the two sets of goods or services are 'substantially identical.'" *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991).

Based on the record herein and the applicable law, we find that, at minimum, genuine disputes of material fact remain with respect to priority of use. In particular, genuine disputes of material fact exist as to (1) whether the goods and services with which Applicant previously used its APPLE mark are substantially identical to the services in the involved application;[16] and (2) Applicant's actual dates of first use of the marks subject to the prior registrations that form the basis of its "tacking defense."[17] Moreover, as noted supra, Applicant did not introduce status and title copies of its claimed prior registrations into the record and, therefore, has not provided evidence to support its tacking affirmative defense as it relates to these prior registrations.

---

[16] The fact that we have identified particular genuine disputes as to a material fact should not be construed as a finding that these are necessarily the only disputes which remain for trial. In addition, the parties should note that, absent an agreement between the parties, evidence submitted in connection with a motion for summary judgment or opposition thereto is of record only for consideration of that motion. Any such evidence to be considered at final hearing must be properly introduced in evidence during the appropriate trial period. *See Levi Strauss & Co. v. R. Joseph Sportswear Inc.*, 28 USPQ2d 1464 (TTAB 1993).

[17] We note that Applicant's dates of use in the claimed registrations are not evidence of Applicant's use. Applicant must establish priority of use through competent evidence of use. Trademark Rule 2.122(b)(2), 37 C.F.R. § 2.122(b)(2); *see also See UMG Recordings, Inc. v. O'Rourke*, 92 USPQ2d 1042, 1047 (TTAB 2009).

Opposition No. 91229891

In view of the foregoing and because Applicant does not dispute the likelihood of confusion between the parties' marks, Opposer's motion for summary judgment is **granted**, in part, with respect to the issue of likelihood of confusion, and **denied**, in part, with respect the issue of priority of use.

## VI.    Accelerated Case Resolution

In view of the limited issues remaining for trial, the Board strongly recommends that the parties consider resolution of this proceeding by means of Accelerated Case Resolution ("ACR"). In ACR cases, parties generally stipulate to relaxation of the Board's rules in order to streamline discovery and testimony. If the parties so desire, they could avoid a formal trial altogether and, for example, stipulate that any or all of the summary judgment evidence be treated as properly of record for purposes of final decision. Moreover, the parties may stipulate that the summary judgment motion and evidence be treated as the final record and briefs in the case, alternately with supplemental evidence and briefing. Although the Board may not decide disputed issues of fact when considering a motion for summary judgment, the parties may stipulate in an ACR proceeding that the Board may resolve genuine disputes of fact it may find to exist. If the parties agree to ACR, they could realize a very significant savings in time[18] and cost. More information about the Board's ACR options can be found on the Board's website.[19] *See also* TBMP § 528.05(a)(2) and

---

[18] Because ACR records are usually more compact than those presented on formal testimony and notices of reliance, the Board can usually render a final decision more quickly.

[19] *See* http://www.uspto.gov/trademarks/process/appeal/index.jsp.

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA963819** |
|---|---|
| Filing date: | **04/01/2019** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding | 91229891 |
|---|---|
| Party | Defendant<br>Apple Inc. |
| Correspondence<br>Address | JOSEPH PETERSEN<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>1080 MARSH ROAD<br>MENLO PARK, CA 94025<br>UNITED STATES<br>JPetersen@kilpatricktownsend.com, JGonder@kilpatricktownsend.com, Agarcia@kilpatricktownsend.com, tmadmin@kilpatricktownsend.com<br>650-326-2400 |
| Submission | Other Motions/Papers |
| Filer's Name | Joseph Petersen |
| Filer's email | JPetersen@kilpatricktownsend.com, JGonder@kilpatricktownsend.com, Agarcia@kilpatricktownsend.com, tmadmin@kilpatricktownsend.com, TDavis@kilpatricktownsend.com |
| Signature | /Joseph Petersen/ |
| Date | 04/01/2019 |
| Attachments | Applicant Motion for Reconsideration - Opp. No. 91229891.pdf(386470 bytes ) |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

Application Serial No. 86/659,444
Mark: APPLE MUSIC
Published in the *Official Gazette* on May 10, 2016

|  |  |  |
|---|---|---|
| CHARLES BERTINI, | : | |
| | : | |
| Opposer, | : | |
| | : | |
| v. | : | Opposition No. 91229891 |
| | : | |
| APPLE INC., | : | |
| | : | |
| Applicant. | : | |

## APPLICANT'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND ANSWER

## I.    INTRODUCTION

This opposition arises from Opposer Charles Bertini's attempt to enforce his alleged com-mon-law rights to the unregistered APPLE JAZZ mark for entertainment services against Appli-cant Apple Inc.'s application to register the APPLE MUSIC mark for various services in Interna-tional Class 41. Because the parties agree confusion is likely between their respective marks, the resolution of this matter ultimately will turn on which enjoys priority of rights.

In response to Opposer's motion for summary judgment on that issue, Applicant noted that "[b]ecause Opposer does not own a federal registration, he bears the burden of proving prior rights in a protectable mark as a matter of law." 40 TTABVUE 11. Applicant supported that position by referring the Board to controlling authority from the Federal Circuit. The Board, however, held otherwise in its March 1, 2019, order. Specifically, that order released Opposer from his legal obligation to prove the distinctiveness of his claimed unregistered mark as part of his prima facie

1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

Application Serial No. 86/659,444
Mark: APPLE MUSIC
Published in the *Official Gazette* on May 10, 2016

| | |
|---|---|
| CHARLES BERTINI | : |
| | : |
|     Opposer, | : |
| | : |
|     v. | : |
| | : |
| APPLE INC. | : |
| | : |
|     Applicant. | : |

Opposition No. 91229891

## **AMENDED ANSWER**

Applicant Apple Inc. ("Apple"), by its attorneys, hereby answers the numbered

paragraphs of the Notice of Opposition filed by Charles Bertini ("Opposer") as follows:

1.      Apple denies the allegations set forth in the first numbered paragraph, except

admits that on June 11, 2015 Apple filed an application to register the mark APPLE MUSIC,

which was designated Application Serial No. 86/659,444, for identified services in International

Class 41. Apple refers Opposer to the records of the U.S. Patent and Trademark Office ("PTO")

for an accurate statement of the applied-for services.

2.      Apple denies the allegations set forth in the second numbered paragraph, except

admits that Application Serial No. 86/659,444 was filed on an intent to use basis under Section

1(b) of the Trademark Act. Apple refers Opposer to the PTO records for an accurate statement of

the filing bases for Application Serial No. 86/659,444.

1

3.      Apple denies the allegations set forth in the third numbered paragraph, except admits that Application Serial No. 86/659,444 was published for opposition in the *Official Gazette* on May 10, 2016.

4.      The allegations set forth in the fourth numbered paragraph constitute a legal conclusion, to which no response is required. To the extent a response is required, Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the fourth numbered paragraph, and they are therefore denied.

5.      Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the fifth numbered paragraph, and they are therefore denied.

6.      Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the sixth numbered paragraph, and they are therefore denied.

7.      Apple denies the allegations set forth in the seventh numbered paragraph.

8.      Apple denies the allegations set forth in the eighth numbered paragraph.

9.      Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the ninth numbered paragraph, and they are therefore denied, especially any averment in that paragraph that Opposer's mark was distinctive prior to Apple's priority date.

10.     Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the tenth numbered paragraph, and they are therefore denied, except that Apple admits that the PTO records indicate that, on June 5, 2016, Opposer filed an application for APPLE JAZZ, under Application Serial No. 87/060,640, for services in International Class 41, which claims first use and first use in commerce at least as early as June 5, 1985.

2

11.    The allegations set forth in the eleventh numbered paragraph are legal conclusions, to which no response is required.

12.    Apple denies the allegations set forth in the twelfth numbered paragraph.

13.    Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the thirteenth numbered paragraph, and they are therefore denied.

14.    The allegations set forth in the thirteenth numbered paragraph are legal conclusions, to which no response is required.

15.    Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the fifteenth numbered paragraph, and they are therefore denied, except that Apple admits that it does not require, and therefore has not obtained, Opposer's consent or permission to use the mark APPLE MUSIC in connection with the services identified in Application Serial No. 86/659,444.

16.    Apple denies the allegations set forth in the sixteenth numbered paragraph.

17.    Apple denies the allegations set forth in the seventeenth numbered paragraph.

18.    Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the eighteenth numbered paragraph, and they are therefore denied.

19.    The allegations set forth in the nineteenth numbered paragraph are legal conclusions, to which no response is required.

## **AFFIRMATIVE DEFENSES**

### **First Affirmative Defense**

Apple owns trademark rights in the mark APPLE in the field of music, musical performances, and musical, cultural and entertainment events that predate those of Opposer, by virtue of Apple's ownership of the following federal trademark registrations:

3

- Registration No. 2,034,964, which covers "gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music", and claims first use and first use in commerce at least as early as August 1968;

- Registration No. 3,317,089, which covers, *inter alia*, "musical sound records; sound records featuring entertainment; sound records featuring music, musicians, documentaries, biographies, interviews, performances, reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, performances, reviews, drama and fiction; cinematographic films; musical sound recordings; musical video recordings; audio and visual recordings featuring or relating to music, entertainment and films; pre-recorded compact discs, gramophone records, video discs, DVDs, CD-ROMs ((and interactive compact discs,)) all featuring or relating to music and films; digitally recorded sound and video records; ((downloadable musical sound and video records; downloadable sound and video records featuring or relating to music, entertainment and films))"; and

- Registration No. 4,088,195, which covers, *inter alia*, "digital video, audio and multimedia publishing services"; "providing entertainment information regarding movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events"; "entertainment services, namely, production of live musical performances"; "entertainment services, namely, providing live musical performances online via a global computer network"; and "entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network", and claims first use and first use in commerce at least as early as March 1, 1981.

On information and belief, the dates of first use and first use in commerce claimed in Registration Nos. 2,034,964 and 4,088,195, predate the dates of first use and first use in commerce claimed by Opposer in the Notice of Opposition and with respect to APPLE JAZZ in Application Serial No. 87/060,640.

## **Second Affirmative Defense**

Opposer's claimed mark is descriptive because it is comprised of a a descriptive term and a geographically descriptive term, and the claimed mark lacked distinctiveness as of Apple's priority date.

4

WHEREFORE, Apple prays that this Opposition be dismissed with prejudice and the

registration of the mark shown in Application Serial No. 86/659,444 be granted.


Date: April 1, 2019                    **KILPATRICK TOWNSEND & STOCKTON LLP**

                                       By: _____
                                            Joseph Petersen
                                            Jason M. Gonder
                                            1080 Marsh Road
                                            Menlo Park, CA 94025
                                            Telephone: (650) 326-2400
                                            Facsimile: (650) 326-2422

                                            *Attorneys for Applicant Apple Inc.*

5

5.      Each party reserves the right to make all objections to the stipulated evidence (other than authenticity) in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence, including without limitation, on the grounds of competency, relevance, materiality or hearsay.

6.      The parties stipulate that any and all cross-examination of witnesses shall be undertaken upon written questions.

Nothing in this Stipulation shall prevent either party from introducing evidence to explain, clarify, or provide additional context for any fact or exhibit that forms the subject matter of this Stipulation.  This Stipulation shall not be construed as an express or implied admission of any fact not explicitly made a part of this stipulation, and shall not be construed as an express or implied admission of any issue in this proceeding.

Nothing in this Stipulation shall limit the right of either party to make any agreement with respect to any issue in this case.

The parties respectfully request that the Board approve the stipulation and agreement set forth above.

Dated: May  29 , 2019

By: /s/ James Bertini
James Bertini
Attorney at Law
423 Kalamath Street
Denver, CO 80204
*Attorney for Opposer*
*Charles Bertini*

Dated: May 29, 2019

By: _____
Joseph Petersen
Kilpatrick Townsend
1080 Marsh Road
Menlo Park, CA 94025
*Attorney for Applicant Apple Inc.*

Approved by the Board

_____, 2019

THIS ORDER IS NOT A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

MW

September 30, 2019

Opposition No. 91229891

*Charles Bertini*

*v.*

*Apple Inc.*

**Before Shaw, Kuczma, and Pologeorgis,**
**Administrative Trademark Judges.**

**By the Board:**

This case now comes before the Board for consideration of (1) Applicant's motion (filed April 1, 2019), for partial reconsideration of the Board's March 1, 2019 order, or, in the alternative, for leave to amend its answer, and (2) Applicant's motion to compel discovery (filed May 29, 2019). The motions are fully briefed.

## I.    Motion for Reconsideration

By way of background, on September 18, 2018, Opposer filed a motion for summary judgment on his likelihood of confusion claim. On March 1, 2019, the Board granted Opposer's summary judgment motion, in part, with respect to the issue of likelihood of confusion, but denied the motion, in part, with respect to the issue of

Opposition No. 91229891

As we noted above, Opposer may be put on notice that the distinctiveness of his pleaded mark is at issue in the proceeding by the assertion of a defense or other circumstances. *Giersch,* 90 USPQ2d at 1023. In this case, Opposer is on notice that the distinctiveness of his mark is at issue based on Applicant's arguments in its summary judgment brief. Thus, we find no evidence that Opposer will be prejudiced by the proposed amendment.[6] Accordingly, Applicant's motion for leave to amend its answer is **granted**. Applicant's amended answer, filed concurrently with its alternative request for leave to amend, is now its operative pleading.

### III.    Applicant's Motion to Compel

Turning to Applicant's motion to compel production of documents. Applicant seeks documents responsive to Applicant's Request for Production Nos. 11, 12, 13, and 14. Applicant also seeks an unredacted copy of Opposer's Exhibit 160, which was produced in response to the requests. Document Request Nos. 11 and 13 seek documents sufficient to show the amount of annual revenues that Opposer generated from the beginning of 1981 to the end of 1984 and the amount of advertising and promotion expenses spent on products and services for the same period under Opposer's mark or "the variant AppleJazz Records." 54 TTABVUE 22. Request Nos. 12 and 14 seek documents relating to the same information for the years 1985 to present. *Id.* at 22-23.

---

[6] At the pleading stage, we do not consider the merits of the allegations sought to be added to a pleading. Thus, Opposer's arguments that go to the merits of Applicant's newly-raised defense that Opposer's pleaded mark is descriptive and lacks distinctiveness have been given no consideration.

| ESTTA Tracking number: | **ESTTA1024347** |
|---|---|
| Filing date: | **12/20/2019** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding | 91229891 |
|---|---|
| Party | Plaintiff<br>Charles Bertini |
| Correspondence Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>jamesbertini@yahoo.com, iklych@yahoo.com<br>303 572-3122 |
| Submission | Testimony For Plaintiff |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /james bertini/ |
| Date | 12/20/2019 |
| Attachments | Declaration of Charles Bertini.pdf(64389 bytes )<br>Exhibits 1-12.pdf(4482067 bytes )<br>Exhibits 13-24.pdf(4177799 bytes )<br>Exhibits 25-36.pdf(4729891 bytes )<br>Exhibits 37-51.pdf(4425949 bytes )<br>Exhibits 58-95.pdf(6005251 bytes )<br>Exhibits 96-110.pdf(5706214 bytes )<br>Exhibits 111-112.pdf(5163984 bytes )<br>Exhibits 113-116.pdf(5085012 bytes )<br>Exhibits 117-124.pdf(5913418 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | |
|---|---|
| CHARLES BERTINI, | ) |
| | ) Opposition No. 91229891 |
| Opposer | ) Serial No. 86659444 |
| | ) Mark: APPLE MUSIC |
| v. | ) Filing Date: June 11, 2015 |
| | ) Publication Date: May 10, 2016 |
| APPLE INC., | ) |
| | ) |
| Applicant. | ) |
| | ) |

**TRIAL DECLARATION OF CHARLES BERTINI**

I, Charles Bertini, declare under penalty of perjury as follows:

1.      I am the owner of the mark APPLE JAZZ and its variant APPLEJAZZ.

2.      I submit this declaration as my direct testimony in connection with the above captioned proceeding between me, Opposer Charles Bertini ("Opposer"), and Applicant Apple, Inc. ("Applicant"). I confirm that the facts and matters set out herein are based on my own knowledge and understanding or from my review of the records and documents, which are prepared and kept in the regular course of my business and from documents available for the public via the Internet.

**I. BUSINESS AND SERVICES OF CHARLES BERTINI**

3.      I was inspired by Cortland apples when I decided to use the unique combination APPLE JAZZ for my entertainment services and as the name of a jazz band.  APPLE JAZZ was selected as the service mark since the jazz genre of music was being initially promoted in the apple producing region of Central New York State and in Cortland, New York, home of the Cortland apple.

4.      Attached as Exhibit 83, P1 is printout from Wikipedia website downloaded from URL: https://en.wikipedia.org/wiki/Cortland_(apple)  showing that **"Cortland** is a cultivar of apple, that was raised at the New York State … in 1898."

5.      Attached as Exhibit 83, pp2-3  is a printout from URL:

http://www.nyapplecountry.com/varieties/7-cortland  showing that "Cortland apples are

wonderful" and a logo containing wording "New York State Apple Country" (See logo on p2).

6.      I began using my mark APPLE JAZZ in commerce in international Class 41 at least as

early as June 5, 1985 and I have maintained continuous use in commerce of my mark to date. The

first APPLE JAZZ concert of the APPLE JAZZ band was held in the City of Cortland, New York.

7.      Attached as Exhibit 1 is a true and correct copy of a newspaper article dated June 5, 1985

about members of the APPLE JAZZ band, and advertising in this newspaper for an APPLE JAZZ

concert held in Cortland, New York.

8.      The jazz band APPLE JAZZ and its concerts, festivals and musicians are featured in the

newspapers.

9.      Attached as Exhibits 1, 5, 13, 14, 22, 23, 24, 26, 27, 28, 32, 40, 43, 87, 88, 92, 93, 96, 105

p1, 107 pp1, 2 are true and correct copies of newspaper articles related to the APPLE JAZZ band

and concerts published starting as early as June 5, 1985.

a)  Exhibit 1: the upper clipping is from the Cortland Standard newspaper on June 5, 1985,

describing the upcoming concert. The lower clipping is an ad I placed in the same newspaper.

b)  Exhibit 5: on the left is a short announcement about the AppleJazz concert that appeared in the

Cortland Standard during the first week of June 1987. The center image is of a flyer that was

distributed to local establishments in Cortland County to promote the concert, and the right image

is a photo of AppleJazz tubaist.  This appeared in the Cortland Standard the week after the June 12,

1987 concert.

c)  Exhibit 13: This events list was printed in the Community Newpapers in Cortland County to

promote the AppleJazz concert on June 9, 1989.

2

d)  Exhibit 14: This is an article from the Cortland Standard dated June 6, 1989 regarding the upcoming season of the Cortland Repertory Theatre, which includes the AppleJazz Concert on June 9, 1989. For several years, the CRT assisted in selling tickets for the AppleJazz concerts. In return, the CRT would make a commission from these ticket sales. The vertical clipping is from June 6, 1989 and it promotes the AppleJazz concert.

e)  Exhibit 22: This article is from the STARS entertainment magazine that was published by the Syracuse Herald American newspaper of Syracuse, New York, on February 9, 1992 and promotes an AppleJazz Band concert at the Salt City Center for the Performing Arts located in Syracuse, New York. The concert took place on February 15, 1992.

f)  Exhibit 23: This article is from the Syracuse Post Standard printed on January 10, 1992, and promotes the AppleJazz Band concert for February 15, 1992.

g)  Exhibit 24: This article appeared in the Cortland Standard on June 3, 1992, and promoted not only the AppleJazz Festival, but also the expansion of the festival to several contests in the Cortland County schools. This educational student program was called "Apple Jazz Too."

h)  Exhibit 26: This article appeared in the Cortland Standard on June 4, 1993, and featured the winner of the student art contest for her design of the AppleJazz Festival logo. The article also promotes the participation of two of the musical groups from Cortland High School which performed at the AppleJazz Festival on June 5, 1993.

i)  Exhibit 27: This article is from the Syracuse Herald Journal on May 23, 1993, and promotes the expanding AppleJazz Festival from a three hour concert to a ten hour concert featuring various musical groups, including the AppleJazz Band.

3

j)   Exhibit 28: This article is from a Cortland County newsletter that promotes the AppleJazz Festival, and the AppleJazz Antique & Classic Car Show. The page also features an ad along the right column for the Festival.

k)   Exhibit 32: This is a page from JAZFAX, the monthly publication of the Syracuse Jazz Society from May 1997. The phone number listed is for the Cortland Repertory Theatre, which acted as the box office for several years for the AppleJazz Festival tickets. AppleJazz paid a commission to the CRT for this service.

l)   Exhibit 40: This article is from the Syracuse Post Standard on June 5, 2003. It includes our first attempt at streaming, where listeners could call in the paper's newsline and listen to recordings of the AppleJazz Band on the phone.

m)   Exhibit 43: This is a page from JAZFAX, the monthly publication of the Jazz Appreciation Society of  Syracuse from July 2005, and it comments on the AppleJazz Festival from June 2005.

n)   Exhibit 87: This article is from the Cortland Standard on May 26, 1993 and promotes the AppleJazz Festival concert of June 5, 1993, as well as the Cortland High School musicians and the AppleJazz Antique & Classic Car Show.

o)   Exhibit 88: This is an article from the Cortland Standard from June 7, 1993 and comments on the success of the AppleJazz Festival, held on June 5, 1993.

p)   Exhibit 92: This article is from the Entertainment section of the Syracuse Post Standard in June 1999 and promotes the AppleJazz Festival in Little York, NY on June 5, 1999.

q)   Exhibit 93: This article is from the Cortland Standard in February 1999 to promote the AppleJazz Band performing at SUNY Cortland's WinterFest on February 6, 1999. The ticket proceeds benefited the college (State University of New York at Cortland).

4

r)   Exhibit 96: This article is from the Syracuse Post Standard of June 8, 2003 and is a review of the AppleJazz Band concert of June 7, 2003.

s)   Exhibit 105 p1: This article is from the Syracuse Post Standard entertainment magazine dated April 9, 2004 and describes the upcoming 20th anniversary concert of the AppleJazz Band at the AppleJazz Festival.  Alumni musicians were added to the event to celebrate 20 years of continuous concerts.

t)   Exhibit 107 p1: This photo is from the Cortland Standard on June 6, 2005 and describes the sold out concert that took place on Saturday June 4, 2005.

u)   Exhibit 107 p2: This "notebook" article is from the Syracuse Post Standard entertainment magazine dated April 21, 2005 and describes the upcoming 21st annual concert of the AppleJazz Band at the AppleJazz Festival. It clearly states that the capacity of the venue is 275 persons.

10.     I use my mark APPLE JAZZ as a part of an email address for easy identification of my business emails by my customers and vendors. Attached as Exhibit 99, p1 is my Earthlink Live Chat regarding my email account applejazz@earthlink.net that shows my sign-up date for this account as early as February 25, 1997.

11.     I registered the domain name applejazz.com on January 24, 1998 and I began offering my services under the mark APPLE JAZZ on the website applejazz.com as early as 1998 and I continue to offer my services on this website. I am the sole owner of the domain name www.applejazz.com and of the website associated with this domain name. Attached as Exhibit 146 are true and correct copies of a webpage downloaded from URL http://whois.domaintools.com/applejazz.com showing that I have been a Registrant of the domain name applejazz.com since January 24, 1998.

5

12.     Attached as Exhibits 70 and 124 are printouts from the Wayback Machine at https://web.archive.org showing copies of webpages from my website applejazz.com at different dates in the past starting from October 5, 1999.

12.1.   Exhibit 70, p1-p3 is a printout of "Summary of applejazz.com" saved by the Wayback Machine 186 times during period October 5, 1999 and September 22, 2017.  The Wayback Machine is a digital archive of the World Wide Web and other information on the Internet. The service enables users to see archived versions of web pages across time. Exhibit 70 p1 shows that website applejazz.com was active during the above period of time. The printout is downloaded from the URL: https://web.archive.org/web/*/applejazz.com

12.2.   Exhibit 70 p4-p5 is a printout of news and events page of the website applejazz.com saved by the Wayback Machine on the date October 5, 1999. Exhibit 70 p4-p5 shows that goods and services are offered to customers under the mark AppleJazz and the website copyright is 1998. The printout is downloaded from the URL:

https://web.archive.org/web/19991005224625/http://www.applejazz.com:80/events/index.htm

12.3.   Exhibit 70 p6-p7 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date October 5, 1999. Exhibit 70 p6-p7 shows that goods and services are offered to customers under the mark AppleJazz. Tickets for a live concert of AppleJazz are offered to customers. The printout is downloaded from the URL:

https://web.archive.org/web/19991005143011/http://www.applejazz.com:80/

12.4.   Exhibit 70 p8-p9 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date August 19, 2000. Exhibit 70 p8-p9 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL: https://web.archive.org/web/20000819062456/http://www.applejazz.com:80/

6

12.5.    Exhibit 70 p10-p11 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date November 28, 2001. Exhibit 70 p10-p11 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20011128183906/http://www.applejazz.com:80/

12.6.    Exhibit 70 p12-p13 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date August 02, 2002. Exhibit 70 p12-p13 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20020802184118/http://www.applejazz.com:80/

12.7.    Exhibit 70 p14-p15 is a printout of the photo gallery webpage of the website applejazz.com saved by the Wayback Machine on the date February 7, 2003. Exhibit 70 p14-p15 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20030207105216/http://www.applejazz.com:80/gallery/index.html

12.8.    Exhibit 70 p16-p17 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date February 16, 2003. Exhibit 70 p16-p17 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20030216095912/http://applejazz.com:80/

12.9.    Exhibit 70 p18-p19 is a printout of the AppleJazz event webpage of the website applejazz.com saved by the Wayback Machine on the date June 4, 2003. Exhibit 70 p18-p19

shows that goods and services are offered to customers under mark AppleJazz. Tickets are offered for sale on this webpage. The printout is downloaded from the URL:

https://web.archive.org/web/20030604122159/http://applejazz.com:80/applejazzevents/applejazz_festival.html

12.10.  Exhibit 70 p20-p21 is a printout of the AppleJazz event webpage of the website applejazz.com saved by the Wayback Machine on the date April 7, 2004. Exhibit 70 p20-p21 shows that goods and services are offered to customers under the mark AppleJazz. Tickets are offered for sale on this webpage. The printout is downloaded from the URL:

https://web.archive.org/web/20040407202147/http://www.applejazz.com:80/applejazzevents/applejazz_festival.html

12.11.  Exhibit 70 p22-p23 is a printout of the AppleJazz event webpage of the website applejazz.com saved by the Wayback Machine on the date March 11, 2005. Exhibit 70 p22-p23 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20050311032821/http://www.applejazz.com:80/applejazzevents/applejazz_festival.html

12.12. Exhibit 70 p24-p26 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date April 14, 2006. Exhibit 70 p24-p26 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL: https://web.archive.org/web/20060414033631/http://applejazz.com:80/

12.13.  Exhibit 70 p27-p28 and p31-32 is a printout of the AppleJazz event webpage of the website applejazz.com saved by the Wayback Machine on the date February 11, 2006. Exhibit 70 p27-p28,

8

p31-32 shows that goods and services are offered to customers under the mark AppleJazz. Tickets are offered for sale on this webpage. The printout is downloaded from the URL:

https://web.archive.org/web/20060211093109/http://www.applejazz.com:80/applejazzevents/apple jazz_festival.html

12.14.  Exhibit 70 p29-p30 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date February 9, 2006. Exhibit 70 p29-p30 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20060209163133/http://www.applejazz.com:80/index.html

12.15.  Exhibit 70 p33-p34 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date April 4, 2007. Exhibit 70 p33-p34 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL: https://web.archive.org/web/20070404002628/http://www.applejazz.com:80/

12.16.  Exhibit 70 p35-p37 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date May 29, 2007. Exhibit 70 p35-p37 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20070529230547/http://www.applejazz.com:80/

12.17.  Exhibit 70 p38-p41 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date April 22, 2008. Exhibit 70 p38-p41 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20080422032135/http://www.applejazz.com:80/

9

12.18.  Exhibit 70 p42-p45 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date May 28, 2008. Exhibit 70 p42-p45 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20080528204903/http://applejazz.com:80/

12.19.  Exhibit 70 p46-p48 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date August 12, 2009. Exhibit 70 p46-p48 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20090812173834/http://www.applejazz.com:80/

12.20.  Exhibit 70 p49-p51 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date January 18, 2010. Exhibit 70 p49-p51 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20100118183051/http://www.applejazz.com:80/

12.21. Exhibit 70 p52-p53 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date February 10, 2011. Exhibit 70 p52-p53 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20110210042616/http://applejazz.com/

12.22.  Exhibit 70 p54-p55 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date March 23, 2012. Exhibit 70 p54-p55 shows that goods and

10

services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20120323003646/http://www.applejazz.com/

12.23.  Exhibit 70 p56-p57 is a printout of the homepage of website applejazz.com saved by the Wayback Machine on the date October 5, 2013. Exhibit 70 p56-p57 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20131005191940/http://www.applejazz.com:80/index.php

12.24.  Exhibit 70 p58-p59 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date May 17, 2014. Exhibit 70 p58-p59 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20140517225928/http://applejazz.com/

12.25.  Exhibit 70 p60 is a printout of the AppleJazz event webpage of the website applejazz.com saved by the Wayback Machine on the date February 6, 2015. Exhibit 70 p60 shows that goods and services are offered to customers under the mark AppleJazz and AppleJazz sponsored several events throughout the year. The printout is downloaded from the URL:

https://web.archive.org/web/20150206213606/http://applejazz.com/future-concerts.htm

12.26.  Exhibit 70 p61 is a printout of the AppleJazz event production webpage of the website applejazz.com saved by the Wayback Machine on the date February 6, 2015. Exhibit 70 p61 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20150206232223/http://applejazz.com/event-production.htm

12.27.  Exhibit 70 p62-p63 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date December 16, 2014. Exhibit 70 p62-p63 shows that goods and services are offered to customers under the mark AppleJazz and a concert scheduled on January 31, 2015. The printout is downloaded from the URL:

https://web.archive.org/web/20141216192739/http://applejazz.com/

12.28.  Exhibit 70 p64 is a printout of the AppleJazz event webpage of the website applejazz.com saved by the Wayback Machine on the date April 2, 2015. Exhibit 70 p64 shows that goods and services are offered to customers under the mark AppleJazz and that AppleJazz scheduled two concerts: The Syracuse Jazz Fest and a Win-Gate Village Clubhouse Concert. The printout is downloaded from the URL:

https://web.archive.org/web/20150402021933/http://www.applejazz.com:80/future-concerts.htm

12.29.  Exhibit 70 p65 is a printout of the AppleJazz recording evaluation webpage of the website applejazz.com saved by the Wayback Machine on the date August 12, 2015. Exhibit 70 p65 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20150812155550/http://applejazz.com/recording-evaluation.htm

12.30.  Exhibit 70 p66 is a printout of the AppleJazz event production webpage of the website applejazz.com saved by the Wayback Machine on the date August 12, 2015. Exhibit 70 p66 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20150812190515/http://applejazz.com/event-production.htm

12.31.  Exhibit 70 p67 is a printout of the AppleJazz recording production webpage of the website applejazz.com saved by the Wayback Machine on the date August 12, 2015. Exhibit 70 p67 shows

12

that goods and services are offered to customers under the mark AppleJazz. The printout is

downloaded from the URL:

https://web.archive.org/web/20150812171536/http://applejazz.com/recording-production.htm

12.32.  Exhibit 70 p68 is a printout of the AppleJazz recording evaluation webpage of the website

applejazz.com saved by the Wayback Machine on the date February 29, 2016. Exhibit 70 p68

shows that goods and services are offered to customers under the mark AppleJazz. The printout is

downloaded from the URL:

https://web.archive.org/web/20160229142328/http://www.applejazz.com:80/recording-

evaluation.htm

12.33.  Exhibit 70 p69 is a printout of the AppleJazz event production webpage of the website

applejazz.com saved by the Wayback Machine on the date February 29, 2016. Exhibit 70 p69

shows that goods and services are offered to customers under the mark AppleJazz. The printout is

downloaded from the URL:

https://web.archive.org/web/20160229142231/http://www.applejazz.com:80/event-production.htm

12.34.  Exhibit 70 p70 is a printout of the AppleJazz recording production webpage of the website

applejazz.com saved by the Wayback Machine on the date February 29, 2016. Exhibit 70 p70

shows that goods and services are offered to customers under the mark AppleJazz. The printout is

downloaded from the URL:

https://web.archive.org/web/20160229143353/http://www.applejazz.com:80/recording-

production.htm

12.35.  Exhibit 70 p71 is a printout of the AppleJazz future concerts webpage of the website

applejazz.com saved by the Wayback Machine on the date February 29, 2016. Exhibit 70 p71

shows that goods and services are offered to customers under the mark AppleJazz. AppleJazz has

13

been providing live jazz concerts at Wingate since 2009. Another concert was scheduled on March 12, 2016. The printout is downloaded from the URL:

https://web.archive.org/web/20160229142428/http://www.applejazz.com:80/future-concerts.htm

12.36.   Exhibit 70 p72-p73 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date March 5, 2016. Exhibit 70 p72-p73 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL: https://web.archive.org/web/20160305085224/http://www.applejazz.com:80/

12.37.   Exhibit 124 p1-p2 is a printout of the homepage of the website applejazz.com saved by the Wayback Machine on the date June 10, 2017. Exhibit 124 p1-p2 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL: https://web.archive.org/web/20170610193357/http://applejazz.com/

12.38.   Exhibit 124 p3 is a printout of the services webpage of the website applejazz.com saved by the Wayback Machine on the date October 22, 2016. Exhibit 124 p3 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL: https://web.archive.org/web/20161022034443/http://applejazz.com/services.htm

12.39.   Exhibit 124 p4 is a printout of the recording evaluation webpage of the website applejazz.com saved by the Wayback Machine on the date October 22, 2016. Exhibit 124 p4 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL:

https://web.archive.org/web/20161022092404/http://applejazz.com/recording-evaluation.htm

12.40.   Exhibit 124 p5 is a printout of the future concerts webpage of the website applejazz.com saved by the Wayback Machine on the date October 22, 2016. Exhibit 124 p5 shows that goods

and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL: https://web.archive.org/web/20161022092407/http://applejazz.com/future-concerts.htm

12.41.  Exhibit 124 p6-p7 is a printout of the homepage of the website applejazz.com saved on the date April 1, 2018. Exhibit 124 p6-p7 shows that goods and services are offered to customers under the mark AppleJazz. The printout is downloaded from the URL: http://applejazz.com/

13.    Attached as Exhibit 58 is a printout from my website applejazz.com on date August 1, 2017 showing Charles Bertini's use of the mark APPLE JAZZ for entertainment services.   Wording on Exhibit 58 reads: "AppleJazz Band took the stage at Syracuse Jazz Fest on July 17 and 18, 2015," and "We also offer services that aid in music recording and production," and "Charlie Bertini's AppleJazz Band."

14.    I maintain a YouTube channel to promote APPLE JAZZ and to provide entertainment services. Attached as Exhibit 69 is printout of my Channel applejazz3410 on the youtube.com website showing videos I uploaded for public views featuring the APPLE JAZZ band and services provided under mark APPLE JAZZ.  The Channel applejazz3410 is totally under my control. Exhibit 69 is a printout from URL:

https://www.youtube.com/user/applejazz3410/videos?view=0&flow=list&sort=dd&live_view=500

15.    I maintain a Facebook page to promote AppleJazz and to provide entertainment services.

16.    Attached as Exhibit 122 is a printout from AppleJazz webpages on Facebook showing AppleJazz band photos, availability of tickets for AppleJazz concerts, and a copy of the newspaper article about an AppleJazz band concert. This Facebook page is exclusively under my control. Exhibit 122 is a printout from URL:

https://www.facebook.com/AppleJazz-Records-423468081107072/

17.    The AppleJazz band had its concerts on regular basis and photos of the band were taken on the day of the concerts. I saved some of these photos in my archive. Attached as Exhibits 123, 158, 159 are photos of the AppleJazz band taken in different years starting in 1984. The above Exhibits show that:

a)  Exhibit 123 p1: This photo by photographer Laura Brazak is from the AppleJazz concert at Dwyer Memorial Park in Little York, NY on May 31, 2014.

b)  Exhibit 123 p2: This poster was emailed to the AppleJazz Records mailing list, appeared on the AppleJazz Facebook page, and was also sent to the Cortland Repertory Theatre to use for their ticket promotion for the AppleJazz Band concert at the CRT theatre in downtown Cortland NY for a concert on October 28, 2017.

c)  Exhibit 158: This image was the centerfold of the program for the 20th anniversary concert of the AppleJazz Band. It was assembled by graphic artist Dave Strong for the collectible program and shows chronological photos of the band from 1984 to 2003.

d)  Exhibit 159: These are group photos of the AppleJazz Band from 2005 to 2017. These concerts were held in three different locations.

18.    Tickets were sold for concerts of the AppleJazz band on the www.applejazz.com website. For several years, the Cortland Repertory Theatre assisted in selling tickets for the AppleJazz concerts. Attached as Exhibits 29, 41, 44, 112 pp 6,7, 113 p8, 116 p2, 117 p3 are copies of some tickets saved in my archives:

a)  Exhibit 29: These are several images of actual tickets sold for AppleJazz concerts. The June 19, 1999 concert was held on the college campus of the State University of New York at Cortland.

b)  Exhibit 41: These are tickets from the June 7, 2003 concert of the AppleJazz Festival.

16

**Appx01605**

c)   Exhibit 44: This is a master plate for printing the staff ALL ACCESS credentials for the musicians, production staff, security, food services and volunteers.

d)   Exhibit 112 p6: This is a master plate for printing the staff ALL ACCESS credentials for the musicians, production staff, security, food services and volunteers.

e)   Exhibit 112 p7: This is the master plate for printing tickets for the AppleJazz festival of June 3, 2006.

f)   Exhibit 133 p8: This is a master plate for printing Table Seating tickets for the AppleJazz Festival of June 2, 2007.

g)   Exhibit 166 p2: This is a master plate for printing the staff ALL ACCESS credentials for the musicians, production staff, security, food services and volunteers.

h)   Exhibit 177 p3: These are tickets for Table Seating and Concert Seating for the AppleJazz Festival of June 4, 2011.

19.    Some customers in recent years paid for concert tickets using the PayPal (system). PayPal is an American company operating a worldwide online payments system that supports online money transfers and serves as an electronic alternative to traditional paper methods like checks and money orders.  Copies of some payments via PayPal are saved in my archive. Representative samples of PayPal records are attached as Exhibits 45, 48, 113 p4, 114 pp6-7 which are printouts from the website paypal.com showing that payments were made to AppleJazz for concert tickets. My PayPal records from recent years show that customers who purchased tickets for AppleJazz concerts are located in Florida, New York, Virginia, New Jersey, Iowa, Massachusetts, Maryland, New Hampshire, Pennsylvania, Tennessee and Canada.

17

20.     As a sole proprietor I earned revenues and incurred expenses for advertising and promotions for services provided under the APPLE JAZZ mark during every year from 1985 through November 2019.

21.     I am not an accountant, and I have no training in accounting or bookkeeping.

22.     I maintain financial records sufficient to satisfy the requirements of the federal government for taxation purposes.  My home state of Florida has no income tax. I alone pay all taxes associated with income generated from use in commerce of my mark APPLE JAZZ.

23.     For several years after 1985, I did not maintain any financial records at all, relying on my checkbook and cash for tax purposes.  I happened to save a few documents during this initial period of my business.

24.     Attached as Exhibit 2 are financial records for an AppleJazz concert in June 1985 showing revenue from tickets sales and expenses including advertising for this concert. In 1985, tickets were sold in various outlets in Cortland County in New York State and were cash sales only. This document shows the profits and expenditures for the AppleJazz concert of 1985. The ticket price in 1985 was $7.50 and shows that at $1,544.50, a total of 205 tickets were sold.

25.     Attached as Exhibits 2, 3, 7, 8, 19, 33, 34, 36, 37, 38, 39, 42, 46, 47, 50, 51, 91, 94, 104, 105p2, 119 p3, 163 are financial documents showing expenses including advertising expenses during the period 1985-2014. These include a hand written financial roster, printing costs, radio spots, ticket summary, wholesale wine costs, tent rentals, tee shirt printing, program printing, venue lease agreements, studio recording costs, lodging costs for artists, and filming costs.

26. Some copies of newspaper advertising are saved in my archive. Attached as Exhibits 4, 5, 9, 11, 12, 15, 18, 20, 21, 25, 28, 32, 35, 85, 89, 90, 95, 113 pp5-6, 114 pp4-8, 162 are copies of newspaper ads for AppleJazz concerts.

18

27.    AppleJazz concerts were also promoted by third parties. Attached as Exhibits 113 pp1-2 and 114 pp2-3 showing advertising of AppleJazz concerts by Comfort Inn and Quality Inn:

a)  Exhibit 113 pp1-2: This is a postcard that was mailed to potential festival attendees from out-of-state to offer a special hotel rate for the weekend of the AppleJazz Festival in 2007.

b)  Exhibit 114 pp2-3: This is a postcard that was mailed to potential festival attendees from out-of-state to offer a special hotel rate for the weekend of the AppleJazz Festival in 2008.

28.    For the last two months of 1995 and for years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 and 2018 I do have electronic records that can be used to generate documents showing sales revenues and advertising and promotional expenditures for services provided under the APPLE JAZZ mark.

29.    I have generated documents Exhibits 176 and 177 attached as "CONFIDENTIAL: Attorney's eyes only", which include annual revenues and expenditures for advertising and promotion for services provided under the APPLE JAZZ mark (also attached as redacted copies). From 1998 to date, among the expenditures for advertising and promotion for services for the APPLE JAZZ mark are hosting and maintenance fees for my website, applejazz.com. I alone pay all bills associated with use in commerce of my mark APPLE JAZZ. I alone receive all revenues associated with use in commerce of my mark APPLE JAZZ:

a)  Exhibit 176: This document was generated using Quicken Essentials. The top left under Categories shows the combined total deposits for the various sources of income.

b)  Exhibit 177: This document was generated using Quicken Essentials. The top left under Categories shows the combined total expenses for the listed expenses.

30.    In each of these years there were revenues and expenditures for advertising and promotion for services provided under the APPLE JAZZ mark and they are reflected in each of these

19

statements except for the expenditure statement for year 1995 because this account was created in November of that year: I incurred expenditures for advertising and promotion for services provided under the APPLE JAZZ mark prior to that date in 1995 but they are not reflected in this statement.

31.     Since I am a sole proprietor and it has never been necessary for me to separate my revenues and expenditures by source, some of these financial records contain entries that are mixed among services related to the APPLE JAZZ mark, products and other services.  Also, there are revenues and expenditures for advertising and promotion for services provided under the APPLE JAZZ mark which are located in other subcategories that are not marked as such and would be impossible for me to tease them out if I do not have the backup documents or without expending months or longer and possibly spending many thousands of dollars on accounting services.

32.     Attached as Exhibits 164, 165, 166, 170 show services provided under mark APPLE JAZZ:

a)   Exhibit 164: AppleJazz Records is a vendor for Walt Disney World Company in the Attractions Entertainment department. Many of the recordings for Disney parks in Orlando, FL, Anaheim, CA, Tokyo, Japan, Shanghai and Hong Kong China take place in Orlando.

33.     Attached as Exhibit 160 is a redacted copy of financial records for the Apple Jazz Festival for the period January 1, 1996 – July 30, 2014:

a)     Exhibit 160 attached as "CONFIDENTIAL: Attorney's eyes only": These pages are from various years of the AppleJazz Festival in all categories, showing the expenses, details and income from the years represented for 1996, 2002, 2005, 2008, 2011 and 2014.

34.     I have customers of AppleJazz in different states. Exhibit 167 is a representative sample of copies of redacted subscriptions to my mailing list showing that customers are from California, Pennsylvania and New York.  I have customers from many other states as well:

a)  Exhibit 167: Each year at AppleJazz, guests are welcome to sign up for the company's mailing list. This list would provide them with email notices and snail mail announcements about new products and services, as well as upcoming performances by the AppleJazz Band and AppleJazz recording artists. We also added customers to the mailing list who have ordered products or services online from applejazz.com.

b)  Tickets sold for APPLEJAZZ concerts purchased via PayPal customers from Florida, New York, Virginia, New Jersey, Iowa, Massachusetts, Maryland, New Hampshire, Pennsylvania, Tennessee and Canada.

c)  My email communication shows that customers appreciate AppleJazz concerts and they attend AppleJazz concerts on a regular basis. I have received many messages praising the performance of the AppleJazz Band.

35.     In the regular course of my business I create contracts.  I alone sign all contracts related to the use in commerce of my mark APPLE JAZZ.  I didn't keep all contracts made during more than 30 years of operation but representative samples of contracts are saved in my archive. Attached as Exhibits 30, 49, 86, 98 pp8-18, 111, 112 p4, 113 p3, 114 p1, 115 pp1-2, 116 p1, 117 pp1-2, 118 pp1-2, 119 pp1-2, 120, 148, 166 pp1,3, 172, 173, 174 are copies of my contracts in connection with APPLE JAZZ entertainment services.

36.     In the regular course of my business I had communications regarding business needs. Copies of some correspondence are saved in my archive. Representative samples of my communications are attached as Exhibits 6, 10, 16, 17, 31, 98, 101, 107 p3, 110, 111, 112 p3, 113 p7, 114 p5, 166 p2, 171 are copies of my correspondence in connection with APPLE JAZZ entertainment services. I alone sign all correspondence related to the use in commerce of my mark APPLE JAZZ.

21

37.     Attached as Exhibit 59 is a true and correct copy of Certificate of Registration of Service Mark issued by Department of State (State of the New York) for the AppleJazz logo for services in connection with the jazz festival, an event featuring live music by various bands. The date of registration is October 31, 1991. The Certificate states that the service mark was issued to Charlie Bertini.  I hired Syracuse, NY attorney Kerry Hanlon to research and register my mark for protection.  At that time I didn't know the difference between registration of a mark in the state and federal registration in the USPTO.

38.     Attached as Exhibit 61 is a true and correct copy of the envelope in which the above Certificate of Registration of Service Mark was delivered to me in November 1991.

39.     I have registered APPLE JAZZ Records as a fictitious name with the Florida Department of State Division of Corporations and I renew it on regular basis. Attached as Exhibit 103, pp2-5 are true and correct copies of applications for renewal of the fictitious name. Exhibit 103 p4 indicating that the fictitious name was registered on October 23, 1995 and that its owner is Charlie Bertini.

40.     Attached as Exhibit 108 is a true and correct copy of the Certificate of Registration issued by Florida Department of Revenue to APPLE JAZZ RECORDS with the effective date April 15, 1998.

41.     I registered APPLE JAZZ as my fictitious name on June 2, 2016. Attached as Exhibit 103, p1 is a true and correct copy of Application for Registration of Fictitious Name.

42.     Attached as Exhibit 84 is a true and correct copy of a confirmation letter I received from The Harry Fox Agency, Inc., the licensing subsidiary of The National Music Publishers' Association, Inc., dated September 3, 1998, showing that the above Agency represents me as APPLEJAZZ MUSIC and that they "are in receipt of authorization for representation of

22

APPLEJAZZ MUSIC" since the above date. AppleJazz has received continuous revenue from the Harry Fox Agency since 1998.

43.     Attached as Exhibits 100, 102, 106, 109, 168 are documents from my archive related to my business with The Harry Fox Agency, Inc.  Revenue is generated by sales of AppleJazz Music's published works, including but not limited to mechanical licenses, digital licenses, broadcasts, streams, and digital downloads.

44.     Attached as Exhibit 147 is a true and correct copy of a Foreign Representation Notice between Charlie Bertini of AppleJazz Music and the Harry Fox Agency ("HFA") dated August 6, 1998 which authorized the HFA to represent music publisher AppleJazz Music in various countries throughout the world.

45.     Attached as Exhibit 148 are true and correct copies of the following agreements between Charlie Bertini of AppleJazz Music and the Harry Fox Agency ("HFA") dated August 6 or 21, 1998 which authorized the HFA and through it other agencies to represent music publisher AppleJazz Music:

    A.     Mechanical (Phonorecord) Authorization

    B.     Electrical Transcription Authorization

    C.     Public Broadcasting Authorization

    D.     Synchronization Authorization

    E.     The Nashville Network (TNN) Authorization

    F.     JASRAC Authorization (JASCRAC stands for The Japanese Society of Rights of Authors and Composers)

    G.     The Fox Agency International, Inc. (FAI) Mechanical Authorization

    H.     The Fox Agency International, Inc. (FAI) Synchronization Authorization

23

46.     Since May 3, 2006 APPLEJAZZ Records has been assigned US Registrant Code from Recording Industry Association of America (RIAA). Attached as Exhibit 110 is a true and correct copy of the email confirmation from RIAA with a US Registrant Code.   An International Standard Recording Code (ISRC code) is a unique identification system for sound recordings and music video recordings. Each ISRC code identifies a specific unique recording and can be permanently encoded into a product as a kind of digital fingerprint. AppleJazz Records was assigned US-FPZ as its unique code. Every song on every recording is assigned its own code, using that prefix and then an identifying track number. The code can then be used to follow airplay, downloads, and streams, and helps my label identify which songs are listened to in any participating country.

47.     Since at least as early as October 3, 2011 I have communicated with the iTunes Store Legal Team regarding a license agreement and such communication resulted in the Cloud Service License Agreement between Applicant and AppleJazz Music signed in January 2012.

48.     Attached as Exhibit 98 is a true and correct copy of my email communication with The iTunes Store Legal Team which began On Oct 3, 2011 and the Cloud Service License Agreement between Apple, Inc. and AppleJazz Music with an effective date of January 13, 2012. Exhibit 98 shows that: (1) Apple, Inc. provided entertainment services under marks iTunes and iTunes Store; (2) Word "Apple" is used in reference to "Apple, Inc."; (3) Apple, Inc. provided Cloud Services; and (4) my services are represented under the trademark APPLEJAZZ MUSIC.

49.     None of the AppleJazz band members or any person other than me has ever claimed ownership of the mark APPLE JAZZ.

50.     I am the sole owner of the mark APPLE JAZZ and have been the sole owner since I began to use it in commerce as early as June 5, 1985.

24

51.     I have always operated my APPLE JAZZ business entirely by myself as a sole-proprietorship.

52.     During more than three decades, I have developed a reservoir of goodwill in the APPLE JAZZ service mark among a number of dedicated customers, fans, musicians and contractors of APPLE JAZZ. The attached Exhibit 112 p 2 shows the Cortland County Award for "Best Jazz Club". This distinction was from an online voting survey of Cortland County residents where they were asked to vote for their favorite businesses in the county. Attached Exhibit 112 p 5 was published by the Cortland County Chamber of Commerce and shows the cover of a brochure advertising popular attractions in Cortland County. Included in the composite photo is Charlie Bertini of AppleJazz.

53.     I have never received a cease and desist letter from Applicant or anyone on its behalf or anyone in general regarding my use of Apple Jazz or AppleJazz Music.

## II.    APPLE JAZZ APPLICATION FOR REGISTRATION AT THE USPTO

54.     On June 5, 2016 I filed an application at the USPTO to register my mark APPLE JAZZ in Class 41, Serial No. 87060640.

55.     On September 17, 2016 the application was refused due to a likelihood of confusion with APPLE, Inc. marks U.S. Registration Nos. 2034964, 4088195 and 3317089, and due to pending U.S. Application Serial Nos. 86658508, 86659444 and 86830886.

## III.    HARM IF APPLICANT IS PERMITTED TO REGISTER HIS MARK

56.     Due to the long history of APPLE JAZZ and APPLEJAZZ MUSIC and the sales of services under its mark, I believe that consumers associate such services with the mark.

25

57.    Consequently, I am concerned that consumers are likely to incorrectly believe that Applicant's services sold under Applicant's mark APPLE MUSIC include my services and that my services are not independently available.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

December 20, 2019

*Charlie Bertini* (signature)

Charles Bertini

26

# Dixieland Concert Set for June 13

Cortland area residents will have an opportunity to hear dixieland jazz the way it's played in New Orleans, according to Charles Brtini who is returning to Cortland on June 13 for a concert.

Bertini, who developed his musical skills in Cortland school systems in the '60s, is a freelance musician who performs in Florida.

"Last year we gave a performance at the Sirloin Saloon and according to the feedback we got, it was so well received that we decided to do it again," said Bertini.

"I was lucky enough to have the same musicians returning this year," continued Bertini, "and I think they are collectively just about the best there is."

Dave Hanlon, drummer, toured with Louie Belsen on clinics and concerts on the West Coast, He has performed frequently in the Syracuse area and is currently the leader of Cook Book.

Pianist Larry Arlotta played with the U.S. Navy band and was the White House Pianist for President Lyndon Johnson. He also toured with Melba Moore and played for Maynard Ferguson.

Dick Chave, trombonist, was with Bertini when he was bandmaster of the Clyde Beatty Cole Brothers Circus. He left to spend two years playing on Bourbon Street in New Orleans.

Dave Gannett, bass player, has performed with the Boston "Pops" and Boston Symphony orchestras. He also has played for the Ringling Brothers Barnum and Bailey Circus, Disneyworld and Rose O'Grady's in Orlando.

John Kane on reeds, Otisco Valley resident and a teacher, "is the best in the area in my book," according to Bertini.

Bertini, who also has a significant background, started his career at 16, playing during the summer for Charlie Spivak. After a tour as first trumpet for the Clyde Beatty Cole Brothers Circus, he left to form his own concert band for the bicentennial celebrations. He later rejoined the circus as bandmaster for three years. Bertini then settled in Orlando, Fla. where he has performed in all the theme parks.

Following his concert in Cortland on June 13, he will be on an extended engagement at Epcot Center giving daily dixieland jazz concerts.

# APPLE JAZZ '85

## FEATURING

# CHARLIE BERTINI

## THE HOTTEST TRUMPET EAST OF SAN FRANCISCO

## IN A

# DIXIELAND JAZZ CONCERT

**HOLIDAY INN**   ADMISSION $7.50        **JUNE 13   8-12 P.M.**

Tickets available from — Holiday Inn, Lido Restaurant, Four Flags, Sirloin Saloon, Johnny's Drive In, John Morgan, John Tucci & Joe Healey.

EXHIBIT 1

Appx01617

## Jazz At Little York

Charlie Bertini and Cortland Repertory Theatre are presenting Apple Jazz '87, a concert at 8 p.m. June 12 at the Pavilion in Dwyer Memorial Park, Little York Lake.

Mr. Bertini, who plays trumpet, is a graduate of Skaneateles High School as is the trombonist with the Apple Jazz Band, Dick Chave. Others in the group are Dave Hanlon, Larry Arlotta, John Kane and Dave Gannett.

For ticket information, call (607) 753-6161.



### THE CORTLAND REPERTORY THEATRE
### &
### CHARLIE BERTINI

*Present*

# Apple Jazz '87

*Featuring*

## CHARLIE BERTINI
### &
### THE
## APPLE JAZZ BAND

DAVE HANLON • LARRY ARLOTTA
DICK CHAVE • JOHN KANE
DAVE GANNETT

**JUNE 12, 1987    8 P.M.**

at

**THE PAVILION**

**DWYER MEMORIAL PARK**

**LITTLE YORK LAKE**

**Admission    $9.00**

### TICKETS AVAILABLE AT:

CRT Business Office - 37 Tompkins St. (607) 753-6161

The Candy Bar - Center City Mall

Master/Visa cards accepted

Bertini Funeral Home - N. Main St., Cortland



Bob Ellis/staff photo

### More Than Oompah

Tuba player Dave Gannett gives it his all while peforming Friday in Little York with Charles Bertini and the Apple Jazz Band. The group played to a standing room only crowd.

EXHIBIT 5

State University College at Cortland
Campus Artist & Lecture Series
proudly presents

# Winterfest '91

## A Celebration of the Arts · February 3-10

### 3rd Sunday

**Kathleen Bride**
*Harpist*
**Dowd Fine Arts Theatre 3:00 PM**



Kathleen Bride has established a reputation as a harpist of impressive musical stature. She has appeared as a soloist with orchestras, and as a recitalist has performed extensively in the United States. A member of the Juilliard Ensemble of Contemporary Music, Miss Bride has recorded for Philips and RCA Victor.

*Presented in cooperation with the Central New York Chapter of the American Harp Society, Inc.*

*A Place In The Sun*
*Old Main Film Classic Series*
**Brown Auditorium 7:30 PM**

Theodore Dreiser explores the issues of responsibility, guilt, justice and retribution in the story of three, ill-fated young people involved in a tragic triangle. From the novel *An American Tragedy*, starring Montgomery Clift, Elizabeth Taylor and Shelley Winters.

### 4th Monday

**ALL FOUR FUN**
*Sponsored by SAB*
**Corey Union Function Room 8:00 PM**



How many vocal groups sit in your lap while they sing? All Four Fun does. As they roam through the crowd, everyone gets into the act.

"This high-powered quartet knows how to whip up an audience with a crisply paced set of pop, Motown, R&B, jazz and gospel."

*A National Association for Campus Activities (NACA) 1990 Nominee for performing arts music award*

### 5th Tuesday

**The White Chapel Ringers**
**Dowd Fine Arts Sculpture Court**
**12 Noon**

On a set of 60 English Handbells, the White Chapel Ringers will bring sheer delight as they perform holiday, sacred and secular selections, under the direction of Diane Ames.



*Brown bag your lunch, and enjoy... as complimentary beverages will be provided.*

**Karen Bals**
*Pianist*
**Dowd Fine Arts Theatre 8:00 PM**

A new member of the Cortland College Faculty, Karen Bals will premiere in her first piano recital on campus. A native of Ohio, Karen will feature pieces from Beethoven's Sonata in F Minor, Mozart's Sonata in B Flat and the Toccata in D Minor by Prokofiev.

### 7th Thursday

**Serial Images in Print Media**
**Dowd Fine Arts Gallery**
**12 Noon**

A guided tour of the exhibit *Serial Images in Print Media* with discussion of process and product will be conducted by Janet Steck, gallery director.
*Brown bag your lunch, and enjoy... as complimentary beverages will be provided.*

**Joey** and...
**the Legends**
**Brown Auditorium - Old Main**
**8:00 PM**



Cortland's campus "doo-wop" group extraordinaire! Evan Abbey, Brian Murray, Joe Sheehan, Jeff Morrow, and Tracy Stewart make up this popular acapella group that formed on the campus in September of 1989... and they've been performing ever since!

### 8th Friday

**Mark Twain on Tour**
*starring*
**Ken Richters**
**Brown Auditorium - Old Main**
**8:00 PM**

Richters has given his celebrated portrayal of Mark Twain for almost a decade now, a versatile actor, singer and dancer, he has repeatedly been lauded for this inspiring performance.



*"He brings America's most celebrated humorist out of the pages of books and into the flesh once more"*
NBC Today Show

**Ticket Information:**
- All students $3.00
- SUNY Cortland Fac./Staff, Sen. Citizens $4.00
- General Public $5.00

**General Admission Seating**
**Tickets available at:**
- LOVE OF PETE: 15 Main St., 753-8325
- COREY UNION BOX OFFICE: 753-2700
   Monday - Friday 12 noon - 3 PM
   (beginning Tuesday January 22)
- ITHACA COMPACT DISC:
   220 The Commons - Ithaca
   - Remaining tickets available at the door.
   - For further information call 753-2700.

### 9th Saturday

**Charlie Bertini's**
**Apple Jazz Band**
**Brown Auditorium - Old Main 8:00 PM**



Don't be left out in the cold of winter... warm yourself with the hottest Jazz band in Upstate New York! Charlie Bertini and the Apple Jazz Band will have you toe-tappin' to your favorite Dixieland Classics performed in the unique Apple Jazz style! Celebrate Winterfest '91 with the sassy, sizzling sounds of Apple Jazz!!

**Ticket Information:**
Advanced Ticket Sale: $3.00
At the Door $5.00

**General Admission Seating**
**Tickets available at:**
- LOVE OF PETE: 15 Main St., 753-8325
- COREY UNION BOX OFFICE: 753-2700

### 10th Sunday

**Dances in Concert**
**Dowd Fine Arts Theatre 3:00 PM**



The modern dance club and dance team, under the direction of Bess Koval, present an exciting afternoon of dance in all its variety...from jazz to folk, from ballet to modern.



*Rashomon*
*Old Main Film Classic Series*
**Brown Auditorium 7:30 PM**

In his Oscar-winning classic, Kurosawa uses a masterful narrative to explore the mysteries of human behavior. It is the story of a murder and a rape, told through the testimony of the murdered man, the killer, the arresting constable and a bystander.

*All performances (with the exception of Mark Twain On Tour and the Apple Jazz Band) during Winterfest '91 are FREE* ... community.

**EXHIBIT 21**

# Bertini brews up funky music

**BY BRIAN G. BOURKE**
Staff Writer



**Charlie Bertini will perform Saturday with the Apple Jazz.**

"**A**cid Dixie" takes center stage at the Salt City Center for the Performing Arts Saturday night.

That's the name trumpeter Charlie Bertini gives to the jazz brew that's created when he teams up with the other members of Apple Jazz. The tunes come from traditional jazz and Dixieland, "but the music comes out real funky."

Apple Jazz is just one of five groups featured in "Valentunes Reunion Weekend" at Salt City, which has been renamed Consyrt Cafe for the events. There are concerts at 8 p.m. Friday and Saturday.

**BERTINI, WHO NOW** works as a free-lance trumpeter in Orlando, Fla., said his group wouldn't sound the same with any other members.

"The front line is basically the same format as in Dixieland," he said, via telephone from Orlando.

"But with (drummer) Dave Hanlon, (bassist) Ronnie France and (keyboardist) Larry Arlotta in the rhythm section, it's going to be very contemporary. We use a lot of electronics and a lot of contemporary rhythms."

Rounding out Apple Jazz are saxophonist John Kane and trombonist Dick Chave.

Bertini was born in Syracuse and raised in Cortland and Skaneateles, before he ran away to join the circus in 1970. Actually, he answered an ad in the national Musician and joined the band of the Clyde Beatty-Cole Brothers Circus. He eventually led that band, as well as the Ringling Brothers and Barnum & Bailey Circus band.

**BERTINI PLAYS** a variety of musical styles for anyone who calls. This weekend he's with Ray Charles, last week he sailed aboard the Mississippi Queen steamboat and played with the Jimmy Dorsey Orchestra. Work with the Benny Goodman

SEE **BERTINI**, PAGE 17

SYRACUSE HERALD AMERICAN — STARS — Feb. 9, 1992 — 15

---

## | Entertainment |

### BERTINI
FROM PAGE 15

Orchestra, the Four Tops and the Broadway show "City of Angels" await.

"It was a slow fall, because the convention business down here was off, so things slowed down for musicians," said Bertini, a 1970 Skaneateles High School graduate. "But I haven't had a day off since Dec. 26."

Apple Jazz was born eight years ago at a graduation party for Bertini's brother. "We had so much fun and the people who were there had so much fun, that we decided to do it again the next year." And the next year . . .

The only new member to Apple Jazz since that first party is France, who joined four years ago.

Previously, the group only performed once a year, at the summertime Apple Jazz Festival. This year's festival is set for June 6 at Little York Lake, outside of Cortland. Bertini hopes Saturday's concert can help make people aware of the June event, which will also showcase other area jazz groups.

"**THE WHOLE IDEA** is to make people aware of the Upstate New York talent. I've played all over and there's none better."

Bertini said his first paying job in music was in 1969, while he was still in high school, working at the Auburn Inn. "I really cut my teeth playing there," he said. "I learned so much." The band leader was Bobby Doyle.

Doyle will also be on hand Saturday as the Jazz Minds reunite. Joining this accomplished piano player will be his son, Mark, on bass, Dick Howard on drums and Kane on saxophone. Vocalist Joe Whiting will join the band for a few numbers. The Jazz Minds, which gets together

all too infrequently, plays a variety of standards and modern jazz tunes, marked by extensive improvisation.

**Backbone Slip**

The reunions at the "Valentunes Reunion Weekend" are limited to jazz. On Friday, longtime partners **Mark Doyle** and **Joe Whiting** will put Backbone Slip back on the front burner for an evening of high-energy rock 'n' roll.

Guitarist Doyle and singer Whiting have worked together on and off since the late '60s, including two albums for RCA Records as Jukin' Bone and three for Blue Wave as the Doyle Whiting Band and Backbone Slip. The current group brings the music that these two cut their teeth on — John Lee Hooker, Ray Charles, Willie Dixon — into the '90s.

Rounding out the band are Mike

Doyle, yet another member of this talented Auburn family, on bass, Ron Thompson on drums and Mickey Lee Soule on piano.

The younger Doyle also plays bass for Static Cling, while Thompson is a member of the Back Alley Boys, the band opening Friday's show. Soule, who recently returned to the area from Los Angeles, formerly played keyboards with Elf and Richie Blackmore's Rainbow.

Joining Backbone Slip and the Back Alley Boys — a red-hot, country-rock act — is the Backsliders, fronted by harmonica player and vocalist **Tom Townsley**.

**More music**

Traditional jazz with **Charlie Mus-**

sen & The I Love Jazz Band from Buffalo will be featured at Drumlin's, 800 Nottingham Road, DeWitt, at 5 p.m. today. Admission is $12. Call 437-0128 for more information.

● A number of classic Syracuse rock 'n' roll acts will be getting back together this afternoon to help a local musician battle emphysema. **Sam and the Twisters, Gary Dunes and the Del-Tunes, Dan Elliott and the Monterays, Too Loose, The Livin Ennd** and **The Mercurys** will perform to help with Dave Pasternak's medical expenses. Showtime is 2 p.m. at the Pump House, Bear and Pulaski streets, Syracuse. Admission is $5. Call 475-8239.

● Syracuse native **Tony Trischka** heads an all-star banjo summit visiting Jazzberry's, 50 East Ave., Rochester, at 8 p.m. Wednesday. Trischka, who's equally at home with bluegrass, jazz or classical music, will be joined by banjo players **Bill Keith** and **Tony Furtado**, as well as mandolinist **Barry Mitterhoff**, guitarist **David Grier** and bassist **Larry Cohen**. Tickets are $8 in advance, $10 at the door.

This is the first in a four-concert bluegrass and acoustic music series at Jazzberry's. Call 716-262-3660.

● **The Authority**, a funky rock 'n' roll band from New York City, is at the Zodiac, 314 S. Franklin St., in Syracuse's Armory Square neighborhood, at 9 p.m. Thursday. Admission is $7.

● Blues guitarist **Jimmy Thackery** and his band will perform at Legend's — blues fans are still in awe over his fall concert there — 917 N. Salina St., Syracuse, at 9 p.m. Thursday. Admission is $5. Call 471-9341 for more information.

### Consyrt concerts

**WHAT:** "Valtunes Reunion Weekend."
**WHERE:** Consyrt Cafe at the Salt City Center for the Performing Arts, 601 S. Crouse Ave., Syracuse.
**WHEN:** 8 p.m. Friday and Saturday.
**FRIDAY'S CONCERT:** Backbone Slip, The Backsliders, The Back Alley Boys.
**SATURDAY'S CONCERT:** Apple Jazz, The Jazz Minds.
**TICKETS:** $5 and $7, at the Salt City Center box office, SelecTix locations or by phone charge at 466-4000.
**INFO:** 638-8820.

"The whole idea is to make people aware of the Upstate New York talent. I've played all over and there's none better."

— Charlie Bertini

**EXHIBIT 22**

# WEEKEND



KATHY SCHNEIDER, EDITOR 470-2192     THE POST-STANDARD     FRIDAY, JANUARY 10, 1992/PAGE D-1

# Backbone Slip, Apple Jazz Band Plan Shows at Salt City

■ Center Consyrts postpones Dean Brothers show.

**By MARK BIALCZAK**
*The Post-Standard*

It'll be a Doyle family affair with back-to-back shows Valentine's weekend at the Salt City Center for Performing Arts.

On Friday, Feb. 14, a trio of local favorites will steam up the place with rock and blues. The night will highlight the return of Backbone Slip, the newest band for old cronies Joe Whiting and Mark

Doyle. Backbone Slip made its stage debut this summer at Cafe by the Bay and almost brought the tent down. Joining the Slip will be Mark's younger brother, Mike Doyle, on bass, Mickey Lee Soule (formerly of Richie Blackmore's Rainbow) on keyboard and Ron Thompson on drums.

It will be the Doyle brothers' first performance together.

Also on the bill Friday are the Back Alley Boys, and Tom Townsley and the Backsliders.

On Saturday, Feb. 15, Charlie

Bertini's Apple Jazz Band and Jazz Minds will take the stage in the 500-seat theater. The Apples call their mix acid jazz. Besides Bertini on trumpet, Larry Arlotta will be on keyboard, Dave Hanlon on drums, Ronnie France on bass, John Kane on sax and Dick Chave on trombone. The Apples usually play just once a year, in the summer in Cortland.

The Jazz Minds include Mark and Mike's father, Bobby Doyle, on keyboards, Kane on sax, Dick Howard on ~~bass~~ drums, Mark Doyle on jazz

bass, and Whiting as guest vocalist. Don't be surprised if Mike Doyle joins them to make it a family reunion.

Tickets will be $7 and $5, available at Salt City and SelecTix outlets at Carousel Center and Shoppingtown. They'll be the same price at the door the day of the show.

Center Consyrts promoter Jim Horsman also announced that the Dean Brothers concert, scheduled for Jan. 26, has been postponed. A date for the show at Salt City will be announced later.

EXHIBIT 23

8—Cortland Standard, Wed., June 3, 1992

*Community Living*

# Apple Jazz Fest to Expand Under Bertini's Vision

By LAURA R. JONES

Charlie Bertini lives in the Sunshine State where Central New Yorkers often envision themselves basking under the tropical heat. But despite the distance in between, this 40-year-old musician has by no means forgotten about his hometown for his vision lies here off Little York Lake.

It's a given that when this jazz great returns on an annual basis his Apple Jazz Band promises an evening of Dixieland entertainment.

But what the community may not realize is that every year he returns Bertini refines a vision that would expand the Apple Jazz Festival into a celebration featuring Central New York musicians.

This year, Bertini has accomplished a small-scale expansion including a second professional band and a program entitled "Apple Jazz Too" set at Cortland High School.

"I feel Cortland would benefit by having something to call its own," said Bertini, who ultimately wants the festival to be an all-day attraction featuring a multitude of music and about 1,000 people under one huge tent.

As a Cortland native who first picked up a trumpet at the age of 9, Bertini knows about the tremendous musical talent in the area.

"There seems to be no outlet. I want an event to showcase that talent," he said.

His vision incorporates showcasing the Central New York talent "in a setting that is relaxing for the audience and classy for the performer."

"That's what we've done so far. Bertini who resides in Orlando, Fla., and plays for orchestras, bands or recording labels as a free-lance trumpeter.

Bertini has remained in Florida ever since he left the Clyde Beatty Cole Bros. Circus which wintered there. He joined the circus at 19, recalling he had no ambitions for college "once I found out that I could make money doing something I love." He spent three years in the circus as the first trumpet player and three years as the musical director.

He has since backed up such artists as Henry Mancini, Liza Minelli, Johnny Mathis, Dionne Warwick, Robert Goulet, Burt Bacharach, The Tempations, The Four Tops and many others.

Bertini has also played first trumpet for Ray Charles' 40-piece orchestra, an achievement he terms "one of my personal highlights."

The Apple Jazz Band was founded nine years ago when Bertini and his Central New York buddies got together for a jam session for his brother's graduation party. They had so much fun Bertini decided to make it an annual event.

Three years later, bandleader Bertini wanted the Apple Jazz Band to perform at the Dwyer Memorial Park pavilion overlooking Little York Lake. Since then, Bertini and the Cortland Repertory Theater have joined forces to produce the Apple Jazz Festival.

For the first time in the festival's history, the evening will feature two bands. The Joe Whiting duo featuring a guitarist and vocalist will perform at 7 p.m. with Apple Jazz Band taking the floor at 8 p.m.

The Apple Jazz Band is comprised of former Cortland native John Kane on saxophone, Larry Arlotta of Syracuse on keyboard, Dave Hanlon of Syracuse on drums, Dick Chave of Skaneateles on trombone and "the only import," Dave Gannett of Florida, a world-reknowned jazz tuba player.

The Apple Jazz Band plays its own blend of Dixieland jazz, said Bertini. "We blend contemporary sounds with the traditional sounds of Dixieland," he added. Dixieland is an extremely popular American music, he said. "It is one of our pure art forms in America."

For the second year in a row an antique and classic car show featuring about 15 automobiles will be on display, said Bertini.

In an effort to involve the community, Bertini established "Apple Jazz Too" which will feature the Cortland High School jazz band and choir.

Bertini, who will be the guest soloist Saturday, initated an "Apple Rap" contest and a T-shirt contest to encourage student involvement.

Heidi Meulendyk was the finalist in the Apple Rap contest and Michael Lockwood was the finalist in the 1992 Apple Jazz T-shirt design contest. Each student will perform and display their talents during the "Apple Jazz Too" program Saturday at 7 p.m. in the high school auditorium.

Bertini hopes his complete vision will be realized next year, but first he must attract sponsorship. He plans to approach corporate sponsors in Cortland.

The Joe Whitting duo will perform Friday at 7 p.m. at Dwyer Memorial Park followed by Bertini and the Apple Jazz Band. For more information, call CRT at 753-6161.





Kim Bauldree/staff photo

Heidi Meulendyk performs her winning rap song in the Apple Rap contest. Michael Lockwood, who also strikes a rapper pose, was the finalist in the Apple Jazz T-shirt design contest. Both Cortland High School students will display their talents as part of the "Apple Jazz Too" program to be held Saturday. The program will feature the CHS jazz choir and jazz band with guest artist Charlie Bertini, left, who is shown wearing Lockwood's T-shirt design.

EXHIBIT 24

## 10th Annual Visit to Cortland:
# Charlie Bertini Brings Rich Jazz, Music to Festival



*CHARLIE BERTINI*


CHARLIE BERTINI

**APPLE JAZZ WILL JAM IT UP FOR THE 10th STRAIGHT YEAR**

. . Cortland's Charlie Bertini returns June 5th in concert.

What's home-grown, hot and a sure sign of Spring? AppleJazz, of course, the variety that local music-lovers have enjoyed in early June for the last decade.

Brainchild of Cortland native Charlie Bertini, AppleJazz is now a full-grown festival and a state of mind for jazz lovers who like their Dixieland a bit different.

Bertini, a trumpeter of international acclaim, likes to describe his type of music as "acid" Dixie. He and his band reunite in Cortland each year to bring a unique, contemporary flair to yesterday's jazz and big band sounds. The effect is always memorable.

"It all started as an unrehearsed jam session to celebrate my brother's graduation from law school in 1984," Bertini recalled. "It was such a great party that we decided to make it an annual event so everyone in Cortland could enjoy it."

The band brings together the colorful talents of musicians from throughout Upstate New York, including a keyboardist who is in demand for recordings and solo performances, a drummer who usually lends his talents to his own rock band, and saxophone, trombone and trumpet players who blend their differenbt styles into a one-of-a-kind sound.

Bertini's own background is just as colorful. A product of the Cortland School District's music system under the direction of Corky Fabrizio, Charlie got restless in ninth grade and decided to start his own dance band. Upon graduation, he took to the road and toured for six years with the Clyde Beatty - Cole Bros. Circus as first trumpeter and, later, conductor.

He has been a freelance trumpeter ever since, affiliated with stage shows for such greats as Patti Page, Mel Torme and Al Martino, and he's had stints at DisneyWorld and Rosie O'Grady's in Orlando, Florida.

Bertini also spent four years with Circus World as first trumpeter and conductor and then landed a job as musical director with the Ringling Brothers and Barnum & Bailey Circus.

Charlie Bertini's love of music has taken him to 45 states as well as Europe and China. He has played with Burt Bacharach, Henry Mancini, Johnny Mathis and Lisa Minelli and has been called on to join the Florida Symphony Orchestra for demanding pops concerts.

Most recently, Charlie has played with the Jimmy Dorsey Orchestra and Bill Allred's Classic Jazz Band. He is a teacher and clinician in the music department at the University of Central Florida in Orlando.

At the ripe old age of 41, Bertini has seen the world, and his ticket has been his trumpet. But he still looks forward each year to coming home to jam with his friends.

Because he is proud of his own musical beginnings, Bertini's dream is to eventually involve the music programs from all of Cortland County's schools in the annual jazz event.

This year, prior to the AppleJazz Band's jam session, the Festival will feature performances by the Cortland High School Jazz Ensemble and Jazz Choir, directed by Manny Medeiros.

Make AppleJazz a part of your plans for Cortland Festival Weekend. When you hear Charlie's band perform, you'll be glad you did.

---

**AT A GLANCE
CHARLIE BERTINI'S APPLEJAZZ BAND**

WHEN: Saturday, June 5, 6:30 p. m.

WHERE: Dwyer Memorial Park Pavilion, Little York

TICKETS: $12. Call the Cortland Repertory Box Office at 753-6161. Tickets are also available at Bertini Funeral Home.

FEATURED PERFORMERS:
Guest Vocalist: Linda Mironti
Trumpet: Charlie Bertini
Saxophone: John Kane
Trombone: Dick Chave
Drums: Dave Hanlon
Keyboards: Larry Arlotta
Tuba: Dave Gannett

ADDITIONAL ATTRACTIONS: AppleJazz Antique and Classic Car Show, Entrance to Dwyer Memorial Park.

(Beer, wine and sandwiches will be available during the performance. A portion of the concert's proceeds will benefit Cortland Repertory Theatre.)


**APPLE JAZZ FESTIVAL**

The **AppleJazz Band**
featuring


LOVELL FIELD, MARATHON, NEW YORK
Exit #9 from I-81
A Super Two Day Indoor-Outdoor
**ANTIQUE SHOW**
9:00 AM - 6:00 PM Sat June 12th $3.00
(Early Birds in at 7:30 AM Sat. $10.00)
9:00 AM - 4:00 PM Sun June 13th $3.00

A brand new indoor-outdoor show with one hundred dealers who will be during our restoration-era the Heavenly dawn, all kinds of quality advertising items, dolls, jewelry, prints and paintings, toys and all sorts of furniture from kitchen to formal. Be prepared to find the unusual, rare or out of the ordinary too!

Watch for ads which describe activities which are being planned.
See the display of old restored automobiles.
Food served inside by the LOVELL FIELD Building Committee both days.
For more info: Fred Wilson 607-753-1076   WILSON'S ANTIQUE SERVICES

**PLEASE CALL FOR DEALER SPACE**

---

TELEPHONE: (607) 749-7296

**RYAN & RUMSEY**
ATTORNEYS AND COUNSELORS AT LAW

JOHN T. RYAN, JR.
PHILLIP R. RUMSEY

BANK BUILDING
25 SOUTH MAIN STREET
P.O. BOX 310
HOMER, NY 13077-0310

TIMOTHY A. ZECHES          BRUCE R. ZECHES

*Compliments of*

**WRIGHT-BEARD FUNERAL HOME INC.**
9 Lincoln Ave., Cortland
756-2885

LAWRENCE G. WRIGHT          BRAD VAN ATTA

**SAMMONS COMMUNICATIONS**

224 Tompkins Street
Cortland, New York 13045

**Crane's LITTLE YORK PLANTATION**

Producers of:
• Herbaceous Perennials
• Flower and Vegetable Plants
• Trees and Shrubs
• Herbs
• Hanging Baskets
• Bonsai
• Fresh and Dried Flowers and Arrangements

Rte. 281, Box 78
Little York, NY 13087
Jackie and Dick Crane          607/749-4861

Phone: 749-2277

**Homer Coiffeur**
EVA NARROW

21 South Main Street
Homer, NY 13077

Your Hair Fashion
& Tanning Salon



**EXHIBIT 28**

**CORTLAND AVIATION**
...land County Airport

Mary V. Mousgeier
President

**SIGHTSEE FLIGHTS**

Flight Training Center
Professional Pilot Programs
Aviation Maintenance Facility
Avionics Repair Facility
Avgas Sales

922 N.Y.S. Rte. 222
Cortland, New York 13045
(607) 753-3000
Fax: 1 (607) 753-1895

Appx01644



Home    About Us    AppleJazz Events    Services    Music Store    Contact Us    Links

## Welcome to AppleJazz

**Exhibit 58**



### New Release

John Allred & Charlie Bertini
LIVE & UNPLUGGED!

Click for more info



*AppleJazz Band Final Festival
Now on DVD & Bluray*

To learn more and purchase...
click here



*We had an absolute blast performing for the Syracuse Jazz Fest on July 17 and 18, 2015. The AppleJazz Band took the stage on Friday night to an enthusiastic but rainy crowd. Click here for the album of amazing photos taken by Sandy Roe:*
*https://www.facebook.com/pages/AppleJazz-Records/423468081107072*

*Then on Saturday, five of the AJZ members played in Aretha Franklin's band: Charlie Bertini, John Allred, Terry Myers, Andy Calabrese and Mark Doyle. The Queen of Soul was in top form and sang for 90 minutes to a crowd of 40,000 fans on a beautiful summer night. What an honor it was to be a member of her band! Thanks to Frank Malfitano for inviting us to perform at Syracuse Jazz Fest 2015*

## Featured Albums


*FULL CIRCLE*
Wayne Bergeron
Check it out


*LIVE & UNPLUGGED!*
John Allred & Charlie Bertini
Check it out


*CHLOE*
Orlando Jazz Orchestra
Check it out


*TO FRED WITH LOVE*
2-disc set
Check it out


*TRIOLOGY*
Charlie Bertini
Check it out


*LIVE AT APPLEJAZZ*
Ronnie Leigh
Check it out


*PLAYS WELL WITH OTHERS*
Wayne Bergeron
Check it out


*CLASSIC PERFORMANCES*
Charlie Bertini's AppleJazz Band
Check it out


*FOCUSED*
John Allred
Check it out


*JEWELS*
Charlie Bertini
Check it out

We offer online sales of Jazz, Big Band, and Swing album CDs, of unique, emotional recordings of independent jazz artists, as well as merchandise for the jazz enthusiast. We also offer services that aid in music recording and production.

*State of New York - Department of State*

# Certificate of Registration of Service Mark

I, GAIL S. SHAFFER, SECRETARY OF STATE OF THE STATE OF NEW

YORK, do hereby CERTIFY that in accordance with the application filed in this office on the

29th     day of        October      , 19 91 , the SERVICE MARK described

below has been duly registered in this Department pursuant to Article 24 of the General Business

Law, in behalf of ........................... Charlie   Bertini ...........................
                                            Name

.......... 6676 Tanglewood Bay Apt 712/Orlando, FL ..........
                                       Address

**Exhibit 59**

Description of Service Mark and Services for which mark is used:

```
         AppleJazz with the 'a' in Apple in lower
         case and is a part of a sliced apple


      Used in connection with a jazz festival, an event
      featuring live music by various bands
```



| | | |
|---|---|---|
| | Registration No. | S-12831 |
| Date of Registration:   10/31/91 | Registration Expires: | 10/31/01 |
| Date First Used In NEW YORK STATE:   1986 | | |
| Date First Used Elsewhere In The U.S.:   --- | | |

WITNESS my hand and the seal of the Department

of State at the City of Albany, this ...... 31st ......

day of ............ October ............ 19 .. 91 ..

Appx01669







Exhibit *69 p1*

**applejazz3410**

Home   Videos   Playlists   Channels   Discussion   About

Subscribe   32

Uploads ▾     Date added (newest) ▾   List ▾



**AppleJazz 20th anniversary tribute video 2004**
1 year ago • 164 views
This video was shown at AppleJazz in June 2004 to celebrate the 20 years of AppleJazz concerts in Upstate New York, Cortland County....



**AppleJazz 30th Anniversary - The Final Festival Concert OFFICIAL VIDEO**
1 year ago • 2,105 views
AppleJazz 30th Anniversary - The Final Festival Concert
...



**AppleJazz Band Homer**
2 years ago • 224 views
Trailer for the upcoming AppleJazz Band concert at the Center for the Arts of Homer, NY on October 3, 2015. Featuring Charlie Bertini, John Allred, Mark Doyle, Ronnie France, Ronnie...



**AppleJazz 30th Anniversary Video Trailer**
2 years ago • 498 views
This trailer is promoting the fund raiser for the film of the 30th anniversary AppleJazz concert which took place on May 31, 2014. The release of the BluRay/DVD package is July 4...



**Lauren-Jessica Bertini Into The Woods**
4 years ago • 469 views
Lauren-Jessica Bertini performs HELLO LITTLE GIRL and I KNOW THINGS NOW as Little Red Riding Hood from Into The Woods by Stephen Sondheim. Performed by the Dr Phillips High...



**Ronnie Leigh Stompin' At The Savoy**
4 years ago • 487 views
Ronnie Leigh sings Stompin' At The Savoy with TRIOLOGY at the Wingate Clubhouse, Orlando, FL on March 15, 2013. Musicians are Charlie Bertini, trumpet; Terry Myers, sax; Jeff...

**Ronnie Leigh Teach Me Tonight**
4 years ago • 1,005 views
Ronnie Leigh sings Teach Me Tonight with TRIOLOGY at the Wingate Clubhouse Orlando, FL March 15, 2013....



**Ronnie Leigh All Blues**
4 years ago • 253 views
Ronnie Leigh sings All Blues with TRIOLOGY at the Wingate Clubhouse March 15, 2013.
Musicians are Charlie Bertini, trumpet; Terry Myers, sax; Jeff Phillips, keyboard; Charlie Silva...



**Lauren-Jessica Bertini Count Your Blessings**
4 years ago • 224 views
Lauren-Jessica Bertini performs Count Your Blessings from the musical White Christmas by
Irving Berlin. The concert is the group TRIOLOGY performing at Wingate Clubhouse, Orlando,...



**Lauren-Jessica Bertini The Girl in 14 G**
4 years ago • 289 views
Lauren-Jessica Bertini performs 14 G on stage at Dr. Phillips High School 2013.



**Lauren-Jessica Bertini at AppleJazz 2011**
6 years ago • 380 views
Lauren-Jessica Bertini performs at the annual AppleJazz concert in Upstate New York on
June 4, 2011. Beatles songs "I Want To Hold Your Hand" and "Oh, Darlin" inspired the film...



**Lauren-Jessica Bertini "CAN YOU HEAR IT?" Official Video**
8 years ago • 2,211 views
Lauren-Jessica Bertini in a video from her new album "Can You Hear It?" on AppleJazz
Records. Composed by Lauren-Jessica Bertini. Mixed by Veit Renn. Videotaped in Cortland,...



**Charlie Bertini Begin the Beguine**
9 years ago • 4,250 views
Charlie Bertini, trumpet soloist with Bill Allred's Classic Jazz Band. Charlie Bertini, Bobby
Pickwood-trumpets, Bill Allred, John Allred-trombones, Terry Myers-sax, Jay Mueller-bass,...



**Lauren-Jessica Bertini sings Star Spangled Banner**
9 years ago • 1,177 views
Recorded live at AppleJazz concert on May 30, 2008 in Upstate New York.

**Exhibit *69 p2***



About   Press   Copyright   Creators   Advertise   Developers   +YouTube

Terms   Privacy   Policy & Safety   Send feedback   Test new features



http://www.applejazz.com:80/events/index.htm   Go

**4 captures**
5 Oct 1999 - 22 Jan 2001

SEP OCT NOV
◀ **05** ▶
1998 **1999** 2001

About this capture







**E V E N T S**

AppleJazz Festival
Scholorship Fund

**MERCHANDISE**

Albums and Pricing
T-Shirts and Hats

**ABOUT US**

Company Biography

**CONTACT US**

## THE APPLEJAZZ FESTIVAL

The AppleJazz Festival began in 1984 as a jam session in Cortland, NY, and has continued annually ever since. Held each year in early June in Cortland County, this festival is small and unique, drawing 600 people for a day of Jazz, Dixieland, and family picnicking. Antique cars and an idyllic setting add to the atmosphere of this lovely event. Musicians are from the local Syracuse/Cortland area, however some are flown in from Florida and Alabama. Occasional musicians from New York City have stopped in to sit in with the bands, and the audience enjoys the spontaneity of the music on stage. Trumpeter, bandleader, and artistic director Charlie Bertini heads up the ceremony and has done so since the Festival's beginning.

Some of the artists who have appeared at AppleJazz are:

DAVE GANNETT, LARRY ARLOTTA, RONNIE LEIGH, DAVE HANLON, RONNIE FRANCE, DICK CHAVE, JOE WHITING, TOM RAU, MARVIN STAMM, JOHN ALLRED, BILLY DICOSIMO.

## CHARLIE BERTINI INSTRUMENTAL MUSIC SCHOLARSHIP

The Fulvio and Ann Bertini family has established the CHARLIE BERTINI INSTRUMENTAL MUSIC SCHOLARSHIP at St. Mary's School. This scholarship is awarded annually in June and provides partial funding for instrumental music lessons for selected St. Mary's School students in grades 4, 5, and 6. The general amount of the scholarship award has been $200 per student. (Because of budget constraints, St. Mary's School does not provide individual music lessons at school.)

There is an application process for this scholarship. The applying student(s) must show a strong desire for playing music, and the willingness to apply the commitment and discipline necessary for instrumental development. Recommendations from the applications are made by the band director, and the final decision is made by Charlie Bertini, or Charlie's family if he is not available.

Anyone wishing to contribute to the CHARLIE BERTINI INSTRUMENTAL MUSIC SCHOLARSHIP may do so by sending donations to the school address below.

Web Architecture by
CD Media, Inc.

**ST. MARY'S SCHOOL**
61 North Main Street

**Exhibit 70 p4**

**Appx01676**

AppleJazz Online Sale of Music Records and Tickets

## Exhibit *70 p27*

http://www.applejazz.com:80/applejazzevents/applejazz_festival.html   Go



MAR **FEB** APR

◄ **11** ►

2005 **2006** 2007

  



**26 captures**
7 Dec 2002 - 18 Nov 2008

▼ About this capture



**Home**

**About Us**

**AppleJazz Events**

**Online Music Store**

**Gallery**

**Contact Us**

**APPLEJAZZ FRIENDS**

**AppleJazz Records**
10825 Wheaton Court
Orlando, FL 32821
Toll Free 888-241-2464
info@applejazz.com

*AppleJazz Events: The AppleJazz Festival*

The AppleJazz Festival began in 1984 as a jam session in Cortland, NY, and has continued annually ever since. Held each year in early June in Cortland County, this festival is small and unique, drawing 600 people for a day of Jazz, Dixieland, and family picnicking. Antique cars and an idyllic setting add to the atmosphere of this lovely event. Musicians are from the local Syracuse/Cortland area, however some are flown in from Florida and Alabama. Occasional musicians from New York City have stopped in to sit in with the bands, and the audience enjoys the spontaneity of the music on stage. Trumpeter, bandleader, and artistic director Charlie Bertini heads up the ceremony and has done so since the Festival's beginning.

This year's concert will be held on June 3, 2006, at our original location, The Pavilion at Dwyer Memorial Park in Little York (Preble), New York. Whether you prefer a seat away from the stage or wish to be within handshaking distance of the AppleJazz musicians, this is an event you won't want to miss.

Click here for tickets and more information.

Some of the artists who have appeared at AppleJazz are:

| | |
|---|---|
| Patrick Ahearn | Dave Gannett |
| Bill Allred | Dave Hanlon |
| John Allred | Bill Harris |
| Ava Andrews | Tom Haskell |
| Larry Arlotta | John Kane |
| Loren Barrigar | Ronnie Leigh |
| Bear Cat Jazz Band | Will Lessard |
| Charlie Bertini | Dino Losito |
| Dick Chave | Linda Mironti |
| Cortland High Jazz Band | Nick Palumbo Quintet |
| Cortland High Jazz Choir | Jeff Phillips |
| Gabe Cummins | Tom Rau |
| Peter Dean | Jim Reagan |
| Billy Dicosimo | Marvin Stamm |
| Dave Feinstein | Joe Whiting |
| Ronnie France | Jamie Yaman |

## Click here to Get Info and Tickets for AppleJazz 2006!

Web Design & Hosting by

Back to AppleJazz Events

**Appx01699**

http://applejazz.com/future-concerts.htm    Go

7 captures
6 Feb 2015 - 22 Oct 2016

JAN **FEB** APR
◀ **06** ▶
2014 **2015** 2016

 

About this capture

  

**Exhibit *70 p60***

| Home | About Us | AppleJazz Events | Services | Music Store | Contact Us | Links |

## Welcome to AppleJazz Future Concerts

AppleJazz is happy and proud to be able to sponsor several events throughout the year to encourage and promote the exhibition and sale of jazz music throughout the country. A couple of these events are listed below:

Win-Gate Village Clubhouse Concert

If you would like more information about holding or promoting an AppleJazz event, please contact us at: events@applejazz.com.

2014 AppleJazz Records All Rights Reserved. Please see our Privacy Policy

**Appx01732**

AppleJazz Merchandise

http://applejazz.com/event-production.htm    Go    JAN  **FEB**  APR
8 captures                                   ◀  **06**  ▶
6 Feb 2015 - 22 Oct 2016                      2014 **2015** 2016    ▼ About this capture



**Exhibit *70 p61***

Home    About Us    AppleJazz Events    Services    Music Store    Contact Us    Links

# Event Production

AppleJazz Records has been producing concerts since 1984. We are committed to creating memorable and unique concerts that will suit your needs. We have dedicated ourselves to making concerts into events – not just the music, but providing the atmosphere that makes your concert into a multi-sensory experience.

2014 AppleJazz Records All Rights Reserved. Please see our Privacy Policy



Exhibit *70 p62*

http://applejazz.com/   Go

**186 captures**
5 Oct 1999 - 22 Sep 2017

◀ MAY 2013   DEC **16** 2014   MAY ▶ 2016

 

# Welcome to AppleJazz



TRIOLOGY at Wingate! Featuring Michael Andrew
January 31, 2015



Thanks to all of our family and friends who have made the AppleJazz Festival a success for 30 years! It was a great celebration!

Watch for the AppleJazz Band making an appearance near you sometime soon!

 

**Holiday special**, purchase **Christmas Cookies and Fresh Batch for $10.00 each**

Click an album to purchase

We offer online sales of Jazz, Big Band, and Swing Albums and CDs, with unique, emotional recordings of independent jazz artists, as well as merchandise for the jazz enthusiast.

We feature such artists as Charlie Bertini, Bill Allred's Classic Jazz Band, John Allred, Terry Myers, Eddie Metz, Marvin Stamm and Allan Vaché along with a whole host of other incredibly talented jazz musicians.

AppleJazz Records began with promoting the recordings of the "AppleJazz Band", a festival band that performs once a year at the AppleJazz Festival in upstate New York. This concert is recorded "live" each year, and much of the recorded material is well worth releasing. The "AppleJazz" label was formed to manufacture CDs to be sold at The AppleJazz Festival and other similar festivals across the US. By keeping costs low and applying a great attention to detail and the artistry behind the music, AppleJazz has been able to provide unique, emotional

## Featured AppleJazz Albums



### *LIVE & UNPLUGGED!*
*John Allred & Charlie Bertini*
Check it out



### *CHLOE*
*Orlando Jazz Orchestra*
Check it out



### *TO FRED WITH LOVE*
2-disc set
*Check it out*



### *TRIOLOGY*
*Charlie Bertini*
Check it out



### *LIVE AT APPLEJAZZ*
*Ronnie Leigh*
Check it out

### *PLAYS WELL WITH OTHERS*



*Wayne Bergeron*
Check it out



### *CLASSIC PERFORMANCES*
*Charlie Bertini's AppleJazz Band*
Check it out



### *FOCUSED*
*John Allred*
Check it out



### *CAN YOU HEAR IT*
*Lauren-Jessica Bertini*
Check it out

### *JEWELS*
*Charlie Bertini*
Check it out

AppleJazz Merchandise

http://applejazz.com/event-production.htm                                    Go       APR   AUG   FEB

8 captures                                                                    ◄    12    ►
6 Feb 2015 - 22 Oct 2016                                                      2014  2015  2016       ▾ About this capture



**Exhibit *70 p66***

Home        About Us        AppleJazz Events        Services        Music Store        Contact Us        Links

## Event Production

AppleJazz Records has been producing concerts since 1984. We are committed to creating memorable and unique concerts that will suit your needs. We have dedicated ourselves to making concerts into events – not just the music, but providing the atmosphere that makes your concert into a multi-sensory experience.

2015 AppleJazz Records All Rights Reserved. Please see our Privacy Policy

**Appx01738**

http://applejazz.com/recording-production.htm    Go

8 captures
6 Feb 2015 - 22 Oct 2016

APR **AUG** FEB
◀ **12** ▶
2014 **2015** 2016
▾ About this capture



**Exhibit *70 p67***

Home    About Us    AppleJazz Events    Services    Music Store    Contact Us    Links

## Recording Production

With over 90 recordings as producer to his credit, Charlie Bertini can help make your recording into a first class production. Charlie and AppleJazz Records have a reputation for organization, licensing knowledge, studio savvy, people skills, budget preparation, artwork layout, musical knowledge, and conducting musical groups and ensembles.

Whether you need a producer to oversee your entire project from beginning to end, or just someone to make some suggestions for your project, we can help you at any level of production.

No job is too large or too small. We realize that recording is a personal endeavor and something that lasts forever. We can help make yours be the best it can be.

2015 AppleJazz Records All Rights Reserved. Please see our Privacy Policy

Google



**THE HARRY FOX AGENCY, INC.**
a subsidiary of NATIONAL MUSIC PUBLISHERS' ASSOCIATION, INC.

**Exhibit 84**

EDWARD P. MURPHY, President
Chief Executive Officer

September 3, 1998

Mr. Charlie Bertini
**APPLEJAZZ MUSIC**
10825 Wheaton Court
Orlando, FL  32821

Re: Representation
    Our Reference Number G-270

Dear Mr. Bertini:

Welcome to **The Harry Fox Agency, Inc.**

This letter is to confirm that we are in receipt of the signed authorizations for
representation of **APPLEJAZZ MUSIC** by **The Harry Fox Agency, Inc.**, the
licensing subsidiary of **The National Music Publishers' Association**.

We are happy to list **APPLEJAZZ MUSIC** among our roster of clients and
look forward to serving your licensing needs.

Sincerely,

Edward P. Murphy

EPM:tf

711 THIRD AVENUE, NEW YORK, NEW YORK 10017  (212) 922-3260  FAX: (212) 953-2471

**<u>Cloud Service License Agreement</u>**     **Exhibit 98 p8**

This license agreement (the "<u>Agreement</u>") is between Apple Inc., having its principal place of business at 1 Infinite Loop, Cupertino, CA 95014 ("<u>Apple</u>"), and **AppleJazz Music,** having its principal place of business at 10825 Wheaton Court, Orlando, FL 32821-8729 ("<u>Publisher</u>"), and is entered into as of January 13, 2012 (the "<u>Effective Date</u>").

WHEREAS Apple and Publisher now wish to enter into this Agreement to authorize Apple to permit iTunes Store end users to (i) simultaneously download to multiple computers or devices copies of content that the end users acquire from the iTunes Store, and (ii) re-access copies of such previously acquired content; and to authorize Apple to provide a paid-for service to iTunes Store end users to back up and access their content collections remotely,

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the parties agree as follows:

1.     <u>Definitions</u>.  The following terms shall have the following meanings as used herein:

(a)     "<u>Aggregate Monthly Cloud Service Fees</u>" means the total amount of Cloud Service Fees actually received by Apple from all Cloud Service Users during a particular month; provided that one twelfth (1/12) of an annual Cloud Service Fee shall be deemed received each month during the year following the payment.  For purposes of determining the number of Cloud Service Users for the foregoing calculation in a given month, each partial-month Cloud Service User (i.e., each user who begins or ends his or her access to the Cloud Service during the applicable month) shall be counted as one, multiplied by a fraction that is equal to the number of days that such user is a Cloud Service User during the applicable month, divided by the number of days in the month.

(b)     "<u>Audio Fingerprinting Technology</u>" means state of the art technology utilized by Apple to determine to a commercially reasonable level of certainty that a sound recording, music video or ringtone in a Cloud Service User's iTunes Content Library, i.e., content that is stored in the library of an end user's iTunes client, is the same sound recording, music video or ringtone in its entirety as a particular eMaster.

(c)     "<u>Cloud Access</u>" means each time a Cloud Service User accesses a piece of content in his or her Cloud Service Library using the Cloud Service, consistent with the Content Access Rules (whether via download or streaming).

(d)     "<u>Cloud Service</u>" means the remote server backup and access service described in Paragraph 2(b) below.

(e)     "<u>Cloud Service Fee</u>" means the retail price, less applicable taxes (if any), charged by Apple to an end user for participation in the Cloud Service.  For the

13.    <u>Governing Law</u>.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of California, without regard to principles of conflict of laws.  The Parties agree that any proceeding relating to this Agreement will take place in the state or federal courts of California; and both parties hereby waive the right to object to that choice of law, personal jurisdiction or venue.

14.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same document.

**APPLE INC.**

By: _____

Name: _____

Title: SVP I SW & SVCS

**AppleJazz Music**

By: _____  1-23-2012

Name:  CHARLIE BERTINI

Title:  PRESIDENT

**Exhibit 98 p17**

## MUSIC



Exhibit 105 p1

File photo / Suzanne Dunn, 1996

**DAVE HANLON** is one of a number of area jazz musicians scheduled to take part in the 20th Apple-Jazz festival in June at Dwyer Park Pavilion in Little York.

# AppleJazz Festival on the map



**MARK BIALCZAK**
MUSIC NOTEBOOK

The Apple-Jazz Festival celebrates its 20th anniversary at 6 p.m. June 5 at the Dwyer Park Pavilion in Little York.

Anybody who has attended one of the first 19 editions of the event knows that Cortland native **Charlie Bertini** and his hand-picked AppleJazz band put on a steaming night of contemporary jazz.

For the special edition of the event, trumpeter and band leader Bertini will be joined by regulars **John Kane, Dick Chave, Dave Hanlon** and **Ronnie France.**

Also on the pavilion stage will be **Joe Whiting, Dave Gannett, Loren Barrigar, Jeff Phillips** and **Dave Feinstein.**

All of the musicians have formed a special relationship with Floridian Bertini as he has returned home over the years.

Bertini is looking for sponsors for this year's event.

Anybody interested can visit his Web site at **www.apple jazz.com.** Interested parties also can call Bertini at (888) 241-2464.

Individual tickets for the cozy event go on sale on the Web site April 16.

They cost $30 for reserved seating and $25 for general admission.

Only a couple hundred people fit into the Cortland County pavilion, and tickets always go quickly.

## Appreciate jazz at Syracuse University

The Syracuse University Vocal Jazz Ensemble celebrates jazz appreciation month with a show at 8 p.m. Tuesday at Syracuse University's Setnor Auditorium, in Crouse College.

The ensemble is a 12-voice collection of the finest singers at SU, directed by jazz singer and SU teacher **Tish Oney.**

The show is free and open to the public.

## Big week for music at OCC campus

Students at Onondaga Community College can celebrate the coming of spring with a couple of cool shows next week.

**Brian Vander Ark,** former lead singer from The Verve Pipe, puts in a solo performance at 2 p.m. Monday at the Gordon Student Center Cafeteria.

Vander Ark made his solo

debut on Brash Music, ''Resurrection,'' in March.

The new disc and his live performances concentrate on the more intimate side of Vander Ark's songwriting and singing.

And at OCC, he just might throw in The Verve Pipe's appropriately titled hit ''The Freshman.''

**John and Mary,** former members of 10,000 Maniacs, play at 5 p.m. Thursday in the Gordon Cafeteria.

There's no cover charge, and the shows are open to the public.

## Friends, music lovers help Herb Williams

Central New York blues and R&B lovers helped raise more than $1,200 last month at the daylong show at Class Act to benefit longtime area drummer and vocalist **Herb Williams.**

Williams has had several brain surgeries since falling and bumping his head, and is scheduled for more medical treatment.

The money raised will help the retired Niagara Mohawk Power Corp. worker pay his medical expenses.

*Mark Bialczak's ''Music Notebook'' column appears Fridays in The Post-Standard. To reach Bialczak with news, send e-mail to features@syracuse.com, faxes to 470-2111, mail to P.O. Box 4915, Syracuse, NY, 13221, or phone 470-2175.*

'Wha

■ The le submits:

l trip in the wo
be a good opportu
diverse background
an all-time favorite
swers: Bassist **Paul**
**Crowes.** Just classi
Great hooks, great
Next?'' **The Who.** L
ever, and Roger, Jo
**Steve Orlando Jr**
Maybe one of the
ballad, every song
'Room for Squares
ally solid CD with
songs that are still
two years after it c
'What Is Hip,' **Tow**
thology. Another r
EWF. They play wh
Oakland Soul. Gui
— All-time, '**KISS**
adulterated rock!
my childhood and
want to become a
first place. Recent
going on: 'Bocche
flat Major for Cell
**Yo-Yo Ma** is simp
comes to the cello
match. It's about
cuse guitar legend
voice, good writin
with Steve on this
ly one of the best
and airy. I love to
so I can hear all o
**Bruce Springste**
of great songs. Re
gestion from my s
Anytime, 'Too Lor
Kind of like a favo
ten.''
■ **Mark Bialczak**
they took your as
ty of road time on
without that noto
groups, right?
■ Anybody can se
for Bialczak's ''Mu
se.com, by fax to
dard, Box 4915, S

### TODAY

 **Acoustic**

KITTY HOYNES I
and drink from the
301 W. Fayette S
Square, Syracuse
ing: **Glenharry S**
music, 9 p.m., no

 **Blues**

DINOSAUR BAR-
blackened blues a
Willow St., Syrac
Playing: **Scotty M**
**Bonnevilles,** blu
ety, call for time

HERRINGS LANI
St., Oswego. 207
**Dam Dog Duo,** a
p.m., no cover.

*Serving Cortland and surrounding communities since 18..*

005 daily No. 132

Exhibit 107 p1

MONDAY, JUNE 6, 2005

**Tomorrow's Weather**



**Partly Sunny**
complete forecast, page 7

# Saddam to face trial for a

**By PAUL GARWOOD**
**Associated Press Writer**

BAGHDAD, Iraq — Former dictator Saddam Hussein will stand trial for a range of charges — from gassing thousands of Kurds to executing political and religious leaders, according to a list of the cases against him obtained from the special tribunal today.

Insurgents opposed to Iraq's new government, meanwhile, launched mortar attacks that killed six civilians in the country's north, officials said today.

Iraqi officials want the case against Saddam, who could face 500 charges if prosecutors were to proceed on all counts, to concentrate on about a dozen thoroughly documented cases that authorities believe the ousted leader will be convicted on.

A list obtained by The Associated Press early today from the special tribunal, which will hear the case against Saddam and 11 of his henchmen, showed that prosecutors seem to be concentrating on 14 cases concerning his alleged crimes. Many received international attention during Saddam's three decades in power.

The list contained few details, but among the

crimes the trib... were:

● Executing ... Shiite town of ... dad, in retalia... tempt against Sa...

● Killing and ... the powerful Ku... the current Kurd... Massoud Barzan...

● The 1988 c... Kurdish town of ... ed 5,000 people...

---

**Inside**

today

...cal



...ung fisherman try
...eir luck at annual
...uth fishing derby.

...and opening held for
...st End Community
...nter.
Page 3

...usiness
...e Midwest is trying to
...ercome its Rust Belt
...ump.
Page 5

...ving



### All that AppleJazz



Tom Haskell/contributing photographer

Charlie Bertini plays his trumpet Saturday during AppleJazz 2005 at the Pavilion at Dwyer Memorial Park. The sold-out concert, which returned to its original location this year, also featured Terry Myers on saxophone, Dick Chave on trombone, Jeff Phillips on keyboards, Ronnie France on bass and Dave Hanlon on drums. Special guests were vocalist Ronnie Leigh and trombonist John Allred.

*Supreme Court says:*
# Govt. can prosecute



Exhibit 123 p1



**Exhibit 123 p2**



http://applejazz.com/          Go     APR  **JUN**  SEP
**187 captures**                                      ◀  **10**  ▶
5 Oct 1999 - 7 Mar 2018                              2016 **2017** 2018
                                                    ▼ About this capture

# AppleJazz RECORDS

Home     About Us     AppleJazz Events ▼     Services ▼     Music Store ▼     Contact Us     Links

## Welcome to AppleJazz



New Release
John Allred & Charlie Bertini
LIVE & UNPLUGGED!

Click for more info



*AppleJazz Band Final Festival
Now on DVD & Bluray*

To learn more and purchase...
click here



We had an absolute blast performing for the Syracuse Jazz Fest on July 17 and 18, 2015. The AppleJazz Band took the stage on Friday night to an enthusiastic but rainy crowd. Click here for the album of amazing photos taken by Sandy Roe:
*https://www.facebook.com/pages/AppleJazz-Records/423468081107072*

*Then on Saturday, five of the AJZ members played in Aretha Franklin's band: Charlie Bertini, John Allred, Terry Myers, Andy Calabrese and Mark Doyle. The Queen of Soul was in top form and sang for 90 minutes to a crowd of 40,000 fans on a beautiful summer night. What a honor it was to be a member of her band! Thanks to Frank Malfitano for inviting us to perform at Syracuse Jazz Fest 2015*

Exhibit 124 p1

## Featured Albums


*FULL CIRCLE*
Wayne Bergeron
Check it out


*LIVE & UNPLUGGED!*
John Allred & Charlie Bertini
Check it out


*CHLOE*
Orlando Jazz Orchestra
Check it out


*TO FRED WITH LOVE*
2-disc set
Check it out


*TRIOLOGY*
Charlie Bertini
Check it out

*LIVE AT APPLEJAZZ*

Ronnie Leigh
Check it out


*PLAYS WELL WITH OTHERS*
Wayne Bergeron
Check it out


*CLASSIC PERFORMANCES*
Charlie Bertini's AppleJazz Band
Check it out


*FOCUSED*
John Allred
Check it out

*JEWELS*
Charlie Bertini

Appx01850

Exhibit 158



1984
1985
1986
1987
1988
1989
1990
1991
1992
1993
1994
1995
1996
1997
1998
1999
2001
2002
2003

AppleJazz
**20** YEAR ANNIVERSARY
OVER THE YEARS








**Exhibit 159**











*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1024579** |
|---|---|
| Filing date: | **12/20/2019** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Plaintiff<br>Charles Bertini |
| Correspondence<br>Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>jamesbertini@yahoo.com, iklych@yahoo.com<br>303 572-3122 |
| Submission | Plaintiff's Notice of Reliance |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /james bertini/ |
| Date | 12/20/2019 |
| Attachments | Opposers NOR Discovery Responses redacted.pdf(14278 bytes )<br>Exhibit 137.pdf(218205 bytes )<br>EXHIBIT 154 Redacted.pdf(8466 bytes )<br>Exhibit 179 with exhibits.pdf(2861248 bytes )<br>Exhibit 180 with exhibits.pdf(4185258 bytes ) |

**Exhibit *137, p3***

gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; video laser discs featuring music.

**Response:**

Applicant objects to this Request on grounds that it is vague and ambiguous, overly broad and unduly burdensome, in that it seeks all documents concerning "sales" in the "territory", which terms are unspecific and undefined. Applicant further objects to this Request on grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it requests "[a]ll documents concerning sales" "under trademark APPLE during period January 1, 1981 through December 31, 1985 of all of the following: gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; video laser discs featuring music", without limitation to the services identified in Application Serial No. 86/659,444. Subject to and without waiving the foregoing general and specific objections, Applicant states that, after the parties have entered into a revised protective order governing the disclosure of proprietary and/or confidential documents and information in this proceeding, Applicant will produce documents in its possession, custody or control that it reasonably believes are sufficient to respond to this Request.

**REQUEST FOR PRODUCTION NO. 2:**

All documents concerning confusion between customers of Apple Corps or Apple Computer, Inc. or Apple Inc., and customers of Apple Jazz from period June 5, 1985 to date.

**Response:**

Applicant objects to this Request on grounds that it is overly broad and unduly burdensome in that it requests "[a]ll documents concerning confusion between customers of

**Exhibit *137, p4***

Apple Corps or Apple Computer, Inc. or Apple Inc., and customers of Apple Jazz from period June

5, 1985 to date", without limitation to the services identified in Application Serial No. 86/659,444.

Subject to and without waiving the foregoing general and specific objections, Applicant states

that, based on its reasonable inquiry and ongoing investigation, it has not identified any

documents in its possession, custody or control that are responsive to this Request.  Applicant

expressly reserves the rights to amend or supplement its response to this Request.

**REQUEST FOR PRODUCTION NO. 3:**

All documents concerning use of trademark APPLE in commerce in the territory of the
United States for each type of activities listed below for period January 1, 1981 through November
11, 2011:

Education and training services, namely, arranging and conducting personal training, classes,
workshops, conferences and seminars in the field of computers, computer software, online
services, information technology, website design, and consumer electronics; arranging professional
workshop and training courses; computer education training services; training in the use and
operation of computers, computer software and consumer electronics; online journals, namely,
blogs featuring general interest topics covering a wide variety of topics and subject matter;
providing on-line publications in the nature of magazines, newsletter and journals in the field of
computers, computer software and consumer electronics; providing information, podcasts and
webcasts in the field of entertainment via the Internet concerning movies, music, videos, television,
sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and
current events; digital video, audio and multimedia publishing services; providing entertainment
information regarding movies, music, videos, television, sports, news, history, science, politics,
comedy, children's entertainment, animation, culture, and current events; providing information,
reviews and personalized recommendations of movies, music, videos, television, sports, news,
history, science, politics, comedy, children's entertainment, animation, culture, and current events
in the field of entertainment; entertainment services, namely, production of live musical
performances; entertainment services, namely, providing live musical performances online via a
global computer network; rental of digital entertainment content in the nature of movies, music,
videos, television, sports, news, history, science, politics, comedy, children's entertainment,
animation, culture, and current events, by means of communications networks, namely, provision
of non-downloadable audio and audiovisual programs via an online video-on-demand service;
providing a database of digital entertainment content in the nature of movies, music, videos,
television, sports, news, history, science, politics, comedy, children's entertainment, animation,
culture, and current events via electronic communication networks; entertainment services,
namely, providing prerecorded audio and audiovisual content, information and commentary in the
fields of music, concerts, videos, movies, television, books, news, sports, games and cultural

4

**Appx01985**

**Response:**

Applicant admits that the documents comprising Exhibit 2 to Opposer's First Request for

Admission to Apple Inc. appear to be copies of USPTO records relating to U.S. Registration No.

2,034,964, and states that such records speak for themselves.

**REQUEST FOR ADMISSION NO. 3**

Admit that Apple Corps Limited Company, 27 Ovington Square, London, United
Kingdom didn't file for registration of the mark APPLE in the United States (U.S. Registration
No. 2034964) until June 26, 1995.

**Response:**

Applicant admits that USPTO records relating to U.S Registration No. 2,034,964 indicate

that the application underlying the registration was filed on June 26, 1995, and states that such

records speak for themselves.

**REQUEST FOR ADMISSION NO. 4**

Admit that prior to June 5, 1985 Apple Computer, Inc. didn't own or use any trademarks
for any of the services listed below:

Arranging, organizing, conducting, and presenting concerts, live musical performances,
entertainment special events in the nature of musical and cultural events, arts and cultural events,
theatrical entertainment in the nature of live theatrical performances, competitions in the field of
entertainment, contests for entertainment purposes, musical and film festivals for cultural or
entertainment purposes, and exhibitions for entertainment purposes; production and distribution
of television programs and sound recordings; provision of live entertainment, namely, live
musical performances, and temporary use of online non-downloadable recorded entertainment
featuring musical performances; providing websites featuring entertainment information, music
information, news in the fields of music and entertainment, and arts and culture information;
providing websites featuring information in the field of entertainment, music, news in the fields
of music and entertainment, and arts and culture; entertainment services, namely, providing
information, schedules in the nature of concert schedules, reviews and personalized
recommendations of entertainment in the nature of music, arts and cultural events, concerts, live
musical and cultural performances, competitions in the field of entertainment, music and film
festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes;
ticket reservation and booking services for entertainment, arts and cultural events, concerts, live
musical performances, competitions in the field of entertainment, music or film festivals for
entertainment purposes, and exhibitions for entertainment purposes; entertainment services,
namely, providing reviews, and providing interactive websites for the posting and sharing of
reviews, all relating to entertainment, art and cultural events, concerts, live musical

3

performances, competitions in the field of entertainment, music and film festivals for cultural or entertainment purposes; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, and multimedia content in the fields of music; publication of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; arranging, producing in the nature of, recording, mixing, editing and sound engineering, researching musical compositions, publishers, artists, recordings, and licensing for music production services; arranging and conducting educational competitions for students in the field of business; arranging and conducting educational competitions for students in the field of entertainment

**Response:**

Applicant admits that, based on its reasonable inquiry and ongoing investigation, Apple

Computer Inc. does not appear to have owned and used any trademark in connection with

services listed above, and states, however, that Applicant, including its predecessors in interest,

owned and/or used trademarks in connection with services listed above prior to June 5, 1985.

**REQUEST FOR ADMISSION NO. 5**

Admit that there were no discs released in the U.S. under trademark APPLE between January 1, 1981 through December 31, 1985.

**Response:**

Applicant objects to this Request on grounds that it is vague and ambiguous in that the

terms "discs" and "released" are undefined, such that the Request is incapable of being admitted

or denied, and states that, to the extent a response is required, Applicant denies the Request.

**REQUEST FOR ADMISSION NO. 6**

Admit that the filing date for U.S. Registration No. 4088195 "APPLE" is 03/22/2008 as depicted in Exhibit 3.

**Response:**

Applicant admits that the documents comprising Exhibit 3 to Opposer's First Request for

Admission to Apple Inc. appear to be copies of USPTO records relating to U.S Registration No.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In re Serial No. 86/659,444
Mark: APPLE MUSIC
Filed: June 11, 2015
Published in the *Official Gazette* on May 10, 2016

**Exhibit 180**

| | |
|---|---|
| CHARLES BERTINI, | |
| Opposer, | |
| v. | Opposition No. 91229891 |
| APPLE INC., | |
| Applicant. | |

**ANSWERS TO OPPOSER'S WRITTEN DEPOSITION QUESTIONS
TO NONPARTY APPLE CORPS LIMITED, BY JEFFREY VAUGHAN JONES**

Pursuant to 37 CFR § 2.124 and the Stipulation Regarding Discovery Deposition, On Written Questions, of Jeffrey Vaughan Jones entered on April 22, 2019 (the "Stipulation"), nonparty Apple Corps Limited ("Apple Corps"), through Jeffrey Vaughan Jones, hereby answers the written deposition questions served by Opposer Charles Bertini ("Opposer"). The following answers are subject to Apple Inc.'s Objections to Opposer's Written Deposition of Jeffrey Vaughan Jones of Apple Corps Limited, and Apple Corps's Joinder in such objections. These answers are limited to information available to Apple Corps at the present time and are provided without prejudice to Apple Corps's right to supplement or amend these answers later in this proceeding.

**ANSWERS TO WRITTEN QUESTIONS**

1.     Did the Beatles' last concert together take place on January 30, 1969?

- 1 -

**ANSWER:**  Apple Corps has no documentary evidence showing when/if the films identified in response to question 9 below were shown on U.S. television during the period January 1, 1982 – December 31, 1985 (which should not be surprising since almost 35 years have passed). However, given the enormous popularity of these films, it is likely that they were shown on U.S. television during this time period.  Similarly, Apple Corps does not possess documents showing the initial release of the sound recordings identified in response to question 12 below during the period January 1, 1982 – December 31, 1985 because there were no such initial releases during that time period.  However, the sound recordings identified in response to question 12 below almost certainly were available for sale and sold in the U.S. during the period January 1, 1982 – December 31, 1985.

7.    Describe how Apple Corps Ltd. offered entertainment services in the U.S. under standard character mark APPLE during period January 1, 1982 – December 31, 1985.

**ANSWER:**  See my answer to question 5 above.

8.    Does Apple Corps Ltd. possess any documents showing that Apple Corps Ltd. provided any of the following entertainment services under standard character mark APPLE in the U.S. during period January 1, 1982 – December 31, 1985: *arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests for entertainment purposes, musical and film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes*?

**ANSWER:** To the best of my knowledge and belief, no.

- 3 -

9.     Does Apple Corps Ltd. possess any documents showing that Apple Corps Ltd. provided production and distribution services of television programs under standard character mark APPLE in the U.S. during period January 1, 1983 – December 31, 1985?

ANSWER:  Yes, as depicted in Exhibits 4 and 5 to my declaration in support of Apple Inc.'s Opposition to Opposer's Motion for Summary Judgment, the films, *Magical Mystery Tour*, *Let It Be*, and *Yellow Submarine*, offered by Apple Corps and/or its affiliate(s) under the standard character mark APPLE, have been shown on U.S. television since the 1960s.  Apple Corps has no documentary evidence showing when/if these films were shown on U.S. television during the period January 1, 1983 – December 31, 1985 (which should not be surprising since almost 35 years have passed).  However, given the enormous popularity of these films, it is likely that they were shown on U.S. television during this time period.

10.     Does Apple Corps Ltd. possess any documents showing that Apple Corps Ltd. provided sound recording services under standard character mark APPLE in the U.S. during period January 1, 1982 – December 31, 1985?

ANSWER:  To the best of my knowledge and belief, no.

11.     Does Apple Corps Ltd. possess any documents showing that Apple Corps Ltd. manufactured any of the following goods in the United States under standard character mark APPLE in the U.S. during period January 1, 1983 – December 31, 1985: *gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; video laser discs featuring music?*

ANSWER:  To the best of my knowledge and belief, no.  However, I understand that such goods were manufactured by third parties authorized by Apple Corps or its affiliate(s) in the U.S. during the period January 1, 1983 – December 31, 1985.

- 4 -

**ANSWER:** I understand that the phrase "The Apple Years 1968-1975" refers to the time period (1968 to 1975) during which George Harrison's solo records were released on the Apple Corps label.

22.     Did Apple Corps Ltd. file any applications for standard character mark APPLE with the U.S. Patent and Trademark Office for entertainment services in Class 41 on or before June 5, 1985?

**ANSWER:** To the best of my knowledge and belief, no.

23.     Did Apple Corps Ltd. file any applications for standard character mark APPLE at the U.S. Patent and Trademark Office on or before June 5, 1985?

**ANSWER:** To the best of my knowledge and belief, no.

24.     Describe the nature of the relationship between Apple Records, Inc. and Apple Corps Ltd.

**ANSWER:** To the best of my knowledge and belief, Apple Corps Limited wholly owns Apple Corps Inc., and Apple Corps Inc. wholly owns Apple Records, Inc. (formed in the State of New York) and Apple Records, Inc. (formed in the State of California).

25.     Does Apple Corps Ltd. possess any documents showing that Apple Records, Inc. manufactured goods in the U.S. under standard character mark APPLE during period January 1, 1983 - December 31, 1985?

**ANSWER:** To the best of my knowledge and belief, no. However, I understand that goods were manufactured in the U.S. under the standard character mark APPLE by third parties authorized by Apple Corps, and such manufacture occurred during the period January 1, 1983 - December 31, 1985.

- 8 -

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1024605** |
|---|---|
| Filing date: | **12/20/2019** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Plaintiff<br>Charles Bertini |
| Correspondence<br>Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>jamesbertini@yahoo.com, iklych@yahoo.com<br>303 572-3122 |
| Submission | Plaintiff's Notice of Reliance |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /james bertini/ |
| Date | 12/20/2019 |
| Attachments | NOR Internet Documents.pdf(24660 bytes )<br>Exhibits 66-153.pdf(3605910 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | |
|---|---|
| CHARLES BERTINI, | ) |
| | ) Opposition No. 91229891 |
| Opposer | ) Serial No. 86659444 |
| | ) Mark: APPLE MUSIC |
| v. | ) Filing Date: June 11, 2015 |
| | ) Publication Date: May 10, 2016 |
| APPLE INC., | ) |
| | ) |
| Applicant. | ) |
| | ) |

## OPPOSER'S NOTICE OF RELIANCE ON INTERNET DOCUMENTS

Pursuant to 37 C.F.R. § 2.122(e), and Trademark Trial and Appeal Board Manual of Procedure § 704.08(b), Opposer Charles Bertini "Opposer") hereby makes of record and gives notice to Apple Inc. of his reliance on the following printed internet documents. Each printout identifies the date the website was accessed and printed, as well as the source, i.e. URL.

The following printed Internet documents are relevant to show the history of APPLE marks and use of marks by Apple Computer, Inc., Apple, Inc. and Apple Corps Ltd. Some other Internet documents are relevant to show the source of information and how the source is reliable.

1. Exhibit 66 is a printout of webpage from website www.discogs.com and it is downloaded from the URL https://www.discogs.com/label/134490-Apple-Records-3. Exhibit 66 shows that some records on the website www.discogs.com can be "unofficial releases (bootlegs, counterfeits, pirate compilations, etc.) that pretend to be a release of the legitimate Apple Records"

1

2.   Exhibit 67 a printout of webpage from website www.discogs.com and it is

downloaded from the URL

https://support.discogs.com/en/support/solutions/articles/13000014275.  Exhibit 67

shows that: "Discogs is a user-built discography site. Everyone can contribute and update

information"

3.   Exhibit 76 p3 is a printout of webpage from website www.capitol6000.com and it is

downloaded from the URL http://www.capitol6000.com/labels.html.  Exhibit 76 p3

shows that: "In 1968, The Beatles started their own record label called Apple Records.

While still distributed by Capitol, they created their own design which showed a green

apple on one side, and a sliced apple on the other side.  The Apple label was used for

Apple releases until 1975, where the albums were transferred to the current Capitol label

(orange label). Apple Records was revived in the 90s to issue the new Beatles albums."

4.   Exhibit 78 is a printout of webpages from Wikipedia website and it is downloaded

from the URL https://en.wikipedia.org/wiki/Apple_Records.  Exhibit 78 shows that:

A.   "**Apple Records** is a record label founded by the Beatles in 1968, as a division of

Apple Corps Ltd."

B.   "The original UK versions of the Beatles' albums were released worldwide on

compact disc in 1987 and 1988 on the Parlophone label"

C.   "*Abbey Road* had been issued on CD by the EMI-Odeon label in Japan in the

early 1980s"

D.   "The label was again newsworthy in 2006"

E.   "Standard Apple album and single labels displayed a bright green Granny Smith

apple on the A-side, while the flipside displayed the cross section of the apple".

2

    F.  "The bright green apple returned for Beatles CDs releases in the 1990s, following initial CD releases on Parlophone."

5.  Exhibit 79 is a printout of webpages from the Wikipedia website related to Apple Records discography and it is downloaded from the URL https://en.wikipedia.org/wiki/Apple_Records_discography.  Exhibit 79 shows a detailed discography of Apple Records.  Exhibit 79 shows that:

    A.  "**Apple Records**, a record label formed by the Beatles in 1968."

    B.  "After EMI's contract with the Beatles ended in 1976, the Apple label was finally wound up. The label was reactivated in the 1990s with many of the original Apple albums being reissued on compact disc"

    C.  There were no Apple Records releases in the U.S. during years 1976-1993.

6.  Exhibit 81 p1 a printout of a webpage from the website www.discogs.com and it is downloaded from the URL https://www.discogs.com/about.  Exhibit 81 p1 shows that website www.discogs.com was "Originally created as a hobby project in 2000" and "Discogs is a user-built database of music. More than 390,000 people have contributed…to build up a catalog of more than 9,400,000 recordings and 5,400,000 artists.

7.  Exhibit 81 p2 is a printout of webpage from website web.archive.org and it is downloaded from the URL https://web.archive.org/web/20140101000000*/https://www.discogs.com/label/25693-Apple-Records.  Exhibit 81 p2 shows archive **Summary of discogs.com** related to Apple records. This summary shows that first records for Apple Records appeared on this website only in 2014.

3


GO. GET. REWARDED.*
BEST WESTERN® $10 GIFT CARD with EVERY STAY!
BW | Best Western. Hotels & Resorts
Book Now


Apple

## Apple Records (3)

Profile:     This is **NOT** a real label.
Use this for all unofficial releases (bootlegs, counterfeits, pirate compilations, etc.) that pretend to be a release of the legitimate Apple Records.

**Label**
Edit Label
Data Quality Rating: Complete and Correct
**360 submissions pending**

 Share

**Exhibit 66**

| Artist | Title (Format) | Cat# ⌃ | Year |
|---|---|---|---|
| Badfinger | Badfinger's Greatest Hits (LP, Unofficial, Comp) | 001 | 2012 |
| The Beatles | White Unplugged Album   ◀ 8 versions | 1 C 209 173 | 2007 |
| The Beatles | Magical Mystery Tour Plus Other Songs (Comp) ◀ 2 versions | 1C 072-04 449 | 2012 |
| The Beatles | Magical Mystery Tour Plus Other Songs (LP, Comp, Unofficial, Gre) | 1C 072-04 449 | 2012 |
| The Beatles | Magical Mystery Tour Plus Other Songs (LP, Comp, Unofficial, Yel) | 1C 072-04 449 | 2016 |
| The Beatles | The Beatles (2xCD, Album, RE, Unofficial) | 1C 172-04 173 | 2008 |
| The Beatles | The Beatles Part One (LP, Album, Pic, Unofficial) | 1C 172-04 173 PD | 2007 |
| The Beatles | The Beatles Part Two (LP, Album, Pic, Unofficial) | 1C 172-04 174 PD | 2007 |
| The Beatles | Hey Jude / Revolution (7", Single, Unofficial) | 7-BT-12 | 1968 |
| The Beatles Com Billy Preston | Get Back (7", Single, RE, Unofficial) | 7BT-17 | Unknown |
| The Beatles | The Ballad Of John And Yoko (7", Single, Unofficial) | 7-BT-21 | 1969 |
| The Beatles | Something / Come Together (7", Single, Unofficial) | 7-BT-26 | 1969 |

Case: 21-2301        Document: 32        Page: 220        Filed: 03/31/2022

## Apple

In 1968, The Beatles started their own record label called Apple Records. While still distributed by Capitol, they created their own design which showed a green apple on one side, and a sliced apple on the other side. Canadian labels are glossy with a dark green background and had "MFD by Apple Records inc" on the sliced side of the label. There are no variations with different perrimeter prints on Canadian pressings, but labels between 1973 and 1975 had a flat finish and were pressed by Columbia. Also, no pre-Apple albums were reissued on the Apple label, as it was the case in the USA; instead, Capitol of Canada reissued them on the red target label. The Apple label was used for Apple releases until 1975, where the albums were transfered to the current Capitol label (orange label). The Red and Blue albums had a certain custom version of the label, see CUSTOM entry below for details.

Apple Records was revived in the 90s to issue the new Beatles albums, but no vinyl was pressed on Apple in Canada; they only produced CDs and imported the vinyl from the UK.



RCA pressing on the left, Compo Pressing in the middle, flip side on the right.

**Exhibit *76 p3***

## Green Target

In 1969, Capitol changed their logo to the round target logo; they also created a new target label design for the occasion. This label was lime green and was used until 1971 where it was then replaced by the similar red target label. All the Capitol Beatles albums were reissued on this label, except for The Beatles Story and the three 6000 series albums.

Note that this Yesterday and Today pressing is stereo but bears a MONO catalog number. This mistake also happened on the orange label for this album. These were exceptionally pressed by Keel, maybe as a test for a possible subcontracting contract.



On the left is an RCA pressing, a Compo Pressing in the centre, and on the right: the scarce Keel pressing.

## Red Target

In 1971, Capitol changed to the red target label. It is identical to the original lime green label, but with different colors. All the Capitol Beatles albums were reissued on this label, INCLUDING The Beatles Story and the three 6000 series albums, but no Apple album. This label is quite rarely found on Beatles albums in the USA, but is, on the contrary, quite common in Canada.



# WIKIPEDIA

# Apple Records discography

This is the discography of **Apple Records**, a record label formed by the Beatles in 1968. During its early years, the label enjoyed a fair degree of commercial success, most notably with Mary Hopkin and Badfinger, as well as discovering acts such as James Taylor and Billy Preston who would go on to greater success with other labels. However, by the mid-1970s, Apple had become little more than an outlet for the Beatles' solo recordings (although, as the solo Beatles were actually still under contract to EMI, the Apple label was, in truth, only a cosmetic addition to their releases). After EMI's contract with the Beatles ended in 1976, the Apple label was finally wound up. The label was reactivated in the 1990s with many of the original Apple albums being reissued on compact disc, and the company now oversees new Beatles releases such as the *Anthology* and *1* albums as well as the 2009 Beatles remastering programme. In 2010, Apple set about remastering and reissuing its back catalogue for a second time.

For convenience, releases are divided into UK and US releases. However, some releases which were designated a UK-sequence catalogue number were only issued in certain mainland European countries. Additionally, with the Beatles still being under contract to EMI, all of the group's records (and the majority of their UK solo releases) retained the numbering systems of Parlophone (for the UK, New Zealand and South Africa), Capitol (for the US) and EMI (for Australia). The Republic of Ireland released eight Apple singles in 1970−71, six of which had unique catalogue numbers.

## Contents

Singles
Albums
    Zapple Records
Reissues
    1990s remasters
    2009 remasters
    2010 remasters
See also
References
External links

# Singles

| Catalogue Number | | | | Artist | Title | Release Date | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| UK | US | Aus. | NZ | | | UK | US | Aus. | NZ |
| R 5722 [48] | 2276 | A-8493 [37] | [39] | The Beatles | "Hey Jude" / "Revolution" | 30.08.68 | 26.08.68 | 19.09.68 | - |
| APPLE 1 | - | - | - | Frank Sinatra | "The Lady Is a Champ - But Beautiful" [1] | - | - | - | - |
| APPLE 2 [49] | 1801 | APPLE-8526 | APPLE 2 | Mary Hopkin | "Those Were the Days" / "Turn! Turn! Turn!"[46] | 30.08.68 | 26.08.68 | .68 | .68 |
| APPLE 3 | 1802 | APPLE-8537 [37] | - | Jackie Lomax | "Sour Milk Sea" / "The Eagle Laughs at You" | 30.08.68 | 26.08.68 | .68 | - |
| APPLE 4 | 1800 | - | - | John Foster & Sons Ltd. Black Dyke Mills Band | "Thingumybob" / "Yellow Submarine" | 30.08.68 | 26.08.68 | - | - |
| APPLE 5 | 1803 | APPLE-8631 | APPLE 5 | The Iveys | "Maybe Tomorrow" / "And Her Daddy's a Millionaire"[47] | 15.11.68 | 27.01.69 | .69 | .69 |
| | | | | The Beatles | "Back in the USSR" / "Don't Pass Me By" [56] | | | | |
| APPLE 6 | 1804 | APPLE-8739 | APPLE 6 | Trash [2] | "Road to Nowhere" / "Illusions" | 24.01.69 | 03.03.69 | 05.69 | .69 |
| - | - | A-8693 | NZP.3318 | The Beatles | "Ob-La-Di, Ob-La-Da" / "While My Guitar Gently Weeps" [51] | - | - | 20.02.69 | .69 |
| - | - | - | - | The Beatles | "Ob-La-Di, Ob-La-Da" / "I Will" [57] | - | - | - | - |
| APPLE 7 | - | - | - | Mary Hopkin | "Lontano Dagli Occhi" / "The Game" [3] | 07.03.69 | - | - | - |
| APPLE 8 | - | - | - | Brute Force | "King of Fuh" / "Nobody Knows" [4] | 16.05.69 | - | - | - |
| APPLE 9 | - | - | - | Mary Hopkin | "Prince En Avignon" / "The Game" [5] | 07.03.69 | - | - | - |
| - | 1805 | - | - | James Taylor | "Carolina in My Mind" / "Taking It In" | - | 17.03.69 | - | - |
| | | | | James Taylor | "Knocking 'Round the Zoo" / | | | | |

Exhibit 79 p2

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| R 6005 | 1881 | A-10779 | NZP.3503 | John Lennon | "Stand by Me" / "Move Over Ms. L" | 18.04.75 | 10.03.75 | .75 | .75 |
| - | - | - | - | John Lennon | "Be-Bop-A-Lula" / "Move Over Ms. L" [58] | | | | |
| - | - | - | NZP.3510 | Ringo Starr | "No No Song" / "Call Me" | - | - | - | .75 |
| - | 1882 | - | - | Ringo Starr | "(It's All Down To) Goodnight Vienna" / "Oo-Wee" | - | 02.06.75 | - | - |
| - | 1883 | - | - | John Lennon | "Slippin' and Slidin'" / "Ain't That a Shame" [12] | - | - | - | - |
| R 6007 | 1884 | A-10920 | NZP.3520 | George Harrison | "You" / "World of Stone" | 12.09.75 | 15.09.75 | 29.09.75 | .75 |
| R 6009 | - | - | - | John Lennon | "Imagine" / "Working Class Hero" | 24.10.75 | - | - | - |
| R 6011 | - | - | - | Ringo Starr | "Oh My My" / "No No Song" | 09.01.76 | - | - | - |
| R 6012 | 1885 | A-11017 | NZP.3528 | George Harrison | "This Guitar (Can't Keep from Crying)" / "Māya Love" | 06.02.76 | 08.12.75 | .76 | .76 |
| G45 2[17] | - | - | - | John Lennon | "Give Peace a Chance" / "Cold Turkey" | 12.03.84 | - | - | / |
| G45 13[17] | - | - | - | Ringo Starr | "It Don't Come Easy" / "Back Off Boogaloo" | 12.03.84 | - | - | / |
| APP 1 | - | - | | Various Artists | "Apple EP" [18] | 21.10.91 | - | - | / |
| R 6406 | 8583492 | | | The Beatles | "Baby It's You" / "I'll Follow the Sun" / "Devil in Her Heart" / "Boys" | 06.03.95 | 01.12.94 | | |
| R 6422 | 8584972 | | | The Beatles | "Free as a Bird" / "Christmas Time (Is Here Again)" | 04.12.95 | 12.12.95 | | |
| R 6425 | 8585442 | | | The Beatles | "Real Love" / "Baby's in Black" | 04.03.96 | 05.03.96 | | |

**Exhibit 79 p10**

[1] Not planned for release.[1] A special recorded "message" medley from Frank Sinatra to Maureen Starkey. One single-sided single pressed and the master tape has been destroyed.

[2] Early UK editions credited to 'White Trash'.[1]

[3] Only released in Italy - 17.01.69.

[4] Not given a full release, as EMI would not distribute. Only 2000 copies were pressed in the UK. An unnumbered US Apple acetate also



**Exhibit 97 p4**

PM 102   2C008-04692

# DANCE FOR EVER

**Vol. 1  LOUIS PRIMA**
*Just a Gigolo*  2C 008-81166

**Vol. 2  CAMILLO**
*Sag Warum*  2C 008-23243 M

**Vol. 3  THE ANIMALS**
*The House Of The Rising Sun*
2C 008-91569

**Vol. 4  EDDIE COCHRAN**
*C'Mon Everybody*  2C 008-83271 M

**Vol. 5  HERMAN'S HERMITS**
*No Milk Today*  2C 008-93548 M

**Vol. 6  THE SHADOWS**
*Apache*  2C 008-04700

**Vol. 7  THE ROLLING STONES**
*Angie*  2C 008-64734

**Vol. 8  BUMBLE & THE STINGERS**
*Nut Rocker*  2C 008-93392 M

**Vol. 9  EVELYN FREEMAN**
*Didn't It Rain*  2C 008-91099

**Vol. 10  FATS DOMINO**
*Blueberry Hill*  2C 008-83272 M

**Vol. 11  CANNED HEAT**
*On The Road Again* 2C 008-93731

**Vol. 12  GENE VINCENT**
*Be-Bop-A-Lula*  2C 008-81170

**Vol. 13  BEACH BOYS**
*Good Vibrations*  2C 008-85379

**Vol. 14  DEAN MARTIN**
*Rio Bravo*  2C 008-81168

**Vol. 15  NELSON RIDDLE**
*(De Guello) B.O. Rio Bravo*
2C 008-81376

**Vol. 16  GEORGE HARRISON**
*My Sweet Lord*  2C 008-04692

**GEORGE  HARRISON**

**MY SWEET LORD**  ℗ 1970 EMI RECORDS Ltd.  **ISN'T IT A PITY**

FABRIQUE ET DISTRIBUE EN FRANCE PAR
 PATHE MARCONI  EMI  Réédition 1982

made in France

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1024681** |
| Filing date: | **12/21/2019** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding | 91229891 |
|---|---|
| Party | Plaintiff<br>Charles Bertini |
| Correspondence<br>Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>jamesbertini@yahoo.com, iklych@yahoo.com<br>303 572-3122 |
| Submission | Plaintiff's Notice of Reliance |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /james bertini/ |
| Date | 12/21/2019 |
| Attachments | NOR Official Records.pdf(17093 bytes )<br>Exhibits 127-178.pdf(1473715 bytes )<br>Exhibit 181.pdf(1938845 bytes )<br>Exhibit 182.pdf(599882 bytes )<br>Exhibit 183.pdf(681975 bytes )<br>Exhibit 184.pdf(476180 bytes )<br>Exhibit 185.pdf(469076 bytes ) |

| | |
|---|---|
| **To:** | Bertini, Charles (jamesbertini@yahoo.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87060640 - APPLE JAZZ - N/A |
| **Sent:** | 9/17/2016 2:51:35 PM |
| **Sent As:** | ECOM115@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |

**Exhibit *130, p1***

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**U.S. APPLICATION SERIAL NO.** 87060640

**MARK:** APPLE JAZZ

**\*87060640\***

**CORRESPONDENT ADDRESS:**
    JAMES BERTINI
    423 KALAMATH STREET
    DENVER, CO 80204

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Bertini, Charles

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
    N/A
**CORRESPONDENT E-MAIL ADDRESS:**
    jamesbertini@yahoo.com

### OFFICE ACTION

### STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 9/17/2016**

The assigned trademark examining attorney has reviewed the referenced application. Applicant must respond timely and completely to the issues below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

SUMMARY OF ISSUES:

**Exhibit *130, p2***

- Refusal – Section 2(d) Likelihood of Confusion
- Requirement – Identification of Goods and Services; Amendment Required

## I.  REFUSAL – SECTION 2(d) LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 2034964, 4088195 and 3317089.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the enclosed registrations.

The applied for mark is: "APPLE JAZZ" for *"Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests for entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment and recorded entertainment, namely, musical performances; providing websites featuring entertainment information, music information, news in the fields of music and entertainment, and arts and culture information; providing websites featuring information in the field of entertainment, music, news in the fields of music and entertainment, and arts and culture; entertainment services, namely, providing information, schedules in the nature of concert schedules, reviews and personalized recommendations of entertainment in the nature of music, arts and cultural events, concerts, live musical and cultural performances, competitions in the field of entertainment, music or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live musical performances, competitions in the field of entertainment, music or film festivals for entertainment purposes, and exhibitions for entertainment purposes; entertainment services, namely, providing reviews, and providing interactive websites for the posting and sharing of reviews, all relating to entertainment, art and cultural events, concerts, live musical performances, competitions in the field of entertainment, music or film festivals for cultural or entertainment purposes; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; providing websites featuring non-downloadable publications in the nature of newsletters, blogs, journals, and articles, all in the fields of music and entertainment; arranging, scheduling, producing, billing, researching and providing referrals for music production services; arranging and conducting educational competitions for students in the field of business; arranging and conducting educational competitions for students in the field of entertainment"*.

The registered marks are:

1. U.S. Registration No. 2034964: "APPLE"  for *"gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music"*.

2. U.S. Registration No. 4088195: "APPLE"  for, *inter alia,* *"online journals, namely, blogs featuring general interest topics covering a wide variety of topics and subject matter; providing on-line publications in the nature of magazines, newsletter and journals in the field of computers, computer software and consumer electronics; providing information, podcasts and webcasts in the field of entertainment via the Internet concerning movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; digital video, audio and multimedia publishing services; providing entertainment information regarding movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; providing information, reviews and personalized recommendations of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events in the field of entertainment; entertainment services, namely, production of live musical performances; entertainment services, namely, providing live musical performances online via a global computer network; rental of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events by means of communications networks, namely, provision of non-downloadable audio and audiovisual programs via an online video-on-demand service. providing a database of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events via electronic communication networks; entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network"*.

3. U.S. Registration No. 3317089: "APPLE"  for *"Musical sound records; sound records featuring entertainment; sound records featuring*

*music, musicians, documentaries, biographies, interviews, performances, reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, performances, reviews, drama and fiction; cinematographic films; musical sound recordings; musical video recordings; audio and visual recordings featuring or relating to music, entertainment and films; pre-recorded compact discs, gramophone records, video discs, DVDs, CD-ROMs all featuring or relating to music and films; digitally recorded sound and video records"*.

The same entity owns all of the cited registrations.

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely a potential consumer would be confused, mistaken, or deceived as to the source of the goods and/or services of the applicant and registrant. *See* 15 U.S.C. §1052(d). A determination of likelihood of confusion under Section 2(d) is made on a case-by case basis and the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) aid in this determination. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011) (citing *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed. Cir. 2000)). Not all the *du Pont* factors, however, are necessarily relevant or of equal weight, and any one of the factors may control in a given case, depending upon the evidence of record. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d at 1355, 98 USPQ2d at 1260; *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont de Nemours & Co.*, 476 F.2d at 1361-62, 177 USPQ at 567.

In this case, the following factors are the most relevant: similarity of the marks, similarity and nature of the goods and/or services, and similarity of the trade channels of the goods and/or services. *See In re Viterra Inc.*, 671 F.3d 1358, 1361-62, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Dakin's Miniatures Inc.* , 59 USPQ2d 1593, 1595-96 (TTAB 1999); TMEP §§1207.01 *et seq.*

Comparison of the Marks

The applied-for mark is derived by merely adding the word "JAZZ" to the registered marks.

Adding a term to a registered mark generally does not obviate the similarity between the compared marks, as in the present case, nor does it overcome a likelihood of confusion under Section 2(d). *See Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 557, 188 USPQ 105, 106 (C.C.P.A. 1975) (finding BENGAL and BENGAL LANCER and design confusingly similar); *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1269 (TTAB 2009) (finding TITAN and VANTAGE TITAN confusingly similar); *In re El Torito Rests., Inc.*, 9 USPQ2d 2002, 2004 (TTAB 1988) (finding MACHO and MACHO COMBOS confusingly similar); TMEP §1207.01(b)(iii). In the present case, the marks are identical in part.

The applicant has disclaimed the word "JAZZ" in the applied-for mark.

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter that is descriptive of or generic for a party's goods and/or services is typically less significant or less dominant when comparing marks. *See In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997); *In re Nat'l Data Corp.*, 753 F.2d at 1060, 224 USPQ at 752; TMEP §1207.01(b)(viii), (c)(ii). Thus, the distinctive wording in the applied-for mark is identical to the registered marks.

Therefore, the marks are similar.

Comparison of the Goods and Services

With respect to applicant's and registrant's goods and/or services, the question of likelihood of confusion is determined based on the description of the goods and/or services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1323, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting *Octocom Sys. Inc. v. Hous. Computers Servs. Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990)).

Absent restrictions in an application and/or registration, the identified goods and/or services are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)). Additionally, unrestricted and broad identifications are presumed to encompass all goods and/or services of the type described. *See In re Jump Designs, LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006) (citing *In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981)); *In re Linkvest S.A.*, 24 USPQ2d 1716, 1716 (TTAB 1992).

In this case, the identifications set forth in the application and registrations have no restrictions as to nature, type, channels of trade, or classes of purchasers. Therefore, these goods and/or services are presumed to travel in all normal channels of trade, and are available to the same class of purchasers. Further,

- The application and U.S. Registration No. 2034964 both identify recorded music;
- The application and U.S. Registration No. 3317089 both identify recorded music and the provision of reviews.
- The application and U.S. Registration No. 4088195 both identify services for providing live music entertainment, information, online publications, reviews and personalized recommendations in the fields of entertainment and music; and, applicant's "provision of ... recorded entertainment, namely, musical performances" overlaps with the registrant's "rental of digital entertainment content", "provision of non-downloadable audio and audiovisual programs" and "entertainment services, namely, providing prerecorded audio and audiovisual content".

Therefore, the goods and services are related.

Because the parties' marks are similar and their goods and services are related, registration of the applied-for mark is refused on the basis of likelihood of confusion.

<u>PRIOR PENDING APPLICATIONS</u>

The effective filing dates of pending U.S. Application Serial Nos. 86658508, 86659444 and 86830886 precede applicant's filing date. *See* attached referenced applications. If a mark in the referenced applications registers, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion between the marks. *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.* Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced applications.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the marks in the referenced applications. Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

Although applicant's mark has been refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration. However, if applicant responds to the refusal, applicant must also respond to the requirement(s) set forth below.

**II. IDENTIFICATION OF GOODS AND SERVICES**

<mark>**Exhibit *130, p4***</mark>

The wordings "provision of live entertainment and recorded entertainment, namely, musical performances; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content" and "arranging, scheduling, producing, billing, researching and providing referrals for music production services" in the identification of services must be clarified because they are too broad and could include goods in other international classes. *See* TMEP §§1402.01, 1402.03. Downloadable recorded musical performances and musical performances recorded on tangible media are in Class 9; non-downloadable musical performances provided by electronic means are in Class 41. The classification of services for provision of a website is determined by the subject matter of the website content. The services of arranging, scheduling, billing and providing referrals in the field of music production services are in Class 35; applicant must clarify the nature of the service "producing for music production services" and classifying that service accordingly.

An application must specify, in an explicit manner, the particular goods or services on or in connection with which the applicant uses, or has a bona fide intention to use, the mark in commerce. *See* 15 U.S.C. §1051(a)(2), (b)(2); 37 C.F.R. §2.32(a)(6); TMEP §1402.01. Generally, the terminology "and/or" and "or" is not sufficiently explicit language in identifications because it is not clear whether applicant is using the mark, or intends to use the mark, on all the identified goods or services. *See* TMEP §1402.03(a).

For example, "modems and/or monitors" could refer to "modems **or** monitors" and is unclear which goods applicant intends to identify. Therefore, applicant should replace "and/or" with "and" in the identification of goods or services, if appropriate, or rewrite the identification with the "and/or" deleted and the goods or services specified using definite and unambiguous language.

Applicant may adopt the following amended identification, if accurate:

    Class 9:  Recorded entertainment, namely, pre-recorded electronic media featuring musical performances;

    Class 35:  Scheduling, billing, market research and providing referrals in the field of music production;

    Class 41:  Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests for entertainment purposes, musical <u>and</u> <s>or</s> film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of television programs and sound recordings; provision of live entertainment, <u>namely, live musical performances,</u> and <u>temporary use of online non-</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Trademark Application of

Apple Corps Limited

Serial No.: 74/693,839          Trademark Atty: Zhaleh Sybil Delaney

Filed:  June 26, 1995           Law Office: 101

Mark:  APPLE                    Response/NO FEE

**AMENDMENT**

**Exhibit 1*40, p3***

Assistant Commissioner for Trademarks
2900 Crystal Drive
Arlington, Virginia 22202

Sir:

In response to the Office Action mailed February 1, 1996,
please amend the above-identified application as follows:

**IN THE IDENTIFICATION OF GOODS:**

Please amend the present identification of goods to read:

GRAMOPHONE RECORDS FEATURING MUSIC; PRE-RECORDED AUDIO TAPE
CASSETTES FEATURING MUSIC; AUDIO COMPACT DISCS FEATURING
MUSIC; PRE-RECORDED VIDEO TAPE CASSETTES FEATURING MUSIC;
VIDEO LASER DISCS FEATURING MUSIC, in International Class 9.

**BASIS FOR APPLICATION:**

Please delete Section 44(e) as a basis for this application.

**REMARKS**

Applicant has amended the identification of goods as
suggested by the Examining Attorney.

Serial No. 74/693,839

The application has been amended to delete reliance on the foreign registration as an additional basis. Applicant requests that the application proceed on the basis of use in commerce.

It is respectfully submitted that the application is now in condition for publication and early notice of same is earnestly solicited. However, if the Examining Attorney has any questions, she may contact the undersigned at 202 672-5300 in Washington, D.C.

Respectfully submitted,

_____8/1/96_____
Date

_____
Arthur Schwartz

FOLEY & LARDNER
3000 K Street, N.W.
Suite 500
P.O. Box 25696
Washington, D.C. 20007-8696

**Exhibit 1*40, p4***

- 2 -

74693839



TRADEMARK MAILROOM
RECD
JUN 2 6 1995
60
US PATENT & TRADEMARK OFFICE

**Exhibit 1*40, p7***

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Mark:  APPLE

International Class:  9

APPLICATION FOR TRADEMARK REGISTRATION

To the Assistant Commissioner for Trademarks:

Apple Corps Limited
27 Ovington Square
London
SW3 1LJ
England
A company organized and existing under the laws of England.

GOODS:

Applicant requests registration of the above-identified trademark shown in the accompanying drawing in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. 1051 et. seq., as amended) for the following goods:

GRAMOPHONE RECORDS; PRE-RECORDED AUDIO TAPE CASSETTES; AUDIO COMPACT DISCS; PRE-RECORDED VIDEO TAPE CASSETTES; VIDEO LASER DISCS.

BASIS FOR APPLICATION:

First basis for application:

Applicant is using the mark through licensees in commerce on or in connection with the above-identified goods. (15 U.S.C. 1051(a), as amended.)  Three specimens showing the mark as used in commerce are submitted with this application.

Date of first use of the mark anywhere: August 1968

- 1 -

**Exhibit 1*40, p8***

Mark:  APPLE

Date of first use of the mark in commerce which the U.S. Congress may regulate:  August 1968

Specify the type of commerce:  interstate by licensees

Specify manner or mode of use of mark on or in connection with goods:  applied to labels and packaging and in other ways common to the trade.

**Second Basis for application:**

Applicant has a bona fide intention to use the mark in commerce on or in connection with the above-identified goods and, accompanying this application, submits a certificate or certified copy of a foreign registration in accordance with 15 U.S.C. 1126(e), as amended.

Country of registration:  United Kingdom

Registration No.:  1,348,454

Registration date:  January 17, 1992

Effective date:  June 20, 1988

DECLARATION

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he is properly authorized to execute this application on behalf of the applicant; that he believes the applicant to be the owner of the trademark sought to be registered and/or he believes applicant to be entitled to use the mark in commerce; that to the best of his knowledge and belief no other person, firm, corporation, or association has the right to the use the above-identified mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and all

– 2 –



**BULK DATA:** Since May 7 at 12 a.m., the TSDR Application Programming Interface (API) has not included all information. Images of trademark registration certificates issued since July 2016 and some office actions are absent in the API. Customers who need to retrieve a copy of a registration certificate or an office action should download it directly from the TSDR documents tab.

**INTERMITTENT SYSTEM ISSUES:** Due to high-volume usage, you may experience intermittent issues on the Trademark Status and Document Retrieval (TSDR) system between 6 – 8 a.m. ET. Refreshing your web browser should resolve the issue. If you still need assistance accessing a document, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

| STATUS | DOCUMENTS | MAINTENANCE |
|--------|-----------|-------------|

Back to Search     Print

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2019-12-20 23:30:42 EST |
| **Mark:** | APPLE |

No Image exists for this case.

| | | | |
|---|---|---|---|
| **US Serial Number:** | 74693839 | **Application Filing Date:** | Jun. 26, 1995 |
| **US Registration Number:** | 2034964 | **Registration Date:** | Feb. 04, 1997 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

| | |
|---|---|
| **Status:** | The registration has been renewed. |
| **Status Date:** | Apr. 02, 2017 |
| **Publication Date:** | Nov. 12, 1996 |

▼ **Mark Information**

| Mark Literal Elements: | APPLE |
|---|---|
| Standard Character Claim: | No |
| Mark Drawing Type: | 1 - TYPESET WORD(S) /LETTER(S) /NUMBER(S) |

## ▼ Goods and Services

**Note:**

The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| For: | Gramophone records featuring music; [ pre-recorded audio tape cassettes featuring music; ] audio compact discs featuring music [ ; pre-recorded video tape cassettes featuring music ] [ ; video laser discs featuring music ] | | |
|---|---|---|---|
| International Class(es): | 009 - Primary Class | U.S Class(es): | 021, 023, 026, 036, 038 |
| Class Status: | ACTIVE | | |
| Basis: | 1(a) | | |
| First Use: | Aug. 1968 | Use in Commerce: | Aug. 1968 |

## ▼ Basis Information (Case Level)

| Filed Use: | Yes | Currently Use: | Yes |
|---|---|---|---|
| Filed ITU: | No | Currently ITU: | No |
| Filed 44D: | No | Currently 44E: | No |
| Filed 44E: | No | Currently 66A: | No |
| Filed 66A: | No | Currently No Basis: | No |
| Filed No Basis: | No | | |

## ▼ Current Owner(s) Information

| Owner Name: | APPLE INC. |
|---|---|
| Owner Address: | One Apple Park Way |

Appx02183

EXHIBIT 182

Case: 21-2301     Document: 32     Page: 237     Filed: 03/31/2022

| | | | |
|---|---|---|---|
| | Cupertino, CALIFORNIA UNITED STATES 95014 | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | CALIFORNIA |

## ▼ Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | Thomas R. La Perle | | |
| **Attorney Primary Email Address:** | **trademarkdocket@apple.com** | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | | | |
|---|---|---|---|
| **Correspondent Name/Address:** | Thomas R. La Perle<br>Apple Inc.<br>One Apple Park Way<br>MS: 169-3IPL<br>Cupertino, CALIFORNIA UNITED STATES 95014 | | |
| **Phone:** | 408-974-2385 | | |
| **Correspondent e-mail:** | **trademarkdocket@apple.com** | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative**

| | | | |
|---|---|---|---|
| **Domestic Representative Name:** | Thomas R. La Perle | **Phone:** | 408-974-2385 |
| **Fax:** | 408-253-0186 | | |

## ▼ Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jan. 02, 2019 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Jan. 02, 2019 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Feb. 16, 2018 | APPLICANT/CORRESPONDENCE CHANGES (NON-RESPONSIVE) ENTERED | 88888 |
| Feb. 16, 2018 | TEAS CHANGE OF OWNER ADDRESS RECEIVED | |

**EXHIBIT 182**

**Appx02184**

| Date | Event | Code |
|---|---|---|
| Oct. 25, 2017 | REGISTERED - SEC. 7 REQUEST ABANDONED | 67723 |
| Sep. 01, 2017 | PETITION TO DIRECTOR - DISMISSED | 71999 |
| Aug. 28, 2017 | ASSIGNED TO PETITION STAFF | 71999 |
| May 03, 2017 | ASSIGNED TO PETITION STAFF | 78049 |
| Feb. 03, 2017 | PETITION TO DIRECTOR RECEIVED | 72574 |
| Apr. 24, 2017 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 67723 |
| Apr. 18, 2017 | OTQR WITHDRAWAL FROM PUBLICATION | 70853 |
| Apr. 02, 2017 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Apr. 02, 2017 | REGISTERED AND RENEWED (SECOND RENEWAL - 10 YRS) | 67723 |
| Apr. 02, 2017 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 67723 |
| Apr. 02, 2017 | POST REGISTRATION ACTION CORRECTION | 67723 |
| Mar. 30, 2017 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Mar. 30, 2017 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Mar. 31, 2017 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 67723 |
| Feb. 03, 2017 | TEAS SECTION 8 & 9 RECEIVED | |
| Feb. 03, 2017 | TEAS SECTION 7 REQUEST RECEIVED | |
| Oct. 04, 2016 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Oct. 04, 2016 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Mar. 16, 2016 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Mar. 16, 2016 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Feb. 04, 2016 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| Feb. 05, 2014 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Apr. 11, 2007 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Apr. 05, 2007 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Apr. 05, 2007 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Mar. 26, 2007 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 73376 |
| Mar. 26, 2007 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Mar. 20, 2007 | ASSIGNED TO PARALEGAL | 73376 |

EXHIBIT 182

Appx02185

| Jan. 22, 2007 | TEAS SECTION 8 & 9 RECEIVED | |
| Dec. 27, 2006 | CASE FILE IN TICRS | |
| Sep. 24, 2003 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| Aug. 04, 2003 | REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED | |
| Aug. 04, 2003 | REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED | |
| Aug. 04, 2003 | PAPER RECEIVED | |
| Feb. 04, 1997 | REGISTERED-PRINCIPAL REGISTER | |
| Nov. 12, 1996 | PUBLISHED FOR OPPOSITION | |
| Oct. 11, 1996 | NOTICE OF PUBLICATION | |
| Aug. 14, 1996 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Aug. 01, 1996 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Feb. 01, 1996 | NON-FINAL ACTION MAILED | |
| Jan. 25, 1996 | ASSIGNED TO EXAMINER | 70729 |
| Jan. 04, 1996 | ASSIGNED TO EXAMINER | 72005 |
| Jan. 02, 1996 | ASSIGNED TO EXAMINER | 73344 |
| Jan. 02, 1996 | ASSIGNED TO EXAMINER | 72619 |

## ▼ TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| Current Location: | POST REGISTRATION | Date in Location: | Oct. 25, 2017 |

## ▼ Assignment Abstract Of Title Information - Click to Load

## ▼ Proceedings - Click to Load

EXHIBIT 182

Appx02186

**BULK DATA:** Since May 7 at 12 a.m., the TSDR Application Programming Interface (API) has not included all information. Images of trademark registration certificates issued since July 2016 and some office actions are absent in the API. Customers who need to retrieve a copy of a registration certificate or an office action should download it directly from the TSDR documents tab.

**INTERMITTENT SYSTEM ISSUES:** Due to high-volume usage, you may experience intermittent issues on the Trademark Status and Document Retrieval (TSDR) system between 6 – 8 a.m. ET. Refreshing your web browser should resolve the issue. If you still need assistance accessing a document, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

| STATUS | DOCUMENTS | MAINTENANCE | | Back to Search | 🖶 Print |
|--------|-----------|-------------|--|----------------|---------|

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2019-12-20 23:02:48 EST |
| **Mark:** | APPLE |

<div align="right">

# APPLE

</div>

| | | | |
|---|---|---|---|
| **US Serial Number:** | 78430230 | **Application Filing Date:** | Jun. 04, 2004 |
| **US Registration Number:** | 3317089 | **Registration Date:** | Oct. 23, 2007 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |
| **TM5 Common Status Descriptor:** | | LIVE/REGISTRATION/Issued and Active<br><br>The trademark application has been registered with the Office. | |
| **Status:** | The registration has been renewed. | | |
| **Status Date:** | Apr. 28, 2018 | | |
| **Publication Date:** | Oct. 04, 2005 | | |

EXHIBIT 183

Appx02187



## Mark Information

**Collapse All**

| | |
|---|---|
| **Mark Literal Elements:** | APPLE |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |

## Related Properties Information

| | |
|---|---|
| **International Registration Number:** | **1413880** |
| **International Application(s) /Registration(s) Based on this Property:** | **A0075598**/**1413880** |
| **Claimed Ownership of US Registrations:** | **2034964** |

## Foreign Information

| | | | |
|---|---|---|---|
| **Foreign Registration Number:** | 00218990 | **Foreign Registration Date:** | Nov. 16, 2000 |
| **Foreign Application/Registration Country:** | EUROPEAN (EU) OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET (OHIM) | **Foreign Expiration Date:** | Apr. 01, 2016 |

## Goods and Services

**Note:**

The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Musical sound records; sound records featuring entertainment; sound records featuring music, musicians, documentaries, biographies, interviews, performances, reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, performances, reviews,

**EXHIBIT 163**

**Appx02188**

Trademark Status & Document Retrieval

drama and fiction; cinematographic films; musical sound recordings; musical video recordings; audio and visual recordings featuring or relating to music, entertainment and films; pre-recorded compact discs, [ audio tapes, ] gramophone records, [ video tapes, ] video discs, DVDs, CD-ROMs (( and interactive compact discs, all featuring or relating to music and films; )) digitally recorded sound and video records; (( downloadable musical sound and video records; downloadable sound and video records featuring or relating to music, entertainment and films ))

| | | | |
|---|---|---|---|
| International Class(es): | 009 - Primary Class | U.S Class(es): | 021, 023, 026, 036, 038 |
| Class Status: | ACTIVE | | |
| Basis: | 44(e) | | |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| Filed Use: | No | Currently Use: | No |
| Filed ITU: | No | Currently ITU: | No |
| Filed 44D: | No | Currently 44E: | Yes |
| Filed 44E: | Yes | Currently 66A: | No |
| Filed 66A: | No | Currently No Basis: | No |
| Filed No Basis: | No | | |

## Current Owner(s) Information

| | |
|---|---|
| Owner Name: | APPLE INC. |
| Owner Address: | One Apple Park Way<br>Cupertino, CALIFORNIA UNITED STATES 95014 |
| Legal Entity Type: | CORPORATION |
| State or Country Where Organized: | CALIFORNIA |

## Attorney/Correspondence Information

### Attorney of Record

| | | | |
|---|---|---|---|
| Attorney Name: | Thomas R. La Perle | | |
| Attorney Primary Email | trademarkdocket@apple.com | Attorney Email Authorized: | Yes |

EXHIBIT 183

Appx02189

Trademark Status & Document Retrieval

| | | |
|---|---|---|
| **Address:** | | |

## Correspondent

| | | | |
|---|---|---|---|
| **Correspondent Name/Address:** | Thomas R. La Perle<br>Apple Inc.<br>One Apple Park Way<br>MS 169-3IPL<br>Cupertino, CALIFORNIA UNITED STATES 95014 | | |
| **Phone:** | 408-974-2385 | **Fax:** | 408-253-0186 |
| **Correspondent e-mail:** | trademarkdocket@apple.com<br>karenmarie_kitterman@apple.com<br>amy.shelton@apple.com | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## ▼ Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jul. 15, 2019 | SEC. 15 ACKNOWLEDGEMENT - E-MAILED | |
| Jul. 15, 2019 | REGISTERED - SEC. 15 ACKNOWLEDGED | 77315 |
| Apr. 28, 2018 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Apr. 28, 2018 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 77315 |
| Apr. 28, 2018 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 77315 |
| Apr. 28, 2018 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 77315 |
| Apr. 19, 2018 | TEAS SECTION 8 & 9 RECEIVED | |
| Apr. 19, 2018 | TEAS SECTION 15 RECEIVED | |
| Feb. 16, 2018 | APPLICANT/CORRESPONDENCE CHANGES (NON-RESPONSIVE) ENTERED | 88888 |
| Feb. 16, 2018 | TEAS CHANGE OF OWNER ADDRESS RECEIVED | |
| Mar. 30, 2017 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Mar. 30, 2017 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Oct. 23, 2016 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| Oct. 04, 2016 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |

EXHIBIT 183

Appx02190

| Oct. 04, 2016 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Mar. 28, 2016 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Mar. 28, 2016 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Feb. 05, 2014 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Oct. 30, 2013 | SEC. 15 ACKNOWLEDGEMENT - MAILED | |
| Oct. 30, 2013 | NOTICE OF ACCEPTANCE OF SEC. 8 - MAILED | |
| Oct. 30, 2013 | REGISTERED - SEC. 15 ACKNOWLEDGED | 76873 |
| Oct. 23, 2013 | REGISTERED - SEC. 15 AFFIDAVIT FILED | 76873 |
| Oct. 30, 2013 | REGISTERED - SEC. 8 (6-YR) ACCEPTED | 76873 |
| Oct. 23, 2013 | REGISTERED - SEC. 8 (6-YR) FILED | 76873 |
| Oct. 28, 2013 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 76873 |
| Oct. 23, 2013 | TEAS SECTION 15 RECEIVED | |
| Oct. 23, 2013 | TEAS SECTION 8 RECEIVED | |
| Feb. 22, 2012 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Jun. 12, 2008 | AMENDMENT UNDER SECTION 7 - ISSUED | |
| Jun. 09, 2008 | ASSIGNED TO PARALEGAL | 60132 |
| May 05, 2008 | SEC 7 REQUEST FILED | |
| May 05, 2008 | PAPER RECEIVED | |
| Jan. 16, 2008 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Jan. 07, 2008 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Jan. 07, 2008 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Oct. 23, 2007 | REGISTERED-PRINCIPAL REGISTER | |
| Sep. 18, 2007 | ELECTRONIC RECORD REVIEW COMPLETE | 77975 |
| Sep. 10, 2007 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Sep. 08, 2007 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Aug. 06, 2007 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Aug. 06, 2007 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Apr. 06, 2007 | NON-FINAL ACTION MAILED | |

EXHIBIT 183

Appx02191

| Apr. 05, 2007 | NON-FINAL ACTION WRITTEN | 76731 |
| Apr. 02, 2007 | PREVIOUS ALLOWANCE COUNT WITHDRAWN | |
| Mar. 16, 2007 | ON HOLD - ELECTRONIC RECORD REVIEW REQUIRED | |
| Mar. 01, 2007 | OPPOSITION TERMINATED NO. 999999 | 169004 |
| Mar. 01, 2007 | OPPOSITION DISMISSED NO. 999999 | 169004 |
| Feb. 02, 2006 | OPPOSITION INSTITUTED NO. 999999 | 169004 |
| Oct. 19, 2005 | EXTENSION OF TIME TO OPPOSE RECEIVED | |
| Oct. 04, 2005 | PUBLISHED FOR OPPOSITION | |
| Sep. 14, 2005 | NOTICE OF PUBLICATION | |
| Aug. 23, 2005 | LAW OFFICE PUBLICATION REVIEW COMPLETED | 76523 |
| Aug. 23, 2005 | ASSIGNED TO LIE | 76523 |
| Aug. 12, 2005 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Aug. 05, 2005 | AMENDMENT FROM APPLICANT ENTERED | 76523 |
| Jul. 25, 2005 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 76523 |
| Jul. 25, 2005 | PAPER RECEIVED | |
| Jan. 24, 2005 | NON-FINAL ACTION MAILED | |
| Jan. 24, 2005 | NON-FINAL ACTION WRITTEN | 76731 |
| Jan. 06, 2005 | ASSIGNED TO EXAMINER | 76731 |
| Jun. 09, 2004 | NEW APPLICATION ENTERED IN TRAM | |

## ▼ TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | POST REGISTRATION | **Date in Location:** | Jul. 15, 2019 |

## ▼ Assignment Abstract Of Title Information - Click to Load

EXHIBIT 183

Appx02192



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Fri Feb 14 04:12:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout    Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | Assign Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# APPLE MUSIC

| | |
|---|---|
| **Word Mark** | APPLE MUSIC |
| **Goods and Services** | IC 038. US 100 101 104. G & S: Broadcasting and transmission of voice, data, images, music, audio, video, multimedia, television, and radio by means of telecommunications networks; broadcast and transmission of streamed music, audio, video, and multimedia content by means of telecommunications networks; transfer of music, audio, video, and multimedia to matched users by means of telecommunications networks; providing access to websites, databases, electronic bulletin boards, online forums, directories, music, and audio and video content programs on the Internet by means of telecommunications networks. FIRST USE: 20150608. FIRST USE IN COMMERCE: 20150630 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86659491 |
| **Filing Date** | June 11, 2015 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B;44D |
| **Published for Opposition** | May 3, 2016 |
| **Registration Number** | **5209933** |
| **International Registration Number** | 1290632 |
| **Registration Date** | May 23, 2017 |
| **Owner** | (REGISTRANT) Apple Inc. CORPORATION CALIFORNIA One Apple Park Way Cupertino CALIFORNIA 95014 |

**Appx02465**

| | |
|---|---|
| **Attorney of Record** | Thomas R. La Perle |
| **Priority Date** | May 18, 2015 |
| **Prior Registrations** | 2079765;3710912;4088195 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02466**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Fri Feb 14 04:12:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | Assign Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# APPLE MUSIC

| | |
|---|---|
| **Word Mark** | APPLE MUSIC |
| **Goods and Services** | IC 045. US 100 101. G & S: social networking services; providing a social networking website. FIRST USE: 20150608. FIRST USE IN COMMERCE: 20150630 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86659920 |
| **Filing Date** | June 11, 2015 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B;44D |
| **Published for Opposition** | November 3, 2015 |
| **Registration Number** | **4966276** |
| **International Registration Number** | 1265412 |
| **Registration Date** | May 24, 2016 |
| **Owner** | (REGISTRANT) Apple Inc. CORPORATION CALIFORNIA One Apple Park Way Cupertino CALIFORNIA 95014 |
| **Attorney of Record** | Thomas R. La Perle |
| **Priority Date** | May 26, 2015 |
| **Prior Registrations** | 2808567;3928818;4088195 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

## Appx02468



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Fri Feb 14 03:47:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout    Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | Assign Status | TDR Status |    *( Use the "Back" button of the Internet Browser to return to TESS)*

# APPLE MUSIC

| Word Mark | APPLE MUSIC |
|---|---|
| **Goods and Services** | IC 042. US 100 101. G & S: providing online non-downloadable software for use in generating customized recommendations of audio, video, data, text and other multimedia content; providing online non-downloadable software for use in creating and sharing playlists of audio and multimedia files; providing online non-downloadable software for use in connection with an online music subscription service; providing online non-downloadable software for use in playing, organizing, downloading, transmitting, manipulating, and reviewing audio files and media files; providing online non-downloadable software for use in the delivery, distribution and transmission of digital music and entertainment-related audio, video, text and multimedia content; providing search engines for obtaining data via the internet and other electronic communications networks; computer services, namely, providing customized web pages and other data feed formats featuring a user-customized feed of information in the fields of news, commentary, and other information, content from websites, and other text, audio, video, and multimedia content; creating indexes of online information, sites and other resources available on global computer networks for others; information relating to computer hardware or software provided on-line from a global computer network or the Internet; electronic data storage services. FIRST USE: 20150608. FIRST USE IN COMMERCE: 20150608 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86659908 |
| **Filing Date** | June 11, 2015 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B;44D |
| **Published for Opposition** | May 10, 2016 |
| **Registration Number** | **5851763** |

**Appx02471**

| | |
|---|---|
| **International Registration Number** | 1271615 |
| **Registration Date** | September 3, 2019 |
| **Owner** | (REGISTRANT) Apple Inc. CORPORATION CALIFORNIA One Apple Park Way Cupertino CALIFORNIA 95014 |
| **Attorney of Record** | Thomas R. La Perle |
| **Priority Date** | May 26, 2015 |
| **Prior Registrations** | 2808567;3710912;3717431 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02472**



## United States Patent and Trademark Office

**Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help**

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# PickUp Music

| Word Mark | PICKUP MUSIC |
|---|---|
| Goods and Services | IC 041. US 100 101 107. G & S: Arranging and conducting of concerts; Education services, namely, providing on-line lessons in the field of music; Entertainment, namely, live music concerts. FIRST USE: 20150101. FIRST USE IN COMMERCE: 20181115 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 88348131 |
| Filing Date | March 20, 2019 |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | July 30, 2019 |
| Registration Number | 5883274 |
| Registration Date | October 15, 2019 |
| Owner | (REGISTRANT) Pickup Music Inc. CORPORATION DELAWARE 888-C 8th Ave, Suite 159 New York NEW YORK 10019 |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

**Appx02595**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# Furnace Music

| | |
|---|---|
| **Word Mark** | FURNACE MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music production. FIRST USE: 20130101. FIRST USE IN COMMERCE: 20130101 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88303981 |
| **Filing Date** | February 15, 2019 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | June 25, 2019 |
| **Registration Number** | 5856265 |
| **Registration Date** | September 10, 2019 |
| **Owner** | (REGISTRANT) Furnace Music DBA Fredericksburg Prayer Furnace CORPORATION VIRGINIA 5024 Southpoint Parkway Fredericksburg VIRGINIA 22401 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY |

**Appx02598**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

## WePlay Music

| | |
|---|---|
| **Word Mark** | WEPLAY MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Instruction in the field of music. FIRST USE: 20170109. FIRST USE IN COMMERCE: 20170320 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88293101 |
| **Filing Date** | February 7, 2019 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | June 11, 2019 |
| **Registration Number** | 5843818 |
| **Registration Date** | August 27, 2019 |
| **Owner** | (REGISTRANT) Grueva, Desislava INDIVIDUAL BULGARIA Apt. 3114 297 N State College Blvd Orange CALIFORNIA 92868 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02600**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# IPLAYDAT MUSIC

| | |
|---|---|
| **Word Mark** | IPLAYDAT MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Audio recording and production; Music publishing services; Recording studio services; Sound recording studios; Consultation and advice regarding musical selections and arrangements for sound recordings and live performances; Entertainment services by a musical artist and producer, namely, musical composition for others and production of musical sound recordings; Production of sound recordings. FIRST USE: 20150215. FIRST USE IN COMMERCE: 20150215 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88288623 |
| **Filing Date** | February 4, 2019 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | June 4, 2019 |
| **Registration Number** | 5839270 |
| **Registration Date** | August 20, 2019 |
| **Owner** | (REGISTRANT) Iplaydat Music, LLC LIMITED LIABILITY COMPANY UTAH 10237 S Phoebe Lane South Jordan UTAH 84009 |
| **Attorney of Record** | Derek Julio |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |

**Appx02602**

| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02603**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)* |

# SIMPLY MUSIC

| | |
|---|---|
| **Word Mark** | SIMPLY MUSIC |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Downloadable educational course materials in the field of music. FIRST USE: 20180801. FIRST USE IN COMMERCE: 20180801

IC 038. US 100 101 104. G & S: Broadcasting of video and audio programming over the Internet; Streaming of audio and video tethered downloads; Audio and video broadcasting services over the Internet. FIRST USE: 20180801. FIRST USE IN COMMERCE: 20180801

IC 041. US 100 101 107. G & S: Providing education courses in the field of music offered through online, non-downloadable videos and instructor assistance; Providing a website featuring non-downloadable videos in the field of music. FIRST USE: 20180801. FIRST USE IN COMMERCE: 20180801 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88264698 |
| **Filing Date** | January 16, 2019 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 6, 2019 |
| **Registration Number** | **5889014** |
| **Registration Date** | October 22, 2019 |
| **Owner** | (REGISTRANT) Simply Music, LLC LIMITED LIABILITY COMPANY CALIFORNIA 1321 Howe Ave. Suite 202 Sacramento CALIFORNIA 95825 |

**Appx02605**

| | |
|---|---|
| **Attorney of Record** | Cheryl L Hodgson |
| **Prior Registrations** | 4087242 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02606**



### United States Patent and Trademark Office

**Home** | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

# ROYG MUSIC

| | |
|---|---|
| **Word Mark** | ROYG MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music publishing services. FIRST USE: 20180901. FIRST USE IN COMMERCE: 20180901 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88190981 |
| **Filing Date** | November 12, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 16, 2019 |
| **Registration Number** | 5793004 |
| **Registration Date** | July 2, 2019 |
| **Owner** | (REGISTRANT) GUERRA, ROGELIO INDIVIDUAL UNITED STATES 2274 DUMBARTON AVE EAST PALO ALTO CALIFORNIA 94303 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Other Data** | The name(s), portrait(s), and/or signature(s) shown in the mark identifies ROGELIO GUERRA, whose consent(s) to register is made of record. |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY |

**Appx02608**



## United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)* |

# CHILLWILL MUSIC

| | |
|---|---|
| **Word Mark** | CHILLWILL MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Disc jockey services; Production of musical sound recording; Music production services. FIRST USE: 20080615. FIRST USE IN COMMERCE: 20080615 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88186369 |
| **Filing Date** | November 8, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | July 9, 2019 |
| **Registration Number** | **5866061** |
| **Registration Date** | September 24, 2019 |
| **Owner** | (REGISTRANT) WIGGINS, WILLIE J. INDIVIDUAL UNITED STATES Post Office Box 2787 Kingston NEW YORK 12402 |
| **Attorney of Record** | Simon J. Rosen, Esq. |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Other Data** | The name(s), portrait(s), and/or signature(s) shown in the mark identifies the stage name of Willie J. Wiggins, whose consent(s) to register is made of record. |
| **Live/Dead Indicator** | LIVE |

**Appx02610**



Trademark Electronic Search System (TESS)

## United States Patent and Trademark Office

**Home** | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Tue Feb 18 03:22:22 EST 2020

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout    Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |    *( Use the "Back" button of the Internet Browser to return to TESS)*

# GRAMOSCOPE MUSIC

| | |
|---|---|
| **Word Mark** | GRAMOSCOPE MUSIC |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Musical sound recordings; Computer software for searching libraries of musical composition and music sound recordings, and for use in the administration and management of music; Downloadable musical sound recordings and compositions; Sound recordings featuring music and sound effects; Downloadable digital audio files featuring music and sound effects. FIRST USE: 20060605. FIRST USE IN COMMERCE: 20060608 |
| | IC 035. US 100 101 102. G & S: Business consultation services in the field of music and music licensing; Commercial administration and business management of music licensing; Providing an on-line searchable database featuring music for use in advertisements; Consultation services in the field of music selection services for use in advertising; Commercial administration of the licensing of music of others; Providing music for use in production of television advertisements. FIRST USE: 20060605. FIRST USE IN COMMERCE: 20060608 |
| | IC 041. US 100 101 107. G & S: Providing music for use in production of entertainment and educational content in the nature of television shows, motion pictures, video recordings, in-house productions, and multimedia applications; Music publishing services; Consultation services in the field of music selection services for use in entertainment and educational content in the nature of film, television and other forms of visual media; Providing information about and performances of musical artists by means of a global computer information network; Consultation services in the field of music publishing services; Providing an on-line website featuring libraries of musical composition and music sound recordings; Providing information on musical composition and music sound recordings via electronic and other means; On-line library services, namely, providing electronic library services which feature music via an on-line computer network; Providing electronic library services which feature music via an on-line computer network; Entertainment services, namely, providing prerecorded music, information in the field of music, and commentary and articles about music, all on-line via a global computer network; Production services of sound recordings featuring music; Multimedia entertainment services in the nature of creating, recording, production, and post-production services in the fields of music, video and films; Providing an on-line searchable database featuring musical sound recordings via the Internet; Entertainment services, namely, custom music composition and production for others; Providing an on-line searchable database featuring music. FIRST USE: 20060605. FIRST USE IN COMMERCE: 20060608 |
| **Standard Characters Claimed** | |
| **Mark Drawing** | (4) STANDARD CHARACTER MARK |

**Appx02613**

| Code | |
|---|---|
| **Serial Number** | 88175424 |
| **Filing Date** | October 30, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 2, 2019 |
| **Registration Number** | **5780041** |
| **Registration Date** | June 18, 2019 |
| **Owner** | (REGISTRANT) Gramoscope, Inc. CORPORATION CALIFORNIA 13351 Riverside Dr. #662 Sherman Oaks CALIFORNIA 91423 |
| **Attorney of Record** | DEAN SHELDON SERWIN |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02614**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

## MILLENIA MUSIC

| | |
|---|---|
| **Word Mark** | MILLENIA MUSIC |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: pre-recorded audio cassettes, compact discs, phonograph records, compact disc read-only memory, mini disc, video cassettes, dvd, compact disc video, laser disc, all containing music; audio discs featuring musical and spoken word performances; digital music downloadable from the Internet. FIRST USE: 19980101. FIRST USE IN COMMERCE: 19980101

IC 041. US 100 101 107. G & S: entertainment services, namely, live musical performances by a musical group; educational services, namely, conducting seminars, conferences, and workshops in the field of music healing power. FIRST USE: 19981201. FIRST USE IN COMMERCE: 19981201 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88147598 |
| **Filing Date** | October 9, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 26, 2019 |
| **Registration Number** | 5773896 |
| **Registration Date** | June 11, 2019 |
| **Owner** | (REGISTRANT) Millenia Music, Inc. non-profit corporation KENTUCKY 3980 Broadway Ste.103 PMB 221 Boulder COLORADO 80304 |
| **Attorney of** | Laura M. Franco |

**Appx02616**

| | |
|---|---|
| **Record** | |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |



| **HOME** | **SITE INDEX** | **SEARCH** | *eBUSINESS* | **HELP** | **PRIVACY POLICY**

**Appx02617**



# United States Patent and Trademark Office

**Home** | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

**Logout** Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# REHEGOO MUSIC

| | |
|---|---|
| **Word Mark** | REHEGOO MUSIC |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Musical recordings; Musical sound recordings; Musical video recordings; Audio recordings featuring music and artistic performances; Audio recordings featuring relaxation, yoga, and sleep sounds; Digital music downloadable from the Internet; Downloadable music files; Downloadable musical sound recordings; Series of musical sound recordings; Sound recordings featuring relaxation, yoga and sleep sounds. FIRST USE: 20180100. FIRST USE IN COMMERCE: 20180100

IC 041. US 100 101 107. G & S: Music publishing services; Sound recording services, namely, publication of sound recordings; Digital video, audio, and multimedia publishing services; Multimedia publishing of downloadable software and electronic books; Music production services. FIRST USE: 20180100. FIRST USE IN COMMERCE: 20180100 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87947203 |
| **Filing Date** | June 4, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | February 26, 2019 |
| **Registration Number** | 5748752 |
| **Registration Date** | May 14, 2019 |
| **Owner** | (REGISTRANT) Rehegoo Music Group sp. z o.o. sp□ lka z ograniczona odpowiedzialnoscia (sp. z.o.o.) POLAND |

**Appx02619**

Pilsudskiego 3 Bielsko-Biala Slaskie POLAND 43-300

| | |
|---|---|
| **Attorney of Record** | Joshua M. Gerben, Esq. |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY |

**Appx02620**



### United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout    Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |    *( Use the "Back" button of the Internet Browser to return to TESS)*

# EVAJ MUSIC

| | |
|---|---|
| **Word Mark** | EVAJ MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music production services; Music video production; Production of music; Production of musical sound recording; Production of musical videos; Production of sound and music video recordings; Educational services, namely, providing on-line courses of instruction at the primary, secondary, and undergraduate level; Educational services, namely, providing online courses of instruction at the primary, secondary, and undergraduate level of course material in connection therewith; Entertainment services by a musical artist and producer, namely, musical composition for others and production of musical sound recordings; Entertainment services in the nature of recording, production and post-production services in the field of music; Entertainment services, namely, the presentation of live Christmas musical productions; Multimedia entertainment services in the nature of recording, production and post-production services in the fields of music, video, and films; Post-production editing of Music, videos and film; Post-production editing services in the field of music, videos and film; Providing on-line training courses, seminars, workshops, and webinars in the field of music; Providing a web site featuring on-line courses of instruction in driving high performance automobiles; Providing education courses in the field of music offered through online, non-downloadable videos and instructor assistance; Rental of facilities and equipment for the production of radio and television programs, musical and theatrical productions, namely, performance venues, studios, sets, dressing rooms. FIRST USE: 20010101. FIRST USE IN COMMERCE: 20090101. |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87891624 |
| **Filing Date** | April 24, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 12, 2019 |

**Appx02622**

| | |
|---|---|
| **Registration Number** | **5760855** |
| **Registration Date** | May 28, 2019 |
| **Owner** | (REGISTRANT) EVAJ MUSIC LLC LIMITED LIABILITY COMPANY OKLAHOMA 4200 N MERIDIAN AVE, APT 602 4200 N MERIDIAN AVE OKLAHOMA CITY OKLAHOMA 73112 |
| **Attorney of Record** | Steven Laut |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |
|---|---|---|---|---|---|---|---|

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY |

**Appx02623**



# United States Patent and Trademark Office

**Home** | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |    *( Use the "Back" button of the Internet Browser to return to TESS)*

# ROCKNESS MUSIC

| | |
|---|---|
| **Word Mark** | ROCKNESS MUSIC |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Digital media, namely, pre-recorded DVDs, downloadable audio and video recordings, and CDs featuring and promoting children's music. FIRST USE: 20180101. FIRST USE IN COMMERCE: 20180101 |
| | IC 041. US 100 101 107. G & S: Entertainment services, namely, conducting parties; Instruction in the field of music and music lessons. FIRST USE: 20180101. FIRST USE IN COMMERCE: 20180101 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87799282 |
| **Filing Date** | February 15, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 18, 2018 |
| **Registration Number** | 5620774 |
| **Registration Date** | December 4, 2018 |
| **Owner** | (REGISTRANT) Live Love Learn Limited Liability Company LIMITED LIABILITY COMPANY NEW JERSEY 88 Lake Avenue Metuchen NEW JERSEY 08840 |
| **Attorney of Record** | Anthony Santoriello |
| **Prior** | 4944328;5198658 |

**Appx02625**

**Registrations**

**Disclaimer**    NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN

**Type of Mark**    TRADEMARK. SERVICE MARK

**Register**    PRINCIPAL

**Live/Dead Indicator**    LIVE

---

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

---

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02626**



# United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

# GVAP Music

| Word Mark | GVAP MUSIC |
|---|---|
| Goods and Services | IC 041. US 100 101 107. G & S: Entertainment services in the nature of recording, production and post-production services in the field of music. FIRST USE: 20180305. FIRST USE IN COMMERCE: 20180305 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 87716422 |
| Filing Date | December 11, 2017 |
| Current Basis | 1A |
| Original Filing Basis | 1B |
| Published for Opposition | May 8, 2018 |
| Registration Number | **5577316** |
| Registration Date | October 2, 2018 |
| Owner | (REGISTRANT) Gary Vandy Audio Productions CORPORATION FLORIDA 12620 50Ct. E Parrish FLORIDA 34219 |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

**Appx02628**



## United States Patent and Trademark Office

**Home** | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# ENTROPIC MUSIC

| | |
|---|---|
| **Word Mark** | ENTROPIC MUSIC |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Special event planning for promotional event purposes; promoting the concerts of others; promoting musical artists in the nature of promoting the music of others by means of providing online portfolios via a website; promoting musical artists in the nature of business management of performing musical artists. FIRST USE: 20170112. FIRST USE IN COMMERCE: 20170112<br><br>IC 038. US 100 101 104. G & S: Streaming of audio and audiovisual material, namely pre-recorded live musical shows and recorded sets of others in the nature of audio and video broadcasting services over the Internet, global computer networks, and other communications networks in the field of live and pre-recorded music. FIRST USE: 20170112. FIRST USE IN COMMERCE: 20170112<br><br>IC 041. US 100 101 107. G & S: Multimedia publishing of music. FIRST USE: 20170112. FIRST USE IN COMMERCE: 20170112 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87680673 |
| **Filing Date** | November 10, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A;44D |
| **Published for Opposition** | August 28, 2018 |
| **Registration Number** | **5604731** |
| **Registration** | November 13, 2018 |

**Appx02631**

| | |
|---|---|
| **Date** | |
| **Owner** | (REGISTRANT) Segalman, Alec INDIVIDUAL UNITED STATES Apt. 22B 444 E. 82nd St. New York NEW YORK 10028 |
| **Attorney of Record** | Teresa L. Segalman |
| **Priority Date** | May 10, 2017 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME　NEW USER　STRUCTURED　FREE FORM　BROWSE DICT　SEARCH OG　TOP　HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02632**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# RENDEZVOUS MUSIC

| | |
|---|---|
| **Word Mark** | RENDEZVOUS MUSIC |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Musical sound recordings; Downloadable musical songs and musical video recordings; Phonograph records featuring music; Compact discs featuring music and audiovisual recordings; Audiovisual recordings featuring music and musical based entertainment. FIRST USE: 20081231. FIRST USE IN COMMERCE: 20081231<br><br>IC 035. US 100 101 102. G & S: Management of performing and recording artists; Promoting the concerts of others; Promoting public awareness of jazz, live music, and musical based entertainment. FIRST USE: 20081231. FIRST USE IN COMMERCE: 20081231<br><br>IC 041. US 100 101 107. G & S: Production of sound recordings; Music production services; Sound recording studios; Entertainment services in the nature of recording, production, and post-production services in the field of music; Entertainment, namely, live music concerts; Arranging and conducting of concerts; Providing a website featuring information in the field of music and entertainment; Providing an internet website portal in the field of music and entertainment; Providing a website featuring information concerning musical artists, their background, their musical recordings, and relevant news and commentary; Providing an internet website portal concerning musical artists, their background, their musical recordings, and relevant news and commentary; Educational services, namely, providing internships in the field of music and music production; Providing information in the field of music, events, and musical based entertainment; Educational services, namely, providing classes, seminars, workshops and training in the fields of music, the music industry, musical entertainment, musical recordings, and musical artists; Distribution of audio and visual programs in the nature of podcasts, webcasts, and music videos. FIRST USE: 20081231. FIRST USE IN COMMERCE: 20081231 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87648136 |
| **Filing Date** | October 17, 2017 |
| **Current Basis** | 1A |

**Appx02634**

| | |
|---|---|
| **Original Filing Basis** | 1B |
| **Published for Opposition** | April 10, 2018 |
| **Registration Number** | **5692840** |
| **Registration Date** | March 5, 2019 |
| **Owner** | (REGISTRANT) Mack Avenue Records II, LLC LIMITED LIABILITY COMPANY MICHIGAN 1 Kercheval Ave. Grosse Pointe Farms MICHIGAN 48236 |
| **Attorney of Record** | Catherine T. Dobrowitsky |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02635**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# NEXCEN MUSIC

| | |
|---|---|
| **Word Mark** | NEXCEN MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music publishing, composition and transcription for others; Music composition and publishing for others; Music production services; Production of sound and music video recordings; Record master production. FIRST USE: 20090401. FIRST USE IN COMMERCE: 20090501 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87639572 |
| **Filing Date** | October 10, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | November 6, 2018 |
| **Registration Number** | 5659009 |
| **Registration Date** | January 22, 2019 |
| **Owner** | (REGISTRANT) Next Century Music, LLC LIMITED LIABILITY COMPANY TENNESSEE Suite 2950 424 Church St. Ste. 2950 c/o Karl Braun Nashville TENNESSEE 37219 |
| **Attorney of Record** | Karl M. Braun |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

**Appx02637**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# SIXONE MUSIC

| Field | Value |
|---|---|
| **Word Mark** | SIXONE MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment services in the nature of presenting live musical performances; entertainment and record label services, namely, recording studios, music songwriting for non-advertising purposes, production of sound and music video recordings and music publishing; providing on-line music, not downloadable; arranging of concerts; entertainment, namely, live music concerts; music production services; entertainment services, namely, providing non-downloadable playback of music via global communications networks; disc jockey services. FIRST USE: 20170919. FIRST USE IN COMMERCE: 20171000 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87613853 |
| **Filing Date** | September 19, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | February 20, 2018 |
| **Registration Number** | 5542536 |
| **Registration Date** | August 14, 2018 |
| **Owner** | (REGISTRANT) Taylor, Francois INDIVIDUAL UNITED STATES 4606 S Churchill Dr Richton Park ILLINOIS 60471 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

**Appx02640**



# United States Patent and Trademark Office

**Home** | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

# Riser Music

| | |
|---|---|
| **Word Mark** | RISER MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music publishing services. FIRST USE: 20150401. FIRST USE IN COMMERCE: 20150401 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87591310 |
| **Filing Date** | August 31, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | January 16, 2018 |
| **Registration Number** | **5437386** |
| **Registration Date** | April 3, 2018 |
| **Owner** | (REGISTRANT) Riser Music, LLC LIMITED LIABILITY COMPANY TENNESSEE 131 North Timber Drive Nashville TENNESSEE 37214

(LAST LISTED OWNER) RISER HOUSE ENTERTAINMENT LLC LIMITED LIABILITY COMPANY TENNESSEE 1010 17TH AVE. S. NASHVILLE TENNESSEE 37212 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Chuck Allen Floyd |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |

**Appx02643**



## United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks** > **Trademark Electronic Search System (TESS)**

TESS was last updated on Tue Feb 18 03:22:22 EST 2020

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# Heartfelt Music

| | |
|---|---|
| **Word Mark** | HEARTFELT MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music composition and transcription for others; Music composition for others; Music composition services; Music production services; Music publishing services; Music video production; Musical event booking agencies; Charitable services, namely, providing musical instruments to those in need; Composition of music for others; Education in the fields of music rendered through correspondence courses; Educational services, namely, conducting on line and telephonic instruction and courses in the field music; Educational services, namely, providing online instruction in the field of music via an online website; Entertainment and educational services, namely, the presentation of seminars, workshops and panel discussions, and ongoing television and radio shows all in the field of music; Entertainment information services, namely, providing information and news releases about a musical artist; Entertainment services in the nature of live musical performances; Entertainment services in the nature of live audio performances by music artist; Entertainment services in the nature of live visual and audio performances by music artist; Entertainment services in the nature of live vocal performances by music artist; Entertainment services in the nature of presenting live musical performances; Entertainment services in the nature of recording, production and post-production services in the field of music; Entertainment services, namely, providing advice and information for music, video and film concept and script development; Entertainment services, namely, providing non-downloadable playback of music via global communications networks; Entertainment services, namely, providing non-downloadable prerecorded music, information in the field of music, and commentary and articles about music, all on-line via a global computer network; Entertainment services, namely, providing on-line reviews of music; Entertainment services, namely, the presentation of live Christmas musical productions; Entertainment, namely, live music concerts; Entertainment, namely, live performances by musical bands; Instruction in the field of music; Live performances by a musical group; Multimedia entertainment services in the nature of recording, production and post-production services in the fields of music, video, and films; Multimedia publishing of books, magazines, journals, software, games, music, and electronic publications; Production of music; Production of musical sound recording; Production of sound and music video recordings; Providing a website featuring entertainment information in the field(s) of music; Providing a website featuring information in the field of music and entertainment; Providing an Internet website portal featuring entertainment news and information specifically in the field of music; Providing an Internet website portal featuring links to musical artist websites and music performance ticket information; Providing education courses in the field of music offered through online, non-downloadable videos and instructor assistance; Providing education in the field of music rendered through correspondence courses; Providing education in the field of music rendered through video conference; Providing facilities for movies, shows, plays, music or educational training; Providing information on teaching methodology and education issues to music educators; Providing on-line music, not downloadable; Providing on-line videos featuring music, not downloadable; Provision of information relating to music; Provision of information relating to live performances, road shows, live stage events, theatrical performances, live music concerts and audience |

**Appx02646**

participation in such events; Publishing of books, e-books, audio books, music and illustrations; Teaching in the field of music; Ticket reservation and booking services for recreational and leisure events, namely, music concerts. FIRST USE: 19840728. FIRST USE IN COMMERCE: 19840728

| | |
|---|---|
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87527416 |
| **Filing Date** | July 13, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 22, 2018 |
| **Registration Number** | **5533149** |
| **Registration Date** | August 7, 2018 |
| **Owner** | (REGISTRANT) Heartfelt Music & Ministry, Inc. AKA Heartfelt Music CORPORATION CALIFORNIA PO Box 3; 20 Pine Ave. Mount Hermon CALIFORNIA 95041 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |
|---|---|---|---|---|---|---|---|

**| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY |**

**Appx02647**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# MECCA MUSIC

| | |
|---|---|
| **Word Mark** | MECCA MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Providing a website in the field of music and entertainment; providing a website that allows entertainers, performers and artists and operators of entertainment, performance and artistic venues to list events and performances, and that enables users to locate events and performances by artist, date, genre, location and other criteria. FIRST USE: 20170620. FIRST USE IN COMMERCE: 20170620. |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87486380 |
| **Filing Date** | June 13, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | November 14, 2017 |
| **Registration Number** | 5542241 |
| **Registration Date** | August 14, 2018 |
| **Owner** | (REGISTRANT) Mecca Music, LLC LIMITED LIABILITY COMPANY WISCONSIN 3066 North Pierce Street Milwaukee WISCONSIN 53212 |
| **Attorney of Record** | Andrew S. McConnell |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of** | SERVICE MARK |

**Appx02649**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# 3345 Music

| | |
|---|---|
| **Word Mark** | 3345 MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music composition for others; Music composition services; Music production services; Music publishing services; Music selection services for use in television, film, radio and video games; Music video production; Composition of music for others; Consultation and advice regarding musical selections and arrangements for sound recordings and live performances; Entertainment services by a musical artist and producer, namely, musical composition for others and production of musical sound recordings; Entertainment services in the nature of live musical performances; Entertainment services in the nature of presenting live musical performances; Entertainment services in the nature of recording, production and post-production services in the field of music; Entertainment services, namely, providing advice and information for music, video and film concept and script development; Entertainment, namely, live music concerts; Entertainment, namely, live performances by musical bands; Entertainment, namely, live performances by a musical band; Instruction in the field of music production; Live performances by a musical group; Post-production editing services in the field of music, videos and film; Presentation of musical performances; Production of music; Production of musical sound recording; Production of musical videos; Production of sound and music video recordings; Providing on-line music, not downloadable; Providing on-line videos featuring music, not downloadable. FIRST USE: 20070601. FIRST USE IN COMMERCE: 20070601 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87486506 |
| **Filing Date** | June 13, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | October 31, 2017 |

| Registration Number | 5378965 |
|---|---|
| Registration Date | January 16, 2018 |
| Owner | (REGISTRANT) 3C Music LLC DBA 3345 Music and 3345 Music Publishing LIMITED LIABILITY COMPANY TEXAS 8926 Greenville Dallas TEXAS 75243 |
| Attorney of Record | Craig Crafton |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

TESS HOME  NEW USER  STRUCTURED  FREE FORM  BROWSE DICT  SEARCH OG  TOP  HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02653**



## United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# Dome Music

| | |
|---|---|
| **Word Mark** | DOME MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music production services; Recording studio services; Sound recording studios. FIRST USE: 20160701. FIRST USE IN COMMERCE: 20160701 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87444787 |
| **Filing Date** | May 10, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 12, 2017 |
| **Registration Number** | **5346348** |
| **Registration Date** | November 28, 2017 |
| **Owner** | (REGISTRANT) Dome Music, LLC LIMITED LIABILITY COMPANY MINNESOTA 400 Flandrau Street Saint Paul MINNESOTA 55106 |
| **Attorney of Record** | John Fallone |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |



## United States Patent and Trademark Office

**Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help**

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

**Logout** Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# Bayfront Music

| | |
|---|---|
| **Word Mark** | BAYFRONT MUSIC |
| **Goods and Services** | IC 035. US 100 101 102. G & S: On-line retail store services featuring musical instruments and accessories therefor. FIRST USE: 20160601. FIRST USE IN COMMERCE: 20160722 |
| | IC 037. US 100 103 106. G & S: Repair or maintenance of musical instruments. FIRST USE: 20160601. FIRST USE IN COMMERCE: 20160722 |
| | IC 041. US 100 101 107. G & S: Instruction in the field of music. FIRST USE: 20160601. FIRST USE IN COMMERCE: 20160722 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87430268 |
| **Filing Date** | April 28, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration Number** | **5298598** |
| **Registration Date** | September 26, 2017 |
| **Owner** | (REGISTRANT) Bayfront Music LIMITED LIABILITY COMPANY FLORIDA 7606 Tamiami Trail #102 Sarasota FLORIDA 34231 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | SUPPLEMENTAL |
| **Live/Dead Indicator** | LIVE |

**Appx02658**



### United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# LADYBUG MUSIC

| | |
|---|---|
| **Word Mark** | LADYBUG MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Educational and entertainment services for children, namely, providing instructional classes in the field of music and social gatherings for children and distribution of course and educational materials in connection therewith. FIRST USE: 20040828. FIRST USE IN COMMERCE: 20140403 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87407770 |
| **Filing Date** | April 11, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 6, 2018 |
| **Registration Number** | 5588717 |
| **Registration Date** | October 23, 2018 |
| **Owner** | (REGISTRANT) LADYBUG MUSIC CORPORATION CALIFORNIA 4308 WHITSETT AVE., APT. #6 STUDIO CITY CALIFORNIA 91604 |
| **Attorney of Record** | Justin Toobi |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

**Appx02661**



### United States Patent and Trademark Office

**Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help**

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# MAGNUS MUSIC

| | |
|---|---|
| **Word Mark** | MAGNUS MUSIC |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Commercial administration of the licensing of music and publishing rights of others. FIRST USE: 20160802. FIRST USE IN COMMERCE: 20160802

IC 041. US 100 101 107. G & S: Record label services, namely, production and publishing of music; entertainment services in the nature of development, creation, production and post-production services of multimedia entertainment content. FIRST USE: 20160802. FIRST USE IN COMMERCE: 20160802 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87401343 |
| **Filing Date** | April 6, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | August 8, 2017 |
| **Registration Number** | 5482308 |
| **Registration Date** | May 29, 2018 |
| **Owner** | (REGISTRANT) Magnus Media, LLC LIMITED LIABILITY COMPANY DELAWARE 656 NW 98th Street Miami FLORIDA 33150 |
| **Attorney of Record** | Alexander D. Brown |

**Appx02664**

| | |
|---|---|
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Trademark Electronic Search System (TESS)



## United States Patent and Trademark Office

**Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help**

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

**TESS HOME** | **NEW USER** | **STRUCTURED** | **FREE FORM** | **BROWSE DICT** | **SEARCH OG** | **BOTTOM** | **HELP**

**Logout** Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

**TSDR** | **ASSIGN Status** | **TTAB Status** *( Use the "Back" button of the Internet Browser to return to TESS)*

# 278 Music

| | |
|---|---|
| **Word Mark** | 278 MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music publishing services; Entertainment services, namely, production of musical sound recordings. FIRST USE: 20170307. FIRST USE IN COMMERCE: 20170307 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87395933 |
| **Filing Date** | April 3, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | February 13, 2018 |
| **Registration Number** | **5456774** |
| **Registration Date** | May 1, 2018 |
| **Owner** | (REGISTRANT) 278 Music Inc. CORPORATION NEW YORK 156-20 110th Avenue Jamaica NEW YORK 11433 |
| **Attorney of Record** | Jeffrey E. Jacobson, Esq. |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

**TESS HOME** | **NEW USER** | **STRUCTURED** | **FREE FORM** | **BROWSE DICT** | **SEARCH OG** | **Top** | **HELP**

Appx02667



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout　Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |

*( Use the "Back" button of the Internet Browser to return to TESS)*

# CLOUDXIX MUSIC

| | |
|---|---|
| **Word Mark** | CLOUDXIX MUSIC |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Audio and video recordings featuring music and artistic performances; compact discs featuring music; digital music downloadable from the Internet; musical sound recordings. FIRST USE: 20170218. FIRST USE IN COMMERCE: 20170218

IC 041. US 100 101 107. G & S: Entertainment services, namely, providing non-downloadable playback of music via global communications networks; providing non-downloadable prerecorded music on-line via a global computer network. FIRST USE: 20170218. FIRST USE IN COMMERCE: 20170218 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87355986 |
| **Filing Date** | March 2, 2017 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 1, 2017 |
| **Registration Number** | 5310297 |
| **Registration Date** | October 17, 2017 |
| **Owner** | (REGISTRANT) Abreu, Antonio INDIVIDUAL UNITED STATES 15411 Sw 54 St. Miami FLORIDA 331854413 |
| **Attorney of Record** | Raj Abhyanker |

**Appx02670**

| | |
|---|---|
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx02671**



## United States Patent and Trademark Office

**Home** | **Site Index** | **Search** | **FAQ** | **Glossary** | **Guides** | **Contacts** | **eBusiness** | **eBiz alerts** | **News** | **Help**

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Tue Feb 18 03:22:22 EST 2020*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# Uncanny Music

| | |
|---|---|
| **Word Mark** | UNCANNY MUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Music composition services. FIRST USE: 20141201. FIRST USE IN COMMERCE: 20161128 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87282068 |
| **Filing Date** | December 27, 2016 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 30, 2017 |
| **Registration Number** | **5265134** |
| **Registration Date** | August 15, 2017 |
| **Owner** | (REGISTRANT) Miller, Leonard C. INDIVIDUAL UNITED STATES 1227 N. Hancock St Philadelphia PENNSYLVANIA 19122 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MUSIC" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| **HOME** | **SITE INDEX** | **SEARCH** | **eBUSINESS** | **HELP** | **PRIVACY POLICY**

**Appx02673**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA1037413** |
| Filing date: | **02/20/2020** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Defendant<br>Apple Inc. |
| Correspondence<br>Address | JOSEPH PETERSEN<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>1080 MARSH ROAD<br>MENLO PARK, CA 94025<br>UNITED STATES<br>JPetersen@kilpatricktownsend.com, JGonder@kilpatricktownsend.com, Agarcia@kilpatricktownsend.com, tmadmin@kilpatricktownsend.com<br>650-326-2400 |
| Submission | Testimony For Defendant |
| Filer's Name | Joseph Petersen |
| Filer's email | JPetersen@kilpatricktownsend.com, JGonder@kilpatricktownsend.com, Agarcia@kilpatricktownsend.com, tmadmin@kilpatricktownsend.com |
| Signature | /Joseph Petersen/ |
| Date | 02/20/2020 |
| Attachments | 2020.02.20 Testimony Declaration of Jones.pdf(1610006 bytes )<br>Exhibits 1 - 5 to Jones.pdf(4949072 bytes )<br>Exhibits 6 - 8 to Jones.pdf(2225029 bytes )<br>Segment 001 of EXHIBIT 9_Jones.pdf(5059471 bytes )<br>Segment 002 of EXHIBIT 9_Jones.pdf(5181169 bytes )<br>Segment 003 of EXHIBIT 9_Jones.pdf(837687 bytes )<br>Segment 001 of EXHIBIT 10_Jones.pdf(5238084 bytes )<br>Segment 002 of EXHIBIT 10_Jones.pdf(2224451 bytes )<br>Exhibits 11 - 14.pdf(5463581 bytes )<br>EXHIBIT 15_Jones.pdf(3978584 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

*In re* Application Serial No.: 86/659,444
Mark: APPLE MUSIC
Filing Date: June 11, 2015
Publication Date: May 10, 2016

|  |  |
|---|---|
| CHARLES BERTINI,<br><br>               Opposer,<br><br>        v.<br><br>APPLE INC.,<br><br>               Applicant. | Opposition No. 91229891 |

**DECLARATION OF JEFFREY VAUGHAN**
**JONES ON BEHALF OF APPLICANT APPLE INC.**

I, Jeffrey Vaughan Jones, hereby declare as follows:

**I.    INTRODUCTION**

1.      I am the Chief Executive Officer of Apple Corps Limited ("Apple Corps"), a position I have held since May 7, 2007. I have more than 35 years of experience in the music industry, and immediately prior to joining Apple Corps, I was a vice president with Sony BMG Music Entertainment Inc. in the United States. As a result of my experience at Apple Corps, I am intimately familiar with its operations, including services rendered and the distribution and/or licensing of goods branded and marketed on a worldwide basis under Apple Corps' APPLE word mark and its variants, and the Apple Corps design marks, including the Whole Apple Design mark and the Half Apple Design mark and their variants, all of which Apple Corps assigned to

1

Apple Inc. in the 2007 to 2008 time period.[1] Except where otherwise stated, all information provided within this declaration is either personally known to me, or is information which has been provided to me (especially in relation to matters prior to my appointment in May 2007) and all of which I believe to be true, and/or has been obtained by me from the books and records made in the usual and ordinary course of Apple Corps' business.

## II.    APPLE CORPS COMPANY BACKGROUND

2.      The members of the world-famous musical group The Beatles established Apple Corps in the 1960s. The Beatles, unquestionably, are among the most celebrated and successful musical groups of all time.  The Beatles top the Recording Industry Association of America's ("RIAA's") list of Gold and Platinum Awards for albums sold, with certified sales of 183 million units, as reflected in **Exhibit 1**.

3.      Apple Corps officially began on June 20, 1963, when a corporation then known as The Beatles Limited was set up in the United Kingdom. Each of the four Beatles—John Winston Lennon, George Harrison, James Paul McCartney (professionally known as Paul McCartney), and Richard Starkey (professionally known as Ringo Starr)—owned 25 percent of the company. The company's name was changed to Apple Music Limited in 1967 and was changed again to its current name, Apple Corps Limited, effective February 9, 1968. Apple Corps' principal place of business is currently 27 Ovington Square, London, SW3 1LJ, United Kingdom.

4.      Throughout its history, Apple Corps has been involved in the production and distribution of some of the *most famous sound recordings ever created* (among many other commercial activities). Apple Corps and/or affiliates and licensees produced and distributed sound recordings under its Apple Corps record label and APPLE word mark for The Beatles and

---

[1] These consist of U.S. Registration Nos. 2,034,964 (APPLE word mark in Class 9). 3,317,089 (APPLE word mark in Class 9), 2,036,537 (Half Apple Design mark in Class 9). 2,041,653 (Whole Apple Design mark in Class 9), 3,200,354 (Half Apple Design mark in Class 9); and 3,221,275 (Whole Apple Design mark in Class 9).

2

other famous recording artists, and such sound recordings were (and many continue to be) distributed in the United States and worldwide.

5.    Further, Apple Corps' activities, either directly or through its affiliates and/or licensees, extended to the production and distribution of film. Specifically, during the 1960s and into the 1970s, Apple Corps and/or its affiliate(s) and/or licensees and The Beatles were involved in the production and distribution of several films featuring music by The Beatles, including (a) three "action films," *A Hard Day's Night*, *Help!*, and *Magical Mystery Tour*; (b) *Let It Be*, a documentary film about The Beatles; and (c) the animated film *Yellow Submarine*. The films have been shown in theaters and on television in the United States since the 1960s. Additionally, several of them were released on VHS when the format became available, and, as illustrated below, most of them are now sold on DVD in the United States under the APPLE word mark.

6.    Today, Apple Corps' primary business activities involve the distribution of Beatles-related sound and video recordings released under the Apple Corps record label and APPLE word mark and many other types of commercial uses. Most recently, Apple Corps has announced a collaboration with Academy Award winning director, Sir Peter Robert Jackson, to produce a new documentary film about the making of The Beatles' final album, *Let It Be*.

7.    Apple Corps has been operating continuously under the Apple Corps name since 1968. Apple Corps' goods and services, as well as goods and services branded with the APPLE word mark under license, are advertised and distributed worldwide, including in the United States. Through 50-plus years of operation, Apple Corps has become a very well-known and, indeed, an iconic brand.

8.    In addition to The Beatles and its members, several other well-known musicians have had their sound recordings produced and distributed under the Apple Corps record label and

3

APPLE word mark, including, but not limited to such famous recording artists as James Taylor, Mary Hopkin, Badfinger, and Billy Preston.

9.    Today, Apple Corps is owned by the two surviving members of The Beatles, namely, Paul McCartney and Richard Starkey (professionally known as Ringo Starr), as well as by Yoko Ono Lennon (who inherited John Lennon's 1/4 share) and the Estate of George Harrison.

10.    Sound recordings distributed under the Apple Corps label have been some of the biggest-selling U.S. sound recordings of all time. For example, The Beatles' self-titled album, which has come to be known as the "White Album," has certified U.S. sales of 24 million units.

### III.    THE APPLE CORPS BRAND AND THE APPLE TRADEMARKS FORMERLY OWNED BY APPLE CORPS

11.    Since its inception, Apple Corps has recognized the value of branding in the development of its business. Throughout the company's history since at least 1968, Apple Corps goods and services have been advertised, promoted, marketed and offered under the APPLE word mark.

12.    Since 1968, the APPLE word mark has been widely used by or under license from Apple Corps in relation to the production and distribution of Beatles sound recordings, films, and related production and distribution services. In addition to its APPLE word mark, Apple Corps also has utilized the Apple Corps design marks in connection with its goods and services. The Apple Corps design marks consist of realistic photographic images of an apple and include the Whole Apple Design mark and the Half Apple Design mark, depicted below.

4

 

**Whole Apple Design Mark**    **Half Apple Design Mark**

13.    On June 26, 1995, Apple Corps filed U.S. Trademark Application Serial No. 74/693,839 for the APPLE word mark. The mark was first used in commerce at least as early as August 1968. On February 4, 1997, this mark matured into Registration No. 2,034,964, covering the following Class 9 goods: gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; and video laser discs featuring music. This registration currently covers the following Class 9 goods: gramophone records featuring music and audio compact discs featuring music.

14.    On June 4, 2004, Apple Corps filed U.S. Trademark Application Serial No. 78/430,230 for the APPLE word mark. The application was based on EU Registration No. 00218990, which was registered on November 16, 2000. On October 23, 2007, this mark matured into Registration No. 3,317,089, covering the following Class 9 goods:

> musical sound records; sound records featuring entertainment; sound records featuring music, musicians, documentaries, biographies, interviews, performances. reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, performances, reviews, drama and fiction; cinematographic films; musical sound recordings; musical video recordings; audio and visual recordings featuring or relating to music, entertainment and films; pre-recorded compact discs, audio tapes, gramophone records, video tapes, video discs, DVDs, CD-ROMs and interactive compact

5

discs, all featuring or relating to music and films; digitally recorded sound and video records; and downloadable musical sound and video records; download-able sound and video records featuring or relating to music, entertainment and films.

This registration currently covers the following Class 9 goods:

> Musical sound records; sound records featuring entertainment; sound records featuring music, musicians, documentaries, biographies, interviews, performances, reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, performances, reviews, drama and fiction; cinematographic films; musical sound recordings; musical video recordings; audio and visual recordings featuring or relating to music, entertainment and films; pre-recorded compact discs, gramophone records, video discs, DVDs, CD-ROMs and interactive compact discs, all featuring or relating to music and films; digitally recorded sound and video records; downloadable musical sound and video records; and downloadable sound and video records featuring or relating to music, entertainment and films.

15.    As noted above, Apple Corps assigned U.S. Registration Nos. 2,034,964 and 3,317,089 (among other trademarks) to Apple Inc. in 2007 (with respect to Reg. No. 2,034,964) and 2008 (with respect to Reg. No. 3,317,089). At that time, Apple Inc. granted Apple Corps a license to continue using these marks and Apple Corps' use of the marks, along with any goodwill, inures to Apple Inc.'s benefit.

16.    In my executive position at Apple Corps, I am familiar with Apple Corps' licensing and use of the APPLE word mark in connection with its various goods and services. Apple Corps collects and maintains information concerning such use and licensing, as well as information concerning the production, promotion, and distribution of goods and services marketed and sold in connection with the APPLE word mark. Apple Corps collects and maintains this information for numerous purposes in the ordinary course of its business,

6

including showing use of Apple Corps' marks to support and maintain trademark applications and registrations and in connection with the calculation of royalty payments.

17.    Based on my familiarity with Apple Corps' operations and history acquired during my employment as Chief Executive Officer of Apple Corps, I provide the below overview of goods and services offered by Apple Corps and its licensees throughout the company's 50-plus year history, including examples of use of the APPLE word mark in connection with various goods and services.

18.    Since 1968, Apple Corps has continuously used the APPLE word mark in connection with the production and/or distribution of sound recordings and film in the United States. While it is difficult to find contemporaneous records of use of the APPLE word mark in the United States across all 50-plus years of use, the exemplary documents and information identified herein remove any possible doubt that Apple Corps has continually used the APPLE word mark in connection with the production and distribution of sound recordings and film in the United States since 1968. Indeed, the tremendous sales of sound recordings by The Beatles and non-Beatles artists under the APPLE word mark makes clear that over the past six-plus decades Apple Corps at all times had an intent to use the APPLE word mark in the United States and did so continuously.

## IV.    DISTRIBUTION OF SOUND RECORDINGS IN THE UNITED STATES UNDER THE APPLE WORD MARK SINCE 1968

19.    Apple Corps' distribution of sound recordings in the United States long involved distribution through Capitol Records ("Capitol"). Capitol was affiliated with EMI Records Limited ("EMI") which had exclusive rights to distribute Beatles recordings worldwide, including in the United States. On or about September 1, 1969, Apple Corps, acting through its New York affiliate, Apple Records, Inc., entered into two related agreements. One was a

7

licensing agreement with EMI, under which EMI granted Apple the sole and exclusive right to manufacture, distribute, advertise and sell Beatles recordings in the United States, among other jurisdictions. The second was a manufacturing and distributing agreement with Capitol covering the United States among other jurisdictions. Similarly, Capitol manufactured and distributed the non-Beatles recordings in the US under license from Apple Corps' California affiliate, Apple Records, Inc.

20.    As itemized below, some of the most famous sound recordings ever made were released in the United States in connection with the APPLE word mark and were thereafter manufactured and distributed continuously in the United States by Apple Corps and Capitol until any re-release that may have occurred with branding that did not include the APPLE word mark (and in those instances, the previously released sound recordings offered under the APPLE word mark would have been continued to have been distributed even after any new re-release until the inventory of the previously released versions and associated branding was exhausted, a process which can take years).

21.    Before I provide examples of Apple Corps' use of the APPLE word mark over the last 50-plus years, it would be helpful if I explain what the term "release" means in the music industry. Generally, it refers to the date on which a sound recording (or a version of a sound recording because new versions of popular sound recordings are often periodically re-released in jurisdictions throughout the world) is *first* distributed to the public. Thereafter, and as to releases of extraordinarily popular recordings, such as recordings by The Beatles, those releases are both manufactured (or "pressed" to use a term that was popular when music was primarily distributed through vinyl records) and distributed for many years after the initial release. In fact, The Beatles

8

recordings are "evergreen," meaning versions of The Beatles recordings have been available continuously every year after their original release.

**A.     U.S. Production and Distribution of Sound Recordings Featuring The Beatles**

22.     The first sound recording offered in connection with the APPLE word mark was the single *Hey Jude,* produced and released under the Apple Corps label and APPLE word mark in the United Kingdom and the United States in 1968. Attached hereto as **Exhibit 2** is a true and correct printout from Apple Corps' website at www.thebeatles.com regarding the production and release of the *Hey Jude* single under the Apple Corps label and in connection with the APPLE word mark. At the top of the *Hey Jude* record, "Apple Records" appears as the first two words in green text, as shown below:



As stated in **Exhibit 2**, the *Hey Jude* single spent nine weeks as number one in the United States, and approximately eight million copies of it (certain of which were manufactured and distributed under the APPLE word mark) have been sold.

23.    Attached hereto as **Exhibit 3** are true and correct depictions of the records and/or record sleeves for various Beatles singles and albums produced by Apple Corps, released in the United States between 1968 and 1973 under the APPLE word mark, with annotations pointing to the use of the mark. These include the following:

- *Hey Jude* (released in or about 1968)
- *Revolution* (released in or about 1968)
- *Get Back*, The Beatles with Billy Preston (released in or about 1969)
- *Don't Let Me Down*, The Beatles with Billy Preston (released in or about 1969)
- *Come Together* (released in or about 1969)
- *Let It Be* (released in or about 1970)
- *You Know My Name (Look Up The Number)* (released in or about 1970)
- *For You Blue* (released in or about 1970)
- *The Beatles 1962-1966* (cassette) (released in or about 1973)
- *The Beatles 1967-1970* (cassette) (released in or about 1973)

Representative examples of the record sleeves for these releases are depicted below:

10





11



24.    The Beatles' *Abbey Road* album was initially released in 1969 on the Apple Corps label and under the APPLE word mark in the United States, as depicted below. One of The Beatles' most successful albums, with certified sales of 12 million units in the United States, after its initial release, versions of *Abbey Road* (certain of which were manufactured and distributed under the APPLE word mark) continued to sell in substantial quantities, having been continuously available since 1969 and released on CD in the 1980s. Indeed, between 1968 and 1991, the album went from Gold to Platinum, indicating that at least 500,000 copies had been sold in the United States during that time period.

12



25.    Although The Beatles' final studio album under the Apple Corps label, *Let It Be,* was initially released in 1970, substantial quantities of The Beatles sound recordings (certain of which were manufactured and distributed under the APPLE word mark) have continued to be sold around the world. Throughout the 1970s, 1980s, 1990s, 2000s, 2010s, and into the present decade, new compilation albums and occasional new material have continued to be released, marketed, and distributed in connection with the APPLE word mark. For example, in 1993, CD versions of *The Beatles 1962-1966* and *The Beatles 1967-1970,* known as the "Red" and "Blue" albums respectively, were released for the first time in the United States. As depicted below, both releases featured the APPLE word mark:

13



14



In 1994, a new album, *The Beatles: Live at the BBC,* was released in the United States using archive material. This release featured the APPLE word mark, as depicted below:

15



Also in 1994, the three then-surviving members of The Beatles recorded their singing and instrumentals over a demonstration tape of John Lennon, leading to the creation and release of two entirely new Beatles recordings, *Free as a Bird* and *Real Love.* Both releases in the United States featured the APPLE word mark, as depicted below:

16



**Appx02736**



Attached hereto as **Exhibit 4** are true and correct depictions of the CD cases for *The Beatles 1962-1966,* known as the "Red" album, and *The Beatles 1967-1970,* known as the "Blue" album, each released on CD in 1993 in the United States.

26.    There were no *initial* releases of The Beatles records in the United States featuring the APPLE word mark during the early 1980s. Further, it is extraordinarily difficult to document the labeling that accompanied Beatles sound recordings distributed in the United

18

States nearly forty years ago. Finally, Capitol's distribution of sound recordings bearing the APPLE word mark and associated Apple Corps logo diminished in the 1980s as Capitol was at that time enmeshed in litigation with Apple Records regarding allegations that Capitol failed to make certain payments to Apple Corps for albums sold in the United States. Attached as **Exhibit 5** is a true and correct copy of the court's decision in *Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D. 2d 50 (1st Dep't 1988), providing relevant background on the dispute. Based on Apple Corps' records, a global settlement of this dispute was reached in or about November 1989.

27.    Notwithstanding the above, it is clear that Apple Corps and/or Capitol almost certainly continued to distribute in the United States a number of Beatles sound recordings bearing the APPLE word mark during the time period January 1, 1983 through December 31, 1985. By way of example, these include, but are not limited to, the following:

- *Let It Be*
- *1962-1966*
- *1967-1970*
- *Hey Jude*
- *The Beatles Collection*
- *Yellow Submarine*

28.    In the mid-1990s, the then-three surviving members of The Beatles, together with Yoko Ono Lennon, worked together with Apple Corps to produce a documentary record of The Beatles. Released under the Apple Corps label as three new compilation albums in 1995 and 1996, the project was called *The Beatles Anthology Parts I, II,* and *III,* and Apple Corps distributed the albums under the APPLE word mark in large quantities in the United States and worldwide. Attached hereto as **Exhibit 6** are true and correct depictions of *The Beatles Anthology Part I,* as released on CD as a double disc in 1995, along with its packaging; the packaging for the double cassette of *The Beatles Anthology Part III,* released in 1996; and *The*

19

*Beatles Anthology Part III,* as released on CD as part of a double disc in 1996, along with its packaging, with annotations pointing to the use of the APPLE word mark. The goods and their packaging depicted in **Exhibit 6** feature the APPLE word mark on the back and side of each good's packaging.

29.     In November 2000, the Apple Corps label released in the United States another new Beatles compilation album under the APPLE word mark. The album, titled *1,* featured Beatles songs that had reached number 1 on the U.K. or U.S. music charts upon their initial releases between 1963 and 1970. Attached hereto as **Exhibit 7** are true and correct depictions of The Beatles' *1* as released on CD in 2000, along with its packaging, featuring the APPLE word mark.

30.     In September 2009, Apple Corps reissued the original Beatles catalogue, featuring the APPLE word mark, in a digitally remastered form on CD in the United States. The remastered catalog provoked considerable interest and made substantial sales. In the U.S., according to a press reports, more than one million copies of remastered Beatles titles sold during the *first five days of release*.

31.     In September 2009, Apple Corps released in the United States the video game *The Beatles: Rock Band,* which features 45 Beatles songs to which players can sing and play along. Attached hereto as **Exhibit 8** is a true and correct depiction of the packaging for *The Beatles: Rock Band* as released as an X-BOX 360 video game in 2009, with annotations pointing to the use of the APPLE word mark. The front cover of the game case features the APPLE word mark.

32.     Apple Corps, acting through licensees, also operates the Official Beatles Store ecommerce websites directed at users in North America, Europe, Japan, and Brazil. The Beatles Store U.S. ecommerce website, which was launched on in or about 2006 and was continuously

available thereafter, is linked to www.applerecords.com and is available directly at usastore.thebeatles.com/store/, and can be accessed through the "Store" link on Apple Corps' main website at www.thebeatles.com. The Beatles Store U.S. ecommerce website offers for sale various goods bearing the APPLE word mark, including CDs containing sound recordings. Many of these goods bear the APPLE word mark. Attached hereto as **Exhibit 9** are true and correct screenshots of Apple Corps' The Beatles Store U.S. ecommerce website as they appeared at the web address and on the date displayed in the header of each page. Also included as part of **Exhibit 9** is a screenshot of the "Media" section of the The Beatles Store U.S. online store, showing goods related to sound recordings bearing the APPLE word mark.

### B.    U.S. Production and Distribution of Other Sound Recordings

33.    As discussed above, numerous other well-known musicians had their sound recordings released under the Apple Corps record label, including, but not limited to, James Taylor, Mary Hopkin, Badfinger/The Iveys, Billy Preston, and Doris Troy.

34.    Additionally, members of The Beatles have released solo recordings and collaborations under the Apple Corps record label. Attached hereto as **Exhibit 10** are true and correct depictions of the packaging and/or media for various non-Beatles singles and albums, including solo projects by Beatles members, released in the United States between 1969 and 1975 under the APPLE word mark, with annotations pointing to the use of the mark. These include the following:

- *Turn, Turn, Turn,* Mary Hopkin (released in or about 1968)
- *Thingumybob*, Black Dyke Mills Band (released in or about 1968)
- *Yellow Submarine*, Black Dyke Mills Band (released in or about 1968)
- *Goodbye*, Mary Hopkin (released in or about 1969)
- *Maybe Tomorrow*, The Iveys (released in or about 1969)
- *Daddy's a Millionaire*, The Iveys (released in or about 1969)
- *Carolina in My Mind*, James Taylor (released in or about 1969)
- *Taking It In*, James Taylor (released in or about 1969)

21

- *Sparrow*, Mary Hopkin (released in or about 1969)
- *That's the Way God Planned It*, Billy Preston (released in or about 1969)
- *What About You?*, Billy Preston (released in or about 1969)
- *Hare Krishna Mantra*, Radha Krishna Temple (London) (released in or about 1969)
- *Prayer to the Spiritual Masters*, Radha Krishna Temple (London) (released in or about 1969)
- *Live Peace in Toronto 1969*, The Plastic Ono Band (released in or about 1969)
- *Beaucoups of Blues*, Ringo Starr (released in or about 1970)
- *All Things Must Pass*, George Harrison (8-track cartridge) (released in or about 1970)
- *Doris Troy*, Doris Troy (released in or about 1970)
- *McCartney*, Paul McCartney (released in or about 1970)
- *John Lennon & Plastic Ono Band*, John Lennon/Plastic Ono Band (8-track cartridge) (released in or about 1970)
- *Cometogether*, Stelvio Cipriani (released in or about 1971)
- *The Radha Krsna Temple*, The Radha Krsna Temple (released in or about 1971)
- *It's So Hard*, John Lennon/Plastic Ono Band (released in or about 1971)
- *Earth Song/Ocean Song*, Mary Hopkin (released in or about 1971)
- *Ram*, Paul & Linda McCartney (vinyl) (released in or about 1971)
- *Wild Life*, Wings (vinyl and 8-track cartridge) (released in or about 1971)
- *Imagine*, John Lennon/Plastic Ono Band (vinyl) (released in or about 1971)
- *Imagine*, John Lennon (eight-track cartridge) (released in or about 1972)
- *Brother*, Lon & Derrek Van Eaton (released in or about 1972)
- *The Concert for Bangladesh*, George Harrison with Billy Preston (released in or about 1972)
- *Elephant's Memory* (released in or about 1972)
- *Ass*, Badfinger (released in or about 1973)
- *Mind Games*, John Lennon (released in or about 1973)
- *Ringo*, Ringo Starr (vinyl and cassette) (released in or about 1973)
- *Living in the Material World*, George Harrison (released in or about 1973)
- *Band on the Run*, Paul McCartney & Wings (8-track cartridge and vinyl) (released in or about 1973)
- *Red Rose Speedway*, Paul McCartney & Wings (released in or about 1973)
- *Feeling the Space*, Yoko Ono/Plastic Ono Band (released in or about 1973)
- *Down and Out*, Ringo Starr (released in or about 1973)
- *Photograph*, Ringo Starr (released in or about 1973)
- *No No Song*, Ringo Starr (released in or about 1974)
- *Snookeroo*, Ringo Starr (released in or about 1974)
- *Goodnight Vienna*, Ringo Starr (released in or about 1974)
- *Call Me*, Ringo Starr (released in or about 1974)
- *Dark Horse*, George Harrison (cassette) (released in or about 1974)
- *Walls and Bridges*, John Lennon (released in or about 1974)
- *Rock 'N' Roll*, John Lennon (cassette) (released in or about 1975)

22

- *Extra Texture (Read All About It)*, George Harrison (cassette and vinyl) (released in or about 1975)
- *Shaved Fish*, John Lennon with the Plastic Ono Band (cassette) (released in or about 1975)
- *Shaved Fish*, John Lennon (vinyl) (released in or about 1975)
- *Blast from Your Past*, Ringo Starr (vinyl and cassette) (released in or about 1975)

Representative examples of the packaging and/or media for these releases are depicted below:



23





24

35.    Although the last initial release listed in paragraph 34 above occurred in 1975, substantial quantities of those sound recordings issued under the Apple Corps label and bearing the APPLE word mark continued to be sold around the world (including the United States) throughout the 1970s and 1980s.

36.    There were no *initial* releases of other non-Beatles records in the United States featuring the APPLE word mark during the period January 1, 1983 to December 31, 1985. In fact, identifying evidence of distribution almost forty years after the fact presents even greater difficulty for non-Beatles recordings than it does for recordings by The Beatles (see paragraph 26 above summarizing those difficulties which apply with equal force in this context).

37.    However, previously released non-Beatles recordings featuring the APPLE word mark, which were produced and distributed by Apple Corps Limited and/or its affiliate(s), were in fact unquestionably distributed by Apple Corps and/or Capitol in the United States throughout the 1980s including during the period January 1, 1983 through December 31, 1985. By way of example, these include, but are not limited to, the following:

- George Harrison, *All Things Must Pass* (2-cassette set)
- John Lennon/Plastic Ono Band, *Shaved Fish*

One of the covers for the 2-cassette set of George Harrison's *All Things Must Pass* (which includes *My Sweet Lord* among other phenomenally successful sound recordings) is depicted below:

25



As shown above, the APPLE word mark appears under the orange apple design on the front of the cover. This was the only release on cassette with respect to George Harrison's iconic *All Things Must Pass* album and it would have been manufactured and distributed in the United States during the era that cassette tapes were popular in the United States, which includes the January 1, 1983 through December 31, 1985 time period.

38.    Further, John Lennon and The Plastic Ono Band's seminal album *Shaved Fish* was re-released by Capitol in the United States in **1983**, and it bore the APPLE word mark, as reflected below.



39.     Given the 1983 United States re-release of *Shaved Fish*, which includes such timeless and influential songs as *Give Peace a Chance, Cold Turkey, Instant Karma!* and *Mind Games,* among other classic songs, that version of the album with the APPLE word mark unquestionably would have been continuously manufactured and distributed in the United States by Apple Corps and/or Capitol during the time period 1983 throughout 1985.

40.     Additionally, based on information and belief, other previously released non-Beatles recordings featuring the APPLE word mark, which Apple Corps Limited and/or Capitol distributed, almost certainly were available for sale and sold in the United States throughout the 1980s. By way of example, these include, but are not limited to, the following:

27

- John Lennon, *Plastic Ono Band*
- John Lennon, *Walls and Bridges*
- Ringo Starr, *Ringo*
- John Lennon, *Imagine*
- Plastic Ono Band, *Live Peace in Toronto 1969*
- George Harrison, *Radha Krsna Temple*
- James Taylor, *James Taylor*
- Lon & Derrek Van Eaton, *Brother*

## V.  DISTRIBUTION OF FILMS IN THE UNITED STATES UNDER THE APPLE WORD MARK SINCE 1968

41.    As noted above, during the 1960s and into the 1970s, Apple Corps and/or its affiliate(s) and The Beatles were involved in the production and distribution of several films featuring music by The Beatles, including (a) three "action films," *A Hard Day's Night, Help!,* and *Magical Mystery Tour*; (b) *Let It Be,* a documentary film about The Beatles; and (c) the animated film *Yellow Submarine.* The films have been shown in theaters and on television in the United States since the 1960s. Additionally, several of them were released on VHS when the format became available, and all or most of them are now sold on DVD in the United States under the APPLE word mark. Attached hereto as **Exhibit 11** are (a) true and correct depictions of the packaging for *Magical Mystery Tour,* as released in VHS format in the United States in or around 1988, with annotations pointing to the use of the APPLE word mark (b) true and correct depictions of the packaging for *Yellow Submarine,* as released in VHS format in the United States in or around 1999 and continuously available thereafter, with annotations pointing to the use of the APPLE word mark, and (c) true and correct depictions of the packaging for *Help!,* as released in DVD format as a double disc in the United States in or around 2007 and continuously available thereafter, with annotations pointing to the use of the mark. All of the packaging shown in this exhibit features the APPLE word mark, as shown in the following representative examples:

28



AWAY IN THE SKY, beyond the clouds, live 4 or 5 Magicians. By casting
WONDERFUL SPELLS they turn the Most Ordinary Coach Trip into a MAGICAL
MYSTERY TOUR.
If you let yourself go, the Magicians will take you away to marvellous places.
Maybe YOU'VE been on a MAGICAL MYSTERY TOUR without even realising it.
Are you ready to go?
SPLENDID?

DIGITAL STEREO
Produced and Directed by The Beatles

MP 1538    APPROX. 50 MINUTES    COLOR    NOT RATED

©1967 Apple Films Ltd. All Rights Reserved. This motion picture is protected by the United States
copyright laws. Packaging and design ©1988 MPI Home Video

An MPI Home Video Release • Los Angeles, CA 90069

ISBN #1-55607-102-7
Printed in the U.S.A.                    Apple                    0  30306 01463  0



42.    In 1970, Apple Corps released a documentary film titled *Let It Be* in the United
States. The film documented The Beatles rehearsing and recording songs for their album *Let It
Be.* It won an Academy Award in the *Original Song Score* division and a Grammy Award for the
*Best Original Score Written for a Motion Picture or a Television Special*. In 1981, the film was

29

released in the United States on VHS, Betamax, and VideoDisc. Attached hereto as **Exhibit 12** is a true and correct copy of the packaging for the VHS and VideoDisc as released in the United States in 1981. The APPLE word mark appears on the covers of both media, as shown in the below representative examples.



Copies of the *Let It Be* film featuring the APPLE word mark on the cover continued to be sold in the United States throughout the 1980s, as demonstrated by the confidential royalty reports for the periods ending June 30, 1984 and September 30, 1984, which are being filed under seal and have been marked **Exhibit 13**.

43.    Given the enormous popularity of the films identified in paragraphs 41 and 42 above, it is likely that they were shown on U.S. television throughout at least the 1970s and 1980s.

44.    In the mid-1990s, Apple Corps released *The Beatles Anthology* as an eight-part VHS video cassette box set, and in April 2003, Apple Corps released it as a five-disc DVD set. Attached hereto as **Exhibit 14** are true and correct depictions of *The Beatles Anthology* video recordings in both VHS and DVD format, along with the packaging for each format and annotations pointing to the use of the APPLE word mark. Both formats of *The Beatles Anthology* video recordings were distributed in huge quantities worldwide, and the packaging for each bears the APPLE word mark.

30

45.    In February 2004, Apple Corps released a DVD titled *The First U.S. Visit* in connection with The Beatles' first American tour. Attached hereto as **Exhibit 15** is a true and correct copy of the packaging for this DVD as released in 2004, with annotations pointing to the use of the mark. The APPLE word mark appears on both the back cover and side of the DVD case.

46.    As noted above, most recently, Apple Corps announced a collaboration with Academy Award winning director, Sir Peter Robert Jackson, to make a new documentary film about the making of The Beatles' final album, *Let It Be.*

## VI.    CONCLUSION

47.    As the foregoing abundantly demonstrates, Apple Corps has continuously used its globally recognized brand and well-known APPLE word mark in the United States in connection with the production and distribution of sound recordings and film continuously since the late 1960s.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This day, February 20, 2020.

Jeffrey Vaughan Jones
Chief Executive Officer
Apple Corps Limited

31

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In re Serial No. 86/659,444
Mark: APPLE MUSIC
Filed: June 11, 2015
Published in the *Official Gazette* on May 10, 2016

|  |  |
|---|---|
| CHARLES BERTINI,<br><br>            Opposer,<br><br>   v.<br><br>APPLE INC.,<br><br>            Applicant. | Opposition No. 91229891 |

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing DECLARATION OF

JEFFREY VAUGHAN JONES ON BEHALF OF APPLICANT APPLE INC., is being served

on Opposer's Attorney of Record by electronic mail as follows:

JAMES BERTINI
423 KALAMATH STREET
DENVER, CO 80204
UNITED STATES
jamesbertini@yahoo.com
iklych@yahoo.com

Date: February 20, 2020

*/Kris Teilhaber/*
Kris Teilhaber

EXHIBIT 1



| | ARTIST | CERTIFIED UNITS ▾ (In Millions) |
|---|---|---|
| SHARE | THE BEATLES | 183 |
| SHARE | GARTH BROOKS | 148 |
| SHARE | ELVIS PRESLEY | 146.5 |
| SHARE | EAGLES | 120 |
| SHARE | LED ZEPPELIN | 111.5 |
| SHARE | BILLY JOEL | 84.5 |
| SHARE | MICHAEL JACKSON | 84 |
| SHARE | ELTON JOHN | 78.5 |
| SHARE | AC/DC | 75 |
| SHARE | PINK FLOYD | 75 |
| SHARE | GEORGE STRAIT | 69 |
| SHARE | BARBRA STREISAND | 68.5 |
| SHARE | AEROSMITH | 66.5 |
| SHARE | MARIAH CAREY | 66.5 |
| SHARE | THE ROLLING STONES | 66.5 |
| SHARE | BRUCE SPRINGSTEEN | 65.5 |
| SHARE | MADONNA | 64.5 |
| SHARE | METALLICA | 63 |
| SHARE | WHITNEY HOUSTON | 58.5 |
| SHARE | VAN HALEN | 56.5 |
| SHARE | FLEETWOOD MAC | 54.5 |
| SHARE | U2 | 52 |
| SHARE | CELINE DION | 50 |

| | | |
|---|---|---|
| SHARE | U2 | 52 |
| SHARE | CELINE DION | 50 |
| SHARE | NEIL DIAMOND | 49.5 |
| SHARE | SHANIA TWAIN | 48 |
| SHARE | JOURNEY | 48 |
| SHARE | KENNY G | 48 |
| SHARE | KENNY ROGERS | 47.5 |
| SHARE | ALABAMA | 46.5 |
| SHARE | EMINEM | 46 |
| SHARE | BOB SEGER & THE SILVER BULLET BAND | 44.5 |
| SHARE | GUNS N' ROSES | 44.5 |
| SHARE | TAYLOR SWIFT | 44 |
| SHARE | SANTANA | 43.5 |
| SHARE | ALAN JACKSON | 43.5 |
| SHARE | REBA MC ENTIRE | 41 |
| SHARE | ERIC CLAPTON | 40 |
| SHARE | CHICAGO | 38.5 |
| SHARE | SIMON & GARFUNKEL | 38.5 |
| SHARE | FOREIGNER | 38 |
| SHARE | ROD STEWART | 38 |
| SHARE | TIM MCGRAW | 37.5 |
| SHARE | BACKSTREET BOYS | 37 |
| SHARE | 2 PAC | 36.5 |
| SHARE | BOB DYLAN | 36 |
| SHARE | DEF LEPPARD | 35.5 |
| SHARE | QUEEN | 35 |
| SHARE | SELENA | 35 |
| SHARE | BON JOVI | 34.5 |
| SHARE | BRITNEY SPEARS | 34.5 |
| SHARE | DAVE MATTHEWS BAND | 34.5 |
| SHARE | MANA | 34 |
| SHARE | JOHN DENVER | 33.5 |
| SHARE | PHIL COLLINS | 33.5 |
| SHARE | JAMES TAYLOR | 33 |
| SHARE | THE DOORS | 33 |
| SHARE | R. KELLY | 32 |
| SHARE | WILLIE NELSON | 31.5 |
| SHARE | TOM PETTY & THE HEARTBREAKERS | 31.5 |
| SHARE | PEARL JAM | 31.5 |

| | | |
|---|---|---|
| SHARE | TOM PETTY & THE HEARTBREAKERS | 31.5 |
| SHARE | PEARL JAM | 31.5 |
| SHARE | BOSTON | 31 |
| SHARE | DIXIE CHICKS | 30.5 |
| SHARE | KENNY CHESNEY | 30.5 |
| SHARE | LINDA RONSTADT | 30 |
| SHARE | OZZY OSBOURNE | 29.25 |
| SHARE | OTTMAR LIEBERT | 28.5 |
| SHARE | LYNYRD SKYNYRD | 28.5 |
| SHARE | BEE GEES | 28 |
| SHARE | CREEDENCE CLEARWATER REVIVAL | 28 |
| SHARE | MICHAEL BOLTON | 28 |
| SHARE | MANNHEIM STEAMROLLER | 28 |
| SHARE | ADELE | 28 |
| SHARE | 'N SYNC | 28 |
| SHARE | JOHN MELLENCAMP | 27.5 |
| SHARE | BROOKS & DUNN | 27.5 |
| SHARE | BARRY MANILOW | 27.5 |
| SHARE | JAY-Z | 27.5 |
| SHARE | LINKIN PARK | 27.5 |
| SHARE | BOYZ II MEN | 27 |
| SHARE | FRANK SINATRA | 27 |
| SHARE | ENYA | 26.5 |
| SHARE | JANET JACKSON | 26 |
| SHARE | STEVE MILLER BAND | 25.5 |
| SHARE | DRAKE | 25.5 |
| SHARE | LUTHER VANDROSS | 25.5 |
| SHARE | FAITH HILL | 25.5 |
| SHARE | TOBY KEITH | 25 |
| SHARE | RED HOT CHILI PEPPERS | 25 |
| SHARE | MOTLEY CRUE | 25 |
| SHARE | NIRVANA | 25 |
| SHARE | ZZ TOP | 25 |
| SHARE | HOOTIE & THE BLOWFISH | 25 |
| SHARE | JULIO IGLESIAS | 25 |
| SHARE | CREED | 25 |
| SHARE | RUSH | 25 |
| SHARE | R.E.O. SPEEDWAGON | 24.5 |

Document title: Gold &amp; Platinum - RIAA
Capture URL: https://www.riaa.com/gold-platinum/?tab_active=top_tallies&amp;ttt=TAA#search_section
Capture timestamp (UTC): Wed, 12 Feb 2020 02:45:38 GMT                                    Page 3 of 9

| | | |
|---|---|---|
| SHARE | RUSH | 25 |
| SHARE | R.E.O. SPEEDWAGON | 24.5 |
| SHARE | THE CARPENTERS | 24.5 |
| SHARE | GREEN DAY | 24 |
| SHARE | VINCE GILL | 24 |
| SHARE | NICKELBACK | 24 |
| SHARE | THE CARS | 23.5 |
| SHARE | SADE | 23.5 |
| SHARE | KID ROCK | 23.5 |
| SHARE | EARTH, WIND & FIRE | 23.5 |
| SHARE | JOHNNY CASH | 23.5 |
| SHARE | BEASTIE BOYS | 23 |
| SHARE | JIMI HENDRIX | 23 |
| SHARE | JIMMY BUFFETT | 23 |
| SHARE | TLC | 23 |
| SHARE | RIHANNA | 22.5 |
| SHARE | LIONEL RICHIE | 22.5 |
| SHARE | HEART | 22.5 |
| SHARE | USHER | 22.5 |
| SHARE | THE BEACH BOYS | 22.5 |
| SHARE | THE POLICE | 22 |
| SHARE | OUTKAST | 22 |
| SHARE | DOOBIE BROTHERS | 22 |
| SHARE | NELLY | 22 |
| SHARE | BOB MARLEY & THE WAILERS | 21.5 |
| SHARE | CHRISTINA AGUILERA | 21.5 |
| SHARE | GENESIS | 21.5 |
| SHARE | MEAT LOAF | 21 |
| SHARE | THE WHO | 21 |
| SHARE | KISS | 21 |
| SHARE | NOTORIOUS B.I.G. | 21 |
| SHARE | ALANIS MORISSETTE | 20.5 |
| SHARE | CARRIE UNDERWOOD | 20.5 |
| SHARE | MARY J. BLIGE | 20.5 |
| SHARE | PRINCE | 20.5 |
| SHARE | JOSH GROBAN | 20.5 |
| SHARE | R.E.M. | 20 |
| SHARE | SMASHING PUMPKINS | 19.75 |
| SHARE | TONI BRAXTON | 19.5 |

| | | |
|---|---|---|
| SHARE ⬚ | SMASHING PUMPKINS | 19.75 |
| SHARE ⬚ | TONI BRAXTON | 19.5 |
| SHARE ⬚ | GRATEFUL DEAD | 19.5 |
| SHARE ⬚ | STEVIE WONDER | 19.5 |
| SHARE ⬚ | HANK WILLIAMS, JR. | 19.5 |
| SHARE ⬚ | MATCHBOX TWENTY | 19 |
| SHARE ⬚ | SARAH MC LACHLAN | 18.5 |
| SHARE ⬚ | JANIS JOPLIN | 18.5 |
| SHARE ⬚ | RASCAL FLATTS | 18.5 |
| SHARE ⬚ | JEWEL | 18.5 |
| SHARE ⬚ | JACKSON BROWNE | 18.5 |
| SHARE ⬚ | P!NK | 18 |
| SHARE ⬚ | STING | 18 |
| SHARE ⬚ | THE MONKEES | 18 |
| SHARE ⬚ | RANDY TRAVIS | 18 |
| SHARE ⬚ | CROSBY, STILLS, NASH & YOUNG | 18 |
| SHARE ⬚ | STONE TEMPLE PILOTS | 17.5 |
| SHARE ⬚ | DESTINY'S CHILD | 17.5 |
| SHARE ⬚ | NEIL YOUNG | 17.5 |
| SHARE ⬚ | STYX | 17.5 |
| SHARE ⬚ | NORAH JONES | 17 |
| SHARE ⬚ | SHAKIRA | 17 |
| SHARE ⬚ | BRYAN ADAMS | 17 |
| SHARE ⬚ | BONNIE RAITT | 17 |
| SHARE ⬚ | AMY GRANT | 17 |
| SHARE ⬚ | JOHNNY MATHIS | 16.5 |
| SHARE ⬚ | NEW KIDS ON THE BLOCK | 16.5 |
| SHARE ⬚ | LEANN RIMES | 16.5 |
| SHARE ⬚ | KORN | 16.5 |
| SHARE ⬚ | LIMP BIZKIT | 16.5 |
| SHARE ⬚ | HARRY CONNICK, JR. | 16 |
| SHARE ⬚ | MARTINA MCBRIDE | 16 |
| SHARE ⬚ | ANDREA BOCELLI | 16 |
| SHARE ⬚ | PRINCE & THE REVOLUTION | 16 |
| SHARE ⬚ | HAMMER | 16 |
| SHARE ⬚ | SHERYL CROW | 16 |
| SHARE ⬚ | DIRE STRAITS | 15.5 |
| SHARE ⬚ | PAUL MC CARTNEY | 15.5 |

| | | |
|---|---|---|
| SHARE | DIRE STRAITS | 15.5 |
| SHARE | PAUL MC CARTNEY | 15.5 |
| SHARE | JOHN MAYER | 15.5 |
| SHARE | ALICIA KEYS | 15.5 |
| SHARE | KANSAS | 15.5 |
| SHARE | CAT STEVENS | 15.5 |
| SHARE | GLORIA ESTEFAN | 15.5 |
| SHARE | ISLEY BROTHERS | 15.5 |
| SHARE | BAD COMPANY | 15.5 |
| SHARE | INXS | 15 |
| SHARE | BEYONCE | 15 |
| SHARE | BLACK SABBATH | 15 |
| SHARE | NO DOUBT | 15 |
| SHARE | GEORGE MICHAEL | 15 |
| SHARE | THE CRANBERRIES | 14.5 |
| SHARE | OFFSPRING | 14.5 |
| SHARE | PATSY CLINE | 14.5 |
| SHARE | ANNE MURRAY | 14.5 |
| SHARE | COLDPLAY | 14.5 |
| SHARE | KEITH URBAN | 14.5 |
| SHARE | POISON | 14.5 |
| SHARE | CAROLE KING | 14.5 |
| SHARE | CHRIS BROWN | 14.5 |
| SHARE | VICENTE FERNANDEZ | 14 |
| SHARE | HALL & OATES | 14 |
| SHARE | DMX | 14 |
| SHARE | TED NUGENT | 14 |
| SHARE | JOHN MICHAEL MONTGOMERY | 14 |
| SHARE | DAN FOGELBERG | 14 |
| SHARE | CHARLIE DANIELS BAND | 13.5 |
| SHARE | YES | 13.5 |
| SHARE | AVRIL LAVIGNE | 13.5 |
| SHARE | PAUL SIMON | 13.5 |
| SHARE | BONE THUGS 'N HARMONY | 13.5 |
| SHARE | KANYE WEST | 13.5 |
| SHARE | JUSTIN BIEBER | 13.5 |
| SHARE | NATALIE COLE | 13.5 |
| SHARE | HUEY LEWIS & THE NEWS | 13 |
| SHARE | TRACY CHAPMAN | 13 |

| | | |
|---|---|---|
| SHARE | HUEY LEWIS & THE NEWS | 13 |
| SHARE | TRACY CHAPMAN | 13 |
| SHARE | MELISSA ETHERIDGE | 13 |
| SHARE | KEITH SWEAT | 13 |
| SHARE | CLINT BLACK | 12.5 |
| SHARE | SNOOP DOGG | 12.5 |
| SHARE | PAT BENATAR | 12.5 |
| SHARE | L.L. COOL J | 12.5 |
| SHARE | LUKE BRYAN | 12.5 |
| SHARE | TRISHA YEARWOOD | 12.5 |
| SHARE | MAROON 5 | 12.5 |
| SHARE | ALICE IN CHAINS | 12.5 |
| SHARE | WHITESNAKE | 12.5 |
| SHARE | THE TEMPTATIONS | 12.5 |
| SHARE | ANITA BAKER | 12.5 |
| SHARE | CHER | 12.5 |
| SHARE | WILL SMITH | 12 |
| SHARE | ANDREW LLOYD WEBBER | 12 |
| SHARE | ENRIQUE IGLESIAS | 12 |
| SHARE | KELLY CLARKSON | 12 |
| SHARE | 3 DOORS DOWN | 12 |
| SHARE | DURAN DURAN | 12 |
| SHARE | COUNTING CROWS | 12 |
| SHARE | NAT KING COLE | 12 |
| SHARE | BRUNO MARS | 12 |
| SHARE | TRAVIS TRITT | 12 |
| SHARE | JASON ALDEAN | 12 |
| SHARE | LUDACRIS | 12 |
| SHARE | LIVE | 12 |
| SHARE | BETTE MIDLER | 12 |
| SHARE | PAULA ABDUL | 11.5 |
| SHARE | S.R. VAUGHAN & DOUBLE TROUBLE | 11.5 |
| SHARE | DWIGHT YOAKAM | 11.5 |
| SHARE | DON HENLEY | 11.5 |
| SHARE | 50 CENT | 11.5 |
| SHARE | DISTURBED | 11.5 |
| SHARE | LOVERBOY | 11 |
| SHARE | NAS | 11 |

Document title: Gold &amp; Platinum - RIAA
Capture URL: https://www.riaa.com/gold-platinum/?tab_active=top_tallies&amp;ttt=TAA#search_section
Capture timestamp (UTC): Wed, 12 Feb 2020 02:45:38 GMT

Appx02759

| SHARE ⮺ | LOVERBOY | 11 |
| SHARE ⮺ | NAS | 11 |
| SHARE ⮺ | GRAND FUNK RAILROAD | 11 |
| SHARE ⮺ | YANNI | 11 |
| SHARE ⮺ | ED SHEERAN | 11 |
| SHARE ⮺ | STEELY DAN | 11 |
| SHARE ⮺ | JETHRO TULL | 11 |
| SHARE ⮺ | BARRY WHITE | 11 |
| SHARE ⮺ | JENNIFER LOPEZ | 11 |
| SHARE ⮺ | LIL WAYNE | 11 |
| SHARE ⮺ | OLIVIA NEWTON-JOHN | 11 |
| SHARE ⮺ | SPICE GIRLS | 11 |
| SHARE ⮺ | BUSH | 10.5 |
| SHARE ⮺ | JOHN LENNON | 10.5 |
| SHARE ⮺ | LENNY KRAVITZ | 10.5 |
| SHARE ⮺ | JUSTIN TIMBERLAKE | 10.5 |
| SHARE ⮺ | GEORGE HARRISON | 10.5 |
| SHARE ⮺ | ANDY WILLIAMS | 10.5 |
| SHARE ⮺ | STEVIE NICKS | 10.5 |
| SHARE ⮺ | ZAC BROWN BAND | 10.5 |
| SHARE ⮺ | MICHAEL W. SMITH | 10.5 |
| SHARE ⮺ | NINE INCH NAILS | 10.5 |
| SHARE ⮺ | THE JUDDS | 10.5 |
| SHARE ⮺ | ABBA | 10.5 |
| SHARE ⮺ | BILLY RAY CYRUS | 10.5 |
| SHARE ⮺ | DEPECHE MODE | 10.5 |
| SHARE ⮺ | BRANDY | 10.5 |
| SHARE ⮺ | RICKY MARTIN | 10.5 |
| SHARE ⮺ | SCORPIONS | 10.5 |
| SHARE ⮺ | PETER FRAMPTON | 10 |
| SHARE ⮺ | BLINK-182 | 10 |
| SHARE ⮺ | ACE OF BASE | 10 |
| SHARE ⮺ | ARETHA FRANKLIN | 10 |
| SHARE ⮺ | BOBBY BROWN | 10 |
| SHARE ⮺ | PETER GABRIEL | 10 |
| SHARE ⮺ | CROSBY, STILLS & NASH | 10 |
| SHARE ⮺ | TINA TURNER | 10 |
| SHARE ⮺ | MASTER P | 10 |
| SHARE ⮺ | KIRK FRANKLIN | 10 |

Document title: Gold &amp; Platinum - RIAA
Capture URL: https://www.riaa.com/gold-platinum/?tab_active=top_tallies&amp;ttt=TAA#search_section
Capture timestamp (UTC): Wed, 12 Feb 2020 02:45:38 GMT
Page 8 of 9

| | | |
|---|---|---|
| SHARE | BUSH | 10.5 |
| SHARE | JOHN LENNON | 10.5 |
| SHARE | LENNY KRAVITZ | 10.5 |
| SHARE | JUSTIN TIMBERLAKE | 10.5 |
| SHARE | GEORGE HARRISON | 10.5 |
| SHARE | ANDY WILLIAMS | 10.5 |
| SHARE | STEVIE NICKS | 10.5 |
| SHARE | ZAC BROWN BAND | 10.5 |
| SHARE | MICHAEL W. SMITH | 10.5 |
| SHARE | NINE INCH NAILS | 10.5 |
| SHARE | THE JUDDS | 10.5 |
| SHARE | ABBA | 10.5 |
| SHARE | BILLY RAY CYRUS | 10.5 |
| SHARE | DEPECHE MODE | 10.5 |
| SHARE | BRANDY | 10.5 |
| SHARE | RICKY MARTIN | 10.5 |
| SHARE | SCORPIONS | 10.5 |
| SHARE | PETER FRAMPTON | 10 |
| SHARE | BLINK-182 | 10 |
| SHARE | ACE OF BASE | 10 |
| SHARE | ARETHA FRANKLIN | 10 |
| SHARE | BOBBY BROWN | 10 |
| SHARE | PETER GABRIEL | 10 |
| SHARE | CROSBY, STILLS & NASH | 10 |
| SHARE | TINA TURNER | 10 |
| SHARE | MASTER P | 10 |
| SHARE | KIRK FRANKLIN | 10 |
| SHARE | SAVAGE GARDEN | 10 |
| SHARE | BLAKE SHELTON | 10 |
| SHARE | THE MOODY BLUES | 10 |
| SHARE | VAN MORRISON | 10 |
| SHARE | ELECTRIC LIGHT ORCHESTRA | 10 |
| SHARE | PAUL MC CARTNEY & WINGS | 10 |



The Recording Industry Association of America® (RIAA) is the trade organization that supports and promotes the creative and financial vitality of the major music companies. Its members comprise the most vibrant record industry in the world, investing in great artists to help them reach their potential and connect to their fans. Nearly 85% of all legitimate recorded music produced and sold in the United States is created, manufactured or distributed by RIAA members.

What We Do
Facts & Research
Gold & Platinum
News

About RIAA
Resources & Learning
Report Piracy

Copyright © 2020 RIAA All Rights Reserved  Terms of Use/Privacy Policy

Document title: Gold &amp; Platinum - RIAA
Capture URL: https://www.riaa.com/gold-platinum/?tab_active=top_tallies&amp;ttt=TAA#search_section
Capture timestamp (UTC): Wed, 12 Feb 2020 02:45:38 GMT

Appx02761

# EXHIBIT 2

# The BEATLES

EXPLORE    ALBUMS    NEWS    STORE    THE BEATLES LOVE    MY ACCOUNT

# Hey Jude

Like 30

SONG

Hey Jude, don't make it bad,
Take a sad song and make it better.
Remember to let her into your heart,
Then you can start to make it better.

Jude, don't be afraid,
You were made to go out and get her.
The minute you let her under your skin,
Then you begin to make it better.

And anytime you feel the pain,
Hey Jude, refrain,
Don't carry the world upon your shoulder.

For well, you know that it's a fool
Who plays it cool
By making his world a little colder.

Na, na, na, na, na na na, na, na. na.

Hey Jude, don't let me down.
You have found her, now go and get her.
Remember to let her into your heart,
Then you can start to make it better.

So let it out and let it in
Hey Jude, begin, you're waiting for
someone to perform with.
And don't you know that it's just you?
Hey Jude, you'll do, the movement you
need is on your shoulder.

Na, na, na, na, na na, na, na. na.

Hey Jude, don't make it bad,
Take a sad song and make it better.
Remember to let her under your skin,
Then you begin to make it better, better,
better, better, better, better, oh!

Na, na, na, na, na, na, na, na, na, na,
na, hey, Jude.



**WIKIPEDIA**
The Free Encyclopedia
**"Hey Jude"**

"Hey Jude" 45
Single by The Beatles

| | |
|---|---|
| B-side | "Revolution" |
| Released | 26 August 1968 |
| Format | 7" |
| Recorded | 31 July-2 August 1968, Trident Studios, London |
| Genre | Rock, pop |
| Length | 7:11 |
| Label | Apple |
| Writer(s) | Lennon–McCartney |
| Producer | George Martin |
| Certification | 4× Platinum (RIAA) |

The Beatles singles chronology

| "Lady Madonna" (1968) | **"Hey Jude"** (1968) | "Get Back" (1969) |
|---|---|---|

**"Hey Jude"** is a song by the English rock band the Beatles, written by Paul McCartney and credited to Lennon–McCartney. The ballad evolved from "Hey Jules", a song widely accepted as being written to comfort John Lennon's son, Julian, during his parents' divorce. "Hey Jude" begins with a verse-bridge structure based around McCartney's vocal performance and piano accompaniment; further instrumentation is added as the song progresses to distinguish sections. After the fourth verse, the song shifts to

## The BEATLES

EXPLORE   ALBUMS   NEWS   STORE   THE BEATLES LOVE   MY ACCOUNT





Hey Jude (Past Masters)

1968 as the first single from the Beatles' record label Apple Records. More than seven minutes in length, "Hey Jude" was, at the time, the longest single ever to top the British charts. It also spent nine weeks as number one in the United States—the longest run at the top of the American charts for a Beatles' single, and tied the record for longest stay at number one (until the record was broken by "You Light Up My Life"). The single has sold approximately eight million copies and is frequently included on professional lists of the all-time best songs.

Please note the text from Wikipedia is imported without editing or authentication.



Hey Jude (Anthology 3)



Hey Jude (1)



Hey Jude (Love)

©1968 Sony/ATV Music Publishing LLC. All rights reserved. Used by permission.



# The BEATLES

EXPLORE    ALBUMS    NEWS    STORE    THE BEATLES LOVE    MY ACCOUNT

© Apple Corps 2018                                                        CONTACT U



Appx02765

# EXHIBIT 3

Case: 21-2301    Document: 32    Page: 340    Filed: 03/31/2022





**Appx02768**

Case: 21-2301     Document: 32     Page: 342     Filed: 03/31/2022



Case: 21-2301     Document: 32     Page: 343     Filed: 03/31/2022





**Appx02771**



**Appx02772**





Apple Records

2832

# THE BEATLES






# FOR YOU BLUE

**From The Beatles' Motion Picture "Let It Be"**

Manufactured by Apple Records, Inc.
1700 Broadway, New York, New York 10019
an abkco managed company



Appx02774





The Beatles 1962-1966_Cass.png



**The Beatles 1962-1966_CassLabel.png**



**The Beatles 1967-1970_Cass.png**

**Appx02778**

# EXHIBIT 4



Appx02780



Appx02781



Appx02782



Appx02783



**Appx02784**

Case: 21-2301    Document: 32    Page: 358    Filed: 03/31/2022



THE BEATLES                    CDP 0777 7 7039 2 0

CAPITOL COMPACT DISC          1967-1970          CDP 0777 7039 2 0

# EXHIBIT 5

KeyCite Yellow Flag - Negative Treatment

Disapproved by Faulkner v. Arista Records LLC, S.D.N.Y., March 5, 2009

137 A.D.2d 50, 529 N.Y.S.2d 279

Apple Records, Inc., et al., Appellants,

v.

Capitol Records, Inc., et al., Respondents.

Supreme Court, Appellate Division,
First Department, New York
31130
May 17, 1988

CITE TITLE AS: Apple Records v Capitol Records

### SUMMARY

Appeal from an order of the Supreme Court (Michael J. Dontzin, J.), entered May 1, 1987 in New York County, which granted a motion by defendants to dismiss the third, fourth, fifth, seventh, eighth and ninth causes of action, with leave to replead the fifth cause of action insofar as it related to the inducement to release a certain record album.

### HEADNOTES

**Declaratory Judgments**

**When Remedy Appropriate**

Alternative Remedy Available

(1) It was not an abuse of discretion to dismiss causes of action for declaratory judgments in litigation between recording artists and a record company; a cause of action for a declaratory judgment is unnecessary and inappropriate when plaintiffs, as here, have an adequate, alternative remedy in the form of breach of contract action. Plaintiffs' fear that a declaratory judgment is necessary to preserve their future rights should the court dismiss the breach of contract actions on laches or limitations grounds is unwarranted since laches, being an equitable defense, is applicable only to plaintiffs' equitable cause of action for breach of fiduciary duty, and assuming, arguendo, some merit to defendant's defense of the Statute of Limitations, judicial determinations on the breach of contract claims will merely be confined to those periods of time not barred by the applicable Statute of Limitations and such determinations will still sufficiently guide the parties on

their future performance of their contracts, thereby obviating the need for declaratory judgments.

**Fraud**

**What Constitutes**

Acts Distinct from Breach of Contract

(2) In litigation between recording artists and their record company, plaintiff artists have validly stated a cause of action for fraud separate and distinct from their claims for breach of various contracts to market and distribute their recordings where business dealings between the parties have existed for over 20 years, since it can be said that from such a long enduring relation a special relationship of trust and confidence was born, one which existed independent of the contractual duties and one which plaintiffs argue was betrayed by fraud in secretly selling records purportedly scrapped, and in diluting the market and exploiting plaintiffs' popularity with excessive distribution of promotional copies of their recordings to benefit other aspects of defendant's business; further support for the fraud cause of action rests on plaintiffs' assertions that defendant breached its duty as bailee of plaintiffs' recordings and its duty to respect plaintiffs' property rights.

**Torts**

**Conversion**

Recordings of Popular Music--Affidavit Supplementing Pleadings

(3) In litigation between recording artists and their record company, were the court limited to reviewing merely the pleadings, which allege that **\*51** defendant recording company unlawfully withheld and converted to its own use certain "funds" to which plaintiffs had a superior right of possession, the complaint would be insufficient to state a tort cause of action for conversion truly independent of plaintiffs' contract claims, which seek money due under a "buy and sell" agreement; however, as supplemented by an affidavit and provisions of the agreement, the complaint does allege a valid cause of action on the theory that plaintiffs maintained legal title to the recordings until same were bought by defendant, that defendant secretly sold the recordings to others without making any payments to plaintiffs, and that it falsely reported the recordings as scrapped. In concluding that the "buy and

sell" agreement was a fiction and dismissing plaintiffs' claim, the motion court clearly went beyond the permissible scope of inquiry on a motion to dismiss for failure to state a cause of action.

**TOTAL CLIENT SERVICE LIBRARY REFERENCES**

Am Jur 2d, Declaratory Judgment, §§ 14, 21; Contracts, § 441 et. seq.; Conversion, § 2; Fraud and Deceit, § 6.

NY Jur 2d, Contracts, §282 et. seq.; Conversion, and Action for Recovery of Chattel, § 3; Fraud and Deceit, § 6.

**ANNOTATION REFERENCES**

When Statute of Limitations begins to run against action for conversion of property by theft. 79 ALR3d 847.

**APPEARANCES OF COUNSEL**

*Leonard M. Marks* of counsel *(Paul V. LiCalsi, Alan R. Friedman* and *Thomas P. McCaffrey* with him on the brief; *Gold Farrell & Marks,* attorneys), for appellants.
*Daniel R. Murdock* of counsel *(Charles W. Gerdts, III, Jeffrey A. Conciatori* and *Peter A. Bicks* with him on the brief; *Donovan Leisure Newton & Irvine* and *Latham & Watkins,* attorneys), for respondents.

**OPINION OF THE COURT**

Carro, J.

Twenty-six years ago, just before the Beatles exploded onto the musical scene and were still relatively unknown musicians, they entered into a standard form agreement with defendant EMI Records Limited (EMI), granting EMI the exclusive right to distribute Beatles' recordings worldwide, in return for which the Beatles were to receive certain royalty **\*52** payments. This agreement continued under a more complicated 1967 agreement.

The extent of the Beatles' bargaining leverage increased dramatically by 1969 with their enormous musical success and impact on popular culture, resulting in their exercising increased control of the manufacture and distribution of their recordings. Accordingly, through their New York corporation, Apple Records, Inc. (Apple), the Beatles entered into a significantly different relationship with defendants EMI and Capitol Records, as set forth in two related agreements, both dated September 1, 1969. One was a licensing agreement

with EMI, under which EMI granted Apple the sole and exclusive right to manufacture, distribute, advertise and sell Beatles' recordings in the United States, Canada and Mexico, including the right to use EMI's master recordings of previously released albums for this purpose, provided that Apple enter into a manufacturing and distributing agreement covering this territory with Capitol Records, Inc.

Accordingly, the second agreement was a manufacturing and distributing agreement with Capitol Records and its subsidiary Capitol Records Distributing Corporation. Apple agreed to have Capitol Records press the Beatles' records at certain fixed prices, F.O.B., and Capitol Records Distributing Corporation, in turn, agreed to buy these pressed records from Apple at a higher fixed price, F.O.B. The agreement purportedly provides that Apple is to retain ownership of the records manufactured in the United States by Capitol Records until same are paid for by Capitol Records Distributing Corporation. When Capitol Records and Capitol Records Distributing Corporation merged in 1970, this buy and sell arrangement became one between Apple and Capitol Records.

Relevant also is the provision in the manufacturing and distributing agreement for an increased differential of approximately 25% between sell and buy prices after August 31, 1972, if certain recordings achieved minimum sales of 500,000 units prior to January 26, 1976. As a result of disputes which arose concerning the payment of the escalated differential, the parties entered into a modification agreement in February 1973, under which it is alleged that Capitol Records agreed to pay the escalated differential. Capitol Records disputes plaintiffs' characterization of the nature and effect of this agreement.

Apple Records and Apple Corps Limited commenced an **\*53** action in 1979, asserting causes of action for breach of contract, declaratory judgment and an accounting. Three years later, and before an answer was served, the corporate plaintiffs served an amended complaint, dropping the accounting cause of action, adding claims of fraud, conversion, breach of fiduciary duty, tortious conduct and unjust enrichment and seeking punitive damages. Defendants answered this amended complaint, asserting various counterclaims and affirmative defenses, including that corporate plaintiffs had assigned their rights to payments to the individual Beatles.

Although maintaining that the written agreements alluded to by defendants as assignments were, in fact, merely payment instructions, plaintiffs, nevertheless, moved to serve a second amended complaint to add as plaintiffs George Harrison, Richard Starkey and Yoko Ono Lennon, as the executrix of the estate of John Lennon. (Former Beatles member Paul McCartney has chosen not to participate in this action.) Plaintiffs' motion also sought to supplement the claims to cover the period since commencement of the action in 1979 and to add specific requests for relief to terminate defendants' rights to manufacture and distribute Beatles' recordings and to have the master recordings of Beatles' performances transferred to plaintiffs. Plaintiffs' motion was, for the most part, granted with the court limiting plaintiffs' claims for punitive damages to the fraud and conversion causes of action.

The resulting second amended and supplemental complaint sets forth nine causes of action. The first and second causes of action are for breach of the 1969 agreement and the 1973 modification agreement, respectively. The third and fourth causes of action seek declaratory judgments as to plaintiffs' rights to escalated payments under the 1969 and 1973 agreements, respectively. The fifth cause of action is for fraud. The sixth cause of action alleges breach of fiduciary duty. The seventh cause of action is for conversion. The eighth cause of action alleges an unelaborated "tortious conduct" theory of recovery while the ninth cause of action alleges that defendants have been unjustly enriched by their wrongful acts.

Prior to serving an answer, defendants moved, pursuant to CPLR 3211 (a) (7), to dismiss the third through ninth causes of action for their failure to state valid causes of action. The motion court granted defendants' motion to dismiss, to the extent of dismissing the third, fourth, fifth, seventh, eighth and ninth causes of action, with leave to replead that part of the fifth cause of action which alleges that defendants fraudulently **\*54** induced plaintiffs to release the album "Sometime in New York City". The sixth cause of action was sustained based on the court's conclusion that the facts pleaded were sufficient to raise "a colorable issue that an informal fiduciary relationship exists" between the parties. Plaintiffs, as limited by their brief and notice of appeal, appeal from the court's dismissal of the third, fourth, fifth and seventh causes of action. Defendants have not cross-appealed from the denial of their motion to dismiss the sixth cause of action for breach of fiduciary duty.

(1)The motion court did not abuse its discretion in dismissing the third and fourth causes of action for declaratory judgments. A cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract. (*James v. Alderton Dock Yards,* 256 NY 298, 305, *rearg denied* 256 NY 681; *Young & Co. v. Fleischman,* 85 AD2d 571.) Such is the case here. In fact, plaintiffs concede that these causes of action parallel the breach of contract claims and merely seek a declaration of the same rights and obligations as will be determined under the first and second causes of action. Nevertheless, they argue that a declaration from the court as to their future rights to escalated payments under the agreements is necessary, should their contract causes of action fail on the grounds of laches and/or Statute of Limitations.

The laches defense is an equitable defense and applicable, therefore, only to the equitable cause of action for breach of fiduciary duty. Assuming, arguendo, some merit to defendants' Statute of Limitations defense, the court's determinations on the breach of contract claims will merely be confined to those periods of time not barred by the applicable Statute of Limitations. Such determinations will still sufficiently guide the parties on their future performance of the contracts, thereby obviating any need for declaratory judgments. Consequently, since the first and second causes of action will provide plaintiffs with a full and adequate alternative remedy, the court did not abuse its discretion in dismissing the declaratory judgment actions.

(2)As to the fifth and seventh causes of action, however, we agree with plaintiffs that those should be reinstated. Except to grant plaintiffs leave to replead the fifth cause of action, insofar as it relates to the inducement to release the album "Sometime in New York City", the motion court dismissed **\*55** this cause of action for fraud, concluding that as the allegations of fraud were merely part and parcel of the causes of action for breach of contract, there was no fraud action separate and distinct from the actions in contract.

Courts have long grappled with the difficulty of formulating a precise test to determine under what circumstances a party to a contract may be held liable in tort to another party thereto as a result of some clash in the contractual relationship. While no precise test has ever evolved, it has at least been established that the focus is not, as the motion court misapprehended, on whether the tortious conduct is separate and distinct from the defendants' breach of contractual duties, for it has long

529 N.Y.S.2d 279

been recognized that liability in tort may arise from and be inextricably intertwined with that conduct which also constitutes a breach of contractual obligations. *(See, Rich v. New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 397.) Rather, the focus is on whether a noncontractual duty was violated; a duty imposed on individuals as a matter of social policy, as opposed to those imposed consensually as a matter of contractual agreement. Thus, "unless the contract creates a relation, out of which relation springs a duty, independent of the mere contract obligation, though there may be a breach of the contract, there is no tort, since there is no duty to be violated" *(supra., at 394).*

An oft used example is when a special relationship of "trust and confidence" exists between the contracting parties (such as is typically found between bailor and bailee, lawyer and client, principal and agent, public carrier and passenger or innkeeper and guest), so that born of this relation is a special duty, which, when betrayed, is made actionable in tort *(supra., at 394; see also, Charles v. Onondaga Community Coll.,* 69 AD2d 144, 146, *appeal dismissed* 48 NY2d 650). These socially imposed legal duties are not, however, exclusive to relationships of trust and confidence, but may also arise from special extraneous circumstances and from the "legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud." *(Rich v. New York Cent. & Hudson Riv. R. R. Co.,* supra., at 398; *see also, Albemarle Theatre v. Bayberry Realty Corp.,* 27 AD2d 172, 176.)

In *Albemarle Theatre* (supra.), plaintiff, the landlord and owner of a movie theatre, was found to have stated a valid cause of action for intentional destruction of the value of its theatre property by virtue of defendant tenant's scheme to **\*56** show only low quality movies in order to improve the position of neighboring competitors, while destroying the value of plaintiff's theatre. This court concluded that such conduct "constituted not only a breach of their contract with the plaintiff, but a violation of their legal common-law duty extraneous to the contract not to act wilfully to destroy the property of another, including the plaintiff" *(supra., at 177).*

Valid causes of action in tort were also stated in *North Shore Bottling Co. v. Schmidt & Sons* (22 NY2d 171, 179-180) based on allegations that defendant made plaintiff the exclusive distributor of beer in a specific area, intending only to give plaintiff's territory to a favored party once plaintiff established his business, and in *S & S Hotel Ventures Ltd. Partnership v. 777 S. H. Corp.* (108 AD2d 351, 352-355) based on defendant

creditor's unreasonable withholding of its consent required by contract for plaintiff to transfer certain property, ultimately causing plaintiff to sell at a substantially reduced price.

Defendants' assertions to the contrary, the holdings in these cases are not predicated on one party to the contract acting in concert with third parties to destroy plaintiff's property or acting to benefit third parties. Such a limitation has never been declared in the case law and would, in fact, be inconsistent with the recent case, *Meyers v. Waverly Fabrics* (65 NY2d 75). There, the Court of Appeals acknowledged both that plaintiff had stated a valid cause of action against the defendant for unfair competition stemming from defendant's misrepresentation that a design plaintiff sold him was his and that this tort was actionable as against defendant alone, irrespective of whether or not defendant permitted third parties to make uses of the design outside the intent of the contract *(supra., at 80,* n 2).

Viewed in the context of the above cases, we disagree that the fifth cause of action for fraud merely restates the breach of contract claims. This cause of action is premised on defendants' improper disposition of Beatles' recordings and their fraudulent concealment and misrepresentation of those transactions through the rendering of false statements and accountings. Specifically, it is alleged that defendants, who had claimed to have "scrapped", that is, destroyed as damaged or as not selling, over 19,000,000 Beatles' recordings, in fact, sold millions of such recordings in secret transactions and pocketed the proceeds. Plaintiffs also allege that defendants distributed an excessive amount of promotional copies of Beatles' recordings, **\*57** aimed not at gaining any needed publicity for the Beatles, but instead with the design to benefit defendant Capitol Records, who allegedly used the promotional copies as currency to gain promotional advantages for other of its artists. As many of these promotional records were, contrary to the normal practice, not "drilled", i.e., marked, to prevent retail sale and/or subsequent return to Capitol Records for credit, it is argued that this practice also served to dilute the legitimate market for sale of Beatles' recordings.

Plaintiffs argue that by these actions defendants have breached the following specific duties extraneous to their contractual obligations: their duties as fiduciaries to plaintiffs; their duties as bailees of Beatles' recordings; and, their duty to respect plaintiffs' property rights.

In upholding the sixth cause of action for breach of fiduciary duties, the motion court acknowledged that while the contract did not establish a formal fiduciary relationship, the pleadings were sufficient to raise an issue as to the existence of an informal one. A fiduciary relationship, whether formal or informal, "is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another *** [and] might be found to exist, in appropriate circumstances, between close friends (see *Cody v. Gallows*, 28 Misc 2d 373) or even where confidence is based upon prior business dealings (see *Levine v. Chussid*, 31 Misc 2d 412)." *(Penato v. George*, 52 AD2d 939, 942, *appeal dismissed* 42 NY2d 908.)

The business dealings between Capitol Records and the Beatles date back to 1962, when the still unacclaimed Beatles entrusted their musical talents to defendant Capitol Records. It is alleged that this relationship proved so profitable to defendant that at one point the Beatles constituted 25 to 30% of its business. Even after the Beatles attained their remarkable degree of popularity and success, they still continued to rely on Capitol Records for the manufacture and distributing of their recordings. It can be said that from such a long enduring relation was born a special relationship of trust and confidence, one which existed independent of the contractual duties, and one which plaintiffs argue was betrayed by fraud in secretly selling records claimed as scrapped and in diluting the market and exploiting the Beatles' popularity with excessive distribution of promotional copies to benefit other aspects of defendants' business. Plaintiffs' allegations, then, are sufficient to support their claim that an injury separate and **58** distinct from the breach of contract has been committed and is actionable as a tort.

Further support for this fraud cause of action rests on plaintiffs' claims that defendants also breached their duty as bailees of the Beatles' recordings and their duty to respect plaintiffs' property rights. Plaintiffs argue that pursuant to certain provisions of the contract they retained ownership rights to the Beatles' recordings until same were paid for by Capitol Records. During this interim period, Capitol Records was entrusted with the care and custody of these recordings. These claims in conjunction with plaintiffs' allegations of defendants' misappropriation of Beatles' recordings for their own benefit and in total disregard of plaintiffs' ownership rights, are sufficient to state a valid cause of action for fraud based on violations of duties distinct from defendants' contractual obligations. *(See, Rich v. New York Cent. & Hudson Riv. R. R. Co.*, supra., 87 NY, at 397-398; *Albemarle*

*Theatre v. Bayberry Realty Corp.*, supra., 27 AD2d, at 177.) The fifth cause of action should, therefore, be reinstated.

(3)As to the seventh cause of action for conversion, we note that were we limited to reviewing merely the pleadings, which allege that defendants have unlawfully withheld and converted to their own use certain "funds" to which plaintiffs had a superior right of possession, the complaint would be insufficient to state a tort cause of action truly independent of the contract claims, which seek moneys due under the "buy and sell" agreement. *(See, Peters Griffin Woodward v. WCSC, Inc.*, 88 AD2d 883, 884.) However, plaintiffs have supplemented these pleadings with additional evidentiary materials, which we may review "to preserve inartfully pleaded, but potentially meritorious, claims" *(Rovello v. Orofino Realty Co.*, 40 NY2d 633, 635).

As supplemented by the affidavit in opposition to the motion to dismiss and by the provisions of the 1969 manufacturing and distributing agreement itself, the complaint does allege a valid cause of action for the unlawful conversion of the Beatles' recordings. Plaintiffs' argument that they maintained legal title to the records until same were bought by Capitol Records, finds support, as noted above, in the 1969 agreement. Furthermore, the allegations that defendants secretly sold the records to others without making any payments to plaintiffs and that they falsely reported the records as scrapped are sufficient to support a cause of action for conversion. **59**

In concluding that the "buy and sell" arrangement was a fiction and that plaintiffs never bought or intended to exercise dominion or control over the records, the motion court clearly went beyond the permissible scope of inquiry on a motion to dismiss for failure to state a cause of action. On such a motion, a court is to deem the plaintiff's allegations, assertions and documentations as true and draw all favorable inferences in plaintiff's favor. *(Sanders v. Winship*, 57 NY2d 391, 394.) Under the proper mode of inquiry, it is clear that plaintiffs have made out a valid cause of action for conversion and that the seventh cause of action should also be reinstated.

Accordingly, the order of the Supreme Court, New York County (Michael J. Dontzin, J.), entered May 1, 1987, which granted defendants-respondents' motion, pursuant to CPLR 3211 (a) (7), to dismiss the third, fourth, fifth, seventh, eighth and ninth causes of action, with leave to plaintiff to replead the fifth cause of action, insofar as it relates to the inducement to release the "Sometime in New York City" album, should

Apple Records v Capitol Records, 137 A.D.2d 50 (1988)

529 N.Y.S.2d 279

be unanimously modified, on the law, to the extent of denying the defendants-respondents' motion to dismiss the fifth and seventh causes of action, reinstating those causes of action, and the order should otherwise be affirmed, without costs.

Kupferman, J. P., Sandler and Smith, JJ., concur.

Order, Supreme Court, New York County, entered on May 1, 1987, unanimously modified, on the law, to the extent of denying the defendants-respondents' motion to dismiss the fifth and seventh causes of action, reinstating those causes of action, and otherwise affirmed, without costs and without disbursements. **\*60**

Copr. (C) 2020, Secretary of State, State of New York

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Appx02792

# EXHIBIT 6



Appx02794



Case: 21-2301     Document: 32     Page: 369     Filed: 03/31/2022





**Appx02797**





**Appx02799**



**Appx02800**



**Appx02801**



**Appx02802**



**Appx02803**



Appx02804



**Appx02805**





# EXHIBIT 7



Appx02809



Case: 21-2301   Document: 32   Page: 384   Filed: 03/31/2022





**Appx02812**

# EXHIBIT 8



# EXHIBIT 9



## COLLECTIBLES

The Beatles Replica Memorabilia Box Set
US $100.00

The Beatles White Album Turntable
US $1,799.00

Pro-Ject Yellow Submarine Turntable
US $400.00

The Beatles 1964 Pinball Machine - Gold Edition
US $7,999.00

The Beatles Yellow Submarine Limited Edition Box Set
US $199.99

Document title: Collectibles | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/collectibles-102750?cp=105982_106558
Capture timestamp (UTC): Thu, 20 Feb 2020 01:08:47 GMT

Appx02816



Appx02817



Document title: Apparel | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/apparel?cp=105982_106238
Capture timestamp (UTC): Thu, 20 Feb 2020 01:07:56 GMT

Appx02818



Come Together Long Sleeve T-Shirt
US $43.00

Sgt. Pepper Logo Red T-Shirt
US $30.00

Yellow Submarine Plush Slippers
US $40.00

Happy Socks All On Board
US $16.00

Sgt. Pepper Colors T-Shirt
US $30.00

Flocked Pink Logo T-Shirt
US $35.00

Happy Socks In The Name of Sock
US $16.00

Yellow Sub Crew Cuts T-Shirt
US $30.00

Happy Christmas Beatle People Red Longsleeve
US $40.00

Lady Madonna Washed T-Shirt
US $35.00

Happy Christmas 1968 Zip Hoodie
US $65.00

Yellow Sub Crew Cuts Kid's T-Shirt
US $30.00

Document title: Apparel | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/apparel?cp=105982_106238
Capture timestamp (UTC): Thu, 20 Feb 2020 01:07:56 GMT

Appx02819



Appx02820



Abbey Road Repeat T-Shirt
US $30.00

Flocked Yellow Long Sleeve Logo T-Shirt
US $45.00

The Beatles (White Album) Singles Grey T-Shirt
US $30.00

Yellow Submarine 50th Anniversary White Tank Top
US $30.00

We Can Work It Out Tie-dye Hoodie
US $55.00

All You Need Is Love Onesie
US $30.00

Yellow Sub Vans T-Shirt
US $30.00

Love You Need T-Shirt
US $30.00

Flocked Royal Logo Pullover
US $70.00

The Beatles (White Album) on Apple T-Shirt
US $30.00

US Flag T-Shirt
US $30.00

Yellow Submarine Port Hole Socks
US $14.00

Document title: Apparel | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/apparel?cp=105982_106238
Capture timestamp (UTC): Thu, 20 Feb 2020 01:07:56 GMT

Appx02821



Abbey Road Black and White Women's T-Shirt
US $30.00

Inner Light Grey T-Shirt
US $30.00

The Beatles (White Album) Singles Black T-Shirt
US $30.00

Abbey Road Blue Levi's Denim Jacket
US $125.00

All You Need Watercolor Hearts Youth T-Shirt
US $30.00

Yellow Submarine 50th Anniversary White Outline T-Shirt
US $30.00

Fish & Whales Socks
US $14.00

Yellow Submarine Kid's 4 Pack Sock Set
US $32.00

The Beatles Collector Box Set #2
US $96.00

Abbey Road Coaches Jacket
US $100.00

Yellow Sub Crew Cuts Junior's T-Shirt
US $30.00

Sgt. Pepper Denim Jacket
US $110.00

Document title: Apparel | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/apparel?cp=105982_106238
Capture timestamp (UTC): Thu, 20 Feb 2020 01:07:56 GMT

Page 6 of 7
Page 7 of 32

Appx02822



Document title: Apparel | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/apparel?cp=105982_106238
Capture timestamp (UTC): Thu, 20 Feb 2020 01:07:56 GMT

Page 7 of 7
Page 8 of 32

Appx02823



MEDIA

The Singles Collection Box Set
US $229.98

Abbey Road Anniversary Super Deluxe Edition
(3LP Box Set)
US $99.98

Abbey Road Super Deluxe Edition (4 Disc)
US $109.98

Abbey Road Anniversary Edition (1LP Picture Disc)
US $35.98

Abbey Road Anniversary Deluxe Edition (2CD)
US $24.98

Abbey Road Anniversary Edition (1LP)
US $22.98

Abbey Road Anniversary Edition (1CD)
US $18.98

The Beatles White Album Turntable
US $1,799.00

Pro-Ject Yellow Submarine Turntable
US $600.00

The Singles Collection 45 Carrying Case

The Beatles (White Album) 2LP

Abbey Road Vinyl

Document title: Media | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/media?cp=105982_106236
Capture timestamp (UTC): Thu, 20 Feb 2020 01:06:35 GMT

Page 1 of 7
Page 9 of 32

Appx02824



US $60.00 · US $35.98 · US $25.00

Sgt. Pepper's Lonely Hearts Club Band Anniversary Edition 1 LP
US $24.98

The Beatles (White Album) Deluxe Edition 4LP
US $84.98

Apple LP Crosley Storage Crate
US $50.00

Sgt. Pepper's Lonely Hearts Club Band 6 Disc Super Deluxe (Anniversary Edition)
US $149.98

Sgt. Pepper Crosley Record Carrier Case
US $90.00

Magical Mystery Tour (Stereo 180 Gram Vinyl)
US $25.00

The Beatles (White Album) 3CD Deluxe Edition
US $24.98

The Beatles (White Album) Super Deluxe Edition
US $159.98

Sgt. Pepper's Lonely Hearts Club Band Anniversary Edition 1 LP Picture Disc
US $35.98

Fab Four Slip Mat
US $20.00

Past Masters Volumes 1 & 2 (Stereo 180 Gram Vinyl x2)
US $35.00

Revolver CD
US $15.00

Document title: Media | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/media?cp=105982_106236
Capture timestamp (UTC): Thu, 20 Feb 2020 01:06:35 GMT

Page 2 of 7
Page 10 of 32

Appx02825



Document title: Media | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/media?cp=105982_106236
Capture timestamp (UTC): Thu, 20 Feb 2020 01:06:35 GMT

Appx02826



Document title: Media | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/media?cp=105982_106236
Capture timestamp (UTC): Thu, 20 Feb 2020 01:06:35 GMT

Page 4 of 7
Page 12 of 32

Appx02827



Document title: Media | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/media?cp=105982_106236
Capture timestamp (UTC): Thu, 20 Feb 2020 01:06:35 GMT

Appx02828



Something New CD
US $13.00

Live At The Hollywood Bowl CD
US $13.98

LOVE Album CD/DVD Combo
US $22.00

Yellow Submarine 50th Edition Pop Up Book
US $9.00

Help! CD
US $13.00

Beatles VI CD
US $10.00

"1" Blu-ray
US $25.00

"1" CD
US $13.00

"1" CD/Blu-ray Combo (Ltd. Ed. Gatefold CD digisleeve)
US $36.98

Magical Mystery Slip Mat
US $20.00

Anthology 2 CD
US $35.00

Live At The BBC (2 CD)
US $25.00

Document title: Media | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/media?cp=105982_106236
Capture timestamp (UTC): Thu, 20 Feb 2020 01:06:35 GMT

Appx02829



Document title: Media | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/media?cp=105982_106236
Capture timestamp (UTC): Thu, 20 Feb 2020 01:06:35 GMT

Page 7 of 7
Page 15 of 32

Appx02830



## ACCESSORIES

Help! Striped Pom Beanie
US $25.00

Logo Pom Beanie
US $25.00

All You Need Is Love Beanie
US $25.00

Abbey Road Cufflinks
US $170.00

Pantomime: Everywhere It's Christmas Tote
US $20.00

Let It Be Unisex Necklace
US $140.00

Abbey Road Women's Necklace
US $104.00

Drum Logo Necklace
US $103.00

Yellow Submarine Luggage
US $90.00

Sgt. Pepper Bass Guitar Gig Bag

Beatles Logo Bass Guitar Gig Bag

Apple Electric Guitar Gig Bag

Document title: Accessories | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/accessories?cp=105982_106436
Capture timestamp (UTC): Thu, 20 Feb 2020 01:12:19 GMT

**Appx02831**



Document title: Accessories | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/accessories?cp=105982_106436
Capture timestamp (UTC): Thu, 20 Feb 2020 01:12:19 GMT

Appx02832



Meet The Beatles D'Addario Pick Pack

US $11.00

Revolver D'Addario Pick Pack

US $11.00

Album Cover Pick Pack

US $11.00

Sgt. Pepper Large Recycled Tote

US $9.00

Abbey Road Collector's Pin Set

US $25.00

The Singles Collection Tin Tote

US $17.50

Yellow Submarine Birthday Cake LovePop Card

US $13.00

The Beatles Drum Shaped Tin Tote

US $17.00

Abbey Road Women's Bracelet

US $127.00

The Beatles Logo Patch

US $7.00

Hey Jude Album Charm

US $55.00

Abbey Road Pin Set

US $30.00

Document title: Accessories | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/accessories?cp=105982_106436
Capture timestamp (UTC): Thu, 20 Feb 2020 01:12:19 GMT

Appx02833



Document title: Accessories | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/accessories?cp=105982_106436
Capture timestamp (UTC): Thu, 20 Feb 2020 01:12:19 GMT

Appx02834



Document title: Accessories | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/accessories?cp=105982_106436
Capture timestamp (UTC): Thu, 20 Feb 2020 01:12:19 GMT

Page 5 of 5
Page 20 of 32

Appx02835



# HOME

The Singles Collection Record Player Cookie Jar — US $77.00

The Singles Collection Ceramic Coaster Set — US $23.00

The Singles Collection 13.5" Wood Wall Clock — US $26.00

The Singles Collection 20 oz. Mug — US $16.00

Abbey Road Cookie Cutters — US $25.00

Tissue Paper — US $5.00

The Beatles Abbey Road Silhouettes Sculpted Resin Bookends — US $73.00

The Beatles Abbey Road Trinket Tray — US $15.00

Sgt. Pepper Twin Bell Alarm — US $25.00

Beatles Black and White Clock

White Album Sketch Round Ornament

Abbey Road 4pc 16oz Glass Set

Document title: Home | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/home?cp=105982_106266
Capture timestamp (UTC): Thu, 20 Feb 2020 01:11:12 GMT

Appx02836



Document title: Home | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/home?cp=105982_106266
Capture timestamp (UTC): Thu, 20 Feb 2020 01:11:12 GMT

Page 2 of 10
Page 22 of 32

Appx02837



Document title: Home | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/home?cp=105982_106266
Capture timestamp (UTC): Thu, 20 Feb 2020 01:11:12 GMT

Appx02838



Appx02839



Document title: Home | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/home?cp=105982_106266
Capture timestamp (UTC): Thu, 20 Feb 2020 01:11:12 GMT

Appx02840



Document title: Home | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/home?cp=105982_106266
Capture timestamp (UTC): Thu, 20 Feb 2020 01:11:12 GMT

Appx02841



Get Back Lithograph

US $60.00 - US
$195.00

Eenie Meenie Miney Mo Gem Ornament

US $36.00

Beatles Instrument Cab Ornament

US $60.00

Yesterday Lithograph

US $60.00 - US
$195.00

Paperback Writer Lithograph

US $60.00 - US
$195.00

All You Need Is Love Lithograph

US $60.00 - US
$195.00

Penny Lane Version 2 Lithograph

US $60.00 - US
$195.00

Hey Jude Version 2 Lithograph

US $60.00 - US
$195.00

"Hey Bulldog"

US $140.00

"1" - Boxed Salt & Pepper Shakers

US $20.00

Yellow Submarine Salt & Pepper Set

US $22.00

The Beatles "1" 16 oz. Latte Mug

US $15.00

Document title: Home | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/home?cp=105982_106266
Capture timestamp (UTC): Thu, 20 Feb 2020 01:11:12 GMT

Appx02842



Document title: Home | Shop the The Beatles Official Store
Capture URL: https://usastore.thebeatles.com/dept/home?cp=105982_106266
Capture timestamp (UTC): Thu, 20 Feb 2020 01:11:12 GMT

Page 8 of 10
Page 28 of 32

Appx02843



Appx02844



Appx02845



Appx02846



Appx02847

EXHIBIT 10



Appx02849



**Appx02850**



Case: 21-2301    Document: 32    Page: 425    Filed: 03/31/2022



Appx02852



**Appx02853**





**Appx02855**



**Appx02856**





**Appx02858**



**Appx02859**



**The Radha Krishna Temple (London)_45.png**



**The Radha Krishna Temple (London)_Label.png**



Document title: The Plastic Ono Band - Live Peace In Toronto 1969 (4-Track Cartridge, Album) | Discogs
Capture URL: https://www.discogs.com/Plastic-Ono-Band-Live-Peace-In-Toronto-1969/release/5674924
Capture timestamp (UTC): Tue, 28 May 2019 17:36:24 GMT

APPLE002568

Page 1 of 2
Page 14 of 111

Appx02862



**Ringo Starr_Beaucoups of Blues_Label.png**

Appx02863





**Ringo Starr_Beaucoups of Blues.png**



**GeorgeHarrison_AllThingsMustPass_8trk_back.png**

**Appx02865**



**GeorgeHarrison_All Things Must Pass_8trk_back2.png**

**Appx02866**



**Doris Troy_Doris Troy_.png**

**Appx02867**



**Doris Troy_Doris Troy_2.png**

**Appx02868**



**Doris Troy_Doris Troy_Label.png**



**PaulMcCartney_McCartney_Label.png**

**Appx02870**



**PaulMcCartney_McCartney.png**



APPLE001894



APPLE001895



APPLE001896



Document title: John Lennon / The Plastic Ono Band - John Lennon / Plastic Ono Band (8-Track Cartridge, Album) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Plastic-Ono-Band-John-Lennon-Plastic-Ono-Band/release/5708777
Capture timestamp (UTC): Tue, 28 May 2019 12:51:10 GMT

APPLE002192

Page 1 of 2
Page 27 of 111

Appx02875



Document title: John Lennon / The Plastic Ono Band - John Lennon / Plastic Ono Band (8-Track Cartridge, Album) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Plastic-Ono-Band-John-Lennon-Plastic-Ono-Band/release/5708777
Capture timestamp (UTC): Tue, 28 May 2019 12:51:10 GMT

APPLE002193

Page 2 of 2
Page 28 of 111

Appx02876



Document title: John Lennon &amp; The Plastic Ono Band - John Lennon / Plastic Ono Band (Vinyl, LP, Album, Repress) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Plastic-Ono-Band-John-Lennon-Plastic-Ono-Band/release/12605494
Capture timestamp (UTC): Tue, 28 May 2019 12:52:53 GMT

APPLE002198

Page 1 of 2
Page 29 of 111

Appx02877



Document title: John Lennon &amp; The Plastic Ono Band - John Lennon / Plastic Ono Band (Vinyl, LP, Album, Repress) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Plastic-Ono-Band-John-Lennon-Plastic-Ono-Band/release/12605494
Capture timestamp (UTC): Tue, 28 May 2019 12:52:53 GMT

APPLE002199

Page 2 of 2
Page 30 of 111

Appx02878



**stelvia cipriani come together_8trk.png**



**stelvia cipriani come together_label.png**

**Appx02880**



**stelvia cipriani come together.png**



Document title: The Radha Krsna Temple - The Radha Krsna Temple (8-Track Cartridge) | Discogs
Capture URL: https://www.discogs.com/Radha-Krsna-Temple-The-Radha-Krsna-Temple/release/5819903
Capture timestamp (UTC): Tue, 28 May 2019 18:30:07 GMT

APPLE002632

Page 1 of 2
Page 34 of 111

Appx02882



APPLE001770



**Mary Hopkin_Earth Song:Ocean Song_Label.png**

**Appx02884**



**Mary Hopkin_Earth Song:Ocean Song.png**



**Paul & Linda McCartney_Ram_LP.png**

**Appx02886**



**Wings_Wildlife_8Trk.png**

**Appx02887**



**Wings_Wildlife_Label.png**

**Appx02888**



**JohnLennon_Imagine_Label.png**

**Appx02889**



**JohnLennon_Imagine.png**



**JohnLennonPlasticOnoBand_back.png**



APPLE001771



Document title: John Lennon - Imagine (8-Track Cartridge, Album) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Imagine/release/3681684
Capture timestamp (UTC): Tue, 28 May 2019 16:29:18 GMT

APPLE002453     Page 1 of 2
Page 45 of 111

Appx02893



Document title: John Lennon - Imagine (8-Track Cartridge, Album) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Imagine/release/3681684
Capture timestamp (UTC): Tue, 28 May 2019 16:29:18 GMT

APPLE002454    Page 2 of 2
Page 46 of 111

Appx02894



**Lon&Derrek Van Eaton_Brother_Back.png**

**Appx02895**



**Lon&Derrek Van Eaton_Brother_Label.png**

**Appx02896**



ConcertForBangladesh_Label.png

Appx02897



The Concert for Bangla Desh was held on August 1, 1971 at Madison Square Garden, New York City. The following people contributed their talents and time to help in the production of this event for which we express our sincere thanks.

— George Harrison & Ravi Shankar

**ERIC CLAPTON**
(courtesy of Polydor Records Ltd.)

**BOB DYLAN**
(courtesy of Columbia Records, Inc.)

**BILLY PRESTON**
(appears by the Grace of God)

**LEON RUSSELL**
(with love from Shelter Records, Inc.)

**RINGO STARR**

**KLAUS VOORMANN**

BADFINGER
Pete Ham
Tom Evans
Joey Molland
Mike Gibbons
ALLAN BEUTLER
JESSE ED DAVIS
(courtesy of Atlantic Records, Inc.)
CHUCK FINDLEY
MARLIN GREENE
(from Elektra Records—Peace)
JEANIE GREENE
(from Elektra Records—Peace)
JO GREEN

DOLORES HALL
JIM HORN
(with love Shelter Records, Inc.)
KAMALA CHAKRAVARTY
JACKIE KELSO
JIM KELTNER
USTAD ALIAKBAR KHAN
CLAUDIA LINNEAR
LOU McCREARY
OLLIE MITCHELL
DON NIX
(from Elektra Records—Peace)
DON PRESTON
CARL RADLE
ALLA RAKAH

**RAVI SHANKAR**
performed courtesy of Gramophone Co. of India Ltd.

PRODUCTION COORDINATION
Steve Lieber
Allan Steckler
Jon Taplin

SOUND
Band Concert Productions
Ed Anderson
Clare Brothers Inc.

STAGING & LIGHTING
Bruce De Forrest
Chip Monck Enterprises

INSTRUMENTS AND SUPPLIES
Ampeg Corp.
Carrol Musical Instrument Rental
Manny's Music
Total Piano & Organ Service

Warren Archer, Mike Mahoney & Color Service
Al Aronowitz
Neil Aspinall
Nick Bell
Pete Bennett
Mal Evans
Gary Haber
Kevin Harrington
Paul Mozian
Queens Lithographing
Shyamsundar—Das

Album package, photography & design by Barry Feinstein & Tom Wilkes for Camouflage Productions. Additional photography by Alan Pariser.

*1971 APPLE RECORDS, INC. (California) All Rights Reserved. Reproduction in Whole or Part Without Written Permission is Strictly Prohibited.

This recording was made using up to 44 microphones at one time.

Special thanks go to Gary Keilgren, Lillian, Dennis and Tom of Record Plant, New York and to Norman and Steve mix down engineers of A&M Studio, Los Angeles for their time and energy. Mastered at Sterling Sound All Glories to SRI KRSNA

**Produced by George Harrison and Phil Spector**

PRINTED IN USA

63

*The Concert for Bangla Desh was held on August 1, 1971 at Madison Square Garden, New York City. The following people contributed their talents and time to help in the production of this event for which we express our sincere thanks.*

— George Harrison & Ravi Shankar

**ERIC CLAPTON**
(courtesy of Polydor Records Ltd.)

**BOB DYLAN**
(courtesy of Columbia Records, Inc.)

**BILLY PRESTON**
(appears by the Grace of God)

**LEON RUSSELL**
(with love from Shelter Records, Inc.)

**RINGO STARR**

**KLAUS VOORMANN**

BADFINGER
Pete Ham
Tom Evans
Joey Molland
Mike Gibbons

ALLAN BEUTLER

JESSE ED DAVIS
(courtesy of Atlantic Records, Inc.)

CHUCK FINDLEY

MARLIN GREENE
(from Elektra Records—Peace)

JEANIE GREENE
(from Elektra Records—Peace)

JO GREEN

DOLORES HALL
JIM HORN
(with love Shelter Records, Inc.)
KAMALA CHAKRAVARTY
JACKIE KELSO
JIM KELTNER
USTAD ALIAKBAR KHAN
CLAUDIA LINNEAR
LOU McCREARY
OLLIE MITCHELL
DON NIX
(from Elektra Records—Peace)
DON PRESTON
CARL RADLE
ALLA RAKAH

**RAVI SHANKAR**
performed courtesy of Gramophone Co. of India Ltd.

PRODUCTION
COORDINATION
Steve Lieber
Allan Steckler
Jon Taplin

SOUND
Band Concert Productions
Ed Anderson
Clare Brothers Inc.

STAGING & LIGHTING
Bruce De Forrest
Chip Monck Enterprises

INSTRUMENTS AND
SUPPLIES
Ampeg Corp.
Carrol Musical Instrument Rental
Manny's Music
Total Piano & Organ Service

Warren Archer, Mike Mahoney & Color Service
Al Aronowitz
Neil Aspinall
Nick Bell
Pete Bennett
Mal Evans
Gary Haber
Kevin Harrington
Paul Mozian
Queens Lithographing
Shyamsundar—Das

Album package, photography & design by Barry Feinstein & Tom Wilkes for Camouflage Productions. Additional photography by Alan Pariser.

®1971 APPLE RECORDS, INC. (California) All Rights Reserved. Reproduction in Whole or Part Without Written Permission is Strictly Prohibited.

*This recording was made using up to 44 microphones at one time.*

*Special thanks go to Gary Kellgren, Lillian, Dennis and Tom of Record Plant, New York and to Norman and Steve mix down engineers of A&M Studio, Los Angeles for their time and energy.
Mastered at Sterling Sound
All Glories to SRI KRSNA* • • •

**Produced by
George Harrison and
Phil Spector**



**ElephantsMemory_Label.png**

**Appx02900**



**ElephantsMemory.png**

**Appx02901**



**Badfinger_Ass_back cover.jpg**

**Appx02902**



**Badfinger_Ass_Label.png**

**Appx02903**



**John Lennon_Mind Games_inner sleeve.jpg**



**John Lennon_Mind Games_label side 1.jpg**

**Appx02905**



**John Lennon_Mind Games_label side 2.jpg**

**Appx02906**



**Ringo Starr_Ringo_back cover.jpg**



**Ringo Starr_Ringo_cover.jpg**

**Appx02908**



**Ringo Starr_Ringo_label side 1.jpg**

**Appx02909**



**Ringo Starr_Ringo_label side 2.jpg**

**Appx02910**



Document title: Ringo Starr - Ringo (Cassette, Album) | Discogs
Capture URL: https://www.discogs.com/Ringo-Starr-Ringo/release/6263311
Capture timestamp (UTC): Tue, 28 May 2019 15:04:38 GMT

APPLE002407

Page 1 of 3
Page 63 of 111

Appx02911



**George Harrison_Living In The Material World_back cover.jpg**



**George Harrison_Living In The Material World_label side 1.jpg**



**George Harrison_Living In The Material World_label side 2.jpg**



**George Harrison_Living In The Material World_spread.jpg**



**Paul McCartney & Wings_Band On The Run_8 track cover.jpg**

Appx02916



**Paul McCartney & Wings_Band On The Run_back cover.jpg**



**Paul McCartney & Wings_Band On The Run_inner sleeve.jpg**

**Appx02918**



**Paul McCartney & Wings_Band On The Run_label side 1.jpg**

**Appx02919**



**Paul McCartney & Wings_Band On The Run_label side 2.jpg**

**Appx02920**



**Paul McCartney Wings_Red Rose Speedway_Back.png**



All Selections Copyright © 1973 McCartney Music, Inc./ATV Music Corp. — BMI, and reproduced with their permission.

Produced by Paul McCartney

All compositions by McCartney

Engineers    Alan Parsons
Richard Lush
Dixon Van Winkle
Tim Geeland
Glyn Johns
David Hentschel

**Paul McCartney Wings_Red Rose Speedway_inside.png**



**Paul McCartney Wings_Red Rose Speedway_Label.png**

**Appx02923**



Yoko Ono_Feeling The Space_8 track-1.jpg

Appx02924



# Apple 8-Track Stereo
## WARRANTY

If any manufacturing defect becomes apparent within 30 days of purchase, this tape will be replaced without service charge. Mail this tape, postage prepaid — to Tape Service: 1 Capitol Way; Jacksonville, Illinois 62650 — with a letter specifying the defect and date of purchase. Replacements will not be made if the tape has been altered, repaired or misused, as determined by Tape Service.

CARTRIDGE MUST NOT BE LEFT EXPOSED TO DIRECT SUNLIGHT. REMOVE FROM PLAYER WHEN NOT IN USE.

MANUFACTURED BY APPLE RECORDS, INC.
HOLLYWOOD AND VINE STREETS, HOLLYWOOD CALIF.

A Continuous Play 8-Track Cartridge

**Yoko Ono_Feeling The Space_8 track-2.jpg**

**Appx02925**



**Yoko Ono_Feeling The Space_label side 1.jpg**

**Appx02926**



**Yoko Ono_Feeling The Space_label side 2.jpg**

**Appx02927**



APPLE001780



APPLE001781



APPLE001778



APPLE001779



**RingoStarr_Goodnigh Vienna__Back.png**



**RingoStarr_Goodnigh Vienna__Label.png**

**Appx02933**



**RingoStarr_Goodnigh Vienna_Front.png**



**RingoStarr_Goodnigh Vienna_Slv.png**



APPLE001783



# GEORGE HARRISON
# DARK HORSE

**4XW
3418**

Manufactured by Apple Records, Inc., 1370 Avenue of the Americas, New York, New York 10019
Printed in U.S.A.

**PROGRAM 1 (21:50)**

Hari's On Tour (Express) • Simply Shady • Bye Bye, Love •
Māya Love • Ding Dong; Ding Dong

**PROGRAM 2 (18:41)**

Dark Horse • So Sad • Far East Man • It Is "He" (Jai Sri Krishna)

Ⓟ1974 EMI Records Limited

**George Harrison_Dark Horse_Cass back.png**



GEORGE HARRISON

DARK HORSE

4XW-3418

HARI'S ON TOUR (EXPRESS) ·
SIMPLY SHADY · BYE BYE, LOVE ·
MĀYA LOVE · DING DONG; DING DONG ·
DARK HORSE · SO SAD · FAR EAST MAN ·
IT IS "HE" (JAI SRI KRISHNA)

apple records
from Capitol Records

STEREO CASSETTE

**George Harrison_Dark Horse_Cass front.png**

**Appx02938**



**GEORGE HARRISON** **DARK HORSE**

4XW-3418

HARI'S ON TOUR (EXPRESS) •
SIMPLY SHADY • BYE BYE, LOVE •
MĀYA LOVE • DING DONG; DING DONG •
DARK HORSE • SO SAD • FAR EAST MAN •
IT IS "HE" (JAI SRI KRISHNA)

apple records
from Capitol Records

STEREO CASSETTE

**George Harrison_Dark Horse_Cass front.png**

**Appx02939**



**George Harrison_Dark Horse_Label.png**



**John Lennon_Walls&Bridges_Label.png**

**Appx02941**



**John Lennon_Walls&Bridges.png**

**Appx02942**



Document title: John Lennon - Walls And Bridges (Cassette, Album) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Walls-And-Bridges/release/3179933
Capture timestamp (UTC): Sat, 25 May 2019 01:43:38 GMT

APPLE002363

Page 1 of 1
Page 95 of 111

Appx02943



Document title: John Lennon - Walls And Bridges (8-Track Cartridge, Album) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Walls-And-Bridges/release/4993961
Capture timestamp (UTC): Sat, 25 May 2019 01:44:43 GMT

APPLE002366

Appx02944



**George Harrison_Dark Horse_Cass .png**

**Appx02945**



George Harrison_ExtraTexture_Cass.png



**George Harrison_ExtraTexture.png**

Appx02947



**John Lennon_ShavedFish_Cass.png**

**Appx02948**



Document title: John Lennon / The Plastic Ono Band - Shaved Fish (Cassette, Compilation) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Plastic-Ono-Band-Shaved-Fish/release/3767342
Capture timestamp (UTC): Tue, 28 May 2019 13:16:21 GMT

APPLE002241

Page 1 of 2
Page 101 of 111

Appx02949



Document title: John Lennon / The Plastic Ono Band - Shaved Fish (Cassette, Compilation) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Plastic-Ono-Band-Shaved-Fish/release/3767342
Capture timestamp (UTC): Tue, 28 May 2019 13:16:21 GMT

APPLE002242

Page 2 of 2
Page 102 of 111

Appx02950



Document title: John Lennon, The Plastic Ono Band - Shaved Fish (Cassette, Compilation, Reissue) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Plastic-Ono-Band-Shaved-Fish/release/4513372
Capture timestamp (UTC): Tue, 28 May 2019 13:17:08 GMT

APPLE002243

Page 1 of 2
Page 103 of 111

Appx02951



Document title: John Lennon, The Plastic Ono Band - Shaved Fish (Cassette, Compilation, Reissue) | Discogs
Capture URL: https://www.discogs.com/John-Lennon-Plastic-Ono-Band-Shaved-Fish/release/4513372
Capture timestamp (UTC): Tue, 28 May 2019 13:17:08 GMT



John Lennon_ShavedFish_Back.png



**John Lennon_ShavedFish_Label.png**

**Appx02954**



**John Lennon_ShavedFish_Slv.png**



**ringo starr blast from your past_back.png**



**ringo starr blast from your past_cass.png**



**ringo starr blast from your past_Label.png**



**ringo starr blast from your past_slv.png**

**Appx02959**

# EXHIBIT 11



**Appx02961**



AWAY IN THE SKY, beyond the clouds, live 4 or 5 Magicians. By casting
WONDERFUL SPELLS they turn the Most Ordinary Coach Trip into a MAGICAL
MYSTERY TOUR.
If you let yourself go, the Magicians will take you away to marvellous places.
Maybe YOU'VE been on a MAGICAL MYSTERY TOUR without even realising it.
Are you ready to go?
SPLENDID?

DIGITAL STEREO
Produced and Directed by The Beatles

MP 1538   APPROX. 50 MINUTES   COLOR   NOT RATED

©1967 Apple Films Ltd. All Rights Reserved. This motion picture is protected by the United States
copyright laws. Packaging and design ©1988 MPI Home Video

**An MPI Home Video Release • Los Angeles, CA 90069**

ISBN #1-55607-102-7
Printed in the U.S.A.                    Apple

0   30306 01463   0



**Appx02963**





Appx02965

# THE BEATLES-HELP! DVD DELUXE EDITION
## THIS SET CONTAINS

### Two DVD's

60 page hardcover book
Including an introduction by Richard Lester and an appreciation by Martin Scorsese
A reproduction of Richard Lester's original script (complete with handwritten notes)
Reproductions of 8 original US theatrical lobby cards
Reproduction of an original 1965 theatrical poster

  

## DISC ONE
### HELP!

Directed by Richard Lester, who also directed the band's debut feature film 'A Hard Days Night', 'Help!' made its theatrical debut in 1965.

### CAST

**John Lennon Paul McCartney George Harrison Ringo Starr**
Leo McKern Eleanor Bron Victor Spinetti Roy Kinnear Patrick Cargill John Bluthal

Director: Richard Lester Producer: Walter Shenson
Screenplay: Charles Wood/Marc Behm Director of Photography: David Watkin
Film Editor: John Victor Smith Art Director: Raymond Simm
Musical Director: Ken Thorne Costume Designer: Julia Harris
Songs by: John Lennon and Paul McCartney and by George Harrison

### SEVEN CLASSIC BEATLES TRACKS

* 'Help!'
* 'You're Going To Lose That Girl'
* 'You've Got To Hide Your Love Away'
* 'Ticket To Ride'
* 'I Need You'
* 'The Night Before'
* 'Another Girl'

## DISC TWO
### SPECIAL FEATURES

The Beatles in Help! – 30 minute documentary about the making of the film, with Richard Lester, the cast and crew.
Includes exclusive behind the scenes footage of the Beatles on set.
A Missing Scene – Featuring Wendy Richard
The Restoration of Help! – An in-depth look at the restoration process.
Memories of Help! – The cast and crew reminisce
3 Theatrical Trailers – Original trailers from 1965
1965 Radio Spots - Hidden in menus

Director: Claire Ferguson Producer: Jonathan Clyde Executive Producer: Neil Aspinall

www.thebeatles.com
© 2007 The copyright in this sound recording is owned by Subafilms Ltd/Dakota & Kentucky Animated Pictures Ltd. EMI Records Ltd.
   

**Appx02966**



**Appx02967**

# EXHIBIT 12





(Color, 1970) An exhilarating documentary of the making of an album by The Beatles, the film concentrates on the many recording sessions that went into the production of the ''Let it Be'' album. It offers a unique glimpse into the creative process of this world-renowned group as well as the subtle relationships among the individual members. There is jamming of old songs and painstaking work on new ones. In search of a new direction, The Beatles play an inspired concert on the roof of their London offices.

Running Time: 80 Minutes          Rated G

Copyright © 1970 Apple Films, Ltd. ALL RIGHTS RESERVED.
Released by United Artists Corporation.

**WARNING:** Federal law provides severe civil and criminal penalties for the unauthorized reproduction, distribution, or exhibition of copyrighted motion pictures and video tapes (Title 17, United States Code, Sections 501 and 506). The Federal Bureau of Investigation investigates allegations of criminal copyright infringement (Title 17, United States Code, Section 506).

MAGNETIC VIDEO
A TWENTIETH CENTURY-FOX COMPANY

© 1981

---

CBS FOX VIDEO

**Let It Be**

MGM/UA

Copyright © 1970 Apple Films, Inc.  All Rights Reserved. Released By United Artists Corporation.

The copyright proprietor has licensed the Picture contained in this videocassette for private home use only and prohibits any other use, copying, reproduction or performance in public, in whole or in part.

WARNING: Federal law provides severe civil and criminal penalties for the unauthorized reproduction, distribution or exhibition of copyrighted motion pictures, video tapes or video discs. Criminal copyright infringement is investigated by the FBI and may constitute a felony with a maximum penalty of up to five years in prison and/or a $250,000 fine.

Except in Canada CBS™ is a trademark of CBS Inc. used under license. In Canada CBS™ is a trademark of CBS Records Canada Ltd. used under license. FOX™ is a trademark of Twentieth Century-Fox Film Corporation used under license.

Cat No:     Recorded in Hi-Fi.
4508-30

Load this way ▶ Do not touch tape

VHS

and painstaking work on new ones. In search of a new direction,
The Beatles play an inspired concert on the roof of their London
offices.

Running Time: 80 Minutes                              Rated 

Copyright© 1970 Apple Films, Ltd. ALL RIGHTS RESERVED
Released by United Artists Corporation.

 **WARNING:** Federal law provides severe civil and criminal penalties for the unauthorized
reproduction, distribution, or exhibition of copyrighted motion pictures and video tapes.
(Title 17, United States Code, Sections 501 and 506).
The Federal Bureau of Investigation investigates allegations of criminal copyright infringe-
ment. (Title 17, United States Code, Section 506).



MAGNETIC VIDEO
A TWENTIETH CENTURY-FOX COMPANY

©
**1981**

**Magnetic Video** • Industrial Park • Farmington Hills, MI 48024





SIDE 1

0 76476 01411 1

Time: 1 hour 20 minutes / color



**SONGS FEATURED:**
Don't Let Me Down
Maxwell's Silver Hammer
Two of Us
I've Got a Feeling
Oh Darling
One After 909
Jazz Piano Song
Across the Universe
I Dig a Pony
Suzy Parker
I Me Mine

For You Blue
Besame Mucho
Octopus's Garden
You Really Got a Hold on Me
The Long and Winding Road
Shake, Rattle and Roll
Kansas City
Miss Ann
Lawdy Miss Clawdy
Dig It
Let It Be
Get Back

# THE BEATLES

**APPLE**
An abkco managed company presents

## "Let it be"

Produced by NEIL ASPINALL
Directed by MICHAEL LINDSAY-HOGG
TECHNICOLOR

United Artists        G GENERAL AUDIENCES

Copyright © 1970 Apple Films Ltd. All Rights Reserved

Everybody had a good time... Everybody let their hair down. Everybody saw the sun shine. Those lines from "I Got a Feeling," sung by John, sketch the rocky road from *A Hard Day's Night* to *Let It Be*, the Beatles' third and final film. The Beatles, from a howling hello to a bittersweet goodbye: *Let It Be*. John and Yoko, dressed in white, waltzing across the floor of the studio to George's "I, Me, Mine." John and Paul, coming together like teenage Quarry Men on "Two of Us — You and I have memories longer than the road that stretches out ahead." The Beatles were breaking up. The Beatles were boys becoming men.

January 1969 Paul was pushing for a tour, saying that the group needed to reconnect with their audience, but the other Beatles weren't biting. A compromise was struck. The new album would be recorded as in the Beatlemania days — simply, John, Paul, George, and Ringo, with George Martin producing. A film crew would catch the action, eavesdropping as the boys touched home base with Smokey Robinson's You Really Got a Hold on Me, and began to piece together the album that would become *Let It Be*. Before that record was released, however, the Beatles would record *Abbey Road*, officially break up, begin to release solo albums, and enlist Phil Wall of Sound Spector to construct a soundtrack album from a

mountain of accumulated tapes. This disc, however, is the literal soundtrack of *Let It Be*, and for a song like The Long and Winding Road, which Spector smothered in strings and voices, the difference is a revelation. *Let It Be* restores the song's simple soul, with Billy Preston's organ swaddling Paul's piano, and the cutest Beatle caught in all his choirboy charm. One squirms as Paul snips at George and Ringo for not playing their parts correctly, as if the Beatles' magic was of a kind that could be whipped into shape. But you can't blame Paul, because he, like us, saw the Beatles coming to an end. Suddenly, the Fab Four brought girlfriends to the studio with names like Linda and Yoko. Suddenly, they were grown-ups.

So what did the Beatles do when their whole world started getting them down? They went up on the roof and kissed us goodbye with a live performance. These are the scenes that linger forever. Kids dash down the street, excitement in their eyes, heads turned towards the sky. A constable knocks on the door of Apple Corps, to inquire about the racket on the roof. And the wind riffles through John's hair as he picks out the lead to "Get Back," and, along with his three comrades, sends himself back to where he once belonged. The Beatles—John, Paul, George, and Ringo. They passed the audition.

—JOHN MILWARD

The copyright proprietor has licensed the program contained in this videodisc for private use only and prohibits any other use, copying, or reproduction in whole or in part. The public exhibition, or any exhibition for which an admission fee or other charge is made to those viewing this program, is strictly prohibited.

**WARNING:** Federal law provides severe civil and criminal penalties for the unauthorized reproduction, distribution, or exhibition of copyrighted motion pictures and video tapes. (Title 17, United States Code, Sections 501 and 506). The Federal Bureau of Investigation investigates allegations of criminal copyright infringement.

Manufactured and distributed by RCA SelectaVision VideoDiscs, a division of RCA Corporation, New York, N.Y.

SelectaVision is a trademark of RCA Corporation.
TM(s) ® Registered • Marca(s) Registrada(s).
© 1981 RCA Corporation

APPLE001911

**EXHIBIT 13**

**FILED UNDER SEAL**

# EXHIBIT 14

Case: 21-2301    Document: 32    Page: 550    Filed: 03/31/2022



Case: 21-2301    Document: 32    Page: 551    Filed: 03/31/2022





Made in Canada. Manufactured by EMI Music, Canada, 3109 American Drive, Mississauga, Ontario L4V 1B2. All rights reserved. Unauthorized reproduction and copying is prohibited by law. "EMI" is a registered trade mark of Thorn EMI plc. ℳℰ is a registered trade mark of Malofilm Distribution, Inc. ℗ 1996 Apple Corps. Ltd. "Beatles", "Apple" and the Apple logo, are trade marks of Apple Corps. Ltd.



**Appx02980**



**Appx02981**



**Appx02982**



**Appx02983**

**Total Duration** (approx):
**DVD 1 (Episodes 1 & 2):**
151 mins (2 hours 31 mins)
**DVD 2 (Episodes 3 & 4):**
144 mins (2 hours 24 mins)
**DVD 3 (Episodes 5 & 6):**
143 mins (2 hours 23 mins)
**DVD 4 (Episodes 7 & 8):**
155 mins (2 hours 35 mins)
**DVD 5 (Special Features):**
81 mins (1 hour 21 mins)

**PAL**
**Picture Aspect:** 4:3
**Sound:** LPCM Stereo
Dolby Digital 5.1 surround sound
DTS 5.1 surround sound
**Subtitles:**
Deutsch
English
Español
Français
Italiano
Português
Português do Brasil

Apple

Parlophone

abbey road interactive

DVD VIDEO

DOLBY DIGITAL

entertainment

Suitable only for
persons of
12 years and over

Not to be supplied to any person below that age

Dolby and the double-D device are trademarks of Dolby Licensing Corporation "DTS" and "DTS Digital Surround" digital surround are trademarks of Digital Theater Systems, Inc.

**Warning:** The copyright proprietors have licensed the cinematograph, film, sound recordings and packaging artwork contained in this video device for private home use only. All other rights are reserved. Any unauthorised use including, but not limited to, copying, editing, lending, exchanging, renting, hiring, exhibiting, public performance, radio or television broadcasting or any other diffusion, or otherwise dealing with this video device or any part thereof is strictly prohibited

© 2003 Copyright in this compilation DVD is owned by Apple Corps Limited under exclusive licence to EMI Records Limited.
© 2003 Apple Corps Limited. This label copy information is the subject of copyright protection. All rights reserved. © 2003
Apple Corps Limited "Bootles", "Apple" and the Apple logos are trademarks of Apple Corps Ltd.

Place of manufacture as stated on label. Marketed and distributed by EMI. Printed in the EU.

7 24349 29699 2

# EXHIBIT 15



Appx02986





Appx02988

**Volume II of II  -   Pages Appx02989-08728**

No. 2021-2301

_____

# United States Court of Appeals
# for the Federal Circuit

_____

CHARLES BERTINI,

*Appellant,*

v.

APPLE INC.,

*Appellee*

_____

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in Case No. 91229891
before Kuczma, Shaw and Hudis, Administrative Law Judges

_____

**NON-CONFIDENTIAL JOINT APPENDIX**

James Bertini
423 Kalamath Street
Denver, CO 809204
303 572-3122
jamesbertini@yahoo.com

*Counsel for Charles Bertini*

**TABLE OF CONTENTS**
**Joint Appendix Volume I of II**

|  |  | Page |
|---|---|---|
|  | Standard Protective Order | v-xii |
|  |  |  |
| April 16, 2021 | Final Decision of Trademark Trial and Appeal Board TTAB) dismissing Opposition   (101 TTABVUE) | Appx00001 |
|  |  |  |
| August 9, 2021 | Denial of Bertini's Request for Reconsideration     (105 TTABVUE) | Appx00053 |
|  |  |  |
| August 9, 2021 | Docket at TTAB | Appx00071 |
|  |  |  |
| August 9, 2021 | USPTO records | Appx00077 |
|  |  |  |
| June 11, 2015 | Application | Appx00090 |
|  |  |  |
| June 11, 2015 | Drawing | Appx00095 |
|  |  |  |
| September 2, 2016 | Notice of Opposition     (1 TTABVUE) | Appx00096 |
|  |  |  |
| April 6, 2018 | Opposer's Motion to Compel Discovery (22 TTABVUE) | Appx00146 |
|  |  |  |
| August 16, 2018 | Order: Motion to Compel Deposition Granted; Motion to Compel Discovery Granted, in Part and, Denied, in Part (35 TTABVUE) | Appx00569 |
|  |  |  |
| September 18, 2018 | Opposer's Motion for Summary Judgment (36 TTABVUE) | Appx00580 |
|  |  |  |
| March 1, 2019 | Order: Motion for Summary Judgment Granted, in Part and, Denied, in Part (45 TTABVUE) | Appx01403 |
|  |  |  |

| April 1, 2019 | Apple's Motion for Reconsideration or, in the Alternative, For Leave to Amend Answer (48 TTABVUE) | Appx01421 |
|---|---|---|
| | | |
| May 29, 2019 | Joint Stipulation Regarding Documents Produced in Response to Written Discovery and Depositions (53 TTABVUE) | Appx01451 |
| | | |
| September 30, 2019 | Order: Motion for Reconsideration Denied; Alternative Motion for Leave to Amend Answer Granted (58 TTABVUE) | Appx01578 |
| | | |
| December 20, 2019 | Opposer's Trial Declaration of C. Bertini (59-60 TTABVUE) | Appx01589 |
| | | |
| December 20, 2019 | Opposer's Notice of Reliance (on Discovery Responses) (62 TTABVUE) | Appx01979 |
| | | |
| December 20, 2019 | Opposer's Notice of Reliance (on Internet Documents) (64 TTABVUE) | Appx02048 |
| | | |
| December 20, 2019 | Opposer's Notice of Reliance (on Official Records) (66 TTABVUE) | Appx02129 |
| | | |
| February 20, 2020 | Apple's Fourth Notice of Reliance (70 TTABVUE) | Appx02465 |
| | | |
| February 20, 2020 | Apple's Declaration of J. Vaughan Jones (71 TTABVUE) | Appx02719 |

| | **TABLE OF CONTENTS**<br>**Joint Appendix Volume II of II** | |
|---|---|---|
| | | **Page** |
| | | |
| February 20, 2020 | Apple's Confidential Trial Testimony Exhibit 13 of Apple witness Jeffrey Vaughn Jones regarding sales information (72 TTABVUE) | Appx02989 |
| | | |
| February 21, 2020 | Apple's Fifth Notice of Reliance (73 TTABVUE) | Appx02997 |
| | | |
| February 21, 2020 | Apple's Sixth Notice of Reliance (74 TTABVUE) | Appx03494 |
| | | |
| February 21, 2020 | Apple's Declaration of T. La Perle (83 TTABVUE) | Appx07883 |
| | | |
| February 21, 2020 | Apple's Confidential Trial Testimony of witness Thomas La Perle regarding royalties (84 TTABVUE) | Appx08155 |
| | | |
| February 21, 2020 | Apple's Confidential Trial Testimony Exhibit 23 of witness Thomas La Perle regarding a contract. (85 TTABVUE) | Appx08158 |
| | | |
| April 6, 2020 | Opposer's Rebuttal Notice of Reliance (Publicly Available Webpages) (87 TTABVUE) | Appx08225 |
| | | |
| June 5, 2020 | Opposer's Trial Brief (Appendix A) (89 TTABVUE) | Appx08227 |
| | | |
| July 6, 2020 | Apple's Trial Brief (Appendix A-B) (90 TTABVUE) | Appx08295 |
| | | |
| July 20, 2020 | Opposer's Reply Trial Brief (Exhs. A-B) (92 TTABVUE) | Appx08531 |
| | | |

| May 15, 2021 | Opposer's Motion for Reconsideration (102 TTABVUE) | Appx08609 |
|---|---|---|
| | | |
| June 14, 2021 | Opposer's Reply in Support of Motion for Reconsideration (104 TTABVUE) | Appx08648 |
| | | |
| Various dates | USPTO Third Party Registrations | Appx08659 |
| | | |
| | Merriam-Webster definition of the term "set" | Appx08683 |
| | | |
| | The American Heritage Dictionary definition of the term "production" | Appx08685 |
| | | |
| October 1, 2017 | Answer | Appx08723 |

## CONFIDENTIAL MATERIALS STATEMENT:

The material omitted in the Non-Confidential Appendix is, or relates to, material subject to a protective order. Neither Apple nor Bertini filed confidential briefs.

Confidential materials filed under seal in its entirety with no redacted/public counter-part have been identified with full-page brackets and intentionally omitted on the following pages: Appx02989-02993; Appx8155-8216.

# [CONFIDENTIAL MATERIAL OMITTED]

No. 2021-2301

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

CHARLES BERTINI,
Appellant,

v.

APPLE INC.,
Appellee

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in Case No. 91229891
before Kuczma, Shaw and Hudis, Administrative Law Judges

**CONFIDENTIAL EXHIBIT 13**
**Apple's confidential portion of Trial Testimony**
**of Apple witness Jeffrey Vaughn Jones**
**(72 TTABVUE)**
**filed February 20, 2020**

**OFFERED BY CHARLES BERTINI**

**Filed under seal; as no redacted version was submitted, it has been
intentionally omitted from pages Appx02989-02993**

**Appx02989-02993**

Bertini vs. Apple Inc.

Deposition of
CHARLIE BERTINI
September 21, 2018



www.aptusCR.com / 866.999.8310

Charlie Bertini                                                      Bertini vs. Apple Inc.

Page 41

1    request. I don't know that that was relevant to
2    any particular request.
3         MR. PETERSEN: I believe it is. So please do
4    consider it, and let me know your position. And we
5    can just take it from there.
6         MR. J. BERTINI: Okay.
7         MR. PETERSEN: We don't need to spend a lot of
8    time today on --
9         MR. J. BERTINI: Sure. And so you're saying
10   in the requests for production, it included -- you
11   asked for photographs of all of the events?
12        MR. PETERSEN: I would assume we asked for
13   documents which would have subsumed photos and
14   videotapes. You can look at it, and I can look at
15   it. And we can consider the request, and we can
16   decide if it's going to be an issue or not.
17        MR. J. BERTINI: Okay.
18   BY MR. PETERSEN:
19   **Q    When's the last time that you looked at some**
20   **pictures of the earlier events?**
21   A    I've been scanning pictures because they're in
22   big piles of printed photographs. So I've been scanning
23   them for a couple of years. So, last time I looked at
24   them, several months ago.
25   **Q    I see. And did you record the events as well?**

Page 42

1    A    Well, with video, yeah.
2    **Q    Okay. So, but I mean like separately sound**
3    **recording instruments or --**
4    A    I got into that maybe around 19 -- early '90s.
5    '92, maybe.
6    **Q    When you say you got into it, what did that**
7    **entail?**
8    A    I had to hire a recording engineer, audio
9    recording engineer. I've always been really disappointed
10   in video, the level of -- quality of video recording. So
11   I would hire a recording engineer to mix the sound, and
12   then send it to the video director so that the video
13   director would have a more well-represented sound of the
14   Apple Jazz Band.
15   **Q    Okay. Now, did -- did you have any agreements**
16   **with any of the performers in the band about kind of the**
17   **ability to record the music, or later distribute the**
18   **music? Is there anything -- was that formalized in any**
19   **way, or was this just all done by --**
20   A    It was only formalized when I would -- because
21   it was just documentation. So -- but then if I used it
22   for something, like to make a video, or to make an album
23   from the recording, then they were compensated for the
24   additional amount that the recording would have paid.
25   **Q    Okay. And then, was there an agreement that**

Page 43

1    called for a certain amount of compensation for them, or
2    you would just apply kind of standard practices in the
3    industry?
4    A    I sent everyone an agreement.
5    **Q    Okay.**
6    A    Yeah.
7    **Q    And when did you start sending the musicians**
8    **an agreement?**
9    A    It would have been -- I'm trying to think when
10   the first recording was. It's hard for me to say, Joe --
11   **Q    I understand.**
12   A    -- what year it was.
13   **Q    Sure.**
14   A    There were so many. But when I would release
15   a product, I would not do that without the -- all of
16   the -- you know, correct ways of doing things.
17   **Q    I -- totally understood.**
18        MR. PETERSEN: James, I'm going to request
19   copies of those agreements as well, to kind of get
20   a better sense of when the recordings started. So
21   take that under consideration, or --
22        MR. J. BERTINI: And, Joe, which agreements
23   are you talking about now?
24        MR. PETERSEN: So, these are the agreements
25   that Charlie just testified that he entered into

Page 44

1    with the musicians once he started actually
2    distributing the recordings from the event.
3         MR. J. BERTINI: Okay. I've noted that.
4    BY MR. PETERSEN:
5    **Q    Okay. Charlie, do you still have copies of**
6    **those agreements?**
7    A    Sure.
8    **Q    And we've been going I think a little under an**
9    **hour. I like to basically take breaks every hour. So in**
10   **about 10 minutes, I will break. But if you need a break**
11   **before that, just let me know. I'm obviously always**
12   **happy to accommodate you.**
13   A    Okay.
14   **Q    If you would walk me through kind of how you**
15   **accounted for income off of the event each year. Is**
16   **this -- did you ever set up a separate entity that owned**
17   **any of the alleged rights to do the Apple Jazz Festival,**
18   **or was this all done kind of personally?**
19   A    Originally, it was done personally. But when
20   I started my business, Apple Jazz Records, then
21   everything was accounted for through Apple Jazz Records.
22   **Q    I see. And when was Apple Jazz Records**
23   **started?**
24   A    It was in the mid '90s.
25   **Q    And when you started Apple Jazz Records, did**

**Charlie Bertini**                                              **Bertini vs. Apple Inc.**

Page 45

1  you do any kind of trademark searching to see if that
2  term was available for you to use as a label?
3     A   I'm not familiar with whether I did or not.
4     Q   As you sit here today, do you recall ever
5  asking someone, a lawyer or someone, to look into whether
6  you could call that label Apple Jazz Records?
7     A   When I applied for a business account at the
8  bank, I had to have done some research, at least through
9  the County, Orange County here.  But I didn't do any
10  serious research about it.
11    Q   Sure.  Because there's a difference between
12  kind of a business filing, and actually having a name
13  available from a business filing standpoint --
14    A   Um-hum.
15    Q   -- and having a name available from a
16  trademark perspective.  Is that a distinction that you're
17  familiar with?
18    A   It is now.
19    Q   Was it at the time, in the mid '90s?
20    A   No, because I thought that having registered
21  Apple Jazz, that that would have covered it.
22    Q   You thought from a business filing standpoint,
23  having registered the name?
24    A   Yes, sir.
25    Q   Am I correct in understanding, too, that you

Page 46

1  didn't set it up as a separate entity, it was kind of a
2  fictitious name?  Or did you -- is it your understanding
3  that Apple Jazz at that point, in the mid '90s, was a
4  separate entity, was a company of some sort?
5     A   I didn't think it was a company.  I thought it
6  was a brand.
7     Q   Okay.
8     A   Apple Jazz is a brand.
9     Q   I see.  And so, it was a brand that you owned
10  personally?
11    A   Yes.
12    Q   Did you ever have insurance for any of the
13  festivals or events?
14    A   Only when I've put a tent outside the --
15  because the event was always in a County building, and
16  they said I didn't need insurance.  But when I said I
17  wanted to put up a tent, then they said:  Oh, well, you
18  know, if somebody drives their truck into your tent
19  during your concert, we're not -- the County is not
20  responsible.  You need insurance.  So I would get
21  insurance for the event when it was in the tent,
22  basically.
23    Q   I see.  So in the mid '90s, then you decide to
24  launch Apple Jazz Records.  And that was owned by you at
25  all times.  To this day, you're the owner of Apple Jazz

Page 47

1  Records?
2     A   Yes.
3     Q   And to this day, you consider yourself the
4  sole owner of that?
5     A   Yes.
6     Q   So that's personally your business?
7     A   Yes.
8     Q   Okay.  There's no corporate entity or limited
9  liability partnership or other partnership associated
10  with that business?
11    A   No, it's a sole proprietor.
12    Q   Okay.  And what prompted you to start that
13  business?
14    A   I wanted to issue recordings of my work.  And
15  not just the Apple Jazz Band, but myself as a solo
16  artist.  Before I did that, I tried to get some of my
17  recordings distributed by established labels.  And that's
18  not an easy thing to do.  So I said:  Well, I will do
19  this myself.
20    Q   I see.  Okay.  And did I see a reference that
21  you -- you were associated -- I'm sure you were
22  associated with multiple labels.  A label comes to mind
23  that begins with an "A," like Arbor Records?
24    A   Arbors.
25    Q   Arbors?

Page 48

1     A   Yes.
2     Q   Could you spell that for the record?
3     A   A-R-B-O-R-S.
4     Q   Okay.  And so, you were in an agreement with
5  Arbors Record for a while?
6     A   I've done independent work as a producer for
7  Arbors Records.  I was also a consultant to Arbors
8  Records when the owner, Matt Donber, D-O-N-B-E-R, when he
9  passed away, they needed -- the accountants and the
10  attorneys needed to assess the value of Arbors Records.
11       And their attorneys told the widow:  You need
12  to find somebody that has a small label like yours that
13  could come in and tell you what the value of your assets
14  are.
15    Q   I see.
16    A   So I was hired by them to spend several weeks
17  assessing everything in their vaults, and inventory, and
18  so on so that they could establish the value of the
19  company.
20    Q   Sure.  And what period of time was that?
21    A   It was -- I don't know.  May six years ago.
22  Five or six years ago.
23    Q   Okay.  And when did your relationship with
24  Arbors Records begin?
25    A   It began in 1992.

**Page 45..48**

**Charlie Bertini**                                    **Bertini vs. Apple Inc.**

Page 113

1  suggest that that website was created about '88, '89.  Is
2  that generally consistent with your understanding?
3     A    I -- I agree with that.
4     Q    Do you have any recollection of what prompted
5  you to get that website at that point in time?
6     A    Most artists, businesses, labels, any
7  businesses were developing website to have better
8  communication with the rest of the world, basically.
9     Q    And have you heard the term "website traffic"
10 before?
11    A    Yes.
12    Q    And do you have a sense of what that means?
13    A    Not really.
14    Q    Do you understand that it includes a number of
15 users with access to that site over a given period of
16 time?
17    A    Yes.
18    Q    And do you have an understanding of what the
19 website traffic would be on your site in the last couple
20 of years?
21    A    I don't have that information.  I imagine the
22 host of that site would be able to answer that.
23    Q    Sure.  Sure.  And who is the host of that
24 site?
25    A    It's Host Monster now.

Page 114

1     Q    Okay.  And so, that's -- website traffic is
2  not something that you've tracked over time in any way?
3     A    No.
4     Q    And in terms of how consumers get Apple Jazz
5  Record recordings, is that currently -- well, tell me
6  how.  What manner, and speaking now, do consumers if they
7  want to actually acquire music on the Apple Jazz Records
8  label, how do they go about getting that music?
9     A    They can purchase physical product.  They can
10 purchase down -- digital downloads, and they can stream
11 through whatever streaming service they have.
12    Q    Okay.  So you're on the major streaming sites?
13    A    Many -- many of my artists and projects.  Not
14 all of them.  The old ones aren't, but the new ones are.
15    Q    Okay.  So, you have relationships with music
16 streaming sites, including Apple Music; is that correct?
17    A    Yes.
18    Q    And is your music available on iTunes?
19    A    Yes, sir.
20    Q    Okay.  And since when has that music been
21 available on iTunes?
22    A    Quite a while.  The documents are -- have been
23 given to you in the discovery process, so --
24    Q    But you don't have any recollection of when
25 you moved into iTunes?

Page 115

1     A    Into digital distribution, no, I don't recall.
2     Q    Is your music available through Amazon's music
3  service?
4     A    Yes, sir.
5     Q    Okay.  And is it available through Spotify?
6     A    Yes, sir.
7     Q    And do you recall when you started kind of
8  moving into the streaming space with Apple Jazz Records
9  music?
10    A    You mean a year?
11    Q    Generally.
12    A    No.  I can find out.
13    Q    Okay.
14    A    But I think those documents have been provided
15 as well.
16    Q    So, am I correct in understanding that when
17 digital downloads were a valid form of distribution of
18 music, you participated in that market?
19    A    Yes.
20    Q    And then when the market moved to streaming,
21 you participated in streaming as well?
22    A    Yes.
23    Q    Am I correct in assuming that your music is
24 both available -- when I say, "your music," I mean Apple
25 Jazz Records.  That music is available both currently for

Page 116

1  digital download, as well as streaming?
2     A    Yes.
3     Q    Have you or your label ever been involved in
4  any litigation?
5     A    No.
6     Q    Never had a suit filed against it in any way?
7     A    No.
8     Q    Or you?
9     A    No.
10    Q    Okay.  And I may have missed it, you have a
11 YouTube page?
12    A    A YouTube channel, yes.
13    Q    A YouTube channel?
14    A    Um-hum.
15    Q    And how long have you had that channel?
16    A    Again, I would have to look.
17    Q    And what sort of content do you post on the
18 YouTube channel?
19    A    It's mostly live performances of the Apple
20 Jazz artists, and the Apple Jazz Band.
21    Q    And do you have any sense how many views those
22 videos have gotten over time?  Do you track that
23 anywhere?
24    A    I could, but I haven't.
25    Q    You haven't.

*Charlie Bertini and Friends* —    Cortland Std 6/5/85

# Dixieland Concert Set for June 13

Cortland area residents will have an opportunity to hear dixieland jazz the way it's played in New Orleans, according to Charles Brtini who is returning to Cortland on June 13 for a concert.

Bertini, who developed his musical skills in Cortland school systems in the '80s, is a freelance musician who performs in Florida.

"Last year we gave a performance at the Sirloin Saloon and according to the feedback we got, it was so well received that we decided to do it again," said Bertini.

"I was lucky enough to have the same musicians returning this year," continued Bertini, "and I think they are collectively just about the best there is."

Dave Hanlon, drummer, toured with Louie Belsen on clinics and

concerts on the West Coast, He has performed frequently in the Syracuse area and is currently the leader of Cook Book.

Pianist Larry Arlotta played with the U.S. Navy band and was the White House Pianist for President Lyndon Johnson. He also toured with Melba Moore and played for Maynard Ferguson.

Dick Chave, trombonist, was with Bertini when he was bandmaster of the Clyde Beatty Cole Brothers Circus. He left to spend two years playing on Bourbon Street in New Orleans.

Dave Gannett, bass player, has performed with the Boston "Pops" and Boston Symphony orchestras. He also has played for the Ringling Brothers Barnum and Bailey Circus, Disneyworld and Rose

O'Grady's in Orlando.

John Kane on reeds, Otisco Valley resident and a teacher, "is the best in the area in my book," according to Bertini.

Bertini, who also has a significant background, started his career at 16, playing during the summer for Charlie Spivak. After a tour as first trumpet for the Clyde Beatty Cole Brothers Circus, he left to form his own concert band for the bicentennial celebrations. He later rejoined the circus as bandmaster for three years. Bertini then settled in Orlando, Fla. where he has performed in all the theme parks.

Following his concert in Cortland on June 13, he will be on an extended engagement at Epcot Center giving daily dixieland jazz concerts.

# APPLE JAZZ '85

## FEATURING

# CHARLIE BERTINI

## *THE HOTTEST TRUMPET EAST OF SAN FRANCISCO*

## IN A

# *DIXIELAND JAZZ CONCERT*

**HOLIDAY INN**  ADMISSION $7.50    **JUNE 13**  **8-12 P.M.**

Tickets available from — Holiday Inn, Lido Restaurant, Four Flags, Sirloin Saloon, Johnny's Drive In, John Morgan, John Tucci & Joe Healey.

EXHIBIT

1

Bertini

## EXHIBIT 1



# music noun, often attributive

🔊 Save Word

mu·sic \ \ ˈmyü-zik 🔊 \

## Definition of *music*

**1** **a** : the science or art of ordering tones or sounds in succession, in combination, and in temporal relationships to produce a composition having unity and continuity

  **b** : vocal, instrumental, or mechanical sounds having rhythm, melody, or harmony
// choral *music*
// piano *music*
// recorded *music*

**2** **a** : an agreeable sound : EUPHONY
// her voice was *music* to my ears
// the *music* of a nightingale

  **b** : musical quality
// the *music* of verse
// the *music* of lovingly orchestrated words
— *Saturday Review*

**3** : a musical accompaniment
// a play set to *music*

**4** : the score (see SCORE entry 1 sense 6a) of a musical composition set down on paper
// leafing through the *music*

**5** : a distinctive type or category of music
// there is a *music* for everybody
— Eric Salzman
// rock *music*
// jazz *music*
// classical *music*

## Examples of *music* in a Sentence

// This is one of my favorite pieces of *music*.
// performing *music* in front of an audience

[See More ⊕]

## Recent Examples on the Web

// McBath's 17-year old son, Jordan Davis, was shot and killed in 2012 by a stranger at a Florida convenience store who said the teenager's *music* was too loud.
— Emily Shapiro, *ABC News*, "Rep. Lucy McBath writes emotional birthday letter to son who died by gun violence," 17 Feb. 2020

// The *music* the chorus performs also varies greatly, Ortolano said.
— *cleveland*, "Rocky River Community Chorus looking for a leader," 17 Feb. 2020

These example sentences are selected automatically from various online news sources to reflect current usage of the word 'music.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors. Send us feedback.

[See More ⊕]

## First Known Use of *music*

13th century, in the meaning defined at sense 1a

## History and Etymology for *music*

Middle English *musik*, from Anglo-French *musike*, from Latin *musica*, from Greek *mousikē* any art presided over by the Muses, especially music, from feminine of *mousikos* of the Muses, from *Mousa* Muse

Disney+
Your Favorite Heroes

WORD OF THE DAY
numismatic 🔊
See Definitions and Examples ›
Get Word of the Day daily email!
Your email address    SUBSCRIBE

TEST YOUR VOCABULARY
More Confusing Words—Quiz
The map plan _____ moved the selected card to the top of the deck.
discretely    discreetly

Can you spell these 10 commonly misspelled words?
TAKE THE QUIZ »

Test Your Knowledge - and learn some interesting things along the way.
TAKE THE QUIZ »

IN THE WAKE OF THE EARTHQUAKE IN NEPAL
MONETARY DONATIONS HELP THE MOST

Document title: Music | Definition of Music by Merriam-Webster
Capture URL: https://www.merriam-webster.com/dictionary/music
Capture timestamp (UTC): Fri, 21 Feb 2020 17:22:24 GMT
Page 1 of 4



Document title: Music | Definition of Music by Merriam-Webster
Capture URL: https://www.merriam-webster.com/dictionary/music
Capture timestamp (UTC): Fri, 21 Feb 2020 17:22:24 GMT

Appx03495

Page 2 of 4

Page 220 of 2105

| GAMES | BROWSE THESAURUS | WORD OF THE DAY | WORDS AT PLAY | | LOG IN | REGISTER | SAVED WORDS |

Merriam-Webster SINCE 1828

music

DICTIONARY    THESAURUS

## music noun

mu·sic | \ ˈmyü-zik 🔊 \

**Kids Definition of** *music*

1 : an arrangement of sounds having melody, rhythm and usually harmony
// classical *music*

2 : the art of producing pleasing or expressive combinations of tones especially with melody, rhythm, and usually harmony
// I want to study *music* in college.

3 : a musical composition set down on paper
// Bring your *music*.

4 : a pleasing sound
// Your voice is *music* to my ears.

**More from Merriam-Webster on** *music*

Spanish Central: Translation of *music*

Nglish: Translation of *music* for Spanish Speakers

Britannica English: Translation of *music* for Arabic Speakers

Britannica.com: Encyclopedia article about *music*

**Comments on** *music*

What made you want to look up *music*? Please tell us where you read or heard it (including the quote, if possible).

Show Comments ⊕

### Love words? Need even more definitions?

Subscribe to America's largest dictionary and get thousands more definitions and advanced search—ad free!

MERRIAM-WEBSTER UNABRIDGED



WORDS AT PLAY

Words We're Watching: 'Plant-based'
100% real, accept no substitutes

8 Words to Describe the Cold
Maybe obscure words will warm you up.

What Is a 'Bleeding Heart'?
From the blood sport of politics

On Your Mark: 7 Words and Phrases from the Racing World
Know these and take the checkered flag.

ASK THE EDITORS

2019 Word of the Year: Behind the Scenes
How we chose 'they'

Is It 'Hanger' or 'Hangar'?
How to remember which is which

Literally
How to use a word that (literally) drives some people

Is Singular 'They' a Better Choice?
The awkward case of 'his or

LEARN MORE FROM M-W
PUKU
Help your kids ace their vocab tests!

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA1037688** |
| Filing date: | **02/21/2020** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Defendant<br>Apple Inc. |
| Correspondence<br>Address | JOSEPH PETERSEN<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>1080 MARSH ROAD<br>MENLO PARK, CA 94025<br>UNITED STATES<br>JPetersen@kilpatricktownsend.com, JGonder@kilpatricktownsend.com, Agarcia@kilpatricktownsend.com, tmadmin@kilpatricktownsend.com<br>650-326-2400 |
| Submission | Testimony For Defendant |
| Filer's Name | Joseph Petersen |
| Filer's email | JPetersen@kilpatricktownsend.com, JGonder@kilpatricktownsend.com, Agarcia@kilpatricktownsend.com, tmadmin@kilpatricktownsend.com |
| Signature | /Joseph Petersen/ |
| Date | 02/21/2020 |
| Attachments | 2020.02.21 La Perle Declaration - Bertini Opposition (Public).pdf(937424 bytes )<br>Exhibit 1.pdf(2686493 bytes )<br>Exhibit 2.pdf(2300313 bytes )<br>Exhibit 3.pdf(4014823 bytes )<br>Exhibit 4.pdf(2086157 bytes )<br>Exhibit 5.pdf(2505195 bytes )<br>Exhibit 6.pdf(2656610 bytes )<br>Exhibits 7 - 20.pdf(5146951 bytes )<br>Exhibits 21 - 27.pdf(3190282 bytes ) |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| CHARLES BERTINI,<br><br>　　　　　　　Opposer,<br><br>　　V.<br><br>APPLE INC.<br><br>　　　　　　　Applicant. | Opposition No. 91229891<br><br><br><br>Mark: APPLE MUSIC<br><br><br>(Ser. No. 86/659,444) |

## **DECLARATION OF THOMAS R. LA PERLE, ESQ.,**

## **ON BEHALF OF APPLICANT APPLE INC.**

## I.     INTRODUCTION

1.      My name is Thomas R. La Perle. I am a Senior Director in the Legal Department of Apple Inc. (formerly Apple Computer, Inc.), which is headquartered at One Apple Park Way, Cupertino, California, 95014. I make this declaration in support of Apple Inc.'s trial testimony.

2.      I have been employed by Apple Inc. ("Apple" or the "Company") continuously since September 1999, when I joined as Trademark Counsel.

3.      I manage Apple's Trademark & Copyright Group. My responsibilities include, but are by no means limited to, the global prosecution and protection of trademarks that contain:

- In whole or in part the word APPLE (*i.e.*, APPLE word marks); and

- Equivalents of the word as a logo depicting a stylized apple (collectively, the "Apple Logo"), a black and white version of which is shown below.



4.      The APPLE word marks and the Apple Logo (collectively, the "Apple Marks") — which are phonetically and conceptually identical — are among the most famous and widely-recognized in the world. As explained below, Apple's family of Apple Marks is of enormous value to, and an integral part of, Apple's business.

5.      Because of my legal background and considerable experience working at Apple, I am very familiar with the Company's operations, including its intellectual property and wide array of innovative products and services.

1

6.      I make this Declaration from information I believe is true. Unless otherwise stated, this information is from records maintained in the ordinary course of business by Apple or based on my own knowledge and experience.

## II.    COMPANY BACKGROUND

7.      Apple is one of the most renowned technology companies in the world. Over its more than 40-year history, Apple has earned a reputation for developing innovative, consumer-focused technologies and services. Indeed, even at the Company's inception, Apple delivered transformative offerings, beginning with products that ignited the personal computer revolution. Since then, Apple has dramatically expanded its array of products and services, which have transformed many fields and revolutionized the music industry.

8.      Apple designs, manufactures, markets and sells mobile communication and media devices and personal computers, and sells a variety of related software, services, accessories, networking solutions and third-party digital content, and software applications. Apple's products and services include such revolutionary technologies as its iPhone, iPad, iPod, Mac, and Apple Watch branded products, the iOS, macOS, watchOS and tvOS operating systems, and accessory, support, mobile payment, and educational offerings.

9.      Since at least 1977, Apple has extensively used its famous Apple Marks in connection with promoting, marketing, advertising, distributing, and selling its goods and services. The Apple Marks are always prominently displayed on Apple's products and/or on Apple's packaging. Further, Apple uses its Apple Marks in connection with all or nearly all of Apple's services and advertisements, and prominently displays these marks at the Company's brick-and-mortar retail stores.

2

### III.    APPLE'S FAMOUS APPLE MARKS

10.    As a result of Apple's extensive advertising and use of the Apple Marks in connection with Apple's goods and services, the Apple Marks have acquired tremendous goodwill and have come to be immediately identified with Apple as the source of goods and services bearing these trademarks. The Apple Marks have become demonstrably famous and are among the most valuable names and marks in the world.

11.    For example, in May 2019, *Forbes* magazine ranked the APPLE brand as the world's most valuable brand for the ninth year in a row, with an estimated valuation of $206 billion.[1]

12.    Additionally, Interbrand's annual "Best Global Brands" rankings: (1) recognize that the APPLE brand's value is increasing each year; and (2) consistently place APPLE among the top 20 brands. After ranking the APPLE brand second in 2012, Interbrand recognized the Company's brand as the most valuable brand in the world the following year. Since then, the APPLE brand has maintained that top position within Interbrand's rankings every year since (2013-2019).[2] Interbrand has awarded the APPLE brand the following rankings and brand valuations over the past 10 years:

(a)    2019: valuing the APPLE brand as the most valuable brand in the world, with an estimated worth of U.S. $234.24 billion;

(b)    2018: valuing the APPLE brand as the most valuable brand in the world, with an estimated worth of U.S. $214.48 billion;

---

[1] Attached as **Exhibit 1** are true and correct copies of *Forbes* articles regarding its lists of the most valuable brands from 2011-2019, obtained at my direction from www.forbes.com on February 19, 2020.
[2] Attached as **Exhibit   2** are true and correct copies of relevant pages of Interbrand's "Best Global Brands" rankings from 2019 through 2010, arranged in reverse chronological order, and obtained at my direction from www.interbrand.com/best-brands/ on February 19, 2020.

3

(c)     2017: valuing the APPLE brand as the most valuable brand in the world, with an estimated worth of U.S. $184.15 billion;

(d)     2016: valuing the APPLE brand as the most valuable brand in the world, with an estimated worth of U.S. $178.12 billion;

(e)     2015: valuing the APPLE brand as the most valuable brand in the world, with an estimated worth of U.S. $170.28 billion;

(f)     2014: valuing the APPLE brand as the most valuable brand in the world, with an estimated worth of U.S. $118.86 billion;

(g)     2013: valuing the APPLE brand as the most valuable brand in the world, with an estimated worth of U.S. $98.32 billion;

(h)     2012: valuing the APPLE brand as the 2nd most valuable brand in the world, with an estimated worth of U.S. $76.57 billion;

(i)     2011: valuing the APPLE brand as the 8th most valuable brand in the world, with an estimated worth of U.S. $33.49 billion; and

(j)     2010: valuing the APPLE brand as the 17th most valuable brand in the world, with an estimated worth of U.S. $21.14 billion.

13.    Similarly, in 2019, leading market research and brand valuation company Millward Brown Optimor ("MBO") named APPLE as the most valuable brand in the United States in its "Brandz™ Top 100 Most Valuable U.S. Brands" annual rankings. In 2018, the inaugural year of

4

MBO's U.S. rankings, MBO named the APPLE brand the second most valuable brand in the United States.[3]

14.    Further, over the past 12 years, MBO has named APPLE one of the world's top brands in its "Brandz™ Top 100 Most Valuable Global Brands" annual rankings ("Brandz™ Global Rankings") and like Interbrand, has recognized that the APPLE brand is increasing in value each year. From 2016-2019, Brandz™ Global Rankings listed APPLE as the second most valuable brand in the world, valuing it at $228.46, $234.67, $300.6, and $309.5 billion, respectively. In 2015, MBO named Apple the world's most valuable brand, a rank it also held in 2011, 2012, and 2013. The APPLE brand was also ranked second in 2014, third in 2010, sixth in 2009, and seventh in 2008.[4]

15.    According to a study conducted by Promotique by Vistaprint in 2020, the Apple Logo is the most recognizable logo in the United States.[5]

16.    Apple also has been widely recognized as an extremely valuable, innovative, and admired company. Each year since 2006, *Fortune Magazine* has prominently featured Apple in its published list of "Most Admired Companies." For 12 years in a row from 2009 to 2020, Apple has been named the "World's Most Admired Company" for the year. Before 2009, *Fortune Magazine*'s list was limited to "America's Most Admired Companies," and Apple also topped that list in 2008.[6]

---

[3] Attached as **Exhibit 3** are true and correct copies of MBO's "Brandz™ Top 100 Most Valuable U.S. Brands" from 2019 and 2018, obtained at my direction from https:www.brandz.com/US on February 21, 2020.

[4] Attached as **Exhibit 4** are true and correct copies of relevant pages from MBO's rankings, arranged in reverse chronological order from 2019 through 2008, obtained at my direction from https://www.interbrand.com/best-brands/best-global-brands on February 21, 2020.

[5] Attached as **Exhibit 5** is true and correct copy of an article reporting on Promotique by Vistaprint's survey results, obtained at my direction from https://www.promotique.com/blog/wp-content/uploads/2020/01/most-iconic-logos.jpg?xnav_Blog_Post_968_download_the_full_infographic_here on February 14, 2020.

[6] Attached as **Exhibit 6** are true and correct copies of printouts of relevant pages of *Fortune Magazine*'s "Most Admired Companies" rankings in reverse chronological order from 2020 through 2008, obtained at my direction from www.fortune.com/worlds-most    -admired-companies;    https://archive.fortune.com/magazines/fortune/most-admired/;

## IV.   APPLE'S APPLE MUSIC SERVICES

17.   Apple revolutionized, and continues to set trends in, personal computing. The Company's pioneering activities, however, extend far beyond computing, particularly in the field of music, entertainment, and digital content distribution.

18.   Although Apple long ago made the APPLE brand synonymous with digital media services through its launch of innovative products, including but not limited to the revolutionary iPod player and iTunes Music services described more fully below, it has continued to transform the industry with its introduction of its groundbreaking products and services, like Apple Music.

19.   On June 8, 2015, the Company unveiled Apple Music, a watershed development in entertainment distribution for content providers and consumers alike.[7] Apple Music provides consumers with a personal "jukebox" of music purchased from Apple, with music and entertainment offerings including a subscription-based music streaming service that provides access to Apple's catalog, which had over 30 million songs at launch and now has 60 million songs, along with an abundance of playlists programmed by world class music experts.

20.   With the launch of Apple Music, the Company also redesigned radio by providing users with stations created by some of the world's most talented DJs, ranging in genres from indie rock to classical and folk to funk, with each one expertly curated. The Company's Apple Music

---

https://archive.fortune.com/magazines/fortune/most-admired/2012/full_list/;
https://archive.fortune.com/magazines/fortune/mostadmired/2011/snapshots/670.html;
https://archive.fortune.com/magazines/fortune/mostadmired/2010/snapshots/670.html;
https://archive.fortune.com/magazines/fortune/mostadmired/2009/snapshots/670.html;                and
https://archive.fortune.com/magazines/fortune/mostadmired/2008/index.html on February 20, 2020 and February 21, 2020.

[7] Attached as **Exhibit 7** is a copy of Apple's June 8, 2015 press release, "Introducing Apple Music — All the Ways You Love Music. All in One Place," which discusses the launch of Apple Music and was obtained at my direction from https://www.apple.com/newsroom/2015/06/08Introducing-Apple-Music-All-The-Ways-You-Love-Music-All-in-One-Place-/ on February 7, 2020.

service broadcasts radio content 24 hours a day and allows users to skip as many songs as they like. Apple also partners with music luminaries, such as Drake, Frank Ocean, Taylor Swift, and Katy Perry, to provide dedicated fans exclusive and early release materials through its radio station.

21.    Furthermore, Apple Music delivers a host of additional unique content. For example, Apple Music publishes and distributes to listeners regularly-updated, personalized content recommendations generated from the Company's international team of music experts as well as through analyses of user listening behaviors.

22.    Apple Music also offers an invaluable way for artists to connect with fans. Through Apple Music, artists can share lyrics, backstage photos, videos, or even release their latest songs directly to fans.

23.    Today, Apple provides its "on the go" customers content from entire digital libraries. With the rise of cloud-based hosting, downloading, and streaming services, these consumers need not even worry about syncing their music players with their computers. Apple has spearheaded these innovations, developing new content distribution platforms and user-friendly, personalized services, all of which are offered under and in connection with the APPLE brand.

24.    Below is a screenshot of an Apple Music advertisement that was displayed on Apple's website at https://www.apple.com/apple-music/plans/, and was obtained at my direction on January 2, 2018, a true and correct copy of which is attached as **Exhibit 8.**



**Appx07892**

40 million songs, plus your entire iTunes library
Listen offline
Ad-free music
Download 100,000 songs to your library
Access across your devices
See what your friends are listening to
Original shows, concerts, and exclusives
Beats 1 radio
Free trial with no commitment

## Family

Everything from the individual plan
Access for up to six people
A personal account for each family member
Sharing what you want, when you want — or not at all
Sharing of iTunes purchases

## Available everywhere

9





25.    The Company's Apple Music service has enjoyed tremendous commercial success. Since 2015, Apple has welcomed tens of millions of subscribers to its Apple Music service in 115 countries.

26.    In connection with its Apple Music services, the Company also regularly partners with musicians to produce and sponsor musical tours, which feature an assortment of live performances spanning many genres.

10

27.    In 2015, Apple held the first Apple Music Festival, a multi-day event in the U.K. with live performances from the biggest names in music, including Pharrell Williams, One Direction, and Florence + The Machine.[8] Performances were streamed live and available to view afterwards in the U.S. on the Company's Apple Music service. The Apple Music Festival was such a success that it was held again in 2016, featuring headliners such as Elton John, Alicia Keys, Brittany Spears, Calvin Harris, and Michael Bublé.

28.    In 2019, Apple produced its Apple Music Up Next Live program, a series of intimate performances from artists, including Khalid, Lewis Capaldi, and Ashley McBryde.[9]

29.    At all relevant times, Apple has used the APPLE word mark in association with Apple's Apple Music services in a manner that strongly associates the extraordinary famous APPLE word mark with the Company's Apple Music services. Indeed, the dominant component of the APPLE MUSIC mark is, of course, APPLE. The MUSIC element, in this context, is not distinct.

## V.    APPLE'S LONGSTANDING USE OF THE APPLE MARK IN CONNECTION WITH CLASS 41 SERVICES, INCLUDING MUSIC- AND ENTERTAINMENT-RELATED SERVICES

30.    The Company's Apple Music services are a continuation of Apple's longstanding use of the APPLE word mark in connection with services that fall within International Class 41, as well as Apple's intertwined history and offerings in the music and entertainment fields.

---

[8] Attached as **Exhibit 9** is a true and correct copy of Apple's August 18, 2015 press release announcing the Apple Music Festival, obtained from Apple's website https://www.apple.com/newsroom/2015/08/18Apple-Music-Festival-Brings-Incredible-Live-Performances-to-Fans-Worldwide-in-September/ at my direction on February 20, 2020.

[9] Attached as **Exhibit 10** is a true and correct copy of Apple's July 1, 2019 press release announcing the Apple Music Up Next Live series event, obtained from Apple's website https://www.apple.com/newsroom/2019/07/apple-music-brings-up-next-live-to-global-cities-this-summer/ at my direction on February 14, 2020.

**Apple's Educational Services**

31.    Since at least 1981, Apple has offered training courses and workshops to educate consumers on the use and operation of computers, software, information technology, and consumer electronics. Through these hands-on educational programs taught by experts, consumers can extend their knowledge—whether it's learning basic or more advanced skills.

32.    Apple has continued to offer educational courses throughout nearly all of the Company's more than 40-year history of delivering transformative products.

**Apple's Integration of MIDI and Audio-Recording to Computers**

33.    Starting in the late 1980s, Apple jumpstarted the integration of music and technology by introducing Apple branded computers featuring Musical Digital Interface ("MIDI") card and audio-recording capabilities. This functionality enabled a simple, reliable way to allow communication between Apple's computer devices and musical instruments and ushered in the digital age of music recording and playback.

34.    Since the 1980s, Apple has used the APPLE mark in connection with its computers' and mobile devices' audio player and audio-recording functionalities.

**Apple's QuickTime Player**

35.    In 1991, Apple launched QuickTime, a computer program designed to facilitate the creation and distribution of combined video, graphics, and sound.[10] The Company's QuickTime software pioneered the distribution of multimedia content and enabled users to efficiently playback audio and video formats.

---

[10] Attached as **Exhibit 11** is a true and correct copy of an advertisement for the QuickTime player that the Company released in 1990s.

12

36.    In 1999, Apple started offering users streamed content, i.e., content played on a user's computer as it is delivered, as opposed to being stored on the computer and played later. Such content—which was played on a user's computer through Apple's QuickTime player—included independent-label music and short films. By April 2000, Apple's QuickTime software was downloaded over 32 million times and offered users over 40 premium channels of music, video and news from leading content providers.[11]

37.    At all relevant times, the Company used the APPLE mark in connection with its QuickTime software.

**Apple's iTunes Store Services**

38.    Prior to its launch of Apple Music services, the Company revolutionized the music industry by introducing its pioneering iPod media player and iTunes suite of technologies and services. These goods and services transformed music by overcoming the limitations of earlier media technologies, sparking the digital media revolution, and popularizing online downloading and streaming services, which are now ubiquitous.

39.    On January 9, 2001, Apple announced iTunes, "the world's best and easiest to use 'jukebox' software, which let user create and manage their own music library, by enabling them to import songs from CDs, compress them into the MP3 format, store them on their computer's hard drive, and organize their music, using powerful searching, browsing, and play list features.[12]  iTunes

---

[11] Attached as **Exhibit 12** is a true and correct copy of an April 5, 2000 Apple press release, entitled "Apple's QuickTime 4 Downloads Top 32 Million and Ten New QTV Channels Premiere," which was obtained at my direction from      https://www.apple.com/newsroom/2000/04/05Apples-QuickTime-4-Downloads-Top-32-Million-and-Ten-New-QTV-Channels-Premiere/ on February 20, 2020.

[12] **Exhibit 13** is a true and correct copy a January 9, 2001 Apple press release, entitled "Apple Introduces iTunes — World's Best and Easiest To Use Jukebox Software," which discusses the introduction of Apple's iTunes software and

13

software also enabled users to burn their own audio CDs.  Apple enabled those music functions via iTunes is as a free download from apple.com.  When iTunes was announced, Steve Jobs, Apple's CEO, noted that Apple hoped it would "bring even more people into the digital music revolution."[13]

40.    On October 23, 2001, Apple released its iconic iPod portable media player, which allowed users to enjoy their digital libraries "on the go." Apple's first generation iPod featured a sleek, highly-compact 6.5 oz. "deck of cards" design that fit easily into one's pocket and held up to 1,000 CD-quality songs—representing a major advancement in portable music device design.[14] Apple's iPod player enjoyed tremendous success. By 2007, Apple had sold over 100 million iPods players—making the iPod player the fastest selling music player in history.[15]

41.    On April 28, 2003, Apple launched its iTunes Music Store (now called the iTunes Store) pioneered digital media services by publishing, and distributing online, an unrivaled and comprehensive catalog of music and audiobooks.[16] Upon its introduction, Apple's iTunes software seamlessly integrated with the iPod portable media player—allowing effortless downloading:  one could stick a CD into a computer and minutes later, Apple's software would load the CD's contents onto the iPod player.

---

was obtained at my direction from https://www.apple.com/newsroom/2001/01/09Apple-Introduces-iTunes-Worlds-Best-and-Easiest-To-Use-Jukebox-Software on February 20, 2020.
[13] *Id.*
[14] Attached as **Exhibit 14** is a true and correct copy an October 23, 2001 Apple press release, entitled "Apple Presents iPod," which discusses the introduction of Apple's iPod portable media player and was obtained at my direction from https://www.apple.com/newsroom/2001/10/23Apple-Presents-iPod/ on February 20, 2020.
[15] Attached as **Exhibit 15** is a true and correct copy of an April 9, 2007 Apple press release, entitled "100 Million iPods Sold," which was obtained at my direction from https://www.apple.com/newsroom/2007/04/09100-Million-iPods-Sold/ on February 20, 2020.
[16] Attached as **Exhibit 16** is a copy of Apple's April 28, 2003 press release, which discusses the launch of Apple's iTunes Store services and is entitled "Apple Launches the iTunes Music Store," which was obtained at my direction from https://www.apple.com/newsroom/2003/04/28Apple-Launches-the-iTunes-Music-Store/ on February 7, 2020.

14

42.    Apple has since expanded its publishing and distribution of digital media services beyond music and audiobooks to publish and deliver a wealth of content—including exclusive and/or original media—such as podcasts,[17] movies, and TV shows, as well as educational materials, books, and news.[18]

43.    Apple's iTunes Store has had unprecedented commercial success, making Apple the number one music provider in the world. Within the first week of launching, the Company's iTunes Music Store sold over one million songs.[19] By September 8, 2003—less than five months after the launch—users had purchased and downloaded over ten million songs from the iTunes Music Store.[20] On November 6, 2003, Apple announced that music fans had purchased and downloaded 1.5 million songs from iTunes Music Store *in the last week*.[21] By December 15, 2003, more than 25 million

---

[17] The term "podcasting" in fact itself derives from Apple's goods and services as it is a portmanteau of "iPod" and "broadcast."

[18] I understand that Opposer has referenced a Cloud Service License Agreement. It addresses only the license of musical compositions for a cloud service feature of Apple's iTunes Store, by which customers who have purchased or uploaded sound recordings embodying the musical compositions owned by the licensor may download and re-access such recordings on other devices. As such, the agreement referenced by Opposer has no bearing on consumer impressions of Opposer's alleged mark. Furthermore, I understand that any royalties that would have been generated from this agreement would have been very low. Since Apple Music launched in 2015, the usage of musical compositions owned or controlled by Opposer have generated *de minimis* royalties (i.e., ███████ as of February 21, 2020).

[19] Attached as **<u>Exhibit 17</u>** is a copy of a May 5, 2003 Apple press release entitled "iTunes Music Store Sells Over One Million Songs in First Week," which was obtained at my direction from https://www.apple.com/newsroom/2003/05/05iTunes-Music-Store-Sells-Over-One-Million-Songs-in-First-Week/ on February 20, 2020.

[20] Attached as **<u>Exhibit 18</u>** is a copy of a September 8, 2003 Apple press release entitled "iTunes Music Store Sells Ten Millionth Song," which was obtained at my direction from https://www.apple.com/newsroom/2003/09/08iTunes-Music-Store-Sells-Ten-Millionth-Song/ on February 20, 2020.

[21] Attached as **<u>Exhibit 19</u>** is a copy of a November 6, 2003 Apple press release entitled "iTunes Sells 1.5 Million Songs During Past Week; Five Times Napster's First Week Downloads," which was obtained at my direction from https://www.apple.com/newsroom/2003/11/06iTunes-Sells-1-5-Million-Songs-During-Past-Week-Five-Times-Napster-s-First-Week-Downloads/ on February 20, 2020.

songs were purchased and downloaded from Apple's iTunes Music Store since it had launched in April 2003.[22]

44.    By February 2013, Apple's iTunes Store services provided consumers with over 15,000 songs *per minute* and had set an aggregate sales record of 25 billion songs worldwide. By that time, Apple's iTunes Store was available in 119 countries and offered a collection of over 26 million songs while working with countless artists to publish content and connect them with their fans. [23]

45.    Given the meteoric commercial success borne out by the figures cited above, Apple's iTunes Store, together with Apple's iPod media player, long ago made the APPLE brand synonymous with digital media services.

**Apple's Acquisition of Apple Corps' Marks**

46.    Beginning in 1978, the Company was enmeshed in a series of trademark disputes with Apple Corps Limited ("Apple Corps"), the multimedia company founded by the members of the world-famous music group, The Beatles. Those disputes concerned Apple's use of the APPLE mark and Apple Logo on music-related goods and services.

---

[22] Attached as **Exhibit 20** is a copy of a December 15, 2003 Apple press release entitled "iTunes Music Store Downloads Top 25 Million Songs," which was obtained at my direction from https://www.apple.com/newsroom/2003/12/15iTunes-Music-Store-Downloads-Top-25-Million-Songs/ on February 20, 2020

[23] Attached as **Exhibit 21**  is a copy of a February 6, 2013 Apple press release entitled "iTunes Store Sets New Record with 25 Billion Songs Sold," which discusses Apple's iTunes Store services and was obtained at my direction from https://www.apple.com/newsroom/2013/02/06iTunes-Store-Sets-New-Record-with-25-Billion-Songs-Sold/ on February 7, 2020.

16

47. Ultimately, in 2007, Apple Corps and Apple settled their disputes once and for all by having Apple acquire Apple Corps' trademark rights dating back to 1968.[24]

48. Specifically, Apple acquired trademark rights of Apple Corps that "utilize or feature the word 'apple' in any form (or in similar forms, such as 'Zapple') and/or any symbols, designations, signs, logos, depictions or representations of an apple, in whole or in part."[25] All of the goodwill connected with Apple Corps' longstanding use of its marks in the U.S., including but not limited to the APPLE mark and apple design marks covered in U.S. Registration Nos. 2,034,964; 2,041,653; 2,036,537; and 3,200,354[26]; was assigned to Apple. In return, Apple granted Apple Corps a license to continue using the marks, and Apple Corps' use, along with the associated goodwill, inures to Apple's benefit.

49. I understand that Apple Corps' Chief Executive Officer, Jeffrey Vaughan Jones, is submitting a declaration accompanying my declaration, detailing the extraordinary amount of goodwill that Apple Corps has generated in the APPLE word mark and apple design marks through its use spanning over a half century.

50. As reflected in Mr. Jones's declaration, Apple Corps and/or its affiliates or licensees have extensively used the APPLE word mark since at least 1968 in connection with the production and distribution of sound recordings, films, and related production and distribution services. Mr.

---

[24] Attached hereto as **Exhibit 22** is a true and correct copy of a February 5, 2007 press release announcing its agreement with Apple Corps, titled "Apple Inc. and The Beatles' Apple Corps Ltd. Enter Into New Agreement," obtained at my direction from https://www.apple.com/newsroom/2007/02/05Apple-Inc-and-The-Beatles-Apple-Corps-Ltd-Enter-into-New-Agreement/ on February 14, 2020.

[25] Attached hereto as **Exhibit 23** is a true and correct copy of portions of Apple and Apple Corp's 2007 settlement agreement in which Apple Corps assigns certain trademark rights to Apple.

[26] Attached hereto as **Exhibit 24** are true and correct copies of the assignment documents reflecting the transfer of ownership of U.S. Trademark Registration Nos. 2,034,964; 2,041,653; 2,036,537; and 3,200,354 from Apple Corps to Apple.

Jones explains that Apple Corps and/or affiliates or licensees have produced and distributed some of the world's most iconic sound recordings under the APPLE word mark for renown artists, such as The Beatles, James Taylor, Mary Hopkin, and Billy Preston. Some of Apple Corps' recordings are the biggest-selling U.S. sound recordings in history, like The Beatles' *Abbey Road* and *White Album* with U.S. sales of 12 million units and 24 million unit, respectively. In his declaration, Mr. Jones confirms that many of Apple Corps' recordings continue to be distributed in significant quantities in the United States.

51.    Mr. Jones also testifies that in addition to producing and distributing sound recordings, starting in the 1960s, Apple Corp and/or its affiliate(s) have produced and distributed several films under the APPLE mark. Examples of these films include *Let It Be*, an Academy Award and Grammy Award winning documentary film about The Beatles, and the animated film *Yellow Submarine*, both of which have been featured in theaters and on television in the United States. According to Mr. Jones, most of these films continue to be sold now in DVD format under the APPLE word mark. To this day, Apple Corps continues to partner with directors to make new films under the APPLE word mark.

52.    All of the goodwill that Apple Corps acquired and continues to acquire in the APPLE word mark now accrues to Apple's rights in its world famous APPLE word mark.

**Apple's Live Music Performances**

53.    Apple's history, offerings, and brand have long been intertwined with music. As Apple's Chief Executive Officer Tim Cook remarked, "we [at Apple] love music . . . We've had a

18

long relationship with music at Apple and music has had a very rich history of change, some of which we [at Apple] played a part in."[27]

54.    Apple's long relationship with music extends to the production and promotion of live musical performances. Illustratively, in 1982 and 1983, Apple co-founder Steve Wozniak staged two "Unite Us in Song" festivals, which celebrated technology and music and featured, among other things, a hot-air balloon emblazoned with Apple's logo and luminaries like The Grateful Dead, The Ramones, and Fleetwood Mac.

55.    From 2007 to 2014, Apple held the iTunes Music Festival, an annual multi-day music festivals with live performance from over 550 artists in front of more than half of million fans and tens of millions more online and on-demand. Performers included Adele, Foo Fighters, Lady Gage, Katy Perry, and Maroon 5.

56.    As discussed above, in 2015 and 2016, Apple produced the Apple Music Festival and continued to provide music fans with a multi-day event of live performances from the most popular artists in the industry.

57.    In addition to the frequent festival live performances, the Company makes live performances a regular part of the Apple Store services—and indeed the Apple experience. Illustratively, when Apple announced in May 2016 the opening of a new Apple Store location in Union Square, San Francisco, its press release noted that the new Apple Store features a plaza that

---

[27]    Comments    by    Tim    Cook,    Keynote    Address,    Apple    WWDC    2015,    available    at https://podcasts.apple.com/us/podcast/apple-wwdc-2015-keynote-address/id275834665?i=1000430692668 (1:38:57).

19

where Apple would host a "regular weekend series of well-known local acoustic performances."[28] The 2016 announcement is consistent with Apple's longstanding service of producing live musical performances hosted at Apple Store venues.

58.    Furthermore, the Company is renowned for its annual Apple Worldwide Developers Conference ("WWDC"), which is so popular that tickets are allocated by lottery and cost approximatley $1,600. The WWDC, among other things, showcases new software and technologies for software developers and consistently delivers live musical performances from various well-known artists, such as Jack White and Khalid.

59.    In addition to Apple's live music performances at Apple's WWDC, Apple routinely hosts Apple Special Events for particularly important occasions, which also feature live musical concerts by various artists, such as U2, Elvis Costello, Bobby Short, Leon Bridges, Foster The People, Sia, Sara Bareilles, and countless others.

60.    Apple has used its APPLE mark in connection with its live performances. As a result, the APPLE mark has long been strongly associated with the production of live musical performances.

**Apple's Apple TV and Apple TV+ Services**

61.    Apple has long used its APPLE mark with its other media distribution services. One such distribution service is Apple TV, which premiered on January 9, 2007. Apple TV is a service and associated device that work together to distribute content (e.g., movies, television shows, music,

---

[28] Attached as **Exhibit 25** is a copy of Apple's May 19, 2016 press release discussing this store opening, entitled "Apple Union Square Highlights New Design Elements, Community Programs," which was obtained at my direction from https://www.apple.com/newsroom/2016/05/19Apple-Union-Square-Highlights-New-Design-Elements-Community-Programs/ on February 7, 2020.

podcasts, Internet radio, and lyrics) and premium content (e.g., live musical performance videos, interviews, interactive galleries, and deleted scenes) to consumers' televisions and other video displays.

62.    The content that Apple has distributed via Apple TV is sourced from diverse content providers, such as Disney, the BBC, Hulu, Netflix, HBO, Sky News, ESPN, *The Wall Street Journal*, Vimeo, and professional sports leagues. By 2013, the Apple TV service had been providing consumers with a catalog of over 60,000 movies and 230,000 TV episodes, and Apple was in fact delivering, daily, over 800,000 TV episodes and over 350,000 movies to consumers via Apple TV. Additionally, the Apple TV service offers sports fans a one-stop video destination providing access to popular sports including college football and basketball, Monday Night Football, MLB, NBA, major golf tournaments, and more. [29]

63.    Last year, Apple expanded its entertainment distribution services through its launch of Apple TV+ services, an original video subscription service featuring the world's most celebrated creative artists, including Oprah Winfrey, Steven Spielberg, Jennifer Anniston, and Reese Witherspoon.[30]

64.    Through its Apple TV+ service, Apple offers a powerful and inspiring lineup of new, exclusive shows, documentaries, and movies, including "The Morning Show"—a winner of a Screen Actors Guild Award and a nominee for multiple Golden Globes.

---

[29] Attached as **Exhibit 26** is a copy of Apple's June 19, 2013 press release discussing the content and services provided by Apple TV, entitled "HBO GO & WatchESPN Come to Apple TV," which was obtained at my direction from https://www.apple.com/newsroom/2013/06/19HBO-GO-WatchESPN-Come-to-Apple-TV/ on February 7, 2020.

[30] Attached as **Exhibit 27** is a copy of Apple's March 25, 2019 press release discussing the launch of the Company's Apple TV+ services, entitled "Apple unveils Apple TV+, the new home for the world's most creative storytellers," which was obtained at my direction from https://www.apple.com/newsroom/2019/03/apple-unveils-apple-tv-plus-the-new-home-for-the-worlds-most-creative-storytellers/ on February 14, 2020.

65. As part of its Apple TV and Apple TV+ service, the Company also provides entertainment information, reviews, and/or personalized recommendations based on users' viewing behaviors.

66. Through its Apple TV and Apple TV+ services, the Company publishes and delivers an additional wealth of materials, including those exclusive to and/or original to Apple. As a result, televisions have become a part of the array of devices on which consumers can seamlessly enjoy media content delivered by Apple, including movie reviews, podcasts, and webcasts.

67. At all relevant times, Apple has used the APPLE word mark in association with Apple's Apple TV and Apple TV services—further strengthening the association between the APPLE word mark and digital media distribution services.

## VI.    CONCLUSION

68. As the foregoing amply demonstrates, over the course of more than 50-years, Apple and/or its predecessor have consistently used the APPLE word mark in connection with music-related goods and Class 41 services, including in those in the music, entertainment, and digital content fields.

69. Through its introduction of innovative products and services, Apple has revolutionized the technology and music industries and created a globally recognized brand that has become synonymous with, among other things, music, entertainment, and digital content services.

22

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief, this 21st day of February, 2020.

Thomas R. La Perle

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In re Serial No. 86/659,444
Mark: APPLE MUSIC
Filed: June 11, 2015
Published in the *Official Gazette* on May 10, 2016

CHARLES BERTINI,

          Opposer,

    v.                                                      Opposition No. 91229891

APPLE INC.,

          Applicant.

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing DECLARATION OF THOMAS R. LA PERLE, ESQ. ON BEHALF OF APPLICANT APPLE INC., is being served on Opposer's Attorney of Record by electronic mail as follows:

JAMES BERTINI
423 KALAMATH STREET
DENVER, CO 80204
UNITED STATES
jamesbertini@yahoo.com
iklych@yahoo.com

Date: February 21, 2020

*/Kris Teilhaber/*
Kris Teilhaber

**EXHIBIT 1**



**Forbes** The World's Most Valuable Brands

2019 RANKING

# The World's Most Valuable Brands

## The List

| | Rank | Brand | Brand Value | 1-Yr Value Change | Brand Revenue | Company Advertising | Industry |
|---|---|---|---|---|---|---|---|
| | #1 | Apple | $205.5 B | 12% | $265.8 B | - | Technology |
| | #2 | Google | $167.7 B | 27% | $136.2 B | $6.4 B | Technology |
| | #3 | Microsoft | $125.3 B | 20% | $110.2 B | $1.6 B | Technology |
| | #4 | Amazon | $97 B | 37% | $211.4 B | $8.2 B | Technology |
| | #5 | Facebook | $88.9 B | -6% | $48.8 B | $1.1 B | Technology |
| | #6 | Coca-Cola | $59.2 B | 3% | $23.8 B | $4.1 B | Beverages |
| | #7 | Samsung | $53.1 B | 11% | $221.6 B | $3.6 B | Technology |
| | #8 | Disney | $52.2 B | 10% | $33.8 B | $2.8 B | Leisure |
| | #9 | Toyota | $44.6 B | 0% | $190.8 B | $4.6 B | Automotive |
| | #10 | McDonald's | $43.8 B | 6% | $96.1 B | $389 M | Restaurants |

**Craft your business your way.** Turn what you love into what you sell. Start free trial  shopify

| | #11 | AT&T | $41.3 B | -1% | $170.8 B | $3.1 B | Telecom |
| | #12 | Louis Vuitton | $39.3 B | 17% | $15.5 B | $6.5 B | Luxury |
| | #13 | Intel | $38.8 B | 14% | $70.8 B | $1.2 B | Technology |
| | | NIKE | | | | | |

Document title: The World's Most Valuable Brands List
Capture URL: https://www.forbes.com/powerful-brands/list/
Capture timestamp (UTC): Wed, 19 Feb 2020 19:33:09 GMT

Appx07910



**Forbes**   The World's Most Valuable Brands

2019 RANKING

| | | | | | |
|---|---|---|---|---|---|
| (intel) | #13 Intel | $38.8 B | 14% | $70.8 B | $1.2 B | Technology |
| | #14 NIKE | $36.8 B | 15% | $36.7 B | $3.6 B | Apparel |
| CISCO | #15 Cisco | $34.5 B | 7% | $49.3 B | $166 M | Technology |
| GE | #16 GE | $34.3 B | -8% | $98.8 B | -- | Diversified |
| Mercedes-Benz | #17 Mercedes-Benz | $33.2 B | -3% | $125.9 B | -- | Automotive |
| ORACLE | #18 Oracle | $32.2 B | 4% | $39.6 B | $138 M | Technology |
| verizon | #19 Verizon | $31.7 B | 1% | $130.9 B | $2.7 B | Telecom |
| IBM | #20 IBM | $31.5 B | -2% | $79.6 B | $1.5 B | Technology |

No monthly fees.    Square

| | | | | | |
|---|---|---|---|---|---|
| BMW | #21 BMW | $29.8 B | -5% | $91.5 B | -- | Automotive |
| SAP | #22 SAP | $28.7 B | 10% | $29.1 R | -- | Technology |
| Marlboro | #23 Marlboro | $28.5 B | 7% | $25.1 B | $933 M | Tobacco |
| Budweiser | #24 Budweiser | $27.2 B | 6% | $12 B | -- | Alcohol |
| VISA | #25 Visa | $26.9 B | 10% | $20.6 B | -- | Financial Services |
| Walmart | #26 Walmart | $26.3 B | 6% | $348.5 B | $3.5 B | Retail |
| AMERICAN EXPRESS | #27 American Express | $26 B | 13% | $43.3 B | -- | Financial Services |
| HONDA | #28 Honda | $23.8 B | 1% | $134.9 B | -- | Automotive |
| pepsi | #29 Pepsi | $18.8 B | 2% | $9.5 B | $2.6 B | Beverages |
| GUCCI | #30 Gucci | $18.6 B | 23% | $9.8 B | -- | Luxury |

## Inside Forbes

Document title: The World&#39;s Most Valuable Brands List
Capture URL: https://www.forbes.com/powerful-brands/list/
Capture timestamp (UTC): Wed, 19 Feb 2020 19:33:09 GMT

Appx07911

**Forbes**   The World's Most Valuable Brands                                2019 RANKING

| | | | | | | |
|---|---|---|---|---|---|---|
| | #26 Walmart | $26.3 B | 6% | $348.3 B | $3.3 B | Retail |
| | #27 American Express | $26 B | 13% | $43.3 B | - | Financial Services |
| | #28 Honda | $25.8 B | 1% | $131.9 B | - | Automotive |
| | #29 Pepsi | $18.8 B | 2% | $9.5 B | $2.6 B | Beverages |
| | #30 Gucci | $18.6 B | 24% | $9.8 B | - | Luxury |
| | #31 L'Oréal | $18.3 B | 8% | $10.9 B | $9.6 B | Consumer Packaged Goods |
| | #32 Home Depot | $18.1 B | 11% | $108.2 B | $921 M | Retail |
| | #33 Hermès | $18.1 B | 18% | $7 B | $352 M | Luxury |
| | #34 Nescafe | $17.9 B | 4% | $9.5 B | - | Beverages |
| | #35 Starbucks | $17 B | 5% | $24.7 B | $260 M | Restaurants |
| | #36 Accenture | $16.6 B | 12% | $42.5 B | $78 M | Business Services |
| | #37 Gillette | $16.6 B | -3% | $6.6 B | $7.1 B | Consumer Packaged Goods |
| | #38 Netflix | $15.5 B | 34% | $15.8 B | $1.8 B | Technology |
| | #39 IKEA | $15.3 B | 6% | $45.8 B | - | Retail |
| | #40 Frito-Lay | $14.7 B | 2% | $11.7 B | $2.6 B | Consumer Packaged Goods |

## Inside Forbes



The 10 Biggest Fintech Companies In America

PODCAST: Why Cristiano Ronaldo Is The World's Highest-Earning Athlete

2017 Grateful Grads Index: Top 200 Best-Loved Colleges



EDITORS' PICK | GREED Scenes | May 23, 2018, 09:15am

# The World's Most Valuable Brands 2018

**Kurt Badenhausen** *Forbes Staff*

*Sports/Money*

*I cover sports business with more than help to schools, local economies*

*Update: The latest version of the world's most valuable brands can be found here.*

The world's biggest tech companies have consolidated their power in recent years, driving huge profits and soaring market values. Apple (phones), Google (search), Microsoft (software), Facebook (social) and Amazon (retail) dominate their respective sectors thanks to winning products and services. But perhaps their most prized and valuable attribute: strong brand names.

(Photo by Tomohiro Ohsumi/Getty Images)

A robust brand helps drive demand and pricing power. The five tech brands above do it better than anyone else and are the five most valuable brands in the world by *Forbes*' count, worth a combined $586 billion, up 20% from last year.

Leading the pack as the world's most valuable brand for the eighth straight year is Apple, with a value of $182.8 billion, up 8%.

Today In: Consumer

Only Apple, thanks to its hard-core fan base, could get away with pricing a phone at $999 and proceed to sell 29 million of them in less than two months, as Apple did at the end of 2017, per Canalys research. Nearly one-quarter of those sales were in China, which hints at Apple's global reach. Despite some gloom-and-doom forecasts for China ahead of its earnings announcement this month, Apple announced 21% revenue growth for the quarter in the world's most populous country.

Samsung Electronics actually sold more phones than Apple during the fourth quarter of 2017, but Wall Street firm Canaccord Genuity estimated Apple captured 87% of smartphone industry profits, thanks to the introduction of the pricey iPhone X to its phone lineup. The profit disparity is reflected in their brand values, with the Apple brand worth four times as much as Samsung ($47.6 billion and ranked seventh overall).

*— SPONSORED —*

SEG Capital Plus BRANDVOICE
| Paid Program

Innovation Abounds In Indiana—Here's Why

Hirshhorn BRANDVOICE
| Paid Program

Are You Ready For The Collaborative Work Revolution?

SAP BRANDVOICE
| Paid Program

Quantum Technology 2020 Trends: These Are The Immediate Security Threats And Opportunities

Google ranks second overall among the top brands for the third straight year, with a value of $132.1 billion, up 30%. Apple has a 38% lead on the search brand in terms of value, but Google has closed the gap in recent years, as the difference was 121% three years ago.

Document title: The World&#39;s Most Valuable Brands 2018
Capture URL: https://www.forbes.com/sites/kurtbadenhausen/2018/05/23/the-worlds-most-valuable-brands-2018/#29d5fa3e610c
Capture timestamp (UTC): Wed, 19 Feb 2020 19:41:48 GMT

**Forbes**  Billionaires  Innovation  Leadership  Money  Business  Small Business  Lifestyle  Lists  Advisor  Featured  Breaking  More

Google ranks second overall among the top brands for the third straight year, with a value of $132.1 billion, up 30%. Apple has a 28% lead on the search brand in terms of value, but Google has closed the gap in recent years, as the difference was 121% three years ago.

Google's parent, Alphabet, dabbles in other sectors with smart-home technology, self-driving cars, aging research and more. But almost all of those "Other Bets" lose money. It is the search business that pays the bills, with operating profit margins 26% last year. Google is the ubiquitous term for search despite the best efforts of Yahoo, Baidu and Microsoft's Bing to cut into Google's 80%-plus global market share. It is Google with a lower case "g" that appears in the Oxford Dictionary as the term for search on the Internet.

The fellow tech brands that round out the top five most valuable brands all had big gains, including Microsoft ($104.8 billion, up 27%), Facebook ($94.8 billion, up 29%) and Amazon ($70.9 billion, up 31%).

Gallery: The World's Most Valuable Brands 2018

(View gallery) →

Amazon overtaking Coca-Cola was the only change in the top five this year. Coca-Cola's brand value inched up 2% to $57.3 billion, and it was the only non-tech brand in the top seven. Coca-Cola branded sales represented 45% of the company's total last year, with 13 billion cases sold. Changing drinking habits globally are impacting Coca-Cola, but brand remains uber-important in a sector where you are selling sugar and water. Coca-Cola continues to lead the pack.

Forbes evaluated more than 200 global brands to determine our final list of the 100 most valuable. Brands were required to have a presence in the U.S., which knocked out some big brands like China's Alibaba and Tencent. The top 100 includes product brands like Proctor & Gamble's Gillette, as well as brands marketed under their corporate name like American Express.

*Click here for the full list of The World's Most Valuable Brands*

*Forbes* valued the brands on three years of earnings and allocated a percentage of those earnings based on the role brands play in each industry (e.g., high for luxury goods and beverages, low for airlines and oil companies). We applied the average price-to-earnings multiple over the past three years to these earnings to arrive at the final brand value (click here for the complete methodology).

The 100 most valuable brands are worth a cumulative $2.15 trillion, up 10% from a year ago. They range from Apple at nearly $200 billion to No. 100 KFC at $7.4 billion. Credit climbing profits for the jump in values overall. Earnings before interest and taxes rose 14% on average for the 100 brands.



**Click Here For:**
- Logo Licensing
- Reprints
- Plaques/Awards

Tech brands are the most prevalent, representing 20% of the final list, including the top five. Financial services, led by Visa ($24.5 billion), had 13 brands make the cut, followed by autos with 12 brands. Toyota ($44.7 billion) ranked ninth overall and was the top auto brand.

Document title: The World&#39;s Most Valuable Brands 2018
Capture URL: https://www.forbes.com/sites/kurtbadenhausen/2018/05/23/the-worlds-most-valuable-brands-2018/#29d5fa3e610c
Capture timestamp (UTC): Wed, 19 Feb 2020 19:41:48 GMT

Appx07914



- Reprints
- Plaques/Awards

Tech brands are the most prevalent, representing 20% of the final list, including the top five. Financial services, led by Visa ($24.5 billion), had 13 brands make the cut, followed by autos with 12 brands. Toyota ($44.7 billion) ranked ninth overall and was the top auto brand.

The top 100 is a global list with brands from 16 different countries, but the U.S. dominates with 54 entries, down from 56 last year. Germany (12 brands), along with France and Japan (7 each) were the next best-represented countries.

Netflix ($11.5 billion, up 35%) and PayPal ($7.5 billion, up 33%) were the biggest gainers in the top 100. Netflix doubled its global subscriber base over the past three years to 125 million. Netflix's premium brand helped push through a U.S. price increase last year and still add to its subscriber base. PayPal's subscriber base hit 237 million this year, up 43% versus 2015. Customer engagement is high, with 35 transactions per account over the last 12 months.

**More reading: World's Most Valuable Brands 2018: By The Numbers**

*Follow me on Twitter or LinkedIn. Send me a secure tip.*

**Kurt Badenhausen**

Follow

I am a senior editor at Forbes and focused mainly on the business of sports and our annual franchise valuations. I also spend a lot of my time digging into what at... **Read More**

©2022 Forbes Media LLC. All Rights Reserved.

ADVERTISEMENT

**RELATED TOPICS**

| | |
|---|---|
| 01. PENNY STOCKS TO BUY NOW | › |
| 02. BEST INVESTMENTS FOR 2019 | › |
| 03. BEST AIRLINE MILES CREDIT CARDS | › |
| 04. BEST WAYS TO INVEST MONEY | › |
| 05. BEST FRANCHISES TO OWN | › |
| 06. AFFORDABLE GAMING LAPTOPS | › |

**SEE ALSO**





Powered by Media.Net

**3 STEPS TO YOUR SECOND HOME**



# Forbes Releases Seventh Annual World's Most Valuable Brands List

 **Forbes Press Releases** Forbes Staff

**Please include a link to the World's Most Valuable Brands list in any coverage:** www.forbes.com/powerful-brands/

**NEW YORK (May 23, 2017)** – *Forbes* released today its seventh annual list of the **World's Most Valuable Brands** –100 brands that have a cumulative value of $1.95 trillion. For the seventh straight year, **Apple** has come out on top as the most valuable brand in the world, with a value of $170 billion, up $16 billion (10%) from 2016. Apple continues to dominate in a consumer tech industry where brand matters. Closing in on Apple, **Google** comes in second place, valued at $101.8 billion. Google's brand value has risen $19.3 billion (23%) since the previous year and has become the generic term for search, which is the ultimate in branding power. Rounding out the top 5 are **Microsoft** (No. 3, $87 billion), **Facebook** (No. 4, $73.5 billion) and **Coca-Cola** (No. 5, $56.4 billion).

Notable facts for *Forbes*' 2017 list of World's Most Valuable Brands:

- Biggest gainers are Amazon (54%), Facebook (40%), Starbucks (24%), Google (23%) and Adobe (18%)

- Biggest losers are IBM (-20%), HSBC (-18%), Caterpillar (-11%), H&M (-11%), Coach (-8%) and Cartier (-8%)

- Drop-offs are Volkswagen (No. 77), Thomson Reuters (No. 83), Canon (No. 84), John Deere (No. 88), Uniqlo (No. 91), Prada (No. 97) and RBC (No. 98)

"Technology brands continue to rank as the most valuable in the

Document title: Forbes Releases Seventh Annual World&#39;s Most Valuable Brands List
Capture URL: https://www.forbes.com/sites/forbespr/2017/05/23/forbes-releases-seventh-annual-worlds-most-valuable-brands-list/#7ea199fe5b55
Capture timestamp (UTC): Wed, 19 Feb 2020 21:20:14 GMT

Appx07916

- Biggest losers are IBM (-20%), HSBC (-18%), Caterpillar (-11%), H&M (-11%), Coach (-8%) and Cartier (-8%)

- Drop-offs are Volkswagen (No. 77), Thomson Reuters (No. 83), Canon (No. 84), John Deere (No. 88), Uniqlo (No. 91), Prada (No. 97) and RBC (No. 98)

"Technology brands continue to rank as the most valuable in the world with nine of the top 15," said *Forbes* Senior Editor **Kurt Badenhausen**. "Apple's premium brand produces an average selling price of nearly $700 for its iPhones and helps the company generate more than 80% of industry smartphone profits."


ADVERTISEMENT
Aha!

Today in: Business



Methodology:

*Forbes* valued more than 200 global brands by looking at three years of earnings and allocating a percentage of those earnings based on the role brands play in each industry (e.g., high for luxury goods and beverages, low for airlines and oil companies). We applied the average price-to-earnings multiple over the past three years to these earnings to arrive at the final brand value.



SPONSORED

Our Nation BRANDVOICE    UNICEF USA BRANDVOICE    Grandschule BRANDVOICE
| Paid Program           | Paid Program               | Paid Program

Black History In The      'If We Want These           5 Ways Policymakers Can
Making: An Interview With  Children To Stay Safe,      Help Build A Future-
Ashlyn Martin             There Are No Shortcuts'      Ready Workforce Today

**Forbes' Top 10 Most Valuable Brands in the World in 2017 are listed below:**

| Rank | Company Name | Brand Value ($Bil) |
|------|--------------|--------------------|
| 1    | Apple        | $170.0             |
| 2    | Google       | 101.8              |
| 3    | Microsoft    | 87.0               |
| 4    | Facebook     | 73.5               |
| 5    | Coca-Cola    | 56.4               |



| Rank | Company Name | Brand Value ($Bil) |
|------|--------------|--------------------|
| 1 | Apple | $170.0 |
| 2 | Google | 101.8 |
| 3 | Microsoft | 87.0 |
| 4 | Facebook | 73.5 |
| 5 | Coca-Cola | 56.4 |
| 6 | Amazon | 54.1 |
| 7 | Disney | 43.9 |
| 8 | Toyota | 41.1 |
| 9 | McDonald's | 40.3 |
| 10 | Samsung | 38.2 |

**For the full list and more,** please visit
https://www.forbes.com/powerful-brands/.

## Media Contacts

Christina Vega at cvega@forbes.com or 212.206.5155.

Crystal Kwok at ckwok@forbes.com or 212.367.4871.



**Forbes Press Releases**

Follow

Everything and anything you need to know about Forbes, the global media brand that celebrates entrepreneurial capitalism. In this section, you'll find the latest Forbes... **Read More**

## RELATED TOPICS

01. SMALL BUSINESS BRANDING STRATEGY

02. PERSONAL BRANDING TIPS

03. TOP CLOTHING BRANDS

04. LUXURY CLOTHING BRANDS

05. TOP BRANDING STRATEGIES

06. GUARANTEED SCHOLARSHIPS 2020

SEE ALSO

Document title: Forbes Releases Seventh Annual World&#39;s Most Valuable Brands List
Capture URL: https://www.forbes.com/sites/forbespr/2017/05/23/forbes-releases-seventh-annual-worlds-most-valuable-brands-list/#7ea199fe5b55
Capture timestamp (UTC): Wed, 19 Feb 2020 21:20:14 GMT

Appx07918



200,229 Views | May 11, 2016, 08:41am

# Apple, Google Top The World's Most Valuable Brands Of 2016

**Kurt Badenhausen** Forbes Staff
SportsMoney
I cover sports business with rare digs into b-schools, local economies

This article is more than 2 years old.

This story appears in the May 31, 2016 issue of Forbes. Subscribe

Apple AAPL +0% 's 13-year run of quarterly revenue growth came to a crashing halt last month when the tech giant reported revenue of $50.6 billion, off 13% thanks to soft iPhone sales and a slowdown in China. The gloom-and-doom sentiment around the company has reached a zenith with the stock off 30% from its all-time peak 12 months ago.

(AP Photo/Matthias Schrader, File)

But Forbes' annual study of the world's most valuable brands shows that Apple is still in a class by itself with a value of $154.1 billion, 87% more than second-ranked Google GOOGL +0% . It is the sixth straight time Apple has finished first since Forbes began valuing the richest brands in 2010.

"Brands get their value from how customers perceive them," says David Reibstein, a professor of marketing and branding expert at the University of Pennsylvania's Wharton School. "What makes it valuable from a company perspective is that customers are willing to pay a higher price or are more likely to buy."

Today In: Business

The Apple brand hits a home run on both fronts. Apple-philes will cry blasphemy, but Apple phones are not that distinct from the latest Samsung gadget, hence why the two companies are always suing each other. Yet, Apple commands a premium price and accounts for nearly half the smartphones sold in the U.S., along with 75 million sold globally during the December holiday quarter.

### Gallery: The World's Most Valuable Brands 2016
75 images
View gallery →

SEG Ag'bell Plus & SPONSORED
| Paid Program
Innovation Abounds In Indiana —Here's Why

+ Workforce BRANDVOICE
| Paid Program
Are You Ready For The Collaborative Work

SAP BRANDVOICE
| Paid Program
From Bootleggers To Blockchain: Technology

Document title: Apple, Google Top The World&#39;s Most Valuable Brands Of 2016
Capture URL: https://www.forbes.com/sites/kurtbadenhausen/2016/05/11/the-worlds-most-valuable-brands/#4853735136ec
Capture timestamp (UTC): Wed, 19 Feb 2020 19:57:29 GMT
Page 1 of 12





Big Brothers Big Sisters

Watch life-changing stories unfold.

START SOMETHING

Apple dominates in a consumer tech industry where brand matters. Revenue fell in the latest quarter, but the release of the iPhone 7 will certainly have fans of the brand lining up for hours outside stores in the fall ahead of the unveiling. The adulation helped the company generate $53 billion in net income last year.

"The chance to make a memory is the essence of brand marketing," said a young Steve Jobs after co-founding Apple. The brand has done that by creating a connection with customers through music, phones and computing. It now wants to do the same in watches, TVs and payments with more categories, like autos, also on its radar.

No. 2 Google leapfrogged Microsoft this year and closed the gap on Apple with its brand value up 26% to $82.5 billion (Apple's brand rose 6%). Google became a division of the newly formed Alphabet last year, but the search engine brand is still the company's bread-and-butter profit center subsidizing "Other Bets" like self-driving cars, Google Fiber, Calico and Nest, which lost $3.6 billion last year.

People are much more likely to use Google than Bing even though the search results might not differ much because of the Google brand. Google has become the generic term for search, which is the ultimate in branding power. Reibstein is awed with how Google treats its logo, which he says is the "antithesis of what everybody teaches about branding." Some companies employ brand police to track the use of their logos to ensure the proper fonts and colors. Not Google. It changes the logo on its homepage every day with a clever new doodle.

Rounding out the top five are Microsoft MSFT +0% ($75.2 billion), Coca-Cola KO +0% ($58.5 billion) and Facebook FB +0% ($52.6 billion).



**Full List: The World's Most Valuable Brands**

Facebook, up 44%, is the fastest-growing brand in the top 100 for the second straight year. The number of active users has surged to 1.65 billion. The average user spends 50 minutes daily using Facebook and Instagram (our brand value excludes the financial impact of Instagram). New York Times columnist James Stewart notes that is more time than people spend reading (19 minutes), participating in sports and exercise (17 minutes) and socializing (4 minutes) combined. Time is the ultimate measure of brand engagement.

"Facebook keeps innovating and adding more and more functionally and features," says Reibstein. "Companies are figuring out how to use Facebook, so their revenue is growing. The transformation with what they are doing with their core business is incredible."

We considered more than 200 global brands to determine the final list of the world's 100 most valuable brands. The brands were required to have more than a token presence in the U.S., which knocked out some big brands like multinational telecom firm Vodafone and Chinese e-commerce giant Alibaba. The top 100 includes product brands like Marlboro , owned by Altria and Philip Morris International PM +0% , as well as brands marketed under their corporate name like McDonald's.



Can You GUESS THESE BRANDS?

The Science Behind Brands' Colors | 2:00





**The Science Behind Brands' Colors** | 2:00



Forbes valued the brands on three years of earnings and allocated a percentage of those earnings based on the role brands play in each industry (e.g., high for luxury goods and beverages, low for airlines and oil companies). We applied the average price-to-earnings multiple over the past three years to these earnings to arrive at the final brand value (click here for the complete methodology).

The 100 most valuable brands span 16 countries and cross 19 broad industry categories. Brands from U.S.-based companies make up just over half the list with 52 brands. The next greatest number are from Germany (11 brands), Japan (8) and France (6). Tech brands are the most common with 17, including the top three. Financial services companies landed 13 brands in the top 100 led by American Express AXP +0% at No. 24. Other big industries included automotives (12) and consumer packaged goods (10), followed by luxury and retail, which both secured eight spots.

The biggest decliner was IBM IBM +0% , off 17% to $41.4 billion and No. 7 overall. Big Blue has reported 16 straight quarters of revenue declines. Revenue in the latest quarter was the company's lowest in 14 years. "People have trouble defining what IBM is today," says Reibstein, who says the one thing that might save IBM is its artificial intelligence technology platform Watson, which the company is doubling down on by featuring the technology in its ad campaigns.

Seven brands cracked the top 100 for the first time led by CVS at No. 47 with a value of $11.7 billion. The average brand rose 6% in value compared to 2015. The cumulative brand value of the top 100 is $1.8 trillion with the cut-off at $6.7 billion for No. 100 Costco.

**Special Report: The World's Most Valuable Brands**



## Licensing Options

- Logo Licensing •  Reprints/E-Prints •  Order Spreadsheet Products

*Follow me on Twitter or LinkedIn. Send me a secure tip.*

**Kurt Badenhausen**

[ follow ]

I am a senior editor at Forbes and focused mainly on the business of sports and our annual franchise valuations. I also spend a lot of my time digging into what at... Read More

Print   Site Feedback   Tips   Corrections   Reprints & Permissions   Terms   Privacy
©2020 Forbes Media LLC. All Rights Reserved.             AdChoices
ADVERTISEMENT

**RELATED TOPICS**

| | | |
|---|---|---|
| 01. | PERSONAL BRANDING TIPS | › |
| 02. | BRAND IDENTITY DESIGNS | › |
| 03. | TOP BRANDING STRATEGIES | › |
| 04. | CORPORATE BRANDING TIPS | › |
| 05. | BRAND STRATEGY DEVELOPMENT | › |
| 06. | BRAND CONCEPTS | › |

**SEE ALSO**





Forbes | Billionaires Innovation Leadership Money Business Small Business Lifestyle Lists Advisor Featured Breaking More

# The World's Most Valuable Brands 2015: Behind The Numbers



Kurt Badenhausen Forbes Staff

This article is more than 2 years old

This is the fifth year Forbes has valued the top brands in the world with Apple landing on top each time. Instead of a fuzzy consumer surveys, we measure the value of a brand by looking at the financial numbers. The most valuable brands are ones that generate massive earnings in industries where branding plays a major role.

We started with a universe of more than 200 global brands. We required brands to have a presence in the U.S., which eliminated some big brands like multinational telecom firm Vodafone and state-owned China Mobile, which is the world's largest mobile phone provider.

Our first step in valuing the brands was to determine earnings before interest and taxes for each brand. We gathered these from company reports, Wall Street research and industry experts. Forbes averaged those earnings over the past three years and subtracted from earnings a charge of 8% of the brand's capital employed, figuring a generic brand should be able to earn at least 8% on this capital.

Forbes applied the maximum corporate tax rate in the parent company's home country to that net earnings figure. Next, we allocated a percentage of those earnings to the brand based on the role brands play in each industry. (Brands are crucial when it comes to beverages and luxury goods, but less so with airlines, when price and convenience are more important.) To this net brand earnings number, we applied the average price-to-earnings multiple over the

Document title: The World&#39;s Most Valuable Brands 2015: Behind The Numbers
Capture URL: https://www.forbes.com/sites/kurtbadenhausen/2015/05/13/the-worlds-most-valuable-brands-2015-behind-the-numbers/#51ee95035106
Capture timestamp (UTC): Wed, 19 Feb 2020 20:41:52 GMT

Appx07922

generic brand should be able to earn at least 8% on this capital.

Forbes applied the maximum corporate tax rate in the parent company's home country to that net earnings figure. Next, we allocated a percentage of those earnings to the brand based on the role brands play in each industry. (Brands are crucial when it comes to beverages and luxury goods, but less so with airlines, when price and convenience are more important.) To this net brand earnings number, we applied the average price-to-earnings multiple over the past three years to arrive at the final brand value. For privately held outfits we applied an earnings multiple for a comparable public company. Brands are all in U.S. dollars and converted at May 6 exchange rates. The euro is down 13% since our 2014 Most Valuable Brands list, which negatively impacted the values of many European brands.

The 100 most valuable span 15 countries and cross 20 broad industry categories. Brands from U.S. based companies make up just over half the list with the next greatest number from Germany (9 brands), Japan (7) and France (7). Tech brands are the most common with 15, including four of the top five. Automotive and consumer packaged goods companies both landed 13 brands in the top 100.

The average brand rose 5% in value compared to 2014. The cumulative brand value of the top 100 is $1.7 trillion with the cut-off at $6.1 billion for No. 100 Estee Lauder.

### Full List: The World's Most Valuable Brands

*Follow me on Twitter or LinkedIn. Send me a secure tip.*



**Kurt Badenhausen**

> Follow

I am a senior editor at Forbes and focused mainly on the business of sports and our annual franchise valuations. I also spend a lot of my time digging into what at... **Read More**

Print    Site Feedback    Tips    Corrections    Reprints & Permissions    Terms    Privacy

©2020 Forbes Media LLC. All Rights Reserved    AdChoices

ADVERTISEMENT

### RELATED TOPICS

| | |
|---|---|
| 01. BEST SNEAKER BRANDS | › |
| 02. LUXURY CLOTHING BRANDS | › |
| 03. BEST DENIM BRANDS | › |
| 04. BEST COFFEE BRAND | › |



ADVERTISEMENT

Buy Now & Save 50%
QuickBooks® Online helps you manage you accounting, run payroll, and file payroll taxes

QuickBooks® Online       Sign Up ›



ADVERTISEMENT

nuveen
A TIAA Company

Impact without compromise.



Document title: The World&#39;s Most Valuable Brands 2014: Behind The Numbers
Capture URL: https://www.forbes.com/sites/kurtbadenhausen/2014/11/05/the-worlds-most-valuable-brands-2014-behind-the-numbers/#5c19afe5170c
Capture timestamp (UTC): Wed, 19 Feb 2020 20:02:46 GMT

Draenrei Hogwartsia dinosaur.

The list of exhibits goes on. It's no wonder more than 1.2 million visitors come to Indiana's top non-sports attraction every year.

### Strong National Museum of Play in New York

While many children's museums emphasize science or art, the Strong National Museum of Play in Rochester, New York, focuses entirely on the act of play. It houses "the world's most comprehensive collection of toys, dolls, board games, video games, other electronic games, books, documents, and other historical materials related to play."

Exhibits let kids step into the role of comic book hero, enter the world of the Berenstain Bears, and visit Sesame Street. These experiences and more help the Strong National Museum of Play meet its mission to engage, entertain and enlighten kids through play.

### Thinkery in Texas

Austin's aptly named Thinkery museum aims to get kids' brains moving. It has 40,000 square feet of indoor and outdoor activities for children up to 12 years old. Exhibits include problem-solving challenges in the Innovators' Workshop, a Kitchen Lab, a Light Lab and an earth science center delightfully called Earth, Wind, Inspire.

Outside, kids can enjoy a whimsical custom-designed climbing structure as well as engage in water play in the Austin sunshine.

Get ready to participate along with your kids. One of the Thinkery's goals is to promote positive adult-child relationships, so the fun is best enjoyed together.

### Seattle Children's Museum in Washington

The Seattle Children's Museum wants to help kids launch into a lifetime of learning.

Children can dip their toes in acting at the museum's Bijou Theatre. They can learn about velocity, gravity and balance in the kid-sized streets of Cog City. The Mountain lets kids climb rocks, explore native Washington wildlife, and even slide down a glacier. They can explore a few career options, with interactive exhibits like the construction zone, eye clinic and post office.



The Seattle Children's Museum is designed for kids up to 8 years old, but the whole family will have fun.

### Please Touch Museum in Pennsylvania

Philadelphia's Please Touch Museum is all about participation.

Kids get the chance to drive a city bus and assemble cars in the Roadside Attractions exhibit. They'll learn about the properties of water while splashing around in a miniature Schuylkill River.

They'll get to navigate a hedge maze on the way to the Mad Hatter's tea party and explore a Hall of Mirrors. And they'll get to play croquet with flamingos and hedgehogs.

Children will learn a bit of American history, too. The Centennial Exploration exhibit, for example, offers a hands-on journey to the 1876 World's Fair.

### Cayton Children's Museum in California

Santa Monica's Cayton Children's Museum wants to shape kids' characters as well as sharpen their minds. Hands-on exhibits aim to strengthen young visitors' moral compasses and encourage them to become engaged citizens.

The Let's Help exhibit, for example, includes an interactive Coast Guard rescue boat and animal hospital. The Together We exhibit lets children take part in cooperative activities based in the arts, science and engineering.



Check the calendar to see if any of Cayton's numerous classes, festivals or camps align with your visit. Even if they don't, there's enough fun and learning here to more than fill a long weekend.

### The Magic House in Missouri

The Magic House in St. Louis will appeal to a wide range of kids

Document title: The World&#39;s Most Valuable Brands 2014: Behind The Numbers
Capture URL: https://www.forbes.com/sites/kurtbadenhausen/2014/11/05/the-worlds-most-valuable-brands-2014-behind-the-numbers/#5c19afe5170c
Capture timestamp (UTC): Wed, 19 Feb 2020 20:02:46 GMT

Appx07925

and engineering.

Check the calendar to see if any of Cayton's numerous classes, festivals or camps align with your visit. Even if they don't, there's enough fun and learning here to more than fill a long weekend.

**The Magic House in Missouri**

The Magic House in St. Louis will appeal to a wide range of kids thanks to its "makerspace," known as MADE. In this engaging workshop, kids aged 4 to 14 can paint on a digital easel, design using a 3D printer or laser cutter, play with rockets and build robots or circuits.

Back in The Magic House's primary museum space, kids can engage with hands-on exhibits. Creating 3D impressions of themselves and zooming down a three-story slide are some of the activities at hand.

More than 600,000 visitors explore this St. Louis destination each year—and with fun for toddlers through teens, it's easy to see why.

Consider a journey this winter to one of these museums that are fun for the whole family.

*A former downtown development professional, Natalie Burg is a freelancer who writes about growth, entrepreneurialism and innovation.*

*This article is for educational purposes only, and is not intended to provide medical or legal advice, or to indicate the availability or suitability of any product or service for your unique circumstances.*

*Capital One does not provide, endorse, or guarantee any third-party product, service, information or recommendation listed above. The third parties listed are solely responsible for their products and services, and all trademarks listed are the property of their respective owners.*

Capital One

Capital One offers a broad spectrum of financial products and services to cardholders, including digital tools, that help cardholders save time and money. Being confiden... **Read More**



**Best Portable Chargers**

**F** Forbes Personal Shopper Contributor Group ⊙

Prices and or the author may earn a commission on sales made from links on this page.

Whether you're always on the go or have upcoming holiday travel plans that require extra phone battery life, portable chargers are the must-have item in 2019. From snapping photos for social media to taking work calls, battery life is necessary to stay plugged in for all your technology needs. We've rounded up the best and top-rated portable chargers from Amazon ahead.

If you're in the market for a new portable charger but haven't a clue where to find one, Amazon is chock-full of the best of the best. We searched out the top-rated portable chargers with thousands of delighted customers, right ahead.

**Anker PowerCore 10000**



T. ROWE PRICE MUTUAL FUNDS
can help you prepare for the future you really want.

| | ADVERTISEMENT | |
|---|---|---|
| 1. | BEST PORTABLE CHARGERS | › |
| 2. | PORTABLE POWER BANK | › |
| 3. | CHEAP PORTABLE CHARGER | › |
| 4. | BREAKING NEWS | › |
| 5. | FREE RINGTONES | › |
| 6. | FINANCE INVESTMENTS | › |



**Forbes**

Billionaires    Innovation    Leadership    Money    Business    Small Business    Lifestyle    Lists    Advisor    Featured    Breaking    More

# Apple Dominates List Of The World's Most Valuable Brands

Kurt Badenhausen · Forbes Staff

*I cover sports business with more than 15 years of experience covering business, lists and commentary.*

🚫 This article is more than 2 years old.

**Gallery: The World's Most Valuable Brands**

View gallery →

Madison, Wisconsin
Net Employment Outlook: 27%

Apple has set the bar incredibly high over the past decade. The expectations have some fans grumbling about the lack of transformational products during recent launches. The company has largely upgraded existing product lines instead of releasing anything as revolutionary as its last huge category changer in 2010, the iPad. Speculation swirls about whether the Cupertino, Calif.-based company has peaked, with well-funded competitors like Samsung and Google also challenging Apple. Wall Street seems to think so – Apple's stock plummeted 45% from its September 2012 high before partially recovering in the past six months.

But Forbes' study of the top brands illustrates that the Apple name is as strong as ever. Apple is the most valuable brand in the world for a third straight time at $104.3 billion, up 20% over last year. It is worth nearly twice as much as any other brand on the planet by our count.

"The heart of a great brand is a great product," says Kevin Lane Keller, branding expert and professor at Dartmouth's Tuck School of Business. Apple remains a vital part of people's everyday lives, and the brand continues to capture consumer's imaginations (and wallets) in a range of products across different industries.

The company sold a record 33.8 million iPhones in its latest quarter. It also moved 14.1 million iPads and 4.6 million Macs. Roughly 30 billion songs have been sold on iTunes since it launched in 2003. Sales of iPods are down, as people turn to their phones as music players, but Apple still sold 3.5 million iPods in its fiscal fourth quarter and 26.4 million for the year.

Design has been a large contributor to the strength of the Apple brand. "Design is how a product works, how it looks, how it feels. It's functional and aesthetic. Apple has embraced that in the fullest sense possible in terms of making products simple, but also good looking and attractive," says Keller.

Innovation Abounds in Indiana—Here's Why

How Businesses That Outperform View Work

Black History In The Making: An Interview With Kendi a Guest

## Full List: The World's Most Valuable Brands

Microsoft ranks second with a brand worth $56.7 billion. The value of the brand is flat over the past three years, as Microsoft struggles to make the transition from a PC to a mobile world. Growth has slowed, but it is still one of the most profitable brands in the world with

Document title: Apple Dominates List Of The World&#39;s Most Valuable Brands
Capture URL: https://www.forbes.com/sites/kurtbadenhausen/2013/11/06/apple-dominates-list-of-the-worlds-most-valuable-brands/#73e1213c5283
Capture timestamp (UTC): Wed, 19 Feb 2020 20:11:57 GMT

Appx07927

### Full List: The World's Most Valuable Brands



TruLog

Microsoft ranks second with a brand worth $56.7 billion. The value of the brand is flat over the past three years, as Microsoft struggles to make the transition from a PC to a mobile world. Growth has slowed, but it is still one of the most profitable brands in the world with operating margins of 34% in its latest fiscal year. The company's $2.6 billion ad budget is one of the biggest in tech.

Coca-Cola is the only non-tech brand to crack the top five, ranking No. 3 with a brand value of $54.9 billion. Coca-Cola sold 13.3 billion cases of its signature drinks in 2012, up 3% from the prior year thanks to growth outside the U.S. Those sales represent half of the company's soda revenue. The brand became the first to record 50 million "likes" on Facebook last year and currently has 75 million fans on the social media site.

To determine the best brands, we started with a universe of more than 200 global brands. We required brands to have a presence in the U.S., which eliminated some big brands like multinational telecom firm Vodafone and state-owned China Mobile, which is the world's largest mobile phone provider. The final list includes product brands like Procter & Gamble-owned Gillette and corporate brands like IBM, which ranks fourth.

Forbes valued the brands on three years of earnings and allocated a percentage of those earnings based on the role brands play in each industry (e.g., high for luxury goods, low for airlines). We applied the average price-to-earnings multiple over the past three years to these earnings to arrive at the final brand value (click here for the full methodology).

The 100 most valuable brands span 15 countries across 20 broad industry categories. Brands from U.S.-based companies make up just over half the list with the next biggest representation from Germany (9 brands), France (8) and Japan (7). Tech brands are the most prevalent with 19, including six of the top 10.

Ninth-ranked Samsung had the strongest one-year gain of any brand in the top 100, up 53% to $29.5 billion. Samsung's value soared 136% over the past three years. Sales for Samsung's Galaxy S4 smartphones have been on fire and the company also benefits from its market leading position with memory chips. Samsung's smartphone shipments rose 10% to 81.2 million in the third quarter, according to IDC. Its 31.4% market share is larger than the next four brands combined.

Samsung has poured money into marketing, particularly in sports, to highlight its innovative products. South Korean-based Samsung Electronics has been an Olympic sponsor since the 1988 Seoul Olympic Games. It uses global sports stars like track and field's Usain Bolt and figure skater Kim Yu Na in its advertising. Samsung's most high profile sports team deal is its $24 million a year jersey sponsorship of European soccer champion Chelsea. The company's ad budget hit $4.4 billion last year.

"Really strong brands are highly innovative and highly relevant, so they are always moving forward in the right direction with products and services that really appeal to people and are distinctive and different," says Keller.

Samsung and Apple have been on remarkable runs, but they only need to look across the mobile space to see how quickly the value of a brand can collapse in the complex, fast moving technology world. Forbes valued the Blackberry brand at $6.1 billion last year, but just $2.2 billion this year and outside the top 100. Three years ago, Forbes deemed the Nokia brand worth $27.3 billion, ninth highest in the world. Today we figure it at worth $7 billion, which ranks No. 71. The value is down 55% from last year as the brand, like Blackberry, has been left behind in the smartphone world.

Nokia was the world's leading market of mobile phones for 14 years until early 2012, but they failed to read the market and adapt to the consumer's move to smartphones. Nokia still ranks second behind Samsung in global shipments in the low-priced, stagnant mobile phone category with a 13.8% market share, according to IDC. But

Document title: Apple Dominates List Of The World's Most Valuable Brands
Capture URL: https://www.forbes.com/sites/kurtbadenhausen/2013/11/06/apple-dominates-list-of-the-worlds-most-valuable-brands/#73e1213c5283
Capture timestamp (UTC): Wed, 19 Feb 2020 20:11:57 GMT

Appx07928



13,183 Views | May 22, 2012, 02:52pm

# Apple Tops Ranking Of World's Most Valuable Brands

**Eric Savitz** Former Staff
CIO Network
Covering the intersection of tech and investing

🚫 This article is more than 7 years old.



Apple again topped the annual BrandZ list of the world's most popular brands, which is produced by an arm of the advertising giant WPP.

The study puts the value of Apple's brand at $182.95 billion, up 19% from 2011.

You can click through the link above for the full list, but I'd note that the rankings include a considerable



*The logo for the world's most valuable brand.*

number of tech companies, including four of the top five. After Apple at the top of the list, the BrandZ ranking lists IBM, with an estimated brand value of $116 billion, followed by Google, McDonald's and Microsoft.

Rounding out the top 10 are Coca-Cola, Marlboro, AT&T, Verizon and China Mobile. Other tech companies in the top 25 include Vodafone, Amazon, Facebook, Deutsche Telekom, SAP and Baidu.

Facebook saw the largest increase in brand value among the top 100, increasing 74% to $33.2 billion.

**Eric Savitz**

[ Follow ]

After a long career at Barron's, I joined Forbes as San Francisco bureau chief in December 2010. I've been writing about technology and investing for more than 25 years... Read More

Print    Site Feedback    Tips    Corrections    Reprints & Permissions    Terms    Privacy
©2020 Forbes Media LLC. All Rights Reserved.    AdChoices

ADVERTISEMENT

## RELATED TOPICS

| | |
|---|---|
| 01. TOP 10 BEAUTY BRANDS | > |
| 02. BEST CLOTHING BRANDS | > |
| 03. TOP BRAND AGENCIES | > |
| 04. BRAND IDENTITY DESIGNS | > |
| 05. TOP 10 APPLE PRODUCTS | > |
| 06. FREE COMPANY LIST | > |

SEE ALSO





Document title: Apple Tops Ranking Of World&#39;s Most Valuable Brands
Capture URL: https://www.forbes.com/sites/ericsavitz/2012/05/22/apple-tops-ranking-of-worlds-most-valuable-brands/#30b6ecba2c07
Capture timestamp (UTC): Wed, 19 Feb 2020 20:21:57 GMT
Page 1 of 8



ADVERTISEMENT

**Free CC Reader w/ Payments**

Get 50% off QuickBooks today. Plus add the payments feature & get a free card reader.

QuickBooks® Online

# Apple Ranked the World's Most Valuable Brand, Followed by Google and IBM



**Marc E. Babej** Former Contributor
Entrepreneur

⚠ This article is more than 2 years old.

ADVERTISEMENT



Market Research firm Millward Brown has just published its 6th annual BrandZ Global Top 100 rankings, and it turns out Apple has ended Google's four-year run as the world's most valuable brand.

Apple's brand value over the past year soared 84% to $153 billion, as a result of meaningfully differentiated products the iPad and IPhone 4. Apple's success once again demonstrates that *a brand is neither an end in itself, nor a means to an end – but a byproduct of consistent delivery against a relevant tangible benefit.* The exception to this rule: brands in truly image-driven categories, where there's little to be had in the way of a tangible benefit, and none is expected (think soft drinks, beer or cigarettes).

Google's brand declined 2% to $111.5 billion. Facebook made a giant leap onto the list, debuting at place 35, with a whopping 246% increase to $19.1 billion.

Other top risers included Chinese search engine Baidu (141% to 822.6 billion) and Wells Fargo, (97% to 36.9 billion).

The top 50 brands are below. A full report can be downloaded here (pdf).

**Follow me on Twitter.**

BrandZ Top 100 Most Valuable Global Brands 2011

| # | Brand | Brand Value 2011 ($M) | % Brand Value Change 2011 vs. 2010 | # | Brand | Brand Value 2011 ($M) | % Brand Value Change 2011 vs. 2010 |
|---|---|---|---|---|---|---|---|
| 1 | Apple | 153,285 | 84% | 26 | Vodafone | 24,342 | 23% |
| 2 | Google | 111,498 | -2% | 27 | Toyota | 24,198 | 11% |
| 3 | IBM | 100,849 | 17% | 28 | HSBC | 22,687 | -4% |
| 4 | McDonald's | 81,016 | 23% | 29 | RBC | 22,426 | 19% |
| 5 | Microsoft | 78,243 | 2% | 30 | Amazon | 22,426 | 37% |
| 6 | Coca-Cola | 73,752 | 8% | 31 | TESCO | 21,834 | -16% |
| 7 | AT&T | 69,916 | N/A | 32 | Gillette | 19,782 | -4% |
| 8 | Marlboro | 67,522 | 18% | 33 | China Mobile | 19,542 | N/A |
| 9 | China Mobile | 57,326 | 9% | 34 | Ralph Lauren | 19,360 | 11% |
| 10 | GE | 50,318 | 12% | 35 | Facebook | 19,102 | 246% |
| 11 | Vodafone | 44,440 | 1% | 36 | SAP | 17,822 | N/A |
| 12 | ICBC | 43,647 | -2% | 37 | UPS | 17,530 | 20% |
| 13 | Wells Fargo | 42,836 | N/A | 38 | Disney | 17,290 | 18% |
| 14 | Amazon | 37,628 | 37% | 39 | H&M | 17,552 | 3% |
| 15 | Walmart | 37,277 | -5% | 40 | MTN | 17,811 | 23% |
| 16 | BMW | 36,070 | 91% | 41 | ExxonMobil | 16,873 | 15% |
| 17 | Visa | 34,737 | 36% | 42 | Pampers | 16,818 | 18% |
| 18 | BlackBerry | 35,404 | -11% | 43 | Baidu | 16,509 | 141% |
| 19 | T-Mobile | 29,774 | N/A | 44 | Budweiser | 16,744 | -2% |
| 20 | VISA | 28,553 | 16% | 45 | Subway | 15,262 | 0% |
| 21 | M | 27,269 | N/A | 46 | L'OREAL | 15,719 | 11% |
| 22 | ORACLE | 26,948 | 9% | 47 | citi | 15,678 | 17% |
| 23 | SAP | 25,615 | 7% | 48 | docomo | 15,449 | -6% |
| 24 | BlackBerry | 25,528 | 22% | 49 | accenture | 15,427 | 5% |
| 25 | Mercedes | 24,623 | -20% | 50 | HP | 15,344 | 52% |

uncaptioned



Marc E. Babej

Follow

ADVERTISEMENT



BUICK
**2020 ENCLAVE**

Enclave Avenir is the highest expression of Buick luxury with its premium leather interior, unmistakable grille, and 20" wheels.

EXPLORE ENCLAVE    VIEW PHOTOS



**RELATED TOPICS**

| | |
|---|---|
| 01. | PRICES OF APPLE WATCH 5 |
| 02. | NEW APPLE IPAD DISCOUNTS |
| 03. | TOP DEALS ON APPLE IPAD |
| 04. | BEST APPLE IPHONES TO BUY |
| 05. | BEST VPN PROVIDERS OF 2020 |
| 06. | APPLE WATCH DISCOUNTS |

SEE ALSO

BEST WIRELESS ALARM SYSTEM

COMPUTER SECURITY SOFTWARE

TOP 10 ANTIVIRUS SOFTWARE

APPLE IPHONE DISCOUNTS

NEW APPLE IPAD DISCOUNTS

TOP DEALS ON APPLE IPAD



**CHANGEMAKERS**

# Changing The World, One Silicone Bag At A Time

**EXHIBIT 2**



Return to 2019 report home

# Best Global Brands 2019
# Rankings

Filter +

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 01 | 02 | 03 | 04 | 05 | 06 | 07 | 08 |
| Apple | Google | amazon | Microsoft | Coca-Cola | SAMSUNG | TOYOTA | Mercedes |
| +9% | +8% | +24% | +17% | -4% | +2% | +5% | +5% |
| 234,241 $m | 167,713 $m | 125,263 $m | 108,847 $m | 63,365 $m | 61,098 $m | 56,246 $m | 50,832 $m |
| 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| McDonald's | Disney | BMW | IBM | intel | f | cisco | Nike |
| +4% | +11% | +0% | -6% | -7% | -12% | +3% | +7% |
| 45,362 $m | 44,352 $m | 41,440 $m | 40,381 $m | 40,197 $m | 39,857 $m | 35,559 $m | 32,376 $m |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| LOUIS VUITTON | ORACLE | GE | SAP | HONDA | CHANEL | | Pepsi |
| +14% | +1% | -22% | +10% | +3% | +11% | +13% | -1% |
| 32,223 $m | 26,288 $m | 25,566 $m | 25,092 $m | 24,422 $m | 22,134 $m | 21,629 $m | 20,488 $m |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 |
| J.P.Morgan | IKEA | ups | HERMÈS | ZARA | H&M | accenture | Budweiser |
| +8% | +5% | +7% | +9% | -3% | -3% | +14% | +3% |
| 19,044 $m | 18,407 $m | 18,072 $m | 17,920 $m | 17,175 $m | 16,345 $m | 16,205 $m | 16,018 $m |
| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
| GUCCI | Pampers | Ford | HYUNDAI | Gillette | NESCAFÉ | Adobe | VW |
| +23% | -5% | +2% | +5% | -18% | +4% | +20% | +6% |
| 15,949 $m | 15,773 $m | 14,325 $m | 14,156 $m | 13,753 $m | 13,605 $m | 12,937 $m | 12,921 $m |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
| citi | Audi | Allianz | ebay | adidas | AXA | HSBC | Starbucks |
| +10% | +4% | +12% | -8% | +11% | +6% | +5% | +23% |
| 12,697 $m | 12,689 $m | 12,078 $m | 12,010 $m | 11,992 $m | 11,830 $m | 11,816 $m | 11,798 $m |
| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
| | PORSCHE | L'ORÉAL | NISSAN | | hp | VISA | SONY |
| -4% | +9% | +4% | -6% | -4% | +4% | +19% | +13% |
| 11,661 $m | 11,652 $m | 11,589 $m | 11,502 $m | 11,352 $m | 10,891 $m | 10,756 $m | 10,514 $m |
| 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
| Kellogg's | SIEMENS | | Nestlé | Canon | mastercard | DELL | 3M |
| -2% | +1% | +4% | +7% | -9% | +25% | NEW | -1% |
| 10,419 $m | 10,299 $m | 9,915 $m | 9,534 $m | 9,482 $m | 9,430 $m | 9,086 $m | 9,035 $m |
| 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 |
| NETFLIX | Colgate | Santander | Cartier | Morgan Stanley | salesforce | Hewlett Packard Enterprise | PayPal |
| +10% | +2% | +13% | +7% | -7% | +24% | -3% | +15% |
| 8,963 $m | 8,824 $m | 8,521 $m | 8,192 $m | 8,185 $m | 8,004 $m | 7,909 $m | 7,904 $m |
| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
| FedEx | HUAWEI | LEGO | CATERPILLAR | Ferrari | KIA | Corona | JACK DANIELS |
| +2% | -9% | +5% | +19% | +12% | -7% | +15% | +13% |
| 6,996 $m | 6,887 $m | 6,864 $m | 6,791 $m | 6,436 $m | 6,426 $m | 6,369 $m | 6,347 $m |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
| Panasonic | DIOR | DHL | JOHN DEERE | LAND ROVER | Johnson & Johnson | Uber | Heineken |
| -2% | +16% | +2% | +9% | -6% | -8% | NEW | +4% |
| 6,189 $m | 6,045 $m | 5,987 $m | 5,853 $m | 5,855 $m | 5,720 $m | 5,714 $m | 5,626 $m |



| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
|---|---|---|---|---|---|---|---|
| J.P.Morgan | IKEA | ups | HERMÈS | ZARA | H&M | accenture | Budweiser |
| +8% | +5% | +7% | +9% | -3% | -3% | +14% | +3% |
| 19,044 $m | 18,407 $m | 18,072 $m | 17,920 $m | 17,175 $m | 16,345 $m | 16,205 $m | 16,018 $m |

| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
|---|---|---|---|---|---|---|---|
| GUCCI | Pampers | Ford | HYUNDAI | Gillette | NESCAFÉ | Adobe | VW |
| +23% | -5% | +2% | +5% | -18% | +4% | +20% | +6% |
| 15,949 $m | 15,773 $m | 14,325 $m | 14,156 $m | 13,753 $m | 13,605 $m | 12,937 $m | 12,921 $m |

| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
|---|---|---|---|---|---|---|---|
| citi | AUDI | Allianz | ebay | adidas | AXA | HSBC | Starbucks |
| +10% | +4% | +12% | -8% | +11% | +6% | +5% | +3% |
| 12,697 $m | 12,689 $m | 12,078 $m | 12,010 $m | 11,992 $m | 11,830 $m | 11,816 $m | 11,798 $m |

| 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
|---|---|---|---|---|---|---|---|
| Philips | Porsche | L'ORÉAL | NISSAN | | hp | VISA | SONY |
| -4% | +9% | +4% | -6% | -4% | +4% | +19% | +13% |
| 11,661 $m | 11,652 $m | 11,589 $m | 11,502 $m | 11,352 $m | 10,891 $m | 10,756 $m | 10,514 $m |

| 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 |
|---|---|---|---|---|---|---|---|
| Kellogg's | SIEMENS | | | Canon | mastercard | DELL Technologies | 3M |
| -2% | +1% | +4% | +7% | -9% | +25% | NEW | -1% |
| 10,419 $m | 10,259 $m | 9,915 $m | 9,534 $m | 9,482 $m | 9,430 $m | 9,086 $m | 9,035 $m |

| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
|---|---|---|---|---|---|---|---|
| NETFLIX | Colgate | Santander | Cartier | Morgan Stanley | salesforce | Hewlett Packard Enterprise | PayPal |
| +10% | +2% | +13% | +7% | -7% | +24% | -3% | +15% |
| 8,963 $m | 8,924 $m | 8,621 $m | 8,192 $m | 8,185 $m | 8,004 $m | 7,909 $m | 7,604 $m |

| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
|---|---|---|---|---|---|---|---|
| FedEx | HUAWEI | LEGO | CATERPILLAR | Ferrari | KIA | Corona | Jack Daniel's |
| +2% | -9% | +5% | +19% | +12% | -7% | +15% | +13% |
| 6,996 $m | 6,807 $m | 6,804 $m | 6,791 $m | 6,458 $m | 6,420 $m | 6,369 $m | 6,347 $m |

| 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 |
|---|---|---|---|---|---|---|---|
| Panasonic | DIOR | DHL | JOHN DEERE | LAND ROVER | Johnson & Johnson | Uber | Heineken |
| -2% | +16% | +2% | +9% | -6% | -8% | NEW | +4% |
| 6,189 $m | 6,045 $m | 5,967 $m | 5,883 $m | 5,855 $m | 5,720 $m | 5,714 $m | 5,626 $m |

| 97 | 98 | 99 | 100 | | | | |
|---|---|---|---|---|---|---|---|
| Nintendo | MINI | Discovery | Spotify | | tiffany & co | Hennessy | BURBERRY |
| +18% | +5% | -4% | +7% | +1% | -5% | +12% | +4% |
| 5,550 $m | 5,532 $m | 5,525 $m | 5,516 $m | 5,509 $m | 5,335 $m | 5,297 $m | 5,205 $m |

| Shell | LinkedIn | Harley-Davidson | PRADA |
|---|---|---|---|
| -3% | NEW | -7% | -1% |
| 5,105 $m | 4,836 $m | 4,793 $m | 4,781 $m |

Get in touch

Pages:
Home   Our Philosophy   Iconic Moves   About   Life at Interbrand   Best Brands   News   Views   Contact

Follow:
Twitter   Facebook   LinkedIn   Instagram

Companies:
Interbrand Health   HMKM   c_space   brandchannel:

© 1974 - 2020 Interbrand. All Rights Reserved.   Site Map   Privacy notice

Appx07934

Return to 2018 report home

# Best Global Brands 2018 Rankings

Filter +



| 01 | 02 | 03 TOP GROWING | 04 |
|---|---|---|---|
| 🍎 | Google | amazon | ⊞ Microsoft |
| **+16%** 214,480 $m | **+10%** 155,506 $m | **+56%** 100,764 $m | **+16%** 92,715 $m |
| 05 | 06 | 07 | 08 |
| Coca-Cola | SAMSUNG | TOYOTA | Mercedes |
| **-5%** 66,341 $m | **+6%** 59,890 $m | **+6%** 53,404 $m | **+2%** 48,601 $m |
| 09 | 10 | 11 | 12 |
| f | M | (intel) | IBM |
| **-6%** 45,168 $m | **+5%** 43,417 $m | **+10%** 43,293 $m | **-8%** 42,972 $m |
| 13 | 14 | 15 | 16 |
| BMW | DISNEY | CISCO | GE |

Appx07935



**-6%**
45,168 $m

13

**+5%**
43,417 $m

14

**+10%**
43,293 $m

15

**-8%**
42,972 $m

16

**-1%**
41,006 $m

17

**-2%**
39,874 $m

18    TOP GROWING

**+8%**
34,575 $m

19

**-26%**
32,757 $m

20

**+11%**
30,120 $m

21

**+23%**
28,152 $m

22

**-5%**
26,133 $m

23

**+4%**
23,682 $m

24

**+1%**
22,885 $m

25

**+2%**
20,798 $m

26

**NEW**
20,005 $m

27

**+8%**
19,139 $m

28

**-5%**
17,712 $m

29

**+12%**
17,567 $m

30

**-5%**
17,458 $m

31

**-7%**
16,864 $m

32

| | | | |
|---|---|---|---|
| **-5%**<br>17,712 $m | **+12%**<br>17,567 $m | **-5%**<br>17,458 $m | **-7%**<br>16,864 $m |
| 29 | 30 | 31 | 32 |
| UPS | H&M | Pampers | HERMÈS PARIS |
| **+3%**<br>16,849 $m | **-18%**<br>16,826 $m | **+1%**<br>16,617 $m | **+15%**<br>16,372 $m |
| 33 | 34 | 35 | 36 |
| Budweiser | accenture | Ford | HYUNDAI |
| **+2%**<br>15,627 $m | **+14%**<br>14,214 $m | **+3%**<br>13,995 $m | **+3%**<br>13,535 $m |
| 37 | 38 | 39 TOP GROWING | 40 |
| NESCAFÉ | ebay | GUCCI | NISSAN |
| **+3%**<br>13,053 $m | **-2%**<br>13,017 $m | **+30%**<br>12,942 $m | **+6%**<br>12,213 $m |
| 41 | 42 | 43 | 44 |
| VW | Audi | PHILIPS | Goldman Sachs |
| **+6%**<br>12,201 $m | **+1%**<br>12,187 $m | **+5%**<br>12,104 $m | **+8%**<br>11,769 $m |
| 45 | 46 | 47 | 48 |
| citi | HSBC | AXA | L'ORÉAL |
| **+9%** | **+6%** | **0%** | **+4%** |

**Appx07937**

**+8%**
12,201 $m

**+7%**
12,187 $m

**+5%**
12,104 $m

**+8%**
11,769 $m

45

46

47

48

Citi

HSBC

AXA

L'ORÉAL

**+9%**
11,577 $m

**+6%**
11,208 $m

**0%**
11,118 $m

**+4%**
11,102 $m

49

50

51   TOP GROWING

52

Allianz

adidas

Adobe

PORSCHE

**+8%**
10,821 $m

**+17%**
10,772 $m

**+19%**
10,748 $m

**+6%**
10,707 $m

53

54

55

56

Kellogg's

hp

Canon

SIEMENS

**-3%**
10,634 $m

**+9%**
10,433 $m

**+6%**
10,380 $m

**+1%**
10,132 $m

57

58

59

60

Starbucks

DANONE

SONY

3M

**+10%**
9,615 $m

**+2%**
9,533 $m

**+10%**
9,316 $m

**+2%**
9,104 $m

61

62

63

64

VISA

Nestlé

Morgan Stanley

Colgate

**+15%**
9,021 $m

**+2%**
8,938 $m

**+7%**
8,802 $m

**+4%**
8,659 $m

Document title: Rankings - 2018 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2018/ranking/
Capture timestamp (UTC): Fri, 14 Feb 2020 20:47:22 GMT

Appx07938



61

**VISA**

+15%
9,021 $m

62

Nestlé

+2%
8,938 $m

63

Morgan Stanley

+7%
8,802 $m

64

**Colgate**

+4%
8,659 $m

65

Hewlett Packard
Enterprise

-9%
8,157 $m

66  TOP GROWING

**NETFLIX**

+45%
8,111 $m

67

*Cartier*

+1%
7,646 $m

68

**HUAWEI**

+14%
7,578 $m

69

Santander

+13%
7,547 $m

70  TOP GROWING

mastercard

+19%
7,545 $m

71

**KIA**

+4%
6,925 $m

72

**FedEx**

+10%
6,890 $m

73  TOP GROWING

**PayPal**

+22%
6,621 $m

74

**LEGO**

-7%
6,533 $m

75  TOP GROWING

salesforce

+23%
6,432 $m

76

**Panasonic**

+5%
6,293 $m

77

Johnson&Johnson

+3%
6,231 $m

78

LAND-ROVER

+2%
6,221 $m

79

**DHL**

+3%
5,881 $m

80  TOP GROWING

Ferrari

+18%
5,760 $m

Document title: Rankings - 2018 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2018/ranking/
Capture timestamp (UTC): Fri, 14 Feb 2020 20:47:22 GMT

**Appx07939**

| 77 | 78 | 79 | 80 |
|---|---|---|---|
| Johnson & Johnson | LAND ROVER | DHL | Ferrari |
| +3% | +2% | +3% | +18% |
| 6,231 $m | 6,221 $m | 5,881 $m | 5,760 $m |

| 81 | 82 | 83 | 84 |
|---|---|---|---|
| Discovery | CATERPILLAR | TIFFANY & CO. | JACK DANIEL'S |
| +6% | +18% | +5% | +6% |
| 5,755 $m | 5,730 $m | 5,642 $m | 5,641 $m |

| 85 | 86 | 87 | 88 |
|---|---|---|---|
| Corona | KFC | Heineken | JOHN DEERE |
| +16% | +3% | +4% | +12% |
| 5,517 $m | 5,481 $m | 5,393 $m | 5,375 $m |

| 89 | 90 | 91 | 92 |
|---|---|---|---|
| Shell | MINI | DIOR | Spotify |
| +9% | +3% | +14% | NEW |
| 5,276 $m | 5,254 $m | 5,223 $m | 5,176 $m |

| 93 | 94 | 95 | 96 |
|---|---|---|---|
| HARLEY-DAVIDSON | BURBERRY LONDON ENGLAND | PRADA | Sprite |
| -9% | -3% | +2% | -2% |
| 5,161 $m | 4,989 $m | 4,812 $m | 4,733 $m |

| 97 | 98 | 99 | 100 |
|---|---|---|---|

**Appx07940**



**+9%**
5,276 $m

93

**+3%**
5,254 $m

94

**+14%**
5,223 $m

95

**NEW**
5,176 $m

96











**-9%**
5,161 $m

97

**-3%**
4,989 $m

98

**+2%**
4,812 $m

99

**-2%**
4,733 $m

100

**+7%**
4,731 $m

**NEW**
4,722 $m

**NEW**
4,696 $m

**NEW**
4,214 $m

Get in touch



Document title: Rankings - 2018 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2018/ranking/
Capture timestamp (UTC): Fri, 14 Feb 2020 20:47:22 GMT

**Appx07941**

Return to 2017 report home

# Best Global Brands 2017 Rankings

Filter +



**+10%**
47,829 $m

**-11%**
46,829 $m

**+3%**
44,208 $m

**+5%**
41,533 $m

13

14

15

16

**0%**
41,521 $m

**+5%**
40,772 $m

**+7%**
39,459 $m

**+3%**
31,930 $m

17

18

19

20

**+3%**
27,466 $m

**+8%**
27,021 $m

**-4%**
22,919 $m

**+3%**
22,696 $m

21

22

23

24

**+6%**
22,635 $m

**+1%**
20,491 $m

**-10%**
20,488 $m

**+11%**
18,573 $m

25

26

27

28

**+4%**
18,472 $m

**-9%**
18,200 $m

**-3%**
17,787 $m

**+2%**
16,416 $m

29

30

31

32

**+4%**
18,472 $m

**-9%**
18,200 $m

**-3%**
17,787 $m

**+2%**
16,416 $m

29

30

31

32

**+7%**
16,387 $m

**+11%**
15,749 $m

**+2%**
15,375 $m

**+11%**
14,210 $m

33

34

35

36

**+5%**
13,643 $m

**+1%**
13,224 $m

**+5%**
13,193 $m

**+1%**
12,661 $m

37

38

39

40

**+4%**
12,471 $m

**+2%**
12,023 $m

**+4%**
11,534 $m

**+1%**
11,522 $m

41

42

43

44    TOP GROWING

**+2%**
11,519 $m

**+5%**
11,073 $m

**-6%**
10,972 $m

**+16%**
10,864 $m

45

46

47

48

**-2%**

**+3%**

**+1%**

**+6%**

Document title: Rankings - 2017 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2017/ranking/
Capture timestamp (UTC): Fri, 14 Feb 2020 20:49:49 GMT

**Appx07944**

+2%
11,519 $m

+3%
11,073 $m

-6%
10,972 $m

+10%
10,864 $m

45

46

47

48

## L'ORÉAL

-2%
10,674 $m

## citi

+3%
10,599 $m

## HSBC

+1%
10,534 $m

## PORSCHE

+6%
10,129 $m

49

50

51

52

## Allianz

+6%
10,059 $m

## SIEMENS

+6%
9,982 $m

## GUCCI

+6%
9,969 $m

## Canon

-12%
9,788 $m

53

54

55  TOP GROWING

56  TOP GROWING

## hp

-8%
9,541 $m

## DANONE

+1%
9,322 $m

## adidas

+17%
9,216 $m

## Adobe

+19%
9,060 $m

57

58

59

60  TOP GROWING

## Hewlett Packard Enterprise

-19%
8,951 $m

## 3M

+9%
8,947 $m

## Nestlé

0%
8,728 $m

## Starbucks

+16%
8,704 $m

61

62

63  TOP GROWING

64

## SONY

+2%
8,474 $m

## Colgate

-1%
8,325 $m

## Morgan Stanley

+14%
8,205 $m

## VISA

+1%
7,815 $m

| 61 | 62 | 63 TOP GROWING | 64 |
|---|---|---|---|
| **SONY** | *Colgate* | Morgan Stanley | **VISA** |
| **+2%** 8,474 $m | **-1%** 8,325 $m | **+14%** 8,205 $m | **+1%** 7,815 $m |

| 65 | 66 | 67 | 68 |
|---|---|---|---|
| *Cartier* | THOMSON REUTERS | **LEGO** | Santander |
| **-2%** 7,547 $m | **+4%** 7,100 $m | **+5%** 7,024 $m | **+8%** 6,702 $m |

| 69 | 70 TOP GROWING | 71 | 72 TOP GROWING |
|---|---|---|---|
| **KIA** | **HUAWEI** | mastercard | **FedEx** |
| **+6%** 6,683 $m | **+14%** 6,676 $m | **+11%** 6,350 $m | **+12%** 6,255 $m |

| 73 | 74 | 75 | 76 |
|---|---|---|---|
| LAND ROVER | Johnson&Johnson | **Panasonic** | **DHL** |
| **+7%** 6,095 $m | **+4%** 6,041 $m | **-6%** 5,983 $m | **0%** 5,715 $m |

| 77 | 78 | 79 | 80 TOP GROWING |
|---|---|---|---|
| HARLEY-DAVIDSON | **NETFLIX** | Discovery | **PayPal** |
| **+3%** 5,671 $m | **NEW** 5,592 $m | **-9%** 5,411 $m | **+12%** 5,408 $m |

Document title: Rankings - 2017 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2017/ranking/
Capture timestamp (UTC): Fri, 14 Feb 2020 20:49:49 GMT

**Appx07946**

| 77 | 78 | 79 | 80 TOP GROWING |
|---|---|---|---|
| HARLEY-DAVIDSON MOTOR CYCLES | NETFLIX | Discovery | PayPal |
| +3% 5,671 $m | NEW 5,592 $m | -9% 5,411 $m | +12% 5,408 $m |

| 81 | 82 | 83 | 84 |
|---|---|---|---|
| TIFFANY & CO. | JACK DANIEL'S | KFC | salesforce |
| -6% 5,394 $m | +3% 5,332 $m | -7% 5,313 $m | NEW 5,224 $m |

| 85 | 86 | 87 | 88 |
|---|---|---|---|
| Heineken | BURBERRY LONDON ENGLAND | MINI | Ferrari |
| +1% 5,181 $m | -4% 5,135 $m | +3% 5,114 $m | NEW 4,876 $m |

| 89 | 90 | 91 | 92 |
|---|---|---|---|
| CATERPILLAR | Sprite | Shell | JOHN DEERE |
| -10% 4,868 $m | -6% 4,842 $m | +5% 4,823 $m | -1% 4,783 $m |

| 93 | 94 | 95 | 96 |
|---|---|---|---|
| Corona | PRADA | DIOR | JOHNNIE WALKER |
| +6% 4,776 $m | -14% 4,716 $m | -7% 4,587 $m | +2% 4,405 $m |

| 97 | 98 | 99 | 100 |
|---|---|---|---|



**CATERPILLAR**

**-10%**
4,868 $m

93

**Sprite**

**-6%**
4,842 $m

94

**Shell**

**+5%**
4,823 $m

95

**JOHN DEERE**

**-1%**
4,783 $m

96

**Corona**

**+6%**
4,776 $m

97

**PRADA**

**-14%**
4,716 $m

98

**DIOR**

**-7%**
4,587 $m

99

**JOHNNIE WALKER**

**+2%**
4,405 $m

100

**SMIRNOFF**

**+1%**
4,288 $m

**TESLA**

**0%**
4,009 $m

**MOËT & CHANDON**

**-3%**
4,006 $m

**Lenovo**

**-1%**
4,004 $m



Get in touch



Document title: Rankings - 2017 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2017/ranking/
Capture timestamp (UTC): Fri, 14 Feb 2020 20:49:49 GMT

**Appx07948**

Return to 2016 report home

# Best Global Brands 2016 Rankings

Filter +

| 2016 Rank | Brand | Sector | Change in Brand Value | Brand Value |
|---|---|---|---|---|
| 01 | Apple | Technology | +5% | 178,119 $m |
| 02 | Google | Technology | +11% | 133,252 $m |
| 03 | Coca-Cola | Beverages | -7% | 73,102 $m |
| 04 | Microsoft | Technology | +8% | 72,795 $m |
| 05 | Toyota | Automotive | +9% | 53,580 $m |
| 06 | IBM | Business Services | -19% | 52,500 $m |
| 07 | Samsung | Technology | +14% | 51,808 $m |
| 08 | amazon | Technology | +33% | 50,338 $m |

| | | Services | | |
|----|----|----|----|----|
| 07 | SAMSUNG | Technology | +14% | 51,808 $m |
| 08 | amazon | Technology | +33% | 50,338 $m |
| 09 | Mercedes-Benz | Automotive | +18% | 43,490 $m |
| 10 | GE | Diversified | +2% | 43,130 $m |
| 11 | BMW | Automotive | +12% | 41,535 $m |
| 12 | McDonald's | Restaurants | -1% | 39,381 $m |
| 13 | Disney | Media | +6% | 38,790 $m |
| 14 | intel | Technology | +4% | 36,952 $m |
| 15 | Facebook | Technology | +48% | 32,593 $m |
| 16 | cisco | Business Services | +4% | 30,948 $m |
| 17 | ORACLE | Business Services | -3% | 26,552 $m |
| 18 | Nike | Sporting Goods | +9% | 25,034 $m |

Document title: Rankings - 2016 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2016/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:51:14 GMT

Appx07950

| 17 | ORACLE | Business Services | -3% | 26,552 $m |
| 18 | (Nike) | Sporting Goods | +9% | 25,034 $m |
| 19 | LOUIS VUITTON | Luxury | +8% | 23,998 $m |
| 20 | H&M | Apparel | +2% | 22,681 $m |
| 21 | HONDA | Automotive | -4% | 22,106 $m |
| 22 | SAP | Business Services | +13% | 21,293 $m |
| 23 | (Pepsi) | Beverages | +3% | 20,265 $m |
| 24 | Gillette | FMCG | -10% | 19,950 $m |
| 25 | American Express | Financial Services | -3% | 18,358 $m |
| 26 | IKEA | Retail | +8% | 17,834 $m |
| 27 | ZARA | Apparel | +19% | 16,766 $m |
| 28 | Pampers | FMCG | +6% | 16,134 $m |

| 27 | ZARA | Apparel | +19% | 16,766 $m |
|---|---|---|---|---|
| 28 | Pampers | FMCG | +6% | 16,134 $m |
| 29 | ups | Logistics | +4% | 15,333 $m |
| 30 | Budweiser | Alcohol | +8% | 15,099 $m |
| 31 | J.P.Morgan | Financial Services | +3% | 14,227 $m |
| 32 | ebay | Retail | -6% | 13,136 $m |
| 33 | Ford | Automotive | +12% | 12,962 $m |
| 34 | HERMES | Luxury | +17% | 12,833 $m |
| 35 | HYUNDAI | Automotive | +11% | 12,547 $m |
| 36 | NESCAFÉ | Beverages | +2% | 12,517 $m |
| 37 | accenture | Business Services | +11% | 12,033 $m |
| 38 | AUDI | Automotive | +14% | 11,799 $m |

| 37 | accenture | Business Services | +11% | 12,033 $m |
| 38 | (Audi) | Automotive | +14% | 11,799 $m |
| 39 | Kellogg's | FMCG | -7% | 11,711 $m |
| 40 | VW | Automotive | -9% | 11,436 $m |
| 41 | PHILIPS | Electronics | +4% | 11,336 $m |
| 42 | Canon | Electronics | -2% | 11,081 $m |
| 43 | NISSAN | Automotive | +22% | 11,066 $m |
| 44 | Hewlett Packard Enterprise | Business Services | NEW | 11,027 $m |
| 45 | L'ORÉAL | FMCG | +1% | 10,930 $m |
| 46 | AXA | Financial Services | +14% | 10,579 $m |
| 47 | HSBC | Financial Services | -10% | 10,458 $m |
| 48 | hp | Electronics | NEW | 10,386 $m |
| | | Financial | | |

| 47 | HSBC | Financial Services | -10% | 10,458 $m |
| 48 | hp | Electronics | NEW | 10,386 $m |
| 49 | citi | Financial Services | +5% | 10,276 $m |
| 50 | PORSCHE | Automotive | +18% | 9,537 $m |
| 51 | Allianz | Financial Services | +12% | 9,528 $m |
| 52 | SIEMENS | Diversified | +10% | 9,415 $m |
| 53 | GUCCI | Luxury | +6% | 9,385 $m |
| 54 | | Financial Services | -2% | 9,378 $m |
| 55 | DANONE | FMCG | +7% | 9,197 $m |
| 56 | Nestlé | FMCG | +1% | 8,708 $m |
| 57 | Colgate | FMCG | -1% | 8,413 $m |
| 58 | SONY | Electronics | +8% | 8,315 $m |
| 59 | 3M | Diversified | +13% | 8,100 $m |

Document title: Rankings - 2016 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2016/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:51:14 GMT

**Appx07954**

| 57 | Colgate | FMCG | -1% | 8,413 $m |
| 58 | SONY | Electronics | +8% | 8,315 $m |
| 59 | 3M | Diversified | +13% | 8,199 $m |
| 60 | adidas | Sporting Goods | +16% | 7,885 $m |
| 61 | VISA | Financial Services | +13% | 7,747 $m |
| 62 | Cartier | Luxury | -2% | 7,738 $m |
| 63 | Adobe | Business Services | +21% | 7,586 $m |
| 64 | Starbucks | Restaurants | +20% | 7,490 $m |
| 65 | Morgan Stanley | Financial Services | +2% | 7,200 $m |
| 66 | | Media | +4% | 6,830 $m |
| 67 | LEGO | FMCG | +25% | 6,691 $m |
| 68 | Panasonic | Electronics | -1% | 6,365 $m |
| 69 | KIA | Automotive | +12% | 6,326 $m |

| 67 | LEGO | FMCG | +25% | 6,691 $m |
| 68 | Panasonic | Electronics | -1% | 6,365 $m |
| 69 | KIA | Automotive | +12% | 6,326 $m |
| 70 | Santander | Financial Services | +2% | 6,223 $m |
| 71 | Discovery | Media | -9% | 5,944 $m |
| 72 | HUAWEI | Technology | +18% | 5,835 $m |
| 73 | Johnson-Johnson | FMCG | +5% | 5,790 $m |
| 74 | TIFFANY & CO | Luxury | -9% | 5,761 $m |
| 75 | KFC | Restaurants | +2% | 5,742 $m |
| 76 | mastercard | Financial Services | +3% | 5,736 $m |
| 77 | DHL | Logistics | +6% | 5,708 $m |
| 78 | LAND ROVER | Automotive | +11% | 5,696 $m |
| 79 | FedEx | Logistics | +9% | 5,579 $m |

Document title: Rankings - 2016 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2016/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:51:14 GMT

Appx07956

| 77 | | Logistics | +6% | 5,708 $m |
|----|----|----|----|----|
| 78 | | Automotive | +11% | 5,696 $m |
| 79 | | Logistics | +9% | 5,579 $m |
| 80 | | Automotive | +1% | 5,527 $m |
| 81 | PRADA | Luxury | -12% | 5,504 $m |
| 82 | CATERPILLAR | Diversified | -9% | 5,425 $m |
| 83 | BURBERRY | Luxury | -9% | 5,362 $m |
| 84 | xerox | Business Services | -12% | 5,290 $m |
| 85 | | Alcohol | +1% | 5,193 $m |
| 86 | | Beverages | -4% | 5,148 $m |
| 87 | Heineken | Alcohol | +6% | 5,123 $m |
| 88 | MINI | Automotive | +18% | 4,986 $m |
| 89 | DIOR | Luxury | NEW | 4,909 $m |

Document title: Rankings - 2016 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2016/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:51:14 GMT

Appx07957

| 87 | Heineken | Alcohol | +6% | 5,123 $m |
| 88 | MINI | Automotive | +18% | 4,986 $m |
| 89 | DIOR | Luxury | NEW | 4,909 $m |
| 90 | PayPal | Financial Services | +14% | 4,839 $m |
| 91 | John Deere | Diversified | -8% | 4,815 $m |
| 92 | Shell | Energy | -17% | 4,599 $m |
| 93 | Corona | Alcohol | +1% | 4,509 $m |
| 94 | MTV | Media | -9% | 4,320 $m |
| 95 | Johnnie Walker | Alcohol | -5% | 4,317 $m |
| 96 | Smirnoff | Alcohol | -4% | 4,252 $m |
| 97 | Moët & Chandon | Alcohol | 0% | 4,118 $m |
| 98 | Ralph Lauren | Apparel | -12% | 4,092 $m |
| 99 | Lenovo | Technology | -2% | 4,045 $m |

Appx07958

| | | | | |
|---|---|---|---|---|
| 95 |  | Alcohol | -5% | 4,317 $m |
| 96 | | Alcohol | -4% | 4,252 $m |
| 97 | | Alcohol | 0% | 4,118 $m |
| 98 | | Apparel | -12% | 4,092 $m |
| 99 | | Technology | -2% | 4,045 $m |
| 100 | | Automotive | NEW | 4,011 $m |

Get in touch

Pages

Home          Our Philosophy          Iconic Moves          About          Life at Interbrand          Best Brands          News
Views         Contact

Follow

Twitter       Facebook          LinkedIn          Instagram

Companies

Interbrand          HMKM          c_space          brandchannel:
Health

© 1973 - 2020 Interbrand. All Rights Reserved.    Site Map    Privacy policy

Return to 2015 report home

# The Best 100 Brands 2015 Rankings

Filter +

| 2015 Rank | Brand | Sector | Change in Brand Value | Brand Value |
|---|---|---|---|---|
| 01 | Apple | Technology | +43% | 170,276 $m |
| 02 | Google | Technology | +12% | 120,314 $m |
| 03 | Coca-Cola | Beverages | -4% | 78,423 $m |
| 04 | Microsoft | Technology | +11% | 67,670 $m |
| 05 | IBM | Business Services | -10% | 65,095 $m |
| 06 | Toyota | Automotive | +16% | 49,048 $m |
| 07 | Samsung | Technology | 0% | 45,297 $m |
| 08 | GE | Diversified | -7% | 42,267 $m |

Document title: Rankings - 2015 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2015/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 23:18:46 GMT

Appx07960

| 07 | SAMSUNG | Technology | 0% | 45,297 $m |
| 08 | GE | Diversified | -7% | 42,267 $m |
| 09 | McDonald's | Restaurants | -6% | 39,809 $m |
| 10 | amazon | Technology | +29% | 37,948 $m |
| 11 | BMW | Automotive | +9% | 37,212 $m |
| 12 | Mercedes | Automotive | +7% | 36,711 $m |
| 13 | Disney | Media | +13% | 36,514 $m |
| 14 | intel | Technology | +4% | 35,415 $m |
| 15 | CISCO | Business Services | -3% | 29,854 $m |
| 16 | ORACLE | Business Services | +5% | 27,283 $m |
| 17 | Nike | Sporting Goods | +16% | 23,070 $m |
| 18 | hp | Electronics | -3% | 23,056 $m |

**Appx07961**

| 17 | Nike | Sporting Goods | +16% | 23,070 $m |
| 18 | hp | Electronics | -3% | 23,056 $m |
| 19 | HONDA | Automotive | +6% | 22,975 $m |
| 20 | LOUIS VUITTON | Luxury | -1% | 22,250 $m |
| 21 | H&M | Apparel | +5% | 22,222 $m |
| 22 | Gillette | FMCG | -3% | 22,218 $m |
| 23 | Facebook | Technology | +54% | 22,029 $m |
| 24 | Pepsi | Beverages | +3% | 19,622 $m |
| 25 | American Express | Financial Services | -3% | 18,922 $m |
| 26 | SAP | Business Services | +8% | 18,768 $m |
| 27 | IKEA | Retail | +4% | 16,541 $m |
| 28 | Pampers | FMCG | +8% | 15,267 $m |

| 27 | | Retail | +4% | 16,541 $m |
| 28 | | FMCG | +8% | 15,267 $m |
| 29 | | Logistics | +2% | 14,723 $m |
| 30 | | Apparel | +16% | 14,031 $m |
| 31 | | Alcohol | +7% | 13,943 $m |
| 32 | | Retail | -3% | 13,940 $m |
| 33 | | Financial Services | +10% | 13,749 $m |
| 34 | | FMCG | -6% | 12,637 $m |
| 35 | | Automotive | -9% | 12,545 $m |
| 36 | | Beverages | +7% | 12,257 $m |
| 37 | | Financial Services | -11% | 11,656 $m |
| 38 | | Automotive | +6% | 11,578 $m |

Appx07963

| 37 | HSBC | Financial Services | -11% | 11,656 $m |
| 38 | Ford | Automotive | +6% | 11,578 $m |
| 39 | HYUNDAI | Automotive | +8% | 11,293 $m |
| 40 | Canon | Electronics | -4% | 11,278 $m |
| 41 | HERMÈS | Luxury | +22% | 10,944 $m |
| 42 | accenture | Business Services | +9% | 10,800 $m |
| 43 | L'ORÉAL | FMCG | +6% | 10,798 $m |
| 44 | Audi | Automotive | +5% | 10,328 $m |
| 45 | citi | Financial Services | +12% | 9,784 $m |
| 46 | | Financial Services | +9% | 9,526 $m |
| 47 | PHILIPS | Electronics | -8% | 9,400 $m |
| 48 | AXA | Financial Services | +14% | 9,254 $m |

Appx07964

| 47 | Philips | Electronics | -8% | 9,400 $m |
| 48 | AXA | Financial Services | +14% | 9,254 $m |
| 49 | Nissan | Automotive | +19% | 9,082 $m |
| 50 | GUCCI | Luxury | -14% | 8,882 $m |
| 51 | Danone | FMCG | +5% | 8,632 $m |
| 52 | Nestlé | FMCG | +7% | 8,588 $m |
| 53 | SIEMENS | Diversified | -1% | 8,553 $m |
| 54 | Allianz | Financial Services | +10% | 8,498 $m |
| 55 | Colgate | FMCG | +3% | 8,464 $m |
| 56 | Porsche | Automotive | +12% | 8,055 $m |
| 57 | Cartier | Luxury | +6% | 7,924 $m |
| 58 | SONY | Electronics | -5% | 7,702 $m |
| 59 | 3M | Diversified | +17% | 7,242 $m |

| 57 | Cartier | Luxury | +6% | 7,924 $m |
| 58 | SONY | Electronics | -5% | 7,702 $m |
| 59 | 3M | Diversified | +17% | 7,243 $m |
| 60 | Morgan Stanley | Financial Services | +12% | 7,083 $m |
| 61 | VISA | Financial Services | +15% | 6,870 $m |
| 62 | adidas | Sporting Goods | -8% | 6,811 $m |
| 63 | | Media | -12% | 6,583 $m |
| 64 | DISCOVERY | Media | +6% | 6,509 $m |
| 65 | Panasonic | Electronics | +2% | 6,436 $m |
| 66 | TIFFANY & CO. | Luxury | +6% | 6,306 $m |
| 67 | Starbucks | Restaurants | +16% | 6,266 $m |
| 68 | Adobe | Business Services | +17% | 6,257 $m |
| 69 | PRADA | Luxury | +4% | 6,222 $m |

Document title: Rankings - 2015 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2015/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 23:18:46 GMT

Appx07966

| 67 | Starbucks | Restaurants | +16% | 6,266 $m |
|----|-----------|-------------|------|----------|
| 68 | Adobe | Business Services | +17% | 6,257 $m |
| 69 | PRADA | Luxury | +4% | 6,222 $m |
| 70 | Santander | Financial Services | +13% | 6,097 $m |
| 71 | xerox | Business Services | -9% | 6,033 $m |
| 72 | CATERPILLAR | Diversified | -12% | 5,976 $m |
| 73 | BURBERRY | Luxury | +5% | 5,873 $m |
| 74 | KIA | Automotive | +5% | 5,666 $m |
| 75 | KFC | Restaurants | -7% | 5,639 $m |
| 76 | mastercard | Financial Services | +17% | 5,551 $m |
| 77 | Johnson-Johnson | FMCG | +7% | 5,533 $m |
| 78 | Shell | Energy | -12% | 5,530 $m |
| 79 | HARLEY-DAVIDSON | Automotive | +14% | 5,460 $m |

| 77 | | FMCG | +7% | 5,533 $m |
|---|---|---|---|---|
| 78 | | Energy | -12% | 5,530 $m |
| 79 | | Automotive | +14% | 5,460 $m |
| 80 | | Logistics | +6% | 5,391 $m |
| 81 | | Beverages | -5% | 5,365 $m |
| 82 | | FMCG | NEW | 5,362 $m |
| 83 | | Diversified | +2% | 5,208 $m |
| 84 | | Alcohol | +6% | 5,161 $m |
| 85 | | Automotive | +2% | 5,133 $m |
| 86 | | Logistics | +16% | 5,130 $m |
| 87 | | Automotive | +14% | 5,109 $m |
| 88 | | Technology | +15% | 4,952 $m |
| 89 | | Alcohol | +14% | 4,822 $m |

| 87 | | Automotive | +14% | 5,109 $m |
|----|----|----|----|----|
| 88 | HUAWEI | Technology | +15% | 4,952 $m |
| 89 | Heineken | Alcohol | +14% | 4,822 $m |
| 90 | MTV | Media | -7% | 4,763 $m |
| 91 | RALPH LAUREN | Apparel | -7% | 4,629 $m |
| 92 | JOHNNIE WALKER | Alcohol | -6% | 4,540 $m |
| 93 | Corona | Alcohol | +2% | 4,456 $m |
| 94 | SMIRNOFF | Alcohol | -4% | 4,407 $m |
| 95 | Kleenex | FMCG | -7% | 4,330 $m |
| 96 | BOSS HUGO BOSS | Apparel | +3% | 4,270 $m |
| 97 | PayPal | Financial Services | NEW | 4,251 $m |
| 98 | MINI | Automotive | NEW | 4,243 $m |
| 99 | MOËT & CHANDON | Alcohol | NEW | 4,131 $m |

Document title: Rankings - 2015 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2015/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 23:18:46 GMT

Appx07969



| 95 | Kleenex | FMCG | -7% | 4,330 $m |
| 96 | BOSS HUGO BOSS | Apparel | +3% | 4,270 $m |
| 97 | PayPal | Financial Services | NEW | 4,251 $m |
| 98 | MINI | Automotive | NEW | 4,243 $m |
| 99 | MOËT & CHANDON | Alcohol | NEW | 4,131 $m |
| 100 | Lenovo | Technology | NEW | 4,114 $m |

Get in touch

Pages

Home          Our Philosophy     Iconic Moves     About     Life at Interbrand     Best Brands     News
Views          Contact

Follow

Twitter     Facebook     LinkedIn     Instagram

Companies

Interbrand          HMKM          c_space          brandchannel:
Health

© 1973 - 2020 Interbrand. All Rights Reserved.     Site Map     Privacy policy

Document title: Rankings - 2015 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2015/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 23:18:46 GMT

Appx07970

# Best Global Brands 2014 Rankings

Filter +

| 2014 Rank | Brand | Sector | Change in Brand Value | Brand Value |
|---|---|---|---|---|
| 01 | Apple | Technology | +21% | 118,863 $m |
| 02 | Google | Technology | +15% | 107,439 $m |
| 03 | Coca-Cola | Beverages | +3% | 81,563 $m |
| 04 | IBM | Business Services | -8% | 72,244 $m |
| 05 | Microsoft | Technology | +3% | 61,154 $m |
| 06 | GE | Diversified | -3% | 45,480 $m |
| 07 | SAMSUNG | Technology | +15% | 45,462 $m |
| 08 | TOYOTA | Automotive | +20% | 42,392 $m |
| 09 | McDonald's | Restaurants | +1% | 42,254 $m |

Appx07971

| 07 | SAMSUNG | Technology | +15% | 45,462 $m |
|----|---------|------------|------|-----------|
| 08 | TOYOTA | Automotive | +20% | 42,392 $m |
| 09 | McDonald's | Restaurants | +1% | 42,254 $m |
| 10 | Mercedes-Benz | Automotive | +8% | 34,338 $m |
| 11 | BMW | Automotive | +7% | 34,214 $m |
| 12 | intel | Technology | -8% | 34,153 $m |
| 13 | Disney | Media | +14% | 32,223 $m |
| 14 | CISCO | Business Services | +6% | 30,936 $m |
| 15 | amazon | Technology | +25% | 29,478 $m |
| 16 | ORACLE | Business Services | +8% | 25,980 $m |
| 17 | hp | Electronics | -8% | 23,758 $m |
| 18 | Gillette | FMCG | -9% | 22,845 $m |
| 19 | LOUIS VUITTON | Luxury | -9% | 22,552 $m |

Document title: Rankings - 2014 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2014/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:56:58 GMT

Appx07972

| 17 | hp | Electronics | -8% | 23,758 $m |
|----|----|-------------|-----|-----------|
| 18 | Gillette | FMCG | -9% | 22,845 $m |
| 19 | LOUIS VUITTON | Luxury | -9% | 22,552 $m |
| 20 | HONDA | Automotive | +17% | 21,673 $m |
| 21 | H&M | Apparel | +16% | 21,083 $m |
| 22 | Nike | Sporting Goods | +16% | 19,875 $m |
| 23 | American Express | Financial Services | +11% | 19,510 $m |
| 24 | Pepsi | Beverages | +7% | 19,119 $m |
| 25 | SAP | Business Services | +4% | 17,340 $m |
| 26 | IKEA | Retail | +15% | 15,885 $m |
| 27 | ups | Logistics | +5% | 14,470 $m |
| 28 | ebay | Retail | +9% | 14,358 $m |
| 29 | f | Technology | +86% | 14,349 $m |

Appx07973

| 27 | UPS | Logistics | +5% | 14,470 $m |
| 28 | ebay | Retail | +9% | 14,358 $m |
| 29 | Facebook | Technology | +86% | 14,349 $m |
| 30 | Pampers | FMCG | +8% | 14,078 $m |
| 31 | VW | Automotive | +23% | 13,716 $m |
| 32 | Kellogg's | FMCG | +4% | 13,442 $m |
| 33 | HSBC | Financial Services | +8% | 13,142 $m |
| 34 | Budweiser | Alcohol | +3% | 13,024 $m |
| 35 | J.P.Morgan | Financial Services | +9% | 12,456 $m |
| 36 | ZARA | Apparel | +12% | 12,126 $m |
| 37 | Canon | Electronics | +6% | 11,702 $m |
| 38 | NESCAFÉ | Beverages | +7% | 11,406 $m |
| 39 | Ford | Automotive | +18% | 10,876 $m |

| 37 | Canon | Electronics | +6% | 11,702 $m |
| 38 | NESCAFÉ | Beverages | +7% | 11,406 $m |
| 39 | Ford | Automotive | +18% | 10,876 $m |
| 40 | HYUNDAI | Automotive | +16% | 10,409 $m |
| 41 | GUCCI | Luxury | +2% | 10,385 $m |
| 42 | PHILIPS | Electronics | +5% | 10,264 $m |
| 43 | L'ORÉAL | FMCG | +3% | 10,162 $m |
| 44 | accenture | Business Services | +4% | 9,882 $m |
| 45 | Audi | Automotive | +27% | 9,831 $m |
| 46 | HERMÈS | Luxury | +18% | 8,977 $m |
| 47 | | Financial Services | +3% | 8,758 $m |
| 48 | citi | Financial Services | +10% | 8,737 $m |
| 49 | SIEMENS | Diversified | +2% | 8,672 $m |

Document title: Rankings - 2014 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2014/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:56:58 GMT

Appx07975

| 47 | | Services | +3% | 8,758 $m |
|----|----|----|----|----|
| 48 | citi | Financial Services | +10% | 8,737 $m |
| 49 | SIEMENS | Diversified | +2% | 8,672 $m |
| 50 | Colgate | FMCG | +5% | 8,215 $m |
| 51 | | FMCG | +3% | 8,205 $m |
| 52 | SONY | Electronics | -3% | 8,133 $m |
| 53 | AXA | Financial Services | +14% | 8,120 $m |
| 54 | Nestlé | FMCG | +6% | 8,000 $m |
| 55 | Allianz �(ii) | Financial Services | +15% | 7,702 $m |
| 56 | NISSAN | Automotive | +23% | 7,623 $m |
| 57 | THOMSON REUTERS | Media | -8% | 7,472 $m |
| 58 | Cartier | Luxury | +8% | 7,449 $m |
| 59 | adidas | Sporting Goods | -2% | 7,378 $m |

Document title: Rankings - 2014 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2014/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:56:58 GMT

Appx07976

| | | | | |
|---|---|---|---|---|
| 57 | | Media | -5% | 7,472 $m |
| 58 | Cartier | Luxury | +8% | 7,449 $m |
| 59 | adidas | Sporting Goods | -2% | 7,378 $m |
| 60 | PORSCHE | Automotive | +11% | 7,171 $m |
| 61 | CATERPILLAR | Diversified | -4% | 6,812 $m |
| 62 | xerox | Business Services | -2% | 6,641 $m |
| 63 | Morgan Stanley | Financial Services | +11% | 6,334 $m |
| 64 | Panasonic | Electronics | +8% | 6,303 $m |
| 65 | | Energy | +14% | 6,288 $m |
| 66 | 3M | Diversified | +14% | 6,177 $m |
| 67 | Discovery | Media | +7% | 6,143 $m |
| 68 | | Restaurants | -2% | 6,059 $m |
| 69 | VISA | Financial Services | +10% | 5,998 $m |

Appx07977

| 68 | | Restaurants | -2% | 6,059 $m |
| 69 | VISA | Financial Services | +10% | 5,998 $m |
| 70 | PRADA | Luxury | +7% | 5,977 $m |
| 71 | TIFFANY & CO | Luxury | +9% | 5,936 $m |
| 72 | | Beverages | -3% | 5,646 $m |
| 73 | BURBERRY | Luxury | +8% | 5,594 $m |
| 74 | KIA | Automotive | +15% | 5,396 $m |
| 75 | Santander | Financial Services | +16% | 5,382 $m |
| 76 | | Restaurants | +22% | 5,382 $m |
| 77 | Adobe | Business Services | +9% | 5,333 $m |
| 78 | Johnson & Johnson | FMCG | +9% | 5,194 $m |
| 79 | John Deere | Diversified | +5% | 5,124 $m |

Document title: Rankings - 2014 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2014/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:56:58 GMT

Appx07978

| | | Services | | |
|---|---|---|---|---|
| 78 | Johnson&Johnson | FMCG | +9% | 5,194 $m |
| 79 | JOHN DEERE | Diversified | +5% | 5,124 $m |
| 80 | MTV | Media | +2% | 5,102 $m |
| 81 | DHL | Logistics | NEW | 5,084 $m |
| 82 | CHEVROLET | Automotive | +10% | 5,036 $m |
| 83 | RALPH LAUREN | Apparel | +9% | 4,979 $m |
| 84 | DURACELL | FMCG | +6% | 4,935 $m |
| 85 | JACK DANIEL'S | Alcohol | +5% | 4,884 $m |
| 86 | JOHNNIE WALKER | Alcohol | +2% | 4,842 $m |
| 87 | HARLEY-DAVIDSON | Automotive | +13% | 4,772 $m |
| 88 | mastercard | Financial Services | +13% | 4,758 $m |
| 89 | Kleenex | FMCG | +5% | 4,643 $m |

Appx07979

| 88 | mastercard | Financial Services | +13% | 4,758 $m |
|----|------------|--------------------|------|----------|
| 89 | Kleenex | FMCG | +5% | 4,643 $m |
| 90 | SMIRNOFF | Alcohol | +8% | 4,609 $m |
| 91 | LAND ROVER | Automotive | NEW | 4,473 $m |
| 92 | FedEx | Logistics | NEW | 4,414 $m |
| 93 | Corona | Alcohol | +3% | 4,387 $m |
| 94 | HUAWEI | Technology | NEW | 4,313 $m |
| 95 | Heineken | Alcohol | -3% | 4,221 $m |
| 96 | Pizza Hut | Restaurants | -2% | 4,196 $m |
| 97 | BOSS HUGO BOSS | Apparel | NEW | 4,143 $m |
| 98 | NOKIA | Technology | -44% | 4,138 $m |
| 99 | GAP | Apparel | +5% | 4,122 $m |

Document title: Rankings - 2014 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2014/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 20:56:58 GMT

**Appx07980**



| 95 | Heineken | Alcohol | -3% | 4,221 $m |
| 96 | Pizza Hut | Restaurants | -2% | 4,196 $m |
| 97 | BOSS HUGO BOSS | Apparel | NEW | 4,143 $m |
| 98 | NOKIA | Technology | -44% | 4,138 $m |
| 99 | GAP | Apparel | +5% | 4,122 $m |
| 100 | Nintendo | Electronics | -33% | 4,103 $m |

Get in touch

**Pages**

Home    Our Philosophy    Iconic Moves    About    Life at Interbrand    Best Brands    News
Views    Contact

**Follow**

Twitter    Facebook    LinkedIn    Instagram

**Companies**

Interbrand    HMKM    c_space    brandchannel:
Health

© 1973 - 2020 Interbrand. All Rights Reserved.    Site Map    Privacy policy

# Best Global Brands 2013 Rankings

Filter +

| 2013 Rank | Brand | Sector | Change in Brand Value | Brand Value |
|---|---|---|---|---|
| 01 | Apple | Technology | +28% | 98,316 $m |
| 02 | Google | Technology | +34% | 93,291 $m |
| 03 | Coca-Cola | Beverages | +2% | 79,213 $m |
| 04 | IBM | Business Services | +4% | 78,808 $m |
| 05 | Microsoft | Technology | +3% | 59,546 $m |
| 06 | GE | Diversified | +7% | 46,947 $m |
| 07 | McDonald's | Restaurants | +5% | 41,992 $m |
| 08 | SAMSUNG | Technology | +20% | 39,610 $m |
| 09 | intel | Technology | -5% | 37,257 $m |

Appx07982

| 07 | McDonald's | Restaurants | +5% | 41,992 $m |
| 08 | SAMSUNG | Technology | +20% | 39,610 $m |
| 09 | (intel) | Technology | -5% | 37,257 $m |
| 10 | TOYOTA | Automotive | +17% | 35,346 $m |
| 11 | Mercedes-Benz | Automotive | +6% | 31,904 $m |
| 12 | BMW | Automotive | +10% | 31,839 $m |
| 13 | CISCO | Business Services | +7% | 29,053 $m |
| 14 | Disney | Media | +3% | 28,147 $m |
| 15 | hp | Electronics | -1% | 25,843 $m |
| 16 | Gillette | FMCG | +1% | 25,105 $m |
| 17 | LOUIS VUITTON | Luxury | +6% | 24,893 $m |
| 18 | ORACLE | Business Services | +9% | 24,088 $m |
| 19 | amazon | Technology | +27% | 23,620 $m |

Appx07983

| 17 | LOUIS VUITTON | Luxury | +6% | 24,893 $m |
| 18 | ORACLE | Business Services | +9% | 24,088 $m |
| 19 | amazon | Technology | +27% | 23,620 $m |
| 20 | HONDA | Automotive | +7% | 18,490 $m |
| 21 | H&M | Apparel | +10% | 18,168 $m |
| 22 | Pepsi | Beverages | +8% | 17,892 $m |
| 23 | American Express | Financial Services | +12% | 17,646 $m |
| 24 | Nike | Sporting Goods | +13% | 17,085 $m |
| 25 | SAP | Business Services | +7% | 16,676 $m |
| 26 | IKEA | Retail | +8% | 13,818 $m |
| 27 | ups | Logistics | +5% | 13,763 $m |
| 28 | ebay | Retail | +20% | 13,162 $m |
| 29 | Pampers | FMCG | +15% | 13,035 $m |

**Appx07984**

| 27 | UPS | Logistics | +5% | 13,763 $m |
| 28 | ebay | Retail | +20% | 13,162 $m |
| 29 | Pampers | FMCG | +15% | 13,035 $m |
| 30 | Kellogg's | FMCG | +8% | 12,987 $m |
| 31 | Budweiser | Alcohol | +6% | 12,614 $m |
| 32 | HSBC | Financial Services | +7% | 12,183 $m |
| 33 | J.P.Morgan | Financial Services | 0% | 11,456 $m |
| 34 | VW | Automotive | +20% | 11,120 $m |
| 35 | Canon | Electronics | -9% | 10,989 $m |
| 36 | ZARA | Apparel | +14% | 10,821 $m |
| 37 | NESCAFÉ | Beverages | -4% | 10,651 $m |
| 38 | GUCCI | Luxury | +7% | 10,151 $m |
| 39 | L'ORÉAL | FMCG | +12% | 9,874 $m |

Document title: Rankings - 2013 - Best Global Brands - Best Brands - Interbrand
Capture URL: htps://www.interbrand.com/best-brands/best-global-brands/2013/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:03:13 GMT

Page 4 of 11

Appx07985

| 37 | NESCAFE | Beverages | -4% | 10,651 $m |
| 38 | GUCCI | Luxury | +7% | 10,151 $m |
| 39 | L'OREAL | FMCG | +12% | 9,874 $m |
| 40 | PHILIPS | Electronics | +8% | 9,813 $m |
| 41 | accenture | Business Services | +8% | 9,471 $m |
| 42 | Ford | Automotive | +15% | 9,181 $m |
| 43 | HYUNDAI | Automotive | +20% | 9,004 $m |
| 44 | | Financial Services | +12% | 8,536 $m |
| 45 | SIEMENS | Diversified | +13% | 8,503 $m |
| 46 | SONY | Electronics | -8% | 8,408 $m |
| 47 | | Media | -4% | 8,103 $m |
| 48 | citi | Financial Services | +5% | 7,973 $m |
| 49 | | FMCG | +6% | 7,968 $m |

Document title: Rankings - 2013 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2013/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:03:13 GMT

**Appx07986**

| 47 | THOMSON REUTERS | Media | -4% | 8,103 $m |
|---|---|---|---|---|
| 48 | citi | Financial Services | +5% | 7,973 $m |
| 49 | DANONE | FMCG | +6% | 7,968 $m |
| 50 | Colgate | FMCG | +2% | 7,833 $m |
| 51 | Audi | Automotive | +8% | 7,767 $m |
| 52 | Facebook | Technology | +43% | 7,732 $m |
| 53 | Heinz | FMCG | -1% | 7,648 $m |
| 54 | HERMES | Luxury | +23% | 7,616 $m |
| 55 | adidas | Sporting Goods | +12% | 7,535 $m |
| 56 | Nestlé | FMCG | +9% | 7,527 $m |
| 57 | NOKIA | Technology | -65% | 7,444 $m |
| 58 | CATERPILLAR | Diversified | +13% | 7,125 $m |
| 59 | AXA | Financial Services | +5% | 7,096 $m |

| | | | | |
|---|---|---|---|---|
| 57 | NOKIA | Technology | -65% | 7,444 $m |
| 58 | CATERPILLAR | Diversified | +13% | 7,125 $m |
| 59 | AXA | Financial Services | +5% | 7,096 $m |
| 60 | Cartier | Luxury | +26% | 6,897 $m |
| 61 | DELL | Electronics | -10% | 6,845 $m |
| 62 | xerox | Business Services | +1% | 6,779 $m |
| 63 | Allianz | Financial Services | +8% | 6,710 $m |
| 64 | PORSCHE | Automotive | +26% | 6,471 $m |
| 65 | NISSAN | Automotive | +25% | 6,203 $m |
| 66 | KFC | Restaurants | +3% | 6,192 $m |
| 67 | Nintendo | Electronics | -14% | 6,086 $m |
| 68 | Panasonic | Electronics | +1% | 5,821 $m |
| 69 | Sprite | Beverages | +2% | 5,811 $m |

**Appx07988**

| 68 | Panasonic | Electronics | +1% | 5,821 $m |
| 69 | Sprite | Beverages | +2% | 5,811 $m |
| 70 | Cartoon Network | Media | NEW | 5,756 $m |
| 71 | Morgan Stanley | Financial Services | -21% | 5,724 $m |
| 72 | PRADA | Luxury | +30% | 5,570 $m |
| 73 | Shell | Energy | +16% | 5,535 $m |
| 74 | VISA | Financial Services | +11% | 5,465 $m |
| 75 | TIFFANY & CO. | Luxury | +5% | 5,440 $m |
| 76 | 3M | Diversified | +16% | 5,413 $m |
| 77 | BURBERRY | Luxury | +20% | 5,189 $m |
| 78 | MTV | Media | -12% | 4,980 $m |
| 79 | Adobe | Business Services | +8% | 4,899 $m |

Document title: Rankings - 2013 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2013/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:03:13 GMT

Appx07989

| 78 | MTV | Media | -12% | 4,980 $m |
| 79 | Adobe | Business Services | +8% | 4,899 $m |
| 80 | JOHN DEERE | Diversified | +15% | 4,865 $m |
| 81 | Johnson&Johnson | FMCG | +9% | 4,777 $m |
| 82 | JOHNNIE WALKER | Alcohol | +10% | 4,745 $m |
| 83 | KIA | Automotive | +15% | 4,708 $m |
| 84 | Santander | Financial Services | -2% | 4,660 $m |
| 85 | DURACELL | FMCG | NEW | 4,645 $m |
| 86 | JACK DANIEL'S | Alcohol | +7% | 4,642 $m |
| 87 | AVON | FMCG | -11% | 4,610 $m |
| 88 | RALPH LAUREN | Apparel | +14% | 4,584 $m |
| 89 | CHEVROLET | Automotive | NEW | 4,578 $m |

Appx07990

| 88 | RALPH LAUREN | Apparel | +14% | 4,584 $m |
| 89 | CHEVROLET | Automotive | NEW | 4,578 $m |
| 90 | Kleenex | FMCG | +2% | 4,428 $m |
| 91 | Starbucks | Restaurants | +8% | 4,399 $m |
| 92 | Heineken | Alcohol | +10% | 4,331 $m |
| 93 | Corona | Alcohol | +5% | 4,276 $m |
| 94 | Pizza Hut | Restaurants | +2% | 4,269 $m |
| 95 | SMIRNOFF | Alcohol | +5% | 4,262 $m |
| 96 | HARLEY-DAVIDSON | Automotive | +10% | 4,230 $m |
| 97 | mastercard | Financial Services | +8% | 4,206 $m |
| 98 | Ferrari | Automotive | +6% | 4,013 $m |
| 99 | MOËT & CHANDON | Alcohol | +3% | 3,943 $m |

Document title: Rankings - 2013 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2013/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:03:13 GMT

Appx07991

| 95 | SMIRNOFF | Alcohol | +5% | 4,262 $m |
| 96 | HARLEY-DAVIDSON | Automotive | +10% | 4,230 $m |
| 97 | mastercard | Financial Services | +8% | 4,206 $m |
| 98 | Ferrari | Automotive | +6% | 4,013 $m |
| 99 | MOËT & CHANDON | Alcohol | +3% | 3,943 $m |
| 100 | GAP | Apparel | +5% | 3,920 $m |

Get in touch

Pages

Home    Our Philosophy    Iconic Moves    About    Life at Interbrand    Best Brands    News
Views    Contact

Follow

Twitter    Facebook    LinkedIn    Instagram

Companies

Interbrand          HMKM          c_space          brandchannel:
Health

© 1974 - 2020 Interbrand. All Rights Reserved.    Site Map    Privacy policy

# Best Global Brands 2012 Rankings

Filter +

| 2012 Rank | Brand | Sector | Change in Brand Value | Brand Value |
|---|---|---|---|---|
| 01 | Coca-Cola | Beverages | +8% | 77,839 $m |
| 02 | Apple | Technology | +129% | 76,568 $m |
| 03 | IBM | Business Services | +8% | 75,532 $m |
| 04 | Google | Technology | +26% | 69,726 $m |
| 05 | Microsoft | Technology | -2% | 57,853 $m |
| 06 | GE | Diversified | +2% | 43,682 $m |
| 07 | McDonald's | Restaurants | +13% | 40,062 $m |
| 08 | intel | Technology | +12% | 39,385 $m |
| 09 | SAMSUNG | Technology | +40% | 32,893 $m |

Document title: Rankings - 2012 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2012/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:06:38 GMT

Appx07993

| 07 | | Restaurants | +13% | 40,062 $m |
|----|---|-------------|------|-----------|
| 08 | intel | Technology | +12% | 39,385 $m |
| 09 | SAMSUNG | Technology | +40% | 32,893 $m |
| 10 | TOYOTA | Automotive | +9% | 30,280 $m |
| 11 | Mercedes | Automotive | +10% | 30,097 $m |
| 12 | BMW | Automotive | +18% | 29,052 $m |
| 13 | Disney | Media | -5% | 27,438 $m |
| 14 | CISCO | Business Services | +7% | 27,197 $m |
| 15 | hp | Electronics | -8% | 26,087 $m |
| 16 | Gillette | FMCG | +4% | 24,898 $m |
| 17 | LOUIS VUITTON | Luxury | +2% | 23,577 $m |
| 18 | ORACLE | Business Services | +28% | 22,126 $m |
| 19 | NOKIA | Technology | -16% | 21,009 $m |

Document title: Rankings - 2012 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2012/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:06:38 GMT

Appx07994

| 17 | LOUIS VUITTON | Luxury | +2% | 23,577 $m |
| 18 | ORACLE | Business Services | +28% | 22,126 $m |
| 19 | NOKIA | Technology | -16% | 21,009 $m |
| 20 | amazon | Technology | +46% | 18,625 $m |
| 21 | HONDA | Automotive | -11% | 17,280 $m |
| 22 | Pepsi | Beverages | +14% | 16,594 $m |
| 23 | H&M | Apparel | +1% | 16,571 $m |
| 24 | American Express | Financial Services | +8% | 15,702 $m |
| 25 | SAP | Business Services | +8% | 15,641 $m |
| 26 | Nike | Sporting Goods | +4% | 15,126 $m |
| 27 | ups | Logistics | +4% | 13,088 $m |
| 28 | IKEA | Retail | +8% | 12,808 $m |
| 29 | Kellogg's | FMCG | +6% | 12,068 $m |

| 27 | UPS | Logistics | +4% | 13,088 $m |
|---|---|---|---|---|
| 28 | IKEA | Retail | +8% | 12,808 $m |
| 29 | Kellogg's | FMCG | +6% | 12,068 $m |
| 30 | Canon | Electronics | +3% | 12,029 $m |
| 31 | Budweiser | Alcohol | -3% | 11,872 $m |
| 32 | J.P.Morgan | Financial Services | -8% | 11,471 $m |
| 33 | HSBC | Financial Services | -4% | 11,378 $m |
| 34 | Pampers | FMCG | NEW | 11,296 $m |
| 35 | NESCAFÉ | Beverages | -8% | 11,089 $m |
| 36 | ebay | Retail | +12% | 10,947 $m |
| 37 | ZARA | Apparel | +18% | 9,488 $m |
| 38 | GUCCI | Luxury | +8% | 9,446 $m |
| 39 | VW | Automotive | +18% | 9,252 $m |

Document title: Rankings - 2012 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2012/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:06:38 GMT

Appx07996

| 37 | ZARA | Apparel | +18% | 9,488 $m |
| 38 | GUCCI | Luxury | +8% | 9,446 $m |
| 39 | VW | Automotive | +18% | 9,252 $m |
| 40 | SONY | Electronics | -8% | 9,111 $m |
| 41 | PHILIPS | Electronics | +5% | 9,066 $m |
| 42 | L'ORÉAL | FMCG | +1% | 8,821 $m |
| 43 | accenture | Business Services | +9% | 8,745 $m |
| 44 | THOMSON REUTERS | Media | -11% | 8,444 $m |
| 45 | Ford | Automotive | +6% | 7,958 $m |
| 46 | Heinz | FMCG | +1% | 7,722 $m |
| 47 | Colgate | FMCG | +7% | 7,643 $m |
| 48 | | Financial Services | -16% | 7,599 $m |
| 49 | DELL | Electronics | -9% | 7,591 $m |

Appx07997

| 47 | | FMCG | +7% | 7,643 $m |
|---|---|---|---|---|
| 48 | | Financial Services | -16% | 7,599 $m |
| 49 | DELL | Electronics | -9% | 7,591 $m |
| 50 | citi | Financial Services | -12% | 7,570 $m |
| 51 | SIEMENS | Diversified | -5% | 7,534 $m |
| 52 | | FMCG | +8% | 7,498 $m |
| 53 | HYUNDAI | Automotive | +24% | 7,473 $m |
| 54 | Morgan Stanley | Financial Services | +9% | 7,218 $m |
| 55 | | Automotive | +17% | 7,196 $m |
| 56 | Nintendo | Electronics | -8% | 7,082 $m |
| 57 | Nestlé | FMCG | +5% | 6,916 $m |
| 58 | AXA | Financial Services | +1% | 6,748 $m |
| 59 | xerox | Business Services | +5% | 6,714 $m |

Appx07998

| 57 | Nestlé | FMCG | +5% | 3,010 $m |
|----|--------|------|-----|----------|
| 58 | AXA | Financial Services | +1% | 6,748 $m |
| 59 | xerox | Business Services | +5% | 6,714 $m |
| 60 | adidas | Sporting Goods | +9% | 6,699 $m |
| 61 | CATERPILLAR | Diversified | +13% | 6,306 $m |
| 62 | Allianz | Financial Services | +16% | 6,184 $m |
| 63 | HERMÈS | Luxury | +15% | 6,182 $m |
| 64 | KFC | Restaurants | +2% | 5,994 $m |
| 65 | Panasonic | Electronics | +14% | 5,765 $m |
| 66 | Sprite | Beverages | +2% | 5,709 $m |
| 67 | MTV | Media | -12% | 5,648 $m |
| 68 | Cartier | Luxury | +15% | 5,495 $m |
| 69 | Facebook | Technology | NEW | 5,421 $m |

| 68 | Cartier | Luxury | +15% | 5,495 $m |
| 69 | | Technology | NEW | 5,421 $m |
| 70 | TIFFANY & CO. | Luxury | +15% | 5,159 $m |
| 71 | AVON | FMCG | -4% | 5,151 $m |
| 72 | PORSCHE | Automotive | +12% | 5,149 $m |
| 73 | NISSAN | Automotive | +30% | 4,969 $m |
| 74 | VISA | Financial Services | +10% | 4,944 $m |
| 75 | Shell | Energy | +7% | 4,788 $m |
| 76 | Santander | Financial Services | -6% | 4,771 $m |
| 77 | 3M | Diversified | +18% | 4,656 $m |
| 78 | Adobe | Business Services | +9% | 4,557 $m |
| 79 | Johnson & Johnson | FMCG | +8% | 4,378 $m |

| | | | | |
|---|---|---|---|---|
| 78 | Adobe | Business Services | +9% | 4,557 $m |
| 79 | Johnson & Johnson | FMCG | +8% | 4,378 $m |
| 80 | Kleenex | FMCG | -7% | 4,360 $m |
| 81 | Jack Daniel's | Alcohol | +1% | 4,352 $m |
| 82 | BURBERRY | Luxury | +16% | 4,342 $m |
| 83 | JOHNNIE WALKER | Alcohol | +12% | 4,301 $m |
| 84 | PRADA | Luxury | NEW | 4,271 $m |
| 85 | JOHN DEERE | Diversified | +16% | 4,221 $m |
| 86 | Pizza Hut | Restaurants | +2% | 4,193 $m |
| 87 | KIA | Automotive | NEW | 4,089 $m |
| 88 | Starbucks | Restaurants | +11% | 4,062 $m |
| 89 | Corona | Alcohol | +3% | 4,061 $m |

Document title: Rankings - 2012 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2012/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:06:38 GMT

Appx08001

| 88 | | Restaurants | +11% | 4,062 $m |
| 89 | | Alcohol | +3% | 4,061 $m |
| 90 | | Alcohol | +5% | 4,050 $m |
| 91 | | Apparel | NEW | 4,038 $m |
| 92 | | Alcohol | +3% | 3,939 $m |
| 93 | | Electronics | -39% | 3,922 $m |
| 94 | | Financial Services | NEW | 3,896 $m |
| 95 | | Financial Services | -5% | 3,866 $m |
| 96 | | Automotive | +10% | 3,857 $m |
| 97 | | Media | -13% | 3,851 $m |
| 98 | | Alcohol | -13% | 3,824 $m |
| 99 | | Automotive | +5% | 3,770 $m |



| | | Services | | |
|---|---|---|---|---|
| 95 | CREDIT SUISSE | Financial Services | -5% | 3,866 $m |
| 96 | HARLEY-DAVIDSON | Automotive | +10% | 3,857 $m |
| 97 | YAHOO! | Media | -13% | 3,851 $m |
| 98 | MOËT & CHANDON | Alcohol | -13% | 3,824 $m |
| 99 | Ferrari | Automotive | +5% | 3,770 $m |
| 100 | GAP | Apparel | -8% | 3,731 $m |

Get in touch

Pages

Home    Our Philosophy    Iconic Moves    About    Life at Interbrand    Best Brands    News
Views    Contact

Follow

Twitter    Facebook    LinkedIn    Instagram

Companies

Interbrand    HMKM    c_space    brandchannel:
Health

© 1973 - 2020 Interbrand. All Rights Reserved.    Site Map    Privacy policy

# Best Global Brands 2011 Rankings

Filter +

| 2011 Rank | Brand | Sector | Change in Brand Value | Brand Value |
|---|---|---|---|---|
| 01 | Coca-Cola | Beverages | +2% | 71,861 $m |
| 02 | IBM | Business Services | +8% | 69,905 $m |
| 03 | Microsoft | Technology | -3% | 59,087 $m |
| 04 | Google | Technology | +27% | 55,317 $m |
| 05 | GE | Diversified | 0% | 42,808 $m |
| 06 | McDonald's | Restaurants | +6% | 35,593 $m |
| 07 | intel | Technology | +10% | 35,217 $m |
| 08 | Apple | Technology | +58% | 33,492 $m |
| 09 | Disney | Media | +1% | 29,018 $m |

Document title: Rankings - 2011 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2011/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:08:13 GMT

Appx08004

| 07 | (intel) | Technology | +10% | 35,217 $m |
| 08 | 🍎 | Technology | +58% | 33,492 $m |
| 09 | Disney | Media | +1% | 29,018 $m |
| 10 | hp | Electronics | +6% | 28,479 $m |
| 11 | TOYOTA | Automotive | +6% | 27,764 $m |
| 12 | Mercedes | Automotive | +9% | 27,445 $m |
| 13 | CISCO | Business Services | +9% | 25,309 $m |
| 14 | NOKIA | Technology | -15% | 25,071 $m |
| 15 | BMW | Automotive | +10% | 24,554 $m |
| 16 | Gillette | FMCG | +3% | 23,997 $m |
| 17 | SAMSUNG | Technology | +20% | 23,430 $m |
| 18 | LOUIS VUITTON | Luxury | +6% | 23,172 $m |
| 19 | HONDA | Automotive | +5% | 19,431 $m |

Document title: Rankings - 2011 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2011/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:08:13 GMT

**Appx08005**

| 17 | SAMSUNG | Technology | +20% | 23,430 $m |
| 18 | LOUIS VUITTON | Luxury | +6% | 23,172 $m |
| 19 | HONDA | Automotive | +5% | 19,431 $m |
| 20 | ORACLE | Business Services | +16% | 17,262 $m |
| 21 | H&M | Apparel | +2% | 16,459 $m |
| 22 | Pepsi | Beverages | +4% | 14,590 $m |
| 23 | | Financial Services | +5% | 14,572 $m |
| 24 | SAP | Business Services | +14% | 14,542 $m |
| 25 | Nike | Sporting Goods | +6% | 14,528 $m |
| 26 | amazon | Technology | +32% | 12,758 $m |
| 27 | ups | Logistics | +6% | 12,536 $m |
| 28 | J.P.Morgan | Financial Services | +1% | 12,437 $m |
| 29 | Budweiser | Alcohol | 0% | 12,252 $m |

Appx08006

| 27 | UPS | Logistics | +6% | 12,536 $m |
|----|-----|-----------|-----|-----------|
| 28 | J.P.Morgan | Financial Services | +1% | 12,437 $m |
| 29 | Budweiser | Alcohol | 0% | 12,252 $m |
| 30 | NESCAFÉ | Beverages | -5% | 12,115 $m |
| 31 | IKEA | Retail | -5% | 11,863 $m |
| 32 | HSBC | Financial Services | +2% | 11,792 $m |
| 33 | Canon | Electronics | +2% | 11,715 $m |
| 34 | Kellogg's | FMCG | +3% | 11,372 $m |
| 35 | SONY | Electronics | -13% | 9,880 $m |
| 36 | ebay | Retail | +16% | 9,805 $m |
| 37 | Thomson Reuters | Media | +6% | 9,515 $m |
| 38 | | Financial Services | -3% | 9,091 $m |
| 39 | GUCCI | Luxury | +5% | 8,763 $m |

| 37 | | Media | +6% | 9,515 $m |
| 38 | | Financial Services | -3% | 9,091 $m |
| 39 | GUCCI | Luxury | +5% | 8,763 $m |
| 40 | L'OREAL | FMCG | +9% | 8,699 $m |
| 41 | PHILIPS | Electronics | 0% | 8,658 $m |
| 42 | citi | Financial Services | -3% | 8,620 $m |
| 43 | DELL | Electronics | -6% | 8,347 $m |
| 44 | ZARA | Apparel | +8% | 8,065 $m |
| 45 | accenture | Business Services | +7% | 8,005 $m |
| 46 | SIEMENS | Diversified | +8% | 7,900 $m |
| 47 | VW | Automotive | +14% | 7,857 $m |
| 48 | Nintendo | Electronics | -14% | 7,731 $m |
| 49 | Heinz | FMCG | +1% | 7,609 $m |

Document title: Rankings - 2011 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2011/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:08:13 GMT

**Appx08008**

| 47 | W | Automotive | +14% | 7,857 $m |
|---|---|---|---|---|
| 48 | Nintendo | Electronics | -14% | 7,731 $m |
| 49 | Heinz | FMCG | +1% | 7,609 $m |
| 50 | Ford | Automotive | +4% | 7,483 $m |
| 51 | Colgate | FMCG | +3% | 7,127 $m |
| 52 | DANONE | FMCG | +9% | 6,936 $m |
| 53 | AXA | Financial Services | 0% | 6,694 $m |
| 54 | Morgan Stanley | Financial Services | -4% | 6,634 $m |
| 55 | Nestle | FMCG | +1% | 6,613 $m |
| 56 | BlackBerry | Electronics | -5% | 6,424 $m |
| 57 | xerox | Business Services | +5% | 6,414 $m |
| 58 | MTV | Media | -5% | 6,383 $m |
| 59 | Audi | Automotive | +13% | 6,171 $m |

Document title: Rankings - 2011 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2011/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:08:13 GMT

**Appx08009**

| 57 | | Services | +5% | 6,414 $m |
|----|---|----------|-----|----------|
| 58 | MTV | Media | -5% | 6,383 $m |
| 59 | Audi | Automotive | +13% | 6,171 $m |
| 60 | adidas | Sporting Goods | +12% | 6,154 $m |
| 61 | HYUNDAI | Automotive | +19% | 6,005 $m |
| 62 | KFC | Restaurants | +1% | 5,902 $m |
| 63 | Sprite | Beverages | -3% | 5,604 $m |
| 64 | CATERPILLAR | Diversified | +19% | 5,598 $m |
| 65 | AVON | FMCG | +6% | 5,376 $m |
| 66 | HERMES | Luxury | +12% | 5,356 $m |
| 67 | Allianz | Financial Services | +9% | 5,345 $m |
| 68 | Santander | Financial Services | +5% | 5,088 $m |
| 69 | Panasonic | Electronics | +16% | 5,047 $m |

Appx08010

| | | Services | +4% | 5,088 $m |
|---|---|---|---|---|
| 68 | Santander | Financial Services | +5% | 5,088 $m |
| 69 | Panasonic | Electronics | +16% | 5,047 $m |
| 70 | Cartier | Luxury | +18% | 4,781 $m |
| 71 | Kleenex | FMCG | +3% | 4,672 $m |
| 72 | PORSCHE | Automotive | +4% | 4,580 $m |
| 73 | TIFFANY & CO | Luxury | +9% | 4,498 $m |
| 74 | Shell | Energy | +12% | 4,483 $m |
| 75 | VISA | Financial Services | +12% | 4,478 $m |
| 76 | YAHOO! | Media | -11% | 4,413 $m |
| 77 | MOET & CHANDON | Alcohol | +9% | 4,383 $m |
| 78 | JACK DANIEL'S | Alcohol | +7% | 4,319 $m |
| 79 | BARCLAYS | Financial Services | +1% | 4,259 $m |

| 78 | | Alcohol | +7% | 4,319 $m |
| 79 | BARCLAYS | Financial Services | +1% | 4,259 $m |
| 80 | Adobe | Business Services | +15% | 4,170 $m |
| 81 | Pizza Hut | Restaurants | +3% | 4,092 $m |
| 82 | CREDIT SUISSE | Financial Services | +2% | 4,090 $m |
| 83 | Johnson&Johnson | FMCG | -2% | 4,072 $m |
| 84 | GAP | Apparel | +2% | 4,040 $m |
| 85 | 3M | Diversified | +10% | 3,945 $m |
| 86 | Corona | Alcohol | +2% | 3,924 $m |
| 87 | NIVEA | FMCG | +4% | 3,883 $m |
| 88 | Johnnie Walker | Alcohol | +8% | 3,842 $m |
| 89 | SMIRNOFF | Alcohol | +6% | 3,841 $m |

Document title: Rankings - 2011 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2011/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:08:13 GMT

**Appx08012**

| | | | | |
|---|---|---|---|---|
| 88 | JOHNNIE WALKER | Alcohol | +8% | 3,842 $m |
| 89 | SMIRNOFF | Alcohol | +6% | 3,841 $m |
| 90 | NISSAN | Automotive | NEW | 3,819 $m |
| 91 | Heineken | Alcohol | +8% | 3,809 $m |
| 92 | UBS | Financial Services | 0% | 3,799 $m |
| 93 | ARMANI | Luxury | +10% | 3,794 $m |
| 94 | ZURICH | Financial Services | +8% | 3,769 $m |
| 95 | BURBERRY LONDON ENGLAND | Luxury | +20% | 3,732 $m |
| 96 | Starbucks | Restaurants | +10% | 3,663 $m |
| 97 | JOHN DEERE | Diversified | NEW | 3,651 $m |
| 98 | HTC | Electronics | NEW | 3,605 $m |
| 99 | Ferrari | Automotive | +1% | 3,591 $m |

Document title: Rankings - 2011 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2011/ranking/#?listFormat=ls
Capture timestamp (UTC): Fri, 14 Feb 2020 21:08:13 GMT

Appx08013



| | | Services | | |
|---|---|---|---|---|
| 95 | BURBERRY | Luxury | +20% | 3,732 $m |
| 96 | (Starbucks) | Restaurants | +10% | 3,663 $m |
| 97 | JOHN DEERE | Diversified | NEW | 3,651 $m |
| 98 | hTC | Electronics | NEW | 3,605 $m |
| 99 | Ferrari | Automotive | +1% | 3,591 $m |
| 100 | HARLEY-DAVIDSON | Automotive | +7% | 3,512 $m |

Get in touch

Pages

Home       Our Philosophy      Iconic Moves      About      Life at Interbrand      Best Brands      News
Views      Contact

Follow

Twitter      Facebook      LinkedIn      Instagram

Companies

Interbrand          HMKM                 c_space              brandchannel:
Health

© 2011 - 2020 Interbrand. All Rights Reserved.     Site Map     Privacy policy

Appx08014

# Best Global Brands 2010 Rankings

Filter +

| 2010 Rank | Brand | Sector | Change in Brand Value | Brand Value |
|---|---|---|---|---|
| 01 | Coca-Cola | Beverages | +2% | 70,452 $m |
| 02 | IBM | Business Services | +7% | 64,727 $m |
| 03 | Microsoft | Technology | +7% | 60,895 $m |
| 04 | Google | Technology | +36% | 43,557 $m |
| 05 | GE | Diversified | -10% | 42,808 $m |
| 06 | McDonald's | Restaurants | +4% | 33,578 $m |
| 07 | intel | Technology | +4% | 32,015 $m |
| 08 | NOKIA | Technology | -15% | 29,495 $m |
| 09 | Disney | Media | +1% | 28,731 $m |
| 10 | hp | Electronics | +12% | 26,867 $m |
| 11 | TOYOTA | Automotive | -16% | 26,192 $m |
| 12 | Mercedes-Benz | Automotive | +6% | 25,179 $m |
| 13 | Gillette | FMCG | +2% | 23,298 $m |
| 14 | CISCO | Business Services | +5% | 23,219 $m |
| 15 | BMW | Automotive | +3% | 22,322 $m |
| 16 | LOUIS VUITTON | Luxury | +4% | 21,860 $m |
| 17 | Apple | Technology | +37% | 21,143 $m |
| 18 | Marlboro | Tobacco | +5% | 19,961 $m |
| 19 | SAMSUNG | Technology | +11% | 19,491 $m |

Document title: Rankings - 2010 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2010/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 22:55:39 GMT

Appx08015

| 17 | | Technology | +37% | 21,143 $m |
|----|---|---|---|---|
| 18 | Marlboro | Tobacco | +5% | 19,961 $m |
| 19 | SAMSUNG | Technology | +11% | 19,491 $m |
| 20 | HONDA | Automotive | +4% | 18,506 $m |
| 21 | H&M | Apparel | +5% | 16,136 $m |
| 22 | ORACLE | Business Services | +9% | 14,881 $m |
| 23 | pepsi | Beverages | +3% | 14,061 $m |
| 24 | | Financial Services | -7% | 13,944 $m |
| 25 | | Sporting Goods | +4% | 13,706 $m |
| 26 | SAP | Business Services | +5% | 12,756 $m |
| 27 | NESCAFÉ | Beverages | -4% | 12,753 $m |
| 28 | IKEA | Retail | +4% | 12,487 $m |
| 29 | J.P.Morgan | Financial Services | +29% | 12,314 $m |
| 30 | Budweiser | Alcohol | +4% | 12,252 $m |
| 31 | UPS | Logistics | +2% | 11,826 $m |
| 32 | HSBC | Financial Services | +10% | 11,561 $m |
| 33 | Canon | Electronics | +10% | 11,485 $m |
| 34 | SONY | Electronics | -5% | 11,356 $m |
| 35 | Kellogg's | FMCG | +6% | 11,041 $m |
| 36 | amazon | Technology | +23% | 9,665 $m |
| 37 | | Financial Services | +1% | 9,372 $m |
| 38 | Nintendo | Electronics | -2% | 8,990 $m |
| 39 | THOMSON REUTERS | Media | +6% | 8,976 $m |

Document title: Rankings - 2010 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2010/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 22:55:39 GMT

Appx08016

| 37 | | Financial Services | +1% | 9,372 $m |
|----|--|--------------------|-----|----------|
| 38 | Nintendo | Electronics | -2% | 8,990 $m |
| 39 | THOMSON REUTERS | Media | +6% | 8,976 $m |
| 40 | citi | Financial Services | -13% | 8,887 $m |
| 41 | DELL Technologies | Electronics | -14% | 8,880 $m |
| 42 | PHILIPS | Electronics | +7% | 8,696 $m |
| 43 | ebay | Retail | +15% | 8,453 $m |
| 44 | G U C C I | Luxury | +2% | 8,346 $m |
| 45 | L'OREAL | FMCG | +3% | 7,981 $m |
| 46 | Heinz | FMCG | +4% | 7,534 $m |
| 47 | accenture | Business Services | -3% | 7,481 $m |
| 48 | ZARA | Apparel | +10% | 7,468 $m |
| 49 | SIEMENS | Diversified | 0% | 7,315 $m |
| 50 | Ford | Automotive | +3% | 7,195 $m |
| 51 | Colgate | FMCG | +6% | 6,919 $m |
| 52 | Morgan Stanley | Financial Services | +8% | 6,911 $m |
| 53 | VW | Automotive | +6% | 6,892 $m |
| 54 | BlackBerry | Electronics | +32% | 6,762 $m |
| 55 | MTV | Media | +3% | 6,719 $m |
| 56 | AXA | Financial Services | +3% | 6,694 $m |
| 57 | Nestlé | FMCG | +4% | 6,548 $m |
| 58 | DANONE | FMCG | +7% | 6,363 $m |
| 59 | xerox | Business Services | -5% | 6,109 $m |

Document title: Rankings - 2010 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2010/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 22:55:39 GMT

**Appx08017**

| 57 | Nestlé | FMCG | +4% | 6,548 $m |
| 58 | Danone | FMCG | +7% | 6,363 $m |
| 59 | xerox | Business Services | -5% | 6,109 $m |
| 60 | KFC | Restaurants | +2% | 5,844 $m |
| 61 | Sprite | Beverages | NEW | 5,777 $m |
| 62 | adidas | Sporting Goods | +2% | 5,495 $m |
| 63 | Audi | Automotive | +9% | 5,461 $m |
| 64 | A V O N | FMCG | +3% | 5,072 $m |
| 65 | HYUNDAI | Automotive | +9% | 5,033 $m |
| 66 | YAHOO! | Media | -3% | 4,958 $m |
| 67 | Allianz | Financial Services | +28% | 4,904 $m |
| 68 | Santander | Financial Services | NEW | 4,846 $m |
| 69 | HERMÈS PARIS | Luxury | +4% | 4,782 $m |
| 70 | CATERPILLAR | Diversified | -6% | 4,704 $m |
| 71 | Kleenex | FMCG | +3% | 4,536 $m |
| 72 | PORSCHE | Automotive | +4% | 4,404 $m |
| 73 | Panasonic | Electronics | +3% | 4,351 $m |
| 74 | BARCLAYS | Financial Services | NEW | 4,218 $m |
| 75 | Johnson&Johnson | FMCG | +8% | 4,155 $m |
| 76 | TIFFANY & CO. | Luxury | +3% | 4,127 $m |
| 77 | Cartier | Luxury | +2% | 4,052 $m |
| 78 | JACK DANIELS | Alcohol | NEW | 4,036 $m |
| 79 | MOËT & CHANDON | Alcohol | +7% | 4,021 $m |

Appx08018

| | | | | |
|---|---|---|---|---|
| 77 | Cartier | Luxury | +2% | 4,052 $m |
| 78 | JACK DANIEL'S | Alcohol | NEW | 4,036 $m |
| 79 | MOËT & CHANDON | Alcohol | +7% | 4,021 $m |
| 80 | CREDIT SUISSE | Financial Services | NEW | 4,010 $m |
| 81 | Shell | Energy | +24% | 4,003 $m |
| 82 | VISA | Financial Services | +26% | 3,998 $m |
| 83 | Pizza Hut | Restaurants | +2% | 3,973 $m |
| 84 | GAP | Apparel | +1% | 3,961 $m |
| 85 | Corona | Alcohol | NEW | 3,847 $m |
| 86 | UBS | Financial Services | -13% | 3,812 $m |
| 87 | NIVEA | FMCG | +5% | 3,734 $m |
| 88 | Adobe | Business Services | +15% | 3,626 $m |
| 89 | SMIRNOFF | Alcohol | -2% | 3,624 $m |
| 90 | 3M | Diversified | NEW | 3,586 $m |
| 91 | Ferrari | Automotive | +1% | 3,562 $m |
| 92 | JOHNNIE WALKER | Alcohol | NEW | 3,557 $m |
| 93 | Heineken | Alcohol | NEW | 3,516 $m |
| 94 | ZURICH | Financial Services | NEW | 3,496 $m |
| 95 | ARMANI | Luxury | +4% | 3,443 $m |
| 96 | LANCÔME PARIS | FMCG | +5% | 3,403 $m |
| 97 | Starbucks | Restaurants | +2% | 3,339 $m |
| 98 | HARLEY-DAVIDSON | Automotive | -24% | 3,281 $m |
| 99 | Campbell's | FMCG | +5% | 3,241 $m |

Document title: Rankings - 2010 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2010/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 22:55:39 GMT

Appx08019

| 84 | GAP | Apparel | +1% | 3,961 $m |
| 85 | Corona | Alcohol | NEW | 3,847 $m |
| 86 | UBS | Financial Services | -13% | 3,812 $m |
| 87 | NIVEA | FMCG | +5% | 3,734 $m |
| 88 | Adobe | Business Services | +15% | 3,626 $m |
| 89 | SMIRNOFF | Alcohol | -2% | 3,624 $m |
| 90 | 3M | Diversified | NEW | 3,586 $m |
| 91 | Ferrari | Automotive | +1% | 3,562 $m |
| 92 | JOHNNIE WALKER | Alcohol | NEW | 3,557 $m |
| 93 | Heineken | Alcohol | NEW | 3,516 $m |
| 94 | ZURICH | Financial Services | NEW | 3,496 $m |
| 95 | ARMANI | Luxury | +4% | 3,443 $m |
| 96 | LANCÔME | FMCG | +5% | 3,403 $m |
| 97 | Starbucks | Restaurants | +2% | 3,339 $m |
| 98 | Harley-Davidson | Automotive | -24% | 3,281 $m |
| 99 | Campbell's | FMCG | +5% | 3,241 $m |
| 100 | BURBERRY LONDON ENGLAND | Luxury | 0% | 3,110 $m |



Document title: Rankings - 2010 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2010/ranking/#?listFormat=ls
Capture timestamp (UTC): Wed, 19 Feb 2020 22:55:39 GMT

Appx08020

**EXHIBIT 3**



Appx08022





Document title: BrandZ
Capture URL: https://www.brandz.com/US
Capture timestamp (UTC): Fri, 21 Feb 2020 22:47:35 GMT

Page 2 of 2

**Appx08023**

**BRANDZ**™

ABOUT  PRESS  ROZIE  BRANDS  COMPARE  **PUBLICATIONS**  CATEGORIES  WPP COLLEAGUES

« Back

Select Language ▼    ♡    Share this +

| Report | US | ▼ | Year | 2018 | ▼ | GO! |

### DOWNLOAD REPORT
English

### PRESS RELEASE
English

### DOWNLOAD INFOGRAPHIC
English

## HIGHLIGHTS

BRAND VALUE : TECH IS TOPS

MEDIA: Medium term trends continue

US TOP 100 BRANDS: KEY TAKEAWAY THOUGHT STARTERS

CROSS CATEGORY TRENDS

KEY RESULTS

Overview: Strong Brands Prove Their Value

Economy and Demographics

BRAND CONTRIBUTION

## MORE NEWS ↓

## MOST VALUABLE BRANDZ 2018

Want to compare brandz ? just select two or more , click the compare valuation or ranking buttons and a graph will appear , The number of data points will vary depending on how many years we have been valuing individual country brands.

**SELECT BRANDS AND COMPARE RANKING**    **SELECT BRANDS AND COMPARE VALUATIONS**

| 1 Google | 2 Apple | 3 amazon | 4 Microsoft | 5 facebook | 6 VISA | 7 AT&T | 8 McDonald's | 9 IBM | 10 Marlboro |
|---|---|---|---|---|---|---|---|---|---|
| $265,256.00 M | $276,919.00 M | $165,256.00 M | $165,404.00 M | $161,201.00 M | $121,692.00 M | $114,915.00 M | $110,268.00 M | $102,129.00 M | $91,507.00 M |

| 11 verizon | 12 Coca-Cola | 13 UPS | 14 Disney | 15 mastercard | 16 WELLS FARGO | 17 GE | 18 Starbucks | 19 xfinity | 20 THE HOME DEPOT |
|---|---|---|---|---|---|---|---|---|---|
| $69,946.00 M | $78,356.00 M | $58,614.00 M | $56,302.00 M | $56,416.00 M | $55,256.00 M | $48,435.00 M | $48,071.00 M | $44,756.00 M | $41,666.00 M |

## VIEW ALL BRANDS ↓

## COUNTDOWN VIDEO



**BRANDZ** TOP **100** MOST VALUABLE **US** BRANDS **2018**

**BRANDZ**™

Copyright © BrandZ. All rights reserved

Document title: BrandZ
Capture URL: https://www.brandz.com/US
Capture timestamp (UTC): Fri, 21 Feb 2020 22:48:31 GMT

**Appx08024**





Document title: BrandZ
Capture URL: https://www.brandz.com/US
Capture timestamp (UTC): Fri, 21 Feb 2020 22:48:31 GMT
Page 2 of 2

Appx08025

**EXHIBIT 4**



**Interbrand**

Search our work Q

Return to 2019 report home

# Best Global Brands 2019 Rankings

Filter +

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 01 | 02 | 03 | 04 | 05 | 06 | 07 | 08 |
| Apple | Google | amazon | Microsoft | Coca-Cola | SAMSUNG | TOYOTA | Mercedes |
| +9% | +8% | +24% | +17% | -4% | +2% | +5% | +5% |
| 234,241.8m | 167,713.9m | 125,263.9m | 108,847.8m | 63,365.8m | 61,098.9m | 56,246.8m | 50,832.8m |
| 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| McDonald's | Disney | BMW | IBM | intel | f | CISCO | Nike |
| +4% | +11% | -6% | -6% | -7% | -12% | +3% | +7% |
| 45,362.8m | 44,352.8m | 41,440.9m | 40,381.8m | 40,197.9m | 39,857.9m | 35,559.8m | 32,376.9m |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| LOUIS VUITTON | ORACLE | GE | SAP | HONDA | CHANEL | | Pepsi |
| +14% | +1% | -22% | +10% | +3% | +11% | +13% | -1% |
| 32,223.9m | 26,288.9m | 25,566.9m | 25,092.9m | 24,422.8m | 22,134.9m | 21,629.9m | 20,488.9m |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 |
| J.P.Morgan | IKEA | ups | HERMÈS | ZARA | H&M | accenture | Budweiser |
| +8% | +5% | +7% | +9% | -3% | -3% | +14% | +3% |
| 19,044.9m | 18,407.9m | 18,072.9m | 17,920.9m | 17,175.9m | 16,345.9m | 16,205.9m | 16,018.9m |
| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
| GUCCI | Pampers | Ford | HYUNDAI | Gillette | NESCAFÉ | Adobe | VW |
| +23% | -5% | +2% | +5% | -18% | +4% | +20% | +6% |
| 15,949.9m | 15,773.9m | 14,325.9m | 14,156.9m | 13,753.9m | 13,605.9m | 12,937.9m | 12,921.9m |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
| citi | Audi | Allianz | ebay | adidas | AXA | HSBC | Starbucks |
| +10% | +4% | +12% | -8% | +11% | +6% | +5% | +23% |
| 12,697.9m | 12,689.9m | 12,078.9m | 12,010.9m | 11,992.9m | 11,830.9m | 11,816.9m | 11,798.9m |
| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
| | PORSCHE | L'ORÉAL | NISSAN | | hp | VISA | SONY |
| -4% | +9% | +4% | -6% | -4% | +4% | +19% | +13% |
| 11,661.9m | 11,652.9m | 11,569.9m | 11,502.9m | 11,352.9m | 10,891.9m | 10,756.9m | 10,514.9m |
| 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
| Kellogg's | SIEMENS | | Nestlé | Canon | mastercard | DELL | 3M |
| -2% | +1% | +4% | +7% | -9% | +25% | NEW | -1% |
| 10,419.9m | 10,298.9m | 9,915.9m | 9,534.9m | 9,482.9m | 9,430.9m | 9,086.9m | 9,035.9m |
| 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 |
| NETFLIX | Colgate | Santander | Cartier | Morgan Stanley | salesforce | Hewlett Packard Enterprise | PayPal |
| +10% | +2% | +13% | +7% | -7% | +24% | -3% | +15% |
| 8,963.9m | 8,824.9m | 8,521.9m | 8,192.9m | 8,185.9m | 8,004.9m | 7,909.9m | 7,804.9m |
| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
| FedEx | HUAWEI | LEGO | CATERPILLAR | Ferrari | KIA | Corona | JACK DANIEL'S |
| +2% | -9% | +5% | +19% | +12% | -7% | +15% | +13% |
| 6,996.9m | 6,887.9m | 6,864.9m | 6,791.9m | 6,498.9m | 6,428.9m | 6,369.9m | 6,347.9m |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
| Panasonic | DIOR | DHL | JOHN DEERE | LAND ROVER | Johnson&Johnson | Uber | Heineken |
| -2% | +16% | +2% | +9% | -6% | -8% | NEW | +4% |
| 6,189.9m | 6,045.9m | 5,987.9m | 5,853.9m | 5,855.9m | 5,720.9m | 5,714.9m | 5,626.9m |

Document title: Rankings - 2019 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2019/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 23:08:27 GMT

Appx08027

| Rank | Brand | Change | Value |
|---|---|---|---|
| 33 | J.P.Morgan | +8% | 19,044 $m |
| 34 | IKEA | +5% | 18,407 $m |
| 35 | UPS | +7% | 18,072 $m |
| 36 | HERMÈS | +9% | 17,920 $m |
| 37 | ZARA | -3% | 17,175 $m |
| 38 | H&M | -3% | 16,345 $m |
| 39 | accenture | +14% | 16,205 $m |
| 40 | Budweiser | +3% | 16,016 $m |
| 41 | GUCCI | +23% | 15,949 $m |
| 42 | Pampers | -5% | 15,773 $m |
| 43 | Ford | +2% | 14,325 $m |
| 44 | HYUNDAI | +5% | 14,156 $m |
| 45 | Gillette | -18% | 13,753 $m |
| 46 | NESCAFÉ | +4% | 13,605 $m |
| 47 | Adobe | +20% | 12,937 $m |
| 48 | VW | +6% | 12,921 $m |
| 49 | citi | +10% | 12,697 $m |
| 50 | AUDI | +4% | 12,689 $m |
| 51 | Allianz | +12% | 12,078 $m |
| 52 | ebay | -8% | 12,010 $m |
| 53 | adidas | +11% | 11,992 $m |
| 54 | AXA | +6% | 11,830 $m |
| 55 | HSBC | +5% | 11,816 $m |
| 56 | Starbucks | +23% | 11,798 $m |
| 57 | Philips | -4% | 11,661 $m |
| 58 | Porsche | +9% | 11,652 $m |
| 59 | L'ORÉAL | +4% | 11,589 $m |
| 60 | NISSAN | -6% | 11,502 $m |
| 61 | | -4% | 11,352 $m |
| 62 | hp | +4% | 10,891 $m |
| 63 | VISA | +19% | 10,756 $m |
| 64 | SONY | +13% | 10,514 $m |
| 65 | Kellogg's | -2% | 10,419 $m |
| 66 | SIEMENS | +1% | 10,259 $m |
| 67 | | +4% | 9,915 $m |
| 68 | | +7% | 9,534 $m |
| 69 | Canon | -9% | 9,482 $m |
| 70 | mastercard | +25% | 9,430 $m |
| 71 | DELL | NEW | 9,086 $m |
| 72 | 3M | -1% | 9,035 $m |
| 73 | NETFLIX | +10% | 8,963 $m |
| 74 | Colgate | +2% | 8,824 $m |
| 75 | Santander | +13% | 8,521 $m |
| 76 | Cartier | +7% | 8,192 $m |
| 77 | Morgan Stanley | -7% | 8,180 $m |
| 78 | salesforce | +24% | 8,004 $m |
| 79 | Hewlett Packard Enterprise | -3% | 7,909 $m |
| 80 | PayPal | +15% | 7,604 $m |
| 81 | FedEx | +2% | 6,996 $m |
| 82 | HUAWEI | -9% | 6,807 $m |
| 83 | LEGO | +5% | 6,804 $m |
| 84 | CATERPILLAR | +19% | 6,791 $m |
| 85 | Ferrari | +12% | 6,458 $m |
| 86 | KIA | -7% | 6,429 $m |
| 87 | Corona | +15% | 6,369 $m |
| 88 | Jack Daniels | +13% | 6,347 $m |
| 89 | Panasonic | -2% | 6,189 $m |
| 90 | DIOR | +16% | 6,046 $m |
| 91 | DHL | +2% | 5,987 $m |
| 92 | JOHN DEERE | +9% | 5,883 $m |
| 93 | LAND ROVER | -6% | 5,855 $m |
| 94 | Johnson & Johnson | -8% | 5,720 $m |
| 95 | Uber | NEW | 5,714 $m |
| 96 | Heineken | +4% | 5,626 $m |
| 97 | Nintendo | +18% | 5,550 $m |
| 98 | MINI | +5% | 5,532 $m |
| 99 | Discovery | -4% | 5,525 $m |
| 100 | Spotify | +7% | 5,516 $m |
| | KFC | +1% | 5,509 $m |
| | Tiffany & Co | -5% | 5,335 $m |
| | Hennessy | +12% | 5,297 $m |
| | BURBERRY | +4% | 5,205 $m |
| 97 | Shell | -3% | 5,105 $m |
| 98 | LinkedIn | NEW | 4,836 $m |
| 99 | Harley-Davidson | -7% | 4,793 $m |
| 100 | PRADA | -1% | 4,781 $m |



Get in touch

Pages:
Home   Our Philosophy   Iconic Moves   About   Life at Interbrand   Best Brands   News   Views   Contact

Follow:
Twitter   Facebook   LinkedIn   Instagram

Companies:
Interbrand Health      HMKM      c_space      brandchannel:

© 1974 - 2020 Interbrand. All Rights Reserved.   Site Map.   Privacy notice.



Return to 2018 report home

# Best Global Brands 2018
# Rankings

Filter +

| | | | |
|---|---|---|---|
| **01** Apple<br>+16%<br>214,480 $m | **02** Google<br>+10%<br>155,506 $m | **03** amazon<br>+56%<br>100,764 $m | **04** Microsoft<br>+16%<br>92,715 $m |
| **05** Coca-Cola<br>-5%<br>66,341 $m | **06** SAMSUNG<br>+6%<br>59,890 $m | **07** TOYOTA<br>+6%<br>53,404 $m | **08** Mercedes-Benz<br>+2%<br>48,601 $m |
| **09** Facebook<br>-6%<br>45,168 $m | **10** McDonald's<br>+5%<br>43,417 $m | **11** intel<br>+10%<br>43,293 $m | **12** IBM<br>-8%<br>42,972 $m |
| **13** BMW<br>-1%<br>41,006 $m | **14** Disney<br>-2%<br>39,874 $m | **15** cisco<br>+8%<br>34,575 $m | **16** GE<br>-26%<br>32,757 $m |
| **17** Nike<br>+11%<br>30,120 $m | **18** LOUIS VUITTON<br>+23%<br>28,152 $m | **19** ORACLE<br>-5%<br>26,133 $m | **20** HONDA<br>+4%<br>23,682 $m |
| **21** SAP<br>+1%<br>22,885 $m | **22** Pepsi<br>+2%<br>20,798 $m | **23** CHANEL<br>NEW<br>20,005 $m | **24** Intel?<br>+8%<br>19,139 $m |
| **25** ZARA<br>-5%<br>17,712 $m | **26** J.P.Morgan<br>+12%<br>17,567 $m | **27** IKEA<br>-5%<br>17,458 $m | **28** Gillette<br>-7%<br>16,864 $m |
| **29** ups<br>+3%<br>16,849 $m | **30** H&M<br>-18%<br>16,826 $m | **31** Pampers<br>+1%<br>16,617 $m | **32** HERMES<br>+15%<br>16,372 $m |
| **33** Budweiser<br>+2%<br>15,627 $m | **34** accenture<br>+14%<br>14,214 $m | **35** Ford<br>+3%<br>13,995 $m | **36** HYUNDAI<br>+3%<br>13,535 $m |
| **37** NESCAFÉ<br>+3%<br>13,053 $m | **38** ebay<br>-2%<br>13,017 $m | **39** GUCCI<br>+30%<br>12,942 $m | **40** NISSAN<br>+6%<br>12,213 $m |
| **41** VW<br>+6%<br>12,201 $m | **42** Audi<br>+1%<br>12,187 $m | **43** Philips<br>+8%<br>12,104 $m | **44** Goldman Sachs<br>+8%<br>11,769 $m |
| **45** citi<br>+9%<br>11,577 $m | **46** HSBC<br>+6%<br>11,208 $m | **47** AXA<br>0%<br>11,116 $m | **48** L'ORÉAL<br>+4%<br>11,102 $m |
| **49** Allianz<br>+8%<br>10,821 $m | **50** adidas<br>+17%<br>10,772 $m | **51** Adobe<br>+19%<br>10,748 $m | **52** PORSCHE<br>+6%<br>10,707 $m |
| **53** Kellogg's<br>-3%<br>10,634 $m | **54** hp<br>+9%<br>10,433 $m | **55** Canon<br>+6%<br>10,380 $m | **56** SIEMENS<br>+1%<br>10,132 $m |
| **57** Starbucks<br>+10%<br>9,615 $m | **58** Gillette?<br>+2%<br>9,533 $m | **59** SONY<br>+10%<br>9,316 $m | **60** 3M<br>+2%<br>9,104 $m |
| **61** VISA<br>+15%<br>9,021 $m | **62** Nestlé<br>+2%<br>8,938 $m | **63** Morgan Stanley<br>+7%<br>8,802 $m | **64** Colgate<br>+4%<br>8,659 $m |
| **65** Hewlett Packard Enterprise<br>-9%<br>8,157 $m | **66** NETFLIX<br>+45%<br>8,111 $m | **67** Cartier<br>+1%<br>7,646 $m | **68** HUAWEI<br>+14%<br>7,578 $m |
| **69** Santander<br>+13%<br>7,547 $m | **70** mastercard<br>+19%<br>7,545 $m | **71** KIA<br>+4%<br>6,925 $m | **72** FedEx<br>+10%<br>6,890 $m |
| **73** PayPal<br>+22%<br>6,821 $m | **74** LEGO<br>-7%<br>6,533 $m | **75** MINISO<br>+23%<br>6,432 $m | **76** Panasonic<br>+5%<br>6,293 $m |
| **77** Johnson&Johnson<br>+3%<br>6,231 $m | **78** LAND ROVER<br>+2%<br>6,221 $m | **79** DHL<br>+3%<br>5,981 $m | **80** Ferrari<br>+18%<br>5,760 $m |
| **81** Discovery<br>+6%<br>5,755 $m | **82** CATERPILLAR<br>+18%<br>5,730 $m | **83** TIFFANY & CO.<br>+5%<br>5,642 $m | **84** JACK DANIEL'S<br>+6%<br>5,641 $m |
| **85** Corona<br>+16%<br>5,517 $m | **86** KFC<br>+3%<br>5,481 $m | **87** Heineken<br>+4%<br>5,393 $m | **88** John Deere<br>+12%<br>5,375 $m |

| Rank | Brand | Change | Brand Value |
|---|---|---|---|
| 25 | ZARA | -5% | 17,712 $m |
| 26 | J.P.Morgan | +12% | 17,567 $m |
| 27 | IKEA | -5% | 17,458 $m |
| 28 | Gillette | -7% | 16,864 $m |
| 29 | UPS | +3% | 16,849 $m |
| 30 | H&M | -18% | 16,826 $m |
| 31 | Pampers | +1% | 16,617 $m |
| 32 | HERMÈS | +15% | 16,372 $m |
| 33 | Budweiser | +2% | 15,627 $m |
| 34 | accenture | +14% | 14,214 $m |
| 35 | Ford | +3% | 13,995 $m |
| 36 | HYUNDAI | +3% | 13,535 $m |
| 37 | NESCAFÉ | +3% | 13,053 $m |
| 38 | ebay | -2% | 13,017 $m |
| 39 | GUCCI | +30% | 12,942 $m |
| 40 | NISSAN | +6% | 12,213 $m |
| 41 | Volkswagen | +6% | 12,201 $m |
| 42 | Audi | +1% | 12,187 $m |
| 43 | (logo) | +5% | 12,104 $m |
| 44 | (logo) | +8% | 11,769 $m |
| 45 | citi | +9% | 11,577 $m |
| 46 | HSBC | +6% | 11,208 $m |
| 47 | AXA | 0% | 11,116 $m |
| 48 | L'ORÉAL | +4% | 11,102 $m |
| 49 | Allianz | +8% | 10,821 $m |
| 50 | adidas | +17% | 10,772 $m |
| 51 | Adobe | +19% | 10,748 $m |
| 52 | PORSCHE | +6% | 10,707 $m |
| 53 | Kellogg's | -3% | 10,634 $m |
| 54 | hp | +9% | 10,433 $m |
| 55 | Canon | +6% | 10,380 $m |
| 56 | SIEMENS | +1% | 10,132 $m |
| 57 | Starbucks | +10% | 9,615 $m |
| 58 | Danone | +2% | 9,533 $m |
| 59 | SONY | +10% | 9,316 $m |
| 60 | 3M | +2% | 9,104 $m |
| 61 | VISA | +15% | 9,021 $m |
| 62 | Nestlé | +2% | 8,938 $m |
| 63 | Morgan Stanley | +7% | 8,802 $m |
| 64 | Colgate | +4% | 8,639 $m |
| 65 | Hewlett Packard Enterprise | -9% | 8,187 $m |
| 66 | NETFLIX | +45% | 8,111 $m |
| 67 | Cartier | +1% | 7,646 $m |
| 68 | HUAWEI | +14% | 7,578 $m |
| 69 | Santander | +13% | 7,547 $m |
| 70 | mastercard | +19% | 7,545 $m |
| 71 | KIA | +4% | 6,925 $m |
| 72 | FedEx | +10% | 6,890 $m |
| 73 | PayPal | +22% | 6,621 $m |
| 74 | LEGO | -7% | 6,533 $m |
| 75 | (logo) | +23% | 6,432 $m |
| 76 | Panasonic | +5% | 6,293 $m |
| 77 | Johnson & Johnson | +3% | 6,231 $m |
| 78 | LAND ROVER | +2% | 6,221 $m |
| 79 | DHL | +3% | 5,901 $m |
| 80 | Ferrari | +18% | 5,760 $m |
| 81 | Discovery | +6% | 5,756 $m |
| 82 | CATERPILLAR | +18% | 5,730 $m |
| 83 | TIFFANY & CO. | +5% | 5,642 $m |
| 84 | Jack Daniel's | +6% | 5,641 $m |
| 85 | Corona | +16% | 5,617 $m |
| 86 | KFC | +3% | 5,481 $m |
| 87 | Heineken | +4% | 5,393 $m |
| 88 | JOHN DEERE | +12% | 5,378 $m |
| 89 | Shell | +9% | 5,276 $m |
| 90 | MINI | +3% | 5,254 $m |
| 91 | DIOR | +14% | 5,233 $m |
| 92 | Spotify | NEW | 5,176 $m |
| 93 | Harley-Davidson | -9% | 5,161 $m |
| 94 | BURBERRY | -3% | 4,989 $m |
| 95 | PRADA | +2% | 4,812 $m |
| 96 | Sprite | -2% | 4,733 $m |
| 97 | Johnnie Walker | +7% | 4,731 $m |
| 98 | Hennessy | NEW | 4,722 $m |
| 99 | Nintendo | NEW | 4,696 $m |
| 100 | SUBARU | NEW | 4,214 $m |

Get in touch



Pages:
Home   Our Philosophy   Iconic Moves   About   Life at Interbrand   Best Brands   News   Views   Contact

Follow:
Twitter   Facebook   LinkedIn   Instagram

Companies:
Interbrand Health   HMKM   c_space   brandchannel:

© 1974 - 2020 Interbrand. All Rights Reserved.   Site Map.   Privacy notice

Document title: Rankings - 2018 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2018/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:50:30 GMT

Appx08030



Return to 2017 report home

# Best Global Brands 2017
# Rankings

Filter +

| 01 | 02 | 03 | 04 | 05 TOP GROWING | 06 | 07 | 08 TOP GROWING |
|---|---|---|---|---|---|---|---|
| Apple | Google | Microsoft | Coca-Cola | amazon | SAMSUNG | TOYOTA | f |
| +3% | +6% | +10% | –5% | +29% | +9% | –6% | +48% |
| 184,154 $m | 141,703 $m | 79,999 $m | 69,733 $m | 64,796 $m | 56,249 $m | 50,291 $m | 48,188 $m |

| 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|
| Mercedes | IBM | GE | McDonald's | BMW | Disney | intel | CISCO |
| +10% | –11% | +3% | +5% | 0% | +5% | +7% | +3% |
| 47,829 $m | 46,829 $m | 44,208 $m | 41,533 $m | 41,521 $m | 40,772 $m | 39,459 $m | 31,930 $m |

| 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
|---|---|---|---|---|---|---|---|
| ORACLE | Nike | LOUIS VUITTON | HONDA | SAP | Pepsi | H&M | ZARA |
| +3% | +8% | –4% | +3% | +6% | +1% | –10% | +11% |
| 27,466 $m | 27,021 $m | 22,919 $m | 22,696 $m | 22,635 $m | 20,491 $m | 20,488 $m | 18,573 $m |

| 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 |
|---|---|---|---|---|---|---|---|
| IKEA | Gillette | American Express | Pampers | UPS | J.P.Morgan | Budweiser | HERMÈS |
| +4% | –9% | –3% | +2% | +7% | +11% | +2% | +11% |
| 18,472 $m | 18,200 $m | 17,787 $m | 16,416 $m | 16,387 $m | 15,749 $m | 15,375 $m | 14,210 $m |

| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
|---|---|---|---|---|---|---|---|
| Ford | ebay | HYUNDAI | NESCAFÉ | accenture | Audi | NISSAN | Volkswagen |
| +5% | +1% | +5% | +1% | +2% | +2% | +4% | +1% |
| 13,643 $m | 13,224 $m | 13,193 $m | 12,661 $m | 12,471 $m | 12,023 $m | 11,534 $m | 11,522 $m |

| 41 | 42 | 43 | 44 TOP GROWING | 45 | 46 | 47 | 48 |
|---|---|---|---|---|---|---|---|
| Gucci? | AXA | Kellogg's | L'ORÉAL | citi | HSBC | PORSCHE |  |
| +2% | +5% | –6% | +16% | –2% | +3% | +1% | +6% |
| 11,519 $m | 11,073 $m | 10,972 $m | 10,864 $m | 10,674 $m | 10,599 $m | 10,534 $m | 10,129 $m |

| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
|---|---|---|---|---|---|---|---|
| Allianz | SIEMENS | GUCCI | Canon | hp | Panasonic | adidas | Adobe |
| +6% | +6% | +6% | –12% | –8% | +1% | +17% | +19% |
| 10,059 $m | 9,862 $m | 9,969 $m | 9,788 $m | 9,541 $m | 9,322 $m | 9,216 $m | 9,060 $m |

| 57 | 58 | 59 | 60 TOP GROWING | 61 | 62 | 63 TOP GROWING | 64 |
|---|---|---|---|---|---|---|---|
| Hewlett Packard Enterprise | 3M | Nestlé | Starbucks | SONY | Colgate | Morgan Stanley | VISA |
| –19% | +9% | 0% | +16% | +2% | –1% | +14% | +1% |
| 8,951 $m | 8,947 $m | 8,726 $m | 8,704 $m | 8,474 $m | 8,325 $m | 8,203 $m | 7,815 $m |

| 65 | 66 | 67 | 68 | 69 | 70 TOP GROWING | 71 | 72 TOP GROWING |
|---|---|---|---|---|---|---|---|
| Cartier | Thomson Reuters | LEGO | Santander | KIA | HUAWEI | mastercard | FedEx |
| –2% | +4% | +5% | +8% | +6% | +14% | +11% | +12% |
| 7,547 $m | 7,100 $m | 7,024 $m | 6,702 $m | 6,683 $m | 6,676 $m | 6,300 $m | 6,255 $m |

| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 TOP GROWING |
|---|---|---|---|---|---|---|---|
| LAND-ROVER | Johnson & Johnson | Panasonic | DHL | HARLEY-DAVIDSON | NETFLIX | Discovery | PayPal |
| +7% | +4% | –6% | 0% | +3% | NEW | –9% | +12% |
| 6,090 $m | 6,041 $m | 5,983 $m | 5,719 $m | 5,671 $m | 5,592 $m | 5,411 $m | 5,408 $m |

| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
|---|---|---|---|---|---|---|---|
| TIFFANY & CO. | JACK DANIEL'S | KFC | smart | Heineken | BURBERRY | MINI | Ferrari |
| –6% | +3% | –7% | NEW | +1% | –4% | +3% | NEW |
| 5,394 $m | 5,332 $m | 5,313 $m | 5,224 $m | 5,181 $m | 5,135 $m | 5,114 $m | 4,876 $m |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **IKEA** +4% 18,472 $m | **Gillette** -9% 18,200 $m | -3% 17,787 $m | **Pampers** +2% 16,416 $m | **ups** +7% 16,387 $m | **J.P.Morgan** +11% 15,749 $m | **Budweiser** +2% 15,375 $m | **HERMES** +11% 14,210 $m |
| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
| **Ford** +5% 13,643 $m | **ebay** +1% 13,224 $m | **HYUNDAI** +5% 13,193 $m | **NESCAFÉ** +1% 12,661 $m | **accenture** +4% 12,471 $m | **Audi** +2% 12,023 $m | **NISSAN** +4% 11,534 $m | **VW** +1% 11,522 $m |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
| **Philips** +2% 11,519 $m | **AXA** +5% 11,073 $m | **Kellogg's** -6% 10,972 $m | +16% 10,864 $m | **L'ORÉAL** -2% 10,674 $m | **citi** +3% 10,599 $m | **HSBC** +1% 10,534 $m | **Porsche** +6% 10,129 $m |
| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
| **Allianz** +6% 10,059 $m | **SIEMENS** +6% 9,902 $m | **GUCCI** +6% 9,969 $m | **Canon** -12% 9,788 $m | **hp** -8% 9,541 $m | **Danone** +1% 9,322 $m | **adidas** +17% 9,216 $m | **Adobe** +19% 9,060 $m |
| 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
| **Hewlett Packard Enterprise** -19% 8,951 $m | **3M** +9% 8,947 $m | **Nestlé** 0% 8,728 $m | **Starbucks** +16% 8,704 $m | **SONY** +2% 8,474 $m | **Colgate** -1% 8,320 $m | **Morgan Stanley** +14% 8,205 $m | **VISA** +1% 7,815 $m |
| 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 |
| **Cartier** -2% 7,547 $m | +4% 7,100 $m | **LEGO** +5% 7,024 $m | **Santander** +8% 6,702 $m | **KIA** +6% 6,683 $m | **HUAWEI** +14% 6,676 $m | **mastercard** +11% 6,350 $m | **FedEx** +12% 6,259 $m |
| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
| **LAND ROVER** +7% 6,090 $m | **Johnson & Johnson** +4% 6,041 $m | **Panasonic** -6% 5,983 $m | **DHL** 0% 5,715 $m | +3% 5,671 $m | **NETFLIX** NEW 5,592 $m | -9% 5,411 $m | **PayPal** +12% 5,408 $m |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
| **Tiffany & Co.** -6% 5,394 $m | **JACK DANIEL'S** +3% 5,332 $m | **KFC** -7% 5,313 $m | NEW 5,224 $m | **Heineken** +1% 5,181 $m | **BURBERRY** -4% 5,135 $m | **MINI** +3% 5,114 $m | **Ferrari** NEW 4,876 $m |
| 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 |
| **CATERPILLAR** -10% 4,868 $m | **Sprite** -6% 4,842 $m | **Shell** +5% 4,823 $m | **John Deere** -1% 4,783 $m | **Corona** +6% 4,776 $m | **PRADA** -14% 4,716 $m | **DIOR** -7% 4,587 $m | **Johnnie Walker** +2% 4,465 $m |
| 97 | 98 | 99 | 100 | | | | |
| **SMIRNOFF** +1% 4,298 $m | **TESLA** 0% 4,009 $m | **MOËT & CHANDON** -3% 4,006 $m | **Lenovo** -1% 4,004 $m | | | | |



Get in touch

Pages:
Home   Our Philosophy   Iconic Moves   About   Life at Interbrand   Best Brands   News   Views   Contact

Follow:
Twitter   Facebook   LinkedIn   Instagram

Companies:
Interbrand Health     HMKM     c_space     brandchannel:

© 1975 - 2020 Interbrand. All Rights Reserved.   Site Map   Privacy Policy



**Interbrand**

Search our work

Return to 2016 report home

# Best Global Brands 2016
# Rankings

Filter +

| 01 | 02 | 03 | 04 | 05 | 06 | 07 | 08 |
|---|---|---|---|---|---|---|---|
| Apple | Google | Coca-Cola | Microsoft | TOYOTA | IBM | SAMSUNG | amazon |
| +5% | +11% | -7% | +8% | +9% | -19% | +14% | +33% |
| 178,119 $m | 133,252 $m | 73,102 $m | 72,795 $m | 53,580 $m | 52,500 $m | 51,808 $m | 50,338 $m |

| 09 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|
| Mercedes | GE | BMW | McDonald's | Disney | intel | Facebook | CISCO |
| +18% | +2% | +12% | -1% | +6% | +4% | +48% | +4% |
| 43,490 $m | 43,130 $m | 41,535 $m | 39,381 $m | 38,790 $m | 36,952 $m | 32,593 $m | 30,948 $m |

| 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
|---|---|---|---|---|---|---|---|
| ORACLE | Nike | LOUIS VUITTON | H&M | HONDA | SAP | Pepsi | Gillette |
| -3% | +9% | +8% | +2% | -4% | +13% | +5% | -10% |
| 26,552 $m | 25,034 $m | 23,998 $m | 22,681 $m | 22,106 $m | 21,293 $m | 20,265 $m | 19,950 $m |

| 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 |
|---|---|---|---|---|---|---|---|
| American Express | IKEA | ZARA | Pampers | UPS | Budweiser | J.P.Morgan | ebay |
| -3% | +8% | +19% | +6% | +4% | +8% | +3% | -6% |
| 18,358 $m | 17,834 $m | 16,766 $m | 16,134 $m | 15,333 $m | 15,099 $m | 14,227 $m | 13,136 $m |

| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
|---|---|---|---|---|---|---|---|
| Ford | HERMÈS | HYUNDAI | NESCAFÉ | accenture | Audi | Kellogg's | VW |
| +12% | +17% | +11% | +2% | +11% | +14% | -7% | -9% |
| 12,962 $m | 12,833 $m | 12,547 $m | 12,517 $m | 12,033 $m | 11,799 $m | 11,711 $m | 11,436 $m |

| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
|---|---|---|---|---|---|---|---|
| Philips | Canon | NISSAN | Hewlett Packard Enterprise | L'ORÉAL | AXA | HSBC | hp |
| +4% | -2% | +22% | NEW | +1% | +14% | -10% | NEW |
| 11,336 $m | 11,081 $m | 11,066 $m | 11,027 $m | 10,930 $m | 10,579 $m | 10,458 $m | 10,386 $m |

| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
|---|---|---|---|---|---|---|---|
| citi | PORSCHE | Allianz | SIEMENS | GUCCI | Danone | Discovery | Nestlé |
| +5% | +18% | +12% | +10% | +6% | -2% | +7% | +1% |
| 10,276 $m | 9,537 $m | 9,526 $m | 9,415 $m | 9,385 $m | 9,376 $m | 9,197 $m | 8,708 $m |

| 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
|---|---|---|---|---|---|---|---|
| Colgate | SONY | 3M | adidas | VISA | Cartier | Adobe | Starbucks |
| -1% | +8% | +13% | +16% | +13% | -2% | +21% | +8% |
| 8,413 $m | 8,315 $m | 8,199 $m | 7,885 $m | 7,747 $m | 7,738 $m | 7,586 $m | 7,490 $m |

| 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 |
|---|---|---|---|---|---|---|---|
| Morgan Stanley | THOMSON REUTERS | LEGO | Panasonic | KIA | Santander | Discovery | HUAWEI |
| +2% | +4% | +25% | -1% | +12% | +2% | -9% | +18% |
| 7,200 $m | 6,830 $m | 6,691 $m | 6,365 $m | 6,326 $m | 6,223 $m | 5,944 $m | 5,835 $m |

| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
|---|---|---|---|---|---|---|---|
| Johnson & Johnson | TIFFANY & CO. | KFC | mastercard | DHL | LAND ROVER | FedEx | Harley-Davidson |
| +5% | -9% | +9% | +3% | +6% | +11% | +9% | +1% |
| 5,790 $m | 5,761 $m | 5,742 $m | 5,736 $m | 5,708 $m | 5,696 $m | 5,579 $m | 5,527 $m |

| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
|---|---|---|---|---|---|---|---|
| PRADA | CATERPILLAR | BURBERRY | xerox | JACK DANIEL'S | Sprite | Heineken | MINI |
| -12% | -9% | -9% | -12% | +1% | -4% | +6% | +18% |
| 5,504 $m | 5,425 $m | 5,362 $m | 5,290 $m | 5,193 $m | 5,146 $m | 5,123 $m | 4,956 $m |

Document title: Rankings - 2016 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2016/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:49:32 GMT

**Appx08033**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MORGAN STANLEY | IKEA | ZARA | Pampers | ups | Budweiser | J.P.Morgan | ebay |
| -3% | +8% | +19% | +6% | +4% | +8% | +3% | -6% |
| 18,358 $m | 17,834 $m | 16,766 $m | 16,134 $m | 15,333 $m | 15,099 $m | 14,227 $m | 13,136 $m |
| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
| Ford | HERMÈS PARIS | HYUNDAI | NESCAFÉ | accenture | Audi | Kellogg's | VW |
| +12% | +17% | +11% | +2% | +11% | +14% | -7% | -9% |
| 12,962 $m | 12,833 $m | 12,547 $m | 12,517 $m | 12,033 $m | 11,799 $m | 11,711 $m | 11,436 $m |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
| Philips | Canon | NISSAN | Hewlett Packard Enterprise | L'ORÉAL | AXA | HSBC | hp |
| +4% | -2% | +22% | NEW | +1% | +14% | -10% | NEW |
| 11,336 $m | 11,061 $m | 11,066 $m | 11,027 $m | 10,930 $m | 10,579 $m | 10,458 $m | 10,386 $m |
| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
| citi | PORSCHE | Allianz | SIEMENS | G U C C I | DANONE | | Nestlé |
| +5% | +18% | +12% | +10% | +6% | -2% | +7% | +1% |
| 10,276 $m | 9,537 $m | 9,528 $m | 9,415 $m | 9,385 $m | 9,378 $m | 9,197 $m | 8,708 $m |
| 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
| Colgate | SONY | 3M | adidas | VISA | Cartier | Adobe | Starbucks |
| -1% | +8% | +13% | +16% | +13% | -2% | +21% | +20% |
| 8,413 $m | 8,315 $m | 8,199 $m | 7,885 $m | 7,747 $m | 7,738 $m | 7,586 $m | 7,490 $m |
| 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 |
| Morgan Stanley | THOMSON REUTERS | LEGO | Panasonic | KIA | Santander | DISCOVERY | HUAWEI |
| +2% | +4% | +25% | -1% | +12% | +2% | -9% | +18% |
| 7,200 $m | 6,830 $m | 6,691 $m | 6,360 $m | 6,326 $m | 6,223 $m | 6,044 $m | 5,835 $m |
| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
| Johnson&Johnson | TIFFANY & CO. | KFC | mastercard | DHL | LAND ROVER | FedEx | HARLEY DAVIDSON |
| +5% | -9% | +2% | +3% | +6% | +11% | +9% | +1% |
| 5,790 $m | 5,761 $m | 5,742 $m | 5,736 $m | 5,706 $m | 5,696 $m | 5,579 $m | 5,527 $m |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
| PRADA | CATERPILLAR | BURBERRY | xerox | JACK DANIELS | Sprite | Heineken | MINI |
| -12% | -9% | -9% | -12% | +1% | -4% | +6% | +18% |
| 5,504 $m | 5,425 $m | 5,362 $m | 5,290 $m | 5,193 $m | 5,148 $m | 5,123 $m | 4,966 $m |
| 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 |
| DIOR | PayPal | JOHN DEERE | Shell | Corona | MTV | JOHNNIE WALKER | SMIRNOFF |
| NEW | +14% | -8% | -17% | +1% | -9% | -5% | -4% |
| 4,909 $m | 4,839 $m | 4,815 $m | 4,599 $m | 4,509 $m | 4,320 $m | 4,317 $m | 4,252 $m |
| 97 | 98 | 99 | 100 | | | | |
| MOËT & CHANDON | RALPH LAUREN | Lenovo | TESLA | | | | |
| 0% | -12% | -2% | NEW | | | | |
| 4,118 $m | 4,092 $m | 4,045 $m | 4,011 $m | | | | |



Get in touch

Pages:
Home   Our Philosophy   Iconic Moves   About   Life at Interbrand   Best Brands   News   Views   Contact

Follow:
Twitter   Facebook   LinkedIn   Instagram

Companies:
Interbrand Health   HMKM   c_space   brandchannel:

© 1974 - 2017 Interbrand. All Rights Reserved.   Site Map.   Privacy policy.

Document title: Rankings - 2016 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2016/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:49:32 GMT

Appx08034



Appx08035

| Rank | Brand | Change | Value |
|---|---|---|---|
| 33 | American Express | -3% | 18,922 $m |
| 34 | SAP | +8% | 18,768 $m |
| 35 | IKEA | +4% | 16,541 $m |
| 36 | Pampers | +8% | 15,267 $m |
| 37 | UPS | +2% | 14,723 $m |
| 38 | ZARA | +16% | 14,031 $m |
| 39 | Budweiser | +7% | 13,943 $m |
| 40 | ebay | -3% | 13,940 $m |
| 41 | J.P.Morgan | +10% | 13,749 $m |
| 42 | Kellogg's | -6% | 12,637 $m |
| 43 | VW | -9% | 12,545 $m |
| 44 | NESCAFÉ | +7% | 12,257 $m |
| 45 | HSBC | -11% | 11,655 $m |
| 46 | Ford | +6% | 11,578 $m |
| 47 | Hyundai | +8% | 11,293 $m |
| 48 | Canon | -4% | 11,278 $m |
| 49 | HERMÈS | +22% | 10,944 $m |
| 50 | accenture | +9% | 10,930 $m |
| 51 | L'ORÉAL | +6% | 10,798 $m |
| 52 | Audi | +5% | 10,328 $m |
| 53 | citi | +12% | 9,784 $m |
| 54 | Goldman Sachs | +9% | 9,526 $m |
| 55 | Philips | -8% | 9,400 $m |
| 56 | AXA | +14% | 9,254 $m |
| 57 | NISSAN | +19% | 9,082 $m |
| 58 | GUCCI | -14% | 8,882 $m |
| 59 | Danone | +5% | 8,632 $m |
| 60 | Nestlé | +7% | 8,388 $m |
| 61 | SIEMENS | -1% | 8,553 $m |
| 62 | Allianz | +10% | 8,498 $m |
| 63 | Colgate | +3% | 8,464 $m |
| 64 | Porsche | +12% | 8,055 $m |
| 65 | Cartier | +6% | 7,924 $m |
| 66 | SONY | -5% | 7,702 $m |
| 67 | 3M | +17% | 7,243 $m |
| 68 | Morgan Stanley | +12% | 7,083 $m |
| 69 | VISA | +15% | 6,870 $m |
| 70 | adidas | -8% | 6,811 $m |
| 71 | Thomson Reuters | -12% | 6,583 $m |
| 72 | DISCOVERY | +6% | 6,509 $m |
| 73 | Panasonic | +2% | 6,436 $m |
| 74 | TIFFANY & CO. | +6% | 6,306 $m |
| 75 | Starbucks | +17% | 6,266 $m |
| 76 | Adobe | +17% | 6,257 $m |
| 77 | PRADA | +4% | 6,222 $m |
| 78 | Santander | +13% | 8,097 $m |
| 79 | Xerox | -9% | 6,033 $m |
| 80 | CATERPILLAR | -12% | 5,976 $m |
| 81 | BURBERRY | +5% | 5,873 $m |
| 82 | KIA | +5% | 5,666 $m |
| 83 | KFC | -7% | 5,639 $m |
| 84 | mastercard | +17% | 5,551 $m |
| 85 | Johnson & Johnson | +7% | 5,530 $m |
| 86 | Shell | -12% | 5,500 $m |
| 87 | Harley-Davidson | +14% | 5,460 $m |
| 88 | DHL | +6% | 5,391 $m |
| 89 | Sprite | -5% | 5,365 $m |
| 90 | LEGO | NEW | 5,362 $m |
| 91 | John Deere | +2% | 5,208 $m |
| 92 | Jack Daniels | +6% | 5,161 $m |
| 93 | CHEVROLET | +2% | 5,133 $m |
| 94 | FedEx | +16% | 5,130 $m |
| 95 | Land Rover | +14% | 5,109 $m |
| 96 | HUAWEI | +15% | 4,952 $m |
| 97 | Heineken | +14% | 4,822 $m |
| 98 | MTV | -7% | 4,763 $m |
| 99 | RALPH LAUREN | -7% | 4,629 $m |
| 100 | Johnnie Walker | -6% | 4,540 $m |
| | Corona | +2% | 4,456 $m |
| | SMIRNOFF | -4% | 4,407 $m |
| | Kleenex | -7% | 4,330 $m |
| | BOSS | +3% | 4,270 $m |
| | PayPal | NEW | 4,251 $m |
| | MINI | NEW | 4,243 $m |
| | MOËT & CHANDON | NEW | 4,131 $m |
| | Lenovo | NEW | 4,114 $m |



Get in touch

Pages:
Home  Our Philosophy  Iconic Moves  About  Life at Interbrand  Best Brands  News  Views  Contact

Follow:
Twitter  Facebook  LinkedIn  Instagram

Companies:
Interbrand Health    HMKM    c_space    brandchannel:

© 1974 - 2020 Interbrand. All Rights Reserved.   Site Map.   Privacy policy.



**Interbrand**

Search our work

# Best Global Brands 2014
# Rankings

Filter +

| # | Brand | Change | Value |
|---|-------|--------|-------|
| 01 | Apple | +21% | 118,863 $m |
| 02 | Google | +15% | 107,439 $m |
| 03 | Coca-Cola | +3% | 81,563 $m |
| 04 | IBM | -8% | 72,244 $m |
| 05 | Microsoft | +3% | 61,154 $m |
| 06 | GE | -3% | 45,480 $m |
| 07 | Samsung | +15% | 45,462 $m |
| 08 | Toyota | +20% | 42,392 $m |
| 09 | McDonald's | +1% | 42,254 $m |
| 10 | Mercedes-Benz | +8% | 34,338 $m |
| 11 | BMW | +7% | 34,214 $m |
| 12 | Intel | -8% | 34,153 $m |
| 13 | Disney | +14% | 32,223 $m |
| 14 | Cisco | +6% | 30,936 $m |
| 15 | Amazon | +25% | 29,478 $m |
| 16 | Oracle | +8% | 25,980 $m |
| 17 | HP | -8% | 23,758 $m |
| 18 | Gillette | -9% | 22,845 $m |
| 19 | Louis Vuitton | -9% | 22,552 $m |
| 20 | Honda | +17% | 21,673 $m |
| 21 | H&M | +16% | 21,083 $m |
| 22 | Nike | +16% | 19,875 $m |
| 23 | American Express | +11% | 19,510 $m |
| 24 | Pepsi | +7% | 19,119 $m |
| 25 | SAP | +4% | 17,340 $m |
| 26 | IKEA | +15% | 15,885 $m |
| 27 | UPS | +5% | 14,470 $m |
| 28 | eBay | +9% | 14,358 $m |
| 29 | Facebook | +86% | 14,349 $m |
| 30 | Pampers | +8% | 14,078 $m |
| 31 | Volkswagen | +23% | 13,716 $m |
| 32 | Kellogg's | +4% | 13,442 $m |
| 33 | HSBC | +8% | 13,142 $m |
| 34 | Budweiser | +3% | 13,024 $m |
| 35 | J.P.Morgan | +9% | 12,456 $m |
| 36 | Zara | +12% | 12,126 $m |
| 37 | Canon | +6% | 11,702 $m |
| 38 | Nescafé | +7% | 11,466 $m |
| 39 | Ford | +18% | 9,676 $m |
| 40 | Hyundai | +16% | 10,409 $m |
| 41 | Gucci | +2% | 10,385 $m |
| 42 | Philips | +5% | 10,264 $m |
| 43 | L'Oréal | +3% | 10,162 $m |
| 44 | Accenture | +4% | 9,882 $m |
| 45 | Audi | +27% | 9,831 $m |
| 46 | Hermès | +18% | 8,977 $m |
| 47 | Ford | +3% | 8,758 $m |
| 48 | Citi | +10% | 8,737 $m |
| 49 | Siemens | +2% | 8,672 $m |
| 50 | Colgate | +5% | 8,215 $m |
| 51 | Danone | -1% | 8,205 $m |
| 52 | Sony | -3% | 8,133 $m |
| 53 | AXA | +14% | 8,120 $m |
| 54 | Nestlé | +6% | 8,000 $m |
| 55 | Allianz | +15% | 7,702 $m |
| 56 | Nissan | +23% | 7,623 $m |
| 57 | Thomson Reuters | -8% | 7,472 $m |
| 58 | Cartier | +8% | 7,449 $m |
| 59 | adidas | -2% | 7,378 $m |
| 60 | Porsche | +11% | 7,171 $m |
| 61 | Caterpillar | -4% | 6,812 $m |
| 62 | Xerox | -2% | 6,641 $m |
| 63 | Morgan Stanley | +11% | 6,334 $m |
| 64 | Panasonic | +8% | 6,303 $m |
| 65 | Shell | +14% | 6,268 $m |
| 66 | 3M | +14% | 6,177 $m |
| 67 | Discovery | +7% | 6,143 $m |
| 68 | KFC | -2% | 6,059 $m |
| 69 | Visa | +10% | 5,998 $m |
| 70 | Prada | +7% | 5,977 $m |
| 71 | Tiffany & Co. | +9% | 5,936 $m |
| 72 | Sprite | -3% | 5,646 $m |
| 73 | Burberry | +8% | 5,594 $m |
| 74 | Kia | +15% | 5,396 $m |
| 75 | Santander | +16% | 5,382 $m |
| 76 | Starbucks | +22% | 5,382 $m |
| 77 | Adobe | +9% | 5,333 $m |
| 78 | Johnson & Johnson | +9% | 5,194 $m |
| 79 | John Deere | +5% | 5,124 $m |
| 80 | MTV | +2% | 5,102 $m |
| 81 | DHL | NEW | 5,064 $m |
| 82 | Chevrolet | +10% | 5,036 $m |
| 83 | Ralph Lauren | +9% | 4,979 $m |
| 84 | Duracell | +6% | 4,935 $m |
| 85 | Jack Daniel's | +5% | 4,884 $m |
| 86 | Johnnie Walker | +2% | 4,842 $m |
| 87 | Harley-Davidson | +13% | 4,772 $m |
| 88 | MasterCard | +13% | 4,758 $m |
| 89 | | | |
| 90 | | | |
| 91 | | | |
| 92 | | | |
| 93 | | | |
| 94 | | | |
| 95 | | | |
| 96 | | | |

Document title: Rankings - 2014 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2014/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:46:55 GMT

Appx08037

| Rank | Brand | Change | Value |
|---|---|---|---|
| 33 | SAP | +4% | 17,340 $m |
| 34 | IKEA | +15% | 15,885 $m |
| 35 | ups | +9% | 14,470 $m |
| 36 | ebay | +9% | 14,358 $m |
| 37 | Facebook | +86% | 14,349 $m |
| 38 | Pampers | +8% | 14,078 $m |
| 39 | VW | +23% | 13,716 $m |
| 40 | Kellogg's | +4% | 13,442 $m |
| 41 | HSBC | +8% | 13,142 $m |
| 42 | Budweiser | +3% | 13,024 $m |
| 43 | J.P.Morgan | +9% | 12,456 $m |
| 44 | ZARA | +12% | 12,126 $m |
| 45 | Canon | +6% | 11,702 $m |
| 46 | NESCAFÉ | +7% | 11,406 $m |
| 47 | Ford | +18% | 10,876 $m |
| 48 | HYUNDAI | +16% | 10,409 $m |
| 49 | GUCCI | +2% | 10,385 $m |
| 50 | Philips | +5% | 10,264 $m |
| 51 | L'ORÉAL | +3% | 10,162 $m |
| 52 | accenture | +4% | 9,882 $m |
| 53 | Audi | +27% | 9,831 $m |
| 54 | HERMÈS | +18% | 8,977 $m |
| 55 | | +3% | 8,758 $m |
| 56 | citi | +10% | 8,737 $m |
| 57 | SIEMENS | +2% | 8,672 $m |
| 58 | Colgate | +5% | 8,215 $m |
| 59 | | +3% | 8,205 $m |
| 60 | SONY | -3% | 8,133 $m |
| 61 | AXA | +14% | 8,120 $m |
| 62 | Nestlé | +6% | 8,000 $m |
| 63 | Allianz | +15% | 7,702 $m |
| 64 | NISSAN | +23% | 7,623 $m |
| 65 | | -8% | 7,472 $m |
| 66 | Cartier | +8% | 7,449 $m |
| 67 | adidas | -2% | 7,378 $m |
| 68 | PORSCHE | +11% | 7,171 $m |
| 69 | CATERPILLAR | -4% | 6,812 $m |
| 70 | xerox | -2% | 6,641 $m |
| 71 | Morgan Stanley | +11% | 6,334 $m |
| 72 | Panasonic | +8% | 6,303 $m |
| 73 | Shell | +14% | 6,288 $m |
| 74 | 3M | +14% | 6,177 $m |
| 75 | Discovery | +7% | 6,143 $m |
| 76 | KFC | -2% | 6,009 $m |
| 77 | VISA | +10% | 5,998 $m |
| 78 | PRADA | +7% | 5,977 $m |
| 79 | TIFFANY & CO. | +9% | 5,936 $m |
| 80 | Sprite | -3% | 5,846 $m |
| 81 | BURBERRY | +8% | 5,594 $m |
| 82 | KIA | +15% | 5,396 $m |
| 83 | Santander | +16% | 5,382 $m |
| 84 | Starbucks | +9% | 5,362 $m |
| 85 | Adobe | +9% | 5,333 $m |
| 86 | Johnson&Johnson | +9% | 5,194 $m |
| 87 | John Deere | +5% | 5,124 $m |
| 88 | MTV | +2% | 5,102 $m |
| 89 | DHL | NEW | 5,084 $m |
| 90 | CHEVROLET | +10% | 5,036 $m |
| 91 | RALPH LAUREN | +9% | 4,979 $m |
| 92 | DURACELL | +6% | 4,938 $m |
| 93 | JACK DANIEL'S | +5% | 4,884 $m |
| 94 | JOHNNIE WALKER | +2% | 4,842 $m |
| 95 | HARLEY-DAVIDSON | +5% | 4,772 $m |
| 96 | mastercard | +13% | 4,758 $m |
| 97 | Kleenex | +5% | 4,643 $m |
| 98 | SMIRNOFF | +8% | 4,609 $m |
| 99 | LAND ROVER | NEW | 4,473 $m |
| 100 | FedEx | NEW | 4,414 $m |
| | Corona | +3% | 4,367 $m |
| | HUAWEI | NEW | 4,313 $m |
| | Heineken | -3% | 4,221 $m |
| | Pizza Hut | -2% | 4,196 $m |
| | BOSS | NEW | 4,143 $m |
| | NOKIA | -44% | 4,138 $m |
| | GAP | +5% | 4,122 $m |
| | Nintendo | -33% | 4,103 $m |



Get in touch

Pages:
Home    Our Philosophy    Iconic Moves    About    Life at Interbrand    Best Brands    News    Views    Contact

Follow:
Twitter    Facebook    LinkedIn    Instagram

Companies:
Interbrand Health    HMKM    c_space    brandchannel



# Best Global Brands 2013
# Rankings

Filter +

| | | | |
|---|---|---|---|
| **01** Apple +28% 98,316 $m | **02** Google +34% 93,291 $m | **03** Coca-Cola +2% 79,213 $m | **04** IBM +4% 78,808 $m |
| **05** Microsoft +3% 59,546 $m | **06** GE +7% 46,947 $m | **07** McDonald's +5% 41,992 $m | **08** SAMSUNG +20% 39,610 $m |
| **09** intel -5% 37,257 $m | **10** TOYOTA +17% 35,346 $m | **11** Mercedes +6% 31,904 $m | **12** BMW +10% 31,839 $m |
| **13** CISCO +7% 29,053 $m | **14** Disney +3% 28,147 $m | **15** hp -1% 25,843 $m | **16** Gillette +1% 25,105 $m |
| **17** LOUIS VUITTON +6% 24,893 $m | **18** ORACLE +9% 24,088 $m | **19** amazon +27% 23,620 $m | **20** HONDA +7% 18,490 $m |
| **21** H&M +10% 18,168 $m | **22** Pepsi +8% 17,892 $m | **23** American Express +12% 17,646 $m | **24** Nike +13% 17,085 $m |
| **25** SAP +7% 16,676 $m | **26** IKEA +8% 13,818 $m | **27** ups +5% 13,763 $m | **28** ebay +20% 13,162 $m |
| **29** Pampers +15% 13,035 $m | **30** Kellogg's +8% 12,987 $m | **31** Budweiser +6% 12,614 $m | **32** HSBC +7% 12,183 $m |
| **33** J.P.Morgan 0% 11,456 $m | **34** VW +20% 11,120 $m | **35** Canon -9% 10,989 $m | **36** ZARA +14% 10,821 $m |
| **37** NESCAFÉ -4% 10,651 $m | **38** GUCCI +7% 10,151 $m | **39** L'ORÉAL +12% 9,874 $m | **40** Gap +8% 9,813 $m |
| **41** accenture +8% 9,471 $m | **42** Ford +15% 9,181 $m | **43** HYUNDAI +20% 9,004 $m | **44** Philips +12% 8,536 $m |
| **45** SIEMENS +13% 8,503 $m | **46** SONY -8% 8,408 $m | **47** Thomson Reuters -4% 8,103 $m | **48** citi +5% 7,973 $m |
| **49** Deloitte +6% 7,968 $m | **50** Colgate +2% 7,833 $m | **51** Audi +8% 7,787 $m | **52** facebook +43% 7,732 $m |
| **53** Heinz -1% 7,646 $m | **54** HERMÈS +23% 7,616 $m | **55** adidas +12% 7,535 $m | **56** Nestlé +9% 7,527 $m |
| **57** NOKIA -65% 7,444 $m | **58** CATERPILLAR +13% 7,125 $m | **59** AXA +5% 7,096 $m | **60** Cartier +26% 6,897 $m |
| **61** Dell -10% 6,840 $m | **62** xerox +1% 6,779 $m | **63** Allianz +8% 6,710 $m | **64** PORSCHE +26% 6,471 $m |
| **65** NISSAN +25% 6,203 $m | **66** KFC +3% 6,192 $m | **67** Nintendo -14% 6,086 $m | **68** Panasonic +1% 5,821 $m |
| **69** Sprite +2% 5,811 $m | **70** DISCOVERY NEW 5,756 $m | **71** Morgan Stanley -21% 5,724 $m | **72** PRADA +30% 5,570 $m |
| **73** Shell +16% 5,535 $m | **74** VISA +11% 5,465 $m | **75** TIFFANY & CO. +5% 5,440 $m | **76** 3M +16% 5,413 $m |
| **77** BURBERRY +20% 5,180 $m | **78** MTV -12% 4,980 $m | **79** Adobe +8% 4,899 $m | **80** JOHN DEERE +15% 4,665 $m |
| **81** Johnson & Johnson +9% 4,777 $m | **82** JOHNNIE WALKER +10% 4,745 $m | **83** KIA +15% 4,708 $m | **84** Santander -2% 4,660 $m |
| **85** DURACELL NEW 4,645 $m | **86** JACK DANIELS +7% 4,642 $m | **87** AVON -11% 4,610 $m | **88** RALPH LAUREN +14% 4,584 $m |
| **89** | **90** | **91** | **92** |
| **93** | **94** | **95** | **96** |

Document title: Rankings - 2013 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2013/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:46:21 GMT

Appx08039

| Rank | Brand | Change | Brand Value |
|---|---|---|---|
| 25 | SAP | +7% | 16,676 $m |
| 26 | IKEA | +8% | 13,818 $m |
| 27 | ups | +5% | 13,763 $m |
| 28 | ebay | +20% | 13,162 $m |
| 29 | Pampers | +15% | 13,035 $m |
| 30 | Kellogg's | +8% | 12,987 $m |
| 31 | Budweiser | +6% | 12,614 $m |
| 32 | HSBC | +7% | 12,183 $m |
| 33 | J.P.Morgan | 0% | 11,456 $m |
| 34 | Volkswagen | +20% | 11,120 $m |
| 35 | Canon | -9% | 10,969 $m |
| 36 | ZARA | +14% | 10,621 $m |
| 37 | NESCAFÉ | -4% | 10,651 $m |
| 38 | GUCCI | +7% | 10,151 $m |
| 39 | L'ORÉAL | +12% | 9,874 $m |
| 40 | (logo) | +8% | 9,813 $m |
| 41 | accenture | +8% | 9,471 $m |
| 42 | Ford | +15% | 9,181 $m |
| 43 | HYUNDAI | +20% | 9,004 $m |
| 44 | (logo) | +12% | 8,536 $m |
| 45 | SIEMENS | +13% | 8,503 $m |
| 46 | SONY | -8% | 8,408 $m |
| 47 | Thomson Reuters | -4% | 8,103 $m |
| 48 | citi | +5% | 7,973 $m |
| 49 | (logo) | +6% | 7,968 $m |
| 50 | Colgate | +2% | 7,833 $m |
| 51 | Audi | +8% | 7,767 $m |
| 52 | Facebook | +43% | 7,732 $m |
| 53 | Heinz | -1% | 7,648 $m |
| 54 | HERMÈS | +23% | 7,616 $m |
| 55 | adidas | +12% | 7,535 $m |
| 56 | Nestlé | +9% | 7,527 $m |
| 57 | NOKIA | -65% | 7,444 $m |
| 58 | CATERPILLAR | +13% | 7,125 $m |
| 59 | AXA | +5% | 7,096 $m |
| 60 | Cartier | +26% | 6,897 $m |
| 61 | DELL | -10% | 6,845 $m |
| 62 | xerox | +1% | 6,779 $m |
| 63 | Allianz | +8% | 6,710 $m |
| 64 | PORSCHE | +26% | 6,471 $m |
| 65 | NISSAN | +25% | 6,203 $m |
| 66 | (logo) | +3% | 6,192 $m |
| 67 | Nintendo | -14% | 6,086 $m |
| 68 | Panasonic | +1% | 5,821 $m |
| 69 | Sprite | +2% | 5,811 $m |
| 70 | Discovery | NEW | 5,706 $m |
| 71 | Morgan Stanley | -21% | 5,724 $m |
| 72 | PRADA | +30% | 5,570 $m |
| 73 | Shell | +16% | 5,535 $m |
| 74 | VISA | +11% | 5,465 $m |
| 75 | Tiffany & Co. | +5% | 5,440 $m |
| 76 | 3M | +16% | 5,413 $m |
| 77 | BURBERRY | +20% | 5,189 $m |
| 78 | MTV | -12% | 4,960 $m |
| 79 | Adobe | +8% | 4,899 $m |
| 80 | John Deere | +15% | 4,865 $m |
| 81 | Johnnie Walker | +9% | 4,777 $m |
| 82 | (logo) | +10% | 4,745 $m |
| 83 | KIA | +15% | 4,708 $m |
| 84 | Santander | -2% | 4,660 $m |
| 85 | DURACELL | NEW | 4,645 $m |
| 86 | Jack Daniel's | +7% | 4,642 $m |
| 87 | AVON | -11% | 4,610 $m |
| 88 | RALPH LAUREN | +14% | 4,584 $m |
| 89 | CHEVROLET | NEW | 4,576 $m |
| 90 | Kleenex | +2% | 4,426 $m |
| 91 | Starbucks | +8% | 4,399 $m |
| 92 | Heineken | +10% | 4,331 $m |
| 93 | Corona | +5% | 4,276 $m |
| 94 | Pizza Hut | +2% | 4,269 $m |
| 95 | SMIRNOFF | +5% | 4,262 $m |
| 96 | (logo) | +10% | 4,230 $m |
| 97 | mastercard | +8% | 4,206 $m |
| 98 | Ferrari | +6% | 4,013 $m |
| 99 | MOËT & CHANDON | +3% | 3,943 $m |
| 100 | GAP | +5% | 3,920 $m |



Get in touch

Pages:
Home  Our Philosophy  Iconic Moves  About  Life at Interbrand  Best Brands  News  Views  Contact

Follow:
Twitter  Facebook  LinkedIn  Instagram

Companies:
Interbrand Health    HMKM    c_space    brandchannel:

© 1974 - 2017 Interbrand. All Rights Reserved.  Site Map.  Privacy policy.

Document title: Rankings - 2013 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2013/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:46:21 GMT

Appx08040

 **Interbrand** 

# Best Global Brands 2012
# Rankings

Filter +

| 01 Coca-Cola +8% 77,839 $m | 02 Apple +129% 76,568 $m | 03 IBM +8% 75,532 $m | 04 Google +26% 69,726 $m | 05 Microsoft -2% 57,853 $m | 06 GE +2% 43,682 $m | 07 McDonald's +13% 40,062 $m | 08 intel +12% 39,385 $m |
|---|---|---|---|---|---|---|---|
| 09 SAMSUNG +40% 32,893 $m | 10 TOYOTA +9% 30,280 $m | 11 Mercedes +10% 30,097 $m | 12 BMW +18% 29,052 $m | 13 Disney -5% 27,438 $m | 14 CISCO +7% 27,197 $m | 15 hp -8% 26,087 $m | 16 Gillette +4% 24,898 $m |
| 17 LOUIS VUITTON +2% 23,577 $m | 18 ORACLE +28% 22,126 $m | 19 NOKIA -16% 21,009 $m | 20 amazon +46% 18,625 $m | 21 HONDA -11% 17,280 $m | 22 Pepsi +14% 16,594 $m | 23 H&M +1% 16,571 $m | 24 +8% 15,702 $m |
| 25 SAP +8% 15,641 $m | 26 Nike +4% 15,126 $m | 27 ups +4% 13,088 $m | 28 IKEA +8% 12,808 $m | 29 Kellogg's +6% 12,066 $m | 30 Canon +3% 12,029 $m | 31 Budweiser -3% 11,872 $m | 32 J.P.Morgan -8% 11,471 $m |
| 33 HSBC -4% 11,376 $m | 34 Pampers NEW 11,296 $m | 35 NESCAFÉ -8% 11,089 $m | 36 ebay +12% 10,947 $m | 37 ZARA +18% 9,488 $m | 38 GUCCI +8% 9,446 $m | 39 VW +18% 9,252 $m | 40 SONY -8% 9,111 $m |
| 41 +5% 9,066 $m | 42 L'ORÉAL +1% 8,621 $m | 43 accenture +9% 8,745 $m | 44 Thomson Reuters -11% 8,444 $m | 45 Ford +6% 7,958 $m | 46 Heinz +1% 7,722 $m | 47 Colgate +7% 7,643 $m | 48 -16% 7,599 $m |
| 49 Dell -9% 7,991 $m | 50 citi -12% 7,570 $m | 51 SIEMENS -5% 7,534 $m | 52 +8% 7,498 $m | 53 HYUNDAI +24% 7,473 $m | 54 Morgan Stanley +9% 7,218 $m | 55 +17% 7,196 $m | 56 Nintendo -8% 7,082 $m |
| 57 Nestlé +5% 6,916 $m | 58 AXA +1% 6,746 $m | 59 xerox +5% 6,714 $m | 60 adidas +9% 6,699 $m | 61 CATERPILLAR +13% 6,306 $m | 62 Allianz +16% 6,184 $m | 63 HERMÈS +15% 6,182 $m | 64 KFC +2% 5,994 $m |
| 65 Panasonic +14% 5,765 $m | 66 Sprite +2% 5,709 $m | 67 MTV -12% 5,646 $m | 68 Cartier +15% 5,495 $m | 69 f NEW 5,421 $m | 70 TIFFANY & CO. +15% 5,159 $m | 71 AVON -4% 5,151 $m | 72 Porsche +12% 5,149 $m |
| 73 NISSAN +30% 4,969 $m | 74 VISA +10% 4,944 $m | 75 Shell +7% 4,788 $m | 76 Santander -6% 4,771 $m | 77 3M +18% 4,686 $m | 78 Adobe +9% 4,557 $m | 79 Johnson & Johnson +8% 4,378 $m | 80 Kleenex -7% 4,360 $m |
| 81 JACK DANIEL'S +1% 4,352 $m | 82 BURBERRY +16% 4,342 $m | 83 Johnnie Walker +12% 4,301 $m | 84 PRADA NEW 4,271 $m | 85 John Deere +16% 4,221 $m | 86 Pizza Hut +2% 4,193 $m | 87 KIA NEW 4,089 $m | 88 Starbucks +11% 4,062 $m |
| 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 |

Document title: Rankings - 2012 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2012/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:45:30 GMT

Appx08041



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **SAP** | **Nike** | **UPS** | **IKEA** | **Kellogg's** | **Canon** | **Budweiser** | **J.P.Morgan** |
| +8% | +4% | +4% | +8% | +6% | +3% | -3% | -8% |
| 15,641 $m | 15,126 $m | 13,086 $m | 12,808 $m | 12,069 $m | 12,029 $m | 11,872 $m | 11,471 $m |
| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
| **HSBC** | **Pampers** | **NESCAFÉ** | **ebay** | **ZARA** | **GUCCI** | **VW** | **SONY** |
| -4% | NEW | -8% | +12% | +18% | +8% | +18% | -8% |
| 11,370 $m | 11,296 $m | 11,009 $m | 10,547 $m | 9,488 $m | 9,440 $m | 9,252 $m | 9,111 $m |
| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
| **Philips** | **L'ORÉAL** | **accenture** | **Cummins** | **Ford** | **Heinz** | **Colgate** | **Goldman Sachs** |
| +5% | +1% | +9% | -11% | +6% | +1% | +7% | -16% |
| 9,066 $m | 8,621 $m | 8,745 $m | 8,444 $m | 7,958 $m | 7,722 $m | 7,643 $m | 7,599 $m |
| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
| **DELL** | **citi** | **SIEMENS** | **Danone** | **HYUNDAI** | **Morgan Stanley** | **Audi** | **Nintendo** |
| -9% | -12% | -5% | +8% | +24% | +9% | +17% | -8% |
| 7,591 $m | 7,570 $m | 7,534 $m | 7,499 $m | 7,473 $m | 7,219 $m | 7,196 $m | 7,092 $m |
| 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
| **Nestlé** | **AXA** | **xerox** | **adidas** | **CATERPILLAR** | **Allianz** | **HERMÈS** | **KFC** |
| +5% | +1% | +5% | +9% | +13% | +16% | +15% | +2% |
| 6,916 $m | 6,748 $m | 6,714 $m | 6,699 $m | 6,306 $m | 6,184 $m | 6,182 $m | 5,994 $m |
| 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 |
| **Panasonic** | **Danone** | **MTV** | **Cartier** | **f** | **TIFFANY & CO.** | **AVON** | **PORSCHE** |
| +14% | +2% | -12% | +15% | NEW | +15% | -4% | +12% |
| 5,760 $m | 5,709 $m | 5,646 $m | 5,490 $m | 5,421 $m | 5,199 $m | 5,101 $m | 5,149 $m |
| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
| **NISSAN** | **VISA** | **Shell** | **Santander** | **3M** | **Adobe** | **Johnson & Johnson** | **Kleenex** |
| +30% | +10% | +7% | -6% | +18% | +9% | +8% | -7% |
| 4,969 $m | 4,944 $m | 4,788 $m | 4,771 $m | 4,600 $m | 4,557 $m | 4,370 $m | 4,390 $m |
| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
| **JACK DANIELS** | **BURBERRY** | **JOHNNIE WALKER** | **PRADA** | **JOHN DEERE** | **Pizza Hut** | **KIA** | **Starbucks** |
| +1% | +16% | +12% | NEW | +16% | +2% | NEW | +11% |
| 4,352 $m | 4,342 $m | 4,301 $m | 4,271 $m | 4,221 $m | 4,193 $m | 4,089 $m | 4,062 $m |
| 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 |
| **Corona** | **SMIRNOFF** | **RALPH LAUREN** | **Heineken** | **BlackBerry** | **mastercard** | **CREDIT SUISSE** | **HARLEY-DAVIDSON** |
| +3% | +5% | NEW | +3% | -39% | NEW | -5% | +10% |
| 4,061 $m | 4,050 $m | 4,038 $m | 3,939 $m | 3,922 $m | 3,896 $m | 3,866 $m | 3,857 $m |
| 97 | 98 | 99 | 100 | | | | |
| **YAHOO!** | **MOËT & CHANDON** | **Ferrari** | **GAP** | | | | |
| -13% | -13% | +5% | -8% | | | | |
| 3,851 $m | 3,824 $m | 3,770 $m | 3,731 $m | | | | |

Get in touch

Pages:
Home    Our Philosophy    Iconic Moves    About    Life at Interbrand    Best Brands    News    Views    Contact

Follow:
Twitter    Facebook    Linkedin    Instagram

Companies:
Interbrand Health    HMKM    c_space    brandchannel:

© 1974 - 2020 Interbrand. All Rights Reserved.    Site Map    Privacy notice

 **Interbrand** 

Search our work

# Best Global Brands 2011
# Rankings

Filter +

| 01 Coca-Cola | 02 IBM | 03 Microsoft | 04 Google TOP GROWING | 05 GE | 06 McDonald's | 07 intel | 08 Apple TOP GROWING |
|---|---|---|---|---|---|---|---|
| +2% 71,861 $m | +8% 69,905 $m | -3% 59,087 $m | +27% 55,317 $m | 0% 42,808 $m | +6% 35,593 $m | +10% 35,217 $m | +58% 33,492 $m |

| 09 Disney | 10 hp | 11 Toyota | 12 Mercedes | 13 Cisco | 14 NOKIA | 15 BMW | 16 Gillette |
|---|---|---|---|---|---|---|---|
| +1% 29,018 $m | +6% 28,479 $m | +6% 27,764 $m | +9% 27,445 $m | +9% 25,309 $m | -15% 25,071 $m | +10% 24,554 $m | +3% 23,997 $m |

| 17 SAMSUNG TOP GROWING | 18 LOUIS VUITTON | 19 HONDA | 20 ORACLE | 21 H&M | 22 Pepsi | 23 American Express | 24 SAP |
|---|---|---|---|---|---|---|---|
| +20% 23,430 $m | +6% 23,172 $m | +5% 19,431 $m | +16% 17,262 $m | +2% 16,459 $m | +4% 14,590 $m | +5% 14,572 $m | +14% 14,542 $m |

| 25 Nike | 26 amazon | 27 ups | 28 J.P.Morgan | 29 Budweiser | 30 NESCAFÉ | 31 IKEA | 32 HSBC |
|---|---|---|---|---|---|---|---|
| +6% 14,528 $m | +32% 12,758 $m | +6% 12,536 $m | +1% 12,437 $m | 0% 12,252 $m | -5% 12,115 $m | -5% 11,863 $m | +2% 11,792 $m |

| 33 Canon | 34 Kellogg's | 35 SONY | 36 ebay | 37 | 38 | 39 GUCCI | 40 L'OREAL |
|---|---|---|---|---|---|---|---|
| +2% 11,715 $m | +3% 11,372 $m | -13% 9,880 $m | +16% 9,805 $m | +6% 9,515 $m | -3% 9,091 $m | +5% 8,763 $m | +9% 8,699 $m |

| 41 Philips | 42 citi | 43 DELL | 44 ZARA | 45 accenture | 46 SIEMENS | 47 VW | 48 Nintendo |
|---|---|---|---|---|---|---|---|
| 0% 8,658 $m | -3% 8,620 $m | -6% 8,347 $m | +8% 8,065 $m | +7% 8,005 $m | +8% 7,900 $m | +14% 7,857 $m | -14% 7,731 $m |

| 49 Heinz | 50 Ford | 51 Colgate | 52 Danone | 53 AXA | 54 Morgan Stanley | 55 Nestlé | 56 BlackBerry |
|---|---|---|---|---|---|---|---|
| +1% 7,609 $m | +4% 7,483 $m | +3% 7,127 $m | +9% 6,936 $m | 0% 6,694 $m | -4% 6,634 $m | +1% 6,613 $m | -5% 6,424 $m |

| 57 xerox | 58 MTV | 59 Audi | 60 adidas | 61 HYUNDAI | 62 KFC | 63 Sprite | 64 CATERPILLAR |
|---|---|---|---|---|---|---|---|
| +5% 6,414 $m | -5% 6,383 $m | +13% 6,171 $m | +12% 6,154 $m | +19% 6,005 $m | +1% 5,902 $m | -3% 5,804 $m | +19% 5,598 $m |

| 65 AVON | 66 HERMES | 67 Allianz | 68 Santander | 69 Panasonic | 70 Cartier | 71 Kleenex | 72 PORSCHE |
|---|---|---|---|---|---|---|---|
| +6% 5,376 $m | +12% 5,356 $m | +9% 5,345 $m | +5% 5,068 $m | +16% 5,047 $m | +18% 4,781 $m | +3% 4,672 $m | +4% 4,580 $m |

| 73 TIFFANY & CO. | 74 Shell | 75 VISA | 76 YAHOO! | 77 MOËT & CHANDON | 78 JACK DANIELS | 79 BARCLAYS | 80 Adobe |
|---|---|---|---|---|---|---|---|
| +9% 4,498 $m | +12% 4,463 $m | +4% 4,478 $m | -11% 4,413 $m | +9% 4,383 $m | +7% 4,319 $m | +1% 4,259 $m | +15% 4,170 $m |

| 81 Pizza Hut | 82 CREDIT SUISSE | 83 Johnson&Johnson | 84 GAP | 85 3M | 86 Corona | 87 NIVEA | 88 JOHNNIE WALKER |
|---|---|---|---|---|---|---|---|
| +3% 4,092 $m | +2% 4,090 $m | -2% 4,072 $m | +2% 4,040 $m | +10% 3,945 $m | +2% 3,924 $m | +4% 3,883 $m | +8% 3,842 $m |

| 89 | 90 | 91 | 92 | 93 | 94 | 95 TOP GROWING | 96 |
|---|---|---|---|---|---|---|---|

Document title: Rankings - 2011 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2011/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:44:53 GMT

**Appx08043**



Document title: Rankings - 2011 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2011/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:44:53 GMT

**Appx08044**





Search our work

# Best Global Brands 2010
# Rankings

Filter +

| 01 Coca-Cola | 02 IBM | 03 Microsoft | 04 TOP GROWING Google | 05 GE | 06 McDonald's | 07 intel | 08 NOKIA |
|---|---|---|---|---|---|---|---|
| +2% 70,452.6m | +7% 64,727.9m | +7% 60,895.6m | +36% 43,557.9m | -10% 42,808.9m | +4% 33,578.9m | +4% 32,015.9m | -15% 29,495.9m |

| 09 Disney | 10 hp | 11 TOYOTA | 12 Mercedes | 13 Gillette | 14 CISCO | 15 BMW | 16 LOUIS VUITTON |
|---|---|---|---|---|---|---|---|
| +1% 28,731.9m | +12% 26,867.9m | -16% 26,192.9m | +6% 25,179.9m | +2% 23,298.9m | +5% 23,219.9m | +4% 22,322.9m | +4% 21,860.9m |

| 17 TOP GROWING Apple | 18 Marlboro | 19 SAMSUNG | 20 HONDA | 21 H&M | 22 ORACLE | 23 Pepsi | 24 |
|---|---|---|---|---|---|---|---|
| +37% 21,143.9m | +5% 19,961.9m | +11% 19,491.9m | +4% 18,506.9m | +5% 16,136.9m | +9% 14,881.9m | +3% 14,061.9m | -7% 13,944.9m |

| 25 Nike | 26 SAP | 27 NESCAFÉ | 28 IKEA | 29 J.P.Morgan | 30 Budweiser | 31 ups | 32 HSBC |
|---|---|---|---|---|---|---|---|
| +4% 13,706.9m | +5% 12,756.9m | -4% 12,753.9m | +4% 12,487.9m | +29% 12,314.9m | +4% 12,252.9m | +2% 11,820.9m | +10% 11,561.9m |

| 33 Canon | 34 SONY | 35 Kellogg's | 36 amazon | 37 | 38 Nintendo | 39 | 40 citi |
|---|---|---|---|---|---|---|---|
| +10% 11,465.9m | -5% 11,356.9m | +6% 11,041.9m | +23% 9,665.9m | +1% 9,372.9m | -2% 8,990.9m | +6% 8,976.9m | -13% 8,887.9m |

| 41 DELL | 42 | 43 ebay | 44 GUCCI | 45 L'OREAL | 46 Heinz | 47 accenture | 48 ZARA |
|---|---|---|---|---|---|---|---|
| -14% 8,660.9m | +7% 8,696.9m | +15% 8,433.9m | +2% 8,346.9m | +3% 7,981.9m | +4% 7,534.9m | -3% 7,481.9m | +10% 7,468.9m |

| 49 SIEMENS | 50 Ford | 51 Colgate | 52 Morgan Stanley | 53 VW | 54 TOP GROWING BlackBerry | 55 MTV | 56 AXA |
|---|---|---|---|---|---|---|---|
| 0% 7,315.9m | +3% 7,195.9m | +6% 6,919.9m | +8% 6,911.9m | +6% 6,892.9m | +32% 6,782.9m | +3% 6,719.9m | +3% 6,694.9m |

| 57 Nestlé | 58 | 59 xerox | 60 KFC | 61 Sprite | 62 adidas | 63 Audi | 64 AVON |
|---|---|---|---|---|---|---|---|
| +4% 6,548.9m | +7% 6,363.9m | -5% 6,109.9m | +2% 5,844.9m | NEW 5,777.9m | +2% 5,495.9m | +9% 5,461.9m | +3% 5,072.9m |

| 65 HYUNDAI | 66 YAHOO! | 67 TOP GROWING Allianz | 68 Santander | 69 HERMÈS | 70 CATERPILLAR | 71 Kleenex | 72 PORSCHE |
|---|---|---|---|---|---|---|---|
| +9% 5,033.9m | -3% 4,958.9m | +28% 4,904.9m | NEW 4,846.9m | +4% 4,782.9m | -6% 4,704.9m | +3% 4,636.9m | +4% 4,404.9m |

| 73 Panasonic | 74 BARCLAYS | 75 Johnson & Johnson | 76 TIFFANY & CO. | 77 Cartier | 78 JACK DANIELS | 79 MOËT & CHANDON | 80 CREDIT SUISSE |
|---|---|---|---|---|---|---|---|
| +3% 4,351.9m | NEW 4,218.9m | +5% 4,155.9m | +3% 4,127.9m | +2% 4,052.9m | NEW 4,036.9m | +7% 4,021.9m | NEW 4,010.9m |

| 81 Shell | 82 VISA | 83 Pizza Hut | 84 GAP | 85 Corona | 86 UBS | 87 NIVEA | 88 Adobe |
|---|---|---|---|---|---|---|---|
| +24% 4,003.9m | +26% 3,098.9m | +2% 3,973.9m | +1% 3,961.9m | NEW 3,847.9m | -13% 3,812.9m | +5% 3,734.9m | +15% 3,626.9m |

| 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 |
|---|---|---|---|---|---|---|---|

Document title: Rankings - 2010 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2010/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:43:23 GMT

Appx08045

| Nike | SAP | NESCAFÉ | IKEA | J.P.Morgan | Budweiser | ups | HSBC |
|---|---|---|---|---|---|---|---|
| +4%<br>13,706 $m | +5%<br>12,756 $m | -4%<br>12,753 $m | +4%<br>12,487 $m | +29%<br>12,314 $m | +4%<br>12,252 $m | +2%<br>11,826 $m | +10%<br>11,561 $m |

| 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 |
|---|---|---|---|---|---|---|---|
| Canon | SONY | Kellogg's | amazon | | Nintendo | | citi |
| +10%<br>11,485 $m | -5%<br>11,356 $m | +6%<br>11,041 $m | +23%<br>9,665 $m | +1%<br>9,372 $m | -2%<br>8,990 $m | +6%<br>8,976 $m | -13%<br>8,887 $m |

| 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 |
|---|---|---|---|---|---|---|---|
| DELL | | ebay | GUCCI | L'ORÉAL | Heinz | accenture | ZARA |
| -14%<br>8,880 $m | +7%<br>8,696 $m | +15%<br>8,453 $m | +2%<br>8,346 $m | +3%<br>7,981 $m | +4%<br>7,534 $m | -3%<br>7,481 $m | +10%<br>7,466 $m |

| 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 |
|---|---|---|---|---|---|---|---|
| SIEMENS | Ford | Colgate | Morgan Stanley | VW | BlackBerry | MTV | AXA |
| 0%<br>7,315 $m | +3%<br>7,195 $m | +6%<br>6,919 $m | +8%<br>6,911 $m | +6%<br>6,892 $m | +32%<br>6,762 $m | +3%<br>6,719 $m | +3%<br>6,694 $m |

| 57 | 58 | 59 | 60 | 61 | 62 | 63 | 64 |
|---|---|---|---|---|---|---|---|
| Nestlé | Siemens | xerox | KFC | Sprite | adidas | Audi | AVON |
| +4%<br>6,548 $m | +7%<br>6,363 $m | -5%<br>6,109 $m | +2%<br>5,844 $m | NEW<br>5,777 $m | +2%<br>5,495 $m | +9%<br>5,461 $m | +3%<br>5,072 $m |

| 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 |
|---|---|---|---|---|---|---|---|
| HYUNDAI | YAHOO! | Allianz | Santander | HERMÈS | CATERPILLAR | Kleenex | PORSCHE |
| +9%<br>5,033 $m | -3%<br>4,958 $m | +28%<br>4,904 $m | NEW<br>4,846 $m | +4%<br>4,782 $m | -6%<br>4,704 $m | +3%<br>4,536 $m | +4%<br>4,404 $m |

| 73 | 74 | 75 | 76 | 77 | 78 | 79 | 80 |
|---|---|---|---|---|---|---|---|
| Panasonic | BARCLAYS | Johnson&Johnson | TIFFANY & CO | Cartier | JACK DANIEL'S | MOËT & CHANDON | CREDIT SUISSE |
| +3%<br>4,351 $m | NEW<br>4,218 $m | +8%<br>4,155 $m | +3%<br>4,127 $m | +2%<br>4,052 $m | NEW<br>4,036 $m | +7%<br>4,021 $m | NEW<br>4,019 $m |

| 81 | 82 | 83 | 84 | 85 | 86 | 87 | 88 |
|---|---|---|---|---|---|---|---|
| Shell | VISA | Pizza Hut | GAP | Corona | UBS | NIVEA | Adobe |
| +24%<br>4,003 $m | +26%<br>3,996 $m | +2%<br>3,973 $m | +1%<br>3,961 $m | NEW<br>3,847 $m | -13%<br>3,812 $m | +5%<br>3,734 $m | +15%<br>3,626 $m |

| 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 |
|---|---|---|---|---|---|---|---|
| SMIRNOFF | 3M | Ferrari | JOHNNIE WALKER | Heineken | ZURICH | ARMANI | LANCÔME |
| -2%<br>3,624 $m | NEW<br>3,566 $m | +1%<br>3,562 $m | NEW<br>3,557 $m | NEW<br>3,516 $m | NEW<br>3,496 $m | +4%<br>3,443 $m | +5%<br>3,403 $m |

| 97 | 98 | 99 | 100 | | | | |
|---|---|---|---|---|---|---|---|
| Starbucks | Harley-Davidson | Campbell's | BURBERRY | | | | |
| +2%<br>3,339 $m | -24%<br>3,281 $m | +5%<br>3,241 $m | 0%<br>3,110 $m | | | | |



Get in touch

Pages:
Home    Our Philosophy    Iconic Moves    About    Life at Interbrand    Best Brands    News    Views    Contact

Follow:
Twitter    Facebook    LinkedIn    Instagram

Companies:
Interbrand Health    HMKM    c_space    brandchannel:

© 1974 - 2010 Interbrand. All Rights Reserved.    Site Map    Privacy notice

Appx08046

# Best Global Brands 2009
# Rankings

Filter +



| Rank | Brand | Change | Value |
|---|---|---|---|
| | NESCAFÉ | +2% | 13,317 $m |
| | Nike | +4% | 13,179 $m |
| | SAP | -1% | 12,106 $m |
| | IKEA | +10% | 12,004 $m |
| | SONY | -12% | 11,953 $m |
| | Budweiser | +3% | 11,833 $m |
| | UPS | -8% | 11,594 $m |
| | HSBC | -20% | 10,510 $m |
| 33 | Canon | -4% | 10,441 $m |
| 34 | Kellogg's | +7% | 10,428 $m |
| 35 | Dell | -12% | 10,291 $m |
| 36 | citi | -49% | 10,254 $m |
| 37 | J.P.Morgan | -11% | 9,550 $m |
| 38 | | -10% | 9,248 $m |
| 39 | Nintendo | +5% | 9,210 $m |
| 40 | | +1% | 8,434 $m |
| 41 | GUCCI | -1% | 8,182 $m |
| 42 | Philips | -2% | 8,121 $m |
| 43 | amazon | +22% | 7,858 $m |
| 44 | L'ORÉAL | +3% | 7,748 $m |
| 45 | accenture | -3% | 7,710 $m |
| 46 | ebay | -8% | 7,350 $m |
| 47 | SIEMENS | -8% | 7,308 $m |
| 48 | Heinz | +9% | 7,244 $m |
| 49 | Ford | -11% | 7,005 $m |
| 50 | ZARA | +14% | 6,789 $m |
| 51 | WRIGLEY | +10% | 6,731 $m |
| 52 | Colgate | +2% | 6,550 $m |
| 53 | AXA | -7% | 6,525 $m |
| 54 | MTV | -9% | 6,523 $m |
| 55 | VW | -8% | 6,484 $m |
| 56 | xerox | +1% | 6,431 $m |
| 57 | Morgan Stanley | -26% | 6,399 $m |
| 58 | Nestlé | +13% | 6,319 $m |
| 59 | CHANEL | -5% | 6,040 $m |
| 60 | Danone | +10% | 5,960 $m |
| 61 | KFC | +3% | 5,722 $m |
| 62 | adidas | +6% | 5,397 $m |
| 63 | BlackBerry | +7% | 5,138 $m |
| 64 | YAHOO! | -5% | 5,111 $m |
| 65 | Audi | -7% | 5,010 $m |
| 66 | CATERPILLAR | -5% | 5,004 $m |
| 67 | AVON | -7% | 4,917 $m |
| 68 | ROLEX | -7% | 4,609 $m |
| 69 | HYUNDAI | -5% | 4,604 $m |
| 70 | HERMES | +1% | 4,598 $m |
| 71 | Kleenex | -5% | 4,404 $m |
| 72 | UBS | -50% | 4,370 $m |
| 73 | Harley-Davidson | -43% | 4,337 $m |
| 74 | Porsche | -8% | 4,234 $m |
| 75 | Panasonic | -1% | 4,225 $m |
| 76 | Tiffany & Co | -5% | 4,000 $m |
| 77 | Cartier | -6% | 3,968 $m |
| 78 | GAP | -10% | 3,922 $m |
| 79 | Pizza Hut | -5% | 3,876 $m |
| 80 | Johnson&Johnson | +7% | 3,847 $m |
| 81 | Allianz | -5% | 3,831 $m |
| 82 | Moët & Chandon | -5% | 3,754 $m |
| 83 | bp | -5% | 3,716 $m |
| 84 | SMIRNOFF | +3% | 3,698 $m |
| 85 | DURACELL | -3% | 3,563 $m |
| 86 | NIVEA | +5% | 3,557 $m |
| 87 | PRADA | -2% | 3,530 $m |
| 88 | Ferrari | 0% | 3,527 $m |
| 89 | ARMANI | -6% | 3,303 $m |
| 90 | Starbucks | -16% | 3,263 $m |
| 91 | LANCÔME | NEW | 3,235 $m |
| 92 | Shell | -7% | 3,226 $m |
| 93 | Burger King | NEW | 3,223 $m |
| 94 | VISA | -5% | 3,170 $m |
| 95 | Adobe | NEW | 3,161 $m |
| 96 | LEXUS | -12% | 3,158 $m |
| 97 | PUMA | NEW | 3,154 $m |
| 98 | BURBERRY | NEW | 3,090 $m |
| 99 | RALPH LAUREN | NEW | 3,094 $m |
| 100 | Campbell's | NEW | 3,081 $m |



Get in touch

Pages:
Home   Our Philosophy   Iconic Moves   About   Life at Interbrand   Best Brands   News   Views   Contact

Follow:
Twitter   Facebook   LinkedIn   Instagram

Companies:
Interbrand Health     HMKM     c_space     brandchannel:

© 1974 - 2009 Interbrand. All Rights Reserved.   Site Map   Privacy policy

 **Interbrand** 

Search our work

# Best Global Brands 2008
# Rankings

Filter +

| 01 Coca-Cola | 02 IBM | 03 Microsoft | 04 GE | 05 NOKIA | 06 TOYOTA | 07 intel | 08 McDonald's |
|---|---|---|---|---|---|---|---|
| +2% 66,667 $m | +3% 59,031 $m | +1% 59,007 $m | +7% 53,086 $m | +6% 35,942 $m | +1% 34,050 $m | +1% 31,261 $m | +6% 31,049 $m |

| 09 Disney | 10 Google | 11 Mercedes | 12 hp | 13 BMW | 14 Gillette | 15 American Express | 16 LOUIS VUITTON |
|---|---|---|---|---|---|---|---|
| 0% 29,251 $m | +43% 25,590 $m | +9% 25,577 $m | +6% 23,509 $m | +8% 23,298 $m | +8% 22,669 $m | +5% 21,940 $m | +6% 21,602 $m |

| 17 CISCO | 18 Marlboro | 19 citi | 20 HONDA | 21 SAMSUNG | 22 H&M | 23 ORACLE | 24 Apple |
|---|---|---|---|---|---|---|---|
| +12% 21,306 $m | 0% 21,300 $m | -14% 20,174 $m | +6% 19,079 $m | +5% 17,689 $m | NEW 13,840 $m | +11% 13,831 $m | +24% 13,724 $m |

| 25 SONY | 26 Pepsi | 27 HSBC | 28 NESCAFÉ | 29 Nike | 30 ups | 31 SAP | 32 DELL |
|---|---|---|---|---|---|---|---|
| +5% 13,583 $m | +3% 13,249 $m | -3% 13,143 $m | +1% 13,056 $m | +6% 12,672 $m | +5% 12,621 $m | +13% 12,228 $m | +1% 11,695 $m |

| 33 Budweiser | 34 Merrill Lynch | 35 IKEA | 36 Canon | 37 J.P.Morgan | 38 Goldman Sachs | 39 Kellogg's | 40 Nintendo |
|---|---|---|---|---|---|---|---|
| -2% 11,438 $m | -21% 11,399 $m | +8% 10,913 $m | +3% 10,876 $m | -6% 10,773 $m | -3% 10,331 $m | +4% 9,710 $m | +13% 8,772 $m |

| 41 UBS | 42 Morgan Stanley | 43 Philips | 44 Zurich | 45 GUCCI | 46 ebay | 47 accenture | 48 SIEMENS |
|---|---|---|---|---|---|---|---|
| -11% 8,740 $m | -16% 8,696 $m | +8% 8,325 $m | NEW 8,313 $m | +7% 8,254 $m | +7% 7,991 $m | +9% 7,948 $m | +3% 7,943 $m |

| 49 Ford | 50 Harley-Davidson | 51 L'ORÉAL | 52 MTV | 53 VW | 54 AIG | 55 AXA | 56 Heinz |
|---|---|---|---|---|---|---|---|
| -12% 7,896 $m | -1% 7,609 $m | +7% 7,508 $m | +4% 7,193 $m | +8% 7,047 $m | -6% 7,022 $m | -4% 7,001 $m | +2% 6,646 $m |

| 57 Colgate | 58 amazon | 59 xerox | 60 CHANEL | 61 WRIGLEY | 62 ZARA | 63 Nestlé | 64 KFC |
|---|---|---|---|---|---|---|---|
| +7% 6,437 $m | +19% 6,434 $m | +6% 6,393 $m | +9% 6,355 $m | +6% 6,105 $m | +15% 5,955 $m | +5% 5,592 $m | -2% 5,582 $m |

| 65 YAHOO! | 66 Danone | 67 Audi | 68 CATERPILLAR | 69 AVON | 70 adidas | 71 ROLEX | 72 HYUNDAI |
|---|---|---|---|---|---|---|---|
| -9% 5,496 $m | +8% 5,408 $m | +11% 5,407 $m | +5% 5,288 $m | +3% 5,264 $m | +6% 5,072 $m | +8% 4,956 $m | +9% 4,846 $m |

| 73 BlackBerry | 74 Kleenex | 75 PORSCHE | 76 HERMÈS | 77 GAP | 78 Panasonic | 79 Cartier | 80 TIFFANY & CO. |
|---|---|---|---|---|---|---|---|
| NEW 4,802 $m | +1% 4,636 $m | +9% 4,603 $m | +8% 4,575 $m | -20% 4,357 $m | +4% 4,281 $m | +10% 4,236 $m | +5% 4,208 $m |

| 81 Pizza Hut | 82 Allianz | 83 MOËT & CHANDON | 84 bp | 85 Starbucks | 86 ING | 87 Motorola | 88 DURACELL |
|---|---|---|---|---|---|---|---|
| -4% 4,097 $m | +2% 4,033 $m | +6% 3,951 $m | +3% 3,911 $m | +7% 3,879 $m | -3% 3,768 $m | -10% 3,721 $m | +2% 3,682 $m |

| 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 |

Document title: Rankings - 2008 - Best Global Brands - Best Brands - Interbrand
Capture URL: https://www.interbrand.com/best-brands/best-global-brands/2008/ranking/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:32:39 GMT

**Appx08049**

| 33 SONY | 34 PEPSI | 35 HSBC | 36 NESCAFÉ | 37 NIKE | 38 UPS | 39 SAP | 40 DELL |
|---|---|---|---|---|---|---|---|
| +5% 13,583 $m | +3% 13,249 $m | -3% 13,143 $m | +1% 13,056 $m | +6% 12,672 $m | +5% 12,621 $m | +13% 12,228 $m | +1% 11,695 $m |

| 41 Budweiser | 42 Merrill Lynch | 43 IKEA | 44 Canon | 45 J.P.Morgan | 46 | 47 Kellogg's | 48 Nintendo |
|---|---|---|---|---|---|---|---|
| -2% 11,438 $m | -21% 11,399 $m | +8% 10,913 $m | +3% 10,876 $m | -6% 10,773 $m | -3% 10,331 $m | +4% 9,710 $m | +13% 8,772 $m |

| 49 UBS | 50 Morgan Stanley | 51 | 52 NEW | 53 GUCCI | 54 ebay | 55 accenture | 56 SIEMENS |
|---|---|---|---|---|---|---|---|
| -11% 8,740 $m | -16% 8,696 $m | +8% 8,325 $m | 8,313 $m | +7% 8,254 $m | +7% 7,991 $m | +9% 7,948 $m | +3% 7,943 $m |

| 57 Ford | 58 Harley-Davidson | 59 L'OREAL | 60 MTV | 61 VW | 62 AIG | 63 AXA | 64 Heinz |
|---|---|---|---|---|---|---|---|
| -12% 7,896 $m | -1% 7,609 $m | +7% 7,508 $m | +4% 7,193 $m | +8% 7,047 $m | -6% 7,022 $m | -4% 7,001 $m | +2% 6,646 $m |

| 65 Colgate | 66 amazon | 67 xerox | 68 CHANEL | 69 WRIGLEY | 70 ZARA | 71 Nestlé | 72 KFC |
|---|---|---|---|---|---|---|---|
| +7% 6,437 $m | +19% 6,434 $m | +6% 6,393 $m | +9% 6,355 $m | +6% 6,105 $m | +15% 5,955 $m | +5% 5,592 $m | -2% 5,582 $m |

| 73 YAHOO! | 74 | 75 AUDI | 76 CATERPILLAR | 77 AVON | 78 adidas | 79 ROLEX | 80 HYUNDAI |
|---|---|---|---|---|---|---|---|
| -9% 5,496 $m | +8% 5,408 $m | +11% 5,407 $m | +5% 5,288 $m | +3% 5,264 $m | +6% 5,072 $m | +8% 4,936 $m | +9% 4,846 $m |

| 81 BlackBerry | 82 Kleenex | 83 PORSCHE | 84 HERMES | 85 GAP | 86 Panasonic | 87 Cartier | 88 TIFFANY & CO |
|---|---|---|---|---|---|---|---|
| NEW 4,802 $m | +1% 4,636 $m | +9% 4,603 $m | +8% 4,575 $m | -20% 4,357 $m | +4% 4,281 $m | +10% 4,236 $m | +5% 4,208 $m |

| 89 Pizza Hut | 90 Allianz | 91 MOËT & CHANDON | 92 bp | 93 Starbucks | 94 ING | 95 Motorola | 96 DURACELL |
|---|---|---|---|---|---|---|---|
| -4% 4,097 $m | +2% 4,033 $m | +6% 3,951 $m | +3% 3,911 $m | +7% 3,879 $m | -3% 3,768 $m | -10% 3,721 $m | +2% 3,682 $m |

| 97 SMIRNOFF | 98 LEXUS | 99 PRADA | 100 johnson&johnson | Ferrari | ARMANI | Hennessy | Marriott |
|---|---|---|---|---|---|---|---|
| +6% 3,590 $m | +7% 3,588 $m | +9% 3,585 $m | +4% 3,582 $m | NEW 3,527 $m | NEW 3,526 $m | -3% 3,513 $m | NEW 3,502 $m |

| Shell | NIVEA | FedEx | VISA |
|---|---|---|---|
| +4% 3,471 $m | +9% 3,401 $m | NEW 3,359 $m | NEW 3,338 $m |



Get in touch

Pages:
Home   Our Philosophy   Iconic Moves   About   Life at Interbrand   Best Brands   News   Views   Contact

Follow:
Twitter   Facebook   LinkedIn   Instagram

Companies:
Interbrand Health   HMKM   c_space   brandchannel:

**EXHIBIT 5**



https://www.promotique.com/blog/wp-content/uploads/2020/01/most-iconic-logos.jpg?xna...   2/14/2020



A quarter believe the colors used in a logo help them to remember a brand

14% blue

22% red

10% green

5% purple

9% yellow

## Importance of branding

**78% think some logos should be regarded as 'works of art'**

the first thing **3 in 10** notice when they see a product is the logo

**74%** think 'look and feel' can make or break a brand

Appx08053



# Branded promotional materials and merchandise

What type of branded promotional product or merchandise do you prefer to receive?

49%    33%    25%

36%    32%

29%

# Top 30 most recognizable brand logos

| | | | | | |
|---|---|---|---|---|---|
| 1. | Apple | 11. | pepsi | 21. | Playboy |
| 2. | McDonald's | 12. | Mercedes | 22. | VISA |
| 3. | Coca-Cola | 13. | Disney | 23. | FedEx |
| 4. | Nike | 14. | TOYOTA | 24. | BURGER KING |
| 5. | Starbucks | 15. | Ford | 25. | HONDA |
| 6. | Google | 16. | Twitter | 26. | Red Bull |

| | | | | | |
|---|---|---|---|---|---|
| | Google | 16. | (Twitter) | 26. | Red Bull |
| 7. | facebook | 17. | (Instagram) | 27. | Levi's |
| 8. | adidas | 18. | Windows | 28. | LEGO |
| 9. | amazon | 19. | NISSAN | 29. | MARVEL |
| 10. | YouTube | 20. | BMW | 30. | (Ferrari) |

Research conducted by OnePoll with a sample of 2,000 US Adults in December 2019

Promotique, Vistaprint, Cimpress, the Cimpress logo and the Vistaprint logo are trademarks of Cimpress plc or its subsidiaries. All other brand and product names appearing in this infographic may be trademarks or registered trademarks of their respective holders to which we have no affiliation with or sponsorship from.

Promotique™
by vistaprint®

**EXHIBIT 6**



# FORTUNE
RANKINGS ⌄   MAGAZINE   NEWSLETTERS   VIDEO   CONFERENCES

## World's Most Admired Companies

For an astounding 13th straight year, Apple claims the top spot in Fortune's annual ranking of corporate reputation, based on a survey of almost 3,800 executives, directors, and analysts.

Note: When you click "Explore the List," the "order" number that appears next to each company does not reflect the company's overall ranking on the list if its order number exceeds 50. Companies ordered No. 1 through 50 are ranked; the "order" numbers beyond the Top 50 (51 through 331) are used to sort the rest of the companies, which make up our "industry rankings," alphabetically.

‹ **2020**   2019   2018   2017   2016   2015

The Top 50

| 1 | Apple |
|---|---|
| 2 | Amazon |
| 3 | Microsoft |
| 4 | Walt Disney |
| 5 | Berkshire Hathaway |
| 6 | Starbucks |
| 7 | Alphabet |
| 8 | JPMorgan Chase |
| 9 | Costco Wholesale |
| 10 | Salesforce |

**EXPLORE THE LIST**   GROUP BY INDUSTRY   METHODOLOGY

**EXPLORE THE LIST**



If you can't see the whole picture





FORTUNE DATASTORE

Looking for leads, investment insights, or competitive intelligence?   BUY NOW



## Related Content






Document title: World's Most Admired Companies | Fortune
Capture URL: https://fortune.com/worlds-most-admired-companies/
Capture timestamp (UTC): Fri, 21 Feb 2020 21:07:37 GMT

**Appx08057**





THIS IS REAL ENERGY.
THIS IS ARAMCO.

aramco

# FORTUNE

RANKINGS ∨    MAGAZINE    NEWSLETTERS    VIDEO    CONFERENCES

## The World's Most Admired Companies

**RANK 1**

Next: 2 ›

# Apple





THIS MILESTONE HIGHLIGHTS THE
RISE OF MEGACOMPANIES IN THE U.S.

SYMETRA



**FORTUNE** DATASTORE

Looking for leads, investment insights, or competitive intelligence?

BUY NOW

Sponsored

#1 Stock to C
Banyan Hill

People With :
Have Discove
Tracker
Expert Market

Billionaire bc
Trump and Bi
on Twitter
Financial Times

5 Fintech Tre
Changing the
Banking
MUFG



## Company Info

| Industry | Computers |
|---|---|
| Location | Cupertino, Calif. |
| Industry Ranking | 1 |
| Previous Industry Ranking | 1 |
| Previous Top 50 Ranking | 1 |
| Website | https://www.apple.com |
| Overall Score | 8.40 |

## Key Attributes of Reputation

| Innovation | 1 |
|---|---|
| People Management | 1 |
| Use of Corporate Assets | 1 |
| Social Responsibility | 1 |
| Quality of Management | 1 |
| Financial Soundness | 1 |
| Long-Term Investment Value | 1 |
| Quality of Products/Services | 1 |

Document title: Apple | Fortune
Capture URL: https://fortune.com/worlds-most-admired-companies/2019/apple/
Capture timestamp (UTC): Thu, 20 Feb 2020 00:33:26 GMT



**Appx08059**





Document title: Apple | Fortune
Capture URL: https://fortune.com/worlds-most-admired-companies/2019/apple/
Capture timestamp (UTC): Thu, 20 Feb 2020 00:33:26 GMT



## FORTUNE

RANKINGS ⌄   MAGAZINE   NEWSLETTERS   VIDEO   CONFERENCES

# The World's Most Admired Companies



**RANK 1**

Next 2 ❯

## Apple



FORTUNE DATASTORE

Looking for leads, investment insights, or competitive intelligence?

**BUY NOW**

Sponsored

#1 Stock to C

5 Fintech Tre
Changing the
Banking

Smart Busine
Cutting Costs
Tracker

Billionaire bo
Trump and Bl
on Twitter



## Company Info

| Industry | Computers |
|---|---|
| Location | Cupertino, Calif. |
| Industry Ranking | 1 |
| Previous Industry Ranking | - |
| Previous Top 50 Ranking | 1 |
| Website | http://www.apple.com |
| Overall Score | 8.53 |

## Key Attributes of Reputation

| Innovation | 1 |
|---|---|
| People Management | 1 |
| Use of Corporate Assets | 1 |
| Social Responsibility | 1 |
| Quality of Management | 1 |
| Financial Soundness | 1 |
| Long-Term Investment Value | 1 |
| Quality of Products/Services | 1 |



## Company Info

| | |
|---|---|
| Industry | Computers |
| Location | Cupertino, Calif. |
| Industry Ranking | 1 |
| Previous Industry Ranking | - |
| Previous Top 50 Ranking | 1 |
| Website | http://www.apple.com |
| Overall Score | 8.51 |

## Key Attributes of Reputation

| | |
|---|---|
| Innovation | 1 |
| People Management | 1 |
| Use of Corporate Assets | 1 |
| Social Responsibility | 1 |
| Quality of Management | 1 |
| Financial Soundness | 1 |
| Long-Term Investment Value | 1 |
| Quality of Products/Services | 1 |
| Global Competitiveness | 1 |



Document title: Apple | Fortune
Capture URL: https://fortune.com/worlds-most-admired-companies/2018/apple/
Capture timestamp (UTC): Thu, 20 Feb 2020 00:31:56 GMT



REAL SUSTAINABILITY    aramco

## FORTUNE

RANKINGS ∨    MAGAZINE    NEWSLETTERS    VIDEO    CONFERENCES

# The World's Most Admired Companies



**RANK 1**

Next 2 >

## Apple

FORTUNE DATASTORE

Looking for leads, investment insights, or competitive intelligence?

[BUY NOW]

Sponsored

How to open brokerage ac

5 Fintech Tre
Changing the
Banking

#1 Stock to C

People With
Have Discove
Tracker

### Company Info

| | |
|---|---|
| Industry | Computers |
| Location | Cupertino, Calif. |
| Industry Ranking | - |
| Previous Industry Ranking | - |
| Previous Top 50 Ranking | 1 |
| Website | http://www.apple.com/ |
| Overall Score | - |

Due to an insufficient response rate in the computer industry, Apple's industry rank was not reported.

### Key Attributes of Reputation

| | |
|---|---|
| Innovation | - |
| People Management | - |
| Use of Corporate Assets | - |
| Social Responsibility | - |
| Quality of Management | - |
| Financial Soundness | - |
| Long-Term Investment Value | - |
| Quality of Products/Services | - |
| Global Competitiveness | - |



EXPLORE THE NEW FORTUNE.
THE BEST OF BUSINESS, ALL IN ONE PLACE.
REGISTER NOW



FORTUNE NEWSLETT
The latest news, insights, and analysis
straight to your inbox. SIGN UP N

Appx08063



FORTUNE    RANKINGS ∨    MAGAZINE    NEWSLETTERS    VIDEO    CONFERENCES

# Apple



FORTUNE DATASTORE

Looking for leads, investment insights, or competitive intelligence?    BUY NOW

## Company Info

| Industry | Computers |
|---|---|
| Location | Cupertino, Calif. |
| Industry Ranking | - |
| Previous Industry Ranking | - |
| Previous Top 50 Ranking | 1 |
| Website | http://www.apple.com |
| Overall Score | - |

Due to an insufficient response rate in the computer industry, Apple's industry rank was not reported.

## Key Attributes of Reputation

| Innovation | - |
|---|---|
| People Management | - |
| Use of Corporate Assets | - |
| Social Responsibility | - |
| Quality of Management | - |
| Financial Soundness | - |
| Long-Term Investment Value | - |
| Quality of Products/Services | - |
| Global Competitiveness | - |



EXPLORE THE NEW FORTUNE. THE BEST OF BUSINESS, ALL IN ONE PLACE. REGISTER NOW

NEWSLETTER
The latest news, insights, and analysis straight to your inbox. SIGN UP



Document title: Apple | Fortune
Capture URL: https://fortune.com/worlds-most-admired-companies/2016/apple/
Capture timestamp (UTC): Thu, 20 Feb 2020 00:29:32 GMT



# FORTUNE

RANKINGS ∨    MAGAZINE    NEWSLETTERS    VIDEO    CONFERENCES

# World's Most Admired Companies



**RANK 1**

Next 2 ›

## Apple

Apple holds onto the coveted No. 1 spot as the World's Most Admired Company for the ninth year in a row.



**FORTUNE** DATASTORE

Looking for leads, investment insights, or competitive intelligence?

**BUY NOW**

## Company Info

| | |
|---|---|
| Industry | Computers |
| Industry Rank | 1 |
| Previous Industry Rank | 1 |
| Overall Score | 8.6 |
| Location | Cupertino, Calif. |
| Website | http://www.apple.com |
| Fortune 500 Rank | 5 |
| Fortune 500 Profile | http://fortune.com/fortune500/apple-5 |
| Global 500 Rank | 15 |
| Global 500 Profile | http://fortune.com/global500/apple-15 |

## Key Attributes of Reputation

| | |
|---|---|
| Innovation | 1 |
| People Management | 1 |
| Use of Corporate Assets | 1 |
| Social Responsibility | 1 |
| Quality of Management | 1 |
| Financial Soundness | 3 |
| Long-Term Investment Value | 1 |
| Quality of Products/Services | 1 |
| Global Competitiveness | 1 |

**Sponsored**

Billionaire bc
Trump and Bl
on Twitter

5 Fintech Tre
Changing the
Banking

Thinking abo
business? Di
three-point g

6 Credit Card
Not Ignore If
Excellent Cre

**EXPLORE THE NEW FORTUNE.**

**NEWSLETT**

Document title: Apple | Fortune
Capture URL: https://fortune.com/worlds-most-admired-companies/2016/apple/
Capture timestamp (UTC): Thu, 20 Feb 2020 00:29:32 GMT



THIS IS REAL ENERGY.
THIS IS ARAMCO.   EXPLORE MORE

aramco

**FORTUNE**   RANKINGS ⌄   MAGAZINE   NEWSLETTERS   VIDEO   CONFERENCES

## Most Admired 2015



| RANK | PREV RANK | INDUSTRY | INDUSTRY RANK | PREV INDUSTRY RANK | OVERALL SCORE | HQ COUNTRY | WEBSITE |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Computers | 1 | 1 | 8.29 | USA | http://www.apple.com |

Apple holds the top spot for the eighth year in a row. In February, it became the first company to hit more than $700 billion in market value. As tech devotees await the launch of the Apple Watch in April, record smartphone sales were announced in January — 74.5 million phones in final three months of 2014 — proving that the iPhone is still the product to beat.

Sponsored

5 Fintech Tr
Changing the
Banking
*MJPS*

Smart Busine
Cutting Costs
Tracker
*Aspect Market*

2020's Best C
Deals That O
Rest
*Nerdwallet*

Billionaire bc
Trump and Bi
on Twitter
*Financial Times*

**FORTUNE** DATASTORE    BUY NOW
Looking for leads, investment insights, or competitive intelligence?

### Nine Key Attributes of Reputation

Innovation

People (management)

Use of corporate assets

Social responsibility

Quality of management

Financial soundness

Long-term investment value

Quality of products / services

Global competitiveness

EXPLORE
THE NEW FORTUNE.
THE BEST OF BUSINESS, ALL IN ONE PLACE.
REGISTER NOW

FORTUNE
NEWSLETTE
The latest news, insights, and analysis
straight to your inbox. SIGN UP N

| Rankings | Sections | Customer Support | Commercial Services | About Us |
|---|---|---|---|---|
| 40 Under 40 | Most Powerful Women | The Ledger | Health | Retail | Photography | Digital Reprotation FAQ | Digital Reprotation FAQ | About Us |
| 500 Best Companies | World's Greatest Leaders | Automotive | International | Sports | Magazine | Magazine Customer Service | FORTUNE Knowledge Group | Online Behavioral |
| Fortune 500 | World's Most Admired | Careers | Finance | Technology | Newsletters | EU Customer Service | FORTUNE Branded Content | FORTUNE Wealt |
| | Companies | Design | Leadership | Libraries | | | | |



See Full List

More Features



## It's lonely at the top for Apple

Is Apple's long dominance as the leader of Fortune's Most Admired Companies waxing or waning?

## 7 companies that fell off the map

In 1983, they were some of the most admired companies in the world. So what went wrong?



## Why Coke can still grow around the world

Coca-Cola CEO Muhtar Kent says he's excited about global economic progress and believes he can sell even more soda.

Fortune Rankings



Best Companies to Work For

1. 10 Top-paying companies
2. They're hiring!



100 Fastest-Growing Companies

1. Fastest-Growing fails
2. Fastest-Growing all-stars



Global 500

1. Women CEOs
2. Where the money is

How we pick the Most Admired

The Most Admired list is the definitive report card on corporate reputations. Our survey partners at Hay Group started with approximately 1,400 companies: the Fortune 1,000âÄîthe 1,000 largest U.S. companies ranked by revenueâÄïand non-U.S. companies in Fortune's global 500 database with revenue of $10 billion or more... More

2013 ▾

comments

World's Most Admired Companies



Top companies in innovation, responsibility and more



Tech stars



30 years of Most Admired Companies

| Rank | Company Name | Location |
| --- | --- | --- |
| 1 | Apple | CA |
| 2 | Google | CA |
| 3 | Amazon.com | WA |
| 4 | Coca-Cola | GA |
| 5 | Starbucks | WA |
| 6 | IBM | NY |
| 7 | Southwest | TX |
| 8 | Berkshire Hathaway | NE |
| 9 | Walt Disney | CA |
| 10 | FedEx | TN |

See Full List

More Features



## It's lonely at the top for Apple

Is Apple's long dominance as the leader of Fortune's Most Admired Companies waxing or waning?

## 7 companies that fell off the map

In 1983, they were some of the most admired companies in the world. So what went wrong?





**WORLD'S MOST ADMIRED COMPANIES** 2012 ▼

Full List
By Location
Best & Worst
No. 1's
Industries

Top 50
250 Most Admired companies
All companies
Regional winners
States
Countries

Innovation
People
Mgmt
Use of assets
Social responsibility
Mgmt
quality
Financial soundness
Long-term investment
Product quality
Global competitiveness

## Top 50

For the 50 most admired companies overall, FORTUNE's survey asked businesspeople to vote for the companies that they admired most, from any industry.

| Rank | Company |
|------|---------|
| 1 | Apple |
| 2 | Google |
| 3 | Amazon.com |
| 4 | Coca-Cola |
| 5 | IBM |
| 6 | FedEx |
| 7 | Berkshire Hathaway |
| 8 | Starbucks |
| 9 | Procter & Gamble |
| 10 | Southwest Airlines |
| 11 | McDonald's |
| 12 | Johnson & Johnson |
| 13 | Walt Disney |
| 14 | BMW |
| 15 | General Electric |
| 16 | American Express |
| 17 | Microsoft |
| 18 | 3M |
| 19 | Caterpillar |
| 20 | Costco Wholesale |
| 21 | Nordstrom |
| 22 | J.P. Morgan Chase |
| 23 | Singapore Airlines |
| 24 | Wal-Mart Stores |
| 25 | Target |
| 26 | Nike |
| 27 | Exxon Mobil |
| 28 | Whole Foods Market |
| 29 | UPS |
| 30 | Sony |
| 31 | Nestlé |
| 32 | PepsiCo |
| 33 | Toyota Motor |
| 34 | Samsung Electronics |
| 35 | Volkswagen |
| 36 | Intel |
| 37 | DuPont |
| 38 | Dow |
| 39 | Goldman Sachs Group |
| 40 | Marriott International |
| 41 | Infosys |
| 42 | Cisco Systems |
| 43 | Accenture |
| 44 | Daimler |
| 45 | Wells Fargo |
| 46 | AT&T |
| 47 | Ralph Lauren |
| 48 | St. Jude Medical |
| 49 | Oracle |
| 50* | General Mills |
| 50* | Honda Motor |
| 50* | Unilever |

From the March 19, 2012 issue

* A tie in the rankings.

### Find companies *you* most admire

☐ Innovation                ☐ Quality of management
☐ People management          ☐ Financial soundness
☐ Use of corporate assets    ☐ Long-term investment
☐ Social responsibility      ☐ Product/services quality
☐ Global competitiveness

See All
Select Industry(s)
(Select State(s))
See All
Select Country(s)
(HOW THIS TOOL WORKS)

Submit

### Readers' choice

The experts chose the top 50. Now it's your turn. 'Like' the company you most admire to vote. The top 5 reader favorites are below.

| | Company | # of 'Likes' |
|--|---------|-------------|
| 1 | Apple | 1,188 |
| 2 | Texofab | 651 |
| 3 | Tupperware Brands | 564 |
| 4 | FedEx | 391 |
| 5 | IBM | 264 |

### How we pick the Most Admired

The Most Admired list is the definitive report card on corporate reputations. Our survey partners at Hay Group start with about 1,400 companies... More

Apple's culture of secrecy
Fortune's Adam Lashinsky explains how Apple keeps projects secret, even from its own employees.
Watch
Where are the Most Admired?

The Most Admired companies in America are spread out across the country, but a few states dominate.
Winning streaks

These 20 Most Admired companies have landed among the top in their industries for multiple years.

Quizzes & video



Document title: World&#39;s Most Admired Companies 2011: Apple snapshot - FORTUNE

Capture URL: https://archive.fortune.com/magazines/fortune/mostadmired/2011/snapshots/670.html

Capture timestamp (UTC): Thu, 20 Feb 2020 00:34:02 GMT

Page 1 of 1

**Appx08073**



Document title: World&#39;s Most Admired Companies 2010: Apple snapshot - FORTUNE
Capture URL: https://archive.fortune.com/magazines/fortune/mostadmired/2010/snapshots/670.html
Capture timestamp (UTC): Thu, 20 Feb 2020 00:26:56 GMT

Page 1 of 1

Appx08074

# WORLD'S MOST ADMIRED COMPANIES

2009 ▼

| Full List | By Location | Best & Worst | No. 1s | Industries |

## Apple

1 of 50   Back   Next

## ...What Readers Say

They speak out on the Most Admired...

Fortune Most Admired List: General Electric, 2007 ranking #1 Gene...

Updated Fortune Most Admired List: General Electric, 2007 ranking...

Alcoa is the "most admired metals company in 2010?" I know numerous...

Have your say

MOST ADMIRED
**Top 50 rank:** 1
**Rank in Computers:** 2 (Previous rank: 2")
**Overall score:** 7.07

**Why it's admired**
It's been a rocky year for Apple: CEO Steve Jobs' health made headlines, and critics said Cupertino wasn't being open enough about it. But customers remained loyal to the brand that made white ear buds cool. As much of the computer industry struggled, Apple shipped 22.7 million iPods during its first quarter (up 3 percent from last year), 2.5 million Macs (up 9 percent), and 4.4 million iPhones. No wonder Apple tops our Most Admired list for the second year in a row. —*Alyssa Abkowitz*

**Address:** 1 Infinite Loop
Cupertino, CA 95014
**Phone:** 408-996-1010
**Website:** www.apple.com

COURTESY: APPLE

Get Quote: AAPL    Financials: Latest Results

| Nine key attributes of reputation | Industry rank |
|---|---|
| Innovation | 1 |
| People management | 1 |
| Use of corporate assets | 3 |
| Social responsibility | 5 |
| Quality of management | 3 |
| Financial soundness | 2 |
| Long-term investment | 3 |
| Quality of products/services | 1 |
| Global competitiveness | 5 |

### ...Top 50 Headquarters

**Show:** Top 50 | All Most Admired: The Americas | Europe | Asia/Australia

## Industry: Computers

### Most Admired

| Rank | Company | Overall score |
|---|---|---|
| 1 | Xerox | 7.28 |
| 2 | Apple | 7.07 |

## Find companies *you* most admire

- Innovation
- Quality of management
- People management
- Financial soundness
- Use of corporate assets
- Long-term investment
- Social responsibility
- Product/services quality
- Global competitiveness

Select Industry(s)    See All
Select State(s)    See All
Select Country(s)    See All

- Get more Most Admired data
(HOW THIS TOOL WORKS)    Submit

## Video   (2 of 3)

‹    5

### HP stays lean and mean

CEO Mark Hurd has transformed HP, No. 30 on Fortune's Most Admired list, from industry doormat into the largest of the tech titans. Watch

## Top 3

| INNOVATION | PEOPLE MANAGEMENT | FINANCIAL SOUNDNESS |
|---|---|---|

| Company | Industry rank |
|---|---|
| Apple | 2 |
| Walt Disney | 1 |
| Google | 1 |

See the rest

### How we pick the Most Admired

This year *Fortune* has revamped the Most Admired Survey by combining the former America's Most Admired Company (AMAC) survey and the former World's Most Admired Company (WMAC) survey into one... More

Document title: World&#39;s Most Admired Companies 2009: Apple snapshot - from FORTUNE
Capture URL: https://archive.fortune.com/magazines/fortune/mostadmired/2009/snapshots/670.html
Capture timestamp (UTC): Fri, 14 Feb 2020 22:34:33 GMT

Page 1 of 2

They speak out on the Most Admired...

Fortune Most Admired List: General Electric, 2007 ranking #1 Gene...

Updated Fortune Most Admired List: General Electric, 2007 ranking...

Alcoa is the "most admired metals company in 2010?" I know numerous...

Have your say

**MOST ADMIRED**
**Top 50 rank:** 1
**Rank in Computers:** 2 (Previous rank  2*)
**Overall score:** 7.07

**Why it's admired**
It's been a rocky year for Apple: CEO Steve Jobs' health made headlines, and critics said Cupertino wasn't being open enough about it. But customers remained loyal to the brand that made white ear buds cool. As much of the computer industry struggled, Apple shipped 22.7 million iPods during its first quarter (up 3 percent from last year), 2.5 million Macs (up 9 percent), and 4.4 million iPhones. No wonder Apple tops our Most Admired list for the second year in a row. --Alyssa Abkowitz

**Address:** 1 Infinite Loop
Cupertino, CA 95014
**Phone:** 408-996-1010
**Website:** www.apple.com



Get Quote: AAPL          Financials: Latest Results

| How key attributes of reputation | Industry rank |
|---|---|
| Innovation | 1 |
| People management | 1 |
| Use of corporate assets | 3 |
| Social responsibility | 5 |
| Quality of management | 3 |
| Financial soundness | 2 |
| Long-term investment | 3 |
| Quality of products/services | 1 |
| Global competitiveness | 5 |

...Top 50 Headquarters

**Show:** Top 50 | All Most Admired: The Americas | Europe | Asia/Australia

| Select Industry(s) | See All |
|---|---|
| Select State(s) | See All |
| Select Country(s) | See All |

Get more Most Admired data
(HOW THIS TOOL WORKS)    **Submit**

**Video** (1 of 3)

**Least admired companies**
Fortune's Stanley Bing looks at qualities, like repeated layoffs, that could land a company on this, um, prestigious list. Watch

**Top 3**

| INNOVATION | PEOPLE MANAGEMENT | FINANCIAL SOUNDNESS |
|---|---|---|

| Company | Industry rank |
|---|---|
| Apple | 2 |
| Walt Disney | 1 |
| Google | 1 |

See the rest

**How we pick the Most Admired**
This year Fortune has revamped the Most Admired Survey by combining the former America's Most Admired Company (AMAC) survey and the former World's Most Admired Company (WMAC) survey into one... More

# Industry: Computers

## Most Admired

| Rank | Company | Overall score |
|---|---|---|
| 1 | Xerox | 7.28 |
| 2 | Apple | 7.07 |
| 3 | Hewlett-Packard | 7.04 |
| More competitors | | See all |

From the March 16, 2009 issue

*Designated as an international industry. Prior year's ranks, unless otherwise noted, are ranks in the World's Most Admired Companies listing.

Document title: World&#39;s Most Admired Companies 2009: Apple snapshot - from FORTUNE
Capture URL: https://archive.fortune.com/magazines/fortune/mostadmired/2009/snapshots/670.html
Capture timestamp (UTC): Fri, 14 Feb 2020 22:34:33 GMT

Appx08076



Document title: America&#39;s Most Admired Companies 2008 - FORTUNE Magazine Ranks the Best
Capture URL: https://archive.fortune.com/magazines/fortune/mostadmired/2008/index.html
Capture timestamp (UTC): Fri, 21 Feb 2020 23:44:54 GMT

Page 1 of 1

**Appx08077**

**EXHIBIT 7**

Introducing Apple Music — All The Ways You Love Music. All in One Place. - Apple                    2/7/20, 10:05 PM



Newsroom                                                        Search Newsroom          Archive          Apple TV+ Press ↗

Apple Newsroom needs your permission to **enable desktop notifications** when new articles are published          ✕

**PRESS RELEASE**
June 8, 2015

# Introducing Apple Music — All The Ways You Love Music. All in One Place.

## Worldwide Debut June 30

SAN FRANCISCO — June 8, 2015 — Apple® today unveiled Apple Music™, a single, intuitive app that combines the best ways to enjoy music — all in one place. Apple Music is a revolutionary streaming music service, a pioneering worldwide live radio station from Apple broadcasting 24 hours a day and a great new way for music fans to connect with their favorite artists. Apple Music combines the largest and most diverse collection of music on the planet with the expertise of world-class music experts who have programmed playlists for your iPhone®, iPad®, iPod touch®, Mac®, PC, Apple TV® and Android phones.* Apple Music will be available starting on June 30 in over 100 countries.

"We love music, and the new Apple Music service puts an incredible experience at every fan's fingertips," said Eddy Cue, Apple's senior vice president of Internet Software and Services. "All the ways people love enjoying music come together in one app — a revolutionary streaming service, live worldwide radio and an exciting way for fans to connect with artists."

"Apple Music is really going to move the needle for fans and artists," said Jimmy Iovine. "Online music has become a complicated mess of apps, services and websites. Apple Music brings the best features together for an experience every music lover will appreciate."

## Apple Music

Appx08079

Apple Music is a revolutionary streaming service and app that puts the entire Apple Music catalog at your fingertips across your favorite devices. Starting with the music you already know — whether from the iTunes Store® or ripped CDs — your music now lives in one place alongside the Apple Music catalog with over 30 million songs. You can stream any song, album or playlist you choose — or better yet, let Apple Music do the work for you.

Curation is the soul of every playlist created on Apple Music. Apple has hired the most talented music experts from around the world, dedicated to creating the perfect playlists based on your preferences, and they become better curators the more you listen. The "For You" section of Apple Music provides a fresh mix of albums, new releases and playlists, which have been personalized just for you.

In addition to human curation, Siri® is also dedicated to helping you enjoy great music and have fun with Apple Music. Ask Siri to, "Play me the best songs from 1994,""Play the best FKA twigs song," or "What was the number one song in February 2011?"

### Apple Music Radio

Beats 1℠, Apple's first ever live radio station dedicated entirely to music and music culture, will broadcast live to over 100 countries. Beats 1 is a 24-hour listening experience led by influential DJs Zane Lowe in Los Angeles, Ebro Darden in New York and Julie Adenuga in London. Listeners around the globe will hear the same great programming at the same time. Exciting programs on Beats 1 will offer exclusive interviews, guest hosts and the best of what's going on in the world of music.

Apple has also redesigned radio with human curation taking the lead. Apple Music Radio gives you stations created by some of the world's finest radio DJs. The new stations range in genres from indie rock to classical and folk to funk, with each one expertly curated. With membership, you can skip as many songs as you like, so you can change the tune without changing the dial.

### Apple Music Connect

Artists and fans now have an incredible way to connect with one another directly in Apple Music with Connect. Through Connect, artists can share lyrics, backstage photos, videos or even release their latest song directly to fans directly from their iPhone. Fans can comment on or like anything an artist has posted, and share it via Messages, Facebook, Twitter and email. And when you comment, the artist can respond directly to you.

### Pricing & Availability

Starting on June 30, music fans around the world are invited to a 3-month free membership, after which a $9.99/month subscription fee will apply. There will also be a family plan providing service for up to six family

**Appx08080**

members available for just $14.99/month.

Requires initial sign up. At the end of the trial period, the membership will automatically renew and payment method will be charged on a monthly basis until auto-renewal is turned off in account settings. Family plan requires iCloud® Family Sharing. See www.apple.com/icloud/family-sharing for more information.

*Apple Music is available on your iPhone, iPad, iPod touch, Mac, and PC starting June 30. Apple Music will be coming to Apple TV and Android phones this fall.

Apple revolutionized personal technology with the introduction of the Macintosh in 1984. Today, Apple leads the world in innovation with iPhone, iPad, the Mac and Apple Watch. Apple's three software platforms — iOS, OS X and watchOS — provide seamless experiences across all Apple devices and empower people with breakthrough services including the App Store, Apple Music, Apple Pay and iCloud. Apple's 100,000 employees are dedicated to making the best products on earth, and to leaving the world better than we found it.

**Press Contacts**:
Tom Neumayr
Apple
tneumayr@apple.com
(408) 974-1972

Sarah Joyce
Apple
sarah_joyce@apple.com
(310) 795-4757

Apple, the Apple logo, Apple Music, iPhone, iPad, iPod touch, Mac, Apple TV, iTunes Store, Siri, Beats 1 and iCloud are trademarks of Apple. Other company and product names may be trademarks of their respective owners.

 Newsroom

The latest news for journalists.

Read more ›

  Newsroom  ›  Introducing Apple Music — All The Ways You Love Music. All in One Place.

Appx08081

**EXHIBIT 8**



APPLE001200
Appx08083

40 million songs, plus your entire iTunes library
Listen offline
Ad-free music
Download 100,000 songs to your library
Access across your devices
See what your friends are listening to
Original shows, concerts, and exclusives
Beats 1 radio
Free trial with no commitment

# Family

Everything from the individual plan
Access for up to six people
A personal account for each family member
Sharing what you want, when you want — or not at all
Sharing of iTunes purchases

# Available everywhere







iOS                       Apple Watch                       Apple TV

APPLE001201
Appx08084

Apple Music - Plans - Apple

1/2/18, 11:07 AM



APPLE001202

**Appx08085**

Apple Music - Plans - Apple

1/2/18, 11:07 AM



APPLE001203

Appx08086

**EXHIBIT 9**



**Newsroom**

Search Newsroom     Archive     Apple TV+ Press

**PRESS RELEASE**

August 18, 2015

# Apple Music Festival Brings Incredible Live Performances to Fans Worldwide in September

## Ten Nights of Spectacular Live Shows Including Pharrell Williams, One Direction, Florence + The Machine, Disclosure & More

LONDON — August 18, 2015 — Apple® today announced that Pharrell Williams, One Direction, Florence + The Machine and Disclosure are among the headliners at the 2015 Apple Music™ Festival at London's Roundhouse this September. Apple will broadcast performances to music fans around the world for free, which can be viewed live and on-demand on Apple Music. The Apple Music Festival lets fans get even closer to their favorite performers with coverage on Beats 1℠ alongside backstage news and footage straight from the artists on Apple Music Connect.

"We wanted to do something really special for music fans this year," said Eddy Cue, Apple's senior vice president of Internet Software and Services. "The Apple Music Festival is a greatest hits set of ten unbelievable nights featuring some of the best performers on the planet appearing live and interacting directly with their fans on Connect and Beats 1."

Apple Music is a single, intuitive app that combines the best ways to enjoy music — all in one place. Beats 1 is Apple's first ever live radio station dedicated entirely to music and music culture. With Apple Music Connect, artists can share lyrics, backstage photos, videos or even release their latest song to fans directly from their iPhone®.

"Wow, I'm so grateful to be performing at the Apple Music Festival. The Roundhouse is such a historic venue ... there's always a special energy in the crowd. Thank you for having me!" - Pharrell Williams

"It'll be great to be back in London and we can't wait to perform for our fans in the Roundhouse and around the world on Apple Music! See you there!" - Niall, One Direction

Appx08088

"We're excited to be playing at this year's Apple Music Festival at the wonderful Roundhouse!" - Florence + The Machine

"We're super excited to play our first ever show for Apple Music Festival at the Roundhouse, one of our favorite venues in London. It's also the day our album's released so that makes it extra special!" - Disclosure

The Apple Music Festival takes place over ten nights from September 19 to September 28. UK residents can apply to win tickets on Apple Music as well as through media partners including the London Evening Standard. Apple hosted the iTunes® Festival in London for eight years, and now in honor of the launch of Apple Music, has renamed the event the Apple Music Festival. Customers can enjoy the Apple Music Festival via Apple Music or iTunes on their iPhone, iPad®, iPod touch®, Mac®, PC or in stunning HD with Apple TV®.

The iTunes Festival started at London's Institute of Contemporary Arts in 2007, and has seen over 550 artists perform in front of more than half a million fans and tens of millions more online and on-demand. Past performers include Adele, Beck, Coldplay, Elton John, Foo Fighters, Justin Timberlake, Kings of Leon, Lady Gaga, Katy Perry, Maroon 5, Muse, Sir Paul McCartney and many more.

For updates, tickets and additional information visit:
www.applemusicfestival.com or join the conversation on Apple Music Connect.

To learn more about Apple Music Connect and Beats 1 visit:
www.apple.com/music/connect and www.apple.com/music/radio.

Apple revolutionized personal technology with the introduction of the Macintosh in 1984. Today, Apple leads the world in innovation with iPhone, iPad, the Mac and Apple Watch. Apple's three software platforms — iOS, OS X and watchOS — provide seamless experiences across all Apple devices and empower people with breakthrough services including the App Store, Apple Music, Apple Pay and iCloud. Apple's 100,000 employees are dedicated to making the best products on earth, and to leaving the world better than we found it.

**Press Contacts:**

Jennifer Ramsay
Apple
ramsay@apple.com
+1 (408) 862-2239

Mandy Hershon
Apple
mhershon@apple.com
+44 203 284 6194

© 2015 Apple Inc. All rights reserved. Apple, the Apple logo, Apple Music, Beats 1, iPhone, iTunes, iPad, iPod touch, Mac and Apple TV are trademarks of Apple. Other company and product names may be trademarks of their respective owners.

Appx08089



**Newsroom**

The latest news and updates, direct from Apple.

Read more

Newsroom     Apple Music Festival Brings Incredible Live Performances to Fans Worldwide in September

**Shop and Learn**
Mac
iPad
iPhone
Watch
TV
Music
AirPods
HomePod
iPod touch
Accessories
Gift Cards

**Services**
Apple Music
Apple News+
Apple TV+
Apple Arcade
Apple Card
iCloud

**Account**
Manage Your Apple ID
Apple Store Account
iCloud.com

**Apple Store**
Find a Store
Genius Bar
Today at Apple
Apple Camp
Field Trip
Apple Store App
Refurbished and Clearance
Financing
Apple Trade In
Order Status
Shopping Help

**For Business**
Apple and Business
Shop for Business

**For Education**
Apple and Education
Shop for College

**For Healthcare**
Apple in Healthcare
Health on Apple Watch
Health Records on iPhone

**For Government**
Shop for Government
Shop for Veterans and Military

**Apple Values**
Accessibility
Education
Environment
Inclusion and Diversity
Privacy
Supplier Responsibility

**About Apple**
Newsroom
Apple Leadership
Job Opportunities
Investors
Events
Contact Apple

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.     Privacy Policy | Terms of Use | Sales and Refunds | Legal | Site Map     🇺🇸 United States

**EXHIBIT 10**

UPDATE
July 1, 2019

# Apple Music brings Up Next Live to global cities this summer

Lineup Features Bad Bunny, Daniel Caesar, Khalid, Ashley McBryde, King Princess, Lewis Capaldi and Jessie Reyez



Apple Music Up Next Live featuring Bad Bunny at Apple Piazza Liberty.

Apple today announced Up Next Live, a series of intimate performances from past and present Apple Music Up Next artists including Bad Bunny, Daniel Caesar, Khalid, Ashley McBryde, King Princess, Lewis Capaldi and Jessie Reyez. Each artist will perform for fans in one city, for one night only.

Apple Music Up Next is a monthly program showcasing the best new artists in the world. Each month, Apple Music tastemakers and editors identify one artist to feature, then utilize the power of the platform to raise awareness of that artist to Apple Music's growing audience of music fans. Apple Music Up Next also includes a deeply curated companion playlist full of incredible new artists across genres from all over the world.

Each artist on the diverse Up Next Live roster has been featured as an Apple Music Up Next artist in the monthly program or through the playlist. All shows will be hosted after hours in local Apple stores in Milan, San Francisco, Brooklyn, Paris, London, Chicago and Washington, D.C. Apple stores frequently offer free creative sessions through Today at Apple and serve as the place where the local creative community can come together and share ideas, making them the perfect backdrop for Up Next Live. Performances kick off July 9 with global sensation Bad Bunny at Apple Piazza Liberty in Milan.

"The impact [of being part of Up Next] can be seen in everything, in numbers, in plays, in shows," said Bad Bunny. "There are a lot of fans that, when I go out in the street in the US, people who do not speak Spanish, I think they will not know me and they stop me, they ask me for pictures and they sing my songs. It helped me very much to make myself known in a

Appx08092

"The impact [of being part of Up Next] can be seen in everything, in numbers, in plays, in shows," said Bad Bunny. "There are a lot of fans that, when I go out in the street in the US, people who do not speak Spanish, I think they will not know me and they stop me, they ask me for pictures and they sing my songs. It helped me very much to make myself known in a market different from mine, not only the USA, but in places where Spanish is not spoken or where perhaps Latin music does not dominate, exposing my music and giving people the opportunity to get to know what I do."

**Up Next Live schedule:**

July 9 — Bad Bunny at Apple Piazza Liberty, Milan
July 19 — Jessie Reyez at Apple Union Square, San Francisco
July 25 — King Princess at Apple Williamsburg, Brooklyn
July 31 — Lewis Capaldi at Apple Champs-Élysées, Paris
August 9 — Daniel Caesar at Apple Covent Garden, London
August 16 — Ashley McBryde at Apple Michigan Avenue, Chicago
August 23 — Khalid at Apple Carnegie Library, Washington, D.C.

For more information, please visit apple.co/amupnextlive.

## Media

Images of Apple Music Up Next Live
Download All ⊕

## Press Contacts

Brian Bumbery                          Jessica Bass
Apple                                  Apple
bumbery@apple.com                      jessica_bass@apple.com
(424) 326-4156                         (310) 895-6508

Apple Media Helpline
media.help@apple.com
(408) 974-2042

## Latest Articles



UPDATE
**Apple News launches special coverage of the 2020 presidential election**

February 2, 2020

 Newsroom
The latest news for journalists.
Read more ↗

 Newsroom    Apple Music brings Up Next Live to global cities this summer

| Shop and Learn | Services | Apple Store | For Business | Apple Values |
|---|---|---|---|---|
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |
| iPad | Apple News+ | Genius Bar | Shop for Business | Education |
| iPhone | Apple TV+ | Today at Apple | | Environment |
| Watch | Apple Arcade | Apple Camp | For Education | Inclusion and Diversity |
| TV | Apple Card | Field Trip | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for College | Supplier Responsibility |
| AirPods | | Refurbished and Clearance | | |
| HomePod | Account | Financing | For Healthcare | About Apple |
| iPod touch | Manage Your Apple ID | Apple Trade In | Apple in Healthcare | Newsroom |
| Accessories | Apple Store Account | Order Status | Health on Apple Watch | Apple Leadership |
| Gift Cards | iCloud.com | Shopping Help | Health Records on iPhone | Job Opportunities |
| | | | | Investors |



Newsroom                                                    Search Newsroom    Archive    Apple TV+ Press ↗

my music and giving people the opportunity to get to know what I do."

Up Next Live schedule:

July 9 — Bad Bunny at Apple Piazza Liberty, Milan
July 19 — Jessie Reyez at Apple Union Square, San Francisco
July 25 — King Princess at Apple Williamsburg, Brooklyn
July 31 — Lewis Capaldi at Apple Champs-Élysées, Paris
August 9 — Daniel Caesar at Apple Covent Garden, London
August 16 — Ashley McBryde at Apple Michigan Avenue, Chicago
August 23 — Khalid at Apple Carnegie Library, Washington, D.C.

For more information, please visit apple.co/amupnextlive.

## Media

Images of Apple Music Up Next Live
Download All ⊕

## Press Contacts

**Brian Bumbery**          **Jessica Bass**
Apple                       Apple
bumbery@apple.com           jessica_bass@apple.com
(424) 326-4156              (310) 895-6508

**Apple Media Helpline**
media.help@apple.com
(408) 974-2042

## Latest Articles

UPDATE
**Apple News launches special coverage of the 2020 presidential election**
February 3, 2020

 Newsroom
The latest news for journalists.
Read more ›

 Newsroom    Apple Music brings Up Next Live to global cities this summer

Shop and Learn        Services          Apple Store            For Business             Apple Values
Mac                   Apple Music        Find a Store          Apple and Business       Accessibility
iPad                  Apple News+        Genius Bar            Shop for Business        Education
iPhone                Apple TV+          Today at Apple                                 Environment
Watch                 Apple Arcade       Apple Camp            For Education            Inclusion and Diversity
TV                    Apple Card         Field Trip            Apple and Education      Privacy
Music                 iCloud             Apple Store App       Shop for College         Supplier Responsibility
AirPods                                  Refurbished and Clearance
HomePod               Account            Financing             For Healthcare           About Apple
iPod touch            Manage Your Apple ID  Apple Trade In      Apple in Healthcare     Newsroom
Accessories           Apple Store Account   Order Status        Health on Apple Watch   Apple Leadership
Gift Cards            iCloud.com         Shopping Help         Health Records on iPhone Job Opportunities
                                                                                       Investors
                                                               For Government           Events
                                                               Shop for Government      Contact Apple
                                                               Shop for Veterans and Military

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.    Privacy Policy    Terms of Use    Sales and Refunds    Legal    Site Map        United States

Document title: Apple Music brings Up Next Live to global cities this summer - Apple
Capture URL: https://www.apple.com/newsroom/2019/07/apple-music-brings-up-next-live-to-global-cities-this-summer/
Capture timestamp (UTC): Fri, 14 Feb 2020 17:40:03 GMT

**Appx08094**

**EXHIBIT 11**



**EXHIBIT 12**



**Newsroom**

Search Newsroom      Archive      Apple TV+ Press

PRESS RELEASE

April 5, 2000

# Apple's QuickTime 4 Downloads Top 32 Million and Ten New QTV Channels Premiere

## Darwin 1.0 Available Open Source

INTERNET WORLD, LOS ANGELES—April 5, 2000—Reinforcing QuickTime's widespread consumer and industry adoption, Apple® today announced that downloads of its QuickTime™ 4 software have topped 32 million and the QuickTime TV (QTV) network now features over 40 premium channels of music, video and news from leading content providers.

With Apple's QuickTime 4 player, available as a free download from www.apple.com/quicktime, Macintosh® and Windows users worldwide get free access to QTV, the Internet's best entertainment network for web-based audio and video. Apple today added 10 new QTV channels, expanding thediversity of QTV's programming with international content, major— and independent-label music, industry news, fitness, comedy and short films. The new QTV channels include: Beggar's Banquet Records, Caroline's Comedy Club, Cipher New Media, Global Music Network from the UK, HyperTunez from France, IFILM, Oddcast, Pitch TV, Sony Music and ZDTV.

Apple today also announced the release of Darwin 1.0, the advanced operating system core at the heart of Mac® OS X, Apple's next generation operating system. The release of Darwin 1.0 Open Source means tens of thousands of registered Darwin developers can modify, customize and extend key Apple software, including the modern mach kernel and BSD layers found in Mac OS X. Darwin 1.0 is available for immediate download at www.apple.com/darwin. Darwin Streaming Server, the open source version of Apple's QuickTime Streaming Server software, which is used to stream high-quality audio and video over the Internet, will be available in May.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Apple is committed to bringing the best personal computing experience to students, educators, creative professionals and consumers around the worldthrough its innovative hardware, software and Internet offerings.

Appx08098

**Press Contacts:**

Vanessa Rios
Apple
(408) 974-0610
vrios@apple.com

Bob Berger
Edelman Worldwide
(650) 968-4033 ext. 2752
bob_berger@edelman.com

© 2000 Apple Computer, Inc. All rights reserved. Apple, the Apple logo, Macintosh, Mac OS
and QuickTime are either registered trademarks or trademarks of Apple. Other company and
product names may be trademarks of their respective owners.

 Newsroom

The latest news and updates, direct from Apple.

Read more

 Newsroom     Apple's QuickTime 4 Downloads Top 32 Million and Ten New QTV Channels Premiere

| Shop and Learn | Services | Apple Store | For Business | Apple Values |
|---|---|---|---|---|
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |
| iPad | Apple News+ | Genius Bar | Shop for Business | Education |
| iPhone | Apple TV+ | Today at Apple | | Environment |
| Watch | Apple Arcade | Apple Camp | **For Education** | Inclusion and Diversity |
| TV | Apple Card | Field Trip | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for College | Supplier Responsibility |
| AirPods | | Refurbished and Clearance | | |
| HomePod | **Account** | Financing | **For Healthcare** | **About Apple** |
| iPod touch | Manage Your Apple ID | Apple Trade In | Apple in Healthcare | Newsroom |
| Accessories | Apple Store Account | Order Status | Health on Apple Watch | Apple Leadership |
| Gift Cards | iCloud.com | Shopping Help | Health Records on iPhone | Job Opportunities |
| | | | | Investors |
| | | | **For Government** | Events |
| | | | Shop for Government | Contact Apple |
| | | | Shop for Veterans and Military | |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.     Privacy Policy   |   Terms of Use   |   Sales and Refunds   |   Legal   |   Site Map          United States

Appx08099

**EXHIBIT 13**



**Newsroom**

Search Newsroom    Archive    Apple TV+ Press

**PRESS RELEASE**

January 9, 2001

# Apple Introduces iTunes — World's Best and Easiest To Use Jukebox Software

MACWORLD EXPO, SAN FRANCISCO—January 9, 2001—Apple® today introduced iTunes, the world's best and easiest to use "jukebox" software that lets users create and manage their own music library on their Mac®. iTunes lets Mac users import songs from their favorite CDs; compress them into the popular MP3 format and store them on their computer's hard drive; organize their music using powerful searching, browsing and play list features; watch stunning visualizations on their computer screen; and burn their own audio CDs — all in one easy-to-use application. Exclusively for Mac users, iTunes is available as a free download from www.apple.com.

"Apple has done what Apple does best — make complex applications easy, and make them even more powerful in the process," said Steve Jobs, Apple's CEO. "iTunes is miles ahead of every other jukebox application, and we hope its dramatically simpler user interface will bring even more people into the digital music revolution."

As the ultimate way to manage digital music and create custom CDs, iTunes lets users:

- import an unlimited number of audio tracks and encode them into the popular MP3 format;
- accelerate the encoding process when working on Apple's Power Mac™ G4 with Velocity Engine™;
- organize their music collection using powerful but simple to use tools including a real-time search engine and single-click browsing by artist, album or genre;
- listen to MP3s, audio CDs or hundreds of Internet radio stations;
- watch a visual representation of the music being played, which is synched to the beat of the music;
- create custom music CDs with the Power Mac G4's new CD-RW and a combination CD-RW/DVD-R SuperDrive that reads and writes both CDs and DVDs in a simple, one-step process with no extra CD-burning software required; and

- download songs to popular MP3 players from Rio and Creative Labs with plug-and-play simplicity with no extra software or complicated driver installations required.

**Availability**

iTunes is immediately available as a free download from www.apple.com for use with Macintosh systems introduced since August 1998. Users can burn their own CDs using the Power Mac G4's new CD-RW or combination CD-RW/DVD-R SuperDrive. Mac OS™ 9.0.4 or Mac OS 9.1 is required for running iTunes. Both are available as free downloads at www.apple.com.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Apple is committed to bringing the best personal computing experience to students, educators and creative professionals and consumers around the world through its innovative hardware, software and Internet offerings.

**Press Contacts:**

Alicia Awbrey
Apple
(408) 974-0922
awbrey@apple.com

Nicole Scott
Edelman Worldwide
(650) 968-4033 ext. 2746
nicole.scott@edelman.com

Apple, the Apple logo, Macintosh, Mac, Mac OS, Power Mac and Velocity Engine are either registered trademarks or trademarks of Apple. Other company and product names may be trademarks of their respective owners.



 Newsroom

The latest news and updates, direct from Apple.

Read more

Newsroom    Apple Introduces iTunes — World's Best and Easiest To Use Jukebox Software

| Shop and Learn | Services | Apple Store | For Business | Apple Values |
|---|---|---|---|---|
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |
| iPad | Apple News+ | Genius Bar | Shop for Business | Education |
| iPhone | Apple TV+ | Today at Apple | | Environment |
| Watch | Apple Arcade | Apple Camp | **For Education** | Inclusion and Diversity |
| TV | Apple Card | Field Trip | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for College | Supplier Responsibility |
| AirPods | | Refurbished and Clearance | | |
| HomePod | **Account** | Financing | **For Healthcare** | **About Apple** |
| iPod touch | Manage Your Apple ID | Apple Trade In | Apple in Healthcare | Newsroom |
| | Apple Store Account | | Health on Apple Watch | Apple Leadership |

Apple Introduces iTunes — World's Best and Easiest To Use Jukebox Software - Apple     Page 3 of 3

Accessories

Gift Cards

iCloud.com

Order Status

Shopping Help

Health Records on iPhone

**For Government**

Shop for Government

Shop for Veterans and Military

Job Opportunities

Investors

Events

Contact Apple

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.     Privacy Policy | Terms of Use | Sales and Refunds | Legal | Site Map     United States

**EXHIBIT 14**



**Newsroom**

Search Newsroom      Archive      Apple TV+ Press

**PRESS RELEASE**
October 23, 2001

# Apple Presents iPod

## Ultra-Portable MP3 Music Player Puts 1,000 Songs in Your Pocket

CUPERTINO, California—October 23, 2001—Apple® today introduced iPod™, a breakthrough MP3 music player that packs up to 1,000 CD-quality songs into an ultra-portable, 6.5 ounce design that fits in your pocket. iPod combines a major advance in portable music device design with Apple's legendary ease of use and Auto-Sync, which automatically downloads all your iTunes™ songs and playlists into your iPod, and keeps them up to date whenever you plug your iPod into your Mac®.

"With iPod, Apple has invented a whole new category of digital music player that lets you put your entire music collection in your pocket and listen to it wherever you go," said Steve Jobs, Apple's CEO. "With iPod, listening to music will never be the same again."

**Next Generation Player**
iPod represents the next generation of portable music players that store music on an internal hard drive, yet are only 20 percent of the volume of today's hard drive-based players. iPod stores up to 1,000 CD-quality songs on its super-thin 5 GB hard drive, and features up to 20 minutes of shock protection for nonstop playback when running, biking or other activities.

iPod's built-in FireWire® port lets you download an entire CD into iPod in under 10 seconds and 1,000 songs in less than 10 minutes—30 times faster than USB-based players.

iPod plays up to 10 hours of continuous music, powered by its rechargeable lithium polymer battery, and recharges automatically whenever iPod is connected to a Mac, using power supplied over the FireWire cable. Every iPod comes with a compact, FireWire-based power adapter for traveling. iPod's high-capacity 5GB hard drive doubles as a portable FireWire hard drive for storing presentations, large documents, graphic images and digital movies.

iPod plays music in the popular MP3, MP3 VBR (variable bit rate), AIFF and WAV formats and can support MP3 bit rates up to 320-Kbps. Its upgradable firmware enables support of future audio formats. For CD-quality sound, iPod is equipped with a high-output 60-mW amplifier that delivers 20 to 20,000 Hz frequency response for deep bass and crystal-clear highs. iPod's earbud-style

headphones are built with neodymium magnets for enhanced frequency response and high-fidelity sound.

iPod also features a 160-by-128-pixel high-resolution display, with a white LED backlight to give clear visibility in daylight as well as low-light conditions.

**Legendary Ease of Use**

Apple has applied its legendary expertise in human interface engineering to make iPod the easiest to use digital device ever. Simply rotate iPod's unique scroll-wheel with your thumb or finger to quickly access your entire music collection by playlists, artists or songs. The scroll-wheel makes it possible to hold and operate iPod with just one hand and features automatic acceleration when scrolling through long lists so you can find your music in seconds. iPod also features customizable settings such as shuffle, repeat, startup volume, sleep timer and menus in multiple languages including English, French, German and Japanese. iPod can display song data in any of these languages, enabling users to mix and match songs from all over the world.

**Auto-Sync**

iPod's revolutionary Auto-Sync feature makes it easy to get your entire music collection into iPod and update it whenever you connect iPod to your Mac. Simply plug your new iPod into your Mac with the supplied FireWire cable, and all of your iTunes songs and playlists are automatically downloaded into iPod at blazing FireWire speed. Then just unplug and go. Whenever you plug iPod back into your Mac it will be automatically updated with your latest iTunes songs and playlists, usually in seconds. There has never been a faster and easier way to always have your up-to-the-minute music and playlists with you wherever you go.

**Pricing & Availability**

iPod will be available beginning on Saturday, November 10, for a suggested retail price of $399 (US) from The Apple Store® (www.apple.com), Apple's retail stores and Apple Authorized Resellers. An iTunes 2 CD, earbud-style headphones, FireWire cable, and FireWire-based power adapter are all included. iPod requires iTunes 2.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Apple is committed to bringing the best personal computing experience to students, educators, creative professionals and consumers around the world through its innovative hardware, software and Internet offerings.

**Press Contacts:**
Alicia Awbrey
Apple
(408) 974-0922
awbrey@apple.com

Natalie Sequeira
Apple
(408) 974-6877
nat@apple.com

Apple, the Apple logo, Macintosh, Mac, The Apple Store, FireWire, iPod and iTunes are either registered trademarks or trademarks of Apple. Other company and product names may be trademarks of their respective owners.



**EXHIBIT 15**



**Newsroom**                                                    Search Newsroom          Archive          Apple TV+ Press

**PRESS RELEASE**

April 9, 2007

# 100 Million iPods Sold

CUPERTINO, California—April 9, 2007—Apple® today announced that the 100 millionth iPod® has been sold, making the iPod the fastest selling music player in history. The first iPod was sold five and a half years ago, in November 2001, and since then Apple has introduced more than 10 new iPod models, including five generations of iPod, two generations of iPod mini, two generations of iPod nano and two generations of iPod shuffle. Along with iTunes® and the iTunes online music store, the iPod has transformed how tens of millions of music lovers acquire, manage and listen to their music.

"At this historic milestone, we want to thank music lovers everywhere for making iPod such an incredible success," said Steve Jobs, Apple's CEO. "iPod has helped millions of people around the world rekindle their passion for music, and we're thrilled to be a part of that."

"It's hard to remember what I did before the iPod," said Mary J. Blige, GRAMMY Award-winning singer. "iPod is more than just a music player, it's an extension of your personality and a great way to take your favorite music with you everywhere you go."

"Without the iPod, the digital music age would have been defined by files and folders instead of songs and albums," said John Mayer, GRAMMY Award-winning singer-songwriter and guitarist. "Though the medium of music has changed, the iPod experience has kept the spirit of what it means to be a music lover alive."

The iPod has also sparked an unprecedented ecosystem of over 4,000 accessories made specifically for the iPod that range from fashionable cases to speaker systems, and more than 70 percent of 2007-model US automobiles currently offer iPod connectivity.

"I take my running shoes and my iPod with me everywhere," said Lance Armstrong, seven-time Tour de France champion. "I listen to music when I run. Having my music with me is really motivating."

Every iPod features seamless integration with iTunes 7. The iTunes Store (www.itunes.com) features the world's largest catalog with over five million songs, 350 television shows and over 400 movies. The iTunes Store has sold over 2.5 billion songs, 50 million TV shows and over 1.3 million movies, making it the world's most popular online music, TV and movie store.

Appx08109

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Today, Apple continues to lead the industry in innovation with its award-winning computers, OS X operating system and iLife and professional applications. Apple is also spearheading the digital media revolution with its iPod portable music and video players and iTunes online store, and will enter the mobile phone market this year with its revolutionary iPhone.

**Press Contacts:**
Tom Neumayr
Apple
tneumayr@apple.com
(408) 974-1972

Christine Monaghan
Apple
cmonaghan@apple.com
(408) 974-8850

Apple, the Apple logo, Mac, Mac OS, Macintosh, iPod and iTunes are trademarks of Apple. Other company and product names may be trademarks of their respective owners.



 Newsroom

The latest news and updates, direct from Apple.

Read more

Newsroom     100 Million iPods Sold

**Shop and Learn**
Mac
iPad
iPhone
Watch
TV
Music
AirPods
HomePod
iPod touch
Accessories
Gift Cards

**Services**
Apple Music
Apple News+
Apple TV+
Apple Arcade
Apple Card
iCloud

**Account**
Manage Your Apple ID
Apple Store Account
iCloud.com

**Apple Store**
Find a Store
Genius Bar
Today at Apple
Apple Camp
Field Trip
Apple Store App
Refurbished and Clearance
Financing
Apple Trade In
Order Status
Shopping Help

**For Business**
Apple and Business
Shop for Business

**For Education**
Apple and Education
Shop for College

**For Healthcare**
Apple in Healthcare
Health on Apple Watch
Health Records on iPhone

**For Government**
Shop for Government
Shop for Veterans and Military

**Apple Values**
Accessibility
Education
Environment
Inclusion and Diversity
Privacy
Supplier Responsibility

**About Apple**
Newsroom
Apple Leadership
Job Opportunities
Investors
Events
Contact Apple

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.     Privacy Policy  |  Terms of Use  |  Sales and Refunds  |  Legal  |  Site Map                    United States

Appx08110

**EXHIBIT 16**



Newsroom

Search Newsroom     Archive     Apple TV+ Press ↗

Apple Newsroom needs your permission to **enable desktop notifications** when new articles are published

**PRESS RELEASE**
April 28, 2003

# Apple Launches the iTunes Music Store

CUPERTINO, California—April 28, 2003—Apple® today launched the iTunes® Music Store, a revolutionary online music store that lets customers quickly find, purchase and download the music they want for just 99 cents per song, without subscription fees. The iTunes Music Store offers groundbreaking personal use rights, including burning songs onto an unlimited number of CDs for personal use, listening to songs on an unlimited number of iPods, playing songs on up to three Macintosh® computers, and using songs in any application on the Mac®, including iPhoto™, iMovie™ and iDVD™.

"The iTunes Music Store offers the revolutionary rights to burn an unlimited number of CDs for personal use and to put music on an unlimited number of iPods for on-the-go listening," said Steve Jobs, Apple's CEO. "Consumers don't want to be treated like criminals and artists don't want their valuable work stolen. The iTunes Music Store offers a groundbreaking solution for both."

The iTunes Music Store features over 200,000 songs from music companies including BMG, EMI, Sony Music Entertainment, Universal and Warner. Users can easily search the entire music store to instantly locate any song by title, artist or album, or browse the entire collection of songs by genre, artist and album. Users can listen to a free 30-second high-quality preview of any song in the store, then purchase and download their favorite songs or complete albums in pristine digital quality with just one click.

The iTunes Music Store also features exclusive tracks from over 20 artists, including Bob Dylan, U2, Eminem, Sheryl Crow and Sting, as well as special music videos from several of these artists which users can watch for free. In addition, the iTunes Music Store highlights new releases, staff

Appx08112

favorites and up-and-coming artists, and delivers a compelling variety of music from many genres and time periods, ranging from Rock and Hip Hop to Jazz and Classical. The ability to browse the entire music store by genre, artist and album combined with free high-quality previews of every song lets users explore music in an entirely new way, to easily find the hits they love and discover gems they've never heard before.

All music on the iTunes Music Store is encoded in the industry-standard AAC audio format at 128 kilobits per second which enables smaller files and faster download times while rivaling CD-quality sound superior to the quality of MP3 files at the same size. The AAC audio format, developed by Dolby, was also adopted to provide the audio encoding for the industry-standard MPEG-4 video format.

The iTunes Music Store is fully integrated into iTunes® 4, the fourth major release of Apple's popular digital music jukebox software, allowing users to purchase, download, organize and listen to their music using just one application. iTunes 4 features major new enhancements including Rendezvous™ music-sharing between Macs, so users can legally stream their music to other Macs without the hassle of copying files from computer to computer.

### Pricing & Availability

iTunes 4 with the iTunes Music Store is available as a free download immediately at www.apple.com/itunes. The iTunes Music Store requires a valid credit card with a U.S. billing address, a Mac equipped with iTunes 4 and Mac® OS X version 10.1.5 or later. Further information about Apple's digital music products can be found at www.apple.com/ipod and www.apple.com/music.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Apple is committed to bringing the best personal computing experience to students, educators, creative professionals and consumers around the world through its innovative hardware, software and Internet offerings.

### Press Contacts:

Natalie Sequeira
Apple
(408) 974-6877
nat@apple.com

Lara Vacante
Apple
(408) 974-7142
larav@apple.com

**Appx08113**

Apple, the Apple logo, Mac, Mac OS, Macintosh, iTunes, iPhoto, iMovie, iDVD and Rendezvous are either registered trademarks or trademarks of Apple. Other company and product names may be trademarks of their respective owners



**Newsroom**

The latest news for journalists.

Read more ›

 Newsroom   Apple Launches the iTunes Music Store

| Shop and Learn | Services | Apple Store | For Business | Apple Values |
|---|---|---|---|---|
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |
| iPad | Apple News+ | Genius Bar | Shop for Business | Education |
| iPhone | Apple TV+ | Today at Apple | | Environment |
| Watch | Apple Arcade | Apple Camp | **For Education** | Inclusion and Diversity |
| TV | Apple Card | Field Trip | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for College | Supplier Responsibility |
| AirPods | | Refurbished and Clearance | | |
| HomePod | **Account** | Financing | **For Healthcare** | **About Apple** |
| iPod touch | Manage Your Apple ID | Apple Trade In | Apple in Healthcare | Newsroom |
| Accessories | Apple Store Account | Order Status | Health on Apple Watch | Apple Leadership |
| Gift Cards | iCloud.com | Shopping Help | Health Records on iPhone | Job Opportunities |
| | | | | Investors |
| | | | **For Government** | Events |
| | | | Shop for Government | Contact Apple |
| | | | Shop for Veterans and Military | |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.     Privacy Policy   Terms of Use   Sales and Refunds   Legal   Site Map     🇺🇸 United States

Appx08114

**EXHIBIT 17**



**Newsroom**

Search Newsroom  Archive  Apple TV+ Press

**PRESS RELEASE**

May 5, 2003

# iTunes Music Store Sells Over One Million Songs in First Week

CUPERTINO, California—May 5, 2003—Apple® today announced that its revolutionary iTunes® Music Store sold over one million songs during its first week. Over half of the songs were purchased as albums, dispelling concerns that selling music on a per-track basis will destroy album sales. In addition, over half of the 200,000 songs offered on the iTunes Music Store were purchased at least once, demonstrating the breadth of musical tastes served by Apple's groundbreaking online store. Apple also reported that over one million copies of iTunes 4 have been downloaded, and that it has received orders for over 110,000 new third-generation iPods since their introduction a week ago, with music lovers snapping up more than 20,000 of them from stores in the U.S. this weekend.

"In less than one week we've broken every record and become the largest online music company in the world," said Steve Jobs, Apple's CEO. "Apple has created the first complete solution for the digital music age—you can purchase your favorite music online at the iTunes Music Store, mix your favorite tracks into playlists with iTunes, and take your entire music collection with you everywhere with the super-slim new iPods."

"Hitting one million songs in less than a week was totally unexpected," said Roger Ames, Warner Music Group's chairman and CEO. "Apple has shown music fans, artists and the music industry as a whole that there really is a successful and easy way of legally distributing music over the Internet."

"Our internal measure of success was having the iTunes Music Store sell one million songs in the first month. To do this in one week is an over-the-top success," said Doug Morris, Universal Music Group's CEO. "Apple definitely got it right with the iTunes Music Store."

Apple also announced that tomorrow, May 6, the iTunes Music Store will be adding over 3,200 new tracks, including major new album releases such as Jack Johnson's "On and On," Andrea Bocelli's "Tosca" and Fleetwood Mac's "Say You Will," as well as pre-release tracks from upcoming albums by artists David Sanborn, The RH Factor, John Scofield, Jesse Harris and Lizz Wright. Also to be added tomorrow are additional albums from the Eagles, Michelle Branch's album "The Spirit Room," and new Featured Artist pages for Coldplay, including an exclusive track and music video, and Alanis Morissette, with her catalog of music.

The iTunes Music Store features over 200,000 songs from major music companies including BMG, EMI, Sony Music Entertainment, Universal, and Warner and lets customers quickly find, purchase and download the music they want for just 99 cents per song. The iTunes Music Store offers groundbreaking personal use rights that allow users to burn songs onto an unlimited number of CDs for personal use, listen to songs on an unlimited number of iPods, play songs on up to three Macintosh® computers, and use songs in other applications on the Mac®, including iPhoto™, iMovie™ and iDVD™.

Music lovers can easily find the hits they love and discover gems they've never heard before by listening to free 30-second high-quality previews of any song in the store, then purchase and download their favorite songs or complete albums in pristine digital quality with just one click. Users can explore music in an entirely new way by easily searching the entire music store to instantly locate any song by title, artist or album, or browse the entire collection of songs by genre, artist and album. The iTunes Music Store is fully integrated into iTunes 4, the fourth major release of Apple's popular digital music jukebox software, allowing users to purchase, download, organize and listen to their music using just one application.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Apple is committed to bringing the best personal computing experience to students, educators, creative professionals and consumers around the world through its innovative hardware, software and Internet offerings.

**Press Contacts:**
Natalie Sequeira
Apple
(408) 974-6877
nat@apple.com

Lara Vacante
Apple
(408) 974-7142
larav@apple.com

Apple, the Apple logo, Mac, Mac OS, Macintosh, iTunes, iPhoto, iMovie, iDVD and iPod are either registered trademarks or trademarks of Apple. Other company and product names may be trademarks of their respective owners.



 Newsroom

The latest news and updates, direct from Apple.

Read more

| Newsroom | iTunes Music Store Sells Over One Million Songs in First Week | | | |
|---|---|---|---|---|
| **Shop and Learn** | **Services** | **Apple Store** | **For Business** | **Apple Values** |
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |

Appx08117

| | | | | |
|---|---|---|---|---|
| iPad | Apple News+ | Genius Bar | Shop for Business | Education |
| iPhone | Apple TV+ | Today at Apple | | Environment |
| Watch | Apple Arcade | Apple Camp | **For Education** | Inclusion and Diversity |
| TV | Apple Card | Field Trip | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for College | Supplier Responsibility |
| AirPods | | Refurbished and Clearance | | |
| HomePod | **Account** | Financing | **For Healthcare** | **About Apple** |
| iPod touch | Manage Your Apple ID | Apple Trade In | Apple in Healthcare | Newsroom |
| Accessories | Apple Store Account | Order Status | Health on Apple Watch | Apple Leadership |
| Gift Cards | iCloud.com | Shopping Help | Health Records on iPhone | Job Opportunities |
| | | | | Investors |
| | | | **For Government** | Events |
| | | | Shop for Government | Contact Apple |
| | | | Shop for Veterans and Military | |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.    Privacy Policy | Terms of Use | Sales and Refunds | Legal | Site Map        United States

**Appx08118**

**EXHIBIT 18**



**Newsroom**

Search Newsroom          Archive          Apple TV+ Press

**PRESS RELEASE**
September 8, 2003

# iTunes Music Store Sells Ten Millionth Song

Cupertino, California—September 8, 2003—Apple® today announced that music fans have purchased and downloaded over ten million songs from the iTunes® Music Store since its launch just over four months ago, averaging over 500,000 songs per week. The ten millionth song, "Complicated" by Avril Lavigne, was purchased and downloaded at 11:34 p.m. (PDT) on September 3.

The combination of the iTunes digital music jukebox, the pioneering iTunes Music Store and the market-leading iPod™ digital music player provide users with a complete solution for buying, managing and listening to their digital music collections anywhere. The iTunes Music Store will be available to Windows users by the end of this year.

"Legally selling ten million songs online in just four months is a historic milestone for the music industry, musicians and music lovers everywhere," said Steve Jobs, Apple's CEO. "Apple offers the only complete solution for digital music with iTunes and the amazing iPod, which now holds 10,000 songs in your pocket."

"We are honored and grateful to be one of the top selling artists in the iTunes Music Store," said Chris Martin, singer/songwriter of the Grammy-award winning band Coldplay. "It's clear Apple has delivered a working and successful platform for music fans to discover artists and purchase both albums and single songs instantly with ease. We embrace these efforts enthusiastically and see them as the future of our business."

The revolutionary online music store offers songs from major and independent music labels, groundbreaking personal use rights, and one-click download directly into Apple's integrated digital jukebox software, iTunes—all for just 99 cents per song. Users can listen to free 30-second previews of any song in the store, then purchase and download their favorite songs or complete albums in pristine digital quality. Songs can be burned at no extra cost onto an unlimited number of CDs for personal use, played on up to three computers, and listened to on an unlimited number of iPods.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Apple is committed to bringing the best personal computing experience to students,

Appx08120

educators, creative professionals and consumers around the world through its innovative hardware, software and Internet offerings.

**Press Contacts:**
Lara Vacante
Apple
(408) 974-7142
larav@apple.com

Natalie Sequeira
Apple
(408) 974-6877
nat@apple.com

Apple, the Apple logo, Macintosh, Mac, Mac OS, iTunes and iPod are either registered trademarks or trademarks of Apple. Other company and product names may be trademarks of their respective owners.



 Newsroom

The latest news and updates, direct from Apple.
Read more

Newsroom        iTunes Music Store Sells Ten Millionth Song

| Shop and Learn | Services | Apple Store | For Business | Apple Values |
| --- | --- | --- | --- | --- |
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |
| iPad | Apple News+ | Genius Bar | Shop for Business | Education |
| iPhone | Apple TV+ | Today at Apple | | Environment |
| Watch | Apple Arcade | Apple Camp | **For Education** | Inclusion and Diversity |
| TV | Apple Card | Field Trip | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for College | Supplier Responsibility |
| AirPods | | Refurbished and Clearance | | |
| HomePod | **Account** | Financing | **For Healthcare** | **About Apple** |
| iPod touch | Manage Your Apple ID | Apple Trade In | Apple in Healthcare | Newsroom |
| Accessories | Apple Store Account | Order Status | Health on Apple Watch | Apple Leadership |
| Gift Cards | iCloud.com | Shopping Help | Health Records on iPhone | Job Opportunities |
| | | | | Investors |
| | | | **For Government** | Events |
| | | | Shop for Government | Contact Apple |
| | | | Shop for Veterans and Military | |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.    Privacy Policy    Terms of Use    Sales and Refunds    Legal    Site Map          🇺🇸 United States

**EXHIBIT 19**



PRESS RELEASE
November 6, 2003

# iTunes Sells 1.5 Million Songs During Past Week; Five Times Napster's First Week Downloads

## Apple in Top Spot With Over 80 Percent Market Share

CUPERTINO, California—November 6, 2003—Music fans purchased and downloaded 1.5 million songs from Apple's iTunes® Music Store during the same period that Napster reported selling 300,000 songs during its first week of operation. More than 17 million songs have been purchased and downloaded from the iTunes Music Store since it launched in April 2003. According to Nielsen SoundScan, the iTunes Music Store had more than 80 percent market share of legally purchased downloads last week.

"During Napster's first week of operation, the iTunes Music Store sold five times as many songs as Napster did—1.5 million versus 300,000," said Steve Jobs, Apple's CEO. "The unbeatable combination of iPod and iTunes offers music lovers a seamless experience for buying, managing and listening to their digital music collections anywhere."

The iTunes Music Store offers Windows users the same online music store as Mac® users with the same music catalog of more than 400,000 songs, the same "gold standard" personal use rights and the same 99 cents-per-song pricing. The second generation iTunes Music Store launched October 16 includes: online gift certificates for family and friends; Apple's innovative and patent-pending online "Allowance" feature which allows parents to automatically deposit funds into their kids' iTunes Music Store account every month; more than 5,000 audiobooks which can be purchased with one click and listened to on a Mac or Windows computer as well as on iPods; Celebrity Playlists; and new exclusive tracks from more than 60 artists. The iTunes Music Store offers music from all five major music companies and over 200 independent music labels.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Apple is committed to bringing the best personal computing experience to students, educators, creative professionals and consumers around the world through its innovative hardware, software and Internet offerings.

**Press Contacts:**

Natalie Sequeira

Apple

(408) 974-6877

nat@apple.com

**Press Contacts:**

Steve Dowling

Apple

(408) 974-1896

sdowling@apple.com

© 2003 Apple. All rights reserved. Apple, the Apple logo, Macintosh, Mac, Mac OS, iTunes and iPod are either registered trademarks or trademarks of Apple. Other company and product names may be trademarks of their respective owners.



 Newsroom

The latest news and updates, direct from Apple.

Read more

Newsroom     iTunes Sells 1.5 Million Songs During Past Week; Five Times Napster's First Week Downloads

**Shop and Learn**

Mac
iPad
iPhone
Watch
TV
Music
AirPods
HomePod
iPod touch
Accessories
Gift Cards

**Services**

Apple Music
Apple News+
Apple TV+
Apple Arcade
Apple Card
iCloud

**Account**

Manage Your Apple ID
Apple Store Account
iCloud.com

**Apple Store**

Find a Store
Genius Bar
Today at Apple
Apple Camp
Field Trip
Apple Store App
Refurbished and Clearance
Financing
Apple Trade In
Order Status
Shopping Help

**For Business**

Apple and Business
Shop for Business

**For Education**

Apple and Education
Shop for College

**For Healthcare**

Apple in Healthcare
Health on Apple Watch
Health Records on iPhone

**For Government**

Shop for Government
Shop for Veterans and Military

**Apple Values**

Accessibility
Education
Environment
Inclusion and Diversity
Privacy
Supplier Responsibility

**About Apple**

Newsroom
Apple Leadership
Job Opportunities
Investors
Events
Contact Apple

More ways to shop: **Find an Apple Store** or **other retailer** near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.     Privacy Policy     Terms of Use     Sales and Refunds     Legal     Site Map     🇺🇸 United States

**Appx08124**

**EXHIBIT 20**



**Newsroom**    Search Newsroom    Archive    Apple TV+ Press

**PRESS RELEASE**
December 15, 2003

# iTunes Music Store Downloads Top 25 Million Songs

## Over $1 Million of iTunes Gift Certificates and Allowances Purchased

CUPERTINO, California—December 15, 2003—Apple® today announced that music fans have purchased and downloaded more than 25 million songs from Apple's iTunes® Music Store since it launched in April 2003. The 25 millionth song, purchased last Friday afternoon, was "Let It Snow! Let It Snow! Let It Snow!" by Frank Sinatra.

Apple also announced that over $1 million of iTunes online gift certificates and allowances have been purchased since the features were added to the iTunes Music Store on October 16, 2003.

"With over 25 million songs purchased and downloaded to date, the iTunes Music Store is hands-down the most successful online music store," said Steve Jobs, Apple's CEO. "Music fans are buying and downloading almost 1.5 million songs per week from the iTunes Music Store, which is a rate of 75 million songs per year."

Apple is the only company to offer music fans a complete solution for buying, managing and listening to their digital music collections anywhere with the unique combination of the iTunes digital music jukebox software, the pioneering iTunes Music Store and the market-leading iPod™ digital music player.

The iTunes Music Store offers Windows and Mac® users the same music catalog of more than 400,000 songs, the same "gold standard" personal use rights and the same 99 cents-per-song pricing. The second generation iTunes Music Store launched October 16 includes: online gift certificates for family and friends; Apple's innovative and patent-pending online "Allowance" feature which allows parents to automatically deposit funds into their kids' iTunes Music Store account every month; more than 5,000 audiobooks which can be purchased with one click and listened to on a Mac or Windows computer as well as on iPods; Celebrity Playlists; and new exclusive tracks from more than 60 artists. The iTunes Music Store offers music from all five major music companies and over 200 independent music labels.

Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh. Apple is committed to bringing the best personal computing experience to students, educators, creative professionals and consumers around the world through its innovative hardware, software and Internet offerings.

**Press Contacts:**

Natalie Sequeira
Apple
(408) 974-6877
nat@apple.com

Lara Vacante
Apple
(408) 974-7142
larav@apple.com

Apple, the Apple logo, Macintosh, Mac, Mac OS, iTunes and iPod are either registered trademarks or trademarks of Apple. Other company and product names may be trademarks of their respective owners.



 Newsroom

The latest news and updates, direct from Apple.

Read more

Newsroom     iTunes Music Store Downloads Top 25 Million Songs

| Shop and Learn | Services | Apple Store | For Business | Apple Values |
|---|---|---|---|---|
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |
| iPad | Apple News+ | Genius Bar | Shop for Business | Education |
| iPhone | Apple TV+ | Today at Apple | | Environment |
| Watch | Apple Arcade | Apple Camp | **For Education** | Inclusion and Diversity |
| TV | Apple Card | Field Trip | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for College | Supplier Responsibility |
| AirPods | | Refurbished and Clearance | | |
| HomePod | **Account** | Financing | **For Healthcare** | **About Apple** |
| iPod touch | Manage Your Apple ID | Apple Trade In | Apple in Healthcare | Newsroom |
| Accessories | Apple Store Account | Order Status | Health on Apple Watch | Apple Leadership |
| Gift Cards | iCloud.com | Shopping Help | Health Records on iPhone | Job Opportunities |
| | | | | Investors |
| | | | **For Government** | Events |
| | | | Shop for Government | Contact Apple |
| | | | Shop for Veterans and Military | |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.     Privacy Policy  |  Terms of Use  |  Sales and Refunds  |  Legal  |  Site Map                    🇺🇸 United States

**Appx08127**

**EXHIBIT 21**

iTunes Store Sets New Record with 25 Billion Songs Sold - Apple

2/7/20, 10:03 PM



**Newsroom**

Search Newsroom    Archive    Apple TV+ Press ↗

Apple Newsroom needs your permission to **enable desktop notifications** when new articles are published

PRESS RELEASE

February 6, 2013

# iTunes Store Sets New Record with 25 Billion Songs Sold

CUPERTINO, California—February 6, 2013—Apple® today announced that music fans have purchased and downloaded more than 25 billion songs from the iTunes Store® (www.itunes.com), the world's most popular online music, TV and movie store. The 25 billionth song, "Monkey Drums" (Goksel Vancin Remix) by Chase Buch, was purchased by Phillip Lüpke from Germany. As the downloader of the 25 billionth song, Phillip will receive a €10,000 iTunes® Gift Card.

"We are grateful to our users whose passion for music over the past 10 years has made iTunes the number one music retailer in the world," said Eddy Cue, Apple's senior vice president of Internet Software and Services. "Averaging over 15,000 songs downloaded per minute, the iTunes Store connects music fans with their favorite artists, including global sensations like Adele and Coldplay and new artists like The Lumineers, on a scale we never imagined possible."

"In a lot of ways, iTunes has leveled the playing field for musicians. Whether you're unsigned, indie, major, whatever—it's the place most people go to buy digital music," said Wesley Schultz, guitarist and lead vocalist of The Lumineers. "iTunes doesn't exclude any musicians simply because they're not yet established or popular."

The iTunes Store is the world's most popular music store with a catalog of over 26 million songs and over 25 billion songs downloaded, and is available in 119 countries. The iTunes Store is the best way for iPhone®, iPad®, iPod®, Mac® and PC users to legally discover, purchase and download music online. All music on the iTunes Store comes in iTunes Plus®, Apple's DRM-free format with high-quality 256 kbps AAC encoding

**Appx08129**

for audio virtually indistinguishable from the original recordings. iTunes in the Cloud lets you download your previously purchased iTunes music to your devices at no additional cost, and new music purchases can be downloaded automatically to your iOS devices.

Apple designs Macs, the best personal computers in the world, along with OS X, iLife, iWork and professional software. Apple leads the digital music revolution with its iPods and iTunes online store. Apple has reinvented the mobile phone with its revolutionary iPhone and App Store, and is defining the future of mobile media and computing devices with iPad.

**Press Contacts:**
Christine Monaghan
Apple
cmonaghan@apple.com
(408) 974-8850

Lizzie Garlinghouse
Apple
garlinghouse@apple.com
(408) 974-0469

Apple, the Apple logo, Mac, Mac OS, Macintosh, iTunes Store, iTunes, iPhone, iPad, iPod and iTunes Plus are trademarks of Apple. Other company and product names may be trademarks of their respective owners.

 **Newsroom**

The latest news for journalists.

Read more ›

 › Newsroom › iTunes Store Sets New Record with 25 Billion Songs Sold

Appx08130

iTunes Store Sets New Record with 25 Billion Songs Sold - Apple                                                                    2/7/20, 10:03 PM

| **Shop and Learn** | **Services** | **Apple Store** | **For Business** | **Apple Values** |
|---|---|---|---|---|
| Mac | Apple Music | Find a Store | Apple and Business | Accessibility |
| iPad | Apple News+ | Genius Bar | Shop for Business | Education |
| iPhone | Apple TV+ | Today at Apple | | Environment |
| Watch | Apple Arcade | Apple Camp | **For Education** | Inclusion and Diversity |
| TV | Apple Card | Field Trip | Apple and Education | Privacy |
| Music | iCloud | Apple Store App | Shop for College | Supplier Responsibility |
| AirPods | | Refurbished and Clearance | | |
| HomePod | **Account** | Financing | **For Healthcare** | **About Apple** |
| iPod touch | Manage Your Apple ID | Apple Trade In | Apple in Healthcare | Newsroom |
| Accessories | Apple Store Account | Order Status | Health on Apple Watch | Apple Leadership |
| Gift Cards | iCloud.com | Shopping Help | Health Records on iPhone | Job Opportunities |
| | | | | Investors |
| | | | **For Government** | Events |
| | | | Shop for Government | Contact Apple |
| | | | Shop for Veterans and Military | |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.      Privacy Policy | Terms of Use | Sales and Refunds | Legal | Site Map            🇺🇸 United States

Appx08131

**EXHIBIT 22**



**EXHIBIT 23**

**FILED UNDER SEAL**

**EXHIBIT 24**

## TRADEMARK ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
| --- | --- |
| NATURE OF CONVEYANCE: | ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL |

CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
| --- | --- | --- | --- |
| Apple Corps Limited | | 02/02/2007 | COMPANY: UNITED KINGDOM |

RECEIVING PARTY DATA

| | |
| --- | --- |
| Name: | Apple Inc. |
| Street Address: | 1 Infinite Loop |
| City: | Cupertino |
| State/Country: | CALIFORNIA |
| Postal Code: | 95014 |
| Entity Type: | CORPORATION: CALIFORNIA |

PROPERTY NUMBERS  Total: 4

| Property Type | Number | Word Mark |
| --- | --- | --- |
| Registration Number: | 2034964 | APPLE |
| Registration Number: | 2041653 | |
| Registration Number: | 2036537 | |
| Registration Number: | 3200354 | |

CORRESPONDENCE DATA

Fax Number:          (408)253-0186
*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*
Phone:               408-974-2385
Email:               laperle@apple.com
Correspondent Name:  Thomas R. La Perle
Address Line 1:      1 Infinite Loop
Address Line 2:      MS: 3TM
Address Line 4:      Cupertino,  CALIFORNIA   95014

| NAME OF SUBMITTER: | Thomas R. La Perle |
| --- | --- |
| Signature: | /Thomas R. La Perle/ |

*(margin text: 2034964    CH $115.00)*

**TRADEMARK**
**REEL: 003516 FRAME: 0288**

| Date: | 04/05/2007 |
|---|---|

Total Attachments: 3
source=Apple Corps Assignment#page1.tif
source=Apple Corps Assignment#page2.tif
source=Apple Corps Assignment#page3.tif

Date: *February 2* 2007

**APPLE CORPS LIMITED**
as Assignor

**APPLE INC.**
as Assignee

# Assignment of Trade Marks

In United States of America

**THIS ASSIGNMENT** is made this ⟨2⟩ day of ⟨February⟩ Two thousand and seven

**BETWEEN**

**APPLE CORPS LIMITED** a Company duly incorporated under the laws of England and Wales, of 27 Ovington Square, London, SW3 1LJ, United Kingdom (hereinafter called "the Assignor") of the one part;

**AND**

**APPLE INC.,** a Company duly incorporated under the laws of the State of California in the United States of America, of 1 Infinite Loop, Cupertino, California 95014, United States of America, (hereinafter called "the Assignee") of the other part.

**WHEREAS**

a)      The Assignor is the Registered Proprietor of the trade marks in the **United States of America**, details of which are set out in the Schedule hereto, (hereinafter called the "Trade Marks").

b)      The Parties have agreed upon the Assignment of the Trade Marks with the goodwill therein.

**NOW THIS ASSIGNMENT WITNESSETH** as follows:-

1.      In consideration of US$10 now paid by the Assignee to the Assignor (receipt and sufficiency of which the Assignor hereby acknowledges) the Assignor as beneficial owner hereby assigns and conveys unto the Assignee **ALL THE** property right title and interest in the Trade Marks **TOGETHER WITH** that part of the goodwill of the business connected with the use of and symbolised by the Trade Marks, but excluding any other goodwill of the business connected with the use of and symbolised by any other trade marks used in the business of the Assignor or any other name or style under which the business of the Assignor is conducted and **TO HOLD** the same unto the Assignee its

**TRADEMARK**
**REEL: 003516 FRAME: 0291**

successors and assigns absolutely. For the avoidance of doubt, and without limitation, the goodwill connected with the use of and symbolised by the trade mark "The Beatles", or any variation thereof, is excluded from any goodwill being assigned hereunder.

**IN WITNESS WHEREOF** the Parties have executed this Assignment the day and year first above written.

### SCHEDULE OF TRADE MARKS HEREINBEFORE REFERRED TO

| Trade Mark | Application/ Registration No. | Class(es) |
|---|---|---|
| APPLE | 2034964 | 09 |
| Whole Apple Device | 2041653 | 09 |
| Half Apple Device | 2036537 | 09 |
| Half Apple Device | 3200354 | 09 |

Signed for and on behalf of
**APPLE CORPS LIMITED**
by

Signed for and on behalf of
**APPLE INC.**
by

Kevin Saul
Assistant Secretary

**EXHIBIT 25**



Newsroom                                        Search Newsroom      Archive      Apple TV+ Press ↗

Apple Newsroom needs your permission to **enable desktop notifications** when new articles are published          ✕

PRESS RELEASE
May 19, 2016

# Apple Union Square Highlights New Design Elements, Community Programs

SAN FRANCISCO — May 19, 2016 — Apple® today revealed its new store on San Francisco's Union Square, offering many new features and services rolling out to Apple retail stores worldwide. The new store will open its signature 42-foot tall sliding glass doors to customers on Saturday, May 21 at 10 a.m.

"Fifteen years ago today Apple opened its first two stores and we're thrilled to mark the occasion with the opening of Apple Union Square in San Francisco," said Angela Ahrendts, Apple's senior vice president of Retail and Online Stores. "We are not just evolving our store design, but its purpose and greater role in the community as we educate and entertain visitors and serve our network of local entrepreneurs."

Apple Union Square's glass doors open the store to Post Street and Union Square. The building's unique position connects San Francisco's most famous square to a rejuvenated plaza to the north, creating a beautiful gathering place for the community. The art-filled plaza offers seating, public Wi-Fi, a 50-foot tall "green wall" and regular acoustic performances. The store is powered by 100 percent renewable energy, including power produced by photovoltaic panels integrated into the building's roof.

"We have a deep commitment to the cities we work in, and are aware of the importance that architecture plays in the community," said Jonathan Ive, Apple's chief design officer. "It all starts with the storefront — taking transparency to a whole new level — where the building blends the inside

Appx08142

and the outside, breaking down barriers and making it more egalitarian and accessible."

Features in the new Apple Union Square design include:

- **"The Avenue,"** inspired by the window displays along a boulevard that dynamically change with the season. Avenue walls are interactive themed "windows" where Apple's products and services come to life, from music, to creativity, apps, photography and more. New "Creative Pros," Apple experts in creative arts, offer advice and expertise at each of the displays. Customers will also find "Only at Apple" products on the Avenue, a curated collection of third-party accessories.
- **"Genius Grove"** invites customers to get support working side-by-side with Geniuses under the comfortable canopy of local trees in the heart of the store.
- **"The Forum"** is a vibrant gathering place, centered around a 6K Video Wall. It is home to "Today at Apple," which brings to the community the world's most talented artists, photographers, musicians, gamers, developers and entrepreneurs to inspire and educate our customers to go further with the things they are passionate about. Today at Apple includes year-round programs for kids, new monthly events for teachers, sessions for current and aspiring developers, Creative Sessions in partnership with local experts in creative arts, Game Night with editors from Apple's App Store® and more. The Forum and Video Wall are a place of discovery, including events about the making of movies from iTunes®, or exclusive premieres of new music and music videos from Apple Music™.
- **"The Plaza"** will be found only at Apple's most significant stores, including Apple Union Square. It's open to the public 24 hours a day, features public Wi-Fi and seating, and takes Today at Apple outside, with a regular weekend series of well known local acoustic performances such as Travis Hayes and global talents like Escondido, who will then give exclusive interviews about their craft in the Forum. The Plaza at Apple Union Square features a fountain by well-known San Francisco sculptor Ruth Asawa, originally commissioned in 1969, and a new work, "Love" by local artist Laura Kimpton, commissioned by Hyatt Hotels.
- **"The Boardroom"** is an intimate space where the store's Business Team offers hands-on advice and training to entrepreneurs, developers and other small and medium business customers.

Apple's original San Francisco store opened on Stockton Street in 2004 with about 100 employees. Having welcomed more than 20 million visitors, and seen the launch of iPhone®, iPad®, MacBook Air®, Apple TV®, Apple Watch® and more, the team moving to Apple Union Square has grown to more than 350.

While the store offers regular learning experiences in the Forum and Plaza, Apple is also committed to furthering creative arts education throughout

San Francisco. Apple is working with the Ruth Asawa School of the Arts to build a visual arts lab with 45 workstations outfitted with the latest Apple products.

Apple revolutionized personal technology with the introduction of the Macintosh in 1984. Today, Apple leads the world in innovation with iPhone, iPad, Mac, Apple Watch and Apple TV. Apple's four software platforms — iOS, OS X, watchOS and tvOS — provide seamless experiences across all Apple devices and empower people with breakthrough services including the App Store, Apple Music, Apple Pay and iCloud. Apple's 100,000 employees are dedicated to making the best products on earth, and to leaving the world better than we found it.

**Press Contacts:**
Amy Bessette
Apple
abessette@apple.com
(408) 862-8012

Nick Leahy
Apple
nleahy@apple.com
(408) 862-5012

Apple, the Apple logo, App Store, iTunes, Apple Music, iPhone, iPad, MacBook Air, Apple TV and Apple Watch are trademarks of Apple. Other company and product names may be trademarks of their respective owners.

 Newsroom

The latest news for journalists.

Read more ›

 › Newsroom › Apple Union Square Highlights New Design Elements, Community Programs

Apple Union Square Highlights New Design Elements, Community Programs - Apple

**Shop and Learn**

Mac

iPad

iPhone

Watch

TV

Music

AirPods

HomePod

iPod touch

Accessories

Gift Cards

**Services**

Apple Music

Apple News+

Apple TV+

Apple Arcade

Apple Card

iCloud

**Account**

Manage Your Apple ID

Apple Store Account

iCloud.com

**Apple Store**

Find a Store

Genius Bar

Today at Apple

Apple Camp

Field Trip

Apple Store App

Refurbished and Clearance

Financing

Apple Trade In

Order Status

Shopping Help

**For Business**

Apple and Business

Shop for Business

**For Education**

Apple and Education

Shop for College

**For Healthcare**

Apple in Healthcare

Health on Apple Watch

Health Records on iPhone

**For Government**

Shop for Government

Shop for Veterans and Military

**Apple Values**

Accessibility

Education

Environment

Inclusion and Diversity

Privacy

Supplier Responsibility

**About Apple**

Newsroom

Apple Leadership

Job Opportunities

Investors

Events

Contact Apple

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.     Privacy Policy | Terms of Use | Sales and Refunds | Legal | Site Map     🇺🇸 United States

Appx08145

**EXHIBIT 26**



## Newsroom

Search Newsroom    Archive    Apple TV+ Press ↗

Apple Newsroom needs your permission to **enable desktop notifications** when new articles are published    ✕

**PRESS RELEASE**
June 19, 2013

# HBO GO & WatchESPN Come to Apple TV

## iTunes Viewers Now Purchasing Over 800,000 TV Episodes & Over 350,000 Movies Per Day

CUPERTINO, California—June 19, 2013—Apple® today announced that HBO GO and WatchESPN are now available directly on Apple TV® joining the great lineup of programming offered to customers. iTunes® users have downloaded more than one billion TV episodes and 380 million movies from iTunes to date, and they are purchasing over 800,000 TV episodes and over 350,000 movies per day.

"HBO GO and WatchESPN are some of the most popular iOS apps and are sure to be huge hits on Apple TV," said Eddy Cue, Apple's senior vice president of Internet Software and Services. "We continue to offer Apple TV users great new programming options, combined with access to all of the incredible content they can purchase from the iTunes Store."

Apple TV users can choose from an incredible selection of programming including over 60,000 movies and over 230,000 TV episodes, as well as the world's largest collection of music on the iTunes Store®. Apple TV also offers great content from Hulu Plus, Netflix's streaming catalog, live sports from MLB, NBA and NHL as well as Internet content from Vimeo, YouTube and Flickr.*

In addition to HBO GO and WatchESPN, three new content providers* are also available today on Apple TV including Sky News, Crunchyroll and Qello offering live news, sports and current TV programming.

HBO GO users get unlimited access to their favorite HBO shows, including

Appx08147

HBO original programming, hit movies, sports, documentaries, comedy specials and more. This includes full seasons of the best of HBO, plus bonus features and special behind-the-scenes extras. HBO GO on Apple TV requires a subscription to HBO through participating television providers.

WatchESPN on Apple TV delivers a one-stop video destination for sports fans with live access to ESPN, ESPN2, ESPNU, ESPN3 and ESPN Buzzer Beater/Goal Line to those who receive ESPN's networks as part of their video subscription from affiliated providers. Popular sports and fan-favorite shows include college football and basketball, Monday Night Football, MLB, NBA, major golf tournaments, all four Grand Slam tennis events, SportsCenter, PTI and more. Additionally, curated on-demand video featuring the most recent and relevant content—including highlights and news clips from ESPN.com as well as short-form segments from programs such as E:60, Outside The Lines, SC Featured, Sport Science and others—will be accessible through WatchESPN for the first time via Apple TV to all users.

Sky News on Apple TV delivers a live 24/7 news feed to users in the US, UK and Ireland, including breaking news and headlines from business, politics, entertainment and more. In addition to the live feed, users can catch up on specific stories at any time via the extensive on-demand news library.

Crunchyroll, the leading global video service for Japanese Anime and Asian media, will allow subscribers worldwide to watch the latest HD shows one hour after they air in Japan. Qello, a leading on-demand streaming service for HD concerts and music documentaries, offers free or paid subscriptions to music fans worldwide. New users can sign up for Crunchyroll and Qello instantly on Apple TV.

Apple TV makes it easy to enjoy iTunes video and music right on your HD TV. Coming this fall, iTunes Radio™ will offer you an incredibly personalized music experience directly on Apple TV based on your listening history and past purchases from iTunes. And with iCloud®, you can buy movies and TV shows on Apple TV and watch them on your iPhone®, iPad®, iPod touch®, Mac® or PC. iCloud also stores photos and pushes them wirelessly to all your devices including your Apple TV. iCloud is an incredibly easy way to get instant access to all of your content, no matter which device is being used.

iPhone, iPad and iPod touch users can use AirPlay® to stream music, photos and videos from their devices directly to their HD TV with Apple TV. iPhone 4S, iPhone 5, iPad, iPad mini, fifth generation iPod touch and Mac users can use AirPlay Mirroring to show the screen of their device right on their HD TV, allowing them to stream web pages, spreadsheets or even games.**

**Appx08148**

**Pricing & Availability**
Apple TV requires iTunes 10.5 or later. Apple TV requires an 802.11g/n Wi-Fi network or Ethernet network, a broadband Internet connection and a HD TV capable of 1080p or 720p and an HDMI cable that is sold separately. iTunes movie and TV show availability varies by country. Third generation Apple TV hardware is required to play 1080p video. HBO GO, Watch ESPN, SkyNews, Crunchyroll and Qello require Apple TV software version 5.3 available as a free software update for second and third generation Apple TV users.

*Content availability varies by country, may require account subscriptions and may not be available in all territories.

**AirPlay requires an iOS device running iOS 4.2 or later. AirPlay Mirroring is not supported on the original iPad. AirPlay Mirroring is supported on the following Mac models: iMac® (Mid 2011 or newer), Mac mini (Mid 2011 or newer), MacBook Air® (Mid 2011 or newer), and MacBook Pro® (Early 2011 or newer).

Apple designs Macs, the best personal computers in the world, along with OS X, iLife, iWork and professional software. Apple leads the digital music revolution with its iPods and iTunes online store. Apple has reinvented the mobile phone with its revolutionary iPhone and App Store, and is defining the future of mobile media and computing devices with iPad.

**Press Contacts:**
Jennifer Ramsay
Apple
ramsay@apple.com
(408) 862-2239

Christine Monaghan
Apple
cmonaghan@apple.com
(408) 974-8850

Apple, the Apple logo, Mac, Mac OS, Macintosh, Apple TV, iTunes, iTunes Store, iTunes Radio, iCloud, iPhone, iPad, iPod touch, AirPlay, iMac, MacBook Air and MacBook Pro are trademarks of Apple. Other company and product names may be trademarks of their respective owners.

 Newsroom

The latest news for journalists.

Appx08149

HBO GO & WatchESPN Come to Apple TV - Apple

2/7/20, 10:04 PM



Read more ›

 Newsroom  HBO GO & WatchESPN Come to Apple TV

**Shop and Learn**

Mac
iPad
iPhone
Watch
TV
Music
AirPods
HomePod
iPod touch
Accessories
Gift Cards

**Services**

Apple Music
Apple News+
Apple TV+
Apple Arcade
Apple Card
iCloud

**Account**

Manage Your Apple ID
Apple Store Account
iCloud.com

**Apple Store**

Find a Store
Genius Bar
Today at Apple
Apple Camp
Field Trip
Apple Store App
Refurbished and Clearance
Financing
Apple Trade In
Order Status
Shopping Help

**For Business**

Apple and Business
Shop for Business

**For Education**

Apple and Education
Shop for College

**For Healthcare**

Apple in Healthcare
Health on Apple Watch
Health Records on iPhone

**For Government**

Shop for Government
Shop for Veterans and Military

**Apple Values**

Accessibility
Education
Environment
Inclusion and Diversity
Privacy
Supplier Responsibility

**About Apple**

Newsroom
Apple Leadership
Job Opportunities
Investors
Events
Contact Apple

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE.

Copyright © 2020 Apple Inc. All rights reserved.    Privacy Policy | Terms of Use | Sales and Refunds | Legal | Site Map    🇺🇸 United States

Appx08150

**EXHIBIT 27**

PRESS RELEASE
March 25, 2019

# Apple unveils Apple TV+, the new home for the world's most creative storytellers

Apple's Original Video Subscription Service in the All-New Apple TV App will Give Users Access to Exclusive Original Shows, Movies and Documentaries



Apple TV+, coming this fall, is the new home for the world's most celebrated creative artists.

Cupertino, California — Apple today announced Apple TV+, the new home for the world's most creative storytellers featuring exclusive original shows, movies and documentaries, coming this fall. Apple TV+, Apple's original video subscription service, will feature a brand new slate of programming from the world's most celebrated creative artists, including Oprah Winfrey, Steven Spielberg, Jennifer Aniston, Reese Witherspoon, Octavia Spencer, J.J. Abrams, Jason Momoa, M. Night Shyamalan, Jon M. Chu and more. On the Apple TV app, subscribers will enjoy inspiring and authentic stories with emotional depth and compelling characters from all walks of life, ad-free and on demand.

"We're honored that the absolute best lineup of storytellers in the world — both in front of and behind the camera — are coming to Apple TV+," said Eddy Cue, Apple's senior vice president of Internet Software and Services. "We're thrilled to give viewers a sneak peek of Apple TV+ and cannot wait for them to tune in starting this fall. Apple TV+ will be home to some of the highest quality original storytelling that TV and movie lovers have seen yet."



Document title: Apple unveils Apple TV+, the new home for the world's most creative storytellers - Apple
Capture URL: https://www.apple.com/newsroom/2019/03/apple-unveils-apple-tv-plus-the-new-home-for-the-worlds-most-creative-storytellers/
Capture timestamp (UTC): Fri, 14 Feb 2020 17:49:54 GMT

**Appx08152**

Newsroom                                    Search Newsroom    Archive    Apple TV+ Prime +



The all-new Apple TV app brings together the different ways to discover and watch shows, movies, sports, news and more in one app.

Additionally, Apple debuted the all-new Apple TV app and Apple TV channels coming in May 2019. The all-new Apple TV app brings together the different ways to discover and watch shows, movies, sports, news and more in one app across iPhone, iPad, Apple TV, Mac, smart TVs and streaming devices. Users can subscribe to and watch new Apple TV channels — paying for only services they want, like HBO, SHOWTIME and Starz — all on demand, available on and offline, with incredible picture quality and sound; enjoy sports, news and network TV from cable and satellite providers as well as purchase or rent iTunes movies and TV shows all within the new, personalized Apple TV app.

Beginning in May, customers can subscribe to Apple TV channels à la carte and watch them in the Apple TV app, with no additional apps, accounts or passwords required. Apple TV channels include popular services such as HBO, Starz, SHOWTIME, CBS All Access, Smithsonian Channel, EPIX, Tastemade, Noggin and new services like MTV Hits, with more to be added over time around the world.



Beginning in May, customers can subscribe to Apple TV channels à la carte and watch them in the Apple TV app.

The new Apple TV app personalizes what viewers love to watch across their existing apps and services while developing a secure and comprehensive understanding of users' viewing interests. The app will offer suggestions for shows and movies from over 150 streaming apps, including Amazon Prime and Hulu, as well as pay-TV services such as Canal+, Charter Spectrum, DIRECTV NOW and PlayStation Vue. Optimum and Suddenlink from Altice will be added later this year.[1]

Additionally, the Apple TV app will become the new home to the hundreds of thousands of movies and TV shows currently available for purchase or rent in the iTunes Store.

### Availability

- Pricing and availability for the Apple TV+ video subscription service will be announced later this fall.

- The all-new Apple TV app is coming to iPhone, iPad and Apple TV customers in over 100 countries with a free software update this May, and to Mac this fall.

- Through Family Sharing, users can share Apple TV+ and subscriptions to Apple TV channels.

- The Apple TV app will be available on Samsung smart TVs beginning this spring and on Amazon Fire TV, LG, Roku, Sony and VIZIO platforms in the future.

- Later this year, customers with eligible VIZIO, Samsung, LG and Sony smart TVs will be able to effortlessly play videos and other content from their iPhone or iPad directly to their smart TVs with AirPlay 2 support.

### Media

Images of Apple TV App

Document title: Apple unveils Apple TV+, the new home for the world's most creative storytellers - Apple
Capture URL: https://www.apple.com/newsroom/2019/03/apple-unveils-apple-tv-plus-the-new-home-for-the-worlds-most-creative-storytellers/
Capture timestamp (UTC): Fri, 14 Feb 2020 17:49:54 GMT

Appx08153



# [CONFIDENTIAL MATERIAL OMITTED]

No. 2021-2301

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

CHARLES BERTINI,
Appellant,

v.

APPLE INC.,
Appellee

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in Case No. 91229891
before Kuczma, Shaw and Hudis, Administrative Law Judges

**CONFIDENTIAL EXHIBIT 23**
**Apple's confidential portion of Trial Testimony**
**of Apple witness Thomas La Perle**
**(84-85 TTABVUE)**
**filed February 21, 2020**

**OFFERED BY CHARLES BERTINI**

**Filed under seal; as no redacted version was submitted, it has been
intentionally omitted from pages Appx08155-08216**

**Appx08155-08216**



Merriam-Webster

SINCE 1828

- GAMES
- BROWSE THESAURUS
- WORD OF THE DAY
- WORDS AT PLAY

- LOG IN
- REGISTER
- ⌄
- settings
- SAVED WORDS

music



✕

🔍

dictionary thesaurus    view recents

Login or Register

Hello,

- GAMES
- BROWSE THESAURUS
- WORD OF THE DAY
- WORDS AT PLAY
- SETTINGS
- 

- SAVED WORDS    view recents

| Practice French | Practice German | Practice Italian ▷ⅹ |
| Practice Spanish | Practice Portuguese | +Babbel |

# music

noun, often attributive

📑 Save Word

To save this word, you'll need to log in.

Log In

mu·sic | \ ˈmyü-zik 🔊 \

## Definition of *music*

1a **:** the science or art of ordering tones or sounds in succession, in combination, and in temporal relationships to produce a composition having unity and continuity
b **:** vocal, instrumental, or mechanical sounds having rhythm, melody, or harmony choral music piano music recorded music
2a **:** an agreeable sound **:** euphony her voice was music to my ears the music of a nightingale
b **:** musical quality the music of verse the music of lovingly orchestrated words — *Saturday Review*
3 **:** a musical accompaniment a play set to music
4 **:** the score (see score entry 1 sense 6a) of a musical composition set down on paper leafing through the music
5 **:** a distinctive type or category of music there is a music for everybody— Eric Salzman rock music jazz music classical music



LEARN MORE FROM M-W

'Pandemic' vs
'Epidemic'

## Examples of *music* in a Sentence

This is one of my favorite pieces of *music*. performing *music* in front of an audience

See More ⌄

Recent Examples on the Web Quintanilla was known as the Queen of Tejano *music*. — *TheWeek*, "What Selena's life and legacy tell us about Latinx identity today," 28 Mar. 2020 Now, about the ears ... There are so many beautiful stories of communities coming together to make *music* recently, even while they are kept apart. — Aj Willingham, *CNN*, "The Good Stuff: Aquarium puppies, a Zoom wedding and a flower photo swap," 27 Mar. 2020

Appx08225

These example sentences are selected automatically from various online news sources to reflect current usage of the word 'music.' Views expressed in the examples do not represent the opinion of Merriam-Webster or its editors. Send us feedback.

See More ⊕ ⊖

## First Known Use of *music*

13th century, in the meaning defined at sense 1a

## History and Etymology for *music*

Middle English *musik*, from Anglo-French *musike*, from Latin *musica*, from Greek *mousikē* any art presided over by the Muses, especially music, from feminine of *mousikos* of the Muses, from *Mousa* Muse

Keep scrolling for more

## Learn More about *music*

Share *music*

 Post the Definition of music to Facebook     Share the Definition of music on Twitter

Time Traveler for *music*



## The first known use of *music* was in the 13th century

See more words from the same century

From the Editors at Merriam-Webster



8 Words with Secret Meanings Only the...

**8 Words with Secret Meanings Only the Musician-Types Know**

We hope we don't get in trouble for telling



8 Ways to Face the Music

**8 Ways to Face the Music**

'Shimmy', 'waltz', & 6 more words from dance

'Whole Milk', 'British English', and 16...

**'Whole Milk', 'British English', and 16 More Retronyms**

New(er) words for old things

## Dictionary Entries near *music*



LEARN MORE FROM M-W ›

'Pandemic' vs 'Epidemic'

Appx08226

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1060311** |
|---|---|
| Filing date: | **06/05/2020** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Plaintiff<br>Charles Bertini |
| Correspondence<br>Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>jamesbertini@yahoo.com, iklych@yahoo.com<br>303 572-3122 |
| Submission | Brief on Merits for Plaintiff |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /James Bertini/ |
| Date | 06/05/2020 |
| Attachments | Plaintiffs Trial Brief with Appendix A.pdf(1408086 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| CHARLES BERTINI, | ) | |
| | ) | Opposition No. 91229891 |
| Opposer | ) | Serial No. 86659444 |
| | ) | Mark: APPLE MUSIC |
| v. | ) | Filing Date: June 11, 2015 |
| | ) | Publication Date: May 10, 2016 |
| APPLE INC., | ) | |
| | ) | |
| Applicant. | ) | |
| | ) | |

## <u>OPPOSER'S TRIAL BRIEF</u>

JAMES BERTINI
Attorney for Opposer Charles Bertini
423 Kalamath Street
Denver, CO 80204
303 572-3122
jamesbertini@yahoo.com

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………3

I.  PRELIMINARY STATEMENT……………………………………......6

II.  FACTUAL RECORD……………………………………………...8

    A.  Opposer Charles Bertini's Evidence………………………………..8

    B.  Applicant Apple Inc.'s Evidence………………………………………8

III.  LEGAL ISSUES PRESENTED …………………………………………9

IV.  STATEMENT OF THE FACTS……………………………………………9

V.  ARGUMENT…………………………………………………………27

    A.  Opposer Charles Bertini has Established Standing……………………………27

    B.  Applicant's Alleged Mark is Likely to Cause Confusion with the APPLE JAZZ mark…………………………………………………………………27

    C.  The Pleaded mark APPLE JAZZ is inherently distinctive or has acquired distinctiveness…………………………………………………………....29

    D.  The Pleaded mark APPLE JAZZ doesn't comprise a geographically descriptive term……………………………………………………………...…34

    E.  Opposer Has Exclusive Rights in the APPLE JAZZ Mark……………………35

    F.  Opposer has established his prior proprietary rights in mark APPLE JAZZ….37

    G.  The Facts Show That Opposer's Mark APPLE JAZZ Has Priority Rights Over Application No. 86659444 and Reg. Nos. 2,034,964, 3,317,089, 4,088,195………39

        1.  APPLE JAZZ has priority over APPLE MUSIC Application No. 86659444 …………………………………………………………….41

        2.  APPLE JAZZ has priority rights over registered marks used as affirmative defenses to this Opposition………………………………………………..41

            a.  APPLE JAZZ has priority rights over U.S. Registration No. 2034964 "APPLE"……………………………………………………………41

2

b. APPLE JAZZ has priority rights over U.S. Registration No. 3317089: "APPLE"………………………………………………………………..43

c. APPLE JAZZ has priority rights over U.S. Registration No. 4088195: "APPLE"………………………………………………………………..44

H. Tacking of the Use to Mark APPLE Should Not be Permitted…………46

I. Trademark Rights in the U.S. Arise From Actual Use of the Mark……49

VI. SUMMARY……………………………………………………………………..49

VII. CONCLUSION…………………………………………………………………49

APPENDIX A – Objections to Applicant's evidence

## TABLE OF AUTHORITIES

**Cases**

*Bausch & Lomb Inc. v. Leupold & Stevens Inc.*,
    6 USPQ2d 1475 (TTAB 1988)………………………………………………46

*Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*,
    19 USPQ2d 1072 (TTAB 1991)…………………………………………..…47

*Christian Faith Fellowship Church v. Adidas AG*,
    841 F.3d 986, 120 USPQ2d 1640 (Fed. Cir. 2016)…………………………39

*Corporate Document Services Inc. v. I.C.E.D. Management Inc.*,
    48 USPQ2d 1477 (TTAB 1998)……………………………………………..37

*Dena Corp. v. Belvedere Int'l, Inc.*,
    950 F.2d 1555, 21 USPQ2d 1047 (Fed. Cir. 1991)……………………………34

*Empresa Cubana Del Tabaco v. Gen. Cigar Co.*,
    753 F.3d 1270, 111 USPQ2d 1058 (Fed. Cir. 2014)…………………………..27

*Finn v. Cooper's Inc.*,
    292 F.2d 555, 130 U.S.P.Q. 269 (C.C.P.A. 1961)……………………………..31

*Heartsprings, Inc. v. Heartsprings, Inc.*,

3

143 F.3d 550 (10th Cir. 1998)…………………………………………..32

*Hoover Co. v. Royal Appliance Manufacturing Co.*,
238 F.3d 1357, 57 USPQ2d 1720 (Fed. Cir. 2001)…………………………..37

*Hydro-dynamics, Inc. v. George Putnam & Company, Inc.*,
811 F.2d 1470 (Fed. Cir. 1987)……………………………………………40

*In re Binion*,
93 USPQ2d 1531 (TTAB 2009)……………………………………………48

*In re Colonial Stores Inc.*,
394 F.2d 549, 157 USPQ 382 (C.C.P.A. 1968)………………………………32

*In re Dial-A-Mattress Operating Corp.*,
240 F.3d 1341, 57 USPQ2d 1807 (Fed. Cir. 2001)……………………………48

*In re E.I. DuPont de Nemours & Co.*,
476 F.2d 1357, 177 U.S.P.Q. 563 (C.C.P.A. 1973)………………………….28

*In re EBS Data Processing*,
212 USPQ 964 (TTAB 1981)…………………………………………..…32

*In re Jump Designs, LLC*,
80 USPQ2d 1370 (TTAB 2006)……………………………………………29

*In re Linkvest S.A.*,
24 USPQ2d 1716 (TTAB 1992)……………………………………………29

*In re Shutts*,
217 USPQ 363 (TTAB 1983)………………………………………………32

*In re Viterra Inc.*,
671 F.3d 1358, 101 USPQ2d 1905 (Fed. Cir. 2012)…………………………29

*Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*,
372 F.3d 1330, 71 USPQ2d 1173, (Fed. Cir. 2004)…………………………..33

*On-Line Careline, Inc. v. America Online, Inc.*,
229 F.3d 1080, 56 U.S.P.Q.2d 1471 (Fed. Cir. 2000)…………………………28

*Panda Travel Inc. v. Resort Option Enters. Inc.*,
94 USPQ2d 1789 (TTAB 2009)……………………………………………39

*Patsy's Italian Rest. V. Banas*,
658 F.3d 254 (2nd Cir. 2011)………………………………………………39

4

*Paula Payne Prods. Co. v. Johnson Publ'g Co.*,
  473 F.2d 901, 177 U.S.P.Q. 76 (C.C.P.A. 1973)…………….....................28

*Ritchie v. Simpson*,
  171 F.3d. 1092, 50 USPQ2d 1023 (Fed. Cir. 1999)………………………..27

*Stone Lion Capital Partners, LP v. Lion Capital LLP*,
  746 F.3d 1317, 110 USPQ2d 1157 (Fed. Cir. 2014)…………………………29

*Taco Cabana Int'l, Inc. v. Two Peso, Inc.*,
  505 U.S. 763 (1992)………………………………………………………..32

*TBC Corp. v. Holsa Inc.*,
  126 F.3d 1470, 44 U.S.P.Q.2d 1315 (Fed. Cir. 1997)………………………..31

*UMG Recordings, Inc. v.O'Rourke*,
  92 USPQ2d 1042 (TTAB 2009)……………………………………………...42

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*,
  17 USPQ2d 1866, 926 F.2d 1156 (Fed. Cir. 1991…………………………46

*Weatherford/Lamb Inc. v. C&J Energy Serv. Inc.*,
  96 USPQ2d 1834 (TTAB 2010)……………………………………………27

*West Florida Seafood, Inc., v. Jet Restaurants, Inc.*,
  31 F.2d 1122, 31 USPQ2d 1660 (Fed. Cir. 1994)……………………………37

**Statutes**

§§1(b) and 44(d)………………………………………………………..41, 44

§§ 2(d) and 45, 15 U.S.C. § 1052(d)……………………………..……28, 37, 39

15 U.S.C. § 1052(e)(1)………………………………………………………….9

15 U.S.C. § 1057(c)(1)…………………………………………………………40

15 U.S.C. §1127……………………………………………………………37, 43

18 U.S.C. § 1001…………………………………………………………………29

Federal Rules of Evidence 401, 402…………………………………………………37

**Rules**

TMEP §§1209.01(a)……………………………………………………………33

TMEP §§1210.02–1210.02(b)(iv)…………………………………………………35

TMEP §§1210.04–1210.04(d)) …………………………………………………...35

37 C.F.R. § 2.122(b)(2) ………………………………………………37, 41, 44

Trademark Rule 2.122(b)(2) ……………………………………………..41, 44

**Treatises**

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 20:15 (4th ed. 2008). …………………………………………………………………..39

## I.        PRELIMINARY STATEMENT

Opposer began using his mark APPLE JAZZ in commerce in international Class 41 at least as early as June 5, 1985 and he has maintained continuous use in commerce of his mark to date. Opposer has never received a cease and desist letter from Applicant or anyone on its behalf or anyone in general regarding his use of APPLE JAZZ mark. On June 5, 2016 Opposer filed an application at the USPTO to register the mark APPLE JAZZ in Class 41, Serial No. 87060640. On September 2, 2016 Opposer filed this Opposition because he believed that registration of mark APPLE MUSIC cause likelihood of confusion and Opposer will be damaged by this registration. On September 17, 2016 Opposer's application for registration of APPLE JAZZ was refused due to a

6

likelihood of confusion with APPLE, Inc. marks U.S. Registration Nos. 2034964, 4088195 and 3317089, and due to pending U.S. Applications including Serial No. 86659444 for APPLE MUSIC. On March 19, 2018 Opposer filed Petition to Cancel Reg. No. 4088195 alleging abandonment of the mark and this case is ongoing.

On March 1, 2019  Opposer's Motion for Summary Judgment was "granted, in part, with respect to the issue of likelihood of confusion" 45 TTABVUE 16. The remaining issue is therefore priority of use.  Applicant's Motion for Reconsideration was denied on September 30, 2019, but the Board decided "Applicant's motion for leave to amend its answer is granted." "Applicant's amended answer, filed concurrently with its alternative request for leave to amend, is now its operative pleading". 58 TTABVUE 7.

According to the Amended Answer the First Affirmative Defense is: Applicant's Registrations 2034964, 4088195 and 3317089.  The Second Affirmative Defense is: "Opposer's claimed mark is descriptive because it is comprised of a descriptive term and a geographically descriptive term, and the claimed mark lacked distinctiveness as of Apple's priority date."

Opposer demonstrated actual and continuous use of the mark APPLE JAZZ in commerce since June 5, 1985 by offering multiple relevant documents to support his statements in the Declaration regarding use of the mark APPLE JAZZ on the services listed in the Application. Since APPLE JAZZ was in use in commerce 30 years before APPLE MUSIC, in order for Applicant to be successful in this case, it must convince the Board that APPLE MUSIC can be tacked to the three marks it pleaded as affirmative defenses and that these marks have priority over Opposer's mark.

## II.  FACTUAL RECORD

7

## A.        Opposer's Evidence

The parties stipulated to discovery documents and depositions at 53 TTABVUE. Opposer introduced testimony and exhibits during his trial period ending on December 23, 2019 consisting of the Trial and Rebuttal Declarations of Charles Bertini with Exs. 1-177 and 186-188. 59 TTABVUE, 60 TTABVUE, 61 TTABVUE, 86 TTABVUE. A description of each Exhibit made of record through such testimonial Declarations.

Opposer also submitted the following Notices of Reliance ("NOR") during his testimony period: (a) Opposer's NOR on Discovery Responses, with Exhibits 137, 154, 179, 180; 62 TTABVUE and 63 TTABVUE. A description of each Exhibit made of record is in the NOR; (b) Opposer's NOR on Internet Documents, with Exhibits 66, 67, 76, 78, 79, 81, 82, 125, 131, 135, 144, 145, 152, 153; 64 TTABVUE. A description of each Exhibit made of record is in the NOR; (c) Opposer's NOR on Statements in Pleadings, with Exhibit 133. 65 TTABVUE.  A description of each Exhibit made of record is in the NOR; (d) Opposer's NOR on Official Records with Exhibits 127, 129, 130, 134, 136, 138, 139, 140, 178, 181-185.  66 TTABVUE. A description of each Exhibit made of record is in the NOR; (e) Opposer's Rebuttal NOR Publicly Available Webpages with Exhibits 189, 191-196, 200-210. 87 TTABVUE. A description of each Exhibit made of record is in the NOR; (f) Opposer's Rebuttal NOR on Official Records with Exhibits 197-199, 211-224. 88 TTABVUE. A description of each Exhibit made of record is in the NOR; (g) Opposers Rebuttal NOR of Reliance on Statements in Pleadings and Briefs with Exhibits A and B mistakenly appeared in the docket 86 TTABVUE 142 after Declaration instead of being listed in a separate docket.

## B.  Applicant's Evidence

8

Without conceding that Applicant's proffered evidence is admissible or relevant, Applicant's evidence comprises nearly 6,000 pages of evidence contained in 67-88 TTABVUE.  Objections to Applicant's preferred evidence is addressed in Appendix A.

## III.  LEGAL ISSUES PRESENTED

\*      Whether Applicant's applied-for mark APPLE MUSIC so resembles Opposer's APPLE JAZZ Mark, used by Opposer for services very similar to Applicant's, so as to be likely to cause confusion, mistake, or deception in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

\*      Whether Opposer's use of his mark APPLE JAZZ has priority of use over Applicant's APPLE MUSIC Mark.

\*      Whether the designation APPLE JAZZ, when used on or in connection with services specified in his Application, is merely descriptive within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1) or geographically descriptive, and therefore not distinctive.

## IV.  STATEMENT OF FACTS

1.    Charles Bertini ("Opposer") is the owner of the mark APPLE JAZZ and its variant APPLEJAZZ. Trial Declaration of Charles Bertini ("Charles Decl.") ¶1. 59 TTABVUE

2.  He was inspired by Cortland apples when he decided to use the unique combination APPLE JAZZ for his entertainment services and as the name of a jazz band.  APPLE JAZZ was selected as the service mark since the jazz genre of music was being initially promoted in the apple producing region of Central New York State and in Cortland, New York, home of the Cortland apple. Charles Decl. ¶¶3-5. 59 TTABVUE 2.

9

2.    Opposer began using his mark APPLE JAZZ in commerce in international Class 41

at least as early as June 5, 1985 and he has maintained continuous use in commerce of his

mark to date. The first APPLE JAZZ concert of the APPLE JAZZ band was held in the

City of Cortland, New York. Charles Decl. ¶¶6,7, (59 TTABVUE 3); Rebuttal Trial

Declaration of Opposer Charles Bertini, (Opposer's Rebuttal") ¶¶2,3. 86 TTABVUE 2,3.

3.    The jazz band APPLE JAZZ and its concerts, festivals and musicians are featured in

the newspapers. Charles Decl. ¶¶7, 8, 9. 59 TTABVUE 3-6. Opposer provided some

copies of newspaper advertising saved in his archive and attached as Exhibits 4, 5, 9, 11,

12, 15, 18, 20, 21, 25, 28, 32, 35, 85, 89, 90, 95, 113 pp5-6, 114 pp4-8, 162. Charles

Decl. ¶26.  59 TTABVUE 19; 59 TTABVUE 32, 33, 37, 39, 40, 43, 46, 48, 49, 53, 56,

60, 63, 162, 166, 167, 172, 226, 227, 233, 237; 60 TTABVUE 39.

4.    AppleJazz concerts were also promoted by third parties. Attached Exhibits 113 pp1-

2 and 114 pp2-3 show advertising of AppleJazz concerts by Comfort Inn and Quality Inn.

Charles Decl. ¶27. 59 TTABVUE 20; 59 TTABVUE 222, 223, 231, 232.

5.    Opposer uses mark APPLE JAZZ as a part of an email address for easy identification

of his business emails by his customers and vendors. Charles Decl. ¶10.

59 TTABVUE 6.

6.    Opposer registered the domain name applejazz.com on January 24, 1998 and he

began offering his services under the mark APPLE JAZZ on the website applejazz.com

as early as 1998 and he continues to offer his services on this website. Opposer is the sole

owner of the domain name www.applejazz.com and of the website associated with this

domain name. Charles Decl. ¶¶11, 12, 13. 59 TTABVUE 6-16; 59 TTABVUE 85-157;

Opposer's Rebuttal ¶3. 86 TTABVUE 2, 3, 6-129.

10

7.    Opposer maintains a YouTube channel to promote APPLE JAZZ and to provide entertainment services since 2008. Charles Decl. ¶14. 59 TTABVUE 16, 83-84; Opposer's Rebuttal ¶4. 86 TTABVUE 3, 130-136.

8.    Opposer maintains a Facebook page to promote APPLE JAZZ and to provide entertainment services. Charles Decl. ¶¶15, 16. 59 TTABVUE 255-259.

9.    The AppleJazz band held its concerts on regular basis and photos of the band were taken on the day of the concerts. Opposer provided photos of the AppleJazz band taken in different years starting in 1984. Charles Decl. ¶17. 59 TTABVUE 17, 260, 261; 60 TTABVUE 18, 19, 20.

10.   Tickets were sold for concerts of the AppleJazz band on the www.applejazz.com website.  For several years, the Cortland Repertory Theatre assisted in selling tickets for the AppleJazz concerts. Charles Decl. ¶18. 59 TTABVUE 17, 18; Opposer provided copies of tickets Charles Decl. ¶18: Exhibits 29, 41, 44, 112 pp 6,7, 113 p8, 116 p2, 117 p3. 59 TTABVUE 57, 69, 72, 220, 221, 229, 242, 245.

11.   Some customers in recent years paid for concert tickets using the PayPal (system). PayPal is an American company operating a worldwide online payments system that supports online money transfers and serves as an electronic alternative to traditional paper methods such as checks and money orders.  Representative samples of PayPal records are attached as Exhibits 45, 48, 113 p4, 114 pp6-7 which are printouts from the website paypal.com showing that payments were made to AppleJazz for concert tickets. Opposer's PayPal records from recent years show that customers who purchased tickets for AppleJazz concerts are located in Florida, New York, Virginia, New Jersey, Iowa,

11

Massachusetts, Maryland, New Hampshire, Pennsylvania, Tennessee and Canada.
Charles Decl. ¶ 19. 59 TTABVUE 18. 59 TTABVUE 73, 76, 225, 235, 236.

12.  Opposer earned revenues and incurred expenses for advertising and promotions for services provided under the APPLE JAZZ mark during every year from 1985 through November 2019. Charles Decl. ¶20. 59 TTABVUE 19.

13.  Opposer is not an accountant, and he has no training in accounting or bookkeeping. Charles Decl. ¶21.  59 TTABVUE 19. Opposer maintains financial records sufficient to satisfy the requirements of the federal government for taxation purposes. His home state of Florida has no income tax. Opposer alone pays all taxes associated with income generated from use in commerce of my mark APPLE JAZZ. Charles Decl. ¶22. 59 TTABVUE 19.

14.  For several years after 1985, Opposer did not maintain any financial records at all, relying on his checkbook and cash for tax purposes.  A few documents during this initial period of business were saved. Charles Decl. ¶23. 59 TTABVUE 19.

15.  Attached Exhibit 2 are financial records for an AppleJazz concert in June 1985 showing revenue from tickets sales and expenses including advertising for this concert. Charles Decl. ¶24.  59 TTABVUE 19, 30.

16.  Opposer provided financial documents showing expenses including advertising expenses during the period 1985-2014 attached as Exhibits 2, 3, 7, 8, 19, 33, 34, 36, 37, 38, 39, 42, 46, 47, 50, 51, 91, 94, 104, 105p2, 119 p3, 163. Charles Decl. ¶25. 59 TTABVUE 19. 59 TTABVUE 30, 31, 35, 36, 47, 61, 62, 64, 65, 66, 67, 70, 74, 75, 78, 79, 168, 171, 202, 204, 252; 60 TTABVUE 40,41.

12

17. For the last two months of 1995 and for years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 and 2018 Opposer has electronic records that can be used to generate documents showing sales revenues and advertising and promotional expenditures for services provided under the APPLE JAZZ mark. Charles Decl. ¶28. 59 TTABVUE 20.

18. Opposer has generated documents Exhibits 176 and 177 attached as "CONFIDENTIAL: Attorney's eyes only", which include annual revenues and expenditures for advertising and promotion for services provided under the APPLE JAZZ mark (also attached as redacted copies). In each of these years there were revenues and expenditures for advertising and promotion for services. Charles Decl. ¶¶29, 30. 59 TTABVUE 20, 21. 61 TTABVUE.

19. Opposer alone paid all bills associated with use in commerce of his mark APPLE JAZZ. Opposer alone received all revenues associated with use in commerce of his mark APPLE JAZZ Charles Decl. ¶29. 59 TTABVUE 20.

20. Opposer provided representative samples of financial records for the Apple Jazz Festival for the period January 1, 1996 – July 30, 2014 attached as Exhibit 160 "CONFIDENTIAL: Attorney's eyes only". Charles Decl. ¶33. 59 TTABVUE 21; 61 TTABVUE. 60 TTABVUE 21-37.

21. Opposer has customers of AppleJazz in different states. Exhibit 167 is a representative sample of copies of redacted subscriptions to his mailing list showing that customers are from California, Pennsylvania and New York. Opposer has customers from many other states as well. Tickets sold for APPLEJAZZ concerts purchased via

13

PayPal customers from Florida, New York, Virginia, New Jersey, Iowa, Massachusetts, Maryland, New Hampshire, Pennsylvania, Tennessee and Canada. Charles Decl. ¶34. 59 TTABVUE 21, 22.

22.  In the regular course of his business Opposer creates contracts.  Opposer alone signs all contracts related to the use in commerce of his mark APPLE JAZZ.  Representative samples of contracts in connection with APPLE JAZZ entertainment services are attached as Exhibits 30, 49, 86, 98 pp8-18, 111, 112 p4, 113 p3, 114 p1, 115 pp1-2, 116 p1, 117 pp1-2, 118 pp1-2, 119 pp1-2, 120, 148, 166 pp1,3, 172, 173, 174 Charles Decl. ¶35.  59 TTABVUE 22. 59 TTABVUE 58,77, 163, 181-191, 214, 218, 224, 230, 238, 239, 241, 243, 246, 247, 248, 250-254; 60 TTABVUE 9-17, 45, 47, 56-63.

23.  In the regular course of his business Opposer had communications regarding business needs. Representative samples of his communications in connection with APPLE JAZZ entertainment services are attached as Exhibits 6, 10, 16, 17, 31, 98, 101, 107 p3, 110, 111, 112 p3, 113 p7, 114 p5, 166 p2, 171. Opposer alone signs all correspondence related to the use in commerce of his mark APPLE JAZZ. Charles Decl. ¶36. 59 TTABVUE 22. 59 TTABVUE 34, 38, 44, 45, 59, 174-180, 195, 209, 212, 213, 217, 228, 234. 60 TTABVUE 46, 55.

24.  Opposer obtained a Certificate of Registration of Service Mark issued by the Department of State (State of New York) for the AppleJazz logo for services in connection with the jazz festival, an event featuring live music by various bands (attached as Exhibit 59). The date of registration is October 31, 1991. Opposer hired Syracuse, NY attorney Kerry Hanlon to research and register his mark for protection.  At that time

14

Opposer didn't know the difference between registration of a mark in the state and federal registration in the USPTO. Charles Decl. ¶37. 59 TTABVUE 23, 81, 82.

25.   Opposer has registered APPLE JAZZ Records as a fictitious name with the Florida Department of State Division of Corporations and he renews it on regular basis. Charles Decl. ¶¶39, 40. 59 TTABVUE 23. AppleJazz Records manages event production. Opposer's Rebuttal ¶5. 86 TTABVUE 3, 4.  AppleJazz Records is a vendor for Walt Disney World Company in the Attractions Entertainment department. Charles Decl. ¶32. 59 TTABVUE 21. 60 TTABVUE 42.

26.   Opposer has registered APPLE JAZZ as a fictitious name on June 2, 2016. Charles Decl. ¶41. 59 TTABVUE 23.

27.   The Harry Fox Agency, Inc., the licensing subsidiary of The National Music Publishers' Association, Inc. represents Opposer as APPLEJAZZ MUSIC. AppleJazz has received continuous revenue from the Harry Fox Agency since 1998. Charles Decl. ¶¶42, 43, 44, 45. 59 TTABVUE 23, 24. 59 TTABVUE 194, 196, 211. 60 TTABVUE 6-17, 50.

28.   Since May 3, 2006 APPLEJAZZ Records has been assigned a U.S. Registrant Code from Recording Industry Association of America (RIAA). Charles Decl. ¶46. 59 TTABVUE 25

29.   Since at least as early as October 3, 2011 Opposer has communicated with the iTunes Store Legal Team regarding a license agreement and such communication resulted in the Cloud Service License Agreement between Applicant and AppleJazz Music signed in January 2012. Charles Decl. ¶¶47, 48. 59 TTABVUE 25, 174-180.

30.   None of the AppleJazz band members or any person other than Opposer has ever claimed ownership of the mark APPLE JAZZ. Charles Decl. ¶49. 59 TTABVUE 25.

Opposer is the sole owner of the mark APPLE JAZZ and he has been the sole owner since he began to use it in commerce as early as June 5, 1985. Charles Decl. ¶50. 59 TTABVUE 25.  Opposer has always operated his APPLE JAZZ business entirely by himself as a sole-proprietorship. Charles Decl. ¶51. 59 TTABVUE 51.

31.   During more than three decades, Opposer has developed a reservoir of goodwill in the APPLE JAZZ service mark among a number of dedicated customers, fans, musicians and contractors of APPLE JAZZ. Charles Decl. ¶52. 59 TTABVUE 26.  Opposer's email communication shows that customers appreciate AppleJazz concerts and they attend AppleJazz concerts on a regular basis.  Opposer has received many messages praising the performance of the AppleJazz Band. Charles Decl. ¶34. 59 TTABVUE 21-22.  Due to the long history of services under APPLE JAZZ and APPLEJAZZ MUSIC marks consumers associate such services with the mark APPLE JAZZ.  Charles Decl. ¶56. 59 TTABVUE 26.

32.   During all years of conducting business under mark APPLE JAZZ, Opposer used his mark for sales and advertising of entertainment services and goods related to entertainment services or promotion of APPLE JAZZ band and its events. Opposer's mark never was used for sales of food, agricultural products or agricultural events. Opposer's Rebuttal, ¶2. 86 TTABVUE 2.

33.   Opposer has never received a cease and desist letter from Applicant or anyone on its behalf or anyone in general regarding his use of Apple Jazz or AppleJazz Music. Charles Decl. ¶53. 59 TTABVUE 26.

16

34. On June 5, 2016 Opposer filed an application at the USPTO to register the mark APPLE JAZZ in Class 41, Serial No. 87060640 for the entertainment services listed in Charles Decl. ¶54. 59 TTABVUE 26. 66 TTABVUE 15; 66 TTABVUE 73.

35. On September 17, 2016 the application was refused due to a likelihood of confusion with APPLE, Inc. marks U.S. Registration Nos. 2034964, 4088195 and 3317089, and due to pending U.S. Application Serial Nos. 86658508, 86659444 and 86830886. Charles Decl. ¶¶54, 55. 59 TTABVUE 26.  Ex 130, 66 TTABVUE 11. On March 28, 2017 A Suspension Notice was issued. 66 TTABVUE 44.

36. Application Serial No. 86659444 was filed by Applicant for APPLE MUSIC mark under Section 1(b) and Section 44(d) (foreign filing date May 18, 2015) for services listed in Ex 134. 66 TTABVUE 20-24.  On June 8, 2015, the Applicant unveiled Apple Music.  Declaration of Thomas R. La Perle ("La Perle Decl") p6. 83 TTABVUE 8. In 2015, Apple held the first Apple Music Festival, a multi-day event in the U.K. La Perle Decl p11. 83 TTABVUE 13.

37. Applicant admits documents filed in the USPTO in connection with registrations No. 4,088,195, No. 2,034,964, and No. 3,317,089. Opposer's Notice of Reliance on Discovery Responses, Ex 179, RFA1, RFA2 and RFA10. 62 TTABVUE 10-12, 15.

38. Reg. Nos 2,034,964 and 3,317,089 were owned by unaffiliated third party Apple Corps. Ltd. ("Apple Corps.") until 2007 when Apple Corps. transferred them to Applicant.  Opposer's Notice of Reliance on Statements in Briefs Ex. 133. 65 TTABVUE 5.

39. Copies of USPTO records relating to U.S. Registration No. 3,317,089 show that the filing basis for the application underlying the registration was Section 44(e). Ex 179,

RFA 11. 62 TTABVUE 15. The Foreign Registration Date for U.S. Registration No. 3317089 "APPLE" is 11/16/2000. Ex 179, RFA12. 62 TTABVUE 15, 16.

40.   Applicant admits that USPTO records relating to U.S Registration No. 2,034,964 indicate that the application underlying the registration was filed on June 26, 1995. Ex. 179, Ex. 179 RFA 3. 62 TTABVUE 12.

41.   An Application for a standard character mark APPLE in Class 9 (U.S. Reg. 2034964) was filed by Apple Corps. with the following filing basis: 1(a) – using the mark through licensees and 15 U.S.C. 1126(e).  Ex. 140, pp7, 8. 66 TTABVUE 42. On August 1, 1996 in the amendment to the '964 application the Applicant requested to "delete reliance on the foreign registration as an additional basis".  Ex. 140, p3. 66 TTABVUE 38, 39.

42.   "The company's name was changed … to its current name, Apple Corps Limited, effective February 9, 1968. Apple Corps' principal place of business is currently 27 Ovington Square, London, SW3 1LJ, United Kingdom". Declaration of Jeffrey Vaughan Jones on Behalf of Applicant Apple Inc. ("Jones Decl.") Ex.180 ¶3. 71 TTABVUE 3.

43.   Apple Corps. wholly owns Apple Corps Inc, and Apple Corps Inc. wholly owns Apple Records, Inc. (formed in the State of New York) and Apple Records, Inc. (formed in the State of California). Answer to Opposer's Written Deposition Questions by Jeffrey Vaughan Jones ("Jones Depo.") ¶24. 62 TTABVUE 41.

44.   Apple Corp. did not file any applications for standard character mark APPLE with the U.S. Patent and Trademark Office for entertainment services in Class 41 on or before June 5, 1985. Jones Depo. ¶22. Apple Corps. did not file any applications for standard

character mark APPLE at the U.S. Patent and Trademark Office on or before June 5, 1985. Jones Depo. ¶23. 62 TTABVUE 41.

45. Apple Corps. has no any documents showing that Apple Records, Inc. manufactured goods in the U.S. under standard character mark APPLE during period January 1, 1983 - December 31, 1985. Jones Depo. ¶25. 62 TTABVUE 41.

46. Apple Corps. has no any documents showing that Apple Corps. manufactured any of the following goods in the United States under standard character mark APPLE in the U.S. during period January 1, 1983 – December 31, 1985: *gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; video laser discs featuring music.* Jones Depo. ¶11. 62 TTABVUE 37.

47. Apple Corps Ltd. does not have any documents showing that Apple Corps. provided sound recording services under standard character mark APPLE in the U.S. during period January 1, 1982 – December 31, 1985. Jones Depo. ¶10. 62 TTABVUE 37.

49. Apple Corps. had no recording studio in the U.S. Jones Depo. ¶27. Apple Studio, a recording studio of Apple Corps., provided entertainment services during 1969-1975. Jones Depo. ¶28. 62 TTABVUE 42.

50. The *Abbey Road* album CD (Compact Disc) reissue was released on October 10, 1987. Jones Depo. ¶33. 62 TTABVUE 43. A compact disc of the *Abbey Road* album released in Japan on May 21, 1983 under the Toshiba-EMI label was not authorized by Apple Corps. Jones Depo. ¶34. 62 TTABVUE 43. There were no *Abbey Road* albums re-released in the U.S. on the APPLE label during period May 21, 1983 – October 10, 1987. Jones Depo. ¶35. 62 TTABVUE 44. Apple Corps. has no documents showing that *Abbey*

19

*Road* albums were released in the U.S. on the APPLE label during period May 21, 1983 - October 10, 1987. Jones Depo. ¶36. 62 TTABVUE 44.

51. Apple Corps. has no documents showing that "Hey Jude" was released in the U.S. on the APPLE label during period January 1, 1983 - December 31, 1985. Jones Depo. ¶37. 62 TTABVUE 45.

52. Apple Corps. has no documents showing that the two-cassette set of George Harrison's *All Things Must Pass* was released in the U.S. in 1986 by Apple Corps. Jones Depo. ¶38. 62 TTABVUE 45, 46.

53. According to Wikipedia https://en.wikipedia.org/wiki/Apple_Records_ discography: "After EMI's contract with the Beatles ended in 1976, the Apple label was finally wound up. The label was reactivated in the 1990s." Ex. 79 p1. 64 TTABVUE 21. The detailed catalog of vinyl records releases of Apple Records in the U.S. shows that there were no releases between December 8, 1975 and December 1, 1994. Ex.79 pp 2-14 64 TTABVUE 22-34.

54. Apple Corps Ltd. has no documentary evidence showing that entertainment services were offered in the U.S. by Apple Corps. under standard character mark APPLE during period January 1, 1983 – December 31, 1985. Jones Depo. ¶32. 62 TTABVUE 43.

55. Apple Corps. has no documentary evidence showing that Apple Corps. provided entertainment services under standard character mark APPLE in the U.S. during period January 1, 1982 – December 31, 1985. Jones Depo. ¶6. 62 TTABVUE 35, 36.

56. Apple Corps. has no documents showing that Apple Corps. provided any of the following entertainment services under standard character mark APPLE in the U.S. during period January 1, 1982 – December 31, 1985: *arranging, organizing, conducting,*

*and presenting concerts, live musical performances, entertainment special events in the*

*nature of musical and cultural events, arts and cultural events, theatrical entertainment*

*in the nature of live theatrical performances, competitions in the field of entertainment,*

*contests for entertainment purposes, musical and film festivals for cultural or*

*entertainment purposes, and exhibitions for entertainment purposes.* Jones Depo. ¶8. 62

TTABVUE 36.

57.  The last time the Beatles performed publicly was on January 30, 1969. Jones Depo.

¶1. 62 TTABVUE 35.

58.  Apple Corps. didn't produce live musical performances under standard character

mark APPLE in the U.S. during period January 1, 1982 - December 31, 1985. Jones

Depo. ¶2. 62 TTABVUE 35.

59.  Apple Corps. has no documentary evidence showing that Apple Corps. provided

production and distribution services of television programs under standard character mark

APPLE in the U.S. during period January 1, 1983 – December 31, 1985. Jones Depo. ¶9.

62 TTABVUE 37.

60.  Apple Corps. registered the domain name AppleCorpsLtd.com on June 21, 1997.

Jones Dep ¶13. 62 TTABVUE 39. Apple Corps. registered the domain name

TheBeatles.com on November 15, 1998. Jones Dep ¶14.  62 TTABVUE 39. Information

on the website thebeatles.com became available to the public for the first time at least as

early as November 13, 2000. Jones Depo. ¶43. 62 TTABVUE  No information on the

website thebeatles.com was available to the public before November 13, 2000. Jones

Depo. ¶44. 62 TTABVUE 46.

21

61.   Apple Corps. and/or predecessor in interest registered the domain name AppleRecords.com on November 8, 1998. Jones Depo. ¶15. 62 TTABVUE 39-40. Apple Corps. was not the first person or entity which registered the domain name AppleRecords.com. Jones Depo. ¶16. 62 TTABVUE 40. Apple Corps. became a registrant of domain name applerecords.com at least as early as September 15, 2004. Jones Depo. ¶17.  62 TTABVUE 40. Apple Corps. did not have any information available for public view on the website applerecords.com on the date September 14, 2009. Jones Depo. ¶41. 62 TTABVUE 46. Apple Corps. did not use in commerce for entertainment services a standard character mark APPLE on the website applerecords.com on September 14, 2009.  Jones Depo. ¶42. 62 TTABVUE 46.

62.   Apple Corps. had no website accessible for public on or before June 5, 1985.  Jones Depo. ¶18. 62 TTABVUE 40. Apple Corps. did not place any content on third party websites on or before June 5, 1985. Jones Depo. ¶19. 62 TTABVUE 40.

63.   Apple Corps. never sent any cease and desist letters to the Opposer, Charles Bertini, regarding use of the APPLE JAZZ mark. Jones Depo. ¶26. 62 TTABVUE 42.

64.   Filing date for U.S. Registration No. 4088195 "APPLE" is 03/22/2008 ( Ex 179, RFA6: 62 TTABVUE 13,14) and the original filing basis is SECTION 1(b) and SECTION 44(d). Ex 179, RFA7; 62 TTABVUE 14. The priority date claimed in the application underlying the Registration No. 4088195 is September 28, 2007. Ex 179, RFA 9; 62 TTABVUE 14, 15. Applicant admits that USPTO records relating to U.S Registration No. 4,088,195 indicate that an extension of time to file a Statement of Use was requested at least three times after the Notice of Allowance was issued. Ex. 179, RFA14. 62 TTABVUE 16. USPTO records show "Priority claimed Foreign Application

22

**Appx08249**

Filing Date: Sep. 28, 2007." Ex 181. 66 TTABVUE 47. Applicant polices its mark. Ex.

181. 66 TTABVUE 53.

65.  In the Applicant's Opposition to Opposer's Motion to Compel filed April 25, 2018

regarding Opposer's Request for Production No. 14 Applicant responded: "Opposer's

Request for Production 14 seeks documents relating to the services identified in

Opposer's application to register the mark APPLE JAZZ … but only if offered by

Apple… Apple did not find any responsive documents in its possession, custody, or

control from more than 30 years ago". Ex. 133 P7. 65 TTABVUE 6. Regarding

Opposer's Request for Production No. 15 which requested "All documents concerning

use of the trademark APPLE in commerce by the Applicant's related company, licensee,

or predecessor in interest in the territory of the United States for each type of activities

listed below for period January 1, 1981 through November 11, 2011," the Applicant

stated at P8, "Apple did not find any documents in its possession, custody, or control

relating to use of this mark by a 'related company, licensee, or predecessor in interest.'"

Ex.133 pp7, 8.  65 TTABVUE 7, 8. Registration Number 4,088,195 was never owned by

a "related company, licensee, or predecessor in interest." Ex. 133, p8. 65 TTABVUE 7.

66.   Applicant Apple, Inc. was known before 2007 as Apple Computer, Inc.  Exs. 126,

152.  64 TTABVUE 70, 78. Declaration of Thomas R. La Perle ("La Perle Decl"), p1.

83 TTABVUE 3.

67. Applicant's website is apple.com.  La Perle Decl, p7. 83 TTABVUE 9. Applicant

didn't have a website on or before June 5, 1985 because the World Wide Web was not

invented until after that date.  Ex. 131. 64 TTABVUE 71.

23

68. Applicant admits (Ex. 179, RFA 4; 62 TTABVUE 12, 13) that prior to June 5, 1985

Apple Computer Inc. does not appear to have owned and used any trademark in

connection with services listed in Application for APPLE JAZZ mark.  Ex. 185.

66 TTABVUE 73. The history of Applicant in Wikipedia doesn't show any involvement

to entertainment industry during 1976-1985 period. Ex. 189, pp2-4. 87 TTABVUE 5-7.

69. Applicant violated Board Order (35 TTABVUE 8):  "Applicant must produce the

portion of the identified settlement agreements concerning trademarks in response to

Requests for Production Nos. 4, 5 and 6." by not producing any portions of two

settlement agreements from dates 1981 and 1991 . According to publicly available

information in online encyclopedia Wikipedia regarding the Agreement of 1981: "Apple

Computer agreed not to enter the music business". Ex. 152, p1. 64 TTABVUE 78.

70. Despite the fact that Applicant promised to produce documents in its possession

(Ex.137, APPLE INC.'S Responses and Objections to Charles Bertini's First Request for

Production of Documents ("RFP"))  RFP 1 concerning sales under trademark APPLE

during period January 1, 1981 through December 31, 1985 such documents were not

produced. Ex. 137, p3. 62 TTABVUE 6.

71. No document was produced on Opposer's requests for production Nos. 8-13

22 TTABVUE 36-41.

72. Regarding RFP 2 request of documents "concerning confusion between customers of

Apple Corps or Apple Computer, Inc. or Apple Inc., and customers of Apple Jazz from

period June 5, 1985 to date" Applicant states that it has not identified any documents in

its possession, custody or control. Ex. 137, pp3-4. 62 TTABVUE 6, 7.

24

73.  Applicant relies on content of a website www.discogs.com. Applicant's NOR 6 pp.4-18. 74 TTABVUE 5-19.

74.  It is stated on www.discogs.com that there are "unofficial releases, (bootlegs, counterfeits, pirate compilations etc.) that pretend to be a release of the legitimate Apple Records."  Ex. 66. 64 TTABVUE 10. It is also stated: "Discogs is a user-built discography site. Everyone can contribute and update information as needed."  Ex. 67. 64 TTABVUE 11.  Discogs was "created as a hobby project in 2000."  Ex. 81, p1. 64 TTABVUE 40.  Webarchive shows that Apple Records began appearing on the Discogs website https://www.discogs.com/label/25693-Apple-Records only in 2014.  Ex. 81, p2. 64 TTABVUE 41.

75.  Applicant relies on content of a website web.archive.org  Applicant's NOR 6, p2. 74 TTABVUE 3. The website archive.org ("Webarchive") provides screenshots of websites which were saved for many dates in the past. Ex. 135. 64 TTABVUE 72.

76.  Applicant relies on content of its website apple.com Applicant's NOR 6 pp2, 3, 18, 19. 74 TTABVUE 3, 4, 19, 20.

77.  On the date of the Statement of Use ("SOU") November 11, 2011 for mark APPLE (Reg. No 4088195) Applicant offered goods on its website with individual brand names for each, e.g. Mac, iPod, iPhone, iPad, AppleTV, iOS and iTunes. Ex. 125. 64 TTABVUE 61, 62.

78.  On the date of the SOU Applicant offered entertainment services on its website under the mark iTunes.  The iTunes service is presented as *"Your Entertainment. Everywhere."*  Ex. 125. 64 TTABVUE 64. On the date of the SOU Applicant offered entertainment services on its website under the mark iCloud.  This is advertised as

*"iTunes in the Cloud is part of iCloud. It's the new way to store your music and TV shows, and enjoy them on all your devices."* Ex. 125. 64 TTABVUE 65.

79.  Applicant's goods and services have individual brand names. Among others, Applicant uses following marks for goods and services: Apple Watch, Apple TV (La Perle Decl p10), QuickTime (La Perle Decl p12), iTunes Store (La Perle Decl p13), iPod, iTunes Music Store (La Perle Decl p14). 83 TTABVUE  12, 14, 15, 16.

80.  From 2007 to 2014, Apple held the iTunes Music Festival. La Perle Decl. p19. 83 TTABVUE  21.

81.  On February 19, 2014 the Applicant's website announced that: *"Apple® today announced the first iTunes® Festival to be held in the US".* Ex. 144.  64  TTABVUE 73.

82.  Applicant hosted the iTunes® Festival in London for eight years, and in honor of the launch of Apple Music, has renamed the event the Apple Music Festival in 2015. Ex.145. 64 TTABVUE 75.

83.  iTUNES is used in commerce for entertainment services since April 28, 2003, Ex197. 88 TTABVUE  6.

84.  The Newsroom on Applicant's website apple.com doesn't show association of standard character mark APPLE with any product or services for the period May 2011-January 2016. Ex191. 87 TTABVUE 501-536.

85.  The archive of Sitemap of Applicant's website apple.com doesn't show association of standard character mark APPLE with any product or services for the period November 11, 2011 – June 1, 2015. Ex 192. 87 TTABVUE  542-558.

86.  APPLE TV during November 11, 2011 – May 8, 2015 was used on a product referred to as "a very little box". Ex 205. 87 TTABVUE 645.

26

87. APPLE TV for class 41 services was filed on 1(b) and 44(d) basis with claimed

priority date February 20, 2019 Ex 212.  88 TTABVUE 24-26.

## V.  ARGUMENT

### A.  Opposer Charles Bertini has Established Standing

Standing is a threshold issue that must be pleaded and proven by the plaintiff in

every inter partes case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d

1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *Ritchie v. Simpson*, 171 F.3d. 1092, 50

USPQ2d 1023, 1025-26 (Fed. Cir. 1999).  Opposer has established his standing by

submitting, a copy of his suspending pending application for the mark APPLE JAZZ and

the Office Action citing Applicant's application and prior registrations as a potential bar

to registration of Opposer's mark based on likelihood of confusion.  See, e.g.,

*Weatherford/Lamb Inc. v. C&J Energy Serv. Inc.*, 96 USPQ2d 1834, 1837 (TTAB 2010)

(finding standing on basis of plaintiff's making of record the USPTO Office action

suspending plaintiff's pending application pending possible refusal based on alleged

likelihood of confusion with defendant's registration). 66 TTABVUE 11; 66 TTABVUE

15; 66 TTABVUE 44

### B.  Applicant's Alleged Mark APPLE MUSIC is Likely to Cause Confusion with the APPLE JAZZ mark

Likelihood of confusion between APPLE JAZZ and APPLE MUSIC is alleged by

the Examining Attorney for the APPLE JAZZ application. 66 TTABVUE 11. Applicant

stated: "Apple does not dispute the likelihood of confusion between Opposer's APPLE

JAZZ mark and Apple's APPLE marks. This is a priority contest." 40 TTABVUE 9.

Opposer also believes that there is a likelihood of confusion.  Additionally, the Board's

27

March 1, 2019 Order stated: "Opposer's motion for summary judgment is **granted**, in part, with respect to the issue of likelihood of confusion…" 45 TTABVUE 16.

Registration of the marks claimed by the APPLE MUSIC Application is barred by Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), which prohibits registration of a mark that "so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the Applicant, to cause confusion, or to cause mistake, or to deceive." Likelihood of confusion is determined by focusing on whether the purchasing public would mistakenly assume that Applicant's goods originate from the same source as Opposer's goods and services, or are associated with Opposer. *Paula Payne Prods. Co. v. Johnson Publ'g Co.*, 473 F.2d 901, 901-02, 177 U.S.P.Q. 76, 77 (C.C.P.A. 1973). This determination is made on a case-by-case basis, *On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1084, 56 U.S.P.Q.2d 1471, 1474 (Fed. Cir. 2000), aided by the application of the factors set out in *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 177 U.S.P.Q. 563 (C.C.P.A. 1973). Some of the *DuPont* factors and their relation to this case are as follows:

*(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.*

APPLE JAZZ is a unitary mark as it is shown below. APPLE JAZZ as a unitary mark should be compared to other marks in its entirety. Jazz is a genre of music, and hence someone could confuse one with the other, making APPLE MUSIC confusingly similar in meaning and appearance to APPLE JAZZ. Applicant has disclaimed the word "MUSIC" in the applied-for mark. It is obvious that Applicant created this new mark APPLE MUSIC as a unitary mark the same way as Opposer did more than 30 years ago.

*(2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use; (3) The similarity or dissimilarity of established, likely-to-continue trade channels.*

In this case, the identifications set forth in the application have no restrictions as to nature, type, channels of trade, or classes of purchasers. Therefore, these goods and/or services are presumed to travel in all normal channels of trade, and are available to the same class of purchasers. Furthermore, the applications for APPLE JAZZ and APPLE MUSIC show that the services are related.

With respect to Applicant's services, the question of likelihood of confusion is determined based on the description of the services stated in the application at issue, not on extrinsic evidence of actual use. *See Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1323, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting *Octocom Sys. Inc. v. Hous. Computers Servs. Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990)).

Absent restrictions in an application and/or registration, the identified goods and/or services are "presumed to travel in the same channels of trade to the same class of purchasers." *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *Hewlett- Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1268, 62 USPQ2d 1001, 1005 (Fed. Cir. 2002)). Additionally, unrestricted and broad identifications are presumed to encompass all goods and/or services of the type described. *See In re Jump Designs, LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006) (citing *In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981)); *In re Linkvest S.A.*, 24 USPQ2d 1716, 1716 (TTAB 1992).

29

In this case, the identifications set forth in the application have no restrictions as to nature, type, channels of trade, or classes of purchasers. Therefore, these services are presumed to travel in all normal channels of trade, and are available to the same class of purchasers. Further, the Applicant application and Opposer's application both identify services for providing live musical performances, information, online publications, reviews and personalized recommendations in the fields of entertainment etc. Therefore, the services are related and very similar.

*(5) The fame of the prior mark (sales, advertising, length of use).*

Opposer has used his mark since 1985, and Applicant alleged a foreign filing date of May 18, 2015, a difference of 30 years. Opposer's Declaration and accompanying documents show that he has advertised the mark since June 5, 1985, and has sold tickets to concerts since that date.

*(6) (9) The number and nature of similar marks in use on similar goods.*

Opposer uses APPLE JAZZ for entertainment services, APPLEJAZZ for entertainment services, APPLEJAZZ MUSIC for entertainment services and APPLEJAZZ RECORDS for goods. (Applicant uses APPLE MUSIC for entertainment services.)

*(8) The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.*

No actual confusion has occurred during the few years that both marks have been in use.

*(12) The extent of potential confusion, i. e., whether de minimis or substantial.*

The extent of potential confusion is significant because Applicant is a large corporation with a strong web presence. Customers seeking APPLE JAZZ on the

Internet could end up on Applicant's website and assume that since jazz is a subset of music they are in the right location.

*(13) Any other established fact probative of the effect of use.*

Registration of the mark APPLE MUSIC is likely to cause confusion, or to cause mistake, or to deceive consumers. But if there were any doubt, the Board must resolve it against the newcomer and in favor of the prior user. *TBC Corp. v. Holsa Inc.*, 126 F.3d 1470, 1473-73, 44 U.S.P.Q.2d 1315, 1318 (Fed. Cir. 1997). Applicant, like all newcomers, had a duty to select a trademark sufficiently different from the trademarks of businesses already in the field so that confusion, mistake, or deception of purchasers would be unlikely. *Finn v. Cooper's Inc.*, 292 F.2d 555, 560, 130 U.S.P.Q. 269, 273 (C.C.P.A. 1961). Applicant failed to do so here. Additionally, Applicant knew that Opposer was doing business under name APPLEJAZZ MUSIC before its application was filed.

Since Opposer has used his common law mark APPLEJAZZ MUSIC (a) since 1998 with the Harry Fox Agency, and (b) since October 3, 2011 with Applicant, it appears that Applicant decided to adopt a mark almost identical to its customer's mark.

### C.    The Pleaded mark APPLE JAZZ is inherently distinctive or has acquired distinctiveness

The Examining Attorney in the Office Action didn't identify APPLE JAZZ as a descriptive mark, **therefore the APPLE JAZZ mark already passed the test to be a protectable mark** since the application to register Opposer's mark in the Principal Register was refused only under Section 2(d). There is no allegation of APPLE JAZZ to be descriptive in the relevant Office Action. NOR Ex. 130. 66 TTABVUE 11-14.

There are five classifications of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *See Taco Cabana Int'l, Inc. v. Two Peso, Inc.*, 505 U.S. 763, 768 (1992). The Tenth Circuit has defined these terms as follows: "An arbitrary mark has a common meaning unrelated to the product for which it has been assigned." *Heartsprings, Inc. v. Heartsprings, Inc.*, 143 F.3d 550, 555 (10th Cir. 1998). A mark comprising a combination of merely descriptive components is registrable if the combination of terms creates **<u>a unitary mark</u>** (emphasis added) with a unique, nondescriptive meaning, or if the composite has a bizarre or incongruous meaning as applied to the goods. *See In re Colonial Stores Inc.*, 394 F.2d 549, 157 USPQ 382 (C.C.P.A. 1968) (SUGAR & SPICE held not merely descriptive of bakery products); *In re Shutts,* 217 USPQ 363 (TTAB 1983) (SNO-RAKE held not merely descriptive of a snow removal hand tool).

Opposer's mark APPLE JAZZ is a unitary mark because the elements of the mark are so integrated and merged together that they cannot be regarded as separable. *See In re EBS Data Processing*, 212 USPQ 964, 966 (TTAB 1981). Opposer uses both versions of the mark APPLE JAZZ and APPLEJAZZ for his services and as a name for his jazz band (Charles Decl. ¶¶1) 59 TTABVUE 2 . On Opposer's registered logo the words are presented as one word AppleJazz (Ex. 59, 59 TTABVUE 81) showing that the elements of a mark are **integrated.** Opposer's logo appeared in newspaper ads since 1986 (Charles Decl. Exs.3, 4, 5, 11, 12, 18, 21 and others; 59 TTABVUE 31-33, 39, 40, 46, 49). On Opposer's website AppleJazz is shown as one word (Charles Decl. Exs. 58, 70;

59 TTABVUE 80, 88-157). In many cases news articles and ads referred to Opposer's

jazz band or services as APPLEJAZZ (Charles Decl. Exs .87, 88, 89, 92, 93, 95 and

others; 59 TTABVUE 164-167, 169, 170, 172).

During more than three decades of use of mark APPLE JAZZ (and its variant

APPLEJAZZ) and logo, Opposer's customers associate Opposer's services with this

word combination and not with one of the words separately. The two words together,

and in the unique combination where "apple" precedes "jazz", provide an unmistakable

impression that the reference is to Opposer's services *and no other*. Use of either of these

words alone could not give one the impression that it is a reference to Opposer's services

and name of the jazz band. The APPLE JAZZ mark creates a commercial impression

separate and apart from the word "apple" or from the word "jazz." The mark, therefore,

creates a single and distinct commercial impression.

According to TMEP 1209.01(a): "Arbitrary marks comprise words that are in

common linguistic use but, when used to identify particular goods or services, do not

suggest or describe a significant ingredient, quality, or characteristic of the goods or

services (e.g., APPLE for computers; OLD CROW for whiskey). *See Nautilus Grp., Inc.

v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1340, 71 USPQ2d 1173, 1180 (Fed. Cir.

2004) (defining an arbitrary mark as 'a known word used in an unexpected or uncommon

way')."

The common meaning for the word "apple" is a fruit and for "jazz" is "American

music". (Applicant's Sixth Notice of reliance Ex.A – p21-p22; 74 TTABVUE 44). A

unique combination of words APPLE JAZZ has no common meaning – the phrase is used

in an uncommon way to identify the source of particular services and do not suggest or

33

**Appx08260**

describe a significant ingredient, quality, or characteristic of the services listed in the Opposer's Application to register APPLE JAZZ. Ex. 185; 66 TTABVUE 73. APPLE JAZZ doesn't describe an ingredient, quality, characteristic, function, feature, purpose, or use of any above specified services. APPLE JAZZ doesn't immediately convey knowledge of a quality, feature, function, or characteristic of Opposer's services. APPLE JAZZ simply doesn't have any common meaning as a phrase.

The APPLE JAZZ combination was coined by the Opposer for his services and as a name of his jazz band. APPLE JAZZ "has a distinct meaning of its own independent of the meaning of its constituent elements." *Dena Corp. v. Belvedere Int'l, Inc.*, 950 F.2d 1555, 1561, 21 USPQ2d 1047, 1052 (Fed. Cir. 1991). Referring to the above APPLE JAZZ is an arbitrary mark for *all services* provided by the Opposer and therefore the mark is **inherently distinctive.**

Upon being used the very first time APPLE JAZZ had the ability to communicate to customers that the mark was identifying the source of the services and didn't describe the services. As an arbitrary mark, APPLE JAZZ is inherently distinctive as applied to Opposer's services.   In any event, during more than 30 years of use Opposer's mark has acquired distinctiveness since a reservoir of goodwill has been developed in the APPLE JAZZ mark among a number of dedicated customers, fans, musicians and contractors of APPLE JAZZ.  Charles Decl. ¶52, Ex112 pp2,3,5. 59 TTABVUE 26, 216, 217, 219.

### D.  The Pleaded mark APPLE JAZZ doesn't comprise a geographically descriptive term

Applicant claims in his defense that the APPLE JAZZ mark is comprised of a descriptive term and a geographically descriptive term. The test to be **geographically descriptive** is (1) the primary significance of the mark is a generally known geographic

34

location (*see* TMEP §§1210.02–1210.02(b)(iv)); (2) the goods or services originate in the place identified in the mark (*see* TMEP §1210.04); and (3) purchasers would be likely to believe that the goods or services originate in the geographic place identified in the mark (*see* TMEP §§1210.04–1210.04(d)). However, (1) none of the elements of the mark is a generally known geographic location on its face; (2) the services originated in Cortland, New York (Charles Decl. ¶3; 59 TTABVUE 2) and no place is identified in the mark; (3) purchasers cannot believe that Opposer's services originated in a geographic place because no geographic place is identified in the mark. **APPLE JAZZ is not merely descriptive.**

### E.  Opposer Has Exclusive Rights in the APPLE JAZZ Mark

Opposer is the sole owner of the mark APPLE JAZZ and its variant APPLEJAZZ. Charles Decl. ¶¶1, 50. 59 TTABVUE 2, 25. Opposer coined the mark APPLE JAZZ and decided to use the unique combination APPLE JAZZ for his entertainment services and as the name of a jazz band. Charles Decl. ¶3. 59 TTABVUE 2. Opposer has been continuously using his mark in commerce since June 5, 1985.  Charles Decl. ¶6. 59 TTABVUE 3. No one has claimed ownership of this mark (Charles Decl. ¶49; 59 TTABVUE 25) or sent Opposer a cease and desist letter. Charles Decl. ¶53; 59 TTABVUE 26.

Opposer presented as exhibits multiple documents showing his exclusive rights in the mark APPLE JAZZ. (Charles Decl. Exhibits 59 TTABVUE).  The Certificate of Registration of Service Mark was issued exclusively to Charlie Bertini on October 31, 1991 by the Department of State of the State of New York which registered Opposer's

35

logo, a combination of "AppleJazz" and a depiction of an apple with date of first use in New York State of "1986". Charles Decl., ¶37, Ex. 59. 59 TTABVUE 81.

Opposer has been the sole owner of the domain name www.applejazz.com and of the website associated with this domain name since January 24, 1998. Charles Decl. ¶11, 59 TTABVUE 6; Ex. 146. 60 TTABVUE 2. Opposer maintains his YouTube channel to promote APPLE JAZZ and this channel is totally under his control. Charles Decl. ¶14, Ex 69; 59 TTABVUE 16, 83-84. Opposer's AppleJazz Facebook page is totally under his control. Charles Decl. ¶¶15, 16, Ex122. 59 TTABVUE 16, 255.

A fictitious name from the Florida Department of State for AppleJazz Records dated February 28, 2005 indicates that the name was registered on October 23, 1995 and that its owner is Charlie Bertini. Charles Decl.¶39, Ex. 103 P4. 59 TTABVUE 23, 200. The Harry Fox Agency, Inc. has represented Opposer as APPLEJAZZ MUSIC since September 3, 1998. Charles Decl ¶¶42-45., Exs. 84, 147, 148; 59 TTABVUE 23, 24, 161; 60 TTABVUE 6-17. Opposer personally signed the Cloud Service License Agreement between Applicant and Opposer's AppleJazz Music. Charles Decl., ¶¶47,48 Ex. 98; 59 TTABVUE 25, 181-190. Opposer alone signs all contracts and correspondence related to the use in commerce of his mark APPLE JAZZ. Charles Decl ¶¶35, 36. 59 TTABVUE 22.

News articles refer to "his" band or group (Charles Decl., Ex 23; 59 TTABVUE 51) ads refers to APPLE JAZZ as Charles Bertini's band (Charles Decl., Ex. 18; 59 TTABVUE 46); proceeds from concerts are paid to Opposer (Charles Decl.¶25, Ex. 19; 59 TTABVUE 19, 47). As a sole proprietor Opposer earned revenues and incurred expenses in connection with use of APPLE JAZZ mark. Charles Decl ¶20.

36

59 TTABVUE 19.

**F.    Opposer Has Established His Prior Proprietary Rights in Mark APPLE JAZZ**

To prove proprietary rights the party must demonstrate that the mark is distinctive "either inherently or through secondary meaning." *Hoover Co. v. Royal Appliance Manufacturing Co.*, 238 F.3d 1357, 1358, 57 USPQ2d 1720, 1721 (Fed. Cir. 2001).  The date of first use must be established at trial by competent evidence.  37 C.F.R. § 2.122(b)(2).  As is shown above, Opposer has exclusive rights in the mark APPLE JAZZ and the mark is inherently distinctive. The date of first use in commerce is supported by competent evidence: a newspaper advertisement dated June 5, 1985 regarding a live concert of the APPLE JAZZ band and an article about APPLE JAZZ in the same newspaper. Charles Decl. Ex. 1. 59 TTABVUE 29.   This evidence is competent: it is relevant per Federal Rules of Evidence (FRE) 401 because it has a tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.  Since it is relevant, it is admissible per FRE 402.

A party may establish its own prior proprietary rights in a mark through ownership of a prior registration, actual use or through use analogous to trademark use, such as use in advertising brochures, trade publications, catalogues, newspaper advertisements and Internet websites which create a public awareness of the designation as a trademark identifying the party as a source.  See Trademark Act §§ 2(d) and 45, 15 U.S.C. §§ 1052(d) and 1127.   *See also Corporate Document Services Inc. v. I.C.E.D. Management Inc.*, 48 USPQ2d 1477, 1479 (TTAB 1998) (interstate or intrastate commerce is sufficient), *West Florida Seafood, Inc., v. Jet Restaurants, Inc.*, 31 F.2d 1122, 31 USPQ2d 1660 (Fed. Cir. 1994) (use in advertising).

37

Facts stated above show that along with other relevant evidence Opposer presented well-documented records and documents for APPLE JAZZ live concerts including newspaper advertising, Internet websites, articles in newspapers regarding concerts and the APPLE JAZZ band. Opposer demonstrated actual and continuous use of the mark APPLE JAZZ in commerce since June 5, 1985 by offering multiple relevant documents to support his statements in the Declaration regarding use of the mark APPLE JAZZ. Presented evidence show that Opposer advertised his services on a regular basis in newspapers, magazines, radio, Opposer's website, Youtube, Facebook. The Wayback Machine of Webarchive saved copies of Opposer's website since 1999 and it shows that Opposer arranged live concerts of APPLE JAZZ and sold tickets on a regular basis, and offered other APPLE JAZZ services. (Statement of facts, 59 TTABVUE).

Facts stated above supported by documents show that Opposer has customers from different states. Opposer receives payments for APPLE JAZZ services and pays expenses in connection with APPLE JAZZ services. Opposer presented relevant representative documents to show payments from customers, contracts, correspondence and financial documents in connection with APPLE JAZZ services from June 5, 1985 to the present. Charles Decl Exs. 59 TTABVUE.

Opposer's evidence is a clear demonstration that the mark APPLE JAZZ has been used on a regular and recurring basis in conjunction with entertainment services. Facts listed above supported by documents show that Opposer's mark APPLE JAZZ is displayed in the sale and advertising of services and the services are rendered in commerce. Opposer is personally engaged in commerce in connection with the services under mark APPLE JAZZ. 59 TTABVUE. The evidence presented by Opposer in support

38

of common law rights is clear, specific, and convincing.  It is not de minimus, but is substantial.

### G. The Facts Show That Opposer's Mark APPLE JAZZ Has Priority Rights Over Application No. 86659444 and Registration Nos. 2,034,964, 3,317,089, 4,088,195

In order for Opposer to prevail on its Section 2(d) claim, it must prove that it has a proprietary interest in its APPLE JAZZ mark which was obtained prior to either the filing date of applicant's applications for registration or applicant's proven date of first use, whichever is earlier.  The prior use can be intrastate use.  This is in accordance with 15 U.S.C. §1052(d) which provides in relevant part: "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it … [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."  See also *Panda Travel Inc. v. Resort Option Enters. Inc.*, 94 USPQ2d 1789, 1794 (TTAB 2009) (precedential);  *Christian Faith Fellowship Church v. Adidas AG*,  841 F.3d 986, 120 USPQ2d 1640 (Fed. Cir. 2016).

Consequently, the rights of users nationwide should be considered when determining whether a party is entitled to registration of their mark.  See 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 20:15 (4th ed. 2008).  Referring to this statute, the court in *Patsy's Italian Rest. V. Banas*, 658 F.3d 254, 266

39

(2nd Cir. 2011) stated: "Thus the very language of the statute contemplates that a mark used anywhere in the United States can be sufficient to block federal registration."

According to 15 U.S.C. § 1057(c)(1), "the filing of the application to register such mark shall constitute constructive use of the mark, **conferring a right of priority,** nationwide in effect, on or in connection with the goods or services specified in the registration against any other person **except for a person whose mark has not been abandoned and who, prior to such filing— (1) has used the mark**." (Emphasis added.) The court in *Hydro-dynamics, Inc. v. George Putnam & Company, Inc.*, 811 F.2d 1470, 1473 (Fed. Cir. 1987) stated: "The requirements of both adoption and use devolve from the ***common law; trademark*** rights in the United States are acquired by such adoption and use, not by registration." (Emphasis in original.)

The facts stated above, supported by Opposer's Declaration and copies of relevant documents, e.g. newspapers advertisements, concert tickets, contracts, payments for services from customers in multiple states and financial records, show that Opposer has continuously used his mark APPLE JAZZ in commerce for entertainment services since at least June 5, 1985 and has established prior proprietary rights in a mark through actual use in commerce. The presented evidence shows sales and advertisement of entertainment services provided in direct association with the APPLE JAZZ mark. 59 TTABVUE.

The facts stated above, supported by Opposer's Declaration and copies of relevant documents, e.g. newspaper and radio advertisements, annual band photos, annual financial documents, all since June 5, 1985, show that APPLE JAZZ has been in use in commerce on or in connection with entertainment services since at least as early as June

40

5, 1985 *and it has never been abandoned*.

### 1. APPLE JAZZ has priority over APPLE MUSIC Application No. 86659444

Applicant filed its application for mark APPLE MUSIC on an intent to use basis Section 1(b) and Section 44(d) with foreign filing date (Jamaica) May 18, 2015. Ex. 184. 66 TTABVUE 67. Apple Music was unveiled on June 8, 2015. La Perle Decl p6. 83 TTABVUE 8.

Opposer established the date of first use of his mark as June 5, 1985 by competent evidence as stated above and demonstrated continuous use of his mark in commerce. APPLE JAZZ has priority rights over APPLE MUSIC mark because on the date May 18, 2015 Opposer used his mark in commerce during almost 30 years. Thus, Opposer has priority of use established by actual use of his mark in commerce a long time prior to the date of first use by Applicant. The applied-for mark APPLE MUSIC should not be registered because the common law priority rights established by APPLE JAZZ as described above would bar registration of APPLE MUSIC pursuant to 15 U.S.C. §1052(d).

### 2. APPLE JAZZ has priority rights over registered marks used as affirmative defenses to this Opposition

#### a. APPLE JAZZ has priority rights over U.S. Registration No. 2034964: "APPLE"

The date of first use in the Certificate for Reg. No.2034964 is August 1968. Ex. 182. 66 TTABVUE 55; 67 TTABVUE 8. Applicant's dates of use in the claimed registrations are not evidence of Applicant's use. Applicant must establish priority of use through competent evidence of use. Trademark Rule 2.122(b)(2), 37 C.F.R. §

41

2.122(b)(2); *see also See UMG Recordings, Inc. v.O'Rourke*, 92 USPQ2d 1042, 1047 (TTAB 2009) (dates of use not evidence).

Facts show that an application for Reg. No. 2034964 was filed by foreign company Apple Corps Limited, UK on June 26, 1995 for goods in Class 9. Ex. 140. 66 TTABVUE 38, 39. The filing date became a priority date for this foreign mark. Apple Corps Ltd. did not file any applications for standard character mark APPLE at the U.S. Patent and Trademark Office on or before June 5, 1985. 62 TTABVUE 41.

Apple Corps Ltd. has no documents showing that Apple Corps Ltd or its company in the U.S., Apple Records, Inc., manufactured goods in the U.S. under standard character mark APPLE during period January 1, 1983 - December 31, 1985. 62 TTABVUE 41.

Opposer made Request for Production of Documents (22 TTABVUE 18) concerning sales of goods (listed in Reg. No. 2034964) in the U.S. under trademark APPLE during period January 1, 1981 through December 31, 1985 but the requested documents were not produced. Ex. 137, p3. 62 TTABVUE 6. Agreements with entities or licensees, custom documents in connection with production or distribution the same goods also were not produced despite request. 22 TTABVUE 37-41.

According to Wikipedia https://en.wikipedia.org/wiki/Apple_Records_ discography: "After EMI's contract with the Beatles ended in 1976, the Apple label was finally wound up. The label was reactivated in the 1990s." 64 TTABVUE 21.

Referring to the above goods listed in the Reg. No.2034964, were not advertised, imported, produced or sold in the U.S. under mark APPLE during more than three consecutive years. There was no use of the APPLE mark in the ordinary course of trade

in relation to any of the goods listed in the Reg. No.2034964 during more than three consecutive years.

No relevant documents were produced to show releases in the U.S. of any records under mark APPLE during years 1982-1985. No documents produced show any commercial activity of Apple Records, Inc. or Apple Corps. Ltd. in the U.S. during years 1982-1985. Since there was no production or sales of records at all under mark APPLE during years 1982-1985, no Apple Corps. common law marks were used in the U.S. during more than three consecutive years. According to 15 U.S.C. § 1127 "A mark shall be deemed to be "abandoned" if either of the following occurs:  "(1) …Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." **Once the mark has been abandoned, resumed use represents a new and separate use of the mark that cannot be tacked on to the use before abandonment.**

When Opposer began using the APPLE JAZZ mark for his entertainment services on June 5, 1985, the Apple label **for Class 9 goods** had been abandoned in the U.S. since 1976. 64 TTABVUE 22-34.

Use of standard character mark APPLE for goods listed in Reg. No.2034964 constitutes a new use with a new priority date which is filing date June 26, 1995. Opposer has priority rights over Reg. No.2034964 because on the date June 26, 1995 Opposer used his mark during more than ten years.

b. <u>APPLE JAZZ has priority rights over U.S. Registration No. 3317089: "APPLE"</u>

The claimed priority date for mark APPLE (U.S. Reg. 3317089) is the date of foreign registration November 16, 2000. 67 TTABVUE 10; 66 TTABVUE 60. Applicant admits the claimed priority date of foreign registration 11/16/2000.  Ex 179, RFA12. 62

43

**Appx08270**

TTABVUE 15, 16. Opposer has priority rights over this mark because on the claimed

priority date Opposer used his mark during more than 15 years.

      c.      <u>APPLE JAZZ has priority rights over U.S. Registration No. 4088195:</u>
              <u>"APPLE"</u>

The date of first use in the Certificate for Reg. No. 4088195 is March 1, 1981.

67 TTABVUE 13; 66 TTABVUE 48.  Applicant's dates of use in the claimed

registrations are not evidence of Applicant's use. Applicant must establish priority of use

through competent evidence of use. Trademark Rule 2.122(b)(2), 37 C.F.R.

§ 2.122(b)(2).

An application for the mark was filed with filing basis sections 1(b) and 44(d)

with foreign filing date of September 28, 2007.  Ex 179, RFA 7. 62 TTABVUE 14. The

priority date claimed in the application underlying the Registration No. 4088195 is

September 28, 2007. Ex. 179, RFA 9. 62 TTABVUE 14, 15.

Applicant "did not find any documents in its possession, custody, or control relating

to use of this mark by a 'related company, licensee, or predecessor in interest.'"  Ex.133

PP7, 8. 65 TTABVUE 7, 8.

Apple Corps. Ltd. (predecessor in interest to Applicant) did not file any applications

for standard character mark APPLE with the U.S. Patent and Trademark Office for

entertainment services in Class 41 on or before June 5, 1985. Jones Dep ¶22. 62

TTABVUE 41. Apple Corps. Ltd. has no documentary evidence showing that Apple

Corps. Ltd. provided entertainment services under standard character mark APPLE in the

U.S. during period January 1, 1982 – December 31, 1985. Jones Depo. ¶6. 62 TTABVUE

35, 36. Apple Corps. Ltd. didn't produce live musical performances under standard

character mark APPLE in the U.S. during period January 1, 1982 - December 31, 1985.

44

Jones Depo. ¶2. 62 TTABVUE 35. Apple Corps Ltd. has no documentary evidence showing that Apple Corps Ltd. provided production and distribution services of television programs under standard character mark APPLE in the U.S. during period January 1, 1983 – December 31, 1985. Jones Depo. ¶9. 62 TTABVUE 37. Apple Corps. Ltd. had no website accessible for public use on or before June 5, 1985.  Jones Depo. ¶18. 62 TTABVUE 40.

Applicant Apple, Inc. was known before 2007 as Apple Computer, Inc.  Exs. 126, 152. 64 TTABVUE 70, 78. La Perle Decl, p1. 83 TTABVUE 3. Applicant didn't have a website on or before June 5, 1985 because the World Wide Web was not invented until after that date.  Ex. 131. 64 TTABVUE 71.

In the Agreement with Apple Corps. dated 1981 "Apple Computer agreed not to enter the music business". Ex 152, p1.  64 TTABVUE 78.

All facts show that Applicant didn't provide entertainment services under standard character mark APPLE before and on the date of first use of APPLE JAZZ mark June 5, 1985. Applicant admits (Ex 179, RFA 4; 62 TTABVUE 12, 13) that prior to June 5, 1985 Apple Computer Inc. does not appear to have owned and used any trademark in connection with services listed in Application for APPLE JAZZ mark 66 TTABVUE 73). The services of APPLE JAZZ are substantially similar to the services listed in the Reg. No. 4088195 (66 TTABVUE 48). Facts show that Apple Corps also didn't provide entertainment services in the U.S. under standard character mark APPLE for more than three consecutive years.

Entertainment services listed in the Reg. No. 4088195 and related to the Internet could not be provided on or before June 5, 1985 because the Internet was not available

yet. On this date Apple Computer Inc. was prohibited from entering the music business under standard character mark APPLE. There is no evidence of production of live musical performances by Apple Computer Inc on or before June 5, 1985. The first live concert in the U.S. was organized by Applicant only in 2014 and under mark iTunes. Ex. 144; 64 TTABVUE 73. The last time the Beatles performed publicly was on January 30, 1969 (Jones Depo. ¶1; 62 TTABVUE 35) and it was not in the U.S. There is no evidence of Applicant's or its predecessor's continuous use of the APPLE mark for services listed in Reg No. 4088195.

All facts show that when Opposer started to use APPLE JAZZ mark for entertainment services on June 5, 1985 there was no APPLE mark registered in Class 41. There was no evidence of any other party's use of mark APPLE for entertainment services in the U.S. Opposer has priority rights over U.S. Reg. No. 4088195 because on the claimed priority date of September 28, 2007, Opposer had used his mark for more than 20 years.

If likelihood of confusion could occur, U.S. Registration No. 4088195 shouldn't have been issued because the common law priority rights established by APPLE JAZZ as described above would bar registration of mark 4088195 pursuant to 15 U.S.C. §1052(d).

### H. Tacking of the Use to Mark APPLE Should Not be Permitted

A party may benefit from the use of an earlier form of its mark to establish priority if the old form and the new form are "legal equivalents" and "create the same continuing commercial impression." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991), 17 USPQ2d 1866, 1869, *abrogated on other grounds by Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 911 (2015); *Bausch & Lomb Inc. v.*

*Leupold & Stevens Inc.*, 6 USPQ2d 1475, 1477 (TTAB 1988) ("The words GOLDEN RING, while they are used to describe the device, are by no means identical to or substantially identical to the gold ring device trademark."

"The tacking of the use of a mark for certain goods or services onto the use of the same mark for other goods or services … should be permitted only when the two sets of goods or services are 'substantially identical.'" *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991).

**A.  Registrations No. 2,034,964 and No. 3,317,089** for single word APPLE mark are for goods in Class 9. Exs. 182, 183. 66 TTABVUE 54-65. The application for the APPLE MUSIC Serial No. 86659444 mark is a mark comprising a combination of two words for services in Class 041. Ex 184 66 TTABVUE 66-70. APPLE and APPLE MUSIC don't create the same continuing commercial impression because marks are different in its face and they are in no way substantially identical. The USPTO registered marks APPLEJAXX and APPLE JAM in Class 41 (Exs.127, 129 66 TTABVUE 7-9) when Reg. Nos. 2,034,964 and 3,317,089 existed in Class 9.  USPTO examining attorneys viewed the APPLE mark in Class 9 as different from the mark in class 41 comprising the word 'apple' and another word.

The set of goods for Reg. No. 2,034,964 and the set of services in Application No. 86659444 are not substantially identical.  The set of goods for Reg. No. 3,317,089 and the set of services in Application Ser. No. 86659444 are not substantially identical.

For the above reasons the tacking of the use of not-identical marks for goods in Class 9 onto the use of the different mark for services which are not substantially identical should not be permitted.

47

**B.   Registration No. 4088195 is** for the single word APPLE. Application Serial No. 86659444 for APPLE MUSIC is for a mark comprising a combination of two words.  "A mark is the legal equivalent of another if it creates the same, continuing commercial impression such that the consumer would consider them both the same mark." *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1347, 57 USPQ2d 1807, 1812 (Fed. Cir. 2001); *In re Binion*, 93 USPQ2d 1531, 1539 (TTAB 2009) (finding BINION and BINION'S are not the legal equivalents of the registered marks JACK BINION and JACK BINION'S);

APPLE and APPLE MUSIC don't create the same commercial impression (same as BINION and JACK BINION) because <u>a consumer would not consider them both the same mark.</u> Since there has been no *de facto* confusion between APPLE JAZZ and APPLE marks during more than 30 years of use of the mark APPLE JAZZ (Jones Depo. ¶26. 62 TTABVUE 42; Charles Decl. ¶53. 59 TTABVUE 26) it is obvious that customers view marks comprising two words as different from a single word mark. Accordingly, APPLE and APPLE MUSIC are different marks.

Applicant filed applications for registration of APPLE MUSIC in the same Class 41 while it has registered mark APPLE in Class 41 with similar services. Exs. 181, 184. 66 TTABVUE 47, 48, 67,68.   It is obvious that *<u>Applicant views APPLE and APPLE MUSIC as different marks.</u>*

A party may benefit from the use of an earlier form of its mark but there is no evidence that standard character mark APPLE was used for sales or advertising of services listed in the Reg. Certificate No. 4088195. The mark APPLE is not displayed in the sale or advertising of services listed in the Registration Certificate Reg. No. 4088195.

There is no evidence of Applicant's use of standard character mark APPLE in the ordinary course of trade. Opposer has filed a Petition to Cancel the Reg. No. 4088195 based on abandonment.

### I.    Trademark Rights in the U.S. Arise From Actual Use of the Mark

With total respect to federal registration of marks, trademark rights arise in the United States from the actual use of the mark.  Thus, if service is sold under a brand name, common law trademark rights have been created.  This is especially true once consumers view the brand name as an indicator of the service's source.

Opposer demonstrated that he is the owner of his trademark, the mark is in continuous use in commerce and his rights in this mark are well established since at least as early as June 5, 1985. Opposer clearly established his prior use of the mark APPLE JAZZ over APPLE MUSIC and even over other APPLE registrations.

### VI.        SUMMARY

The Pleaded mark APPLE JAZZ is inherently distinctive and Opposer has exclusive rights in this mark. APPLE JAZZ is not merely descriptive. Opposer has established his prior proprietary rights in mark APPLE JAZZ. Opposer has carried his burden to demonstrate use of his mark in commerce prior to the filing date of the involved application. Applicant's dates of first use don't predate the dates of first use and first use in commerce claimed by Opposer. Applicant has no priority through tacking.

### VII.        CONCLUSION

For the foregoing reasons and based on the evidence properly of record in this proceeding, Opposer Charles Bertini respectfully requests that registration of the mark

49

shown as Serial No. 86659444 for APPLE MUSIC be denied and that final judgment be made for Opposer in this proceeding.

June 5, 2020      /s/ James Bertini

                JAMES BERTINI
                Attorney for Opposer Charles Bertini
                423 Kalamath Street
                Denver, CO 80204
                303 572-3122
                jamesbertini@yahoo.com

50

**APPENDIX A.**

**OPPOSER CHARLES BERTINI'S STATEMENT OF OBJECTIONS TO APPLICANT APPLE'S EVIDENCE**

Opposer Charles Bertini states his objections to certain evidence sought to be introduced in this proceeding by Applicant Apple Inc.  During its trial period, Applicant submitted two trial declarations and exhibits constituting approximately 6,000 pages.  67-85 TTABVUE.

Proving that quantity doesn't mean quality, the submissions by Applicant do not show (a) sales or advertising of entertainment services listed in the Application for mark APPLE MUSIC in Class 41 prior to 2015, (b) that with respect to Applicant's tacking defense, any of the goods or services are "substantially identical" re *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991), (c) that Opposer's mark is descriptive, geographically descriptive or not distinctive; or (d) mark APPLE was used for entertainment services prior to Opposer's date of first use.

Pursuant to applicable subsections of Trademark Trial and Appeal Board Manual of Procedure § 707, Opposer seeks to exclude the following portions of Applicant's trial declarations and the following exhibits, which is the vast majority of the evidence filed by Applicant.  Opposer regrets the length of this list of objections; preparing it has consumed weeks of time by counsel.  It has been made necessary due to the vast amount of irrelevant and duplicative evidence filed by Applicant.

1

**APPENDIX A – Objections to Applicant's Evidence**

| LOCATION OF EVIDENCE | PAGES (counted in TTABVUE) | DESCRIPTION OF EVIDENCE | LEGAL BASIS FOR OBJECTION |
|---|---|---|---|
| | | Various | None of the evidence shows (a) sales or advertising of entertainment services listed in the application for mark APPLE MUSIC prior to 2015, (b) that with respect to Applicant's tacking defense, any of the services are "substantially identical" re *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991), or (c) that Opposer's mark is descriptive, geographically descriptive or not distinctive. Consequently, ALL evidence filed by Applicant (other than Opposer's documents - filed in multiples) is irrelevant per Federal Rules of Evidence (FRE) 401 because it has no tendency to make a fact more or less probable than it would be without the evidence, and the fact is not of consequence in determining the action; inadmissible per FRE 402 since it is irrelevant; and should be excluded per FRE 403 because its probative value is substantially outweighed by a danger of one or more of the following: |

2

| | | | unfair prejudice, confusing the issues, misleading the jury, undue delay, _wasting time, or needlessly presenting cumulative evidence._ **Below these objections will be stated as "Irrelevant", or "FRE 403" if relevant but otherwise should be excluded.** Irrelevant. |
|---|---|---|---|
| **Dkt. 83, Decl. of Thomas La Perle, Director of Apple's Trademark & Copyright Grp** | _____ | _____ | _____ |
| ALL pages in the Exhibits connected with Mr. LaPerle's Declaration, except 10-12 TTABVUE 83 (which is also Ex. 8). | | Various | The documents should be excluded under FRE 403 for wasting time. See also FRCP 34(a)(1)(A), (b)(E)(i) and (ii), and _Branhaven, LLC v. Beeftek, Inc.,_ Civ. No. WDQ-11-2334, 2013 U.S. Dist. LEXIS 13364 (D. Md. Jan. 4, 2013). FRE 403. |
| | ¶11-15, P5-7 | Value of Apple brand. | Irrelevant. |
| | ¶27-28, P13 | Music performed in UK. | Irrelevant. |
| | ¶33-36, P14-15 | Apple hardware info. | Irrelevant |
| | ¶38-45, P15-18 | iTunes, iPod info. | Irrelevant. |
| | ¶49-51, P19-20 | Interpretation of the testimony of another witness. | Irrelevant |
| | ¶54, P21 | Steve Jobs loves music; Steve Wozniak held | Irrelevant |

3

| | | concerts in '82, '83. | |
|---|---|---|---|
| | ¶55, P21 | Music festival of iTunes. | Personal knowledge is required under FRE 602 and thus there is no authentication under FRE 901. **Below this objection will be stated as "Foundation".** Irrelevant, Foundation (no proof offered.) |
| | ¶60, P22 | References use of "the APPLE mark" in connection with live performances, sans details of such use, and sans definition of "the APPLE mark." ¶4, P3 defines the "Apple Marks" but the "APPLE mark" is undefined. | Irrelevant, Foundation. |
| | 10-12 TTABVUE 83 in Declaration (which is also Ex. 8). | Purported webpages showing APPLE MUSIC from 2018 | Internet evidence may not be used to demonstrate the truth of what has been printed. TBMP 704.08(b). **Below this objection will be stated as "Internet ≠ truth".** Internet evidence must have URL and date accessed per TBMP §§ 704.08(b), 528.05(e) and 37 C.F.R. § 2.122(e). A URL is provided but the link does not lead to this evidence. **Below this objection will be stated as "Link inop".** Internet ≠ truth, Link inop, Irrelevant. |
| | Ex. 1 27-49 | Magazine articles explaining that | This exhibit is prohibited by the Rule Against |

4

| | | Apple is great | Hearsay, FRE 801, 802, 601 and 602.  No exceptions apply. ***Hereinafter this objection is referred to as "Hearsay".***<br><br>Irrelevant, Internet ≠ truth, Hearsay. |
|---|---|---|---|
| | Ex. 2<br>50-138 | Corporate rankings explaining that Apple is great | Irrelevant, Internet ≠ truth, Hearsay. |
| | Ex. 3<br>139-143 | Corporate rankings explaining that Apple is great | Irrelevant, Internet ≠ truth, Hearsay. |
| | Ex. 4<br>144-168 | Corporate rankings explaining that Apple is great | Irrelevant, Internet ≠ truth, Hearsay. |
| | Ex. 5<br>169-173 | Articles about logos and branding | Irrelevant, Internet ≠ truth Hearsay. |
| | Ex. 6<br>174-195 | Magazine articles explaining that Apple is great | Irrelevant, Internet ≠ truth, Hearsay. |
| | Ex. 7<br>196-199 | Press release announcing Apple Music, 2015 | Irrelevant, Internet ≠ truth, Hearsay. |
| | Ex. 8<br>200-204 | Webpages marketing Apple Music. | Irrelevant, Link inop, Internet ≠ truth. |
| | Ex. 9<br>205-208 | Announcment of Apple Music festival in London, 2015 | Irrelevant, Internet ≠ truth |
| | Ex. 10<br>209-210 | Announcement Apple Music 2019 | Irrelevant, Internet ≠ truth |
| | Ex. 11<br>211-214 | Info re Quicktime software accessed Feb 2020. | Irrelevant, Internet ≠ truth |
| | Ex. 12<br>215-217 | Press release Quicktime 2000 | Irrelevant, Internet ≠ truth |
| | Ex. 13<br>218-221 | Press release iTunes 2001 | Irrelevant, Internet ≠ truth |
| | Ex. 14<br>222-225 | Press release iPod 2001 | Irrelevant, Internet ≠ truth |
| | Ex. 15<br>226-228 | Press release iPod 2001 | Irrelevant, Internet ≠ truth |

5

| | Ex. 16 229-232 | Press release iTunes Music Store 2003 | Irrelevant, Internet ≠ truth |
|---|---|---|---|
| | Ex. 17 233-236 | Press release iTunes Music Store 2003 | Irrelevant, Internet ≠ trut, |
| | Ex. 18 237-239 | Press release iTunes Music Store 2003 | Irrelevant, Internet ≠ truth, |
| | Ex. 19 240-242 | Press release iTunes Music Store 2003 | Irrelevant, Internet ≠ truth |
| | Ex. 20 243-245 | Press release iTunes Music Store 2003 | Irrelevant, Internet ≠ truth |
| | Ex. 21 246-249 | Press release iTunes Music Store 2003 | Irrelevant, Internet ≠ truth |
| | Ex. 22 250-251 | Press release re agreement Apple Inc. and Apple Corps | Irrelevant, Internet ≠ trut, |
| | Ex. 24 253-258 | Trademark Assignment | Irrelevant |
| | Ex. 25 259-263 | Press release re Apple opens store 2016 | Irrelevant, Internet ≠ truth |
| | Ex. 26 264-268 | Press release HBO can be viewed on Apple TV 2013 | Irrelevant, Internet ≠ truth |
| | Ex. 27 269-272 | Press release Apple unveils Apple TV+ 2019 | Irrelevant, Internet ≠ truth |
| | | | |
| **Dkt. 71, Declaration of Jeffrey Vaughn Jones, CEO of Apple Corp. Ltd.** | _____ | _____ | _____ |
| | ALL pages submitted with this Declaration. | Exhibits show products, not services. | Irrelevant. |
| | Declaration | Mr. Jones makes (a) bare statements | Mr. Jones is not testifying as an expert so he may |

6

| | | | |
|---|---|---|---|
| | | not supported by evidence, (b) legal conclusions (P6 ¶13 "mark used in commerce", and (c) statements contradicting his written discovery deposition. | not make legal conclusions.<br><br>Irrelevant, Foundation, Hearsay. |
| | P3 | Mr. Jones states: "all information provided within this declaration is either personally known to me, or is information which has been provided to me (especially in relation to matters prior to my appointment in May 2007)."  No explanation is given regarding who provided the information, and by using "especially…" it means that even after his appointment information was provided to him from unknown sources. | Irrelevant, Foundation, Hearsay. |
| | Ex. 2, P44 et seq. | Evidence is the Beatles website as reproduced from Wikipedia website. | Irrelevant, Foundation, Hearsay. |
| | Exs. 3, 4, 6, 7, 8, 10, 11, 12, 14 and 15. | Mr. Jones states that these are a "true and correct depiction" or "copy", but fails to state that he has personal knowledge of them. | Since the photos among these exhibits are blurry it is obvious Mr. Jones did not photograph them Foundation.<br><br>It is stated on the discogs.com website that |

7

| | | Many of these exhibits appears to be from discogs.com. Indeed, some show the discogs.com URL, i.e. 224, 225, 230-233. | there are "unofficial releases, (bootlegs, counterfeits, pirate compilations etc.) that pretend to be a release of the legitimate Apple Records."  It is also stated: "Discogs is a user-built discography site. Everyone can contribute and  update information as needed."  Webarchive shows that Apple Records began appearing on the Discogs website only in 2014.  *All this information about discogs.com was presented in Opposer's Motion for Summary Judgment (36 TTABVUE 11, ¶60-62) and it was not disputed by Applicant in its Response.  40 TTABVUE.*  Thus, pages from discogs.com are hearsay, have no foundation; they are also irrelevant. <br><br> Foundation, Hearsay, Irrelevant. |
| | 10 | Image says "Mfd. in U.K" and "Sold in U.K." | Irrelevant |
| | 12 | Images sans date. | Irrelevant |
| | 13 | "Recorded in England" | Irrelevant |
| | 14 | Image sans date, location. | Irrelevant |
| | 15 | Image sans date, location. | Irrelevant |
| | 16 | Image sans date, location. | Irrelevant |
| | 17 | Image sans date, location. | Irrelevant |

8

| | 18 | Image sans date, location. | Irrelevant |
|---|---|---|---|
| | 19 | Image sans date, location. | Irrelevant |
| | 24 | Image sans date, location. | Irrelevant |
| | 25 | Image sans date, location. | Irrelevant |
| | 27 | Image sans date. | Irrelevant. |
| | 28 | Date is 1972-1975. | Irrelevant |
| | 30 | Away in the Sky home video dates are 1967 and 1988; Yellow Submarine is sans date, location. | Irrelevant |
| | 31 | Image sans date, location. | Irrelevant |
| | Ex. 1 33-42 | RIAA listing of album sales of various artists, including the Beatles, sans marks, dates, locations | Irrelevant, Internet ≠ truth. |
| | Ex. 2 43-46 | Hey Jude entry in Wikipedia. | Irrelevant, Internet ≠ truth, Hearsay. |
| | Ex. 3 47-59 | Beatles record covers. Some show MacLen Music, BMI, Harrisongs, some show Recorded in England, and only dates shown are 1970 and 1973. Source unknown. | Irrelevant, Foundation. |
| | Ex. 4 60-66 | CD covers show no dates, locations. Source unknown. | Irrelevant, Foundation. |
| | Ex. 5 67-73 | Court decision. | Irrelevant |
| | Ex. 6 74-88 | Beatles record labels. Some show date 1995, some show marks Capitol | Irrelevant, Foundation. |

9

| | | Records, EMI. Source unknown. | |
|---|---|---|---|
| | Ex. 7 89-93 | Beatles CD covers. Some show Capitol Records sans dates, locations. Source unknown. | Irrelevant, Foundation. |
| | Ex. 8 94-95 | Beatles Xbox cover sans date, location. Source unknown. | Irrelevant, Foundation. |
| | Ex. 9 96-128 | Beatles t-shirts, collectables and records available through thebeatles.com, | Irrelevant, Internet ≠ truth |
| | Ex. 10 129-240 | Various records, covers and artwork. Some show BMI, MacLen, RCA and ABC, most sans dates other than 1972, 1973, 1974 and 1975, some say "Recorded in England." Source unknown. | Irrelevant, Foundation. |
| | Ex. 11 241-248 | Beatles art. Some sans marks, location. Away in the Sky home video dates are 1967 and 1988. Source unknown. | Irrelevant, Foundation. |
| | Ex. 12 249-255 | Beatles artwork. Date 1970, and 1981 with mark RCA. No location. Source unknown. | Irrelevant. Foundation. |
| | Ex. 14 257-265 | Beatles artwork, one shows date 2003, no location. Source unknown. | Irrelevant, Foundation. |
| | Ex. 15 266-260 | Beatles video. Source unknown. | Irrelevant, Foundation. |
| | | | |
| | | | |

10

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| CHARLES BERTINI, | |
| Opposer, | Opposition No. 91229891 |
| v. | TM: APPLE MUSIC |
| | (App. Ser. No. 86/659,444) |
| APPLE INC., | |
| Applicant. | |

## APPLICANT APPLE INC.'S TRIAL BRIEF

## PUBLIC VERSION

J. David Mayberry
Theodore H. Davis Jr.
Sara K. Stadler
The Grace Building
1114 Avenue of the Americas
New York, New York  10036
Telephone: (212) 775-8830
Facsimile: (202) 585-0038
dmayberry@kilpatricktownsend.com
tdavis@kilpatricktownsend.com
sstadler@kilpatricktownsend.com

Joseph Petersen
Jason M. Gonder
1080 Marsh Road
Menlo Park, California  94025
Telephone: (650) 614-6427
Facsimile: (650) 644-0570
jpetersen@kilpatricktownsend.com
jgonder@kilpatricktownsend.com

William M. Bryner
1001 W. Fourth Street
Winston-Salem, North Carolina  27101
Telephone: (336) 607-7482
Facsimile: (336) 734-2656
bbryner@kilpatricktownsend.com

Attorneys for Applicant Apple Inc.

## <u>TABLE OF CONTENTS</u>

I.    DESCRIPTION OF THE RECORD ................................................................7

II.   ISSUES PRESENTED.............................................................................7

III.  INTRODUCTION ..................................................................................8

IV.   STATEMENT OF FACTS ......................................................................10

    A.    U.S. Production and Distribution of Sound Recordings Featuring The Beatles...............................................................................................10

    B.    U.S. Production and Distribution of Sound Recordings Featuring Individual Members of The Beatles and Other Famous Musical Artists...............14

    C.    Opposer Mischaracterizes the Record ................................................15

    D.    Apple and Its Long Association with Music........................................17

    E.    Apple's Launch of its APPLE MUSIC Service ....................................21

    F.    Opposer's Claimed Rights in APPLE JAZZ ........................................22

V.    ARGUMENT .......................................................................................27

    A.    Apple Has Absolute Priority in the APPLE Mark for Production And Distribution of Sound Recordings. ....................................................27

        1.    Apple Has Prior Rights in APPLE for Production and Distribution of Sound Recordings and Film Dating to At Least August 1968. ............28

        2.    Apple is Entitled to Tack its APPLE MUSIC Mark to its APPLE Mark Because the Marks are Legal Equivalents.......................................32

        3.    Tacking is Also Appropriate Because Apple's Offerings Under its APPLE MUSIC Mark are Identical or Closely Related to its Offerings Under the APPLE Mark, in Which it Has Absolute Priority. ..................................................................................35

        4.    Opposer Cannot Defeat Apple's Absolute Priority in APPLE for Production and Distribution of Sound Recordings by Cherry Picking Services from the APPLE MUSIC Application and Claiming Intervening Rights for Those Services.......................................39

B.      Opposer's Claimed Apple Jazz Mark Is Primarily Merely Geographically Descriptive and Lacks Secondary Meaning.........................................................41

      1.      Opposer's APPLE JAZZ Mark Is Primarily Geographically Descriptive. ...............................................................................42

      2.      Opposer Has Failed to Prove His Primarily Geographically Descriptive APPLE JAZZ Mark Has Acquired Secondary Meaning. ...............................................................................51

CONCLUSION...............................................................................................................55

# TABLE OF AUTHORITIES

**Cases**

*Alcatraz Media, Inc. v. Watermark Cruises*, 107 U.S.P.Q.2d 1750 (T.T.A.B. 2013)........................52

*American Security Bank v. American Security & Trust Co.*, 571 F.2d 564, 197 U.S.P.Q. 65 (C.C.P.A. 1978)..................................................................................................................................................33, 34

*Baseball Am., Inc. v. Powerplay Sports, Ltd.*, 71 U.S.P.Q.2d 1844 (T.T.A.B. 2004) ........................40

*Bear Partnership & Wings Res. & Dev., S.R.L. v. Bear U.S.A., Inc.*, No. 91119974, 2004 WL 2901193 (T.T.A.B. Nov. 30, 2004) (nonprecedential) ........................................................38, 39, 40

*Bionetics Corp. v. Litton Bionetics, Inc.*, 218 U.S.P.Q. 327 (T.T.A.B. 1983)....................................35

*C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690 (5th Cir. 2001)..................................................36

*Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 U.S.P.Q.2d 1713 (Fed. Cir. 2012) ..........................................................................................................................................................51

*Corp. Document Servs. Inc. v. I.C.E.D. Mgmt. Inc.*, 48 U.S.P.Q.2d 1477 (T.T.A.B. 1998) ..............29

*Del. & Hudson Canal Co. v. Clark*, 80 U.S. 311 (1871) ....................................................................43

*DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 103 U.S.P.Q.2d 1753 (Fed. Cir. 2012)..................................................................................................................................42, 43

*Dyneer Corp. v. Auto. Prods. plc*, 37 U.S.P.Q.2d 1251 (T.T.A.B. 1995)............................................32

*Factory Five Racing, Inc. v. Shelby*, No. 91150346, 2010 WL 4232609 (T.T.A.B. Oct. 13, 2010) (nonprecedential) ..........................................................................................................................54

*Gowanus Dredgers v. Baard*, No. 11-CV-5985 PKC, 2013 WL 6667361 (E.D.N.Y. Dec. 17, 2013)52

*Grocery Outlet Inc. v. Albertsons, Inc.*, No. C 06-02173 JSW, 2008 WL 5245962 (N.D. Cal. Dec. 17, 2008)..................................................................................................................................................38

*H. Betti Indus. v. Brunswick Corp.*, 211 U.S.P.Q. (BNA) 1188 (T.T.A.B. 1981) ........................passim

*Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015) ..............................................................29, 32, 35

*Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 108 U.S.P.Q.2d 1825 (9th Cir. 2013) ......................35

*Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 331 F. Supp. 3d 581 (E.D. La. 2018)....36, 38, 45

*Hess's of Allentown, Inc. v. Nat'l Bellas Hess, Inc.*, 169 U.S.P.Q. 673 (T.T.A.B. 1971) ..................33

*Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 57 U.S.P.Q.2d 1720 (Fed. Cir. 2001)27, 41, 45

*Humble Oil & Refining Co. v. Sekisui Chem. Co. Ltd. of Japan*, 165 U.S.P.Q. 597 (T.T.A.B. 1970) 34

*In re All Island Media, Inc.*, No. 78591633, 2007 WL 4438608 (T.T.A.B. Dec. 3, 2007)
(nonprecedential) ...................................................................................................47, 48

*In re Assoc. Theatre Clubs Co.*, 9 U.S.P.Q.2d 1660 (T.T.A.B. 1988) .................................49

*In re Bacardi & Co.*, 48 U.S.P.Q.2d 1031 (T.T.A.B. 1998) ...............................................47

*In re Bayer AG*, 488 F.3d 960, 82 U.S.P.Q.2d 1828 (Fed. Cir. 2007) ...........................43, 44

*In re Binion*, 93 U.S.P.Q.2d 1531 (T.T.A.B. 2009) ...........................................................34

*In re Boston Beer Co.*, 198 F.3d 1370, 153 U.S.P.Q.2d 1056 (Fed. Cir. 1999) ..................54

*In re Cal. Pizza Kitchen Inc.*, 10 U.S.P.Q.2d 1704 (T.T.A.B. 1988) ...................................49

*In re Chalk's Int'l Airlines Inc.*, 21 U.S.P.Q.2d 1637 (T.T.A.B. 1991) ...............................49

*In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 U.S.P.Q.2d 1217 (Fed. Cir. 2012) 43, 44

*In re Code Consultants Inc.*, 60 U.S.P.Q.2d 1699 (T.T.A.B. 2001) .....................................34

*In re Constantine*, No. 77403096, 2010 WL 4036057 (T.T.A.B. Sept. 29, 2010) (nonprecedential) .53

*In re Crow Marcum, Inc.*, No. 76438849, 2006 WL 2263327 (T.T.A.B. Jul. 20, 2006)
(nonprecedential) ...................................................................................................53, 54

*In re Detroit Rivertown Brewing Co.*, No. 86640818, 2017 WL 3446792 (T.T.A.B. Jul. 10, 2017)
(nonprecedential) ..........................................................................................................54

*In re Dial–A–Mattress Operating Corp.*, 240 F.3d 1341, 57 U.S.P.Q.2d 1807 (Fed. Cir. 2001) ........43

*In re Gibson Guitar Corp.*, 61 U.S.P.Q.2d 1948 (T.T.A.B. 2001) .......................................52

*In re Gould Paper Corp.*, 834 F.2d 1017, 5 U.S.P.Q.2d 1110 (Fed. Cir. 1987) ...........45, 50

*In re Hollywood Lawyers Online*, 110 U.S.P.Q.2d 1852 (T.T.A.B. 2014) ...........................49

*In re Interstate Folding Box Co.*, 167 U.S.P.Q. 241 (T.T.A.B. 1970) ..................................52

*In re Joint-Stock Co. Baik*, 80 U.S.P.Q.2d 1305 (T.T.A.B. 2006) .......................................44

*In re JT Tobacconists*, 59 U.S.P.Q.2d 1080 (T.T.A.B. 2001) ..............................................49

*In re McO Props. Inc.*, 38 U.S.P.Q.2d 1154 (T.T.A.B. 1995) .............................................44

*In re Nat'l Shooting Sports Found.*, 219 U.S.P.Q. 1018 (T.T.A.B. 1983) ......................49, 50

*In re Opryland USA Inc.*, 1 U.S.P.Q.2d 1409 (T.T.A.B. 1986) ...........................................49

*In re Packaging Specialists, Inc.*, 221 U.S.P.Q. 917 (T.T.A.B. 1984) ................................................53

*In re S. Park Cigar, Inc.*, 82 U.S.P.Q.2d 1507 (T.T.A.B. 2007) ....................................................46, 48

*In re Shutts*, 217 U.S.P.Q. 363 (T.T.A.B. 1983) ...................................................................................49

*In re Southland Corp.*, 162 U.S.P.Q. 465 (T.T.A.B. 1969) ....................................................................49

*In re Steelbuilding.com*, 415 F.3d 1293, 75 U.S.P.Q.2d 1420 (Fed. Cir. 2005) ............................51, 52

*In re Sun Microsystems, Inc.*, 59 U.S.P.Q.2d 1084 (T.T.A.B. 2001)......................................................50

*In re Tennis in the Round Inc.*, 199 U.S.P.Q. 496 (T.T.A.B. 1978) ......................................................49

*In re White Jasmine LLC*, No. 77115548, 2013 WL 2951788 (T.T.A.B. Mar. 5, 2013)....................54

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 U.S.P.Q.2d 1129 (Fed. Cir. 2015) ....................................................................35, 36

*Jimlar Corp. v. Army & Air Force Exch. Serv.*, 24 U.S.P.Q.2d 1216 (T.T.A.B. 1992) .....................36

*King Candy Co. v. Eunice King's Kitchen*, 496 F.2d 1400, 182 U.S.P.Q. 108 (C.C.P.A. 1974) ........40

*Laura Scudder's v. Pac. Gamble Robinson Co.*, 136 U.S.P.Q. 418 (T.T.A.B. 1962) .............34, 35, 36

*Mag Instrument, Inc. v. Brinkmann Corp.*, 96 U.S.P.Q.2d 1701 (T.T.A.B. 2010)............................53

*Marshak v. Treadwell*, 58 F. Supp. 2d 551 (D.N.J. 1999), *aff'd*, 240 F.3d 184 (3rd Cir. 2001) .........38

Presto Prods. Inc. v. Nice-Pak Prods. Inc., 9 U.S.P.Q.2d 1895 (T.T.A.B. 1988) ...............................33

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) ...................................35

*Sarco Creek Ranch v. Greeson*, 36 F. Supp. 3d 726 (S.D. Tex. 2014)...................................................44

*Sendor v. Where to Dine In, LLC*, No. 91195538, 2010 WL 11413794 (T.T.A.B. Dec. 16, 2010) (nonprecedential) ............................................................................................................................50

*SurgiVision Consultants, Inc. v. SurgiVision, Inc.*, No. CV 10–03024 MMM (FFMx), 2011 WL 13214280 (C.D. Cal. Jan. 31, 2011) .................................................................................................38

*Target Brands, Inc. v. Hughes*, 85 U.S.P.Q.2d 1676 (T.T.A.B. 2007) .................................................53

*Towers v. Advent Software, Inc.*, 913 F.2d 942, 16 U.S.P.Q.2d 1039 (Fed. Cir. 1990).....................27

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918) ........................................................29

*Vacuum-Elecs. Corp. v. Elecs. Eng'g Co. of Cal.*, 150 U.S.P.Q. 215 (T.T.A.B. 1966) .....................36

*Zirco Corp. v. Am. Tel. & Telegraph Co.*, 21 U.S.P.Q.2d 1542 (T.T.A.B. 1991) ...............................28

**Other Authorities**

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17:26 (5th ed. 2020)....................................................................................................34, 44

37 C.F.R. § 2.128 (2019). .............................................................................................7

T.B.M.P. § 801.03............................................................................................................7

T.M.E.P. § 1209.03(d) ...............................................................................................49

T.M.E.P. § 1210.02(a) ................................................................................................48

T.M.E.P. § 1210.02(b)(i) ...........................................................................................46

T.M.E.P. § 1210.02(c)(ii)...........................................................................................49

T.M.E.P. § 1212.06(e)(ii)...........................................................................................52

## I.    DESCRIPTION OF THE RECORD

Pursuant to Rule 2.128(b) of the Trademark Rules of Practice and T.B.M.P. § 801.03, Applicant Apple Inc. ("Apple") provides the following description of the record:

1.    Stipulation regarding the authenticity of certain documents and the admissibility of certain discovery depositions, filed by the Parties on May 29, 2019, as 53 TTABVUE;

2.    Trial Declaration of Charles Bertini ("Bertini Decl.") and Exhibits, filed by Opposer Charles Bertini ("Opposer") on December 20, 2019, as 59 through 61 TTABVUE; and Opposer's Notices of Reliance ("N.R."), filed by Opposer on December 20 and 21, 2019, as 62 through 66 TTABVUE;

3.    Declaration of Jeffrey Vaughan Jones ("Jones Decl."), Exhibits, and Confidential Exhibits, filed by Apple on February 20, 2020, as 71 and 72 TTABVUE; Declaration of Thomas R. La Perle, Esq. ("La Perle Decl."), Exhibits, and Confidential Exhibits, filed by Apple on February 21, 2020, as 83 through 85 TTABVUE; and Apple's Notices of Reliance and Confidential Supporting Evidence, filed by Apple on February 20 and 21, 2020, as 67 through 70 TTABVUE and 73 through 82 TTABVUE;

4.    Rebuttal Trial Declaration of Charles Bertini ("Bertini Rebuttal Decl.") and Exhibits, filed by Opposer on April 5, 2020, as 86 TTABVUE; and Opposer's Rebuttal Notices of Reliance, filed by Opposer on April 6, 2020, as 87 TTABVUE and 88 TTABVUE.

Apple has filed its Statement of Evidentiary Objections as an Appendix to this document.

## II.    ISSUES PRESENTED

1.    Whether Apple has absolute priority in its APPLE MUSIC mark over Opposer's unregistered use of his claimed APPLE JAZZ mark, which commenced no earlier than June 5,

1985, given Apple's and its predecessor's use of APPLE in connection with the production and distribution of sound recordings by The Beatles and many others as early as August 1968.

2.    Whether Opposer's claimed mark is protectable in the first instance in light of its primarily geographically descriptive nature and Opposer's failure to prove secondary meaning.

## III.    INTRODUCTION

Apple and its predecessor Apple Corps Limited ("Apple Corps") have used the APPLE word mark in connection with the production and distribution of sound recordings and films for over 50 years. Apple's longstanding rights in connection with these services are rooted in rights Apple acquired from Apple Corps, the record label formed in 1968 by The Beatles, arguably the most famous and influential musical group of all time. Accordingly, in adopting and seeking to register the mark at issue here, APPLE MUSIC, in connection with the production and distribution of sound recordings and television programs (among other music-related services), Apple is drawing upon substantial goodwill developed over ***more than 50 years of commercial activity***.

Opposer disputes Apple's priority, claiming to be the prior user by virtue of allegedly using the mark APPLE JAZZ in connection with a once-a-year jazz music festival in upstate New York's "apple country."[1] The festival first took place about 17 years ***after*** Apple Corps first began distributing sound recordings and films in the United States under the APPLE word mark, and it last took place in 2014.[2] Opposer, a self-described "Beatles fan," applied to register the APPLE JAZZ mark in June 2016.[3] He did so despite—and with full knowledge of—Apple's longstanding conflicting rights in the APPLE trademark for a broad array of music and enter-

---

[1] 59 TTABVUE 2-3 (Bertini Decl. ¶¶ 3-6).
[2] 73 TTABVUE 12 (Apple's Fifth N.R., Bertini Dep. Tr. 31:19-32:5).
[3] 66 TTABVUE Ex. 132 (Opposer's N.R. on Official Records).

APPLICANT APPLE INC.'S TRIAL BRIEF                                                      8
*Charles Bertini v. Apple Inc.*

tainment services.[4] Predictably, the Examining Attorney refused registration to Opposer's APPLE JAZZ mark because of Apple's prior rights in the APPLE mark.[5] Opposer then retaliated by: (i) commencing this opposition against Apple's application to register the APPLE MUSIC mark; and (ii) filing Cancellation No. 92068213 against Apple's Registration No. 4,088,195 of the APPLE mark, which is one of three of Apple's registrations cited by the Examining Attorney in refusing registration of Opposer's APPLE JAZZ mark.[6]

As explained in more detail below, the Board should dismiss this opposition because Opposer has failed to prove his priority of rights for two independent reasons. First, the record evidence and testimony demonstrate that Apple has prior rights dating back to Apple Corps' August 1968 adoption and use of the APPLE mark in commerce. Especially because of the generic (and disclaimed) nature of "MUSIC," the APPLE mark and the APPLE MUSIC mark create the same commercial impression. Likewise, Apple and Apple Corps have produced and distributed sound recordings and films under the APPLE mark since long prior to Opposer's June 5, 1985, claimed date of first use. Because Apple is entitled to tack its rights to those of Apple Corps, Apple enjoys absolute priority of rights as between the parties under such authority as *H. Betti Indus. v. Brunswick Corp.*, 211 U.S.P.Q. (BNA) 1188 (T.T.A.B. 1981), including with respect to services recited in the Application that are closely related to the production and distribution of sound recordings.

Second, Opposer's claimed unregistered APPLE JAZZ mark lacks the distinctiveness necessary to qualify as protectable in the first instance. The record and Opposer's trial brief alike are replete with admissions against interest that Opposer's claimed mark would be understood in

---

[4] 73 TTABVUE 7, 8, 21-22, 32 (Apple's Fifth N.R., Bertini Dep. Tr. 12:20-21, 16:21-24, 68:24-69:3, 109:3-16).
[5] 66 TTABVUE Ex. 130 (Opposer's N.R. on Official Records).
[6] 78 TTABVUE Exs. B, C, D.

APPLICANT APPLE INC.'S TRIAL BRIEF                                                    9
*Charles Bertini v. Apple Inc.*

the region where the mark is used to refer to "the jazz genre of music" and "the apple producing region of Central New York and in Cortland, New York, home of the Cortland apple."[7] That claimed mark therefore is primarily geographically descriptive and unprotectable unless Opposer can prove by a preponderance of the evidence and testimony that the term has achieved secondary meaning. Opposer's sporadic use and *de minimis* promotion of his claimed mark prior to the filing date of Apple's application prevents him from making such a showing. The Board therefore need not address Opposer's allegations of likely confusion between the parties' marks.

## IV.    STATEMENT OF FACTS

### A.    U.S. Production and Distribution of Sound Recordings Featuring The Beatles

The British musical group The Beatles is one of the most celebrated and successful bands of all time.[8] Shortly after The Beatles was formed, its members—John Lennon, George Harrison, Paul McCartney, and Ringo Starr—jointly formed The Beatles Limited, which changed its name to Apple Corp Limited on February 9, 1968.[9] Apple Corps functioned as The Beatles' record label, producing and distributing some of the most famous sound recordings ever made.[10] Apple Corps adopted the APPLE word mark and the visual equivalents shown below (collectively, the "APPLE Mark") as service marks:[11]

 

**Whole Apple Design Mark**    **Half Apple Design Mark**

---

[7] *See, e.g.*, 89 TTABVUE 10 (Opposer's Trial Brief ("Opp. Br.")).
[8] 71 TTABVUE 3 (Jones Decl. ¶ 2).
[9] 71 TTABVUE 3 (Jones Decl. ¶ 3).
[10] 71 TTABVUE 3-4 (Jones Decl. ¶ 4).
[11] 71 TTABVUE 5-6 (Jones Decl. ¶ 12).

Under the APPLE Mark, Apple Corps (and its affiliates and licensees) produced and distributed sound recordings for The Beatles and such other famous recording artists as James Taylor, Badfinger, and Billy Preston.[12] Owing to The Beatles' enduring popularity and influence, Apple Corps continues to engage in these same activities today under license from Apple, its successor in interest and the owner of the APPLE Mark.[13]

As Apple Corps' Chief Executive Officer, Jeffrey Vaughan Jones, testified, "[s]ince 1968, Apple Corps has continuously used the APPLE word mark in connection with the production and/or distribution of sound recordings and film in the United States."[14] As summarized in Mr. Jones's declaration, the following landmark Beatles singles and albums were distributed in the U.S. under the APPLE mark: *Hey Jude*, *Revolution*, *Get Back*, *Don't Let Me Down*, *Come Together*, *Abbey Road*, and *Let It Be*.[15] Examples of such branding include the following iconic album artwork:

 

Apple Corps' activities also extended to the production and distribution of films. Specifi-

---

[12] 71 TTABVUE 3-4 (Jones Decl. ¶¶ 4-5).
[13] 71 TTABVUE 4, 7 (Jones Decl. ¶¶ 6, 7, 15).
[14] 71 TTABVUE 8 (Jones Decl. ¶ 18).
[15] 71 TTABVUE 11 (Jones Decl. ¶ 23).

cally, during the 1960s and into the 1970s, Apple Corps, its affiliates and licensees, and The Beatles were involved in the production and distribution of several films featuring music by The Beatles, including (a) three "action films," *A Hard Day's Night*, *Help!*, and *Magical Mystery Tour*; (b) *Let It Be*, a documentary film about The Beatles; and (c) the animated film *Yellow Submarine*.[16] Films featuring The Beatles have been continuously shown in theaters and on television in the United States since the 1960s.[17] Additionally, several of those films were released on VHS when the format became available.[18] For example, in 1981, the Academy Award- and Grammy Award-winning film, *Let It Be*, was released in the United States on VHS, Betamax, and VideoDisc, and it bore the APPLE word mark:[19]



As summarized in Mr. Jones's testimony, Apple Corps' use of the APPLE mark in the U.S. continued during the CD and DVD eras:

- In 1993, CD versions of *The Beatles 1962-1966* and *The Beatles 1967-1970*, known as

---

[16] 71 TTABVUE 4 (Jones Decl. ¶ 5).

[17] 71 TTABVUE 4, 29 (Jones Decl. ¶¶ 5, 41). In fact, at least one publication documents the television broadcast in the United States of the *Magical Mystery Tour* film on December 6, 1985. 69 TTABVUE 23 (Apple's Third N.R. at APPLE002877).

[18] 71 TTABVUE 4 (Jones Decl. ¶ 5).

[19] 71 TTABVUE 30-31, 250-56 (Jones Decl. ¶ 42 & Ex. 12). Copies of the *Let It Be* film featuring the APPLE word mark on the cover continued to be sold in the United States throughout the 1980s, as demonstrated by the confidential royalty reports for the periods ending June 30, 1984 and September 30, 1984, attached as Exhibit 13 to Mr. Jones's declaration. 72 TTABVUE 5-6 (Jones Decl. Confidential Ex. 13).

the "Red" and "Blue" albums, respectively, were released for the first time in the United States, with both releases featuring the APPLE word mark.[20]

- In 1995 and 1996, the Apple Corps label released new compilation albums entitled *The Beatles Anthology Parts I, II, and III*, which were distributed under the APPLE word mark in large quantities in the United States and worldwide.[21]

- In November 2000, the Apple Corps label released in the United States another new The Beatles compilation album under the APPLE word mark. The album, entitled *1*, featured The Beatles songs that had reached number 1 on the U.K. or U.S. music charts upon their initial releases between 1963 and 1970.[22]

- In the mid-1990s, Apple Corps released *The Beatles Anthology* as an eight-cassette VHS box set, and in April 2003, Apple Corps released it as a five-disc DVD set.[23]

- In February 2004, Apple Corps released under the APPLE mark a DVD entitled *The First U.S. Visit* in connection with The Beatles' first American tour.[24]

- Acting through its licensees, Apple Corps launched its The Beatles Store U.S. ecommerce website in or about 2006, which thereafter offered for sale various goods bearing the APPLE word mark, including CDs containing sound recordings.[25]

- In September 2009, Apple Corps released in the United States under the APPLE mark the video game *The Beatles: Rock Band*, which features 45 The Beatles songs to which players can sing and play along.[26]

---

[20] 71 TTABVUE 14-16 (Jones Decl. ¶ 25).
[21] 71 TTABVUE 20-21, 75-89 (Jones Decl. ¶ 28 & Ex. 6).
[22] 71 TTABVUE 21, 90-94 (Jones Decl. ¶ 29 & Ex. 7).
[23] 71 TTABVUE 31, 258-66 (Jones Decl. ¶ 44 & Ex. 14).
[24] 71 TTABVUE 32, 267-70 (Jones Decl. ¶ 45 & Ex. 15).
[25] 71 TTABVUE 21-22, 97-129 (Jones Decl. ¶ 32 & Ex. 9).
[26] 71 TTABVUE 21, 95-96 (Jones Decl. ¶ 31 & Ex. 8).

APPLICANT APPLE INC.'S TRIAL BRIEF                                                    13
*Charles Bertini v. Apple Inc.*

Apple Corps' distribution of The Beatles-related sound and video recordings released under the Apple Corps label and the APPLE word mark continues to this day.[27] Most recently, Apple Corps announced a collaboration with Academy Award-winning director, Sir Peter Jackson, to produce a new documentary film about the making of The Beatles' final album, *Let It Be*.[28]

### B.    U.S. Production and Distribution of Sound Recordings Featuring Individual Members of The Beatles and Other Famous Musical Artists

Numerous other acclaimed musicians had their sound recordings released under the Apple Corps label, including James Taylor, Mary Hopkin, Badfinger, Billy Preston, and Doris Troy.[29] Additionally, the individual members of The Beatles released solo recordings and collaborations under the Apple Corps label.[30] That list of recordings includes such seminal sound recordings as *Carolina in My Mind* by James Taylor, *All Things Must Pass* by George Harrison, *McCartney* by Paul McCartney, *John Lennon & Plastic Ono Band* by John Lennon/Plastic Ono Band, *Ram* by Paul and Linda McCartney, *Imagine* by the John Lennon/Plastic Ono Band, *Mind Games* by John Lennon, *Ringo* by Ringo Starr, *Band on the Run* by Paul McCartney and Wings, *Walls and Bridges* by John Lennon, and *Shaved Fish* by John Lennon/Plastic Ono Band.[31]

While these recordings were initially released between 1969 and 1975, substantial quantities of sound recordings issued under the Apple Corps label and bearing the APPLE word mark continued to be sold around the world (including in the United States) throughout the entire decades of the 1970s and 1980s.[32] Examples of the APPLE word mark branding used on such recordings distributed in the United States in the time period immediately preceding Opposer's al-

---

[27] 71 TTABVUE 4 (Jones Decl. ¶ 6).
[28] 71 TTABVUE 4 (Jones Decl. ¶ 6).
[29] 71 TTABVUE 22 (Jones Decl. ¶ 33).
[30] 71 TTABVUE 22-25 (Jones Decl. ¶ 34).
[31] 71 TTABVUE 22-25 (Jones Decl. ¶ 34).
[32] 71 TTABVUE 26 (Jones Decl. ¶ 35).

leged adoption of his APPLE JAZZ mark, namely the period January 1, 1983 through December 31, 1985, are set forth in Mr. Jones's unrebutted trial testimony. Those examples include George Harrison, *All Things Must Pass* (below left) and John Lennon/Plastic Ono Band, *Shaved Fish* (below right).[33]



### C.    Opposer Mischaracterizes the Record

Opposer cannot and, in fact, does not challenge Apple Corps' production and distribution of sound recordings in the U.S. in connection with the APPLE Mark in the 1960s and 1970s. Instead, and improperly relying on Wikipedia,[34] Opposer contends that after The Beatles' recording contract ended in 1976, the Apple label was "wound up" and there were no releases between December 8, 1975, and December 1, 1994.[35]

Of course, there were no *new* sound recordings by The Beatles after they disbanded, but as detailed in Mr. Jones's testimony, *previously recorded* The Beatles albums almost certainly

---

[33] 71 TTABVUE 26 (Jones Decl. ¶ 37).
[34] Opposer's repeated reliance on Wikipedia in connection with his core arguments on priority is the subject of an objection detailed below. *See* Appendix.
[35] 89 TTABVUE 21 (Opp. Br. at 20).

were continuously distributed in the United States bearing the APPLE word mark during the early 1980s, including such blockbuster Beatles albums as *Let It Be, 1962-1966*, *1967-1970*, *Hey Jude*, *The Beatles Collection*, and *Yellow Submarine*.[36] Indeed, as explained in Mr. Jones's trial testimony, releases of extraordinarily popular recordings, such as recordings by The Beatles, are both manufactured (or "pressed," to use a term popular when music was primarily distributed through vinyl records) and distributed for many years after the initial release.[37] In fact, The Beatles recordings are "evergreen," meaning versions of those recordings have been continuously available every year after their original release.[38]

Mr. Jones acknowledges that distribution of sound recordings bearing the APPLE word mark and Apple Corps logo diminished in the 1980s. This was because Apple Corps' U.S. distributor, Capitol Records ("Capitol"), was at that time enmeshed in litigation with Apple Records, a U.S. subsidiary of Apple Corps, regarding allegations that Capitol failed to make certain payments to Apple Corps for albums sold in the United States.[39] Further, as Mr. Jones noted, it is very difficult to find contemporaneous records of use of the APPLE Mark from nearly forty years ago. However, Apple Corps was able to gather substantial evidence establishing that re-releases and additional pressings of sound recordings were distributed in the United States under the APPLE word mark from 1983 to 1985, including, as noted above, famous recordings by former member of The Beatles George Harrison (*All Thing Must Pass*, on cassette) and John Lennon (*Shaved Fish*, on vinyl). In sum, the record evidence overwhelmingly establishes Apple Corps' continuous use of the APPLE word mark in connection with the production and distribution of sound recordings and film since 1968.

---

[36] 71 TTABVUE 20 (Jones Decl. ¶ 27).
[37] 71 TTABVUE 9-10 (Jones Decl. ¶ 21).
[38] 71 TTABVUE 9-10 (Jones Decl. ¶ 21).
[39] 71 TTABVUE 19-20, 68-74 (Jones Decl. ¶ 26 & Ex. 5).

APPLICANT APPLE INC.'S TRIAL BRIEF                                    16
*Charles Bertini v. Apple Inc.*

### D.    Apple and Its Long Association with Music

Apple is one of the most renowned technology companies in the world.[40] Over its more than 40-year history, Apple has earned a reputation for developing innovative, consumer-focused technologies and services.[41] Even at its inception, Apple delivered transformative offerings, beginning with products that ignited the personal computer revolution. Since then, Apple has dramatically expanded its array of products and services, which have transformed multiple fields—including, of course, music.[42] Apple's offerings include such revolutionary technologies as its iPhone, iPad, iPod, Mac, and Apple Watch branded products, the iOS, macOS, watchOS, and tvOS operating systems, and accessory, support, mobile payment, and educational offerings.[43]

Since at least 1977, Apple has extensively used its famous APPLE word mark and its visual equivalent (the "Apple Logo") as depicted below in black and white.[44]



Apple has always prominently displayed these marks on its products or packaging.[45] Apple also uses these marks in connection with all or nearly all of its services and advertisements, and prominently displays these marks at Apple's brick-and-mortar retail stores.[46]

Apple has long been associated with goods and services relating to music. As Apple's Chief Executive Officer Tim Cook remarked, "we [at Apple] love music . . . We've had a long

---

[40] 83 TTABVUE 4 (La Perle Decl. ¶ 7).
[41] 83 TTABVUE 4 (La Perle Decl. ¶ 7).
[42] 83 TTABVUE 4 (La Perle Decl. ¶ 7).
[43] 83 TTABVUE 4 (La Perle Decl. ¶ 8).
[44] 83 TTABVUE 4 (La Perle Decl. ¶ 9).
[45] 83 TTABVUE 4 (La Perle Decl. ¶ 9).
[46] 83 TTABVUE 4 (La Perle Decl. ¶ 9).

relationship with music at Apple and music has had a very rich history of change, some of which we [at Apple] played a part in."[47] Starting in the late 1980s, for example, Apple jumpstarted the integration of music and technology by introducing Apple branded computers featuring Musical Instrument Digital Interface ("MIDI") card and audio-recording capabilities.[48] This functionality simply and reliably allowed communications between Apple's computer devices and musical instruments, and ushered in the digital age of music recording and playback.

Since the 1980s, Apple has used the APPLE mark in connection with its computers' and mobile devices' audio player and audio-recording functionalities.[49] Indeed, the popularity of Apple products in connection with sound recordings is such that Opposer conceded at his deposition that "[m]ost of the studios where I record and produce records use Apple products."[50] He then noted that Apple "ha[s] really the best hardware, software for music recording."[51]

In 1991, Apple launched its QuickTime software, a program facilitating the creation and distribution of combined video, graphics, and sound. This software pioneered the distribution of multimedia content and enabled users to efficiently playback audio and video formats.[52] In 1999, Apple began offering users streamed content, *i.e.*, content played on a user's computer as it is delivered, as opposed to being stored on the computer and played later.[53] That content, which was played using Apple's QuickTime player, included independent-label music and short films. By April 2000, users had downloaded Apple's QuickTime software over 32 million times and enjoyed over 40 premium channels of music, video and news from leading content providers. At

---

[47] 83 TTABVUE 20-21 (La Perle Decl. ¶ 53).
[48] 83 TTABVUE 14 (La Perle Decl. ¶ 33).
[49] 83 TTABVUE 14 (La Perle Decl. ¶ 34).
[50] 73 TTABVUE 21 (Apple's Fifth N.R., Bertini Dep. Tr. 68:20-21).
[51] 73 TTABVUE 21-22 (Apple's Fifth N.R., Bertini Dep. Tr. 68:24-69:1).
[52] 83 TTABVUE 14 (La Perle Decl. ¶ 35).
[53] 83 TTABVUE 15 (La Perle Decl. ¶ 36).

all relevant times, Apple used the APPLE mark in connection with all of these offerings.[54]

Apple further revolutionized the music industry by introducing its pioneering iPod player and iTunes suite of technologies and services.[55] On January 9, 2001, Apple announced its iTunes service, "the world's best and easiest to use 'jukebox' software," which let users create and manage their own music library by importing songs from CDs, compressing them into MP3 format, storing them on their computer's hard drive, burning their own audio CDs, and organizing their music using powerful searching and browsing tools and play lists.[56] Steve Jobs, Apple's CEO, predicted that the iTunes service would "bring even more people into the digital music revolution,"[57] and it has. Apple went on to launch its iTunes Music Store (now called the iTunes Store) on April 28, 2003, pioneering digital media services by publishing and distributing online an unrivaled and comprehensive catalog of music and audiobooks.[58]

These offerings transformed music by overcoming the limitations of earlier media technologies, sparking the digital media revolution and popularizing online downloading and streaming services, which are now ubiquitous.[59] Apple since has expanded its publishing and distribution of digital media beyond music and audiobooks to include exclusive and original media, such as podcasts, movies and television shows, and educational materials, books, and news.[60] These services have all achieved meteoric commercial success and the Apple brand is now synonymous with digital media services.[61]

---

[54] 83 TTABVUE 15 (La Perle Decl. ¶ 37).
[55] 83 TTABVUE 15 (La Perle Decl. ¶ 38).
[56] 83 TTABVUE 15-16 (La Perle Decl. ¶ 39).
[57] 83 TTABVUE 16 (La Perle Decl. ¶ 39).
[58] 83 TTABVUE 16 (La Perle Decl. ¶ 40).
[59] 83 TTABVUE 15 (La Perle Decl. ¶ 38).
[60] 83 TTABVUE 17 (La Perle Decl. ¶ 42).
[61] 83 TTABVUE 18 (La Perle Decl. ¶ 45).

Given Apple's steady expansion into music, as described in Mr. La Perle's declaration, conflict with Apple Corps was inevitable. In fact, and beginning shortly after Apple was formed in 1978, Apple and Apple Corps were involved in a series of trademark disputes concerning Apple's use of the APPLE mark and Apple Logo on goods and services relating to music.[62] The parties settled their differences in 2007, when Apple acquired Apple Corps' trademark and service mark rights in the APPLE Mark dating back to August 1968.[63] This included the APPLE word mark evidenced by Registration Nos. 2,034,964 and 3,317,089,[64] both of which cover sound recordings.[65] In return, Apple granted Apple Corps a license to continue using the marks, and Apple Corps' use, along with the associated goodwill, inures to Apple's benefit.[66]

Both Apple and Apple Corps have played instrumental roles in the creation and delivery of recorded music in a variety of media, making Apple the natural successor to Apple Corps' use and history. Since its adoption by Apple Corps in 1968, and continuing after Apple's acquisition in 2007, the APPLE Mark has been used for 52 years to identify the production and distribution

---

[62] 83 TTABVUE 18 (La Perle Decl. ¶ 46).

[63] 83 TTABVUE 19, 253-58 (La Perle Decl. ¶¶ 47-48 & Ex. 24 (assignment documents); 85 TTABVUE (La Perle Decl. Confidential Ex. 23).

[64] 83 TTABVUE 19, 253-58 (La Perle Decl. ¶ 48 & Ex. 24 (assignment documents); 85 TTABVUE 6, 10, 31, 33 (La Perle Decl. Confidential Ex. 23 at APPLE002108, APPLE002112, APPLE002133, APPLE002135); 71 TTABVUE 7 (Jones Decl. ¶ 15); 67 TTABVUE 7-10 (Apple's First N.R., Ex. A).

[65] Specifically, Registration No. 2,034,964, which has become incontestable, covers "Gramophone records featuring music; audio compact discs featuring music" in Class 9. Registration No. 3,317,089 covers the following goods in Class 9:

> Musical sound records; sound records featuring entertainment; sound records featuring music, musicians, documentaries, biographies, interviews, performances, reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, performances, reviews, drama and fiction; cinematographic films; musical sound recordings; musical video recordings; audio and visual recordings featuring or relating to music, entertainment and films; pre-recorded compact discs, gramophone records, video discs, DVDs, CD-ROMs and interactive compact discs, all featuring or relating to music and films; digitally recorded sound and video records; downloadable musical sound and video records; downloadable sound and video records featuring or relating to music, entertainment and films

67 TTABVUE 7-10 (Apple's First N.R., Ex. A); 67 TTABVUE 15-22 (Apple's First N.R., Ex. B).

[66] 83 TTABVUE 19 (La Perle Decl. ¶ 48); 71 TTABVUE 7 (Jones Decl. ¶ 15).

of sound recordings by a wide range of musical artists; only the medium has changed. As a result of this longstanding use, the APPLE Mark has acquired enormous value as a symbol of Apple's goodwill, making APPLE among the most famous and widely recognized marks in the world.[67]

Apple's broad array of entertainment services is the subject of a valid and subsisting in-contestable registration for the APPLE mark in Class 41. Apple's Registration No. 4,088,195, the application for which was filed on March 22, 2008, and which matured to registration on January 17, 2012, claims a date of first use of March 1981 and covers a number of entertainment ser-vices, including "production of live musical performances . . . providing live musical perfor-mances online via a global computer network . . . [and] providing prerecorded audio and audio-visual content, information and commentary in the fields of music, concerts, videos, movies, tel-evision" and other fields, "all via a global computer network.[68]

### E.  Apple's Launch of its APPLE MUSIC Service

On June 8, 2015, Apple unveiled its latest music-related offering, the APPLE MUSIC service.[69] This service is a watershed development in entertainment distribution for content pro-viders and consumers alike. The APPLE MUSIC service provides consumers with a personal "jukebox" of music purchased from Apple, with music and entertainment offerings including a subscription-based music streaming service that provides access to Apple's catalog, which had over 30 million songs at launch and now has 60 million songs, along with numerous playlists programmed by world-class music experts.[70] The APPLE MUSIC service has enjoyed tremen-dous commercial success. Since 2015, Apple has welcomed tens of millions of subscribers to its

---

[67] 83 TTABVUE 5-7 (La Perle Decl. ¶¶ 10-16).
[68] 67 TTABVUE 11-13, 23-26 (Apple's First N.R., Exs. A, B).
[69] 83 TTABVUE 8 (La Perle Decl. ¶ 19).
[70] 83 TTABVUE 8 (La Perle Decl. ¶ 19).

APPLICANT APPLE INC.'S TRIAL BRIEF                                                    21
*Charles Bertini v. Apple Inc.*

APPLE MUSIC services in 115 countries.[71]

On June 11, 2015, Apple applied to register APPLE MUSIC in Class 41, with priority to May 18, 2015, for services it specified by later amendment. Most notably for the priority issue at the core of this dispute, those services include the production and distribution of sound recordings and television programs, among other highly-related services:

> arranging, organizing, conducting, and presenting concerts, live performances, entertainment special events, arts and cultural events, theatrical entertainment, competitions, contests, fairs, festivals, and exhibitions; ***production, distribution***, and presentation of radio programs, ***television programs, and sound recordings***; providing ongoing television, radio, audio, video, podcast, and webcast programs; providing entertainment, sports, music, informational, and news programming by means of telecommunications networks; entertainment services, namely, providing streaming, subscription, and downloadable music platform and services; provision of live entertainment and recorded entertainment, namely, musical performances; providing non-downloadable entertainment, sports, music, informational, and news programming; providing websites and computer applications featuring entertainment, sports, music, informational, news, and arts and culture programming; providing websites and computer applications featuring information in the field of entertainment, music, sports, news, and arts and culture; providing information, schedules, reviews and personalized recommendations of entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; ticket reservation and booking services for entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; publication and presentation of reviews, surveys, and ratings, and providing interactive websites and computer applications for the posting and sharing of reviews, survey, and ratings relating to entertainment, arts and cultural events, concerts, live performances, competitions, fairs, festivals, and exhibitions; providing non-downloadable ringtones, pre-recorded music, video, and graphics for use on mobile communications devices; providing a website for the uploading, storing, sharing, viewing and posting of images, audio, videos, online journals, blogs, podcasts, and multimedia content; publication of books, periodicals, newspapers, newsletters, manuals, blogs, journals, and other publications; providing websites and computer applications featuring books, periodicals, newspapers, newsletters, manuals, blogs, journals, and other publications; news reporting

**F.　Opposer's Claimed Rights in APPLE JAZZ**

Opposer claims to have used his alleged APPLE JAZZ mark in connection with a once-a-

---

[71] 83 TTABVUE 12 (La Perle Decl. ¶ 25).

year jazz music festival in upstate New York's "apple country."[72] Opposer has repeatedly con-

firmed that he selected the APPLE JAZZ mark "since the jazz genre of music was being promot-

ed in apple country." The upstate region of New York—including the city and county named

"Cortland"—is known for its apple production, and the word "APPLE" is commonly used in that

region to refer to festivals and other cultural events. Opposer uses the word "apple" to refer to

the Cortland apple, and in turn, to the geographical area surrounding Cortland, New York. As he

testified in his deposition, "because [the band] was in Cortland county and Cortland apples are

part of Cortland county, we decided to call it Apple Jazz."[73] The word "JAZZ," in turn, refers to

the genre of music played by Opposer's band. Opposer made similar statements in his March 15,

2017 response to an Office Action in connection with his now suspended application for APPLE

JAZZ (Ser. No. 87/060,640):

> APPLE JAZZ began operation as a jazz band. The applicant's hometown — and the
> location of the annual APPLE JAZZ concerts held beginning at least as early as
> 1985 — was a City and County in Central New York State named Cortland. This part
> of New York is known for its apples, and New York State is the second largest apple-
> producing state after Washington. See www.nyapplecountry.com/varieties, and
> http://www.newyorkapplesales.com/about-us/about-nys-apples. Moreover, the Cort-
> land apple is one of the major apple varieties commonly found for sale throughout the
> United States. See https://en.wikipedia.org/wiki/Cortland(apple). Consequently, the
> word "apple" in the Applicant trademark refers to the fruit, and APPLE JAZZ was se-
> lected as the trademark since the jazz genre of music was being promoted in apple
> country.[74]

According to Opposer, he first offered the APPLE JAZZ festival in 1985, 17 years after

Apple Corps' first use of the APPLE Mark, and he last offered the festival six years ago, in

---

[72] 59 TTABVUE 2-3 (Bertini Decl. ¶¶ 3-6).

[73] 73 TTABVUE 9 (Apple's Fifth N.R., Bertini Dep. Tr. 19:5-8).

[74] 79 TTABVUE 140 (Apple's Seventh N.R.); *see also* 78 TTABVUE 22, 35, 205 (Petitions for Cancellation, No. 92068213 ¶ 3) ("APPLE JAZZ began operation as a jazz band with the location for its annual APPLE JAZZ concerts held in the City of Cortland, New York. New York State is the second largest apple-producing state and home of the Cortland apple. The word "apple" in the Petitioner's mark refers to the fruit, and APPLE JAZZ was selected as the service mark since the jazz genre of music was being promoted in apple country.").

2014.[75] While Opposer claims to have performed under the APPLE JAZZ mark since that time, *he has not produced any documents showing any performances of the Apple Jazz Band after 2017*. In fact, as itemized in Apple's evidentiary objections, Opposer has no properly admissible evidence demonstrating use of the APPLE JAZZ mark in connection with musical performances, given that his "evidence" of that use consists entirely of hearsay.

As for the services Opposer claims to have offered outside the context of the APPLE JAZZ festival, those services were sporadic and occurred much later than 1985. For example, Opposer claims he sold CDs at his performances beginning in 1993[76] and offered unspecified services relating to music on his website at AppleJazz.com "as early as 1998,"[77] although his un-verified printouts of Internet Archive copies of this website begin on October 5, 1999.[78] Opposer also claims he started an APPLE JAZZ record label in the 1990s, first to "promote [his] own re-cordings as an independent artist" and later to feature ten other musicians on the label.[79] Finally, Opposer claims he organized and promoted concerts for recording artists on the APPLE JAZZ label but has identified only two such concerts, with the last one taking place on November 3, 2018.[80]

Even when Opposer's alleged use of APPLE JAZZ to promote his music festival and re-lated services was most active, *that use was minimal at best*. At most, 600 people attended the annual festival in any given year,[81] and Opposer's ticket sales, total income, promotional expens-es, and total expenses were modest as a result. The following table, which is derived from the

---

[75] 73 TTABVUE 12 (Apple's Fifth N.R., Bertini Dep. Tr. 31:19-32:5).
[76] 73 TTABVUE 27 (Apple's Fifth N.R., Bertini Dep. Tr. 91:16-17).
[77] 59 TTABVUE 6 (Bertini Decl. ¶ 11).
[78] 59 TTABVUE 85-157 (Bertini Decl. Ex. 70).
[79] 73 TTABVUE 21, 25 (Apple's Fifth N.R., Bertini Dep. Tr. 68:20-21, 82:1-3).
[80] 86 TTABVUE 3 (Bertini Rebuttal Decl. ¶ 5(a)-(b)).
[81] 73 TTABVUE 215 (Apple's Fifth N.R., Bertini Dep. Tr. Ex. 40).

Exhibits in 61, 80, and 82 TTABVUE, summarizes Opposer's income, expenses, and promotional expenses[82] for all of his commercial activities under the APPLE JAZZ mark in the festival years—not just the services at issue in this proceeding[83]—based on the scant information produced by Opposer, which, as reflected in the numerous empty cells, is incomplete:

| Year | Attendance | Ticket Sales | Total Income | Promotional Expenses | Total Expenses |
|------|-----------|--------------|--------------|---------------------|----------------|
| 1985 | | $1,544.50 | | $180 | |
| … | | | | | |
| 1991 | 373 | $4,116 | $3,434.85 | | $75 |
| … | | | | | |
| 1993 | "more than 300" | | | | |
| … | | | | | |
| 1995 | | | ▉ | | ▉ |
| 1996 | | ▉ | ▉ | ▉ | ▉ |
| 1997 | | | ▉ | ▉ | ▉ |
| 1998 | | | ▉ | ▉ | ▉ |
| 1999 | | | ▉ | ▉ | ▉ |
| 2000 | | | ▉ | | ▉ |
| 2001 | | ▉ | ▉ | ▉ | ▉ |
| 2002 | | ▉ or (discrepancy) | ▉ | ▉ | ▉ |
| 2003 | 300 or 600 (discrepancy) | ▉ | ▉ | ▉ | ▉ |

[82] For completeness, this table summarizes expenses identified in Opposer's documents as "promo" expenses for "AppleJazzFest" and "AppleJazzRecrds." However, at least some of these expenses appear to be for promotional merchandise sold at the festival (*i.e.*, after an attendee has already purchased a ticket) and thus are not related to advertising the festival *per se*. Additionally, as noted above, expenses for AppleJazzRecrds include expenses for Opposer's goods and services not at issue in this proceeding, including maintenance fees for the AppleJazz.com website, which Opposer has used for other purposes, including promotion of albums. *See* 59 TTABVUE 85-157 (Bertini Decl. Ex. 70).

[83] As an example, these figures appear to include album sales (or what the documents refer to as "Deposit Royalties"). Yet, in opposing Apple's Motion to Compel, Opposer argued that his sale of goods under the APPLE JAZZ mark are "irrelevant" to this proceeding, but he was unable to separate his income and expenses relating to these irrelevant goods. *See* 56 TTABVUE 5 ("Requests Nos. 12 and 14 refer in part to sales of products, but this trademark dispute is about use of marks in commerce for services in Class 41. Consequently, this part of Nos. 12 and 14 is irrelevant.").

| Year | Attendance | Ticket Sales | Total Income | Promotional Expenses | Total Expenses |
|------|-----------|--------------|--------------|---------------------|----------------|
| 2004 | | ██████ | █████ | █████ | ██████ |
| 2005 | 600 (estimated) | ██████ or (discrepancy) | █████ | █████ | █████ |
| 2006 | | ██████ | | █████ | ██████ |
| 2007 | | ██████ | | ██████ | ██████ |
| 2008 | | ██████ or (discrepancy) | █████ | █████ | ██████ |
| 2009 | | █████ | █████ | ██████ | ██████ |
| 2010 | | ██████ | █████ | ██████ | ██████ |
| 2011 | 200 (expected) | █████ or (discrepancy) | █████ | ████ | ██████ |
| 2012 | 250 (expected) | ████████ | █████ | ████ | ██████ |
| 2013 | | ████ | ████ | ██ | █████ |
| 2014 | 200 (expected) | ██████ or (discrepancy) | █████ | ██ | ██████ |

After the last APPLE JAZZ festival in 2014, Opposer alleges he performed three times under the APPLE JAZZ mark in Upstate New York—once in 2015, once in 2016, and once in 2017. The income and expenses associated with these performances was minimal as well, given Opposer's total income and total expenses in those years, which (again) are not limited to those associated with the APPLE JAZZ performances:

| Year | Total Income | Total Expenses |
|------|--------------|----------------|
| 2015 | █████ | █████ |
| 2016 | █████ | █████ |
| 2017 | █████ | █████ |

Opposer has not produced documents or information showing any APPLE JAZZ performances after 2017. While Opposer did document income and expenses for 2018, nothing in those documents establishes any link between Opposer's income and expense figures and his claims to ren-

der services relating to concerts, live musical performances, musical events, or arts and cultural events under the APPLE JAZZ mark.[84]

In sum, Opposer may have discontinued use of the APPLE JAZZ mark in 2017, but even if he could demonstrate continuous use since his claimed first use date of June 5, 1985, he cannot prove, by a preponderance of the evidence, that consumers *ever* associated APPLE JAZZ exclusively with Opposer—whether in 1985 or at any point thereafter. Yet, Opposer now seeks to interrupt Apple's longstanding use and impair Apple's long prior rights based on commercial activities that were *de minimis* even at their high water mark. Opposer cannot succeed under the applicable law, as applied to the ample evidence of record.

## V.     ARGUMENT

### A.     Apple Has Absolute Priority in the APPLE Mark for Production And Distribution of Sound Recordings.

To prove his claim under Section 2(d), Opposer must first prove priority—that is, Opposer's ownership of a "mark or trade name previously used in the United States . . . and not abandoned." 15 U.S.C. § 1052(d). This is a "heavy" burden because Opposer does not own a federal registration. *See Brunswick*, 211 U.S.P.Q. at 1197 ("[T]he burden on opposer in respect of its priority is a heavy one, since it does not rely on registrations . . . ."); *see also Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 1359, 57 U.S.P.Q.2d 1720, 1721-22 (Fed. Cir. 2001) (placing burden on opposer to prove prior rights to unregistered mark); *Towers v. Advent Software, Inc.*, 913 F.2d 942, 945, 16 U.S.P.Q.2d 1039, 1042 (Fed. Cir. 1990) ("The Board did not

---

[84] Opposer has referenced a Cloud Service License Agreement between AppleJazz Music and Apple. *See* 89 TTABVUE 16 (Opp. Br. at 15). That agreement addresses only the license of musical compositions for a cloud service feature of Apple's iTunes Store, by which customers who have purchased or uploaded sound recordings embodying the musical compositions owned by the licensor may download and access such recordings on other devices. *See* 86 TTABVUE 186-196 (Bertini Rebuttal Decl. Ex. 27). That agreement therefore has no bearing on consumer impressions of Opposer's alleged mark. Further, any royalties potentially generated from this agreement would have been very low.

err in requiring [the opposer] to show that his descriptive term had acquired secondary meaning before [the applicant] adopted its mark.").[85]

Opposer cannot satisfy this heavy burden because the evidence of record clearly establishes Apple's absolute priority in the APPLE mark through Apple's predecessor Apple Corps for production and distribution of sound recordings and film since at least August 1968—approximately 17 years prior to Opposer's claimed date of first use. Apple is entitled to tack its APPLE MUSIC mark to its longstanding use and registration of APPLE because the two marks are legal equivalents, "MUSIC" being generic for services relating to music. That being the case, Apple's absolute priority extends to each of the services in its APPLE MUSIC application, given the close relationship in consumers' minds between Apple's long prior use and registration of APPLE for production and distribution of sound recordings and film and the identical and closely-related services Apple intends to render (and already does render) under its APPLE MUSIC mark. Indeed, given the strength of this association, it is "inconceivable" that a consumer would associate Apple's services under the APPLE MUSIC mark with anyone other than Apple—including this Opposer. *See Brunswick*, 211 U.S.P.Q. at 1198.

### 1. Apple Has Prior Rights in APPLE for Production and Distribution of Sound Recordings and Film Dating to At Least August 1968.

While "an intent-to-use applicant can rely upon [his filing] date in an opposition brought by a third party asserting common law rights," *Zirco Corp. v. Am. Tel. & Telegraph Co.*, 21 U.S.P.Q.2d 1542, 1544 (T.T.A.B. 1991), the applicant may establish an earlier priority date

---

[85] Thus, although Apple has pleaded a lack of distinctiveness as an affirmative defense, doing so "was unnecessary, since establishing that its unregistered mark is distinctive is an element of Opposer's case in chief and Applicant need not have pleaded descriptiveness and lack of acquired distinctiveness to put Opposer on notice that evidence of these issues might be entered at trial by Applicant to counter any evidence of distinctiveness presented by Opposer." *RxD Media, LLC v. IP Application Dev. LLC*, 125 U.S.P.Q.2d 1801, 1803 (T.T.A.B. 2018).

through actual use. *Corp. Document Servs. Inc. v. I.C.E.D. Mgmt. Inc.*, 48 U.S.P.Q.2d 1477, 1479 (T.T.A.B. 1998). This is because "priority," in trademark terms, refers to priority of appropriation through use in commerce. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 100 (1918) ("Undoubtedly, the general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question."). That is, "[t]he party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015).

Here, Apple was the first party to use the APPLE mark in commerce through its predecessor Apple Corps, the company famously founded by The Beatles.[86] In 2007, Apple acquired Apple Corps' trademark rights in the APPLE word mark and equivalent designs dating back to 1968, along with the associated goodwill, and licensed certain of those rights back to Apple Corps.[87] As a part of this transaction, Apple Corps assigned Apple the marks covered by numerous registrations, including Registration Nos. 2,034,964, which recites gramophone records and audio compact discs featuring music.[88]

Since its founding in 1968, Apple Corps has continuously used the APPLE mark to distribute music in the United States, including "some of the most famous sound recordings ever made."[89] Mr. Jones' testimony details the sound recordings released during that period, beginning with the iconic *Hey Jude* in 1968.[90] Apple also has introduced a volume of documentary evidence, including copies of album covers for music released during that period.[91]

---

[86] *See supra* notes 8-33 and accompanying text.
[87] *See supra* notes 62-66 and accompanying text.
[88] *Id.*
[89] *See supra* notes 8-33 and accompanying text.
[90] *Id.*
[91] *Id.*

While "[t]here were no *initial* releases of The Beatles records in the United States featuring the APPLE word mark during the early 1980s," because The Beatles had disbanded, "The Beatles recordings are 'evergreen,' meaning that Apple Corps continued to produce and distribute the original and existing recordings of the most popular Beatles records to meet consumer demand for many years after live recordings ceased, and certainly throughout the 1980s and 1990s.[92] As Mr. Jones testified, "[t]hroughout the ***1970s, 1980s, 1990s, 2000s, 2010s, and into the present decade***, new compilation albums and occasional new material [by The Beatles] have continued to be released, marketed, and distributed in connection with the APPLE word mark."[93] Indeed, speaking to The Beatles' enduring popularity, when "[i]n September 2009, Apple Corps reissued the original Beatles catalogue, featuring the APPLE word mark . . . more than one million copies of remastered Beatles titles sold during the first five days of release."[94]

Opposer ignores the widespread availability of these recordings and claims, conveniently, that Apple Corps abandoned the APPLE mark in the three years immediately preceding his adoption of APPLE JAZZ. Other than his citations to Wikipedia,[95] Opposer's primary "support" for this argument is his contention that Apple did not produce any documents proving otherwise.[96] To the contrary, Apple produced both testimonial and documentary evidence showing that Apple Corps' distributor Capitol Records re-released John Lennon/Plastic Ono Band's seminal album

---

[92] *See supra* notes 36-39 and accompanying text.

[93] 71 TTABVUE 14 (Jones Decl. ¶ 25) (emphasis added).

[94] 71 TTABVUE 21 (Jones Decl. ¶ 30).

[95] *See* 89 TTABVUE 21, 25, 43. Even if Wikipedia were authoritative (it is not), this evidence is hearsay. Indeed, Opposer himself admits as much in his Statement of Objections to Applicant Apple's Evidence, several of which contain the curious shorthand "Internet ≠ truth." *See id.* at 59-61.

[96] 89 TTABVUE 43-44. Opposer also claims Apple Corps "has no documents showing that Apple Corps Ltd or its company in the U.S., Apple Records, Inc., **manufactured goods in the U.S.** under standard character mark APPLE during period January 1, 1983 - December 31, 1985." 89 TTABVUE 43 (emphasis added); *see also id.* at 20. Opposer cannot point to any legal authority holding that sound recordings must be created (in the studio) or "pressed" (in a manufacturing facility) within the United States to support use in commerce in connection with the production and distribution of those sound recordings.

*Shaved Fish* under the APPLE mark in the United States in *1983*—two years before Opposer's first use date.[97] Other albums under the APPLE mark by John Lennon, Plastic Ono Band, George Harrison, Ringo Starr, and James Taylor, among others, "almost certainly were available for sale and sold in the United States throughout the 1980s" as well.[98] In short, the record flatly contradicts Opposer's claim that Apple Corps did not distribute sound recordings in the United States under the APPLE mark between 1982 and 1985. Apple Corps made widespread, continuous use of APPLE in connection with production and distribution of sound recordings *long before Opposer adopted APPLE JAZZ.*

Even if Opposer were correct on this point (he is not), his argument that Apple Corps somehow abandoned the APPLE mark would be wholly unsupported by the evidence, which establishes that (a) Apple Corps took steps during that period to protect the mark, including by engaging in litigation with both Capitol Records and Apple Computer, (b) Apple Corps made extensive use of the mark once its dispute with Capitol Records was settled, and (c) the enormous fame of the mark meant it had a considerable amount of residual goodwill during that period (and beyond). *See Brunswick*, 211 U.S.P.Q. at 1198 ("[E]ven though the active sales of 'CROWN IMPERIAL' capital bowling equipment terminated in 1961, the fact that the sales were so extensive, that the mark continued to be exposed to many bowlers in the United States, and that Brunswick continued to use other marks comprising one or the other of the elements of which the mark was comprised leads us to conclude that there was a sufficient aware-ness of this mark among bowlers in 1976 to support the new, related use on bowling balls.").

Nearly 17 years after Apple Corps commenced use of the APPLE word mark in connection with the production and distribution of sound recordings, Opposer gave his first annual con-

---

[97] *See supra* notes 29-33 and accompanying text.
[98] *See id.*

cert under the APPLE JAZZ term in June 1985,[99] then offered an intermittent hodgepodge of other APPLE JAZZ services "mostly in the 90s," with first use dates ranging from 1992 to "2014, perhaps earlier."[100] Only on June 5, 2016, did Opposer apply to register the APPLE JAZZ mark, allegedly to "protect" himself and his "brand" from being "shut down by [Apple]," which had never sent him a single demand letter.[101] It is puzzling that Opposer picked this fight and continues to wage it after discontinuing his annual APPLE JAZZ festival concerts in 2014. Regardless, Apple Corps' use of APPLE for production and distribution of sound recordings and film predates Opposer's use of APPLE JAZZ by approximately 17 years; and as shown below, Apple is entitled to tack to that use to its constructive use date for APPLE MUSIC.

### 2.    Apple is Entitled to Tack its APPLE MUSIC Mark to its APPLE Mark Because the Marks are Legal Equivalents.

Under the law governing priority, a trademark owner may "tack" its later use of a mark onto its prior uses if those marks are "legal equivalents," even in the context of an ITU application. *See Dyneer Corp. v. Auto. Prods. plc*, 37 U.S.P.Q.2d 1251, 1256-57 (T.T.A.B. 1995). Marks are legally equivalent if they "create the same, continuing commercial impression" so that consumers consider both as the same mark.'" *Hana Fin.*, 574 U.S. at 420. Because "[t]he commercial impression that a mark conveys must be viewed through the eyes of a consumer," this is a question of fact. *Id.*

Here, substantial evidence establishes that APPLE and APPLE MUSIC are legal equivalents. First, in applying to register APPLE MUSIC, Apple disclaimed the generic term "MUSIC," leaving APPLE as the only distinctive portion of the mark. APPLE is among the most

---

[99] 78 TTABVUE 745 (Apple's Seventh N.R., Bertini Declaration Ex. 132).
[100] *See* 73 TTABVUE 38-43 (Apple's Fifth N.R., Bertini Dep. Tr. 133:20-155:18).
[101] *See* 73 TTABVUE 32 (Apple's Fifth N.R., Bertini Dep. Tr. 109:14-111:10).

famous marks in the world and is world famous for connecting consumers with music.[102] This necessarily means consumers encountering the APPLE MUSIC mark will (a) focus on the leading APPLE component[103] and (b) equate APPLE MUSIC with APPLE, the famous mark and company. *See Hess's of Allentown, Inc. v. Nat'l Bellas Hess, Inc.*, 169 U.S.P.Q. 673, 678 (T.T.A.B. 1971) ("There can be no question but that 'HESS' is the most significant portion of the trade name 'HESS BROTHERS' and that it is this portion which petitioner has emphasized throughout the years and that portion by which it has been recognized and referred to within and without its corporate structure.").

In addition, the distinctive portion of Apple's APPLE MUSIC mark ("APPLE") is identical to the APPLE mark for which Apple and its predecessor, Apple Corps, have documented use in commerce since at least August 1968. Like the applicant in *American Security Bank v. American Security & Trust Co.*, 571 F.2d 564, 197 U.S.P.Q. 65 (C.C.P.A. 1978), Apple "merely added the descriptive word [MUSIC] to a mark it had been using" for 47 years, as of the priority date for APPLE MUSIC (May 18, 2015). *See id.* at 567, 197 U.S.P.Q. at 67. The word "MUSIC" in Apple's mark "is purely descriptive and adds nothing to the origin-indicating significance of [APPLE]. Customers using the services would know they were dealing with [music]." *See id.*, 197 U.S.P.Q. at 67. Thus, here, as in *American Security Bank*, the addition of the generic word MUSIC to APPLE does not change the distinctive character of the APPLE mark; to the contrary, "the mark is, in effect, the same and the rights obtained by virtue of the earlier use of the prior form inure to the later form." *See* 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND

---

[102] *See supra* notes 40-68 and accompanying text.
[103] *Cf. Presto Prods. Inc. v. Nice-Pak Prods. Inc.*, 9 U.S.P.Q.2d 1895, 1897 (T.T.A.B. 1988) ("[I]t is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered . . . .").

UNFAIR COMPETITION § 17:26 (5th ed. 2020) ("MCCARTHY") (quoting *Humble Oil & Refining Co. v. Sekisui Chem. Co. Ltd. of Japan*, 165 U.S.P.Q. 597, 603-04 (T.T.A.B. 1970)).[104]

Opposer's argument as to why tacking should not be permitted consists of a tautology: "APPLE and APPLE MUSIC don't create the same continuing commercial impression because marks are different in its face and they are in no way substantially identical"—presumably because APPLE is one word and APPLE MUSIC is two.[105] Opposer thus appears to argue that marks can be legally equivalent only if they are identical,[106] citing as his only support a case that does not involve tacking—or even priority—at all. *See In re Binion*, 93 U.S.P.Q.2d 1531, 1539, 1542 (T.T.A.B. 2009) (finding the "applicant's ownership of the prior registrations does not establish acquired distinctiveness of the [applicant's] marks now sought to be registered").

Yet the law does not require marks to be identical. Indeed, in *American Security Bank*, the Board's reviewing court held the marks AMERICAN SECURITY BANK and AMERICAN SECURITY to be "legal equivalents" despite the addition of the generic term "BANK." *See Am. Sec. Bank*, 571 F.2d at 567, 197 U.S.P.Q. at 67. The Board also has permitted tacking in cases involving word marks with far more significant differences than those at issue here. For example, in *Laura Scudder's v. Pac. Gamble Robinson Co.*, 136 U.S.P.Q. 418 (T.T.A.B. 1962), the Board held the applicant was entitled to tack its application to register BLUE ROBIN to its prior use of BLUE BIRD: "[W]hile the [BLUE ROBIN and BLUE BIRD] marks in question differ in a number of respects, they nevertheless create substantially the same general impression, namely, that of a blue-colored bird, and hence are believed to symbolize a single and continuing trademark

---

[104] The outcome in *American Security Bank* is consistent with the longstanding rule in the likelihood of-confusion context that disclaimed material is "less significant in creating the mark's commercial impression." *In re Code Consultants Inc.*, 60 U.S.P.Q.2d 1699, 1702 (T.T.A.B. 2001).
[105] *See* 89 TTABVUE 48-49 (Opp. Br. at 47-48).
[106] *See* 89 TTABVUE 49 (Opp. Br. at 48).

right in applicant." *Id.* at 419; *see also Bionetics Corp. v. Litton Bionetics, Inc.*, 218 U.S.P.Q. 327, 330-31 (T.T.A.B. 1983) (recognizing the applicant's priority in BIONETICS based on its prior use of "Bionetics Research Laboratories" as a trade name); *Hana Fin., Inc. v. Hana Bank,* 735 F.3d 1158, 1166-67, 108 U.S.P.Q.2d 1825, 1831 (9th Cir. 2013) (evidence supported jury verdict that HANA BANK, HANA OVERSEAS KOREAN CLUB, and HANA WORLD CENTER created "a consistent, continuous commercial impression of the services the Bank offered and their origin"), *aff'd*, 574 U.S. 418 (2015).[107]

Finally, Opposer argues that Apple itself must "view[] APPLE and APPLE MUSIC as different marks" because Apple filed the APPLE MUSIC application in the same class as its earlier Class 41 application to register APPLE (which matured into Registration No. 4,088,195).[108] However, trademark owners may obtain more than one registration of the same mark in the same class so long as the identifications of goods or services are not identical. Here, the present Application and the '195 registration recite services that are different in several respects. Apple has every right to seek separate registration of APPLE MUSIC if doing so would facilitate enforcement of its longstanding rights in APPLE as against infringers (as it clearly would).

### 3.    Tacking is Also Appropriate Because Apple's Offerings Under its APPLE MUSIC Mark are Identical or Closely Related to its Offerings Under the APPLE Mark, in Which it Has Absolute Priority.

Where, as here, marks are legally equivalent, a party can tack its "subsequent use and registration" to its earlier use "for the same or closely related goods." *Laura Scudder's*, 136

---

[107] In the analogous abandonment context, *see Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1369, 116 U.S.P.Q.2d 1129, 1132-33 (Fed. Cir. 2015), courts have found legal equivalence despite far more substantive differences in the marks in question than the one at issue here. *See, e.g.*, *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 955 (7th Cir. 1992) (no abandonment where mark evolved from THIRST-AID—FIRST AID FOR YOUR THIRST to THIRST-AID).

[108] 89 TTABVUE 49 (Opp. Br. at 48).

U.S.P.Q. at 420. The goods at issue need not be identical;[109] instead, goods are sufficiently related for tacking purposes when consumers would tend to associate the later use with the earlier producer. *See Jack Wolfskin*, 797 F.3d at 1369, 116 U.S.P.Q.2d at 1133 (observing that "[i]n both contexts—priority and abandonment—the fundamental inquiry" is whether "the original mark been so substantially altered such that third parties would not expect that presently used mark to be used under and protected by the registration"); *see also Jimlar Corp. v. Army & Air Force Exch. Serv.*, 24 U.S.P.Q.2d 1216, 1221 (T.T.A.B. 1992) (finding boots "substantially identical products to sneakers," such that "tacking of the earlier use of the 'A CLUB' mark for boots to the later use thereof for sneakers is permissible" (citation omitted)); *Vacuum-Elecs. Corp. v. Elecs. Eng'g Co. of Cal.*, 150 U.S.P.Q. 215, 216 (T.T.A.B. 1966) (finding sockets, amplifiers, converters, and data handling systems sufficiently "closely related" to guided missile apparatus and computer circuits to support priority claim).[110]

Apple has more than satisfied these requirements. First, Apple seeks to register APPLE MUSIC for services that include the "production and distribution of ... sound recordings," ***the very same goods that Apple and its predecessor have produced and distributed since at least August 1968***. *See Laura Scudder's*, 136 U.S.P.Q. at 419 (permitting tacking as between fresh potatoes and a range of "fresh vegetables, including white and sweet potatoes"). Second, the balance of Apple's services listed in the Application are closely related to the production and distri-

---

[109] Opposer cites to *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 U.S.P.Q.2d 1072 (T.T.A.B. 1991). *See* 89 TTABVUE 48 (Opp. Br. at 47). There, however, IBM sought to tack its later use of BIG BLUE for typewriter ribbons to the public's earlier use of BIG BLUE to refer generally to IBM, the company. Here, by contrast, Apple seeks to tack its constructive use of APPLE MUSIC for production and distribution of sound recordings to Apple Corps' use of APPLE for the ***very same services***, which necessarily are "substantially identical." *See Big Blue*, 19 U.S.P.Q.2d at 1075.

[110] *See also Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 331 F. Supp. 3d 581, 597 (E.D. La. 2018) ("Although the use of St. Roch Market has evolved over time, each prior use [relating to food] is substantially identical to its present use as a food hall."); *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 700-01 (5th Cir. 2001) (affirming jury finding of tacking as between later use for pool construction and earlier use for pool services and repair).

bution of sound recordings—*i.e.*, provision of musical performances (such as concerts, festivals, competitions, and other live performances).[111] These APPLE MUSIC services are sufficiently related for tacking purposes because the record contains ample evidence that consumers ***already*** associate them with Apple, longtime owner of the APPLE mark.[112]

Relevant Board authority supports this conclusion. Consider *H. Betti Indus. v. Brunswick Corp.*, 211 U.S.P.Q. 1188 (T.T.A.B. 1981), in which the famous bowling company, Brunswick, applied to register CROWN IMPERIAL for bowling balls on June 28, 1976. *Id.* at 1196. The opposer, Betti, claimed unregistered use of the IMPERIAL mark and a crown in connection with billiard equipment from March 1972, and also claimed a likelihood of confusion between bowling balls and billiard equipment. *Id.* While ultimately discounting Betti's evidence of prior use, the Board stated that even if Betti could prove the March 1972 date, Brunswick's subsequent use of CROWN IMPERIAL for ***bowling balls*** was "closely related in the minds of purchasers" to its prior use of CROWN IMPERIAL for "***capital bowling equipment***"—*i.e.*, bowling ball return racks, alley dusters, pinsetters, etc.—and therefore "tacking of the uses" was appropriate. *Id.* at 1194, 1198 (emphasis added). Indeed, the Board reached this conclusion "even though the active sales of 'CROWN IMPERIAL' capital bowling equipment terminated in 1961," given the long duration of bowlers' association of Brunswick with bowling equipment, which was sufficient even in "1976 to support the new, related use on bowling balls."[113] *Id.* at 1198.

---

[111] *See* App. Ser. No. 86/659,444.

[112] *See supra* notes 69-71 and accompanying text.

[113] This reasoning applies with equal force in this proceeding, given the "long duration" of consumers' association of Apple and its predecessor, Apple Corps, with production and distribution of sound recordings, which association was "sufficient even in [1985] to support the new, related" uses described in the Application, *see Brunswick*, 211 U.S.P.Q. at 1198, even if Opposer were correct that "there was no production or sales of records at all under mark APPLE during years 1982-1985" (and he is not). *See* 89 TTABVUE 44 (Opp. Br. at 43).

Of particular significance here, the Board found it "inconceivable" on these facts "that a bowler purchasing a bowling ball would associate the mark 'CROWN IMPERIAL' used thereon with any other source than Brunswick"—*including the intervening user*, Betti—which meant Brunswick, the applicant, had absolute priority in the bowling space. *Id.* In other words, even though Brunswick's prior use was not for bowling balls *per se*, Betti could not block Brunswick from registering CROWN IMPERIAL for those goods, given their obvious relation in consumers' minds to the capital bowling equipment for which Brunswick demonstrated prior use.[114]

This result is particularly appropriate where (as here) a producer is widely known for producing a particular category of goods or services—whether that producer is Brunswick for bowling equipment or Apple and its predecessor Apple Corps for production and distribution of sound recordings. Notably, however, the Board has reached the same result in cases involving far more obscure marks. For example, in *Bear Partnership & Wings Res. & Dev., S.R.L. v. Bear U.S.A., Inc.*, No. 91119974, 2004 WL 2901193 (T.T.A.B. Nov. 30, 2004) (nonprecedential), the applicant filed an ITU application on February 26, 1996, to register BEAR & Design for clothing items including parkas, jackets, shirts, pants, underwear, hats, headbands, footwear, and "denim products." *Id.* at *1. The opposer claimed priority, documenting its use of the BEAR mark for those clothing items since 1994 or 1995. *Id.* Because the applicant could not rely on its constructive use date to prove priority, it introduced evidence supporting its use of a legally equivalent

---

[114] Courts have reached similar results in the analogous abandonment context. *See, e.g.*, *Helpful Hound*, 331 F. Supp. 3d at 597 ("Although the use of [the mark] has evolved over time, each prior use is substantially identical to its present use as a food hall."); *SurgiVision Consultants, Inc. v. SurgiVision, Inc.*, No. CV 10–03024 MMM (FFMx), 2011 WL 13214280, at *15 (C.D. Cal. Jan. 31, 2011) ("[T]here is no abandonment . . . merely because use of the mark is shifted from one line of goods or services to another similar line. . . . The proper criterion is whether the buying public is likely to think that the new line of goods comes from the same source as the old line of goods." (citations omitted)); *Grocery Outlet Inc. v. Albertsons, Inc.*, No. C 06-02173 JSW, 2008 WL 5245962, at *8 n.2 (N.D. Cal. Dec. 17, 2008) ("Grocery Outlet's argument that the distinction between services and products . . . is unpersuasive. Where, as here, the [grocery] goods and [grocery] services are so closely related, the use of one is sufficient to maintain rights in the other.").

BEAR & Design mark in connection with "***parkas and down vests*** since at least December of 1993." *Id.* at *4, 7 (emphasis added). This was sufficient for the Board to hold that the opposer failed to "establish[] by a preponderance of evidence that it was using the BEAR trademark prior to applicant's December 1993 priority date." *Id.* at *6. The applicant had absolute priority.

Opposer cannot prevail in this proceeding for the same reasons. On June 11, 2015, Apple filed an ITU application to register APPLE MUSIC in Class 41 for production and distribution of sound recordings and closely-related music and entertainment services. Opposer, ***the intervening user***, claimed priority in APPLE JAZZ for an overlapping list of services taken from his suspended application in Class 41, against which the Examining Attorney cited three of Apple's registrations.[115] In response, Apple has introduced substantial evidence establishing its entitlement to tack its May 18, 2015, constructive use date for APPLE MUSIC to its prior, continuous, and extensive use of APPLE for production and distribution of sound recordings dating to 1968. Because Opposer's claimed date of first use is almost 17 years later, Apple has absolute priority—not only for production and distribution of sound recordings, its "core" services, but also for the other services in the Application, which are closely related in consumers' minds.

### 4.    Opposer Cannot Defeat Apple's Absolute Priority in APPLE for Production and Distribution of Sound Recordings by Cherry Picking Services from the APPLE MUSIC Application and Claiming Intervening Rights for Those Services.

Notwithstanding Apple's absolute priority, Opposer attempts to defeat the Application by isolating and cherry picking services from Apple's recitation and demonstrating priority only as to those services, despite Apple's prior use. In this vein, page 45 of Opposer's trial brief argues that Apple Corps "had no website accessible for public use on or before June 5, 1985 . . . because

---

[115] 78 TTABVUE 395 (Apple's Seventh N.R., Ex. 30 at 2); *id.* at 742-43 (Apple's Seventh N.R., Ex. 132).

the World Wide Web was not invented until after that date," apparently concluding this technological fact alone would give Opposer priority over Apple for the portion of Opposer's APPLE JAZZ application reciting websites relating to music and entertainment.

This is not the law. To be sure, an opposer with absolute priority can establish a likelihood of confusion "as to any of the goods or services identified in an opposed class of goods or services," whereupon "the opposition to registration of the mark as to all of the goods or services identified in that class will be sustained." *Baseball Am., Inc. v. Powerplay Sports, Ltd.*, 71 U.S.P.Q.2d 1844, 1847 n.9 (T.T.A.B. 2004). *But this is only true if the opposer has absolute priority*, typically through registration, which the opposer proves by making that registration of record. *See, e.g.*, *King Candy Co. v. Eunice King's Kitchen*, 496 F.2d 1400, 1401, 182 U.S.P.Q. 108, 110 (C.C.P.A. 1974). In such cases, *priority is not the issue*; likelihood of confusion is.

Had Opposer's cherry-picking rule applied in *Bear Partnership*, the opposer's intervening use for shirts would have blocked the applicant's entire application, including for the "parkas and down vests" for which it established prior use. *See* 2004 WL 2901193, at *4. It did not. Instead, the Board refused to limit the applicant's rights to the goods for which it established prior use, enabled the applicant to tack the full range of clothing items in its later application to its earlier use for parkas and vests, and concluded, "inasmuch as we find that opposer has not established its priority, opposer cannot prevail and we do not address the issues of likelihood of confusion." *Id.* at *8. There, as here, likely confusion was not the issue; *priority was (and is)*.

As the Board observed in *Brunswick*, "[i]t is . . . important to note that *we are concerned here with priority rights of an applicant, not an opposer*." 211 U.S.P.Q. at 1198 (emphasis added). There, the applicant was famous for bowling equipment, leading the Board to conclude it would be "inconceivable to us on the facts presented, that a bowler purchasing a bowling ball

would associate the mark 'CROWN IMPERIAL' used thereon with any other source than Brunswick. This is precisely the trade identity right that applicant seeks to register." *Id.*

It would be just as "inconceivable" that consumers of sound recordings and related services under the APPLE and APPLE MUSIC marks would associate those marks with anyone but Apple—whether as of June 5, 1985, or in the present day. This robust association of "APPLE" with Apple is not some unforeseen byproduct of Apple's success as a company. It is a direct and intended result of Apple's and its predecessor's extensive and continuous promotion and use of APPLE in connection with sound recordings in particular, and musical entertainment in general, since 1968. Because that longstanding use predates Opposer's first use of APPLE JAZZ by almost 17 years, Apple has absolute priority, which means Opposer cannot satisfy his "heavy" burden of proving priority in the absence of a registration. *See Brunswick*, 211 U.S.P.Q. at 1197.

**B.      Opposer's Claimed Apple Jazz Mark Is Primarily Merely Geographically Descriptive and Lacks Secondary Meaning.**

Even if Opposer could establish priority (he cannot), he also would bear the burden of proving his APPLE JAZZ mark is "distinctive of [his services] either inherently or through the acquisition of secondary meaning." *Hoover Co.*, 238 F.3d at 1359, 57 U.S.P.Q.2d at 1721. Opposer cannot satisfy this burden for at least two reasons. First, Opposer has repeatedly admitted against interest that he chose the terms APPLE and JAZZ for their descriptive qualities, with APPLE referring to the Cortland, New York, area and JAZZ referring to jazz music. Opposer now seems to regret those admissions and claims he was merely "inspired by Cortland apples" when adopting APPLE JAZZ,[116] and as a result his mark is allegedly "arbitrary."[117] Both the

---

[116] 59 TTABVUE 2 (Bertini Decl. ¶3).
[117] 89 TTABVUE 35 (Opp. Br.).

record evidence and the applicable law, however, confirm Opposer's earlier admissions that his APPLE JAZZ mark is merely descriptive of jazz music performed in "apple country."

Second, Opposer's claimed use of his APPLE JAZZ mark over the last 35 years is truly minimal, comprising (at the outside)[118] only ███████ in income and ███████ in expenses over the *thirty years* between 1985 and 2014.[119] Thus, despite Opposer's conclusory arguments based primarily on his length of use standing alone, he has not shown that because of that use, an appreciable number of consumers has *ever* associated APPLE JAZZ exclusively with Opposer. That being the case, he cannot prevail.

### 1.    Opposer's APPLE JAZZ Mark Is Primarily Geographically Descriptive.

To confirm the descriptiveness (geographic or otherwise) of a composite mark such as APPLE JAZZ, the Board "examine[s] the meaning of each component individually, and then determine[s] whether the mark as a whole is merely descriptive." *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1255, 103 U.S.P.Q.2d 1753, 1758 (Fed. Cir. 2012). Not surprisingly, Opposer resists this rule, urging the Board *not* to evaluate the APPLE and JAZZ components of his APPLE JAZZ mark separately because "the elements of the mark are so integrated and merged together that they cannot be regarded as separable."[120] As shown below, this is obviously untrue. Both the mark and its components are descriptive.

---

[118] Opposer produced documents relating to his income and expenses under the APPLE JAZZ mark but claimed he could not provide separate figures for the services at issue here. For example, Opposer's figures appear to include royalties on album sales; yet in opposing a motion to compel filed by Apple, Opposer took the position that his sale of goods under the APPLE JAZZ mark are "irrelevant" to this proceeding. *See* 56 TTABVUE 5 ("Requests Nos. 12 and 14 refer in part to sales of products, but this trademark dispute is about use of marks in commerce for services in Class 41. Consequently, this part of Nos. 12 and 14 is irrelevant."). Thus, even Opposer's modest income and expense figures overstate his activities in connection with the relevant APPLE JAZZ services.

[119] *See supra* notes 81-84 and accompanying text.

[120] 89 TTABVUE 33 (Opp. Br. at 32).

  **(a)**  **APPLE Is Geographically Descriptive of the Cortland, New York Area, and JAZZ Is Descriptive of the Musical Genre.**

"A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 1300, 102 U.S.P.Q.2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer AG*, 488 F.3d 960, 963, 82 U.S.P.Q.2d 1828, 1831 (Fed. Cir. 2007)) (NATIONAL CHAMBER descriptive of providing information about the Chamber of Commerce). A term "need not recite each feature of the relevant goods or services in detail to be descriptive," but need only describe a single feature or attribute of them. *In re Dial–A–Mattress Operating Corp.*, 240 F.3d 1341, 1346, 57 U.S.P.Q.2d 1807, 1812 (Fed. Cir. 2001) (1-888-M-A-T-T-R-E-S-S descriptive of "a service relating to mattresses the telephone number"). Thus, the question is not whether a consumer presented only with the term at issue could guess the goods or services it identifies. "Rather, the question is whether someone who knows what the goods and services are will understand the mark to convey information about them." *DuoProSS*, 695 F.3d at 1254, 103 U.S.P.Q.2d at 1757. This is a factual question. *Dial-A-Mattress*, 240 F.3d at 1344, 57 U.S.P.Q.2d at 1810.

These rules also apply to terms describing the geographic origin of goods or services. As the Supreme Court observed almost 150 years ago, "the same reasons which forbid the exclusive appropriation of generic names or of those merely descriptive of the article manufactured . . . apply with equal force to the appropriation of geographical names" because "[t]hey point only at the place of production, not to the producer." *Del. & Hudson Canal Co. v. Clark*, 80 U.S. 311, 324 (1871). "In other words, geographically descriptive marks, without more, are not specific or distinctive enough to pinpoint a certain seller and to identify and distinguish his goods from

those of others." 2 MCCARTHY § 14:1. "This is a bedrock rule of trademark law and is just as applicable in the Twenty-First Century as it was in the Nineteenth." *Id.*

In evaluating a mark's geographic descriptiveness, the Board does not evaluate that mark or its components in the abstract—*e.g.*, "What does 'apple' mean?"—but instead evaluates each term's descriptive character in connection with the goods or services with which that term is used and the significance of that term "to the average purchaser of the goods because of the manner of its use or intended use." *Chamber of Commerce*, 675 F.3d at 1300, 102 U.S.P.Q.2d at 1219 (quoting *Bayer*, 488 F.3d at 963, 82 U.S.P.Q.2d at 1831). This rule begs an important question: "[W]hich prospective purchasers?" *See Sarco Creek Ranch v. Greeson*, 36 F. Supp. 3d 726, 732 (S.D. Tex. 2014).

Most litigants in Board cases plead registered, nationwide rights. Nevertheless, in some cases—like this one—an opposer claims rights primarily through use of a term in a limited geographic area. In those cases, the relevant purchasers for purposes of the distinctiveness inquiry are ***those living in the geographic area in which the opposer offers its services***. *See Sarco Creek Ranch*, 36 F. Supp. 3d at 733 ("The relevant market in this case is people who purchase specialty horses, cattle, hay and other ranching services and goods in the market that Parmley serves. . . . Texans who live in or near Goliad County."). This makes sense because the purchasers in that locale are the ones encountering the opposer's mark. *See also In re Joint-Stock Co. Baik*, 80 U.S.P.Q.2d 1305, 1309 (T.T.A.B. 2006) (determining geographic significance "from the perspective of the relevant public for those goods or services"); *In re McO Props. Inc.*, 38 U.S.P.Q.2d 1154, 1156 (T.T.A.B. 1995) ("[T]he relevant purchasing public for applicant's service of developing real estate includes people considering purchasing real property in Fountain

Hills, Arizona."); *Helpful Hound*, 331 F. Supp. 3d at 593 (finding "St. Roch Market geographically descriptive for consumers in the New Orleans area" in light of the avenue by that name).

Here, the relevant purchasers are those living in the Cortland, New York area where Opposer performed his annual APPLE JAZZ concerts.[121] And, as to those purchasers, "APPLE" is descriptive of "apple country"—the area in and around Cortland, New York.

Opposer's own statements remove any doubt on this point. He has repeatedly informed the Office that he selected APPLE JAZZ as his band's name because "the jazz genre of music was being promoted in the apple country of Central New York State and Cortland, New York, home of the Cortland apple."[122] As Opposer testified in his deposition in this proceeding, "I wanted a name for the band. I had to call it something. It could have been 'Charlie Bertini and His Friends' or whatever. But because it was in Cortland County, and cortland apples are part of Cortland County, we decided to call it Apple Jazz."[123] These admissions are entitled to substantial weight. *See Hoover*, 238 F.3d at 1360, 57 U.S.P.Q.2d at 1722 ("Substantial evidence . . . supports the board's finding that 'Number One in Floorcare' is a generally laudatory phrase, and thus is not inherently distinctive. Hoover's Vice President of Marketing confirmed the self-laudatory nature of the slogan."); *In re Gould Paper Corp.*, 834 F.2d 1017, 1019, 5 U.S.P.Q.2d 1110, 1012 (Fed. Cir. 1987) ("Gould's own submissions provided the most damaging evidence that its alleged mark [SCREEN WIPE] is generic. . . . On its own specimen supporting the application, Gould advises: 'a . . . wipe . . . for . . . screens.").

Other record evidence also establishes "APPLE" has geographic significance as indicating "apple country" for potential purchasers in the Cortland, New York area:

---

[121] *See* 86 TTABVUE 172-184 (Bertini Rebuttal Decl. Ex. 1).
[122] *See supra* notes 73 & 74 and accompanying text.
[123] 73 TTABVUE 9 (Apple's Fifth N.R., Bertini Dep. Tr. 19:3-8).

- For example, the Cortland County Chamber of Commerce prominently featured an apple image in its letterhead in November 1991:[124]



- A May 1993 newspaper article announcing one of Opposer's concerts listed that concert as among several local "[e]vents built around seniors, *jazz*, **apples** and balloons";[125] and

- Numerous businesses, programs, and festivals in the upstate New York region (which includes Cortland) have adopted apple names and imagery to signal their location in "apple country."[126] People traveling to this part of upstate New York cannot fail to perceive the connection. *See In re S. Park Cigar, Inc.*, 82 U.S.P.Q.2d 1507, 1511 (T.T.A.B. 2007) ("On this record, Ybor City is neither obscure nor remote, especially to the relevant purchasing public, i.e., cigar aficionados specifically and, more generally, people who are or may be traveling to Tampa, Florida.").

Opposer ignores all of this evidence and implies that APPLE cannot function as a geographic descriptor for relevant purchasers because the word "apple" refers to the fruit.[127] The law is well settled, however, that a term can have geographic significance even when it has multiple meanings. *See* T.M.E.P. § 1210.02(b)(i) ("The fact that the mark has meaning or usage other

---

[124] 86 TTABVUE 180 (Bertini Rebuttal Decl. Ex. 1).
[125] 59 TTABVUE 55 (Ex. 27) (emphasis added).
[126] 74 TTABVUE 22-42 (Applicant's Sixth N.R. Ex. A).
[127] 89 TTABVUE 34 (Opp. Br. at 33).

than as a geographic term does not necessarily alter its primarily geographic significance."). Indeed, a nongeographic meaning of a term may actually *reinforce* its geographic significance to relevant purchasers. In *In re All Island Media, Inc.*, No. 78591633, 2007 WL 4438608 (T.T.A.B. Dec. 3, 2007) (nonprecedential), for example, the applicant argued GOLD COAST was not geographically descriptive because "'GOLD COAST' is used in the Mark to suggest upscale, chic or elegant, not a specific geographic location." *Id.* at *9. The Board disagreed:

> [A]ny such meaning which may be associated with the mark is due to the fact that the term "Gold Coast" evokes the very geographic area of the north shore of Long Island which, particularly in its heyday earlier in the twentieth century but still largely continuing today, was and is known for its affluence and tony reputation . . . . Such an image, however, simply does not detract or preclude the primary significance of the term "Gold Coast" from being geographical.

*Id.* Likewise here—and by Opposer's own admission—the dictionary definition of "apple" only serves to reinforce the geographic meaning of "APPLE" in Opposer's claimed APPLE JAZZ mark to residents of the Cortland, New York "apple country." *See In re Bacardi & Co.*, 48 U.S.P.Q.2d 1031, 1304 (T.T.A.B. 1998) (an association between HAVANA and a particular lifestyle "would not contradict the primary geographic significance of the term, as the association may be made precisely because of the primary significance of HAVANA as a city in Cuba").

Page 36 of Opposer's trial brief argues the term APPLE cannot be geographically descriptive in the context of his APPLE JAZZ mark because APPLE is not the name of a geographic place.[128] This argument also misses the mark. As the *Trademark Manual of Examining Procedure* explains, and the case law confirms, "[a] geographic nickname (e.g., 'Big Apple' or 'Mo-

---

[128] Remarkably, Opposer makes this argument three times, then characterizes the result as three separate reasons why "**APPLE JAZZ is not merely descriptive**." *See* 89 TTABVUE 36 (Opp. Br. at 35) ("However, (1) none of the elements of the mark is a generally known geographic location on its face; (2) the services originated in Cortland, New York and no place is identified in the mark; (3) purchasers cannot believe that Opposer's services originated in a geographic place because no geographic place is identified in the mark." (citation omitted)).

town'), or an abbreviation or other variant of the name of a geographic location, is treated the same as the actual name of the geographic location, if it is likely to be perceived as such by the purchasing public." T.M.E.P. § 1210.02(a); *see also All Island Media*, 2007 WL 4438608, at *5 (nonprecedential) (GOLD COAST geographically descriptive of "the geographic area consisting of the north shore of Long Island, New York"); *S. Park Cigar*, 82 U.S.P.Q.2d at 1512 (YBOR geographically descriptive of the Ybor City neighborhood in Tampa, Florida).

In sum, if the residents of the Cortland, New York area think of that region as "apple country"—and the evidence shows they do—then "APPLE" has geographic significance to the relevant purchasers there. As for the term JAZZ in Opposer's mark, that term obviously and immediately conveys "the jazz genre of music" that Opposer "promoted in the apple country of Central New York State and Cortland, New York, home of the Cortland apple."[129] On this record, both components of Opposer's APPLE JAZZ mark therefore are individually descriptive— and so is the combination of those two descriptive terms, as shown below.

> **(b)    The Combination of APPLE and JAZZ Retains the Primary Descriptive Significance of the Terms Standing Alone.**

Opposer argues, tautologically, that his APPLE JAZZ mark is "a unitary mark because the elements of the mark are so integrated and merged together that they cannot be regarded as separable"—apparently under the mistaken belief that a mark comprised of multiple terms cannot be descriptive.[130] In fact, the law is well settled that combining two (or more) descriptive terms does not necessarily result in an inherently distinctive mark. To the contrary, where, as here, an opposer adds "a highly descriptive or generic term to the name of a geographic place," that addition does nothing to "alter its primarily geographic significance." T.M.E.P.

---

[129] 73 TTABVUE 254 (Apple's Fifth N.R., Bertini Tr. Ex. 210 ¶ 6).
[130] *See* 89 TTABVUE 33 (Opp. Br. at 32).

§ 1210.02(c)(ii); *see In re JT Tobacconists*, 59 U.S.P.Q.2d 1080, 1083 (T.T.A.B. 2001) (finding the addition of "the generic terminology 'CIGAR COMPANY'" for a cigar company "does not detract from or otherwise alter the fact that the primary significance of the mark as a whole [MINNESOTA CIGAR COMPANY] is geographical").[131]

The test for determining whether a mark composed entirely of descriptive terms is none-theless inherently distinctive is whether "the juxtaposition of the words is inventive or evokes a unique commercial impression or if the term has a bizarre or incongruous meaning as applied to the goods." *In re Nat'l Shooting Sports Found.*, 219 U.S.P.Q. 1018, 1020 (T.T.A.B. 1983) (cita-tion omitted). Only combinations achieving "a new and different commercial impression" quali-fy as inherently distinctive. *In re Assoc. Theatre Clubs Co.*, 9 U.S.P.Q.2d 1660, 1662 (T.T.A.B. 1988); *see also* T.M.E.P. § 1209.03(d). A classic example is the combination of SNO and RAKE for a hand tool used for snow removal; as the Board observed in that case, "the idea of a 'rake' or 'raking' does indeed sit strange in terms of application to snow." *In re Shutts*, 217 U.S.P.Q. 363, 364 (T.T.A.B. 1983); *see also In re Tennis in the Round Inc.*, 199 U.S.P.Q. 496, 498 (T.T.A.B. 1978) (finding TENNIS IN THE ROUND "imaginative and fanciful" for a tennis facility).

On the other side of the line, when a combination of descriptive terms does not alter their descriptive meaning, that combination also is descriptive. *Assoc. Theatre Clubs*, 9 U.S.P.Q.2d at 1662 ("[A]pplicant has combined two terms which each name applicant's activities and which, in

---

[131] *See also In re Hollywood Lawyers Online*, 110 U.S.P.Q.2d 1852, 1858 (T.T.A.B. 2014) (HOLLYWOOD LAWYERS ONLINE geographically descriptive of attorney referrals); *In re Chalk's Int'l Airlines Inc.*, 21 U.S.P.Q.2d 1637, 1638-39 (T.T.A.B. 1991) (PARADISE ISLAND AIRLINES geo-graphically descriptive of air transportation to the Bahamas); *In re Cal. Pizza Kitchen Inc.*, 10 U.S.P.Q.2d 1704, 1706-07 (T.T.A.B. 1988) (CALIFORNIA PIZZA KITCHEN geographically descriptive of restau-rant services); *In re Opryland USA Inc.*, 1 U.S.P.Q.2d 1409, 1412-13 (T.T.A.B. 1986) (NASHVILLE NETWORK geographically descriptive of television programming with "a substantial enough relation to Nashville, Tennessee") *In re Southland Corp.*, 162 U.S.P.Q. 465, 465-66 (T.T.A.B. 1969) (finding MIDWEST FARMS geographically descriptive of milk and ice cream from that region).

combination, continue to do so."); *see also Gould Paper*, 834 F.2d at 1018, 5 U.S.P.Q.2d at 1012

(holding SCREEN WIPE generic because the evidence indicated "the separate words joined to

form a compound have a meaning identical to the meaning common usage would ascribe to

those words as a compound"). This is true even if the combination does not appear in dictionar-

ies, or—as Opposer argues[132]—if the combination is not in common usage in the relevant indus-

try. *In re Sun Microsystems, Inc.*, 59 U.S.P.Q.2d 1084, 1087 (T.T.A.B. 2001) (AGENTBEANS

descriptive of "agent" type software development programs, also known as "beans").

Here, Opposer has admitted that APPLE JAZZ describes—and *was intended* to de-

scribe—"the jazz genre of music . . . being promoted in the apple country of Central New York

State and Cortland, New York, home of the Cortland apple."[133] There is, of course, nothing re-

motely "incongruous or unusual" about the combination of APPLE and JAZZ such "that it pos-

sesse[s] only suggestive significance." *Nat'l Shooting Sports Found.*, 219 U.S.P.Q. at 1020. To

the contrary, by Opposer's own admission, the terms APPLE and JAZZ "lose no descriptive sig-

nificance in the combined expression" APPLE JAZZ, but instead "form a phrase which aptly de-

scribes the [location and] nature of [Opposer's concerts]."[134]

---

[132] *See* 89 TTABVUE 34 (Opp. Br. at 33) (arguing, incorrectly, that the "unique combination of words APPLE JAZZ" cannot be descriptive because it "has no common meaning").

[133] 73 TTABVUE 254 (Apple's Fifth N.R., Bertini Tr. Ex. 210 ¶ 6).

[134] *Id.* Opposer does not seriously contest any of these points. Instead, he argues that the issue of protecta-bility was decided when the Examining Attorney assigned to his APPLE JAZZ application failed to re-fuse registration under Section 2(e) and "**therefore the APPLE JAZZ mark already passed the test to be a protectable mark**." 89 TTABVUE 32 (Opp. Br. at 31). This is obviously untrue. As a factual mat-ter, Opposer's Application No. 87/060,640 is still being examined, having been suspended pending the outcome of this proceeding. As a legal matter, even if it were possible to draw an inference from the Of-fice's examination of Opposer's own application to date (and factually, it is not), Board authority could not be clearer that an "examining attorney's action with regard to [an] . . . application [is] not a judgment on the merits by a court or other tribunal of competent jurisdiction nor does it control the merits of the case now before us." *Sendor v. Where to Dine In, LLC*, No. 91195538, 2010 WL 11413794, at *2 (T.T.A.B. Dec. 16, 2010) (nonprecedential).

APPLICANT APPLE INC.'S TRIAL BRIEF                                                        50
*Charles Bertini v. Apple Inc.*

In sum, Opposer's argument on the subject of descriptiveness is nothing but a string of unsupported conclusions that ignore the substantial evidence of record and Opposer's own repeated admissions against interest. That evidence and those admissions overwhelmingly establishes that "Apple Jazz" is the geographically descriptive combination of "Apple" and "Jazz," which Opposer selected because they ***directly conveyed to consumers*** that his services consisted of "the jazz genre of music . . . being promoted in the apple country of Central New York State and Cortland, New York, home of the Cortland apple."[135] Opposer therefore must prove secondary meaning, which, as demonstrated below, he has entirely failed to do.

### 2. Opposer Has Failed to Prove His Primarily Geographically Descriptive APPLE JAZZ Mark Has Acquired Secondary Meaning.

A descriptive term is protectable only if and when it achieves secondary meaning, which occurs when "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1379, 101 U.S.P.Q.2d 1713, 1729 (Fed. Cir. 2012). To determine whether a mark has acquired a secondary meaning, the Board examines several factors, including "advertising expenditures, sales success, length and exclusivity of use, unsolicited media coverage, and consumer studies (linking the name to a source)." *In re Steelbuilding.com*, 415 F.3d 1293, 1300, 75 U.S.P.Q.2d 1420, 1424 (Fed. Cir. 2005). "[N]o single factor is determinative," *id.*, although a party's "burden of showing acquired distinctiveness increases with the level of descriptiveness; a more descriptive term requires more evidence of secondary meaning." *Id.*, 75 U.S.P.Q.2d at 1424.

Here, the evidence of record demonstrates APPLE JAZZ is highly geographically descriptive, as it identifies the geographic origin (and reach) of Opposer's concerts under the mark

---

[135] 73 TTABVUE 254 (Apple's Fifth N.R., Bertini Tr. Ex. 210 ¶ 6).

and the type of music Opposer performs. In Opposer's own words, his services consist of "the jazz genre of music . . . being promoted in the apple country of Central New York State and Cortland, New York."[136] This high level of descriptiveness means Opposer's burden to show acquired distinctiveness is "concomitantly high." *Steelbuilding.com*, 415 F.3d at 1301, 75 U.S.P.Q.2d at 1424. Even if Opposer faced a lower burden, however, he could not satisfy it. Opposer's entire secondary-meaning argument consists of the claim that "during more than 30 years of use Opposer's mark has acquired distinctiveness since a reservoir of goodwill has been developed in the APPLE JAZZ mark among a number of dedicated customers, fans, musicians and contractors of APPLE JAZZ."[137] Yet nothing in Opposer's ***evidence*** supports this assertion.[138]

First, the Board has repeatedly held that the mere passage of time does not establish secondary meaning. For example, in *In re Gibson Guitar Corp.*, 61 U.S.P.Q.2d 1948 (T.T.A.B. 2001), the Board rejected a claim of acquired distinctiveness where the product configuration had been in use for 66 years, with "***only*** 1600 guitars . . . sold each year during that period." *Id.* at 1952 (emphasis added); *see also In re Interstate Folding Box Co.*, 167 U.S.P.Q. 241, 244-45 (T.T.A.B. 1970) (rejecting applicant's claim that that "Inner-Lined" for pasteboard cartons had acquired distinctiveness after, *inter alia*, 30 years of use, $50,000 in advertising per year, and 70 million cartons sold throughout the United States).[139]

---

[136] *Id.*

[137] 89 TTABVUE 35 (Opp. Br. at 34).

[138] Opposer cites his New York State registration of APPLE JAZZ as evidence of protectability. 89 TTABVUE at 36-37 (Opp. Br. at 35-36). However, Opposer neglects to mention that this registration ***expired nearly twenty years ago, on October 31, 2001***. *See* 59 TTABVUE 81 (Bertini Decl. Ex. 59). Moreover, the Office has observed that "[s]tate trademark registrations are of relatively little probative value" in this inquiry. T.M.E.P. § 1212.06(e)(ii); *see also Gowanus Dredgers v. Baard*, No. 11-CV-5985 PKC, 2013 WL 6667361, at *4 (E.D.N.Y. Dec. 17, 2013) ("Although trademark registration with the PTO creates a presumption of ownership, [a New York] state registration creates no such presumption in federal court." (citations omitted)).

[139] To similar effect, *see Alcatraz Media, Inc. v. Watermark Cruises*, 107 U.S.P.Q.2d 1750, 1766 (T.T.A.B. 2013) (rejecting claim of acquired distinctiveness for ANNAPOLIS TOURS after 21 years);

Second, Opposer's other evidence of acquired distinctiveness is extremely modest, particularly over "more than 30 years" of alleged use. Opposer's primary services under the APPLE JAZZ mark between 1985 and 2014 consisted of a single annual musical performance in the "apple country" in and around Cortland, New York—a gathering that Opposer himself described as "small," drawing at most a few hundred people each year. Opposer's proceeds and expenditures associated with these performances were truly minimal—totaling, at best,[140] only ███████ in income and ███████ in expenses over the ***thirty years*** between 1985 and 2014. Related media coverage in the Cortland area was sporadic and scant. If anything, this evidence indicates "normal business activity rather than trademark recognition." *See In re Crow Marcrum, Inc.*, No. 76438849, 2006 WL 2263327, at *5 (T.T.A.B. Jul. 20, 2006) (nonprecedential).

Further, the Board has instructed that even substantial business activities do not suffice to prove secondary meaning without evidence those efforts have "borne fruit." *See Target Brands, Inc. v. Hughes*, 85 U.S.P.Q.2d 1676, 1681 (T.T.A.B. 2007) (holding the applicant's "substantial degree of [sales] success" for some 15 years and "substantial sums of money to promote his product under the designation ULTIMATE POLO" insufficient to "demonstrate that the efforts have borne fruit"). Opposer cannot make this showing, as he has not submitted ***any direct evidence*** that his sales and promotional efforts have resulted in ***any*** consumer awareness of APPLE JAZZ as a source indicator (as opposed to a general awareness of location and content).

---

*Mag Instrument, Inc. v. Brinkmann Corp.*, 96 U.S.P.Q.2d 1701, 1723 (T.T.A.B. 2010) (finding 27 years of use "to be simply insufficient, in itself or in conjunction with the other evidence of record, to show that the dual bands have acquired distinctiveness"); *In re Constantine*, No. 77403096, 2010 WL 4036057, at *7 (T.T.A.B. Sept. 29, 2010) (nonprecedential) (rejecting claim of acquired distinctiveness for "Maryland Fried Chicken" after "over thirty years"); *In re Packaging Specialists, Inc.*, 221 U.S.P.Q. 917, 920 (T.T.A.B. 1984) (deeming use of "Packaging Specialists, Inc." for 16 years "a substantial period but not necessarily conclusive or persuasive on the Section 2(f) showing").

[140] *See supra* notes 81-84 and accompanying text.

In short, the evidence of record does not remotely prove that Opposer's APPLE JAZZ mark has achieved secondary meaning. *See In re White Jasmine LLC*, No. 77115548, 2013 WL 2951788, at *12-13 (T.T.A.B. Mar. 5, 2013) (rejecting claim of acquired distinctiveness where the applicant "generated revenues of approximately $75,000 over four years or $18,250 per year," which "figures are hardly persuasive evidence of acquired distinctiveness for products marketed to the general consuming public," particularly in the absence of evidence showing "whether applicant's sales are significant vis-à-vis the sales of competing products."); *In re Boston Beer Co.*, 198 F.3d 1370, 137, 153 U.S.P.Q.2d 1056, 1057 (Fed. Cir. 1999) (rejecting claim of acquired distinctiveness where Boston Beer showed "annual sales under the mark of approximately eighty-five million dollars" and "spent about two million dollars on promotions and promotional items which included the phrase 'The Best Beer in America.'").[141]

Opposer (a) adopted a mark that by his own admission describes jazz music ("jazz") in a region of upstate New York strongly identified with apples ("apple"), (b) primarily used that APPLE JAZZ mark once a year in connection with a concert in "apple country" that got a few mentions in the local press and drew a few hundred paying guests, (c) earned ███████, *at best*, against expenses of ██████, over a period of thirty years, which translates to net earnings of at most ██████ per year on average. Regardless of what APPLE may mean in the context of other marks, goods, and services, as regards ***Opposer's mark*** for ***Opposer's services***

---

[141] *See also In re Detroit Rivertown Brewing Co.*, No. 86640818, 2017 WL 3446792, at *4 (T.T.A.B. Jul. 10, 2017) (nonprecedential) (rejecting claim of acquired distinctiveness because, *inter alia*, "$5 million in retail sales and $250,000 in advertising over a ten-year period is insufficient"); *Factory Five Racing, Inc. v. Shelby*, No. 91150346, 2010 WL 4232609, at *13 (T.T.A.B. Oct. 13, 2010) (nonprecedential) (rejecting claim of acquired distinctiveness where the applicant recorded "modest" sales over "nearly fifty years" but "during much of that period, in particular, from 1968 until 1992, the sales were minimal and intermittent to nonexistent"); *Crow Marcrum*, 2006 WL 2263327, at *4, 5 (rejecting claim of acquired distinctiveness where the applicant "spent $500,000 promoting its mark over 23 years amount[ing] to less tha[n] $22,000 in advertising per year"—"hardly a significant advertising budget"—and showed sales of $3 million over that period").

on this factual record, Opposer has entirely failed to sustain his burden of proving the combination of APPLE and JAZZ has ever functioned as a designation of source. Opposer's claims should be dismissed.

## **CONCLUSION**

Apple respectfully asks the Board to dismiss this opposition and permit Apple's APPLE MUSIC mark to register in due course.

Dated:  July 6, 2020

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */Joseph Petersen/*     

J. David Mayberry
Theodore H. Davis Jr.
Sara K. Stadler
The Grace Building
114 Avenue of the Americas
New York, New York  10036
Telephone: (212) 775-8830
Facsimile: (202) 585-0038
*dmayberry@kilpatricktownsend.com*
*tdavis@kilpatricktownsend.com*
*sstadler@kilpatricktownsend.com*

Joseph Petersen
Jason M. Gonder
1080 Marsh Road
Menlo Park, California  94025
Telephone: (650) 614-6427
Facsimile: (650) 644-0570
*jpetersen@kilpatricktownsend.com*
*jgonder@kilpatricktownsend.com*

William M. Bryner
1001 W. Fourth Street
Winston-Salem, North Carolina  27101
Telephone: (336) 607-7482
Facsimile: (336) 734-2656
*bbryner@kilpatricktownsend.com*

Attorneys for Applicant Apple Inc.

APPLICANT APPLE INC.'S TRIAL BRIEF           55
*Charles Bertini v. Apple Inc.*

Appx08350

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA1069511** |
| Filing date: | **07/20/2020** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Plaintiff<br>Charles Bertini |
| Correspondence<br>Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>Primary Email: jamesbertini@yahoo.com<br>Secondary Email(s): iklych@yahoo.com<br>303 572-3122 |
| Submission | Rebuttal Brief |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /james bertini/ |
| Date | 07/20/2020 |
| Attachments | Opposer Reply Brief Public Version.pdf(629524 bytes )<br>Exhibit A.pdf(559864 bytes )<br>Exhibit B.pdf(768982 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | |
|---|---|
| CHARLES BERTINI, ) | |
| ) | Opposition No. 91229891 |
| Opposer ) | Serial No. 86659444 |
| ) | Mark: APPLE MUSIC |
| v. ) | Filing Date: June 11, 2015 |
| ) | Publication Date: May 10, 2016 |
| APPLE INC., ) | |
| ) | |
| Applicant. ) | |
| ) | |

## OPPOSER'S REPLY TRIAL BRIEF

JAMES BERTINI
Attorney for Opposer Charles Bertini
423 Kalamath Street
Denver, CO 80204
303 572-3122
jamesbertini@yahoo.com

# TABLE OF CONTENTS

I.     RESPONSES TO APPLICANT'S ARGUMENTS……………………....…………4

     A.    APPLE JAZZ is NOT Primarily Merely Geographically Descriptive…………..4

     B.    Opposer Doesn't Need to Prove That His APPLE JAZZ Mark Has Acquired Secondary Meaning Because His Mark is Inherently Distinctive……………....7

     C.    Opposer's Mark Has Never Been Descriptive and Applicant's Cases Do Not Prove Otherwise……………………………………………………………....8

     D.    Applicant's Arguments Do Not Support Tacking APPLE MUSIC to APPLE….9

     E.    Tacking is Not Appropriate Because Apple's Services Under APPLE MUSIC Mark, and Goods Under APPLE Mark are NOT Substantially Identical……...12

     F.    Applicant is Not Entitled to Tack APPLE MUSIC to Alleged Foreign Common Law APPLE Marks……………………………………………………………13

     G.    Tacking APPLE MUSIC for a Wide Range of Services to Common Law Foreign Mark for Limited List of Specific Goods Should Not be Permitted…………...15

II.    REQUEST FOR JUDICIAL NOTICE AND EVIDENCE WITH THIS REPLY…...…20

III.   APPLICANT USES EXTENSIVE FOOTNOTES TO AVOID THE PAGE LIMIT….21

IV.   APPLICANT GROSSLY MISREPRENTS OPPOSER'S TESTIMONY…………….21

V.    RESPONSES TO APPLICANT'S OBJECTIONS TO OPPOSER'S EVIDENCE……22

VI.   SUMMARY………………………………………………………………………24

# TABLE OF AUTHORITIES

**Cases**

*Alcatraz Media, Inc. v. Watermark Cruises*, 107 U.S.P.Q.2d 1750 (T.T.A.B. 2013)……………9

*American Security Bank v. American Security & Trust Co*., 571 F.2d 564……………….…11

*Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 USPQ2d 1072 (TTAB 1991)…………..12

*Compania Insular Tabacalera v. Camacho Cigars, Inc*., 167 USPQ 299 (TTAB 1970)……....10

*DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd*., 695 F.3d 1247, 103 U.S.P.Q.2d 1753 (Fed. Cir. 2012) .....................................................................................................................6

*Hoover Co. v. Royal Appliance Mfg. Co*., 238 F.3d 1357, 57 U.S.P.Q.2d 1720 (Fed. Cir. 2001)………………………………………………………………………………………...9

2

*Ilco Corp. v. Ideal Security Hardware Corp*., 527 F.2d 1221, 188 USPQ 485 (CCPA 1976)………………………………………………………………………………10, 15

*In re All Island Media, Inc*., No. 78591633, 2007 WL 4438608 (T.T.A.B. Dec. 3, 2007)………..6

*In re Assoc. Theatre Clubs Co*., 9 U.S.P.Q.2d 1660 (T.T.A.B. 1988)…………………………..6

*In re Cal. Pizza Kitchen Inc.,* 10 U.S.P.Q.2d 1704 (T.T.A.B. 1988)………………………..……7

*In re Constantine,* No. 77403096, 2010 WL 4036057, at *7 (T.T.A.B. Sept. 29, 2010) (nonprecedential)……………………………………………………………………..…9

*In re Crow Marcrum, Inc*., No. 76438849, 2006 WL 2263327 (T.T.A.B. Jul. 20, 2006) (nonprecedential)..……………………………………………………………………... 9

*In re Detroit Rivertown Brewing Co.*, No. 86640818, 2017 WL 3446792, at *4 (T.T.A.B. Jul. 10, 2017) (nonprecedential)………………………………………………………………..…..9

*In re Nat'l Shooting Sports Found*., 219 U.S.P.Q. 1018 (T.T.A.B. 1983)………………….....8

*Laura Scudder's v. Pac. Gamble Robinson Co*., 136 U.S.P.Q. 418 (T.T.A.B. 1962)………..….11

*Performance Open Wheel Racing, Inc. v. United States Auto Club Inc.*, 2019 USPQ2d 208901, at *4 n.34 (TTAB 2019)…………………………………………………………………………20

*UMG Recordings, Inc. v.O'Rourke*, 92 USPQ2d 1042 (TTAB 2009)……………………………4

*Van Dyne-Crotty v. Wear-Guard Corp*., 926 F.2d 1156, 17 USPQ2d 1866 (Fed. Cir. 1991)…..10

**Statutes**

15 USC 1127………………………………………………………………………….20

**Rules**

| | | |
|---|---|---|
| FRE 201(c)………………20 | TBMP 704.12…………..20 | TMEP 1209.03(d)………...8 |
| FRE 403, 802……… 23, 24 | TBMP 1208.03…………16 | TMEP 1210.02(c)(iii)…..5, 6 |
| 37 C.F.R. 2.122(b)(2)……4 | TMEP 704.01……………5 | TMEP 1213.02………....…6 |
| 37 C.F.R. 2.122(e)……4, 23 | TBMP 704.08(b)………..23 | |
| TBMP 414……………….23 | TBMP 801.03……..…….20 | |

**Appx08534**

The essence of Applicant's Trial Brief ("App. Br.") is that because Applicant is a very large and wealthy international corporation and Opposer is a sole proprietor who supports his family from his small business, the Opposition should be dismissed.[1]  This appears to be one of several new defenses, i.e. fame of Applicant's marks. Applicant makes misleading factual statements, fabricates quotes by Opposer out of thin air, lists new registered and unregistered marks as tacking defenses, and misrepresents the law.  Then, after filing nearly 6,000 pages of documents with its NORs, Applicant decided that it had more to say than it could fit into a 55 page trial brief, so it created approximately eight pages of footnotes to cram in more argument.

## I.      RESPONSES TO APPLICANT'S ARGUMENTS

Applicant could not demonstrate priority rights in APPLE MUSIC mark ("the Mark") over APPLE JAZZ and therefore Applicant's pleaded the defenses of (1) tacking to three registrations; and (2) alleged descriptiveness of Opposer's mark APPLE JAZZ. 89 TTABVUE 8, 48 TTABVUE 21-22. As explained in Opposer's Brief ("Opp. Br.") none of three registrations listed as affirmative defenses has a priority date predating Opposer's claimed date of first use of June 5, 1985. 89 TTABVUE 42-47. Applicant relies on the dates in Reg. No. 2034964 and in Reg. No. 4088195 but the date of use in a registration is not evidence. 37 C.F.R. §2.122(b)(2). See *UMG Recordings, Inc. v.O'Rourke*, 92 USPQ2d 1042, 1047 (TTAB 2009) (dates of use not evidence). So, tacking to Registration Nos. 2034964, 3317089, or 4088195 doesn't help Applicant to prove an earlier priority date. Applicant's trial brief applies tacking to the unregistered foreign common law mark APPLE and several other marks that were not pleaded. Opposer objects to all unpleaded defenses.

### A.      APPLE JAZZ is NOT Primarily Merely Geographically Descriptive

Applicant's allegation that APPLE JAZZ is primarily merely geographically descriptive

---

[1] Applicant states correctly that it is one of the largest corporations in the world; it demonstrates its desire to privatize the word "apple" through frequent oppositions.  Indeed, last month it opposed the registration application of Franki Pineapple (Serial No. 88546733) stating that "apple" and "pineapple" "are both the names of fruits, and thus convey a similar commercial impression."  Kindergartners would disagree.

is not supported by the facts, the Lanham Act or trademark rules. Applicant makes the

misleading statement at 90 TTABVUE 52, Fn. 134 that Opposer's mark "is still being examined."

But this statement is not supported by TMEP 704.01: "The initial examination of an application

by the examining attorney must be a *complete* examination." (Emphasis in original.) Once the

first Office Action was issued, this constituted evidence that a complete examination took place.

Also according to TMEP 704.01: "The examining attorney's first Office action must be complete,

so the applicant will be advised of all requirements for amendment and all grounds for refusal".

APPLE JAZZ was thus examined and no descriptiveness was alleged by the examiner in the first

Office Action. 66 TTABVUE 11-14. Opposer's trial brief demonstrated that APPLE JAZZ is

inherently distinctive (89 TTABVUE 32-35) and it passed the test not to be geographically

descriptive. 89 TTABVUE 35-36.

A unique combination of words created the unitary mark APPLE JAZZ, a phrase without

common meaning which makes it an arbitrary mark. Opposer's inspiration and imagination

during creation of the mark cannot change the nature and appearance of the mark. An inspiration

from Cortland apples cannot make Opposer's mark geographically descriptive because this

inspiration is not reflected in the appearance of the mark. Since there is no reference to Cortland

in the mark APPLE JAZZ, Opposer's inspiration for this name has no bearing on customers'

perceptions. Applicant failed to prove that any part of the mark APPLE JAZZ or the mark as a

whole is a geographic location somewhere near Cortland, NY. Each word of the mark separately

or both words together don't describe a geographic origin of Opposer's services since different

varieties of apples are produced in more than 30 states. See Request for Judicial Notice (Jdcl. Ntc.)

below. Therefore "apple" as a part of the trademark cannot lead any customer to Cortland or even

to New York State.

Moreover, none of Opposer's exhibits show that APPLE JAZZ music festivals are related

to apple harvesting events, and none of his festivals feature apples. His music festivals always

took place in early June (59 TTABVUE 88, 29-43, 53, 57: Ex. 70 P4, Exs. 1, 5, 11, 12, 15, 25, 29 and more) and apples are not harvested in New York State during the month of June. Jdcl. Ntc.

Applicant's demand that the Board re-examine APPLE JAZZ and evaluate its components separately is not supported by rules and law. According to TMEP 1210.02(c)(iii) composite marks should be "viewed as a whole". APPLE JAZZ is a composite mark according to TMEP 1213.02. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.* 695 F.3d 1247, 103 U.S.P.Q.2d 1753 (Fed. Cir. 2012) cited in App. Br. also requires a determination "*whether the mark as a whole is merely descriptive.*" APPLE JAZZ was already properly examined following all applicable rules and law and it was not found descriptive. Even if the Board will evaluate Opposer's mark once more there is no legal basis to evaluate APPLE and JAZZ components of the APPLE JAZZ mark separately. A new examination cannot change the fact that APPLE JAZZ is inherently distinctive because it is an arbitrary mark according to TMEP 1210.02(c)(iii) and other applicable rules and law.

The statement that "opposer claims rights primarily through use of a term in a limited geographic area" is misleading and contradicts evidence presented by the Opposer. 59 TTABVUE. The use of Opposer's mark is not limited by one geographical area. He lives in Florida, and he provides his services in Florida, New York, and other states, and his customers come from many states and even abroad. 59 TTABVUE, 60 TTABVUE. Opposer's services have been advertised continuously nationwide on his website since 1998. 59 TTABVUE 88. All of Applicant's arguments regarding Cortland as "apple country" and apple harvesting events in that area are applicable to ANY other apple-producing area of the U.S.'s 32 states which produce apples. Jdcl. Ntc. None of Opposer's exhibits show that his APPLE JAZZ music festivals are related to apple harvesting events nor that Opposer's festivals feature apples. 59 TTABVUE 29, 33, 52, 56, 68, 80, 83, 88 and more.

Applicant recites a number of cases where courts or the Board found geographical descriptiveness, none of which apply here. In *In re All Island Media, Inc.*, No. 78591633, 2007

WL 4438608 (T.T.A.B. Dec. 3, 2007) (nonprecedential), the Board found that GOLD COAST was geographically descriptive because "the term "Gold Coast" evokes the very geographic area of the north shore of Long Island."  The same result was found for CALIFORNIA PIZZA KITCHEN, *In re Cal. Pizza Kitchen Inc.,* 10 U.S.P.Q.2d 1704, 1706-07 (T.T.A.B. 1988, and other cases cited by Applicant. APPLE JAZZ doesn't evoke any geographic area because apples are produced in many states and neither "apple" nor "jazz" are known as a geographical location in New York State or in any other state.

To further support its defense that APPLE JAZZ is geographically descriptive, Applicant's attorneys have fabricated two quotes out of whole cloth and attributed them to Opposer.  Applicant's trial brief at 90 TTABVUE 52 contains this passage:

*To the contrary, by Opposer's own admission, the terms APPLE and JAZZ "lose no descriptive significance in the combined expression" APPLE JAZZ, but instead "form a phrase which aptly describes the [location and] nature of [Opposer's concerts]."134*  (Italics added.)

Going to Footnote 134 to find the source won't help; it refers to Footnote 133.  Footnote 133 doesn't help either.  It references an exhibit to Opposer's deposition, i.e. a Declaration by Opposer, which does not contain these statements.  In fact, Opposer never did make these statements, nor it is plausible he could do so since he is a musician who doesn't speak in trademark legalese.  Neither has his attorney made these statements in the trial brief or in any other filing.  Since App. Br. characterizes the quotes as an "admission" by Opposer, there is no doubt as to the claimed source of the words.  Brackets are inserted into the quotes two times to indicate that words inside the brackets were not part of Opposer's original quotes but purposefully inserted for brevity or clarity, which is an acceptable way to alter a quote.  However, the use of these brackets is proof *a fortiori* that these two quotations were carefully and deliberately fabricated with the intention of deceiving the Board regarding material testimonial evidence. Opposer vociferously objects to such fabrication.

**B.   Opposer Doesn't Need to Prove That APPLE JAZZ Mark Has Acquired Secondary Meaning Because His Mark is Inherently Distinctive**

7

In his trial brief Opposer demonstrated that APPLE JAZZ is inherently distinctive (89 TTABVUE 32-35). Opposer doesn't need to prove acquired secondary meaning and all of Applicant's statements and cases regarding secondary meaning are irrelevant.

### C.   Opposer's Mark Has Never Been Descriptive and Applicant's Cases Do Not Prove Otherwise

None of Opposer's APPLE JAZZ services (66 TTABVUE 73) listed in his application to register his mark refers to "apple" or "jazz."  The phrase "apple jazz" has no common meaning and therefore doesn't describe anything, and doesn't describe any of Opposer's services but does identify the source of Opposer's services.  The mark was completely examined as explained above and was not found to be descriptive. APPLE JAZZ doesn't immediately convey knowledge of a quality, feature, function, or characteristic of Opposer's services listed in the Application (66 TTABVUE 73). Initial inspiration for creation of Opposer's mark doesn't affect how customers can view this mark as explained above.

The combination of two incongruous words, APPLE + JAZZ creates a bizarre meaning and a unique commercial impression indicating the source of Opposer's services and nothing else. The test for determining whether a mark composed entirely of descriptive terms is nonetheless inherently distinctive is whether "the juxtaposition of the words is inventive or evokes a unique commercial impression or if the term has a bizarre or incongruous meaning as applied to the goods." *In re Nat'l Shooting Sports Found.*, 219 U.S.P.Q. 1018, 1020 (T.T.A.B. 1983) (citation omitted). Only combinations achieving "a new and different commercial impression" qualify as inherently distinctive. *In re Assoc. Theatre Clubs Co*., 9 U.S.P.Q.2d 1660, 1662 (T.T.A.B. 1988); see also T.M.E.P. § 1209.03(d).  **Opposer coined the phrase "apple jazz" for his services.**  59 TTABVUE 2. The APPLE JAZZ combination achieved a new and different commercial impression and therefore has been inherently distinctive since the first day of use.

None of the marks examined in the cases cited by Applicant support its defense that Opposer's mark is descriptive and not distinctive, as the cases involve marks which are of

different character than APPLE JAZZ, and some are non-precedential. For example, *Alcatraz Media, Inc. v. Watermark Cruises*, 107 U.S.P.Q.2d 1750, 1766 (T.T.A.B. 2013) (rejecting claim of acquired distinctiveness for ANNAPOLIS TOURS after 21 years) references a geographical mark. MARYLAND FRIED CHICKEN was refused registration for similar reasons. *In re Constantine,* No. 77403096, 2010 WL 4036057, at *7 (T.T.A.B. Sept. 29, 2010) (nonprecedential).

SUBSTATION SERVICE COMPANY for "repairs and installation of electrical equipment" was denied registration as descriptive, as its income and expenses could not overcome the obvious descriptiveness of the mark. *In re Crow Marcrum, Inc*., No. 76438849, 2006 WL 2263327 (T.T.A.B. Jul. 20, 2006) (nonprecedential). The same fate befell the applicant of VANILLA JAVA PORTER for vanilla porter beer, which applicant admitted was merely descriptive. *In re Detroit Rivertown Brewing Co.*, No. 86640818, 2017 WL 3446792, at *4 (T.T.A.B. Jul. 10, 2017) (nonprecedential).

Applicant urges the Board to give great weight to Opposer's explanation of his decision to name his mark APPLE JAZZ because he was performing jazz music in New York State where apples are produced, based on *Hoover Co. v. Royal Appliance Mfg. Co*., 238 F.3d 1357, 1360, 57 U.S.P.Q.2d 1720, 1722 (Fed. Cir. 2001) ("Substantial evidence . . . supports the board's finding that 'Number One in Floorcare' is a generally laudatory phrase, and thus is not inherently distinctive. Hoover's Vice President of Marketing confirmed the self laudatory nature of the slogan.") But this argument is not well taken: Opposer's mark is not laudatory or indistinctive.

### D.    Applicant's Arguments Do Not Support Tacking APPLE MUSIC to APPLE

Applicant's entire argument supporting its tacking defense is in App. Br. 90 TTABVUE 34-41. Nearly all of this argument involves tacking broad APPLE MUSIC services (66 TTABVUE 67-68) to APPLE goods (66 TTABVUE 55):

*Gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music; video laser discs featuring music*

**Appx08540**

Applicant claims that mark APPLE and APPLE MUSIC are legal equivalents. According to *Van Dyne-Crotty v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866 (Fed. Cir. 1991), tacking standards are "stringent," tacking is "occasionally permitted," marks must be "legal equivalents," and confusing similarity is not sufficient.  Tacking in general should be condoned only in "rare instances."

The standard of legal equivalence used in reviewing efforts to "tack" the prior use of one mark onto that of another is higher than that used in evaluating two competing marks. Under the stringent standards applicable to tacking proposals, the two marks are not legal equivalents if the purchasers "would clearly differentiate them." The previously used mark must be the legal equivalent of the mark in question or indistinguishable therefrom, and the consumer should consider both as the same mark.  *Compania Insular Tabacalera v. Camacho Cigars, Inc.*, 167 USPQ 299, 303-04 (TTAB 1970).  However, for the purposes of "tacking," even if the two marks are confusingly similar, they still may not be legal equivalents. Id. Instead, the marks must create "the same, continuing commercial impression," *Ilco Corp. v. Ideal Security Hardware Corp.*, 527 F.2d 1221, 1224, 188 USPQ 485, 487 (CCPA 1976), and the later mark should not materially differ from or alter the character of the mark attempted to be "tacked."

The average purchaser normally retains a general, rather than specific, impression of trademarks.  By adding the word "music" to the word "apple" and creating APPLE MUSIC Applicant significantly altered the character of mark APPLE. APPLE and APPLE MUSIC are different by appearance on its face. There is no similarity in meaning between these marks. The common word "apple" refers to a fruit. The phrase "apple music" has no common meaning. There is no confusing similarity between APPLE and APPLE MUSIC at all. APPLE MUSIC doesn't create the same, continuing commercial impression as APPLE such that the consumer would consider them both the same mark. Accordingly, mark APPLE MUSIC is not the legal equivalent of mark APPLE. Disclaiming "music" (in the USPTO application) from the composite

10

mark APPLE MUSIC doesn't remove this portion of the mark from the view of potential customer and therefore customers view this mark as whole and cannot view APPLE and APPLE MUSIC as the same mark. A disclaimer only indicates that Applicant does not claim an exclusive right to the specified element of the mark by itself but it doesn't exclude this element from the appearance of the mark for purchasers.

The nonprecedential decision Applicant references in *Laura Scudder's v. Pac. Gamble Robinson Co*., 136 U.S.P.Q. 418 (T.T.A.B. 1962) is inapposite to the instant situation as those marks are for the same type of goods. There is no discussion of tacking of services on goods.

Applicant argues that since a court found AMERICAN SECURITY and AMERICAN SECURITY BANK to be legal equivalents, this decision supports Applicant's tacking defense. However, both of these marks were used for banking services. In the case of Applicant, APPLE was used for a *limited list of goods* and APPLE MUSIC is used for a *wide range of services* as shown above. *American Security Bank v. American Security & Trust Co*., 571 F.2d 564, 197 U.S.P.Q. 65 (C.C.P.A. 1978)

The argument that consumers will be focused "on the leading APPLE component" is a speculation. Applicant didn't offer any evidence that potential customers will be focused on word "apple" when they look for the services listed in the Application for the Mark. Applicant didn't provide entertainment services under mark APPLE (64 TTABVUE 61-63) and no evidence was produced for such services under mark APPLE despite requests for such production (89 TTABVUE 25 ¶¶70,71) and Motion to Compel (22 TTABVUE).  The resultant Order on this Motion states: "Opposer's Requests for Production Nos. 8 through 12 seek documents regarding the sale, license, manufacture, distribution and marketing of certain goods and services prior to 1985 related to registrations owned by Applicant and pleaded in its answer".  But since "Applicant states that 'such documents are not in Apple's possession, custody, or control'" (35 TTABVUE 8) the documents were not produced. Applicant makes endless claims about fame

(unpleaded defense) of its predecessor Apple Corps' mark APPLE but can't produce even ONE piece of advertising or article about such alleged famous services or products.

Consumers are familiar with iTunes (64 TTABVUE 64) services as a source of music and entertainment. 90 TTABVUE 21. Since APPLE mark was not used for services or even goods on Applicant's website (64 TTABVUE 61-63) and word "apple" used on the website as a reference to Apple, Inc, consumers have no reason to look at "apple" as the leading component.

The word "music" has a great significance in the Mark because it *suggests* that APPLE MUSIC may be an entertainment service. Consumers looking for music and entertainment will be focused first of all on "music" portion of the mark. The argument that the APPLE mark is known for The Beatles' records doesn't make an association of APPLE mark for records with Applicant or Applicant's goods or services. Consumers are unlikely to search the USPTO website to learn that the trademarks of Apple Corp Ltd. were transferred to Apple, Inc. On Applicant's website consumers obtained entertainment services under iTunes mark and Apple was always a reference to Apple, Inc. Therefore, APPLE MUSIC consumers view this mark as a whole with focus on the "music" portion as its main significance. APPLE and APPLE MUSIC are NOT legal equivalents.

### E. <u>Tacking is Not Appropriate Because Apple's Services Under APPLE MUSIC Mark, and Goods Under APPLE Mark are NOT Substantially Identical</u>

 "The tacking of the use of a mark for certain goods or services onto the use of the same mark for other goods or services … should be permitted only when the two sets of goods or services are 'substantially identical.'" *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991).

Applicant uses sleight of hand to tack a wide range of services to a short list of specific goods by referring to such goods and services as "offerings" (90 TTABVUE 37), a definition not contained in the Lanham Act. In this case the marks APPLE and APPLE MUSIC are not the same and a set of goods is compared to a set of substantially different services. Goods in mark APPLE

12

(66 TTABVUE 55) and services in Application for APPLE MUSIC (66 TTABVUE 67-68) are not substantially identical on their face.

      **F.**     **Applicant is not Entitled to Tack APPLE MUSIC to Alleged Foreign Common Law APPLE Marks**

Despite being noticed in the Board's March 1, 2019 order partially granting Opposer's Motion for Summary Judgment ("MSJ") that "Applicant failed to properly plead any of the other defenses" and therefore such defenses were not considered (45 TTABVUE 14), Applicant brings unpleaded defenses via its trial brief. Applicant claims tacking of the APPLE MUSIC mark for services in Class 41 to the unregistered alleged common law mark APPLE for goods in Class 9, and to unregistered alleged common law mark APPLE for unspecified services (90 TTABVUE 38, Fn. 109) owned by foreign company Apple Corps Ltd. some time in the past. Both common law marks are unpleaded defenses and Opposer objects to them.

Apple Corps Ltd.'s common law **service** mark was not listed as an affirmative defense in the Amended Answer (48 TTABVUE 21-22) and Opposer cannot even determine the entire list of services for this unregistered foreign common law mark since Applicant raises this defense in a footnote for the first time in its trial brief. 90 TTABVUE 38, Fn. 109.

Applicant's statement that "Apple Corps adopted the APPLE word mark and the visual equivalents shown below (collectively, the 'APPLE Mark') **as service marks**" (emphasis added) (90 TTABVUE 12) is deceptive and contradicts Opposer's Statements of Facts (89 TTABVUE19-20  ¶¶44-49, 54-56,58,59) based on the written deposition of Apple Corp Ltd. CEO Jeffrey Vaughn Jones. This statement is also not supported by any evidence of use of APPLE mark as a **service** mark in the U.S. before claimed priority date of Applicant's Reg. No. 4,088,195 and Applicant admitted not having such evidence. 89 TTABVUE 24 ¶65. Tacking to unregistered foreign service mark APPLE (if it even existed) should not be permitted because this service mark is an unpleaded defense and rights in such a mark is not established with competent evidence. Nevertheless, Applicant states at 90 TTABVUE 38, Fn. 109:

*"Apple seeks to tack its constructive use of APPLE MUSIC for production and distribution of sound recordings to Apple Corps' use of APPLE for the very same services, which necessarily are 'substantially identical.'"*

There was no "*production of sound recordings*" services by Apple Corps in the U.S. simply because Apple Corps didn't have a recording studio in the U.S. 62 TTABVUE 42, ¶27. Apple Studio, a recording studio of Apple Corps abroad, operated during 1969-1975. 62 TTABVUE42, ¶28. Tacking to **abandoned services abroad** is improper.

Applicant totally relies on Mr. Jones testimony. Mr. Jones makes the legal conclusion that "[s]ince 1968, Apple Corps has continuously used the APPLE word mark in connection with the production and/or distribution of sound recordings and film in the United States" (71 TTABVUE 8) without providing supporting documents for such statement. And this statement contradicts his written deposition responses. 62 TTABVUE34-48. Mr. Jones became employed by Apple Corps only on May 7, 2007 (71 TTABVUE 2) so he can't have personal knowledge about Apple Corps' commercial activity before joining the company without having documents from Apple Corps' archives. Mr. Jones had testified previously about absence of documents related to use of mark APPLE in commerce. 89 TTABVUE19-20, ¶44-49, 54-56, 58, 59.

There should be a demonstration that Apple Corps' unregistered common law service mark has been used on a regular and recurring basis in conjunction with the goods or services at issue in the U.S. If the evidence submitted is uncertain as to a specific day, month, or year the Board will resolve the uncertainty against the party seeking to prove the date. Applicant never refers to dates certain in its trial brief because no documents show dates certain, relying instead on Mr. Jones' vague statements about use of APPLE mark in the 1980s and 1990s (90 TTABVUE 32) sans specific dates and unsupported by documents.

Apple Corps Ltd. did not provide any services listed in the Application for the Mark before June 5, 1985 because: (a) Internet did not exist at that time and Apple Corps had no websites to offer such services (89 TTABVUE 22-23); (b) Mr. Jones admitted that Apple Corps didn't produce live performances under mark APPLE in the U.S. (89 TTABVUE 22); (c) Apple

14

Corps has no documents to show any other entertainment services provided in the U.S. for period more than three years (89 TTABVUE 21-22); (d) Apple Corps doesn't have documents to show production of goods in the U.S. for more than three years (89 TTABVUE 20); and (e) no documents were offered to show production of goods in the U.S. in general.

### G.     Tacking APPLE MUSIC for a Wide Range of Services to Common Law Foreign Mark APPLE for Limited List of Specific Goods Should Not be Permitted

Apple Corps Ltd.'s common law mark APPLE for goods in Class 9 was not listed as an affirmative defense in the Amended Answer (48 TTABVUE 21-22) and therefore it should not get any consideration for tacking. Opposer objects to it.  Priority dates for both marks listed as affirmative defense as Reg. Nos. 2,034,964 and 3,317,089 for goods in Class 9 formerly owned by Apple Corps don't predate of date of first use by Opposer as it shown in Opposer's Brief.

Tacking APPLE MUSIC for a wide range of services to common law foreign mark APPLE for a limited list of specific good is also improper because these marks are not legal equivalents, the marks don't create the same continuing commercial impression and set of services are not substantially identical to set of goods as is shown above.

"The law permits a user who changes the *form* of its mark to retain the benefit of its use of the earlier form, without abandonment, if the new and old forms create the same, continuing commercial impression" *Ilco Corp. v. Ideal Security Hardware Corp*., 527 F.2d 1221, 1224, 188 USPQ 485, 487 (CCPA 1976).

To demonstrate priority at common law, the trademark statute requires that the mark be previously used in the United States (and not abandoned). Opposer alleged that Apple label was wound up and it was reactivated only in the 1990s. 89 TTABVUE 21. Applicant failed to establish its common law rights in the mark before June 26, 1995 through competent evidence as required. Applicant failed to produce documents requested by Opposer showing sales in the U.S. under mark APPLE. 89 TTABVUE 25. Applicant failed to show continuous use in commerce of mark APPLE in the U.S. during some periods of time exceeding three consecutive years.

15

**Appx08546**

Applicant had an opportunity to rebut Opposer's Wikipedia evidence (64 TTABVUE 21-38) regarding Apple label by showing continuous use of the mark during all disputed period but failed to do so. "The Board will consider evidence taken from Wikipedia so long as the nonoffering party has an opportunity to rebut that evidence by submitting other evidence that may call into question the accuracy of the particular Wikipedia information." TBMP 1208.03.

Applicant didn't submit other evidence that may call into question the accuracy of the particular Wikipedia information. Making his legal conclusions regarding continuous use of mark APPLE for records, Mr. Jones simply ignores more than three years nonuse of the mark before application for this mark was filed on June 26, 1995. Mr. Jones became employed by Apple Corps only on May 7, 2007 (71 TTABVUE 2) and he can't have personal knowledge regarding use of marks and he failed to produce clear and convincing evidence that mark APPLE was continuously used in commerce for goods before June 26, 1995 and never was abandoned.



Exhibit 5 (71 TTABVUE 69) doesn't demonstrate sales of goods in the U.S. under mark APPLE because Capitol Records produced The Beatles records on its own label. 77 TTABVUE 11-12, 64 TTABVUE 12. The fact that the Beatles were paid for records sales doesn't mean that records had mark APPLE on the package as is shown at 64 TTABVUE 12. "Mr. Jones acknowledges that distribution of sound recordings bearing the APPLE word mark and Apple Corps logo diminished in the 1980s". 90 TTABVUE 18. When the Beatles records were produced

16

on the Parlophone label APPLE mark also was not used.  64 TTABVUE 56.  Sales of the Beatles records under other marks don't constitute use of the mark APPLE in commerce.

While Applicant relies on (69 TTABVUE) TV Drama series 1984-1986,  Mr. Jones denies existence of documentary evidence showing that Apple Corps provided production and distribution services of television programs under standard character mark APPLE in the U.S. during period January 1, 1983 – December 31, 1985. 89 TTABVUE 22. It makes Applicant's  69 TTABVUE not related to mark APPLE.

Mr. Jones makes statements about The Beatles as a famous band but neither he, Applicant's attorneys nor Applicant's witnesses could produce ANY newspaper articles or advertising about services provided or albums released in the U.S. before application for mark APPLE was filed.  Instead they rely on third party website discogs.com with unclear images and admission that Apple Records items listed on a website that can be counterfeited.  Moreover, records related to The Beatles albums on discogs.com appeared only in 2014 (89 TTABVUE 26) and evidence from such third party source is hearsay and must be stricken.  On its evidence from discogs.com Applicant even listed records manufactured and sold in other countries because many of them were not sold in the U.S. Opposer objected to use of evidence from discogs.com.

Applicant failed to produce copies of real labels of records with clear production year under mark APPLE in the period 1981–1993 in the U.S. The excuses regarding the difficulties to obtain such evidence contradicts endless statements about fame of The Beatles and ability to find images of The Beatles records going back to the 1960s. If records with APPLE mark would exist for the period 1981–1993 it would not be a problem to get copies of labels – proud fans of the Beatles place everything online, and public libraries preserve newspapers, magazines, books and other media from that time period.

Applicant tries to convince the Board that sales of any The Beatles records is equivalent of sales under mark APPLE while many The Beatles records are sold on other labels especially before 1993. Applicant could not avoid a gap in use of mark APPLE between 1981 and 1993 (90

TTABVUE 14) and jumps from records in 1981 to the 1993 CD era. 90 TTABVUE 14. Opposer first date of use of June 5, 1985 has priority over any date in 1993, year when CDs with APPLE mark appeared in the U.S. market. Production and distribution of records before abandonment of mark APPLE is irrelevant in this case because common law rights on mark starts from a new date after three years of nonuse.

Applicant declares its absolute priority in APPLE mark pointing that Opposer's mark is not registered, ignoring the fact that trademark rights in the U.S. are created by continuous use of the mark and not by registration. When Opposer started to use his APPLE JAZZ mark on June 5, 1985 for entertainment services, Applicant's company name was Apple Computer, Inc. and it was known only for manufacturing Macintosh computers. 87 TTABVUE 6. On this date a foreign company Apple Corps Ltd. didn't apply for registration of any standard character mark APPLE in the U.S. 89 TTABVUE 19-20 ¶44. Apple Corps operated in the U.S. through two companies with identical names Apple Records, Inc (89 TTABVUE 19), so word "apple" was not used even as a trade name. Before June 8, 2015 when APPLE MUSIC was announced. 90 TTABVUE 23. Applicant didn't use the Mark for entertainment services in the U.S. and it didn't provide any evidence of use of mark APPLE for the services listed in the Reg. No. 4088195 or Application for the Mark. In any event, the priority date for Reg. No. 4088195 is after Opposer's date of first use (89 TTABVUE 45-47) and no competent evidence was offered to show common law use of mark APPLE for entertainment services.

Basically, Applicant wants to convince the Board that a foreign, unregistered - for the period of 1968-1995 - single word mark APPLE for limited list of products can reserve rights for Applicant for all combinations of this word in a wide range of services despite the fact that continuous use of the mark APPLE was not established for this common law mark prior to registration.

Applicant's statement "Since at least 1977, Apple has extensively used its famous APPLE word mark" is deceptive and not supported by ANY evidence. Applicant's witness Mr.

18

La Perle states that Applicant was known as Apple Computer, Inc. (83 TTABVUE 3) Applicant

was Apple Computer even in 2006. 64 TTABVUE 78.  Mr. La Perle has no personal knowledge

regarding use of Apple Computer's marks before his employment in 1999 (83 TTABVUE 3) and

he didn't offer any competent evidence to demonstrate such use. According to publicly available

information, Applicant offered Macintosh computers since 1984 and standard character mark

APPLE was not used for this product. Name LISA for Applicant's computers was abandoned in

favor of Macintosh in the beginning of 1984.  In any event Applicant failed to demonstrate that

standard character mark APPLE was in continuous use by Applicant prior to June 5, 1985 and

was famous before this date. Tacking to Apple logo or word APPLE marks for computer and

other similar goods should not be permitted because absolute difference between such goods and

entertainment services listed in the Application for the Mark and these marks are unpleaded

defenses.

Applicant states in its brief that it uses different word marks for its products and services:

QuickTime, iPod, iTunes, iTunes Music Store, iTunes Store, Musical Instrument Digital Interface

("MIDI") card and audio-recording capabilities in Applicant computers with apple logo – all of

them are irrelevant to use of standard character word APPLE or APPLE MUSIC for

entertainment services listed in the application for the Mark. Hardware and software for music

recording with Applicant's logo is not providing entertainment services under standard character

mark APPLE. All the above marks are unpleaded defenses and Opposer objects all such marks to

be used as defenses for tacking. Also, priority dates for these marks are not established by

Applicant. According to publicly available information all the above marks' first use dates is after

Opposer's June 5, 1985 date of first use.

Applicant's statement about "Opposer's sporadic use and *de minimis* promotion of his

claimed mark prior to the filing date of Apple's application" is misleading. Opposer demonstrated

that since 1998 (when Applicant was known as Apple Computer, Inc and didn't offer any

entertainment services on its website at all. 64 TTABVUE 68. APPLE JAZZ mark and Opposer's

19

services were continuously promoted on Opposer's website applejazz.com. Later Opposer expanded such continuous promotion to Facebook and YouTube. 59 TTABVUE. In recent years Opposer's newspaper ads and mail ads were mostly for his old- fashioned fans of the festival that don't use Internet or emails.

Applicant tries to mislead the Board by stating that last Opposer's festival took place in 2014 implying that no more concerts took place further despite the fact that documents were timely disclosed showing other concerts produced by Opposer during last few years and other services were provided also. (59 TTABVUE 148- 157, 253-268, 60 TTABVUE 39, 42-44, 54, 75-122)

Applicant's analysis about amount of money made by Opposer are irrelevant because the Lanham Act doesn't discriminate against trademark owners based on income. Applicant tries to convince the Board that small business owners must give up on their long-used marks if a large corporation decides to adopt a trademark almost identical to a mark used by its customer. Opposer as a customer of Applicant used APPLEJAZZ MUSIC (59 TTABVUE 181), never received cease and desist letter regarding such use (89 TTABVUE 17) and suddenly discovered that Applicant decided to use a mark almost identical to his mark.

There is nothing in the Lanham Act supporting the idea that an unregistered, abandoned one-word, foreign mark can reserve rights for all combinations of that word in all classes in the future.  The law at 15 U.S.C. § 1127 prohibits reserving rights in marks without use in commerce.

## II.    REQUEST FOR JUDICIAL NOTICE AND EVIDENCE WITH THIS REPLY

Applicant supports its claim that Opposer's mark is geographically descriptive because he promotes apple harvest festivals, but this is not true.

Opposer requests under Fed. R. Evid. 201(c) that the Board take judicial notice of these three facts: (1) Apples are grown commercially in 32 states; (2) Apples are not harvested in June; and (3) There are several varieties of apples commercially grown in the U.S.  See also TBMP 704.12, and *Performance Open Wheel Racing, Inc. v. United States Auto Club Inc.*, 2019

20

USPQ2d 208901, at *4 n.34 (TTAB 2019) (Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format).

Information showing these three facts are highlighted in yellow and attached as Exhibit A (Agricultural Marketing Resource Center of Iowa State University, funded by the USDA); and B (2020 Apple Festivals in New York, by pickyourown.org)

## IV.    APPLICANT USES EXTENSIVE FOOTNOTES TO AVOID THE PAGE LIMIT

According to TBMP 801.03: "Extensive single-spaced footnotes may not be used as a subterfuge to avoid the page limit."  However, that is exactly what Applicant has done. Applicant's trial brief is 55 pages, the limit, and it contains 141 footnotes comprising approximately eight pages of text which is single-spaced and in smaller font.  Many of the footnotes do not reference evidence, but rather additional facts, cases, case analysis and argumentation.  Applicant even raises and argues a new defense in the footnotes as explained above. This is in addition to Applicant's paper blizzard of nearly 6,000 mostly irrelevant documents filed via its NORs.

The Board should not consider Applicant's trial brief due to these footnotes.

## IV.    APPLICANT GROSSLY MISREPRESENTS OPPOSER'S TESTIMONY

Throughout the Brief, counsel for Applicant consistently and grossly misrepresents Opposer's testimony.  As one example, Applicant states at 90 TTABVUE 10 that Opposer applied to register his mark *"despite—and with full knowledge of—Apple's longstanding conflicting rights in the APPLE trademark for a broad array of music and entertainment services. 4"*  Footnote 4 refers to four locations in Opposer's transcript where he states, seriatum, (1) he is a Beatles fan; (2) "I've seen it, yes," in response to the question "Are you familiar with the Beatles -- the record label formed by the Beatles in 1968, Apple?"; (3) that most of the studios where he works use Macintosh and other Apple products; and (4) I decided to register my trademark to protect my 30 year business from well-known aggression by Applicant to thwart legitimate trademarks.

21

There is nothing in these four transcript references that remotely supports Applicant's statement at 90 TTABVUE 10. To the contrary, the last statement shows that Opposer believed he had priority rights in his mark over Apple.

As another example, Applicant's Brief "The record and Opposer's trial brief alike are replete with admissions against interest...7". 90 TTABVUE 11, 12. But Footnote 7 simply refers to Opposer's Trial Brief as a whole with no actual location of even one of such abundant admissions, leaving it to the Board's imagination. 90 TTABVUE 11.

Stating repeatedly that Opposer "last offered the festival six years ago, in 2014" (90 TTABVUE26-27) is a knowingly false statement, since it references Opposer's *2018* deposition statements immediately before he responded in the affirmative to this question by Applicant's counsel: "And you last played last year in 2017…? 73 TTABVUE 12 (Apple's Fifth N.R., Bertini Dep. Tr. 32:21). At other locations, Applicant acknowledges that Opposer held concerts in later years. 90 TTABVUE 26, 28.

Applicant knowingly and falsely (and confusingly) stated at 90 TTABVUE 26 that: "While Opposer claims to have performed under the APPLE JAZZ mark since [2014], ***he has not produced any documents showing any performances of the Apple Jazz Band after 2017***." The reason this is false is because at 59 TTABVUE 256 (JAZFAX dated 2018) and 86 TTABVUE 3 (Bertini Rebuttal Decl. ¶ 5(b)) Opposer discusses a November 3, 2018 Florida concert, referencing a copy of a ticket to this concert entitled "AppleJazz Records Presents Ronnie Leigh". 86 TTABVUE 138. Applicant knows about this ticket copy because its trial brief at 90 TTABVUE 26 discusses this exact paragraph in Opposer's Rebuttal Declaration.

## V.    RESPONSES TO APPLICANT'S OBJECTIONS TO OPPOSER'S EVIDENCE

Opposer requests to overrule Applicant objections based on Hearsay on:

(1)      59 TTABVUE and 60 TTABVUE at ¶¶ 7-9, 25, 27, Exs. 1, 4, 5, 9, 11, 12, 13, 14, 15, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, 32, 35, 40, 43, 85, 87, 88, 89, 90, 92, 93, 95, 96, 105 at page 1, 107 at page 2, 113 at pages 1-2, 113 at pages 5–6, 114 at pages 2-3, 114 at pages 4–8, 161, 162;

(2) 59 TTABVUE ¶ 12, Exs. 70, 124; (3) 59 TTABVUE and 60 TTABVUE ¶¶ 20-31, Exs. 2, 3, 7, 8, 19, 33, 34, 36, 37, 38, 39, 42, 46, 47, 50, 51, 91, 94, 104, 105, 119, 160, 163, 176, 177: Hearsay. FED. R. EVID. 801-802. This evidence consists of (1) newspaper articles and advertising, (2) Opposer's webpages, (3) financial records and documents that have been submitted via declaration ofCharles Bertini regarding his asserted business activities and have been authenticated by Mr. Bertini's personal testimony and by the stipulation regarding authentication of documents produced in response to written discovery and depositions. Thus, they are probative for what they purport to show on their face and for the truth of the matter asserted under the business record exception to hearsay, specifically, that these records were made at or near the time by—or from information transmitted by—someone with knowledge, they were kept in the course of a regularly conducted activity of his business, and making the records was a regular practice of that activity, not as expert testimony nor legal conclusions. Opposer has proffered these materials for what they show on their face. The truth of any matters asserted in them is attested by competent in-court witness testimony, and thus does not constitute hearsay.  Internet Evidence and Hearsay. FED. R. EVID. 802 and T.B.M.P. §§ 704.08(b). The Board should overrule Applicant's objection that these publicly available documents are hearsay. Printouts from websites can be introduced as evidence by filing a Notice of Reliance. See 37 C.F.R. § 2.122(e). These materials are admissible for what they show in their face..

**Opposer requests to overrule Applicant objections based on relevance o**n: 59 TTABVUE and 60 TTABVUE ¶¶ 29-31, Exs. 176, 177 - "We find that annual sales and advertising figures relating to Opposer's services is relevant to Opposer's claim of priority of use since 1985. *See also* TBMP § 414. 45 TTABVUE 9.

**Opposer requests to overrule Applicant objections based on relevance on:**

59 TTABVUE ¶ 10, Ex. 99, 59 TTABVUE ¶¶ 39-41, Ex. 103, 59 TTABVUE, 60TTABVUE ¶¶ 42-46, Exs. 84, 100, 102, 106, 109, 110, 147, 148, 168, 59 TTABVUE ¶¶ 47-48, Ex. 98, 59TTABVUE ¶ 53, 59 TTABVUE ¶¶ 59-61, Exs. 59, 61.  Relevance. FED. R. EVID. 403.

23

Because this evidence relates to services at issue in this proceeding, it is relevant to determining whether Opposer has priority of use of his claimed APPLE JAZZ mark. This evidence is relevant to establish continuous use in commerce of Opposer's mark. Testimonial evidence may be sufficient to establish prior and continuous use because it is based on personal knowledge of Opposer about all of the facts in these documents.

**VI.    SUMMARY**

Opposer offered clear and convincing proof of actual use earlier than the dates claimed in the Application for the Mark and earlier than priority dates in registrations listed as affirmative defense. Opposer's testimonial evidence may be sufficient to establish prior and continuous use because it is based on personal knowledge of the facts.

Applicant failed to demonstrate bona fide use in the ordinary course of trade of mark APPLE MUSIC or mark APPLE for services in Class 41 before Opposer's date of first use.  As established above, tacking APPLE MUSIC for services in Class 41 to mark APPLE for goods in Class 9 should not be permitted. For the foregoing reasons and based on the evidence properly of record in this proceeding, Opposer Charles Bertini respectfully requests that registration of the mark shown as Serial No. 86659444 for APPLE MUSIC be denied and that final judgment be made for Opposer in this proceeding.

July 20, 2020                          /s/ James Bertini                          
                                       JAMES BERTINI
                                       Attorney for Opposer Charles Bertini
                                       423 Kalamath Street
                                       Denver, CO 80204
                                       303 572-3122
                                       jamesbertini@yahoo.com

24

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1134052** |
|---|---|
| Filing date: | **05/15/2021** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding | 91229891 |
|---|---|
| Party | Plaintiff<br>Charles Bertini |
| Correspondence Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>Primary Email: jamesbertini@yahoo.com<br>Secondary Email(s): iklych@yahoo.com<br>303 572-3122 |
| Submission | Request for Reconsideration of Final Board Decision |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /James Bertini/ |
| Date | 05/15/2021 |
| Attachments | Motion for Reconsideration.pdf(770038 bytes ) |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| CHARLES BERTINI, | ) | Opposition No. 91229891 |
| | ) | Serial No. 86659444 |
| Opposer | ) | Mark: APPLE MUSIC |
| v. | ) | Filing Date: June 11, 2015 |
| APPLE INC., | ) | Publication Date: May 10, 2016 |
| Applicant. | ) | |

### OPPOSER'S MOTION FOR RECONSIDERATION OF FINAL DECISION

### I.     INTRODUCTION

Opposer Charles Bertini filed this opposition to protect his common law service mark rights in APPLE JAZZ by opposing registration of Applicant's APPLE MUSIC service mark in class 41, which the parties and the Board agree are likely to be confused.  Earlier, Opposer had filed an application to register his mark APPLE JAZZ.  By Decision dated April 16, 2021 ("the Decision") the Board dismissed the Opposition.

As an affirmative defense Applicant pleaded priority and ownership of APPLE marks Reg. Nos. 2034964 and 3317089 for goods in Class 9 and Reg. No. 4088195 for services in Class 41. According to USPTO records all three marks have priority dates after Opposer's June 13, 1985 date of first use.

Opposer coined his APPLE JAZZ unitary mark in 1985 (59 TTABVUE 2-3) and started to use it in commerce in Class 41 for entertainment services while Applicant (at that time Apple Computer, Inc.) was known only for its Macintosh computers. 87 TTABVUE 6. Foreign company Apple Corps Ltd. didn't apply for registration of any mark in the U.S. until 1995 and it didn't provide any entertainment services in the U.S. at least during period 1979-1989. Since 2011 Opposer communicated with Applicant's iTunes team and signed an Agreement as APPLE JAZZ MUSIC (59 TTABVUE 25), a

1

common law mark used by Opposer since 1998 (59 TTABVUE 23, 24). In 2015 Applicant decided to use service mark APPLE MUSIC similar to its customer's marks APPLE JAZZ and APPLE JAZZ MUSIC.

In the Decision the Board acknowledged that "Opposer was using APPLE JAZZ as a service mark … at least as early as June 13, 1985" (101 TTABVUE 20) and Opposer has established that APPLE JAZZ mark as a whole is inherently distinctive. 101 TTABVUE 24. The Board found that "Applicant has used the mark APPLE MUSIC since at least June 8, 2015". 101 TTABVUE 25. Regarding use of service mark APPLE Reg. No. 4088195, the Board stated that: "Applicant was unable to establish its use of the mark for any of these services prior to Opposer's 1985 priority date". 101 TTABVUE 25. Priority date for Reg. No. 3317089 is November 16, 2000 (66 TTABVUE 60) which is after Opposer's priority date.

In 1997, Apple Corps registered the mark APPLE (Reg. No. 2034964) for "Gramophone records featuring music; audio compact discs featuring music" ("the Goods") claiming a date of first use of August 1968. 101 TTABVUE 43. Witness Jeffrey Vaughn Jones, Apple Corp CEO, testified that Capitol Records, under license from Apple Corps, manufactured and distributed many of the Beatles records in the U.S. until at least 1989. 101 TTABVUE 44. A second agreement between Apple Corps and Capitol covered manufacturing and distribution of records by Capitol between 1979-1989.  101 TTABVUE 44. Example of images of The Beatles records produced by third parties is below:



64TTABVUE 56



64 TTABVUE 12

2

The Board disregarded Opposer's objections about the continuity of use APPLE mark for products despite that fact that copies of records images offered by Mr. Jones are blurred, downloaded from third party websites (objected to by Opposer) and on most it is impossible to read a year of production and to evaluate continuity of use of APPLE mark even for records.

The genericness of a portion of the APPLE MUSIC mark, the term "music", is not listed in the Applicant's defenses and therefore the alleged genericness of the term "music" has been made a part of Applicant's defense of tacking trademark APPLE for goods (Reg. No. 2,034,964) to service mark APPLE MUSIC. Applicant failed to establish and prove genericness of term "music" for the Goods listed in Reg. No. 2,034,964 (90 TTABVUE 22) and services listed in the Application (90 TTABVUE 24) for APPLE MUSIC ("the Services"), and therefore Applicant failed to establish its tacking defense because it is based on alleged genericness of term "music". The term "music" is not generic when used in connection of the Goods or the Services shown below. Applicant failed to establish the tacking defense as it was also unable to refer to a single case permitting tacking goods to services. Applicant failed to demonstrate that the set of the Services is "*substantially identical*" to the set of the Goods.

The Board recognized **the set** of the Services (101 TTABVUE 3, 4) and **the set** of the Goods (101 TTABVUE 6, Reg. No. 2,034,964 ). The Set of the Goods doesn't include "sound recordings". The Board compared ONE service from a long list of the Services, with "sound recordings" *that is not even in the list of the Goods* and avoided comparing set to set as required by case law *recognized by the Board*. Neither Applicant nor the Board referred to any authority which allows services and goods in different classes to be regarded as the same or similar. The Board's statement that "sound recordings are inseparable from the production and distribution of sound recordings" (101 TTABVUE 52) simply contradicts facts presented by Applicant and in any event it doesn't permit the Board to regard goods from Class 9 and services from Class 41 as similar.

The Board didn't give any consideration to the fact that "music" is only suggestive for the Services whereas Opposer disputed the alleged genericness of term "music" stating that it only *suggests* the Services. 92 TTABVUE 13. The Board made a factual determination that the term "music" is generic

3

without any analysis of any facts, without the two-part inquiry, and without taking under consideration evidence, especially the dictionary definition of term "music" submitted by Applicant (74 TTABVUE 241-243) and by Opposer (87 TTABVUE 689). Applicant didn't refer to any case, rule or statute supporting the fact that genericness of a term can be established by disclaiming the term in the USPTO application. The Board also didn't refer to any case supporting the fact that the genericness of a term can be proven without consideration of any facts or evidence.

The Board states that marks APPLE (for goods in Class 9) and APPLE MUSIC (for services in Class 41) are legal equivalents because the term MUSIC is generic (when used in connection with sound recordings and the production and distribution of sound recordings) despite the fact that genericness was not established in this case or in any other case.

The Board gave no consideration to Opposer's statements that word "apple" was used on Applicant's website in reference to Apple Inc. so the word "music" has great significance in the mark APPLE MUSIC. 92 TTABVUE 13.

## II. RECONSIDERATION IS APPROPRIATE BECAUSE THE DECISION IS INCONSISTENT WITH THE LANHAM ACT, THE ADMINISTRATIVE PROCEDURES ACT, US. SUPREME COURT AND FEDERAL CIRCUIT DECISIONS, AND CONTRARY TO OTHER CASE LAW AND PREVIOUS ORDERS OF THE BOARD

### A.    The Board's Holding is Fundamentally Inconsistent with Lanham Act

The Lanham Act requires actual use of mark and not reservation of right in a mark: "15 U.S.C. § 1127. *Use in commerce. The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce.*" By permitting tacking of APPLE (for one type of goods in Class 9) to APPLE MUSIC (for broad list of the Services in Class 41), the Board permits reservation of rights in any combination of original marks with other dictionary words even in different classes whereas the Lanham restricts reservation of rights in a mark without actual use in commerce.

### B.  The Board's Decision is Inconsistent with the Administrative Procedures Act

4

Rulings of the TTAB are subject to the standards of the Administrative Procedure Act (APA). *Dickinson v. Zurko*, 527 U.S. 150, 152. *Bridgestone. v. Automobile Club De L'Quest*, 245 F.3d 1359, 1361, Fed. Cir. 2001 ("We give plenary review to the Board's legal conclusions…and uphold the Board's factual findings unless they are…unsupported by substantial evidence.")

The APA at 5 U.S.C. § 706 reads in pertinent part: "The reviewing court shall… **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;… **(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute;…  In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party..."

The Board's Decision about finding the fact of the genericness of term "music" (when used in connection with sound recordings and the production and distribution of sound recordings) and alleged genericness of a few other terms are unsupported by substantial evidence. Accordingly, the finding that APPLE MUSIC and APPLE marks are legal equivalents are not supported by substantial evidence and therefore tacking of APPLE to APPLE MUSIC should not be permitted.

C.    **The Board's Holding is Contrary to Case Law and to its Previous Order in This Case**

The Board's finding was contrary to its own well-established tacking requirement. 89 TTABVUE 48.  In its Order partially granting Opposer's Motion for Summary Judgment dated March 1, 2019 ("the Order") the Board states: "It follows then that 'the tacking of the use of a mark for certain goods or services onto the use of the same mark for other goods or services … should be permitted **only** when the **two sets** of goods or services are **'substantially identical**.'"  *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp*., 19 USPQ2d 1072, 1075 (TTAB 1991)."  (Emphasis added.) 45 TTABVUE 15.

Now, in the Decision, the Board waters down its requirement and the holding of *Big Blue* by stating: "Tacking also requires that the goods or services marketed under the earlier mark must be 'the same or similar' as the goods or services marketed under the later mark. See, e.g., *In re Baroid Drilling Fluids Inc. v. Sun Drilling Prods.*, 24 USPQ2d 1048, 1051 (TTAB 1992); [*Big Blue Id. At 1075.]*"

5

Despite the fact that the Decision refers also to the same page of *Big Blue as in the Order,* the Board interpreted and applied the tacking requirement differently in the Decision.

Whereas the law – and the Board itself - requires the Board to compare the **set** of the Services (APPLE MUSIC) to the **set** of the Goods of (APPLE Reg. No. 2,034,964), the Board compares only **one** service from the long list of the Services to *"sound recordings" - which are not even listed in the Goods.* The Board's statement that "sound recordings are inseparable from the production and distribution of sound recordings" (101 TTABVUE 52) simply contradicts facts presented by Applicant but Board uses it for finding that "*the sound recordings identified in Applicant's registrations to be "the same or similar" for purposes of tacking as the production and distribution of sound recordings…".*

First, neither Applicant nor the Board referred to any authority which allows services and goods in different classes to be regarded as the same.

Second, "sound recordings" are not identified in No. 2,034,964. Reg. No. 3317089 priority date is after Opposer's priority date and therefore it can't be used for tacking. It is not established that "sound recordings" and "gramophone records" are identical goods, and in any event "sound recordings" has a broad meaning in comparison with "gramophone records", so "gramophone records" doesn't include "sound recordings".

Third, production and distribution of The Beatles records was done by third parties and under third party marks such as Capitol. *"As Jones testified: Apple Corps has been involved in the production and distribution of some of the most famous sound recordings…"* 101 TTABVUE 52. Apple Corp's involvement in the production and distribution was limited by obtaining royalties for sound recordings. Involvement doesn't mean at all that Apple Corps provided services of production and distribution. "Involvement" is not defined by the Lanham Act as a basis for obtaining trademark rights or to show use of a mark in commerce. Apple Corp didn't show any evidence of its own advertising of production and distribution services under mark APPLE at least during 1979-1989. Apple Corps obviously didn't conduct sales of goods or services otherwise it would not have been a party to a lawsuit over a decade to obtain royalty payments as testified by Mr. Jones, which it would have collected itself if it was

conducting the sales: *"In fact, between 1979 and 1989, Apple Corps was involved in suit against Capital Records and EMI over royalty payments."* This lawsuit shows that during at least during these ten years services were provided by third parties and under third parties' marks. Records of third party records manufacturer Capitol don't even bear mark APPLE. 64 TTABVUE 12. Production and distribution services were done under third parties' marks and separately from Apple Corps. The APPLE mark on records itself doesn't mean at all that production, manufacturing or distribution services were provided by Apple Corps. Services and goods in fact are separated between at least two companies.

The Board doesn't take under consideration that *Baroid* does nothing to change strict tacking standards and it doesn't support tacking goods to services. Moreover, *Baroid* doesn't support creation of a loophole and therefore *Baroid* doesn't support Applicant: *"The loophole would be unacceptable because … the priority-of-use issue under Section 2(d) (when priority of use is in issue) is whether the defendant's use of its mark sought to be registered… precedes the plaintiff's use of plaintiff's pleaded mark(s), not whether the defendant has priority of use of another mark or marks which the plaintiff's mark(s) so resembles as to be likely to cause confusion."* *Baroid* 24 USPQ2d 1048 at 1051.

The phrase "the same or similar" utilized by Board (to be "the same or similar" for purposes of tacking... Baroid, 24 USPQ2d at 1052 (101 TTABVUE 52)) is taken out of context and it is not a new finding overruling Big Blue but only a part of the discussion in *Baroid. Baroid* doesn't establish a standard how to compare goods or services but instead refers to *Van Dyne-Crotty's* holding that *"The standard for tacking is very strict and tacking in general is permitted only in "rare instances." Van Dyne-Crotty,* 17 USPQ2d at 1869; *Wet Seal, Inc. v. FD Mgmt., Inc*., 82 USPQ2d 1629, 1635 (TTAB 2007).

A strict standard for comparison of goods or services is established by *Big Blue* as shown above. "Similar" is a more subjective then finding two sets to be "substantially identical." The Board avoided a comparison of the set of the Goods to the set of the Services.

Facts show that the set of Services is totally different from the set of the Goods, and if the Board compares the two sets it would find that they are not substantially identical at all. 92 TTABVUE 16. The Board's finding that "Applicant, by tacking the use of the mark APPLE by Apple Corps, has established

7

use of the mark APPLE MUSIC for the 'production and distribution of sound recordings' as early as August 1968" was not based on substantial evidence and such finding contradicts case law. **Tacking goods to services is not supported by any case law.** Neither the Board nor any court has ever allowed tacking goods to services because it contradicts *Van Dyne-Crotty* and *Big Blue*.

The Board holds against *Van Dyne-Crotty* and against *Baroid* when it applied a lower standard and created "an unacceptable loophole to the stringent standards". The Board doesn't take under consideration the fact that the set of the Goods is not substantially identical to set of the Services.

The Board holds against the *American Paging* case because it doesn't focus on both marks in their entirety (as required by law) to determine whether each conveys the same commercial impression. *American Paging Inc. v. American Mobilphone Inc.*, 13 USPQ2d 2036, 2039 (TTAB 1989), aff'd 923 F.2d 869 (Fed. Cir. 1990). The Board excludes the term "music" based on allegation of genericness unsupported by evidence and finds without substantial evidence that these marks are legal equivalents.

**D.    The Board's Decision is Contrary to Controlling Authority from the U.S. Supreme Court, the Federal Circuit, and the TBMP**

i.    The Federal Circuit held in *In Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000) that the TTAB's factual findings will be upheld "unless they are unsupported by substantial evidence." *In re Gartside*, 203 F.3d at 1312, 53 USPQ2d at 1773 (quoting Consolidated Edison, 305 U.S. at 229–30, 59 S.Ct. 206). A review for substantial evidence "involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision." Id. (citing *Universal Camera,* 340 U.S. at 487–88, 71 S. Ct. 456). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In Re Gartside* 203 F.3d at 1305.

Whether or not a mark makes the same continuing commercial impression is a question of fact. *Jack Wolfskin Ausrustung Fur Draussen GmbH v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1133 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 982 (2016) (noting Supreme Court's holding in *Hana Financial, Inc. v. Hana Bank*, 135 S. Ct. 907 (2015).

8

The Board didn't take into account evidence that detracts from its decision to permit tacking of the Goods to the Services. The Board's finding of genericness and continuing commercial impression of APPLE and APPLE MUSIC marks is not supported by facts and substantial evidence.

ii.    As set forth below in greater detail, the Board's holding on the points of genericness is inconsistent with *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 828 F.2d 1567, 1571, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987) and other Federal Circuit cases. Comparison of marks APPLE and APPLE MUSIC is inconsistent with *In re Nat'l Data Corp.*, 753 F.2d 1056, 1059, 224 USPQ 749, 751 (Fed. Cir. 1985) and *Van Dyne-Crotty*. The Board's decision contradicts Federal Circuit cases on point regarding (a) determination of genericness of terms; (b) comparison of marks required to compare marks as whole; and the Board applies a lower standard in the comparison of marks for tacking than it used in evaluating two competing marks: "[T]he standard of legal equivalence used in reviewing efforts to 'tack' the prior use of one mark onto that of another is higher than that used in evaluating two competing marks." *Van Dyne Van Dyne-Crotty,* 17 USPQ2d at 1868.

iii.    The  Board gives consideration to unpleaded defenses – a few third party common law foreign marks (APPLE FILMS and APPLE RECORDS to APPLE MUSIC)  in violation of TBMP 311.02(c) which states that an unpleaded defense may not be relied on. *H.D. Lee Co. v. Maidenform Inc.*, 87 USPQ2d 1715, 1720 (TTAB 2008) (defense of tacking must be pleaded to put opposer on notice of new matter that applicant is placing at issue).

**III.  RECONSIDERATION IS APPROPRIATE BECAUSE THE TERM MUSIC IS NOT GENERIC IN REFERENCE TO THE GOODS AND THE SERVICES, APPLE AND APPLE MUSIC ARE NOT LEGAL EQUIVALENTS, AND THE BOARD'S TREATMENT OF THESE ISSUES IS CONTRARY TO CASE LAW**

**E.    The Term "Music" is Not Generic in Reference to the Goods or the Services and APPLE and APPLE MUSIC Are Not Legal Equivalents**

*1. Standards for Genericness of a Term*

A two-part inquiry is used to determine whether a designation is generic: (1) What is the genus of goods or services at issue? (2) Does the relevant public understand the designation primarily to refer to that genus of goods or services? *H. Marvin Ginn Corp* at 990. The relevant public for a genericness

9

determination refers to the purchasing or consuming public for the identified goods and/or services. *Sheetz of Del., Inc. v. Doctor's Assocs. Inc.*, 108 USPQ2d 1341, 1351 (TTAB 2013) (citing *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 641, 19 USPQ2d 1551, 1553 Fed. Cir. 1991)). The genus of the goods and/or services may be defined by an applicant's identification of goods and/or services. *See In re Cordua Rests., Inc.*, 823 F.3d 594, 602, 118 USPQ2d 1632, 1636 (Fed. Cir. 2016).

Genericness of term must be proven <u>by clear and convincing evidence</u>. *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1571, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987), *In re Nordic Naturals, Inc*., 755 F.3d 1340, 1344, 111 USPQ2d 1495, 1498 (Fed. Cir. 2014). This standard is high. *In re Hotels.com, L.P.,* <u>573 F.3d 1300</u>, 1302 (Fed.Cir. 2009). ("When a fact is required to be found by `clear evidence' and not a mere preponderance, the review for support by substantial evidence must take this heightened burden into account."). The Board's factual finding of genericness must be supported by clear and convincing evidence.

Evidence of the public's understanding of a term can be obtained from any competent source, including dictionary definitions, research databases, newspapers, and other publications. *See In re Cordua Rests., Inc.,* 823 F.3d 594, 118 USPQ2d 1632 (Fed.Cir.2016) (finding the evidence of record, which included dictionary excerpts, online magazine articles, and newspaper articles). "The question of whether a particular mark is generic under the applicable standard is a question of fact, which we review for substantial evidence." *In re Hotels.com.* at 1301 (Fed.Cir.2009); *In re Reed Elsevier Props., Inc.,* 482 F.3d 1376, 1378 (Fed.Cir.2007).

Since no such two-part inquiry was made and proved by Applicant, the finding that the term "music" is generic is not based on substantial evidence.

### *2. Voluntary Disclaimer of a Term in the Application Doesn't Make the Term Generic*

To convince the Board that the term "music" is generic, Applicant totally relies on the fact of disclaiming term "music" in its application to the USPTO. 66 TTABVUE 21. According to 15 U.S.C. §1056 *"A disclaimer is a statement that the applicant or registrant does not claim the exclusive right to use a specified element or elements of the mark in a trademark application or registration".*

10

First, such disclaimer is done voluntarily and is therefore irrelevant to genericness of the term. *In re MCI Commc'ns Corp.*, 21 USPQ2d 1534 (Comm'r Pats. 1991), the Commissioner held that §6(a) of the Act permits an applicant to disclaim matter voluntarily, regardless of whether the matter is registrable or unregistrable. The Commissioner specifically overruled all previous USPTO authority holding otherwise. *Id*. at 1539. Therefore, if an applicant offers a disclaimer of any matter in a mark, the USPTO will accept the disclaimer.

Second, marks comprising the word "music" were registered recently in the USPTO for services and products related to music without disclaiming the term "music". A quick search of the USPTO database shows: **Reg. No. 6,318,038 Humans Of Music** CL35 downloadable digital music, non-downloadable videos featuring music, music artist performances; CL 41: Entertainment services, namely, providing on-line non-downloadable music, providing non-downloadable videos featuring music, musical artist performances. **Reg. No. 6,318,659 MyCleanMusic** CL 41: Providing on-line music. **Reg. No. 6,272,066 Music Is Win** CL 41: Instruction in the field of music. **Reg. No. 6,099,977 Finding Us In Music** Cl 41 conducting classes and presentations in the field of music. **Reg. No. 6,329,156 LET'S MUSIC TOGETHER** Cl 41 providing a website featuring non-downloadable audio clips, video clips and other multimedia materials in the nature of music videos, all in the fields of music and entertainment. **Reg. No. 5,819,109 LIGHT THE MUSIC** Cl 41 training in the field of music; **Reg. No. 5,731,744 Music Across Texas** Cl 41 Entertainment services in the nature of non adjudicated music festivals. **Reg. No. 5,769,390 Music for Nimrods** Cl 41 : <u>**Production and distribution of radio programs**</u>. **Reg. No. 5,980,788  MUSIC IN THE AIR** CL38: Streaming of audio, visual and audiovisual material via a global computer network in the field of music; CL41: computerized courses in the field of music. **Reg. No. 6299394 MUSIC WITH SMILE** Cl 009: <u>**Pre-recorded CDs featuring musical performance**</u>; **Reg. No. 5,643,082 WITH MUSIC IN MIND**  Cl41 live musical performances.  These examples clearly show that term "music" is not considered generic or descriptive by USPTO examining attorneys for pre-recorded CDs and services related to music.

Third, a few copies of third parties' registration certificates showing voluntary disclaimers of term "music" submitted by Applicant can't establish genericness of the term.  It is well-settled that prior decisions by examining attorneys in approving other marks have no evidentiary value and are not binding on the Board. *In re Davey Prods. Pty*, 92 USPQ2d 1198, 1206 (TTAB 2009); *In re Wilson*, 57 USPQ2d 1863, 1871 (TTAB 2001).

### 3.    *The Test for Genericness of Term "music"*

Applicant didn't establish that term "music" is generic by clear evidence as required. Applicant did not apply a required two-part inquiry used to determine whether a designation is generic in reference to the Goods or the Services. *H. Marvin Ginn Corp.* at 990. Genericness of a term is a subject of fact.  A disclaimer in an application to the USPTO is not the correct way to determine genericness of a term as shown above. The correct inquiry is whether the relevant public would understand the term to be generic. *In re 1800Mattress.com IP LLC*, 586 F.3d 1359, 92 USPQ2d 1682, 1685 (Fed. Cir. 2009).

Applicant didn't offer any evidence or facts supporting the allegation of genericness of the term "music" when it used in connection with the Goods or the Services.  The Board didn't analyze any facts related to alleged genericness of term "music" in reference to the Services or the Goods.

The genus of the Goods is:*"Gramophone records featuring music; [and] audio compact discs featuring music".*  The genus of the Services recognized by the Board (101 TTABVUE 3) is:

*"Arranging, organizing, conducting, and presenting concerts, live musical performances, entertainment special events in the nature of musical and cultural events, arts and cultural events, theatrical entertainment in the nature of live theatrical performances, competitions in the field of entertainment, contests, fairs for entertainment purposes, musical or film festivals for cultural or entertainment purposes, and exhibitions for entertainment purposes; production and distribution of radio programs, television programs, and sound recordings…."*

The evidence presented by Applicant - definition of "music" by Merriam-Webster (74 TTABVUE 241-243) completely contradicts the statement that "music" is generic for the Goods or the Services. According to Merriam-Webster "music" means "vocal, instrumental, or mechanical sounds having rhythm, melody, or harmony". The term "music" doesn't describe or identify any of the Services or the Goods.

"Generic terms are terms that the relevant purchasing public understands primarily as the common or class name for the goods or services. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1811 (Fed. Cir. 2001)." Applicant didn't present any evidence that the purchasing public understands or uses the term "music" as a common or class name for the Goods or the Services. Applicant didn't offer any research databases, newspapers, and other publications to demonstrate that relevant public understands term "music" primarily to refer to that genus of the Goods or the Services.

Genericness of term "music" in reference to the Goods or the Services is not proven. The Applicant and Board didn't refer to any case where genericness of term "music" in reference to the Goods or the Services was established by substantial evidence. Therefore term "music" is not generic in reference to the Goods or the Services. The Board's finding to the contrary is not based on substantial evidence.

### 4.    *APPLE and APPLE MUSIC are not legal equivalents*

A disclaimer does not remove the disclaimed matter from the mark. The mark must still be regarded as a whole, including the disclaimed matter, in evaluating similarity to other marks. *See In re Nat'l Data Corp.*, 753 F.2d 1056, 1059, 224 USPQ 749, 751 (Fed. Cir. 1985); *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 672, 223 USPQ 1281, 1282 (Fed. Cir. 1984). The Board in its evaluation excluded the word "music" and made the conclusion that APPLE and APPLE MUSIC are legal equivalents. Instead, an inquiry must focus on both marks in their entirety to determine whether each conveys the same commercial impression. See *American Paging* 13 USPQ2d 2036 at 2039.

There is no similarity between APPLE and APPLE MUSIC because the marks are different by appearance and meaning. The word "apple" refers to a fruit or, as shown below, to the company Apple Inc. The phrase "apple music" has a bizarre and incongruous meaning as applied to the Services. "Tacking is occasionally permitted where the two marks …nevertheless possess the same connotation in context." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866, 1869 (Fed. Cir. 1991). APPLE and APPLE MUSIC don't possess the same connotation as is shown below.

13

Typically, disclaimed matter will not be regarded as the dominant, or most significant, feature of a mark. However, since the Trademark Act permits an applicant to voluntarily disclaim registrable matter (*see* TMEP §1213.01(c)), disclaimed matter may be dominant or significant in some cases. The term "music" is significant in APPLE MUSIC (92 TTABVUE 13) because it is *suggestive* for the Services and without it "Apple" is only a reference to the company Apple Inc on Applicant's website. Opposer's statement that "Apple" is used in reference to Apple Inc. (and not as reference to any services or goods) is heavily supported by the Declaration and Exhibits attached to the Declaration of Thomas R. La Perle: *"On January 9, 2001, Apple announced iTunes* (83 TTABVUE 15); *"On April 28, 2003, Apple launched its iTunes Music Store* (83 TTABVUE 16); "*Apple's iTunes Store has had unprecedented commercial success, making Apple the number one music provider in the world* (83TTABVUE 17); *Apple created QuickTime* (83 TTABVUE 214); *"Apple ignited the personal computer revolution in the 1970s with the Apple II and reinvented the personal computer in the 1980s with the Macintosh".* (83 TTABVUE 216); *"Apple Introduces iTunes"* (83 TTABVUE 219); *"Apple Presents iPod"* (83 TTABVUE 223); *'Apple has applied its legendary expertise in human interface engineering to make iPod..."* (83 TTABVUE 224); *"Apple Launches the iTunes Music Store"* (83 TTABVUE 230); *"Apple definitely got it right with the iTunes Music Store."* (83 TTABVUE 234); *"Apple offers the only complete solution for digital music with iTunes and the amazing iPod, which now holds 10,000 songs in your pocket."* (83 TTABVUE 238); *"The latest news and updates, direct from Apple".* (83 TTABVUE 239); *"Fifteen years ago today Apple opened its first two stores"* (83 TTABVUE 260); *"Apple is also committed to furthering creative arts education"* (83 TTABVUE 261); *"About Apple", "Contact Apple"* (83 TTABVUE 268); *"Apple® today unveiled Apple Music™"; "Apple has also redesigned radio"* (83 TTABVUE197).

The general public and mainstream media use "Apple" in reference to Apple Inc. and not in reference to any of Applicant's services or goods. Forbes uses "Apple" in reference to Apple Inc. (technology) (83 TTABVUE 28); *"Only Apple, thanks to...";* *"Apple announced 21% revenue growth..."* (83 TTABVUE 31); *"Apple has come out on top as the most valuable brand" "Apple continues to dominate in a consumer tech industry"* (83 TTABVUE 34); *"Apple dominates..."* (83 TTABVUE 45).

14

Fortune uses "Apple" in reference to Apple Inc. (83 TTABVUE 177-187); *"Apple claims the top spot in Fortune's annual ranking"* (83 TTABVUE 175).

No evidence was offered during the trial that would support Board statements that the "addition of the term MUSIC does not create a different commercial impression" and "Consumers would know they were dealing with a music company" because of Apple Corp marks, and consequently such statements have no factual support. Without the added word "music" Applicant's customers see the single word Apple as a reference to the company itself and not to any particular service or goods. Applicant's customers and even the general public primarily know Apple as a technology and phone company. 83 TTABVUE 28, 31, 34, 78, 89, 100,111,122, 133. Applicant's customers are visitors of Applicant's website because almost all APPLE MUSIC services are online services (101 TTABVUE 3) and all services are advertised and promoted on this website. Over the years such customers see on Applicant's website that the single word "Apple" is used in reference to Apple Computer, Inc., and later in reference to Apple Inc. The Board gave no consideration to Opposer's statements that word "apple" was used on Applicant's website in reference to Apple Inc. so the word "music" has great significance in the mark APPLE MUSIC. 92 TTABVUE 13. Referring to the above consumers view APPLE and APPLE MUSIC as different marks and therefore these two marks are not legal equivalents.

The Board stated that potential customers of Applicant will associate the word "apple" with Apple Corps mark APPLE for records in absence of any evidence that Applicant ever sold or advertised records under mark APPLE on its website or that of mark APPLE (for the Goods). The Board didn't take under consideration the fact that since April 28, 2003 entertainment services similar to the Services were provided on Applicant's website under service mark iTunes. 83 TTABVUE 16. Applicant's customers are accustomed to download songs and movies and not to receive records or CDs by mail, e.g. in 2013 it is stated in the Press Release: "Averaging over 15,000 songs downloaded per minute, the iTunes Store connects music fans with their favorite artists" (83TTABVUE 247). Applicant's customers have no reason to associate word "apple" with Apple Corps marks when they visit the Apple Inc. website.

15

The statement "adopting the term MUSIC in place of terms such as RECORDS or FILMS" is tacking of foreign common law marks APPLE RECORDS and APPLE FILMS to APPLE MUSIC, whereas these marks are not even listed in the Applicant's defenses. The Board previously ruled in this case that unpleaded defenses get no consideration.  45 TTABVUE 10.

The statement by the Board that word "music" is inclusive for terms "films" and "records" is not supported by any evidence or facts and it contradicts the dictionary definitions. The statement of the Board that "music" is more modern than "records" ("something on which sound or visual images have been recorded") or "films" ("motion picture") contradicts dictionary definitions. The word "music" in its primary meaning has been known since the 13th century (87 TTABVUE 690), and "films" and "records" could not be known before the 19th century when the gramophones and photography were invented. The word "music" is not the legal equivalent of "records" or "films' simply because of the different dictionary definitions. "Music" is not a "motion picture" or "something on which sound…[has] been recorded".  87 TTABVUE 689.

Considering the significant differences between the words "music", "films" and "records" one cannot consider replacement of words "records" and "films" with "music" as a slight "modernization" of the mark. No evidence or facts were offered to demonstrate that consumers would consider all the above marks as the same marks. Accordingly, APPLE RECORDS, APPLE FILMS and APPLE MUSIC are not "slight variations in APPLE mark" and they don't have the same commercial impression.

No evidence was offered to show that Apple Corps marks APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS were promoted or shown on Applicant's website. Board statements regarding influence of Applicant's customers with these marks have no factual support. Additionally, neither APPLE MUSIC PUBLISHING nor APPLE FILMS is mentioned anywhere in Applicant's Trial Brief or in either of its two witnesses' Declarations. Moreover, Thomas La Perle never stated in his testimony that consumers are accustomed to seeing such "slight variations"of APPLE mark.  The Board has found facts that do not exist and have not been alleged or even mentioned by Applicant.

16

Apple Corp is a foreign company which didn't have any registered mark in the U.S. until 1997, and common law use of marks APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS (if any) in the U.S. is not established by the Applicant. Apple Corps never had a recording studio in the U.S. 62 TTABVUE 42. Moreover, use of these never-registered foreign marks in the U.S. in recent years was not established by any evidence. Therefore, the alleged influence of these marks on Applicant's customers is not supported by facts. Referring to the above, Applicant's customers have no reason to make a connection between the above marks and APPLE MUSIC so consumers have no reason to focus on word "apple" when they look for entertainment services or visit Applicant's website.

Applicant's customers view APPLE MUSIC as a whole mark because of bizarre and incongruous meaning of the phrase as applied to the Services. Applicant's customers would not ignore word "music" because it is *suggestive* for the Services whereas "Apple" alone is only reference to the company Apple Inc. Accordingly, Applicant's customers regard APPLE and APPLE MUSIC as different marks. APPLE and APPLE MUSIC are not confusingly similar and therefore not legal equivalents, because "[p]urchasers seeing these two marks would clearly differentiate them and would simply not consider them to be the same mark." Consequently, the Board's finding that APPLE and APPLE MUSIC are legal equivalents is not based on substantial evidence. APPLE and APPLE MUSIC are not legal equivalents for tacking purposes as a matter of fact.

**F.     The Board's Treatment of the Issue is Contrary to Case Law**

The Decision states: *"The addition of even one word can make a significant difference in commercial impression. See Am. Paging Inc. v. Am. Mobilphone Inc., 13 USPQ2d 2036, 2039 (TTAB 1989)"* (101 TTABVUE49) (AMERICAN MOBILPHONE and design and AMERICAN MOBILPHONE PAGING and design found to be "legally different"). This case is very similar to the instant case and *Am. Paging* supports Opposer. In *Am. Paging*, the Board noted that the registrant provided both telephone and paging services, therefore the addition of PAGING provided more information to prospective consumers: "Customers who simply saw the mark AMERICAN

17

MOBILPHONE and design and who simply utilized registrant's mobile phone services, would not know they were dealing with a company that also rendered paging services." Id at 2039.

In our case the addition of MUSIC also provides more information to prospective consumers: consumers who simply buy The Beatles records with APPLE mark during decades would not expect anything more than records when they see APPLE mark. The Beatles and APPLE mark were known in the U.S. for records and not for any services. Applicant's customers are accustomed to seeing "Apple" in reference to the company only as shown above. Addition of word MUSIC makes a significant difference in commercial impression of APPLE MUSIC in comparison to APPLE mark because it creates a phrase without common meaning and term "music" is suggestive for the Services so potential customers can expect more than recorded The Beatles songs. APPLE MUSIC and APPLE are "legally different" because purchasers of APPLE records and purchasers of Apple, Inc services would distinguish the two marks and would not consider them to be the same.

In *Am. Paging* the altered mark AMERICAN MOBILPHONE PAGING shows reference to paging services which were provided before under the AMERICAN MOBILPHONE mark but potential customers could not know about it without word "paging" in the mark. In our case Applicant or its predecessor didn't provide *any* service from among the Services and APPLE mark was known only for limited goods – records or as name of Applicant's company. The addition of MUSIC provided more information to prospective consumers: APPLE MUSIC (with its extensive list of services) is viewed by potential customers as mark different from APPLE mark for records. APPLE and APPLE MUSIC don't make the same commercial impression and therefore the two marks are NOT legal equivalents.

The Board in the Decision takes the position that since term "music" is generic when used in connection with sound recordings and the production and distribution of sound recordings, the addition of a single word does not make a significant difference, supporting its position with *American Sec. Bank.* As cited by the Decision, the court in that case held that "American Security" and "American Security Bank" were legal equivalents. The Court reasoned that "[w]hile AMERICAN SECURITY BANK is a distinguishable, three-word mark, the word 'bank' is purely descriptive and adds nothing to the origin-

18

indicating significance of AMERICAN SECURITY. Customers using the services would know they were

dealing with a bank." Id. at 67.  In that case both sets of services are identical. Moreover, American

Security was a bank, therefore AMERICAN SECURITY BANK and AMERICAN SECURITY make

"same, continuing commercial impression so that consumers consider both as the same mark".

Consequently, there is no similarity of this case with the instant case where a short set of the

Goods is completely replaced with a broad set of the Services and these two sets are not substantially

identical. Whereas bank is generic for banking services, music is not generic for the Services and alleged

genericness was not established by Applicant. APPLE MUSIC phrase with its bizarre and incongruous

meaning as applied to the Services creates new and different commercial impression than APPLE mark

and consumers would not consider APPLE and APPLE MUSIC as the same mark. Customers of The

Beatles records with APPLE mark have no reason to expect any services under mark APPLE because

since middle of 1990s only records were available under this mark. Adding word "music" suggests that it

can be more goods or services under new mark APPLE MUSIC. *Am. Sec. Bank case* can't support instant

case because of the above significant differences.

The Board's statement "*The Jones declaration includes a number of examples establishing that

Apple Corps has used the word marks APPLE (as well as APPLE RECORDS, APPLE MUSIC

PUBLISHING, APPLE FILMS"* (101 TTABVUE 28) is not supported by the Declaration. Use in the U.S

of APPLE RECORDS, APPLE MUSIC PUBLISHING, APPLE FILMS is not established in the

Declaration at all.

In *Citigroup Inc. v. Capital City Bank Grp., Inc*., 94 USPQ2d 1645, (TTAB 2010), the Board

held CAPITAL CITY BANK and CAPITAL CITY BANK GROUP to be essentially the same mark

because they "engender the same continuing commercial impression." Id. at 1656. The commercial

impression engendered by CAPITAL CITY BANK GROUP is merely a collection of CAPITAL CITY

BANKS.  CAPITAL CITY BANK is a part of the "group" (CAPITAL CITY BANK GROUP) therefore

the average purchaser would consider marks as the same especially when services are substantially

identical.

19

Unlike in *Citigroup,* in instant case "apple music" can't be a part of "apple".  Applicant and the Board didn't demonstrate with substantial evidence that term "apple" includes "apple music". Board didn't analyze dictionary meaning of "music" and meaning of phrase "apple music" (which in fact has no common meaning). The meaning of APPLE MUSIC is bizarre and incongruous as applied to the Services and it makes the mark a two-word unitary mark which elements are inseparable. Genericness of term "music" is not established by substantial evidence and "music" is not generic for the Goods or the Services as shown above. In the *Citigroup* case services at issue are substantially identical while in instant case the Goods are in Class 9 and the Services in Class 41 which are not substantially identical. *Citigroup* can't support Applicant because the difference as described above is obvious.

APPLE with one type of goods (records) has narrow commercial impression. APPLE MUSIC with long list of the Services has broader commercial impression. It would be clearly contrary to well-established principles of trademark law to sanction the tacking of a mark with a narrow commercial impression onto one with a broader commercial impression. See, e.g., *Corporate Fitness Programs v. Weider Health and Fitness*, 2 USPQ2d 1682 (TTAB 1987).

Whereas Board recognizes that "tacking is very strict" it relaxes this well-established standard by not making a comparison of the set of the Goods with the set of the Services, and in doing so the Board creates a loophole for tacking otherwise not supported by the law. It does not appear that the Board entertained any other evidence concerning the legal equivalence of APPLE and APPLE MUSIC marks except reference to genericness of term "music" unsupported by any evidence and not established by Applicant.  APPLE and APPLE MUSIC are not legal equivalents for tacking purposes as a matter of law and fact.

### G.   Applicant Didn't Established Use of APPLE Mark through Competent Evidence of Use

The Board rejects Opposer's objections to Mr. Jones' exhibits on the on the grounds of hearsay and foundation.  However, the Board neglects to consider that some – and possibly all – of the exhibits showing images of records labels were downloaded on May 28, 2019 from website discogs.com that admits that counterfeit documents can be uploaded by anyone.  For example, pages 144, 157-161, 164,

175, 176, 193, 225, 226, 231-234 of Mr. Jones Declaration (71 TTABVUE) clearly show downloading from discogs.com. Considering the fact that copies of images of The Beatles records are not very clear and date of production is not available to view it appears that all images of records are downloaded from the same source and not has been obtained "from the books and records made in the usual and ordinary course of Apple Corps' business" (71 TTABVUE 3) as stated by Mr. Jones.

The Board approvingly quotes Mr. Jones' statement that the information in his Declaration "has been obtained by me from the books and records made in the usual and ordinary course of Apple Corps' business" (71 TTABVUE 3) while neglecting to mention that they were downloaded a website that states that there are "unofficial releases, (bootlegs, counterfeits, pirate compilations etc.) that pretend to be a release of the legitimate Apple Records." 64 TTABVUE 10.

Since these exhibits were downloaded during this litigation (including from an unreliable source) from the internet, then obviously they have not been kept in the ordinary course of business of Apple Corps. Even a screenshot from thebeatles.com was downloaded only on October 8, 2018 and this website didn't exist before November 13, 2000. (89 TTABVUE 22).

The Board states: "The critical portions of Jones' testimony are clear, and are neither contradicted by Opposer nor 'indefinite and internally inconsistent.'" 101 TTABVUE 46. Neither of these clauses are correct. First, Opposer did contradict his testimony in detail in his objections. Second, Mr. Jones' testimony was both indefinite and internally inconsistent. The testimony was indefinite in: (1) his statement that "Apple and/or Capitol *almost certainly* continued to distribute" (emphasis added) 71 TTABVUE 20; (2) "Capitol's distribution of sound recordings bearing the APPLE word mark and associated Apple Corps logo diminished in the 1980s" (for the witness of the company that did the distributing not to know when the distributing *diminished* during a ten year period, or to explain his interpretation of diminished, is indefinite) (71 TTABVUE 20); and (3) his lack of knowledge about production and distribution of records is such that he stated that "Apple and/or Capitol" did the distributing: he doesn't even know who did the distributing.

21

It was internally inconsistent because: (1) although he testified that the Apple mark was used since 1968, he offered only blurred images of record covers downloaded from discogs.com on which it is impossible to read a year of production and evaluate continuity of use of APPLE mark even for records; (2) he implied that Apple Corps maintains these blurred copies in the ordinary course of business (71 TTABVUE 3); (3) he stated that Apple Corps maintains these copies in the ordinary course of business even though they were downloaded from discogs.com in 2019; (4) he always implies that sales of The Beatles records means sales of records under APPLE mark while it is not so at all as it shown above; (5) his testimony shows that (a) there were no initial releases of The Beatles records in the United States featuring the APPLE word mark during the early 1980s" (71 TTABVUE 19), and (b) "the "Blue" album was released on CD in 1993 in the United States." 71 TTABVUE 19.  It contradicts his statement about continuous use of APPLE for records because between early 1980s and 1993 there are at least three consecutive years of no use of the APPLE mark which is a clear abandonment according to the Lanham Act.

The history of The Beatles and their records are so well-preserved by the public that even the Apple Corps website incorporates Wikipedia information as true information (71 TTABVUE 45). Mr. Jones relies on Wikipedia exhibits because he can't offer the same of his own.  Since the Board accepts Mr. Jones' Wikipedia exhibit, the Board should accept Opposer's Wikipedia exhibit.  According to publicly available information The Beatles fans couldn't see any records with APPLE labels during a long period of time (From Wikipedia: "After EMI's contract with the Beatles ended in 1976, the Apple label was finally wound up. The label was reactivated in the 1990s." 89 TTABVUE 43). "The Board will consider evidence taken from Wikipedia so long as the non-offering party has an opportunity to rebut that evidence by submitting other evidence that may call into question the accuracy of the particular Wikipedia information." TBMP 1208.03. Applicant could rebut Opposer's Wikipedia evidence by submitting clear images of APPLE records with year of production and showing production in the U.S. from 1976 to the mid-1990s but Applicant didn't do so and submitted mostly unclear images.

The Decision also supports Applicant's defense by referring to *DeVivo v. Ortiz*, 2020 USPQ2d 10153, *3 (TTAB 2020) which states that oral testimony, ***if sufficiently probative***, is normally satisfactory to establish priority of use. 101 TTABVUE 45. Since the Board relies on testimony from a witness who supported his testimony with documents which may be counterfeited, the testimony is not sufficiently probative, and the factual determination that it is so is not supported by substantial evidence.

The Board's finding that discogs.com is acceptable evidence, that Mr. Jones' testimony was neither contradicted by Opposer nor indefinite and internally inconsistent is not based on substantial evidence.

## III.    CONCLUSION

Applicant failed to demonstrate bona fide use in the ordinary course of trade of mark APPLE MUSIC for services in Class 41 before Opposer's date of first use. Applicant failed to establish its tacking defense. Genericness of the term "music" the Goods or the Services is not supported by substantial evidence. The Board's legal conclusions for genericness of word "music" was made without factual findings for substantial evidence. The term "music" is not generic in reference to the Goods or the Services and APPLE and APPLE MUSIC marks are not legal equivalents under the stringent standards applicable to tacking. Applicant failed to prove that set of the Goods is substantially identical to set of the Services as required by law. Therefore, tacking the use of the mark APPLE for goods in Class 9 to the mark APPLE MUSIC for the Services in Class 41 should not be permitted.

Accordingly, pursuant to 37 C.F.R. § 2.127, Opposer therefore respectfully requests reconsideration of the Board's Decision and to sustain the Opposition.

May 15, 2021                          /s/ James Bertini                          
                                      JAMES BERTINI
                                      Attorney for Opposer Charles Bertini
                                      423 Kalamath Street
                                      Denver, CO 80204
                                      303 572-3122
                                      jamesbertini@yahoo.com

23

| ESTTA Tracking number: | **ESTTA1140132** |
| --- | --- |
| Filing date: | **06/14/2021** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding | 91229891 |
| --- | --- |
| Party | Plaintiff<br>Charles Bertini |
| Correspondence<br>Address | JAMES BERTINI<br>423 KALAMATH STREET<br>DENVER, CO 80204<br>UNITED STATES<br>Primary Email: jamesbertini@yahoo.com<br>Secondary Email(s): iklych@yahoo.com<br>303 572-3122 |
| Submission | Request for Reconsideration of Final Board Decision |
| Filer's Name | James Bertini |
| Filer's email | jamesbertini@yahoo.com |
| Signature | /james bertini/ |
| Date | 06/14/2021 |
| Attachments | Opposers Reply in Support of its Motion for Reconsideration of Final De-<br>cision.pdf(380256 bytes ) |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| CHARLES BERTINI, | ) | Opposition No. 91229891 |
| | ) | Serial No. 86659444 |
| Opposer | ) | Mark: APPLE MUSIC |
| v. | ) | Filing Date: June 11, 2015 |
| APPLE INC., | ) | Publication Date: May 10, 2016 |
| Applicant. | ) | |

**OPPOSER'S REPLY IN SUPPORT OF OPPOSER'S MOTION
FOR RECONSIDERATION OF FINAL DECISION**

Applicant in its Memorandum in Opposition to Opposer's Motion for
Reconsideration ("Response") claims that Opposer has not demonstrated any basis for
reconsideration and that Opposer's Motion for Reconsideration ("Motion") is a
reargument of his positions simply to express disagreement with the Board's decision
("Decision"). In its Response Applicant completely misrepresents the content of
Opposer's Motion by ignoring the main aspects of the Motion and by not addressing such
aspects at all.

Applicant cites *Hollywood Vodka LLC v. Hollywood Grp.,* No. 92061976, 2017
WL 6384044, at *1 (T.T.A.B. Dec. 12, 2017), but unlike that case, Opposer has not stated
an intention to reargue points considered and decided, nor is Opposer "essentially
disagreeing with [the Board's] findings of fact and has written a brief in opposition to the
[Board's] decision" as in *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La*

1

**Appx08649**

*Michoacana, Inc.*, No. 92047438, 2011 WL 3212251, at \*2 (T.T.A.B. July 13, 2011).

Applicant also quotes *Sweatbox Studio v. Sweat Prods. LLC*, No. 91199530, 2012 WL 12517332, at \*1 (T.T.A.B. Apr. 10, 2012) which states that "Opposer's motion for reconsideration reargues points and evidence previously presented, or advances additional arguments that could have been offered…"   However, Opposer has not advanced additional arguments but has shown clearly how the Board has erred.

Applicant cites TBMP 543 which states: "Generally, the premise underlying a request for rehearing, reconsideration, or modification under 37 C.F.R. § 2.129(c)  is that, based on the evidence of record and the prevailing authorities, the Board erred in reaching the decision it issued…Rather, the request normally should be limited to a demonstration that, based on the evidence properly of record and the applicable law, the Board's ruling is in error and requires appropriate change."

Opposer doesn't repeat the same arguments in his Motion that he made in his Trial Brief, but demonstrates *how* the Board's holding is fundamentally inconsistent with the Lanham Act, the Administrative Procedures Act, is contrary to case law and controlling authority from the U.S. Supreme Court, the Federal Circuit and the TBMP. In his Motion Opposer demonstrated that the Board also didn't take into account evidence of records that detracts from its decision allowing tacking of the Goods to the Services, which allowance is a complete departure from statutory and case law.  Also, the Motion demonstrates that the Decision was not only unsupported by substantial evidence but was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Therefore, the Board's decision was made in error.  The Motion has amply stated that based on the evidence of record and the applicable law, the Board's ruling is in error and

2

requires appropriate change. Opposer demonstrated a solid basis for reconsideration as required by TBMP 543.

The Motion demonstrated that the Board's finding of the genericness of term "music" (when used in connection with sound recordings and the production and distribution of sound recordings) is not supported by substantial evidence and applicable law. The Board's factual finding of genericness must be supported by clear and convincing evidence but this was not done. In fact, _no_ evidence was used by Applicant or considered by the Board to support the finding of genericness of the term "music".

Now, for the first time, Applicant in its Response began to analyze and improperly interpret the term "sound recordings" to justify that it is the same as "music". 103 TTABVUE 11. Applicant had the opportunity to present all definitions for any terms and make any necessary analysis but this was not done in its Trial Brief. Also, Applicant completely ignores the well-established legal procedure to determine the genericness of terms and attempts to replace it with the arbitrary statement that "music" is generic and the Board erroneously accepted this and stated in its Decision that APPLE and APPLE MUSIC are "legal equivalents" based on unestablished alleged genericness of term "music". Since Applicant didn't establish genericness of term "music," and accordingly didn't establish its tacking defense, the Board's finding that Applicant has priority was not based on substantial evidence and was made in error.

 Opposer didn't need to dispute the alleged genericness of term "music" or to prove that "music" is suggestive because genericness was not established by Applicant as a part of its tacking defense, nor did the Decision indicate that this was established. This was shown in the Motion. Applicant didn't present any evidence that the purchasing

3

public understands or uses the term "music" as a common or class name for the Goods or the Services so there were no facts for Opposer to dispute during the trial.   Since no such evidence was presented, the Board couldn't and didn't analyze any facts related to alleged genericness of term "music" in reference to the Services or the Goods, and simply made the arbitrary statement that "music" is generic. Therefore the Board's finding for term "music" to be generic was unsupported by substantial evidence – or any evidence – and was made in error as is shown in the Motion.  It should be reconsidered as required by TBMP 543.

The Motion demonstrated *how* the Board's decision contradicts Federal Circuit cases directly on point regarding (a) determination of genericness of terms, (b) comparison of marks required to compare marks as whole; and that the Board applied a lower standard in the comparison of marks for tacking than it used in evaluating two competing marks.  The Motion shows that the Board doesn't focus on APPLE and APPLE MUSIC marks in their entirety (as required by law) to determine whether each conveys the same commercial impression. Applicable law requires that a mark must still be regarded as a whole, including the disclaimed matter, in evaluating similarity to other marks and this was not done.  Therefore, the Decision that APPLE and APPLE MUSIC are legal equivalents was made in error.

The Motion demonstrated that the well-established standard of how to compare goods and services for tacking purpose was ignored by the Board.  Thirty years ago *Big Blue Prods. Inc. v. Int'l Bus. Machines Corp.*, 19 USPQ2d 1072, 1075 (TTAB 1991)" established a requirement to compare a set of goods (or services) of one mark to a set of goods (or services) of another mark for tacking purposes and this standard was not

4

overturned. The Board didn't make such comparison and instead compared one service to one type of goods. Therefore, permission to tack one type of goods to all range of different services based on the factual determination that one type of goods is "the same or similar" as one service was made in error and should be reconsidered.

The Motion demonstrated *how* the Board introduced unpleaded defenses by referring to a few foreign common law marks (whose continuous use in the U.S. especially in the last 30 years was not established in Applicant's Trial Brief) and these unpleaded defenses were used to support the Board's finding that APPLE MUSIC and APPLE are legal equivalents. Using unpleaded defenses contradicts the Board's previous ruling which was based on applicable law.  So, the Board's finding that APPLE MUSIC and APPLE will be viewed by customers as the same marks, and therefore these marks are legal equivalents, is not supported by substantial evidence and applicable law so such finding was made in error.

Applicant refers to *Hana Financial, Inc. v. Hana Bank,* 574 U.S.418, 422 (2015) and states: "The tacking standard that the Supreme Court articulated in *Hana Financial* does not mandate the specific test to be used in making the factual finding as to whether two marks create the 'same, continuing commercial impression'", and "The Board is, of course, well-versed in this standard, having routinely been tasked with resolving such claims."  So, Applicant admits that some test should be applied even though Applicant does not mention one.

In fact, the standard was articulated in *Hana Financial,* and the Board recognizes it, i.e. that two marks are legal equivalents when "consumers consider both as the same mark." 101 TTABVUE 48.  To justify that consumers would consider APPLE and

5

APPLE MUSIC as the same mark, the Board *sua sponte* refers to unpleaded defenses and unestablished genericness of terms "films," "music publishing," and "records." 101 TTABVUE 51. But neither Applicant nor the Board referred to any substantial evidence that Applicant's customers consider APPLE and APPLE MUSIC as the same mark. Moreover, as shown in the Motion, this contradicts Applicant's evidence that without the word "music" Applicant's customers and even the general public see the single word Apple as a reference to Apple, Inc. and not to any particular service or goods. The Motion demonstrated that the Board ignored multiple evidences of record and gave no consideration to the fact that the word "music" has great significance in the mark APPLE MUSIC to view it as a mark and not as reference to Apple, Inc. The Board's conclusion that APPLE and APPLE MUSIC are "legal equivalents" and both create the "same continuing commercial impression" is not based on substantial evidence, contradicts presented evidence and was made in error.

The Motion demonstrated that the Board relied on testimony from Apple Corps CEO Jeffery Vaughn Jones, who supported his testimony with documents which may be counterfeit, recently obtained from a third party, and not obtained by the witness "from the books and records made in the usual and ordinary course of Apple Corps' business" as is stated in his Declaration. 71 TTABVUE 3. The Motion shows that this testimony is not sufficiently probative and that it contradicts other evidence. The Board's factual determination that it is sufficiently probative is not supported by substantial evidence.

Use of APPLE mark for "production and distribution of sound recordings" is not established by Applicant in its Trial Brief and yet the Board permitted tacking of the Goods (APPLE mark, Reg. No. 2034964) to the Services (APPLE MUSIC mark, Serial

6

No. 86659444) and such tacking is not supported by any case law.

In its Response Applicant argues that its failure to comply with the Board's August 16, 2018 Order to Compel requiring it to produce two contracts between Apple Corp. and Apple Computer, Inc., is meaningless and should not be considered because Opposer did not object. The Decision also states that Opposer did not object. In fact, Opposer objected *four times* – of record - after the Order compelling production: (1) September 18, 2018, Motion for Summary Judgment (36 TTABVUE 2); (2) April 19, 2019 Opposer Response to Motion for Reconsideration (49 TTABVUE 19, 20); (3) June 5, 2020, Trial Brief (89 TTABVUE 25); (4) August 2, 2020, Opposition to Request for Oral Hearing (95 TTABVUE 3).

Moreover, in that Motion for Summary Judgment Opposer explained in great detail the range of options available to the Board for dealing with Applicant's non-compliance, citing the TBMP, Federal Rules of Civil Procedure, and case law addressing this issue. 36 TTAVBUE 2, 3. The Board did not respond to these objections.

These two contracts would likely have shown which marks and for which goods or services such marks were used by Apple Corp during the disputed period. Even though Applicant failed to produce these contracts, the Board would not accept Opposer's offer of Wikipedia evidence on this point.[1] In accepting Mr. Jones' testimony, the Board stated that: "The critical portions of Jones' testimony are clear, and are neither contradicted by

_____

[1] In similar regard Applicant was treated considerably more favorably. Mr. Jones' exhibits from a third party website that admits on the site that anyone can post and that it may contain counterfeits - *and in the absence of any showing by Mr. Jones that he was unable to obtain the evidence from a more reliable source* - were accepted by the Board and relied upon in making its Decision.

7

Opposer nor 'indefinite and internally inconsistent.'" 101 TTABVUE 46. To the

contrary, Opposer did contradict Mr. Jones's testimony, and his testimony was indefinite

what with him expressing his opinion disguised as fact that "Apple Corps and/or Capitol

***almost certainly*** continued to distribute in the United States a number of Beatles sound

recordings bearing the APPLE word mark during the time period January 1, 1983 through

December 31, 1985." (Emphasis added.) 102 TTABVUE 22.

The Motion explains how Mr. Jones' oral testimony is not sufficiently probative.

Applicant's Response disputes this and refers to the Board's position that Applicant's

testimony and evidence, as a whole, may establish priority. For this the Board relied on

*West Fla. Seafood, Inc. v. Jet Rests., Inc*., 31 F.3d 1122, 31 USPQ2d 1660, 1663 (Fed.

Cir. 1994). Regardless of whether Applicant's evidence is considered as a whole or

separately, it does not support the conclusion that Applicant's mark has priority over

Opposer's because for all the reasons explained in the Motion, tacking the Goods to the

Services should not be permitted. The Board's Decision was error since it was not based

on substantial evidence.

The Board stated that it ***would not*** make a negative inference based on

Applicant's failure to produce the contracts because *Applicant* did not seek to rely on the

contracts. However, it was *Opposer* who sought to rely on them. If the contracts were in

Applicant's favor it would have produced them and this would not be an issue. (This is

yet another reason that a negative inference should be drawn.) Consequently, the Board's

Decision was not based on substantial evidence since it held the incorrect belief that

Opposer failed to object, and since it confused the Applicant with the Opposer. This is

clear error.

8

Opposer's Motion demonstrates that the Board's finding that "Applicant, by tacking the use of the mark APPLE by Apple Corps, has established use of the mark APPLE MUSIC for the 'production and distribution of sound recordings' as early as August 1968" is not based on substantial evidence, contradicts case law, and therefore such finding was made in error.

**CONCLUSION**

Opposer in his Motion demonstrated a solid basis for reconsideration as required by TBMP 543. Based on the evidence properly of record and the applicable law, the Board's ruling is in error and requires appropriate change. For the reasons set forth above and in Opposer's Motion, Opposer requests the Board to reconsider its Final Decision.

June 14, 2021

/s/ James Bertini
JAMES BERTINI
Attorney for Opposer Charles Bertini
423 Kalamath Street
Denver, CO 80204
303 572-3122
jamesbertini@yahoo.com

9



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At: [_____] OR Jump to record: [_____]   **Record 559 out of 5585**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# ARCHITECTS OF MUSIC

| | |
|---|---|
| **Word Mark** | ARCHITECTS OF **MUSIC** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Educational services, namely, providing online instruction in the field of music. FIRST USE: 20190301. FIRST USE IN COMMERCE: 20190301 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 90309391 |
| **Filing Date** | November 10, 2020 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 25, 2021 |
| **Registration Number** | 6447160 |
| **Registration Date** | August 10, 2021 |
| **Owner** | (REGISTRANT) New Media Productions Worldwide, LLC LIMITED LIABILITY COMPANY ILLINOIS 15 Graybirch Lane Wayland MASSACHUSETTS 01778 |
| **Attorney of Record** | Spencer W. Weisbroth |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | **LIVE** |

**Appx08659**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  **List At:** [_____] OR Jump to record: [_____]  **Record 1 out of 3**

TSDR  ASSIGN Status  TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

# WITH MUSIC IN MIND

| Field | Value |
|---|---|
| **Word Mark** | WITH **MUSIC IN MIND** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment services, namely, live musical performances for families affected by Alzheimer's and other dementias. FIRST USE: 20180508. FIRST USE IN COMMERCE: 20180508 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87926009 |
| **Filing Date** | May 17, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | October 16, 2018 |
| **Registration Number** | 5643082 |
| **Registration Date** | January 1, 2019 |
| **Owner** | (REGISTRANT) Alzheimers Disease And Related Disorders, New York City, Inc. DBA CaringKind CORPORATION NEW YORK 360 Lexington Avenue, 3rd Floor New York NEW YORK 10017 |
| **Attorney of Record** | George Likourezos |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

Appx08660



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# Finding Us In Music

| **Word Mark** | FINDING US IN MUSIC |
|---|---|
| **Goods and Services** | IC 041. US 100 101 107. G & S: Education services and training, namely, conducting classes and presentations in the field of music by using music to develop leadership qualities and skills. FIRST USE: 20180125. FIRST USE IN COMMERCE: 20180125 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88711979 |
| **Filing Date** | December 2, 2019 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 28, 2020 |
| **Registration Number** | 6099977 |
| **Registration Date** | July 14, 2020 |
| **Owner** | (REGISTRANT) Barbara Nussbaum INDIVIDUAL UNITED STATES Suite 136X4, Die Boord Stellenbosch SOUTH AFRICA 7613 |
| **Attorney of Record** | Perry Saidman |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead** | LIVE |

**Appx08661**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [____] OR Jump to record: [____]   **Record 2 out of 2**

TSDR  ASSIGN Status  TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

# HUMANS OF MUSIC

| | |
|---|---|
| **Word Mark** | HUMANS OF MUSIC |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Computer software for creating searchable databases; computer software for use as an application programming interface (API); application programming interface (API) for computer software which facilitates online services for social networking, building social networking applications and for allowing data retrieval, access and management; computer software for the collection, editing, organizing, modifying, transmission, storage and sharing of data and information<br><br>IC 035. US 100 101 102. G & S: Advertising; providing commercial information services provided by access to a computer database; providing an on-line commercial information directory; compilation of information into an online computer database; dissemination of advertising for others via the Internet or other communications network; online advertising and promotion; providing a searchable on-line advertising guide featuring the goods and services of others; database management services; on-line ordering services featuring music, artist, multimedia presentations, and other audiovisual works, namely, downloadable digital music, non-downloadable videos featuring music, music artist performances, artist interviews, and film clips and photographs featuring or related to the artist; conducting incentive awards programs, namely, conducting incentive awards programs to promote the sale of products and services of others; conducting incentive awards programs to promote the sale of products and services of others featuring music and entertainment; incentive award programs designed to reward program participants for their use of products and services of others featuring music and entertainment; promoting the goods and services of others via computer and communication networks; facilitating the exchange and sale of services and products of third parties via computer and communication networks; online retail store services featuring downloadable digital music and videos and articles in the field of music and entertainment; online retail services, namely, on-line retail store services and on-line retail distributorship services featuring music related goods; providing online marketplaces for sellers of goods and/or services; providing a website for connecting sellers with buyers; computer assisted business information; maintaining data in databases, namely, database management; market research data collection services; market research data retrieval services; management of entertainment services, namely, personal management services for entertainers; copywriting services relating to the provision of entertainment services, namely, advertising copywriting, copy writing for advertising and promotional purposes<br><br>IC 038. US 100 101 104. G & S: Communication services, namely, electronic data transmission, Internet broadcasting services, streaming of data, communications via the internet and mobile devices; communication services relating to the entertainment and music industries, namely, electronic data transmission, Internet broadcasting services, streaming of data, video broadcasting services over the Internet, streaming of audio and |

**Appx08662**

video material on the Internet; providing access to an on-line link to current events and reference material relating to music, artists, multimedia presentations, and other audiovisual works; audio and video sharing services, namely, electronic transmission of digital photo files, videos and audio visual content among internet users; providing access to computer, electronic and online databases; providing online forums for communication on topics relating to the entertainment and music industries; providing online communications links which transfer mobile device and Internet users to other local and global online locations; facilitating access to third party websites or to other electronic third party content via a universal login; providing online chat rooms, email and instant messaging services, and electronic bulletin boards; audio, text and video broadcasting services over computer or other communication networks, namely, uploading, posting, displaying, modifying, tagging, and electronically transmitting data, information, audio and video; voice over IP services; telephony communication services; delivery of messages by audiovisual or electronic media; electronic data exchange and interchange services; electronic transmission of data, documents, images, information, messages, voices, and written communications; providing user access to search engines; streaming of data; dissemination of entertainment material, namely, transmission of webcasts and streaming of audio, visual and audiovisual material via a global computer network

IC 041. US 100 101 107. G & S: Entertainment services, namely, providing on-line non-downloadable music, providing non-downloadable videos featuring music, musical artist performances and interviews, music reviews, commentary and information in the field of music, and artist interviews, providing related non-downloadable film clips and non-downloadable photographs featuring musical artists, and providing entertainment information via the internet or other communications network; management of entertainment events and services, namely, arranging, organizing, conducting, and hosting events and social events providing music and entertainment; music entertainment services, namely, live music concerts, music production; production of music, digital music, not downloadable, from the Internet and music shows; multimedia publishing of music, books, magazines, journals and electronic publications via electronic means; providing music reviews, commentary, news, and information in the field of music over the Internet or other communications network; entertainment information services, namely, providing an interactive website featuring a profiling of music preferences, making recommendations of music, artists, and recorded and live events based on user selections, specifications or consumer preferences and characteristics via the Internet or other communications network and recommending other entertainment and information based on these user selections and specifications; provision of music and artist bibliographic information; concert, theatre and show ticket reservation services; production and distribution of entertainment videos in the field of music; providing entertainment information and on-line non-downloadable music; conducting incentive awards programs for entertainment purposes, namely, providing recognition and incentives by the way of awards to demonstrate excellence and impact in the field of music; entertainment news, namely, providing online non-downloadable publication of news associated with the entertainment industry, namely, newspapers and magazines; providing on-line non-downloadable multimedia presentations, and other audiovisual works featuring entertainment via the internet; arranging of entertainment, namely, arranging social and musical entertainment events in the nature of events featuring music, music artist performances and artist interviews; arranging, organizing, planning and conducting dance performances and dance events, live music performances, concerts, live music shows, music festivals and other entertainment festivals; entertainment services, namely, providing an interactive website featuring profiling of music preferences, making recommendations of music, artists, and recorded and live events based on user selections, specifications or consumer preferences and characteristics via the Internet or other communications network and recommending other entertainment and information based on these user selections and specifications; provision of music and artist bibliographic information; concert, theatre and show ticket reservation services; copywriting relating to the provision of entertainment services, namely, copy editing; dissemination of entertainment material, namely, providing entertainment information; providing entertainment information and digital music, not downloadable, from the Internet; online electronic publication of news associated with the entertainment industry, namely, publishing of electronic publications; providing online non-downloadable publication of news associated with the entertainment industry, namely, articles, newspapers and magazines; publishing of electronic publications, providing online electronic publications featuring music, information on artist and their performances and entertainment industry news

IC 042. US 100 101. G & S: Hosting of digital content on the Internet, namely, hosting of databases, hosting databases that contain bibliographic information relating to music, artists, music videos and other related content, hosting databases and on-line bulletin and message boards featuring general news and information regarding music, artists, multimedia presentations, and other audiovisual works; database design; hosting a web site featuring technology that allows users to input their selections of characteristics for music, and other types of content, or that identifies characteristics of music, and other types of content based on user selections, so that profiling can be completed and recommendations provided based on those characteristics; providing temporary use of non-downloadable software provided over global computer networks for creating entertainment and information profiles based on user selections of entertainment and information options or based on user specification of characteristics of entertainment and information, and recommending other entertainment and information based on user selections and specifications

**Standard
Characters
Claimed**

Appx08663

| | |
|---|---|
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88206277 |
| **Filing Date** | November 26, 2018 |
| **Current Basis** | 44E |
| **Original Filing Basis** | 44D |
| **Published for Opposition** | January 26, 2021 |
| **Registration Number** | 6318038 |
| **Registration Date** | April 13, 2021 |
| **Owner** | (REGISTRANT) Jaxsta Holdings Pty Ltd proprietary limited company (p/l or pty. ltd.) AUSTRALIA Level 1 113-115 Oxford Street Darlinghurst AUSTRALIA NSW2010 |
| **Attorney of Record** | Nancy Zoubek |
| **Priority Date** | November 1, 2018 |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST   NEXT LIST

FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx08664**

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout    Please logout when you are done to release system resources allocated for you.

Start    List At: [          ] OR Jump to record: [          ]    **Record 1 out of 2**

TSDR    ASSIGN Status    TTAB Status    *( Use the "Back" button of the Internet Browser to return to TESS)*

# LET'S MUSIC TOGETHER

| | |
|---|---|
| **Word Mark** | LET'S MUSIC TOGETHER |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Downloadable mobile applications for online social networking; social networking software; computer software that provides access to an application programming interface (api) for computer software which facilitates online services for social networking, building social networking applications and for allowing data retrieval, upload, download, access and management; Downloadable computer software for modifying the appearance and enabling transmission of images, audio-visual and video content; computer software to enable uploading, downloading, accessing, posting, displaying, tagging, blogging, streaming, linking, sharing or otherwise providing electronic media or information via computer and communication networks; downloadable computer software for mobile devices for personalizing video performances on a mobile device based on interaction of user; computer software programs for the integration of text, audio, graphics, still images and moving pictures into an interactive delivery for multimedia applications; downloadable computer software for mobile devices that enables users to transform and enhance the video and audio capabilities of their mobile devices; downloadable computer software executable to communicate amongst mobile devices using audio encodings of information; downloadable computer software executable to provide mobile devices with signal processing capabilities; communications software for connecting mobile users; computer software for manipulating digital audio information for use in audio media applications; downloadable computer software for mobile devices that enables users to send music, text, audio, video, and graphics information to other users of mobile devices; downloadable computer software that creates a voice changer feature on a mobile device; software for manipulating and editing images, sound and video; video-editing software; software for manipulating digital video files; software for video and audio processing, audio and video editing, and audio and video encoding; computer software for manipulating digital audio information for use in videos; downloadable computer software for mobile devices for personalizing video files on a mobile device; Downloadable software that enables users to upload arrangements for songs; downloadable software used for uploading composition arrangements. FIRST USE: 20180800. FIRST USE IN COMMERCE: 20180800

IC 041. US 100 101 107. G & S: Online journals, namely, blogs in the field of entertainment; entertainment services, namely, providing a website featuring non-downloadable audio clips, video clips, photographs, and other multimedia materials in the nature of music videos, all in the fields of music and entertainment; entertainment services, namely, conducting contests. FIRST USE: 20180800. FIRST USE IN COMMERCE: 20180800

IC 042. US 100 101. G & S: Computer services, namely, creating an on-line community for registered users to participate in discussions, get feedback from their peers, form virtual communities, and engage in social |

networking; Providing a web site featuring technology that enables internet users to share documents, images and videos; Providing a web site featuring temporary use of non-downloadable software allowing web site users to upload on-line videos for sharing with others for entertainment purposes; providing a website featuring temporary use of non-downloadable software allowing web site users to upload arrangements for songs for sharing with others for entertainment purposes; providing a website featuring temporary use of non-downloadable software allowing web site users to upload composition arrangements; Application service provider (asp) featuring software to enable uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the internet or other communications network; Providing software as a service featuring software for use in connection with transmitting, streaming, and downloading audiovisual content. FIRST USE: 20180800. FIRST USE IN COMMERCE: 20180800.

IC 045. US 100 101. G & S: Online social networking services; Providing a social networking website for entertainment purposes. FIRST USE: 20180800. FIRST USE IN COMMERCE: 20180800.

| | |
|---|---|
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 87806864 |
| **Filing Date** | February 22, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | November 12, 2019 |
| **Registration Number** | 6329156 |
| **Registration Date** | April 20, 2021 |
| **Owner** | (REGISTRANT) Smule, Inc. CORPORATION DELAWARE 139 Townsend Street, Suite 300 San Francisco CALIFORNIA 94107 |
| **Attorney of Record** | Sherri L. Eastley |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |

| | | | |
|---|---|---|---|
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



### United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  **List At:** [          ]  OR  Jump  to record: [          ]   **Record 5 out of 12**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# LIGHT THE MUSIC

| | |
|---|---|
| **Word Mark** | **LIGHT THE MUSIC** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Education services, namely, providing curriculum development for others, activities in the nature of courses, classes, workshops, and educational demonstrations, and training in the field of music, art, and code. FIRST USE: 20160301. FIRST USE IN COMMERCE: 20160301 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88220730 |
| **Filing Date** | December 7, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 14, 2019 |
| **Registration Number** | 5819109 |
| **Registration Date** | July 30, 2019 |
| **Owner** | (REGISTRANT) Light the Music Inc. CORPORATION DELAWARE 341 Janlar Drive Chesterfield VIRGINIA 23235 |
| **Attorney of Record** | Justin M. Laughter |
| **Prior Registrations** | 5113313 |

**Appx08667**

| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

# Music Across Texas

| Word Mark | **MUSIC ACROSS TEXAS** |
| Goods and Services | IC 041. US 100 101 107. G & S: Entertainment services in the nature of non adjudicated music festivals for student bands, choirs, orchestras. FIRST USE: 20060725. FIRST USE IN COMMERCE: 20070401 |
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 88028105 |
| Filing Date | July 6, 2018 |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | February 5, 2019 |
| Registration Number | 5731744 |
| Registration Date | April 23, 2019 |
| Owner | (REGISTRANT) Director's Choice, LLP DBA Director's Choice LIMITED LIABILITY PARTNERSHIP TEXAS 10701 Upland Ave Lubbock TEXAS 79424 |
| Attorney of Record | Alexandra Summers |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL-2(F) |
| Live/Dead Indicator | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

**Appx08669**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# MUSIC FOR NIMRODS

| | |
|---|---|
| **Word Mark** | MUSIC FOR NIMRODS |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Production and distribution of radio programmes. FIRST USE: 19960106. FIRST USE IN COMMERCE: 19960106 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88175165 |
| **Filing Date** | October 30, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | March 19, 2019 |
| **Registration Number** | 5769390 |
| **Registration Date** | June 4, 2019 |
| **Owner** | (REGISTRANT) Daniel Buhler INDIVIDUAL UNITED STATES 4018 Elderbank Drive Los Angeles CALIFORNIA 90031 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY



### United States Patent and Trademark Office

**Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News**

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
|---|---|---|---|---|---|---|---|---|---|---|
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC | | | | | | | |

Logout  Please logout when you are done to release system resources allocated for you.

Start  **List At:** [____] OR Jump **to record:** [____]  **Record 2 out of 4**

---

TSDR    ASSIGN Status    TTAB Status    *( Use the "Back" button of the Internet Browser to return to TESS)*

# MUSIC IN THE AIR

| | |
|---|---|
| **Word Mark** | MUSIC IN THE AIR |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Downloadable computer software featuring an educational program in the field of music, music history and theory, audio and scores, and search engines. FIRST USE: 20181023. FIRST USE IN COMMERCE: 20181023 |
| | IC 038. US 100 101 104. G & S: Streaming of audio, visual and audiovisual material via a global computer network in the field of music. FIRST USE: 20181023. FIRST USE IN COMMERCE: 20181023 |
| | IC 041. US 100 101 107. G & S: Educational services, namely, providing interactive computerized courses in the field of music, music history and theory. FIRST USE: 20181023. FIRST USE IN COMMERCE: 20181023 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88213022 |
| **Filing Date** | November 30, 2018 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | November 26, 2019 |
| **Registration Number** | 5980788 |
| **Registration** | February 11, 2020 |

Appx08671

Case: 21-2301    Document: 32    Page: 1040    Filed: 03/31/2022

| | |
|---|---|
| **Date** | |
| **Owner** | (REGISTRANT) ArtsInteractive, Inc. CORPORATION CALIFORNIA 10558 Selkirk Lane Los Angeles CALIFORNIA 90077 |
| **Attorney of Record** | Don Franzen |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Appx08672



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

Logout    Please logout when you are done to release system resources allocated for you.

Start    List At: [          ]    OR    Jump    to record: [          ]    **Record 504 out of 5585**

TSDR | ASSIGN Status | TTAB Status    *( Use the "Back" button of the Internet Browser to return to TESS)*

## MUSIC IS BETTER ON GRASS

| | |
|---|---|
| **Word Mark** | **MUSIC** IS BETTER ON GRASS |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Promotion of special live and recorded events for others and promoting the merchandise goods of others related thereto; business management and corporate event management and organization of events and shows, namely, musical, night club, cultural, and variety concerts, tours and presentations, all for commercial, promotional and advertising purposes; retail store services featuring artist, performer and tour-related merchandise and collectibles in the nature of shirts, hats, jackets, banners, stickers, decals, posters, beverage containers, compact discs, digital video discs; promoting ticket sales and VIP privilege packages for live entertainment events for others. FIRST USE: 20200702. FIRST USE IN COMMERCE: 20210707 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 90033209 |
| **Filing Date** | July 2, 2020 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | November 17, 2020 |
| **Registration Number** | 6494584 |
| **Registration Date** | September 21, 2021 |
| **Owner** | (REGISTRANT) PKM PRESENTS LLC LIMITED LIABILITY COMPANY CONNECTICUT P.O. Box 2763 11 Scovill |

**Appx08673**

Street Waterbury CONNECTICUT 067232763

| | |
|---|---|
| **Attorney of Record** | Michael K. Kinney |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | **LIVE** |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST   NEXT LIST

FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Appx08674



## United States Patent and Trademark Office

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

TSDR | ASSIGN Status | TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# MUSIC IS WIN

| | |
|---|---|
| **Word Mark** | MUSIC IS WIN |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Instruction in the field of music. FIRST USE: 20150630. FIRST USE IN COMMERCE: 20150630 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 90053952 |
| **Filing Date** | July 15, 2020 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 1, 2020 |
| **Registration Number** | 6272066 |
| **Registration Date** | February 16, 2021 |
| **Owner** | (REGISTRANT) Larson Media LLC LIMITED LIABILITY COMPANY TENNESSEE 112 WENTWORTH AVE Nashville TENNESSEE 37215 |
| **Attorney of Record** | Steven A. Wolfe |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

**Appx08675**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [          ] OR Jump to record: [          ]     **Record 769 out of 5585**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

MUSIC THROUGH THE TUNNEL
OF TIME

| | |
|---|---|
| **Word Mark** | **MUSIC** THROUGH THE TUNNEL OF TIME |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Providing an Internet website portal featuring entertainment news and information specifically in the field of music, historical context with music artists, interviews, their songs from a particular era, various musical genres, and discussion about movies that highlight music and their impact on culture. FIRST USE: 20200810. FIRST USE IN COMMERCE: 20201231 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 90244654 |
| **Filing Date** | October 9, 2020 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | April 20, 2021 |
| **Registration Number** | 6465326 |
| **Registration Date** | August 24, 2021 |
| **Owner** | (REGISTRANT) The Music Tunnel, LLC LIMITED LIABILITY COMPANY RHODE ISLAND Noel Law 203 South Main Street, Suite 2 Providence RHODE ISLAND 02903 |
| **Attorney of** | Thomas R. Noel |

Appx08676



| Record | |
|---|---|
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | **LIVE** |



**Appx08677**



## United States Patent and Trademark Office

**Home** | **Site Index** | **Search** | **FAQ** | **Glossary** | **Contacts** | **eBusiness** | **eBiz alerts** | **News**

**Trademarks** > **Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  **List At:** [        ] OR  Jump  **to record:** [        ]    **Record 3 out of 4**

TSDR    ASSIGN Status    TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# MUSIC WITH A SMILE

| | |
|---|---|
| **Word Mark** | **MUSIC** WITH A **SMILE** |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Pre-recorded CDs featuring musical performance given by an accordionist/vocalist. FIRST USE: 20100311. FIRST USE IN COMMERCE: 20100311

IC 016. US 002 005 022 023 029 037 038 050. G & S: Educational publications, namely, activities books and learning guides in the fields of music; Printed educational materials in the field of music. FIRST USE: 20180728. FIRST USE IN COMMERCE: 20180728 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 90092379 |
| **Filing Date** | August 4, 2020 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | January 5, 2021 |
| **Registration Number** | 6299394 |
| **Registration Date** | March 23, 2021 |
| **Owner** | (REGISTRANT) Music With A Smile Productions, L.L.C. LIMITED LIABILITY COMPANY KANSAS 11944 W. 95th St., PMB 293 Lenexa KANSAS 66215 |
| **Attorney of** | Joan Optican Herman |

**Appx08678**

| | |
|---|---|
| **Record** | |
| **Prior Registrations** | 2335465 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST

FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Appx08679



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

# MyCleanMusic

| | |
|---|---|
| **Word Mark** | MYCLEANMUSIC |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Providing on-line music, not downloadable. FIRST USE: 20141030. FIRST USE IN COMMERCE: 20141030 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 88951293 |
| **Filing Date** | June 6, 2020 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | January 26, 2021 |
| **Registration Number** | 6318659 |
| **Registration Date** | April 13, 2021 |
| **Owner** | (REGISTRANT) Lassiter, Corey J. INDIVIDUAL UNITED STATES 4143 Lakewood Glen Dr. Winston Salem NORTH CAROLINA 27107 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Appx08680**



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

**Trademarks > Trademark Electronic Search System (TESS)**

*TESS was last updated on Sun Nov 7 03:17:21 EST 2021*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST |
| FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: [        ] OR Jump to record: [        ] **Record 943 out of 5585**

TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

# CRAFT YOUR MUSIC

| | |
|---|---|
| **Word Mark** | CRAFT YOUR **MUSIC** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Providing musical education classes; Educational services, namely, creating educational programs in the nature of classes for music, accessible online by means of virtual communities, electronic communications networks and social networks; Providing education services in the nature of individual music lessons accessible online by means of virtual communities, electronic communications networks and social networks; Providing musical education classes accessible online by means of virtual communities, electronic communications networks; Education services, namely, providing live and online classes, seminars, workshops in the field of music, music entertainment, and music production; Educational services, namely, providing online instruction in the field of music, music entertainment, and music production via an online website, and distribution of course material in the nature of non-downloadable instructional videos in connection therewith. FIRST USE: 20210601. FIRST USE IN COMMERCE: 20210601 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 90173979 |
| **Filing Date** | September 11, 2020 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | December 22, 2020 |
| **Registration Number** | 6430081 |

Appx08681

| Registration Date | July 20, 2021 |
|---|---|
| Owner | (REGISTRANT) Center for Young Musicians Inc. CORPORATION PENNSYLVANIA 120 Lake Drive Wexford PENNSYLVANIA 15090 |
| Attorney of Record | Jeffrey D Mulrooney |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | **LIVE** |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY



SINCE 1828

🔍

GAMES & QUIZZES  THESAURUS  WORD OF THE DAY  FEATURES
- SHOP
Buying Guide ⤢  M-W Books ⤢

  - LOG IN
  - REGISTER
  - ⌄
    settings  log out

**Appx08683**

set the stage
**:** to provide the basis or background *this trend will set the stage for higher earnings*
set to music
**:** to provide music or instrumental accompaniment for (a text)
set upon
**:** to attack usually with violence *the dogs set upon the trespassers*

set

[noun](#)

Definition of *set* (Entry 2 of 3)

1a **:** the act or action of setting
b **:** the condition of being set
2 **:** a number of things of the same kind that belong or are used together *an electric train set*
3a **:** mental inclination, tendency, or habit **:** [bent](#) *a set toward mathematics*
b **:** a state of psychological preparedness to perceive or respond to an anticipated stimulus or situation
4 **:** direction of flow *the set of the wind*
5 **:** form or carriage of the body or of its parts *her face took on a cynical set*— Raymond Kennedy
6 **:** the manner of fitting or of being placed or suspended in order *to give the skirt a pretty set*— Mary J. Howell
7 **:** amount of deflection from a straight line *set of a saw's teeth*
8 **:** permanent change of form (as of metal) due to repeated or excessive stress
9 **:** the act or result of arranging hair by curling or waving

10 or less commonly sett \ 'set 🔊 \
a **:** a young plant or rooted cutting ready for transplanting
b **:** a small bulb, corm, or tuber or a piece of tuber used for propagation *onion sets*
c **:** the blossoms of a plant that have set fruit as a result of fertilization
11 or sett **:** the burrow of a badger
12 **:** the width of the body of a piece of type
13 **:** an artificial setting for a scene of a theatrical or film production
14 or less commonly sett **:** a rectangular paving stone of sandstone or granite
15 **:** a division of a tennis match won by the side that wins at least six games beating the opponent by two games or by winning a tiebreaker
16 **:** a collection of books or periodicals forming a unit
17 **:** a clutch of eggs
18 **:** the basic formation in a country-dance or square dance
19 **:** a session of music (such as jazz or dance music) usually followed by an intermission also **:** the music played at one session
20 **:** a group of persons associated by common interests
21 **:** a collection of elements and especially mathematical ones (such as numbers or points)

— called also class

22 **:** an apparatus of electronic components assembled so as to function as a unit *a television set*
23 **:** a usually offensive formation in football or basketball
24 **:** a group of a specific number of repetitions of a particular exercise

set

[adjective](#)

Definition of *set* (Entry 3 of 3)

1 **:** [intent](#), [determined](#) *set upon going*

**Appx08684**

American Heritage Dictionary Entry: production

 





# HOW TO USE THE DICTIONARY

To look up an entry in *The American Heritage Dictionary of the English Language,* use the search window above. For best results, after typing in the word, click on the "Search" button instead of using the "enter" key.

Some compound words (like *bus rapid transit, dog whistle,* or *identity theft*) don't appear on the drop-down list when you type them in the search bar. For best results with compound words, place a quotation mark before the compound word in the search window.

[guide to the dictionary](#)



# THE USAGE PANEL

The Usage Panel is a group of nearly 200 prominent scholars, creative writers, journalists, diplomats, and others in occupations requiring mastery of language. Annual surveys have gauged the acceptability of particular usages and grammatical constructions.

[The Panelists](#)



# NEED HELP SOLVING A CROSSWORD PUZZLE?

Go to our [Crossword Puzzle Solver](#) and type in the letters that you know, and the Solver will produce a list of possible solutions.



# AMERICAN HERITAGE DICTIONARY APP

The new American Heritage Dictionary app is now available for [iOS](#) and [Android.](#)

**Appx08685**




# THE AMERICAN HERITAGE DICTIONARY BLOG

The articles in our [blog](#) examine new words, revised definitions, interesting images from the fifth edition, discussions of usage, and more.

**THE 100 WORDS***

See word lists from the best-selling 100 Words Series!

[Find out more!](#)



# INTERESTED IN DICTIONARIES?

Check out the Dictionary Society of North America at [http://www.dictionarysociety.com](http://www.dictionarysociety.com)

**pro·duc·tion** (prə-dŭk shən, prō-)

Share:     Tweet

*n.*
**1.**
**a.** The act or process of producing: *timber used for the production of lumber and paper.*
**b.** The fact or process of being produced: *a movie going into production.*
**2.** The creation of value or wealth by producing goods and services.
**3.** The total output, as of a commodity: *increased production at the plant.*
**4.** Something produced; a product: *"Of all the productions of land, milk is perhaps the most perishable" (Adam Smith).*
**5.**
**a.** A work of art or literature.
**b.** A work produced for the stage, screen, television, or radio.
**c.** A staging or presentation of a theatrical work: *a new Broadway production of a musical.*
**6.** A situation or display that is exaggerated or unduly complicated: *made a production out of the birthday party.*

**pro·duc tion·al** *adj.*

The American Heritage® Dictionary of the English Language, Fifth Edition copyright ©2020 by Houghton Mifflin Harcourt Publishing Company. All rights reserved.

# Indo-European & Semitic Roots Appendices

Thousands of entries in the dictionary include etymologies that trace their origins back to reconstructed proto-languages. You can obtain more information about these forms in our online appendices:

[Indo-European Roots](#)

[Semitic Roots](#)

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA794146** |
| Filing date: | **01/10/2017** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91229891 |
| Party | Defendant<br>Apple Inc. |
| Correspondence Address | Glenn A. Gundersen<br>Dechert LLP<br>Cira Centre2929 Arch Street<br>Philadelphia, PA 19104-2808<br>UNITED STATES<br>daniel.hope@dechert.com, glenn.gundersen@dechert.com, trade-marks@dechert.com |
| Submission | Answer |
| Filer's Name | Daniel P. Hope |
| Filer's e-mail | daniel.hope@dechert.com, glenn.gundersen@dechert.com, trade-marks@dechert.com |
| Signature | /Daniel P. Hope/ |
| Date | 01/10/2017 |
| Attachments | APPLE MUSIC SN 86659444 Bertini v Apple Answer to Notice of Oppostion Jan 10 2017.pdf(23443 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

Application Serial No. 86/659,444
Mark:  APPLE MUSIC
Published in the *Official Gazette* on May 10, 2016

| | | |
|---|---|---|
| CHARLES BERTINI | : | |
| | : | |
| Opposer, | : | |
| | : | |
| v. | : | Opposition No. 91229891 |
| | : | |
| APPLE INC. | : | |
| | : | |
| Applicant. | : | |

## ANSWER

Applicant Apple Inc. ("Apple"), by its attorneys, hereby answers the numbered

paragraphs of the Notice of Opposition filed by Charles Bertini ("Opposer") as follows:

1.  Apple denies the allegations set forth in the first numbered paragraph, except

admits that on June 11, 2015 Apple filed an application to register the mark APPLE MUSIC,

which was designated Application Serial No. 86/659,444, for identified services in International

Class 41.  Apple refers Opposer to the records of the U.S. Patent and Trademark Office ("PTO")

for an accurate statement of the applied-for services.

2.  Apple denies the allegations set forth in the second numbered paragraph,

except admits that Application Serial No. 86/659,444 was filed on an intent to use basis under

Section 1(b) of the Trademark Act.  Apple refers Opposer to the PTO records for an accurate

statement of the filing bases for Application Serial No. 86/659,444.

3.        Apple denies the allegations set forth in the third numbered paragraph, except admits that Application Serial No. 86/659,444 was published for opposition in the *Official Gazette* on May 10, 2016.

4.        The allegations set forth in the fourth numbered paragraph constitute a legal conclusion, to which no response is required.  To the extent a response is required, Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the fourth numbered paragraph, and they are therefore denied.

5.        Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the fifth numbered paragraph, and they are therefore denied.

6.        Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the sixth numbered paragraph, and they are therefore denied.

7.        Apple denies the allegations set forth in the seventh numbered paragraph.

8.        Apple denies the allegations set forth in the eighth numbered paragraph.

9.        Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the ninth numbered paragraph, and they are therefore denied.

10.       Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the tenth numbered paragraph, and they are therefore denied, except that Apple admits that the PTO records indicate that, on June 5, 2016, Opposer filed an application for APPLE JAZZ, under Application Serial No. 87/060,640, for services in International Class 41, which claims first use and first use in commerce at least as early as June 5, 1985.

11.       The allegations set forth in the eleventh numbered paragraph are legal conclusions, to which no response is required.

2

12.        Apple denies the allegations set forth in the twelfth numbered paragraph.

13.        Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the thirteenth numbered paragraph, and they are therefore denied.

14.        The allegations set forth in the thirteenth numbered paragraph are legal conclusions, to which no response is required.

15.        Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the fifteenth numbered paragraph, and they are therefore denied, except that Apple admits that it does not require, and therefore has not obtained, Opposer's consent or permission to use the mark APPLE MUSIC in connection with the services identified in Application Serial No. 86/659,444.

16.        Apple denies the allegations set forth in the sixteenth numbered paragraph.

17.        Apple denies the allegations set forth in the seventeenth numbered paragraph.

18.        Apple is without knowledge or information sufficient to form a belief as to the truth of the allegations in the eighteenth numbered paragraph, and they are therefore denied.

19.        The allegations set forth in the nineteenth numbered paragraph are legal conclusions, to which no response is required.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Apple owns trademark rights in the mark APPLE in the field of music, musical performances, and musical, cultural and entertainment events that predate those of Opposer, by virtue of Apple's ownership of the following federal trademark registrations:

- Registration No. 2,034,964, which covers "gramophone records featuring music; pre-recorded audio tape cassettes featuring music; audio compact discs featuring music; pre-recorded video tape cassettes featuring music", and claims first use and first use in commerce at least as early as August 1968;

3

- Registration No. 3,317,089, which covers, *inter alia*, "musical sound records; sound records featuring entertainment; sound records featuring music, musicians, documentaries, biographies, interviews, performances, reviews, drama and fiction; musical video records; video records featuring entertainment; video records featuring music, musicians, caricatures, cartoons, animation, documentaries, biographies, interviews, performances, reviews, drama and fiction; cinematographic films; musical sound recordings; musical video recordings; audio and visual recordings featuring or relating to music, entertainment and films; pre-recorded compact discs, gramophone records, video discs, DVDs, CD-ROMs ((and interactive compact discs,)) all featuring or relating to music and films; digitally recorded sound and video records; ((downloadable musical sound and video records; downloadable sound and video records featuring or relating to music, entertainment and films))"; and

- Registration No. 4,088,195, which covers, *inter alia*, "digital video, audio and multimedia publishing services"; "providing entertainment information regarding movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events"; "entertainment services, namely, production of live musical performances"; "entertainment services, namely, providing live musical performances online via a global computer network"; and "entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network", and claims first use and first use in commerce at least as early as March 1, 1981.

On information and belief, the dates of first use and first use in commerce claimed in Registration Nos. 2,034,964 and 4,088,195, predate the dates of first use and first use in commerce claimed by Opposer in the Notice of Opposition and with respect to APPLE JAZZ in Application Serial No. 87/060,640.

WHEREFORE, Apple prays that this Opposition be dismissed with prejudice and the registration of the mark shown in Application Serial No. 86/659,444 be granted.

Date:   January 10, 2017                    Respectfully submitted,


                                            /Daniel P. Hope /
                                            Glenn A. Gundersen
                                            Daniel P. Hope
                                            Dechert LLP
                                            Cira Centre
*Counsel for Applicant*                     2929 Arch Street
*Apple Inc.*                                Philadelphia, PA 19104-2808




## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer has been duly served by mailing such copy first class, postage prepaid to counsel for Opposer, James Bertini, Attorney-at-Law, 423 Klamath Street, Denver, CO 80204, on January 10, 2017.


                                            /Daniel P. Hope/
                                                Daniel P. Hope


5

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

Joseph Petersen
Kilpatrick Townsend
JPetersen@kilpatricktownsend.com

Theodore Davis
Kilpatrick Townsend
tdavis@kilpatricktownsend.com

Bill Bryner
Kilpatrick Townsend
bbryner@kilpatricktownsend.com

John D. Mayberry
Kilpatrick Townsend
dmayberry@kilpatricktownsend.com

Sara Stadler
Kilpatrick Townsend
sstadler@kilpatricktownsend.com

Dated: March 31, 2022                    /s/ James Bertini_____