# United States Court of Appeals for the Federal Circuit

---

**CHARLES BERTINI,**
*Appellant*

**v.**

**APPLE INC.,**
*Appellee*

---

2021-2301

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91229891.

---

Decided: April 4, 2023

---

JAMES BERTINI, Denver, CO, argued for appellant.

ADAM HOWARD CHARNES, Kilpatrick Townsend & Stockton LLP, Dallas, TX, argued for appellee. Also represented by WILLIAM BRYNER, Winston-Salem, NC; THEODORE H. DAVIS, JR., Atlanta, GA; JOHN D. MAYBERRY, SARA K. STADLER, New York, NY; JOSEPH E. PETERSEN, Menlo Park, CA.

---

Before MOORE, *Chief Judge*, TARANTO and CHEN, *Circuit Judges*.

MOORE, *Chief Judge*.

Charles Bertini appeals from a final decision of the Trademark Trial and Appeal Board dismissing his opposition to Apple Inc.'s application to register the mark APPLE MUSIC. For the following reasons, we reverse.

## BACKGROUND

Apple filed Trademark Application No. 86/659,444 to register the standard character mark APPLE MUSIC for several services in International Class 41, including, *inter alia*, production and distribution of sound recordings and arranging, organizing, conducting, and presenting live musical performances. Bertini, a professional jazz musician, filed a notice of opposition to Apple's application. Bertini has used the mark APPLE JAZZ in connection with festivals and concerts since June 13, 1985. In the mid-1990s, Bertini began using APPLE JAZZ to issue and distribute sound recordings under his record label. Bertini opposed Apple's registration of APPLE MUSIC on the ground that it would likely cause confusion with Bertini's common law trademark APPLE JAZZ. *See* 15 U.S.C. § 1052(d).

The Board issued a final decision dismissing Bertini's opposition. *Bertini v. Apple, Inc.*, 2021 WL 1575580 (T.T.A.B. Apr. 16, 2021) (*Board Decision*). The Board found Bertini's common law mark APPLE JAZZ is inherently distinctive and that Bertini may claim a priority date of June 13, 1985 for APPLE JAZZ in connection with "[a]rranging, organizing, conducting, and presenting concerts [and] live musical performances." *Id.* at *9–12. These findings are undisputed on appeal. The parties also agreed there was a likelihood consumers would confuse Bertini's use of APPLE JAZZ with Apple's use of APPLE MUSIC. *Id.* at *8. The parties only dispute priority of use. *Id.*

Apple began using the mark APPLE MUSIC on June 8, 2015, when it launched its music streaming service, nearly thirty years after Bertini's 1985 priority date. Apple

argued, however, it was entitled to an earlier priority date of August 1968 based on trademark rights it purchased from Apple Corps, the Beatles' record company. Apple purchased Apple Corps' Registration No. 2034964 in 2007. The '964 registration covers the mark APPLE for "[g]ramophone records featuring music" and "audio compact discs featuring music" and claims a date of first use of August 1968.

The Board found Apple Corps continuously used its APPLE mark on gramophone records, and other recording formats, since August 1968. *Id.* at *13–17. It further found Apple was entitled to tack its 2015 use of APPLE MUSIC onto Apple Corps' 1968 use of APPLE and thus had priority over Bertini. *Id.* at *18–21. The Board accordingly dismissed Bertini's opposition and denied Bertini's subsequent motion for reconsideration. *Id.* at *21. Bertini appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Bertini challenges the Board's determination that Apple's use of APPLE MUSIC has priority over Bertini's use of APPLE JAZZ. We hold Apple cannot tack its use of APPLE MUSIC for live musical performances onto Apple Corps' use of APPLE for gramophone records and that its application to register APPLE MUSIC must therefore be denied. Accordingly, we reverse.

### I

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003). The tacking inquiry is a question of fact. *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422–23 (2015).

## II

Trademark rights arise from the use of a mark in commerce. *Hana*, 574 U.S. at 419. The party who first uses a distinctive mark in connection with particular goods or services has priority over other users. *Id.* "Recognizing that trademark users ought to be permitted to make certain modifications to their marks over time without losing priority," trademark owners may, in limited circumstances, "clothe a new mark with the priority position of an older mark." *Id.* at 419–20. This doctrine is known as "tacking." *Id.* at 420.

We permit tacking because, without it, "a trademark owner's priority in his mark would be reduced each time he made the slightest alteration to the mark, which would discourage him from altering the mark in response to changing consumer preferences, evolving aesthetic developments, or new advertising and marketing styles." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1048 (9th Cir. 1999). Trademark owners often modernize and update their trademarks in response to a changing marketplace. *See Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 496 (7th Cir. 2009) (recognizing the need for trademark owners and their licensees to make "modest changes in the appearance or wording of the trademark" to respond to "unpredictable fluctuations in consumer response").

The standard for a trademark owner to invoke tacking is strict. *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1160 (Fed. Cir. 1991), *abrogated on other grounds by Hana*, 574 U.S. 418. The party seeking to tack bears the burden to show the old mark and the new mark "'create the same, continuing commercial impression' so that consumers 'consider both as the same mark.'" *Hana*, 574 U.S. at 422 (quoting *Van Dyne-Crotty*, 926 F.2d at 1159). In other words, the marks must be "legal

equivalents."[1] *Id.* This standard requires showing more than a likelihood of confusion between the two marks. *Van Dyne-Crotty*, 926 F.2d at 1159. The commercial impression of a trademark is "the meaning or idea it conveys or the mental reaction it evokes," including the information it conveys with respect to source. *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1164 (9th Cir. 2013) (quoting Gideon Mark & Jacob Jacoby, *Continuing Commercial Impression: Applications and Measurement*, 10 MARQ. INTELL. PROP. L. REV. 433, 434 (2006)), *aff'd*, 574 U.S. 418; *see also Spice Islands, Inc. v. Frank Tea & Spice Co.*, 505 F.2d 1293, 1296 (CCPA 1974) (finding two marks create the same commercial impression because they "convey to prospective purchasers the same idea, same mental reaction, and same meaning").

Our cases demonstrate the limited reach of the tacking doctrine. For example, in *Van Dyne-Crotty*, we rejected the trademark owner's attempt to tack its use of CLOTHES THAT WORK for clothing apparel onto CLOTHES THAT WORK. FOR THE WORK YOU DO for the same goods in the wholesale rather than retail market. 926 F.2d at 1158–60. We affirmed the Board's finding that the marks create different commercial impressions because consumers "would clearly differentiate them" based simply on the visual appearance of the marks. *Id.* at 1159–60. In *Ilco Corp. v. Ideal Security Hardware Corp.*, our predecessor court determined the trademark owner was not entitled to tack its use of HOME PROTECTION CENTER for display racks onto its prior use of HOME PROTECTION HARDWARE for the same goods. 527 F.2d 1221, 1224–25 (CCPA 1976). The two marks created different commercial impressions

[1] Although the terminology "legal equivalents" is typically used, the Supreme Court has made clear this is a factual question. *Hana*, 574 U.S. at 422–23 (abrogating prior decisions holding this was a legal question).

even when applied to the same goods because the former mark "signifies a unitary aggregation of goods related to home protection," while the latter mark "refer[s] to the hardware itself." *Id.*

Other circuits uniformly apply the tacking doctrine narrowly. For example, in *Jim O'Neal*, the trademark owner could not tack its angular O' mark onto its rounded O' mark because the two marks were materially different in appearance. *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1161–62 (9th Cir. 2009). In *Data Concepts*, "DCI" and the stylized mark "dci" were not legal equivalents because "the two marks do not look alike." *Data Concepts, Inc. v. Digit. Consulting, Inc.*, 150 F.3d 620, 623–24 (6th Cir. 1998), *abrogated on other grounds by Hana*, 574 U.S. 418; *see also George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 402 (4th Cir. 2009) (determining the mark LEFT CENTER RIGHT and the abbreviated mark LCR are not legal equivalents for tacking purposes because the marks are not confusingly similar and "look and sound different").

While rare, tacking can apply in situations where the marks are sufficiently similar such that a consumer would understand the two marks identify the same source. For instance, in *American Security Bank v. American Security & Trust Co.*, the trademark applicant could tack its use of AMERICAN SECURITY BANK for banking services onto its prior use of AMERICAN SECURITY for the same services. 571 F.2d 564, 567 (CCPA 1978). The court determined the two marks were legal equivalents because "the word 'bank' is purely descriptive and adds nothing to the origin-indicating significance of AMERICAN SECURITY." *Id.* Similarly, in *Hana Financial, Inc. v. Hana Bank*, the Ninth Circuit held the jury reasonably concluded Hana Bank could tack its use of the mark HANA BANK for financial services onto its prior use of HANA OVERSEAS KOREAN CLUB for the same services. 735 F.3d at 1166. Hana Bank (a well-known Korean bank) had previously

used its HANA OVERSEAS KOREAN CLUB mark in English next to its HANA BANK mark in Korean on advertisements in the United States. *Id.* at 1166–67. In this context, it was reasonable for a jury to find that ordinary consumers (i.e., Korean-speaking consumers familiar with Hana Bank's presence in Korea) would associate HANA BANK with the same source as HANA OVERSEAS KOREAN CLUB. *Id.* at 1167 ("'Hana' was arguably the most significant portion of the trade name, as the ordinary purchasers would have then made the association between the English word 'Hana' and the Bank's Korean name.").

## III

This case raises a question of first impression regarding the appropriate tacking standard in the registration context: whether a trademark applicant can establish priority for *every* good or service in its application merely because it has priority through tacking in a *single* good or service listed in its application. We hold it cannot. Bertini argues the Board erred by only considering whether Apple can tack its use of APPLE MUSIC for production and distribution of sound recordings—one of several services listed in Apple's application. Apple responds that its application should be granted as to all listed goods or services if it can establish priority through tacking in any one of those goods or services. We do not agree.

Apple seeks to register its APPLE MUSIC mark for 15 broad categories of services, from the production and distribution of sound recordings, to presenting live musical performances, to providing websites featuring entertainment and sports information. Apple attempts to claim priority for all of these services by tacking onto Apple Corps' 1968 use of APPLE for gramophone records. The Board found Apple was entitled to tack its use of APPLE MUSIC for production and distribution of sound recordings onto Apple Corps' 1968 use of APPLE for gramophone records and thus may claim priority for all of the services listed in

its application. *Board Decision*, 2021 WL 1575580, at *18–21; *see also id.* at *8 ("It is sufficient to find priority as to any goods or services encompassed by the application or registration."). It made no findings regarding the other services listed in the application.

The Board legally erred by permitting Apple to claim absolute priority for *all* of the services listed in its application based on a showing of priority for *one* service listed in the application. Tacking a mark for one good or service does not grant priority for every other good or service in the trademark application. *Cf. Van Dyne-Crotty,* 926 F.2d at 1160 ("[I]t would be clearly contrary to well-established principles of trademark law to sanction the tacking of a mark with a narrow commercial impression onto one with a broader commercial impression."). A trademark owner must show tacking is available for each good or service for which it claims priority on that ground.

In holding otherwise, the Board conflated the tacking standard with the standard for oppositions under 15 U.S.C. § 1052(d). *See Board Decision*, 2021 WL 1575580, at *8 ("Neither Opposer nor Applicant need prove, and we need not find, priority as to each service listed in the respective recitations of services."). An opposer can block a trademark application in full by proving priority of use and likelihood of confusion for *any* of the services listed in the trademark application. *Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 648 F.2d 1335, 1336 (CCPA 1981) (affirming Board decision sustaining opposition where opposer showed the applicant's use of the mark on T-shirts would likely cause confusion with opposer's mark, where the registration included T-shirts, dresses, skirts, coats, scarves, etc.); 3 McCarthy on Trademarks and Unfair Competition § 20:17 (5th ed.). The reverse is not true. The trademark applicant cannot establish absolute priority for the full application simply by proving priority of use for a single service listed in the application.

To sustain his opposition, Bertini therefore only needs to show he has priority of use of APPLE JAZZ for any service listed in Apple's application. Bertini's use of APPLE JAZZ overlaps with two of the services in Apple's application: production and distribution of sound recordings; and arranging, organizing, conducting, and presenting live musical performances. The Board improperly focused only on Apple's ability to tack its use of APPLE MUSIC for production and distribution of sound recordings and did not consider live musical performances. Even assuming Apple is entitled to tack its use of APPLE MUSIC for production and distribution of sound recordings onto Apple Corps' 1968 use of APPLE for gramophone records, this does not give Apple priority as of 1968 for live musical performances. Nor does it give Apple a 1968 priority date for the laundry list of other services in its application.[2]

The Board found, and Apple does not dispute, that Bertini may claim priority of use of APPLE JAZZ in connection with "[a]rranging, organizing, conducting, and presenting concerts [and] live musical performances" as early as June 13, 1985. *Board Decision*, 2021 WL 1575580, at *12. To defeat Bertini's showing of priority, Apple must at minimum show it is entitled to tack its use of APPLE MUSIC

---

[2] There is a question as to whether Apple—to successfully defeat Bertini's opposition—must establish that the full scope of the goods and services listed in its current application is entitled to tacking, or whether simply tacking just to the services overlapping with Bertini's use of APPLE JAZZ is sufficient. We need not decide that question because, here, it is enough to conclude that Apple, as explained *infra*, is unable to tack back for live musical performances.

for live musical performances[3] onto Apple Corps' use of APPLE for gramophone records.

This raises a question regarding the scope of the tacking inquiry. Trademark rights arise from the use of the mark in connection with particular goods or services. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97–98 (1918). We therefore cannot evaluate whether two marks create the same commercial impression without considering the goods or services on which the marks are used. Our tacking cases have focused on whether a trademark owner can tack two different marks which have been used for the same goods or services. We have not addressed the appropriate standard for tacking uses on *different* goods or services.

The Board has held tacking requires the new and old goods or services be "substantially identical." *See Big Blue Prods. Inc. v. Int'l Bus. Machs. Corp.*, 1991 WL 326549, at *3 (T.T.A.B. Apr. 8, 1991); *see also C.P. Ints., Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 700–01 (5th Cir. 2001) (noting "substantially identical" goods or services is the "dominant terminology" for tacking). Both parties urge us to apply this standard. We agree the goods or services must be substantially identical for tacking to apply. This standard

---

[3] In determining tacking in an opposition, we look to the full scope of goods and services described in the application, rather than the goods and services actually used by the applicant. *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 1323 (Fed. Cir. 2014) ("It was proper . . . for the Board to focus on the application and registrations rather than on real-world conditions, because 'the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application.'" (quoting *Octocom Sys., Inc. v. Houston Comput. Servs., Inc.*, 918 F.2d 937, 942 (Fed Cir. 1990))).

does not require complete identity of the goods or services. Such a rule would fail to account for technological innovation which impacts how products evolve over time. For example, music recording formats have changed over time as technology has improved—from gramophone records, to cassettes, to compact discs. A trademark owner should not lose priority simply because it updates the medium through which it distributes musical recordings, so long as consumers would associate these various music formats as emanating from the same source. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) ("Trademark owners are permitted to make small changes to their products without abandoning their marks."); 3 McCarthy on Trademarks and Unfair Competition § 17:24 (5th ed.) ("[N]ormal product changes do not disturb the priority of a trademark owner."). To do so would discourage brand innovation.

Goods and services are substantially identical for purposes of tacking where the new goods or services are within the normal evolution of the previous line of goods or services. This inquiry depends, at least in part, on whether consumers would generally expect the new goods or services to emanate from the same source as the previous goods or services. *See J. Wiss & Sons Co. v. W. E. Bassett Co.*, 462 F.2d 567, 569–70 (CCPA 1972) (determining trademark applicant could not tack its use of TRIMLINE for hair cutting shears onto its prior use of QUICK-TRIM for grass shears because hair cutting shears are not in the normal expansion from grass shears); *see also* 4 McCarthy on Trademarks and Unfair Competition § 24:21 (5th ed.) ("When the issue is not enjoining an intervening user, but priority and registration rights of one of the parties to an inter partes proceeding, the issue is whether customers are likely to link a mark in its expansion market with the original, senior usage.").

To establish tacking, Apple must therefore show live musical performances are substantially identical to

gramophone records. There is no need to vacate and remand for the Board to make a finding on this issue in the first instance. No reasonable person could conclude, based on the record before us, that gramophone records and live musical performances are substantially identical. Nothing in the record supports a finding that consumers would think Apple's live musical performances are within the normal product evolution of Apple Corps' gramophone records.

Accordingly, Apple is not entitled to tack its use of APPLE MUSIC for live musical performances onto Apple Corps' 1968 use of APPLE for gramophone records. Because Apple began using the mark APPLE MUSIC in 2015, Bertini has priority of use for APPLE JAZZ as to live musical performances. We therefore reverse the Board's dismissal of Bertini's opposition to Apple's application to register APPLE MUSIC.[4]

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the reasons given above, we reverse the Board's dismissal of Bertini's opposition.

## **REVERSED**

## COSTS

Costs awarded to Bertini.

---

[4] We do not and need not consider whether the propriety of tacking here, an inquiry that considers the "origin-indicating significance" of marks, *Am. Sec. Bank*, 571 F.2d at 567, is affected by the fact that Apple (the computer company) is not the same company as Apple Corps (the Beatles' record label).